UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10029-GAO |
| ) | |
| DANIEL E. CARPENTER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION TO DISMISS THE INDICTMENT**

Defendant Daniel E. Carpenter ("Carpenter"), by his undersigned counsel, respectfully submits this reply brief in further support of his motion to dismiss the indictment dated May 6, 2004, and in response to the government's opposition dated May 27, 2004.

The indictment's allegations are so vague that even the government now seems confused as to *exactly* what its theory of fraud is in this case. Although the government alleges in its opposition brief that Carpenter "took" (Gov. Br. at 1, 3, 7) the funds of the exchangors to which legal title had been transferred to Benistar Property Exchange Trust Co., Inc. ("BPE"), the indictment does not make such an allegation. Not only does the indictment fail to allege that the funds were withdrawn from BPE's accounts or that Carpenter personally took any of the funds, but it also fails to describe with the requisite constitutional specificity the alleged scheme to defraud, Carpenter's alleged criminal intent or the alleged *material* falsehoods forming the basis of the alleged scheme.

Additionally, the government's reliance on an embezzlement case in which the defendant removed money from an investment account and used the funds for his own

purposes, is wholly inapt. The indictment here involves a civil business dispute between sophisticated parties and contains **no** allegation that Carpenter used the funds for his own purposes.[1]

## ARGUMENT

### I. THE GOVERNMENT'S PROFFERED LEGAL STANDARD IS INCORRECT AND THE INDICTMENT FAILS TO PLEAD CRIMINAL INTENT ADEQUATELY

The government devotes a substantial portion of its brief arguing that a First Circuit decision in a bank fraud case should be used to support the government's contention that the governing legal standard for wire and mail fraud is the same as in bank fraud (*i.e.*, alleging and proving merely an intent to deceive the bank is sufficient as opposed to showing an intent to harm the bank and that the same legal standard should apply to wire and mail fraud prosecutions). See Gov. Br. at 8-11 (discussing United States v. Kenrick, 221 F.3d 19, 29 (1st Cir.) (en banc), cert. denied, 531 U.S. 961 (2000)). However, there is no need for such machinations because the First Circuit has just recently (ironically, in a case involving trading stock options) made it very clear that an **intent to defraud** is a necessary element of wire (and mail) fraud. Where someone is accused merely of making false statements without any intent to defraud (as is alleged here), the crime of mail (or wire) fraud has not been sufficiently alleged.[2]

---

[1] In the civil proceedings parallel to this matter, no evidence was adduced at trial that Carpenter had embezzled or employed the funds for his own personal use. Furthermore, after three and one-half years, those civil proceedings continue, with no judgment having been entered against Carpenter or any other defendant. Moreover, all parties to that proceeding (including Carpenter) recently have submitted motions for a new trial.

[2] An intent to "deceive" is quite different from an intent to "defraud." Deception can occur solely by making a false or misleading statement *without* having the intent ultimately to cause harm. Intending to defraud, on the other hand, involves an intent to deprive one of his property.

2

In <u>United States v. Callipari</u>, No. 03-1647, 2004 WL 1088746 (1st Cir. May 17, 2004),[3] the First Circuit held that "[t]o convict a defendant of wire fraud . . ., the government must prove beyond a reasonable doubt that he acted **<u>with intent to defraud the alleged victim</u>**." <u>Id.</u> at *8 (emphasis added) (citing <u>United States v. Cassiere</u>, 4 F.3d 1006, 1011 (1st Cir. 1993)).

Nowhere does the indictment allege that Carpenter intended to defraud the exchangors. In fact, if anything, the indictment alleges the exact opposite, *i.e.*, that Carpenter sought to have BPE earn a profit on the invested funds above and beyond that which was required to return the exchangors' principal plus the appropriate 3% or 6% rate of interest. <u>See</u> Ind. ¶ 26. Seeking to earn a profit *after* satisfying all of BPE's contractual obligations to the exchangors does not and cannot constitute an intent to defraud the exchangors.

The only other possible basis for allowing the indictment to survive is the government's contention that the indictment alleges that the exchangors did business with BPE based on "false representations of safety and security" regarding the invested funds. <u>See</u> Gov. Br. at 6. However, "[e]ven false statements or omissions of a material fact do not constitute a violation of the [wire] fraud law **<u>unless made with an intent to defraud</u>**." <u>Callipari</u>, 2004 WL 1088746, at *9 (emphasis added) (citing <u>United States v. Bradstreet</u>, 135 F.3d 46, 51 (1st Cir. 1998)).

Assuming, as one must for purposes of a motion to dismiss, that the indictment's allegations regarding misrepresentations are true, *i.e.*, that Carpenter knew false statements were being made to the exchangors regarding the "safety and security" of the funds (Ind.

---

[3] <u>Callipari</u> involved a Fidelity equity trader making unauthorized stock option trades on behalf of hedge fund clients.

3

¶¶ 17, 27-29), such allegations alone are insufficient as a matter of law to save the indictment from dismissal. They must also be coupled with an allegation that Carpenter **intended to defraud the exchangors** at the time those false statements were made. Merely making false statements is insufficient. Since the indictment nowhere alleges that Carpenter intended to defraud the exchangors, the indictment is defective as a matter of law.[4]

## II. THE INDICTMENT FAILS TO ALLEGE A "SCHEME TO DEFRAUD"

While the indictment does contain numerous and detailed factual allegations regarding the subject property exchanges and the flow of funds between the exchangors and BPE (Ind. ¶¶ 58-98), the government is incorrect in claiming that the indictment "contains detailed allegations concerning the charged scheme to defraud." (Gov. Br. at 7.) In fact, even at this late stage of the pre-trial proceedings, neither Carpenter nor his attorneys have been able to decipher the indictment's meandering allegations to determine what specific *act* Carpenter is alleged to have committed in violation of the federal mail and wire fraud statutes. See United States v. Doherty, 867 F.2d 47, 55 (1st Cir. 1989) (indictment must "enable the accused to know the nature and cause of the accusation against him."). Investing is not a crime. Investing in stock options is not a crime. Investing to make a profit is not a crime. Failing to pay back a debt or satisfy a contractual obligation is not a crime. The indictment's nebulous allegation of a criminal act explains why the indictment fails to satisfy the notice requirement.

---

[4] All the indictment alleges regarding criminal intent is that Carpenter intended to earn a "substantial" profit by having BPE invest in stock options (Ind. ¶ 26), but instead incurred a loss. (Ind. ¶ 29.) This clearly is not enough.

4

For example, the government in its brief alleges, for the first time, that Carpenter "took" the invested funds. (Gov. Br. at 1, 3, 7.) Assuming that this is what the government views as the alleged scheme to defraud, the problem is that the indictment does not allege that Carpenter "took" anything.

"Took" is the past tense of the verb "Take," which means "[t]o obtain possession or control, whether legally or illegally." BLACK'S LAW DICTIONARY 1466 (7th ed. 1999). Nowhere does the indictment allege that Carpenter "took" personal possession or control of BPE's funds or placed BPE's funds into his own hands. The funds that the exchangors transferred to BPE **always remained in BPE's accounts** at Merrill Lynch and PaineWebber. See Ind. ¶ 8. Furthermore, even the so-called "trading" accounts at Merrill Lynch and PaineWebber were opened "in the name of BPE." See Ind. ¶¶ 31, 44.[5]

This means that no matter what happened in those accounts, the funds invested belonged to BPE and **not** Carpenter. For example, had Carpenter suffered a disability and been unable to discharge his duties at BPE (*i.e.*, direct how the funds were invested) (see Ind. ¶ 15), the funds would have continued to belong to BPE – not Carpenter. In other words, because the indictment fails to allege that Carpenter *personally* took possession, custody or control of the funds, the indictment necessarily fails to allege that Carpenter "took" the funds.[6]

---

[5] The indictment implies that the transfer of funds into the "trading" accounts at Merrill Lynch and PaineWebber without notice to the exchangors was wrongful. See id. However, the funds *always* remained in accounts titled in the name of BPE – not Carpenter, and the indictment itself concedes that the exchangors knew more than one account was involved by virtue of having to choose between the 3% and 6% option on the BPE Account Selection Form. See Ind. ¶ 7. Consequently, the movement and transfer of funds *between BPE's accounts* at Merrill Lynch and PaineWebber cannot be deemed fraudulent.

[6] This is not a case where an investment advisor takes client funds out of an advisory account, places them into his own personal account, and then loses the money trading in stock options. The funds *never* left BPE's possession, custody or control and the indictment does not allege that they did. Consequently, the indictment charges Carpenter with mail and wire fraud merely for making bad investments on BPE's behalf.

This Court has ruled that "liability under the mail fraud statute [exists] where the scheme is intended *either* to confer an unjust benefit on the defendant *or* to deprive another of a property right." United States v. Pimental, 236 F.Supp.2d 99, 105 (D. Mass. 2002) (emphasis in original).[7] The indictment does not allege that Carpenter sought or intended to confer an *unjust* benefit on himself. Rather, the indictment merely alleges that Carpenter caused BPE to invest the funds *while in BPE's accounts* in stock options "with the goal of leveraging the funds into a substantial profit for himself." (Ind. ¶ 26.) However, making a profit (substantial or otherwise) in business is not unjust and certainly not illegal.

Nor does the indictment allege that Carpenter intended to deprive the exchangors of their money. As stated earlier, the indictment alleges only that Carpenter intended to make a profit once all of BPE's contractual obligations to the exchangors had been fulfilled. Nor does the indictment allege that Carpenter intended to lose the money by investing in stock options. To the contrary, the indictment alleges that Carpenter intended to earn a profit once the exchangors had received their principal plus 3% or 6% as appropriate.

By asserting, for the first time in its brief, allegations which do not appear in the indictment (*i.e.*, that Carpenter "took" the funds), the government is "improperly amending the indictment in violation of the Fifth Amendment's grand jury guarantee." United States v. Welch, 327 F.3d 1081, 1089 (10th Cir. 2003).

---

[7] Pimental, a mail fraud case in which the government is appealing the granting of defendant's Rule 29 motion for judgment of acquittal, was argued before the First Circuit on June 9, 2004. (Case Nos. 03-1098 & 03-1153.)

## III. MATERIALITY, AN ESSENTIAL ELEMENT OF MAIL AND WIRE FRAUD, MUST BE PLED WITH SPECIFICITY

The government misunderstands Carpenter's argument with respect to materiality. Carpenter does not claim that the indictment is deficient merely because the word "material" fails to appear in the indictment. See Gov. Br. at 11. Rather, Carpenter submits that the indictment is deficient because it fails to plead "**materiality**" – an essential element of the crimes charged – with specificity. The government's contention that allegations regarding "materiality" can simply be subsumed into a legal term of art (*i.e.*, "fraud") (Gov. Br. at 11-12) is without merit.

The government cites a non-controlling district court case for the novel proposition that "materiality" may simply be inferred based on the factual allegations of each case. See Gov. Br. at 11-13 (relying on United States v. Stewart, 151 F.Supp.2d 572 (E.D. Pa. 2001)). However, the law in the First Circuit demands much more of an indictment's allegations. "[A] statutory citation standing alone in an indictment does not excuse the government's failure to set forth each of the elements of an offense." United States v. Mojica-Baez, 229 F.3d 292, 309 (1st Cir. 2000). This is particularly so where, as here, the indictment's underlying theory of fraud is so vague. The lack of *any* allegation regarding materiality fails to provide Carpenter with sufficient notice as to what act he is charged with committing in violation of the mail and wire fraud statutes.[8]

The Ninth Circuit addressed this issue in United States v. Du Bo, 186 F.3d 1177 (9th Cir. 1999), and held that "if properly challenged *prior to trial*, an indictment's

---

[8] For example, it is unclear from the indictment whether Carpenter is being charged because BPE incurred investment risk by investing the funds at all, or because BPE invested the funds in stock options, or because BPE sought to earn a profit on its investments, or because BPE lost the money, or because BPE lost the money and failed to repay the principal, or because BPE lost the money and failed to repay both the principal and the 3% or 6%, or because BPE was in the property exchange business in the first place.

7

complete failure to recite an essential element of the charged offense is not a minor or technical flaw subject to harmless error analysis, but a **fatal flaw** requiring dismissal of the indictment." Id. at 1179 (emphasis added). The government concedes that "materiality" is an essential element of the mail and wire fraud statutes and that the indictment fails to charge that the alleged scheme to defraud involved *material* falsehoods. See Gov. Br. at 11. In a desperate attempt to avoid dismissal of the indictment, the government can only cite to a handful of cases where *after* trial the First Circuit ruled that the district court's failure to explicitly instruct a jury on materiality was "harmless error." See Gov. Br. at 12 n.2.

However, in the context of a *pre-trial* challenge to the sufficiency of an indictment, the fact that a defendant later received a fair trial and suffered no prejudice from an erroneous jury instruction is "irrelevant." United States v. Daniels, 973 F.2d 272, 275-76 (4th Cir. 1992); see also United States v. Carbajal, 42 Fed.Appx. 954, 955 (9th Cir. 2002) ("However, where, as here, a party makes a timely objection to the indictment before the trial court, not only is plain error inapplicable, even harmless error review is inapplicable."); United States v. Carll, 105 U.S. 611, 613 (1881) (the omission of a necessary element of an offense is a "matter of substance, and not a defect or imperfection in matter of form only . . .") (internal quotations omitted).

By failing to allege the essential element of materiality with the constitutionally-required level of specificity, the government would have this Court simply guess as to what was in the minds of the grand jurors when they returned the indictment. See Gov. Br. at 13 ("[T]he indictment plainly charges misrepresentations that can only be characterized as material."). The indictment's vague allegations are insufficient to put Carpenter on

8

notice as to *exactly* what alleged misrepresentations the grand jury thought were material when it issued the indictment.

For example, did the grand jury view as material the alleged misrepresentation that the exchangors were promised the funds would be kept "safe and secure"? See Gov. Br. at 1, 2-3, 13. If so, then the indictment is unclear because it concedes that the exchangors knowingly assumed risk by agreeing to have the funds invested so as to earn either 3% or 6%. (Ind. ¶¶ 7, 9.) If this is the alleged material misrepresentation on which the indictment is based, then the indictment is necessarily alleging that it was unlawful for BPE to pay *any* interest on the exchangors' funds (whether the principal was ultimately repaid or not). However, the indictment does not make such a claim.

Or perhaps the government contends that it was a material misrepresentation or omission for BPE to invest the funds in stock options without the exchangors' authorization. See Gov. Br. at 5. However, the indictment does not allege that the exchangors had the right to control or even know *how* BPE invested the funds, only that they were to receive 3% or 6%. How that return would be earned was left up to the sole discretion of BPE. BPE (rather than Carpenter) could have just as easily lost the same amount of money investing in Enron, WorldCom, UAL or Polaroid bonds as it did by investing in stock options.

Although the government invites the Court to engage in this kind of "guessing game," the Constitution forbids it:

> To allow the prosecutor, or the court, to make a subsequent guess as to what was in the minds of the grand jury at the time they returned the indictment would deprive the defendant of a basic protection which the guaranty of the intervention

of a grand jury was designed to secure. For a defendant could then be convicted on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him.

Russell v. United States, 369 U.S. 749, 770 (1962).

Because Carpenter, his attorneys and the Court are left simply to guess as to what the grand jury alleged were the *material* falsehoods, the indictment is "an unreliable vehicle with which to commence the proceedings in this case." Mojica-Baez, 229 F.3d at 312.

## IV. THIS IS *NOT* AN EMBEZZLEMENT CASE

Given the vague and indefinite nature of the allegations in the indictment, it is not surprising that even the government now seems confused as to *exactly* what its theory of fraud is in this case. Carpenter's defense is not that he "intended to repay the funds." See Gov. Br. at 15. Rather, Carpenter's defense is that he did not "take" the funds in the first place. Nor does the indictment allege that he did.

The government's confusion on this key point is underscored by its reliance on United States v. Young, 955 F.2d 99 (1st Cir. 1992) (Breyer, C.J.), a case involving embezzlement. Unlike the defendant in Young, however, Carpenter is not alleged to have "wrongly used the [exchangors'] money for his **own** purposes." Id. at 101 (emphasis added). This is the key distinction between an embezzlement case such as Young and the case at bar where bad investments were made but no money was taken.

In Young, the defendant *withdrew* funds of a veteran from a Merrill Lynch account over which the defendant acted as guardian, invested in race horses and lost the money. Id. In this classic case of embezzlement, the First Circuit held that the defendant's intention to repay the money – once embezzled – is irrelevant. Id. at 104.

10

The indictment here, on the other hand, does not allege that Carpenter *withdrew* any of BPE's funds, invested in stock options and lost the money. Rather, the funds *always* remained in BPE's accounts but were lost *by BPE* due to poorly performing investments in a falling stock market. Consequently, Young's analogy of the "bank teller who plays the horses with the bank's money," id., is entirely inapplicable here because while it is unlawful for the bank teller to embezzle the bank's money (regardless of how he invests it or whether he repays it), it was *not* unlawful for BPE (holding legal title to the exchangors' funds) to make (what in retrospect proved to be) bad investments with those funds while they remained in BPE's own accounts. In contrast, where, as in Young, one embezzles money for his own use, a crime has been committed even if the funds are deposited into FDIC-insured bank accounts: the crime is the embezzlement itself, and not any subsequent investment of the funds.

All of the exchangors knew that BPE would maintain their funds in accounts at Merrill Lynch and, later, PaineWebber. See Ind. ¶ 8. By definition, any investment made by BPE in those accounts would be an investment that Merrill Lynch and PaineWebber would allow. Stock options, unlike race horses, are a perfectly valid, proper and legal investment at Merrill Lynch and PaineWebber. Since the exchangors all knew that the BPE accounts were maintained at these two brokerage behemoths, the exchangors also must have necessarily known (or should have known) that any investment allowed by Merrill Lynch and PaineWebber would be considered and utilized by BPE in order to generate the necessary 3% or 6% return. In other words, if it was a legal and proper investment at Merrill Lynch and PaineWebber, it necessarily was a legal and proper investment for BPE.

This case is <u>not</u> about Carpenter taking the exchangors' funds out of BPE's accounts for his own purposes and then investing in stock options and losing the money. Rather, this is a case where the funds *never* left BPE's possession, ownership, custody or control and Carpenter, making BPE's investment decisions, chose investments that ultimately performed poorly. The former is a clear case of embezzlement. The latter is a clear case of making unfortunate investment choices during a "perfect storm" of poor market conditions. The government seems unable (or unwilling) to comprehend this key distinction.

## CONCLUSION

For the foregoing reasons and for the reasons set forth in his moving brief, defendant Daniel E. Carpenter respectfully requests that this Honorable Court dismiss the indictment in its entirety.

Dated: June 10, 2004

                DANIEL E. CARPENTER,
                By his attorneys,

                _____
                A. John Pappalardo, Esq. (BBO # 338760)
                Evan Georgopoulos, Esq. (BBO # 628480)
                GREENBERG TRAURIG LLP
                One International Place, 20th Floor
                Boston, MA 02110
                (617) 310-6000

*Of Counsel*:

Alan M. Dershowitz, Esq.
1563 Massachusetts Avenue
Cambridge, MA 02138
(617) 496-2187

Edward A. McDonald, Esq.
Nelson A. Boxer, Esq.
Michael J. Gilbert, Esq.
DECHERT LLP
30 Rockefeller Plaza
New York, NY 10112
(212) 698-3500

Richard S. Order, Esq.
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
(860) 275-8100

## CERTIFICATE OF SERVICE

I, Evan Georgopoulos, hereby certify that a true and accurate copy of the foregoing was served on the government's attorney as appears below by hand delivery on this 10th day of June, 2004:

Michael J. Pineault, Esq.
Assistant U.S. Attorney
Office of the U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210

*Evan Georgopoulos*