UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10029-GAO |
| | ) | |
| DANIEL E. CARPENTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S SUPPLEMENTAL
MOTION TO DISMISS THE INDICTMENT FOR LACK OF VENUE**

The United States opposes defendant Daniel E. Carpenter's ("Carpenter's")

Supplemental Motion to Dismiss the Indictment for Lack of Venue.  The indictment charges

Carpenter with having engaged in a fraudulent scheme pursuant to which clients were induced to

transmit millions of dollars to Carpenter's company based on false representations that the funds

would be held safely in escrow and returned to them in full.

With one exception, the victims referenced in the indictment reside and do business in

Massachusetts.  The false representations that were made to them, with Carpenter's knowledge,

occurred in Massachusetts.  And the mailings and the wires through which the victims

transmitted their fraudulently induced funds to Carpenter-controlled accounts were sent from

Massachusetts.  On these facts, and for the additional reasons set forth below, venue properly lies

in the District of Massachusetts.  Carpenter's supplemental motion to dismiss should be denied.

**ARGUMENT**

I.    VENUE EXISTS IN THE DISTRICT OF MASSACHUSETTS

Venue under the mail and wire fraud statutes properly lies in any district where the

defendant causes a mailing or wire communication to be sent or received.  <u>E.g.</u>, <u>Salinger v.</u>

United States, 265 U.S. 224, 234 (1924) ("wrongful use of the mail may be dealt with in the district of the delivery as well as in that of the deposit"); Holdsworth v. United States, 179 F.2d 933, 936 (1st Cir. 1950) (same).[1]   That is because it is the use of the mails (or the wires) in furtherance of a scheme to defraud that triggers federal criminal jurisdiction under 18 U.S.C. §§ 1341 and 1343.  E.g., Pace, 314 F.3d at 349 ("gist and crux" of wire fraud offense is the misuse of wires).  Carpenter acknowledges the foregoing principle in his memorandum.  (Def. Br. 12).

It is undisputed that all but one of the 19 counts charged in the indictment relate to mailings or wires transmitted from (or to) Massachusetts, and that 17 of the counts specifically involve the mail or wire transmission of funds from Massachusetts to Carpenter-controlled accounts – transmissions that the indictment alleges were induced by false representations made to the victims who sent the money.  (Indictment ¶¶ 103, 105).  Carpenter does not dispute the Massachusetts origin of these mailings and wires.

Instead, he contends that he is not the one who "caused" the Massachusetts mailings and wires to be sent because he did not personally commit any act in Massachusetts.  Based on this argument, Carpenter asserts that he cannot properly be charged or prosecuted in Massachusetts. (Def. Br. 4, 12, 13).

Carpenter's argument misconstrues the "causation" requirement of the mail and wire

---

[1] Some courts have stated more broadly that venue also can exist in a district through which a mailing or wire passes or from which it was orchestrated.  United States v. Pace, 314 F.3d 344, 349 (9th Cir. 2002) ("venue is established in those locations where the wire transmission at issue originated, passed through, or was received, or from which it was 'orchestrated'.").  This court need not address the latter, broader formulation.  The government does not rely on it here.

fraud statutes. The First Circuit repeatedly has held that to prove causation, the government need only demonstrate the existence of a scheme pursuant to which "the defendant knew, or could have reasonably foreseen, that the use of the mails [or wires] would follow in the ordinary course of business." United States v. Pimental, 2004 WL 1921828, *6 (1st Cir. August 30, 2004) (internal quotations and citations omitted). The government need not prove that the defendant personally executed the mailings or the wires or that he personally engaged in any conduct in the district of prosecution. Id.; see also United States v. Bruckman, 874 F.2d 57, 60 (1st Cir. 1989) ("[T]he causation requirement is met so long as some use of the mails was reasonably to be anticipated in the course of the scheme."); United States v. Fermin Castillo, 829 F.2d 1194, 1197-99 (1st Cir. 1987) (noting that a defendant's failure personally to telegraph, mail, or telephone information "made no difference" where use of the mails or wires by third parties would foreseeably follow in the ordinary course of business) (internal citations and quotations omitted); United States v. Kim, 246 F.3d 186, 191-93 (2d Cir. 2001) (immaterial that defendant did not commit any acts in district of prosecution, as long as he knew or reasonably could have foreseen that the use of the wires in that district would follow in the ordinary course of business).

The indictment contains numerous allegations sufficient to establish that Carpenter knew or reasonably could have foreseen the existence of Massachusetts mailings and wires in connection with the fraudulent scheme with which he has been charged. He served as Chairman of Benistar Property Exchange Trust Company, Inc. ("BPE") and co-directed its operations, which were based in Newton, Massachusetts. (Indictment ¶¶ 1, 3, 14). He reviewed and edited the promotional materials that BPE disseminated, primarily to Massachusetts-based clients,

which described § 1031 property exchanges and contained assurances that any funds transmitted to BPE would be held safely and securely in escrow; that the funds would not be transferred without the client's written authorization; and that the funds would be disbursed only for the purpose of closing on the purchase of replacement property or to be returned directly to the client.  (Indictment ¶¶ 14, 18-21).  He reviewed and assisted in drafting the exchange documents utilized by BPE, whose provisions tracked the language of the promotional literature with respect to the handling of the client funds.  (Indictment ¶¶ 14, 22-23).  He opened the accounts at Merrill Lynch and PaineWebber into which the exchange documents specifically directed all clients to wire (or mail) their § 1031 proceeds for deposit.  (Indictment ¶¶ 7-8, 15).  He subsequently tracked and controlled the disposition of the funds maintained in those accounts. (Indictment ¶¶ 15).  And he is the one who is charged with having gambled and lost -- in unauthorized, speculative options trading -- approximately $9 million in BPE client money, almost all of which was transmitted to Carpenter-controlled accounts via Massachusetts wires and mailings.  (Indictment ¶¶ 25-29, 99-101).

In short, the indictment charges Carpenter with: (a) co-directing the operations of a Massachusetts-based company; (b) that disseminated promotional literature and exchange documents to Massachusetts-based clients; (c) directing them to wire and/or mail funds from Massachusetts real estate transactions; (d) to out-of-state accounts that Carpenter opened and controlled; (e) based on false representations and assurances that their funds would be held in escrow and returned to them in full, with interest; (f) when in fact Carpenter was taking those funds, without the clients' knowledge or authorization, and losing millions of dollars in high risk, high stakes options trading.

On these facts, and under the law of the First Circuit (and other circuits), it is immaterial to any venue analysis whether Carpenter personally came to or engaged in any acts in Massachusetts.  It plainly was known and/or reasonably foreseeable to him that mailings and wires would originate here.  His company (BPE) was based and operated in Massachusetts.  Most of the funds that clients were induced to wire or mail – and that Carpenter misappropriated – originated from Massachusetts.  Venue is therefore proper in Massachusetts.  Kim, 246 F.3d at 191 - 193 (venue proper in S.D.N.Y. based on defendant's knowledge that fraudulent invoices would be paid from Manhattan banks, and rejecting defendant's argument that venue could not lie because neither defendant nor his co-conspirators committed any acts in the district).

Carpenter makes two final arguments in response.  Both are without merit.  First, he cites to several cases in which mail/wire fraud charges were dismissed on venue grounds.  (Def. Br. 12-13).  Review of these cases demonstrates, however, that the dismissals occurred in situations where the charged mailings and wires neither originated in nor were sent to the district of indictment.  E.g., United States v. Brennan, 183 F.3d 139, 144 (2d Cir. 1999) (none of charged mailings was sent from or received in the district of prosecution); United States v. Mikell, 163 F.Supp.2d 720, 728 (E.D. Mich. 2001) (mail matter in question did not move from, through, or into district of prosecution); United States v. Donato, 866 F. Supp. 288, 290 (W.D. Va. 1994) (no allegation that any of charged mailings or wires was made to, through, or from the district of prosecution).[2]  Those are not the facts here.

---

[2] Carpenter also cites to a tax case, United States v. Percuoco, 630 F. Supp. 784 (D. Mass. 1986), aff'd sub nom. United States v. Griffin, 814 F.2d 806 (1st Cir. 1987), which he characterizes as "virtually identical" to this one.  (Def. Br. 10).  It is not.  Percuoco involved a different statute, with different elements, and different facts.

Second, Carpenter asserts that the sole criminal conduct alleged in the indictment is his loss of funds through options trading and therefore the only mailings and wires that could properly ground any charges – or support venue -- would be the trading instructions that he issued from his Connecticut office to his brokers.  (Def. Br. 5, 15, 16).  Carpenter's argument misconstrues both the language of the indictment and the legal standards that define when mailings or wires are "in furtherance of" a scheme to defraud.

The indictment makes plain that Carpenter's crime consisted of the use of the wires and the mail in furtherance of an intentional scheme to obtain money or property by means of false or fraudulent pretenses.  Whether Carpenter's fraudulent scheme (and his speculative options trading) subsequently resulted in gains or losses is irrelevant.  The gravamen of the offense was the scheme to obtain funds through fraudulent pretenses.

Similarly, the law in this circuit makes clear that "in furtherance" simply requires that a mailing (or wire) be "part of the execution of the scheme" or a "step in the plot." Pimental, 2004 WL 1921828 at *8.  It need not be an "essential element." Id.; see also Fermin Castillo, 829 F.2d at 1199 (citing cases).

Under any formulation, the indictment's allegations satisfy this standard.  Absent the Massachusetts wires and mailings charged in the indictment, Carpenter would not have received – into accounts that he opened and controlled – the fraudulently obtained funds that he misappropriated, traded and lost in the options market.  This fact, alone, is sufficient to prove the requisite nexus. Fermin Castillo, 829 F.2d at 1199 (noting that absent the transmission of the charged telexes, the defendant "would not have received his ill-gotten gains").

## CONCLUSION

For all of the foregoing reasons, the United States requests that Carpenter's supplemental motion to dismiss the indictment for lack of venue be denied.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:

_/s/ Michael J. Pineault_____
Michael J. Pineault
Assistant U.S. Attorney
U.S. Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210

Date: September 10, 2004

7