*Frequently Asked Questions About 1031 Property Exchange* stating that BPE had a long-standing reputation for trustworthiness and that his funds would be held in an escrow account and would be paid out only for a subsequent closing or to be returned to the company.

78.     On or about November 20, 2000, Johnston executed an Escrow Agreement and an Exchange Agreement with BPE containing the representations set forth in paragraphs 22 and 23, above, concerning the manner in which his funds would be held by BPE. Pursuant to an Account Selection Form completed by Johnston at or about the same time, the funds were to accrue interest at three percent.

79.     On or about November 21, 2000, a check in the amount of $28,750 representing proceeds from the sale of Johnston's property was mailed from Boston to Benistar in Simsbury, Connecticut and deposited into the PaineWebber "34" account.

80.     On or about November 22, 2000, $513,180.74 in additional proceeds from the Johnston transaction was wired from Massachusetts to the Bank of New York in New York City for the benefit of the PaineWebber "34" Account.

81.     On or about November 24, 2000, BPE transmitted a letter to Johnston confirming the receipt of $541,930.74 of sales proceeds, "which we are holding for your benefit" and which "are accruing interest at 3%." The foregoing proceeds were to be held by BPE as intermediary pending Johnston's closing on the acquisition of replacement property.

82.     On or about January 17, 2001, counsel for BPE transmitted a letter to Johnston stating that BPE was "in the process of attempting to resolve certain issues relating to client funds" and that BPE was "not able to return the funds to you at this time." The approximate

21

principal amount of the Johnston funds that were lost and not returned by CARPENTER and BPE is $541,931.

### E. Byron Darling

83. At all times material to this Indictment, Byron Darling was a resident of Truro, Massachusetts. In or about August, 2000, Darling retained BPE to serve as intermediary in connection with a § 1031 exchange involving property owned by him in Truro. Darling previously had used BPE as an intermediary on a property exchange that took place in early 2000.

84. Darling was provided assurances concerning the safety of his funds. The assurances included provisions in an Escrow Agreement and an Exchange Agreement with BPE that Darling executed on or about August 28, 2000, which contained the representations set forth in paragraphs 22 and 23, above, concerning the manner in which Darling's funds would be held by BPE. Pursuant to an Account Selection Form completed by Darling at or about the same time, the funds were to accrue interest at six percent.

85. On or about September 8, 2000, two wires in the respective amounts of $294,290.35 and $28,000, representing proceeds from the sale of Darling's Truro property, were transmitted from Massachusetts to Mellon Bank in Pittsburgh, PA for the benefit of the Merrill Lynch B01 Account.

86. On or about September 21, 2000, BPE transmitted a letter to Darling confirming the receipt of $322,290.35 of sales proceeds, "which we are holding for your benefit" and which "are accruing interest at 6%." The foregoing proceeds were to be held by BPE as intermediary

pending Darling's closing on the acquisition of replacement property.

87.  Darling received a partial disbursement of approximately $15,625 from his escrowed funds. He did not receive any additional disbursements. The approximate principal amount of the Darling funds that were lost and not returned by CARPENTER and BPE is $306,665.

### F. Bellemore Associates

88.  Bellemore Associates is a limited liability corporation based in New Hampshire that is owned by three brothers: Albert, Robert and Raymond Bellemore. In or about August, 2000, Bellemore Associates ("Bellemore") retained BPE to serve as intermediary in connection with a § 1031 exchange involving property owned by the corporation in Bedford, New Hampshire. During the course of the exchange process, several communications were transmitted, by facsimile and by mail, between BPE in Massachusetts and Bellemore Associates and its representatives in New Hampshire.

89.  Bellemore Associates was provided assurances concerning the safety of its funds. The assurances included provisions in an Escrow Agreement and an Exchange Agreement with BPE that Bellemore Associates executed on or about August 7, 2000, which contained the representations set forth in paragraphs 22 and 23, above, concerning the manner in which Bellemore Associates' funds would be held by BPE. Pursuant to an Account Selection Form completed by Bellemore Associates at or about the same time, the funds were to accrue interest at six percent.

90.  On or about August 9, 2000, $444,659.65 in proceeds from the sale of the

Bellemore property was wired from New Hampshire to Mellon Bank in Pittsburgh, PA for the benefit of the Merrill Lynch B01 Account.

91.     On or about August 18, 2000, BPE transmitted a letter from Massachusetts to Bellemore's real estate consultant, David Eaton, in New Hampshire confirming the receipt of $444,659.65 of sales proceeds, "which we are holding for your benefit" and which "are accruing interest at 6%." The foregoing proceeds were to be held by BPE as intermediary pending Bellemore's closing on the acquisition of replacement property.

92.     On or about January 17, 2001, counsel for BPE transmitted a letter to Bellemore stating that BPE was "in the process of attempting to resolve certain issues relating to client funds" and that BPE was "not able to return the funds to you at this time." The approximate principal amount of the Bellemore funds that were lost and not returned by CARPENTER and BPE is $444,659.65.

### G. Brian Fitzgerald

93.     At all times material to this Indictment, Brian Fitzgerald was a resident of Upton, Massachusetts and the owner of R&B Enterprises, Inc. ("R&B), which operated a car wash located in Worcester, Massachusetts. In or about October, 2000, Fitzgerald retained BPE to serve as intermediary in connection with a § 1031 exchange involving property and equipment owned by R&B in Worcester.

94.     Fitzgerald was provided assurances concerning the safety of his funds, including Powerpoint slides and a document titled *Frequently Asked Questions About 1031 Property Exchange* stating that BPE had a long-standing reputation for trustworthiness and that his funds

24

would be held in an escrow account and would be paid out only for a subsequent closing or to be returned to the company.

95. On or about October 31, 2000, Fitzgerald executed an Escrow Agreement and an Exchange Agreement with BPE containing the representations set forth in paragraphs 22 and 23, above, concerning the manner in which his funds would be held by BPE. Pursuant to an Account Selection Form completed by Fitzgerald at or about the same time, the funds were to accrue interest at three percent.

96. On or about November 13, 2000, $72,535.62 in proceeds from the sale of Fitzgerald's property and equipment was wired from Massachusetts to the Bank of New York in New York City for the benefit of the PaineWebber "34" Account.

97. On or about November 16, 2000, two additional wires in the respective amounts of $400,000 and $17,090, representing additional proceeds from the sale of Fitzgerald's property and equipment, were transmitted from Massachusetts to the Bank of New York in New York City for the benefit of the PaineWebber "34" Account. The foregoing proceeds were to be held by BPE as intermediary pending Fitzgerald's closing on the acquisition of replacement property and equipment.

98. Fitzgerald received a partial disbursement of approximately $392,257 from his escrowed funds. He did not receive any additional disbursements. The approximate principal amount of the Fitzgerald funds that were lost and not returned by CARPENTER and BPE is $97,369.

99. The monies owed to each of the above-listed individuals and entities was lost as

25

the result of the aggressive, high risk options trading engaged in by CARPENTER using BPE client funds. CARPENTER neither requested nor received client authorization to engage in such speculative trading. In fact, CARPENTER's use of client funds in connection with his options trading was directly contrary to the representations given to BPE clients to induce them to retain BPE. As set forth in paragraphs 17 - 24, above, those representations included assurances that client funds would be held safe and secure; that the funds would not be transferred without the client's written authorization; and even then, that the funds would be disbursed only for the purpose of closing on the purchase of replacement property or to be returned directly to the client.

100.   CARPENTER was aware of the foregoing representations. They were contained, among other places, in BPE promotional materials and exchange documents that he participated in drafting.

101.   Knowing of these representations, CARPENTER nonetheless willfully misappropriated – and lost in the market – millions of dollars of funds that BPE's clients had been induced to entrust to the company based on material, false written and oral assurances that the money would be protected and held safe. CARPENTER did not notify or direct BPE personnel to notify current or prospective clients that he was using client funds in this fashion or that he was sustaining substantial losses in the market. Rather, BPE continued, with CARPENTER's knowledge and throughout the period that CARPENTER was losing substantial sums at Merrill Lynch and at PaineWebber, to solicit and induce clients to entrust funds to BPE based on material, false representations concerning the manner in which their money would be

held and treated.

## COUNTS ONE through FOURTEEN

### (Wire Fraud – 18 U.S.C. § 1343)

102.   The Grand Jury re-alleges and incorporates by reference paragraphs 1 - 101 of this Indictment and further charges that:

103.   On or about the following dates, in the District of Massachusetts and elsewhere, the defendant

### DANIEL E. CARPENTER

having devised and intending to devise the foregoing scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises concerning material facts and matters, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, as follows:

| Count | Client | Transaction | Date | Wire |
|---|---|---|---|---|
| 1 | Byron Darling | Rte. 6, Truro | 9/8/00 | $294,290.35 wire from Fidelity Investments (Ansel Chaplin, Truro Conservation Trust acct. - MA) to Merrill Lynch B01 Acct. |
| 2 | Byron Darling | Rte. 6, Truro | 9/8/00 | $28,000 wire from Fidelity Investments (Ansel Chaplin, Cape Cod Compact acct. - MA) to Merrill Lynch B01 Acct. |
|  |  |  |  |  |
| 3 | Bellemore Associates | Colby Court, Bedford, NH | 8/8/00 | Facsimile letter from Atty Perreault (NH) to BPE-Newton enclosing exchange documents and notifying of forthcoming $444,659.65 wire |
| 4 | Bellemore Associates | Colby Court, Bedford, NH | 8/9/00 | $444,659.65 wire from Service Credit Union (Portsmouth, NH) to Merrill Lynch B01 Acct. |
|  |  |  |  |  |

| Count | Client | Transaction | Date | Wire |
|---|---|---|---|---|
| 5 | Jeffrey Johnston | Unit 503, Fort Point Place Condominium, Boston | 11/22/00 | $513,180.74 wire from Citizens Bank (Hoffman & Hoffman IOLTA Acct. - MA) to PaineWebber 34 Acct. |
| | | | | |
| 6 | Eliot Snider Mass. Lumber Co. | 170 New Boston St., Woburn | 9/14/00 | $3 million wire from Citizens Bank (Peabody & Arnold Clients Acct. - MA) to Merrill Lynch B01 Acct. |
| | | | | |
| 7 | Joseph Iantosca | Chilton Park, Plymouth | 8/16/00 | $506,562.40 wire from Citizens Bank (Robert J. Barrett Atty at Law Acct. - MA) to Merrill Lynch B01 Acct. |
| 8 | Joseph Iantosca | 8 Tinson Rd., Quincy | 12/1/00 | $774,563.54 wire from Citizens Bank (Bernkopf, Goodman, Baseman LLP - MA) to PaineWebber 34 Acct. |
| 9 | Joseph Iantosca | 25 & 45 Morton St., Quincy | 12/1/00 | $1,875,323.43 wire from Citizens Bank (Bernkopf, Goodman, Baseman LLP - MA) to PaineWebber 34 Acct. |
| 10 | Joseph Iantosca | 261-265 Hayward St., Braintree | 12/1/00 | $1,615,902.33 wire from Citizens Bank (Bernkopf, Goodman, Baseman LLP - MA) to PaineWebber 34 Acct. |
| 11 | Joseph Iantosca | 135 Quincy Ave., Quincy | 12/1/00 | $2,434,659.51 wire from Citizens Bank (Bernkopf, Goodman, Baseman LLP - MA) to PaineWebber 34 Acct. |
| | | | | |
| 12 | Brian Fitzgerald | 11 Jennings St., Worcester | 11/13/00 | $72,535.62 wire from MA to PaineWebber 34 Acct. |
| 13 | Brian Fitzgerald | 11 Jennings St., Worcester | 11/16/00 | $17,090 wire from MA to PaineWebber 34 Acct. |
| 14 | Brian Fitzgerald | 11 Jennings St., Worcester | 11/16/00 | $400,000 wire from MA to PaineWebber 34 Acct. |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## COUNTS FIFTEEN through NINETEEN

## (Mail Fraud - 18 U.S.C. § 1341)

104. The Grand Jury re-alleges and incorporates by reference paragraphs 1-101 of this Indictment and further charges that:

105. On or about the dates set forth below, in the District of Massachusetts and elsewhere, the defendant

## DANIEL E. CARPENTER,

having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises concerning material facts and matters, for the purpose of executing such scheme and artifice and attempting to do so, did cause persons to place in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the United States Postal Service or by private or commercial carrier, and caused to be deposited matters and things to be sent or delivered by the United States Postal Service or by a private or commercial interstate carrier, and took and received therefrom, such matters and things, and knowingly caused to be delivered by the United States Postal Service mail or by private or commercial carrier according to the directions thereon, such matters and things, as follows:

| Count | Client | Transaction | Date | Mailing |
|---|---|---|---|---|
| 15 | Gail/Ronald Cahaly | Union Square Apartments, Allston | 11/8/00 | Airborne Express letter from BPE-Newton to Benistar-CT transmitting $2,412,230 check. |
|  |  |  |  |  |

29

| Count | Client | Transaction | Date | Mailing |
|---|---|---|---|---|
| 16 | Jeffrey Johnston | Unit 503, Fort Point Place Condominium, Boston | 11/21/00 | Letter from Hoffman & Hoffman (MA) to Benistar-CT transmitting $28,750 check. |
|  |  |  |  |  |
| 17 | Eliot Snider Mass. Lumber Co. | 170 New Boston St., Woburn | 9/14/00 | Letter from Choate, Hall & Stewart (Boston) to Benistar-CT transmitting two checks in the respective amounts of $62,190 and $225,000. |
| 18 | Eliot Snider Mass. Lumber Co. | 170 New Boston St., Woburn | 9/20/00 | Letter from Choate, Hall & Stewart (Boston) to Benistar-CT transmitting $225,000 replacement check |
|  |  |  |  |  |
| 19 | Joseph Iantosca | Balance for all 12/1 transactions | 12/14/00 | Airborne Express letter from BPE-Newton to Benistar-CT transmitting $300,000 check |

All in violation of Title 18, United States Code, Sections 1341 and 2.

## FORFEITURE ALLEGATIONS
## (18 U.S.C. § 981 and 28 U.S.C. § 2461(c))

106. The allegations of Counts 1-2, 5-6 and 8-19 of this Indictment are hereby realleged and incorporated herein for the purpose of alleging forfeiture pursuant to the provisions of Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461(c).

107. As a result of the offenses in violation of Title 18, United States Code, Sections 1341 and 1343 charged in Counts 1-2, 5-6 and 8-19 of this Indictment, the defendant

DANIEL E. CARPENTER

shall forfeit to the United States of America all property, real and personal, that constitutes, or is derived from, proceeds traceable to the commission of the offense.

108. If any of the above-described forfeitable property, as a result of any act or

omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred to, or sold to, or deposited with a third party;

    c.    has been placed beyond the jurisdiction of this Court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property.

All pursuant to Title 18, United States Code, Section 981 and Title 28, United States Code, Section 2461(c).

## Notice of Additional Factors

The Grand Jury further charges that:

1.  The offenses charged in Counts One through Fourteen of the Superseding Indictment (wire fraud in violation of 18 U.S.C. § 1343) and Counts Fifteen through Nineteen of the Superseding Indictment (mail fraud in violation of 18 U.S.C. § 1341):

    (a) involved a loss exceeding $5,000,000, as described in U.S.S.G. § 2F1.1(b)(1)(O);

    (b) involved more than minimal planning and a scheme to defraud more than one victim, as described in U.S.S.G. § 2F1.1(b)(2);

    (c) involved sophisticated means, as described in U.S.S.G. § 2F1.1(b)(6)(C); and

    (d) involved the abuse of a position of public or private trust in a manner that significantly facilitated the commission and concealment of the offenses, as described in U.S.S.G. § 3B1.3.

A TRUE BILL

_____
FOREPERSON OF THE GRAND JURY


_____
Assistant United States Attorney


DISTRICT OF MASSACHUSETTS   September ____, 2004

Returned into the District Court by the Grand Jurors and filed.

_____
DEPUTY CLERK

9/22/04 @ 2:15pm

✎JS 45  (5/97) - (Revised USAO MA 1/15/04)

| Criminal Case Cover Sheet | U.S. District Court - District of Massachusetts |

**Place of Offense:** _____  **Category No.** II _____  **Investigating Agency** FBI _____

**City** Newton _____  **Related Case Information:**

**County** Middlesex _____  **Superseding Ind./ Inf.** Yes _____  **Case No.** 04-10029-GAO
**Same Defendant** Yes _____  **New Defendant** No _____
**Magistrate Judge Case Number** _____
**Search Warrant Case** _____
**R 20/R 40 from District of** _____

**Defendant Information:**

**Defendant Name** Daniel E. Carpenter _____  **Juvenile** ☐ Yes ☒ No

**Alias Name** _____

**Address** 18 Pondside Lane, Simsbury, CT 06070 _____

**Birth date (Year only):** 1955  **SSN (last 4 #):** ____  **Sex** M  **Race:** W  **Nationality:** U.S.

**Defense Counsel if known:** John Pappalardo, Esq.  **Address:** Greenberg Traurig
1 International Place, Boston, MA

**Bar Number:** _____

**U.S. Attorney Information:**

**AUSA** Michael J. Pineault _____  **Bar Number if applicable** _____

**Interpreter:** ☐ Yes ☒ No  **List language and/or dialect:** _____

**Matter to be SEALED:** ☐ Yes ☒ No

☐ Warrant Requested    ☒ Regular Process    ☐ In Custody

**Location Status:**

**Arrest Date:** _____

☐ Already in Federal Custody as _____ in _____.
☐ Already in State Custody _____  ☐ Serving Sentence  ☐ Awaiting Trial
☐ On Pretrial Release:  Ordered by _____ on _____

**Charging Document:**  ☐ Complaint    ☐ Information    ☒ Indictment

**Total # of Counts:**    ☐ Petty ____    ☐ Misdemeanor ____    ☒ Felony  19

Continue on Page 2 for Entry of U.S.C. Citations

☒    I hereby certify that the case numbers of any prior proceedings before a Magistrate Judge are accurately set forth above.

**Date:** September __, 2004    **Signature of AUSA:** _____

JS 45 (5/97) - (Revised USAO MA 3/25/02) Page 2 of 2 or Reverse

District Court Case Number (To be filled in by deputy clerk): _____

Name of Defendant    Daniel E. Carpenter

## U.S.C. Citations

| Index Key/Code | Description of Offense Charged | Count Numbers |
|---|---|---|
| Set 1  18 U.S.C. § 1343 | Wire Fraud | 1-14 |
| Set 2  18 U.S.C. § 1341 | Mail Fraud | 15-19 |
| Set 3  18 U.S.C. § 981<br>28 U.S.C. §2461(c) | Forfeiture Allegations | |
| Set 4 | | |
| Set 5 | | |
| Set 6 | | |
| Set 7 | | |
| Set 8 | | |
| Set 9 | | |
| Set 10 | | |
| Set 11 | | |
| Set 12 | | |
| Set 13 | | |
| Set 14 | | |
| Set 15 | | |

ADDITIONAL INFORMATION: _____