

**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

WRITER'S TELEPHONE: (617) 748-3261
Telecopier: (617) 748-3960

United States Courthouse, Suite 9200
1 Courthouse Way
Boston, Massachusetts 02210

February 3, 2005

<u>BY FAX (w/o encl.) and FIRST CLASS MAIL</u>

John Pappalardo, Esq.
Evan Georgopoulos, Esq.
Greenberg Traurig, LLP
One International Place
Boston, MA 02110

    Re:   <u>United States v. Carpenter, No. 04-10029-GAO</u>

Dear Counsel:

    I write to provide you with a summary of the anticipated testimony for two witnesses whom the United States currently intends to call during the prosecution's case-in-chief at trial: (a) J. Marc Allaire; and (b) Thomas J. Zappala. The government intends to call Mr. Allaire as an expert witness and Mr. Zappala as a summary fact witness. Although not required for Mr. Zappala, I am, out of an abundance of caution, providing formal disclosure pursuant to Fed. R. Crim. P. 16(a)(1)(G) for both individuals.

    <u>J. Marc Allaire</u>

    The United States has retained Mr. Allaire to testify as an expert witness on options trading. I have enclosed a copy of his <u>Curriculum Vitae</u> (CV), which we plan to offer as an exhibit. As the CV states, Mr. Allaire holds a B.A. degree from the University of Ottawa, in Ottawa, Ontario, Canada and a Masters Degree in Business Administration from McGill University in Montreal, Quebec, Canada. He has experience as both a trader and options manager in private industry and was a Senior Staff Instructor for The Options Institute at the Chicago Board Options Exchange (CBOE). The CV includes a selected list of Mr. Allaire's publications. The government is compensating Mr. Allaire for his work at the rate of $100/hour.

    Mr. Allaire will explain/define relevant terms and principles relating to options trading. Among other things, he will explain what an option is; define terms such as bullish, bearish, puts and calls, long and short, covered and uncovered, exercise (strike) price, expiration date, and "in the money;" and explain concepts such as spreads, hedging, leverage, and margin requirements. He also will give examples of buying and selling different options.

John Pappalardo, Esq.
Evan Georgopoulos, Esq.
February 3, 2005
Page 2

     Mr. Allaire has prepared a Glossary of Terms, which I have enclosed with this letter, that contains many of the terms and principles that he will be explaining. Most of the definitions come from a Glossary in the book Options: Essential Concepts & Trading Strategies; edited by The Options Institute, the Educational Division of the Chicago Board Options Exchange, 3rd edition, 1999, published by McGraw Hill. The government plans to offer the Glossary of Terms as an exhibit at trial and to distribute copies to the jurors. If you have additional terms you would like included in the glossary, please notify us immediately.

     Mr. Allaire next will testify regarding his analysis of the defendant's trading activity, with particular emphasis on the time periods and accounts referenced in the indictment. Based on his review of account records, Mr. Allaire will explain the nature, frequency, and magnitude of the defendant's trading activity, the relative risks posed by that activity, and the extent (if any) to which the defendant's trading activity changed over time. Mr. Allaire also will testify regarding the profits/losses incurred by the defendant in connection with his trading.

     More specifically, Mr. Allaire will explain, inter alia, that the defendant traded extensively in options; that the frequency and magnitude of his trading activity was high, both in terms of the number of trades, the average period of time that most positions were held, and the dollar amounts of the positions that were taken; and that the defendant took larger positions in the options market during the latter part of the year 2000, despite his mounting losses. Mr. Allaire further will explain that the defendant's trading strategy was mostly "bullish," that it was highly leveraged through the use of option strategies, that the resulting risk level was materially higher than the stock market's overall risk, and that in fact the defendant incurred substantial losses during the relevant time period.

     Mr. Allaire has prepared a series of charts for use at trial that summarize the analysis that he has conducted. I have enclosed drafts of those charts with this letter. The source of the data reflected in the charts is account records produced by Merrill Lynch, Pierce, Fenner & Smith, Inc. and PaineWebber, Inc., which the government previously made available for the defendant's inspection during automatic discovery in this case.

     Mr. Allaire also will present historical data comparing the magnitude of the losses incurred by the defendant with the performance of certain market indices over the same time period, including: (a) three month U.S. Treasury obligations, (b) the S&P 500 Index, and (c) the NASDAQ 100 Index. I enclose draft charts summarizing this information. The source of the historical data is BigCharts.com.

     The government intends to offer the enclosed charts in evidence and to use them during Mr. Allaire's testimony. In that regard, however, please note that certain data relating to the month of October, 2000 remains, at present, incomplete. We have requested production from Merrill Lynch of certain additional account information and, assuming receipt, will update the charts at that time.

John Pappalardo, Esq.
Evan Georgopoulos, Esq.
February 3, 2005
Page 3

### Thomas J. Zappala

Mr. Zappala holds a B.A. degree from Boston College and a Master of Business Administration degree from Babson College. He has been employed as an auditor in the U.S. Attorney's Office since November, 1991. Prior to joining the U.S. Attorney's Office, Mr. Zappala was employed as an auditor in the banking industry for approximately ten years.

Mr. Zappala will testify concerning his review of certain financial accounts maintained by the defendant during the relevant time period, including accounts opened in the name of Benistar Property Exchange Trust Company ("BPE") at Merrill Lynch, Pierce, Fenner & Smith, Inc. and at PaineWebber, Inc. The testimony will include a list of the accounts that were open during the relevant time period, the dates on which they were opened (and closed, if applicable), and a summary of the information contained in the account records, including the dates, amounts, and sources of deposits into the accounts, similar information concerning withdrawals and transfers, and information concerning account balances and losses incurred from trading activity. Mr. Zappala also will compare the timing and amounts of the deposits, withdrawals, transfers, and losses to the timing and amounts of the inflows and outflows of customer funds held by BPE.

I have enclosed copies of draft charts setting forth summary information concerning the above-described accounts that the government expects Mr. Zappala to cover in his testimony. As explained above, certain Merrill Lynch account information relating to the month of October, 2000 remains, at present, incomplete. Upon receipt of any additional information from Merrill Lynch, we will update all affected charts.

Please be advised that the charts, glossaries, and other information referenced in this letter are based on the evidence that the United States anticipates introducing at trial. To the extent that the evidence ultimately adduced at trial differs in any material respect from what the government currently anticipates, the testimony of any summary (and/or expert) witnesses is subject to revision to reflect the evidence actually introduced.

Please also note that the government has not yet finalized the format of the summary charts and demonstrative aids that it plans to use at trial, although the substance of the information contained in such materials will largely track the information and charts referenced in this letter.

Please let me know if you have any questions.

Sincerely,

Michael J. Pineault

Enclosures