UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10029-GAO |
| | ) | |
| DANIEL E. CARPENTER | ) | |

## DEFENDANT'S *EMERGENCY* MOTION FOR PRODUCTION OF DISCOVERY PURSUANT TO FED. R. CRIM. P. 16(a)(1)(E) AND LOCAL RULE 116.3(J) (Defendant's Discovery Motion No. 1)

Defendant Daniel E. Carpenter respectfully moves this Court, on an *emergency* basis, for an order requiring the government to produce certain discovery subsequent to the initial discovery period pursuant to Fed. R. Crim. P. 16(a)(1)(E) and Local Rule 116.3(J).

The defendant has an urgent need to examine a 60 gigabyte computer hard drive currently in the possession of the government (1) which is material to preparing the defense, (2) which the government intends to use in its case-in-chief (including during pre-trial videotaped testimony of a government witness scheduled for **May 6, 2005**), and (3) to which the government has refused direct and unfettered access by the defendant's forensic computer consultant.

This motion is made on an emergency basis due to the fact that the government seeks to conduct the videotaped *trial testimony* of one of its witnesses – Ms. Linda Jokinen ("Jokinen") – on **May 6, 2005** and many of the files from the subject hard drive that are currently inaccessible were created and/or maintained by Jokinen.

This is the defendant's first Rule 16 discovery motion.[1]  In further support hereof, the defendant states as follows:

1.    In a March 9, 2004 letter to the defendant's trial counsel at the time, the government disclosed the following:

> In addition to the foregoing paper records, the government also is in possession of a computer hard drive containing electronic records of Benistar Property Exchange Trust Co. that was produced to the government in the course of its investigation.  If the defendant wishes to receive a copy (image) of that hard drive, defense counsel should deliver a 60 gigabyte hard drive to the United States and the government will arrange to transfer a copy onto that drive.[2]

2.    On March 11, 2004, as requested, the defendant sent the FBI a blank 120 gigabyte hard drive for use in copying the 60 gigabyte Paley/Jokinen Hard Drive.

3.    Rather than a "mirror" image of the Paley/Jokinen Hard Drive as promised by the government, the FBI instead simply provided copies of numerous "imaged" files which purportedly originated from the Paley/Jokinen Hard Drive.  In light of this clearly unacceptable production, on March 19, 2004 the defendant sent the FBI a new 80 gigabyte hard drive for the production of the "mirrored" copy – and not simply imaged files – of the Paley/Jokinen Hard Drive.  In response, the FBI supplied a new "copy" of the Paley/Jokinen Hard Drive.

---

[1] The defendant previously filed a motion pursuant to Rule 17 for the issuance of a subpoena to the government's expert witness.  Although the subpoena has not yet been issued or served, due to the recent withdrawal of defendant's trial counsel, the government does not object to the subpoena.  See 3/24/05 Hrg. Tr. at 3  ("Your Honor, the government is not going to oppose the [Rule 17] motion.").

[2] The defendant subsequently learned that the hard drive belonged to and was produced by the president of BPE-Newton, Mr. Martin L. Paley ("Paley").  See Superseding Indictment ¶¶ 11-12.  Jokinen was Paley's chief administrative officer (and is also his cousin) who maintained most, if not all, of Paley's computer files. The original hard drive in the government's possession is hereinafter referred to as the "Paley/Jokinen Hard Drive."

4.    However, the defendant's then computer consultants had substantial difficulty examining, opening, reading and otherwise capturing certain of the data, files and documents contained on the "mirrored" Paley/Jokinen Hard Drive provided by the FBI. For example, many files were password-protected or encrypted and the passwords were not provided. Furthermore, numerous other files had been deleted and could not be retrieved.[3]

5.    The FBI then suggested that it would copy the contents of the Paley/Jokinen Hard Drive onto several CD-ROM disks and into a format searchable via an internet web browser. This was also unacceptable, since the defendant would not be able to determine whether all data – including the files that had been deleted – had been copied.

6.    Consequently, in the parties' Joint Status Report dated April 1, 2004 (Docket No. 9), the defendant requested that the discovery deadlines be extended to permit the defendant "to review the contents of a computer hard drive produced by the government that the defendant has not yet been able to access due to technical issues and password protections."

7.    Further efforts by the defendant's then computer consultants regarding the Paley/Jokinen Hard Drive also proved unsuccessful. As a result, in the parties' Joint Memorandum dated May 27, 2004 (Docket No. 17), the defendant made the following request:

> Access to the original Martin Paley hard drive at a mutually agreeable time and subject to mutually agreeable conditions to resolve issues regarding deleted or otherwise inaccessible files.

---

[3] The defendant in no way suggests that the government is to blame for these deletions. Rather, upon preliminary analysis, it appears that the deletions may have occurred while the Paley/Jokinen Hard Drive was still in the possession, custody and control of Paley and Jokinen.

8.      The defendant's then computer consultants determined that, absent direct and unfettered access to the *original* Paley/Jokinen Hard Drive, which remains in the government's possession, the deleted, password-protected or encrypted files could not be accessed by the defendant.

9.      This issue was highlighted to the government in a letter dated May 27, 2004, where defendant's counsel explained why direct and unfettered access to the *original* Paley/Jokinen Hard Drive was necessary. "The basis for this request is that the defense has not been able from the copies of the drive provided by the government: to determine when and by whom certain materials on the drive were deleted, including, for example, Linda Jokinen's Merrill Lynch and Gerry Levine files; to recover all such files; to determine when and by whom the recycle bin on the drive was disabled; and to recover the files located in the recycle bin."

10.     In a letter dated June 10, 2004, the government responded to the defendant's request regarding the Paley/Jokinen Hard Drive as follows: "With respect to the Martin Paley hard drive, I will ask the computer expert at the FBI who provided you with copies of that drive to telephone the technician whose name you recently gave to me. Hopefully, they can work out the technical issues/questions that you have raised."

11.     No such resolution was achieved and the defendant's then computer experts were not allowed to examine the original Paley/Jokinen Hard Drive. Yet, inexplicably, in the parties' Joint Memorandum dated June 29, 2004 (Docket No. 23), the parties stated that "[t]here are no outstanding 'discovery' issues."

12. In light of the foregoing, Magistrate Judge Cohen issued his final status report which was entered on July 10, 2004 (Docket No. 25), stating that "[a]ll discovery is complete."

13. On September 22, 2004, the government caused the grand jury to return the superseding indictment (Docket No. 34). As a result, on September 24, 2004, the case was once again referred to Magistrate Judge Cohen for "pretrial proceedings." (Docket No. 35.)

14. As part of those pretrial proceedings, the defendant was re-arraigned on October 7, 2004 and was re-released on personal recognizance that same day. However, without any further discussion about pretrial issues – including discovery in general or the Paley/Jokinen Hard Drive in particular – Magistrate Judge Cohen returned the case to this Court.

15. On November 15, 2004, this Court held a status conference. No discussion of the issues involving the Paley/Jokinen Hard Drive occurred nor has any resolution been achieved.

16. As a result of his efforts to obtain new trial counsel, the defendant has also retained a new forensic computer consultant. As described in the Declaration of John F. Ashley annexed hereto as **Exhibit 1**, the defendant's new forensic computer consultant has opined that unless he has direct and unfettered access to the *original* Paley/Jokinen Hard Drive at his own laboratory, free from the supervision and observation of government agents, he cannot determine exactly which files have been deleted nor can he attempt to recover them. Nor will he be able to gain access to the files that have been password-protected or encrypted. As described more fully in his Declaration, Mr. Ashley operates

and supervises one of the largest corporate computer forensics laboratories on the East Coast.

17.     Consequently, the defendant files this motion seeking an order requiring the government to produce the *original* Paley/Jokinen Hard Drive to the defendant's forensic computer consultant for inspection, examination and analysis as described herein.

As further reason for granting the motion, defendant respectfully refers this Court to the following Memorandum of Law incorporated herein.

## REQUEST FOR ORAL ARGUMENT

Defendant requests oral argument on the within motion at the Court's earliest convenience.

## LOCAL RULES 7.1(A)(2) & 116.3(F) STATEMENT

Defendant's civil attorney, Richard S. Order, Esq., has conferred with Michael J. Pineault, AUSA, in a good faith attempt to eliminate, resolve or narrow the issue but without success.

## LOCAL RULE 116.3(J) STATEMENT

Defendant hereby certifies that the delay in making this motion is for good cause. Specifically, after the withdrawal of defendant's former trial counsel, which was approved by this Court on March 31, 2005 (electronic order approving Docket No. 55), defendant's contemplated substitute trial counsel – Martin G. Weinberg, Esq. – conducted a preliminary review of the case and identified the issue regarding the inaccessible and deleted files on the Paley/Jokinen Hard Drive as an absolutely critical item in preparing the defense, particularly with respect to the testimony of Paley and Jokinen.

## MEMORANDUM OF LAW

I.    **DEFENDANT'S FORENSIC COMPUTER CONSULTANT SHOULD BE GRANTED DIRECT AND UNFETTERED ACCESS TO THE *ORIGINAL* PALEY/JOKINEN HARD DRIVE.**

Rule 16(a)(1)(E) of the Federal Rules of Criminal Procedure states, in pertinent part:

> Upon a defendant's request, the government **must** permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places . . . if the item is within the government's possession, custody or control and: (i) the item is material to preparing the defense; [and] (ii) the government intends to use the item in its case-in-chief at trial.

Fed. R. Civ. P. 16(a)(1)(E) (emphasis added).

The entire Paley/Jokinen Hard Drive (including the data, files and documents stored therein and deleted therefrom) clearly is material to the defense because all of such files and documents were created and/or maintained by Paley and Jokinen, and the government intends to use certain of the information contained on the Paley/Jokinen Hard Drive in its case-in-chief (including during the videotaped pretrial testimony of Jokinen currently scheduled for May 6, 2005).

Consequently, the entire Paley/Jokinen Hard Drive is discoverable under Rule 16 and the only way the defendant can gain access to the **entire** Paley/Jokinen Hard Drive is for the defendant's forensic computer consultant to examine it without government supervision or observance and using his own laboratory. The government's refusal to provide the *original* Paley/Jokinen Hard Drive appears not to stem from any belief that the data stored on it is immaterial or not discoverable but rather seems to be based on some unstated custodial concern.

The legal issue here is identical to that in <u>United States v. Frabizio</u>, 341 F. Supp.2d 47 (D. Mass. 2004). In <u>Frabizio</u>, the defendant was charged with receiving and/or possessing 33 images of alleged child pornography, all of which were stored electronically on the hard drive of his work computer. After the FBI seized the hard drive, they made a "bit stream" copy of all electronically-stored data on the hard drive. Both the hard drive and the copy were then retained by the FBI. The defendant sought not only copies of the images seized from the computer, but also access to the hard drive itself so that his counsel and computer expert could investigate how and when the images came to appear and be accessed on the computer. The government opposed producing copies of the images and offered instead to make the images available for inspection at an FBI facility.

The court granted the defendant's motion and held that (a) defendant's computer expert could examine the *original* hard drive using his own facilities in New Jersey (instead of those of the FBI), and (b) access to the hard drive was to be limited to defendant's expert and counsel. The court relied on the following factors in making its determination:

- The government's proposal would hinder the defense because the defendant's expert intended to reconstruct certain software processes and then run his own tests.

- Defendant's expert provided a detailed description of the equipment he would need to examine the hard drive and estimated his examination would take approximately 16 hours.

- Defendant's expert planned to conduct an extensive forensic analysis of the hard drive that could not be completed in a single visit to the FBI lab. Since the expert lived in New Jersey, making repeated trips to the FBI facility would be unreasonably burdensome.

- Requiring the defense to conduct their tests at the FBI facility "would make confidentiality impossible," <u>id.</u> at 49, because (a) defense counsel would be precluded from consulting freely with the expert during the examination,

and (b) any tests conducted on an FBI computer would leave a digital roadmap of the processes employed and their results *on the hard drive of the FBI's computer.*

- Defendant submitted a proposed protective order in which access to the hard drive would be limited to defense counsel and the defendant's expert (in light of the sensitive nature of the photographic images contained on the hard drive – an issue not present in the instant case).

- There was no reason to believe that defense counsel or the expert could not be trusted with the material.

Id. at 49-51. See also United States v. Hill, 322 F. Supp.2d 1081, 1092 (C.D. Cal. 2004)

("The government's proposed alternative – permitting the defense expert to analyze the

media in the government's lab at scheduled times, in the presence of a government agent –

is inadequate.").[4]

The same factors that existed in Frabizio and Hill are present in this case:

- The government's refusal to provide defendant's consultant direct and unfettered access, free from government supervision or observance, of the *original* Paley/Jokinen Hard Drive would hinder the defense because the defendant's consultant intends to perform numerous forensic analyses of the Paley/Jokinen Hard Drive using leading forensic software with a view to copying all data and files, accessing the password-protected or encrypted files, and retrieving and copying the deleted files. See Ashley Decl. ¶¶ 6-9.

- Defendant's consultant plans to utilize various workstations, desktops, laptops, servers, and software packages to examine the Paley/Jokinen Hard Drive. The examination is expected to take at least 40 hours of work. The decryption process utilized by the defendant's consultant requires a network of up to 25 computers and a dedicated server. Id. ¶ 10.

---

[4] The importance of the Court's Rule 16 decision in Frabizio was recently underscored by a recent order issued in the same case. In that recent order, the Court granted defendant's motion for additional discovery regarding the government's computer experts in light of the government's *withdrawal* of its original computer expert as a result of information gleaned from the defendant's independent examination of the hard drive in question. See United States v. Frabizio, No. 03-cr-10283-NG (Docket No. 82) (Apr. 21, 2005).

- Defendant's consultant plans to conduct an extensive forensic analysis of the Paley/Jokinen Hard Drive that cannot be completed in a single visit to the FBI lab. Defendant's expert manages one of the largest corporate computer forensics laboratories on the East Coast. He needs to use his own tools in his own lab. Moreover, since the consultant's lab is located in Virginia, making repeated trips to an FBI facility would be unreasonably burdensome. Id. ¶ 11.

- Requiring the defendant's consultant to conduct his tests at an FBI facility would make confidentiality impossible because (a) defense counsel would be precluded from consulting freely with the consultant during the examination, and (b) any tests conducted on an FBI computer would leave a digital roadmap of the processes employed. Id. ¶ 12.

- In light of the substantial experience and reputation of the defendant's consultant (including work performed for prosecutors, police, the FBI, US Customs, and New Scotland Yard), there is no reason to believe that defendant's consultant or defense counsel could not be trusted with the material. Furthermore, defendant's consultant has a fireproof safe and other means by which he can ensure the complete safety and integrity of the Paley/Jokinen Hard Drive while it is in his possession, custody and control. Id. ¶ 13.

In light of the foregoing, it is abundantly clear that the defendant's motion should be granted. The government has failed and/or refused to provide the defendant with *all* of the data contained (or formerly contained) on the Paley/Jokinen Hard Drive. This material is vital to the defense – especially with the videotaped trial testimony of Jokinen scheduled for May 6, 2005 – because it was Jokinen who (along with Paley) created and/or maintained all of the files on the Paley/Jokinen Hard Drive. The only way for the defendant to access all of these files is for the defendant's consultant to utilize his substantial forensic computer analysis experience to examine the *original* Paley/Jokinen Hard Drive in his own lab, free from the supervision or observance of the government's agents. Any assurance from the government that it will permit defendant's consultant to have privacy in the FBI lab is insufficient because his work will be imbedded on the FBI

computer's hard drive and, therefore, will be retrievable by the government after he leaves the lab.

What the court stated in <u>Hill</u> is applicable here as well:

> The defense expert needs to use his own tools in his own lab. And, he cannot be expected to complete his entire forensic analysis in one visit to the FBI lab . . . Defendant's expert is located in another state, and requiring him to travel repeatedly between his office and the government's lab – and obtain permission each time he does so – is unreasonably burdensome. Moreover, not only does defendant's expert need to view the images, his lawyer also needs repeated access to the evidence in preparing for trial.

> \*          \*          \*

> There is no indication that defendant's counsel or expert cannot be trusted with the material. The expert is a former government agent who has a safe in his office and has undertaken to abide by any conditions the court places on his possession of the materials . . . Defense counsel is a respected member of the bar of this court and that of the [First] Circuit. The court has every confidence that he can be trusted with access to these materials.

<u>Hill</u>, 322 F. Supp.2d at 1092.


## CONCLUSION

For the foregoing reasons, the defendant respectfully requests that this Court grant the Motion and order the government **immediately** to produce to Corefacts, LLC and Mr. John F. Ashley the **original** Paley/Jokinen Hard Drive for examination at the facilities of Corefacts without government supervision or observance.


Dated:  April 28, 2005

DANIEL E. CARPENTER,


*Daniel E. Carpenter, pro se*
100 Grist Mill Road
Simsbury, CT 06070
(860) 408-7000


## CERTIFICATE OF SERVICE

I, Daniel E. Carpenter, hereby certify that true and accurate copies of the foregoing Motion and Declaration were served on the government's attorney as appears below by Federal Express overnight delivery on this 28th day of April, 2005:


Michael J. Pineault, Esq.
Assistant U.S. Attorney
Office of the U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210


Daniel E. Carpenter