UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA )
)
v. )
) CRIMINAL NO. 04-10029-GAO
DANIEL E. CARPENTER )
)

## DECLARATION OF MARTIN G. WEINBERG IN SUPPORT OF DEFENDANT'S MOTION FOR FURTHER TRIAL CONTINUANCE

1. My name is Martin G. Weinberg. I am an attorney and a member in good standing of the bar of this Court. I maintain offices at 20 Park Plaza, Suite 905, Boston, Massachusetts, 02116.

2. After being asked by the defendant Daniel E. Carpenter to represent him in this case as trial counsel, I informed Mr. Carpenter that I could not accept that responsibility without first determining the extent of pretrial preparation that would be required and whether I could, in the time allotted prior to trial, adequately and effectively prepare for trial.

3. I first met Mr. Carpenter on March 29, 2005. I was also present in Court at the March 31, 2005 hearing when the Court granted prior trial counsel's motion to withdraw. On April 1, 2005, I began to receive and review case-related materials to assess whether I could enter an appearance and assume trial responsibilities consistent with the July 11, 2005 trial date set by the Court.

1

4. Between April 2, 2005 and April 13, 2005, I conducted an intensive review of a wide variety of legal materials provided to me by Mr. Carpenter and his attorney in the related civil litigation (Richard S. Order, Esq.).

5. On April 13, 2005, I met with Mr. Carpenter for a second time. By this date, based on my preliminary review of the scope of the case, I had reached the conclusion that even with the cooperation of prior trial counsel and the assistance of other attorneys who have been engaged for limited representation, such as Richard Order and Professor Alan M. Dershowitz, I simply could not provide the defendant with effective representation absent a further continuance of the July 11th trial date.

6. On April 25, 2005 Professor Dershowitz and I met with AUSA Pineault and disclosed to him many of the factual and legal reasons that are detailed below in support of an application for further continuance.

7. On Thursday, April 21, 2005, Mr. Carpenter's prior attorneys at Greenberg Traurig LLP caused the delivery of **27 boxes** of materials to my colleague, Robert M. Goldstein, Esq., who has been assisting me in the review of the materials and with whom I would enter an appearance in this case should the Court allow the defendant's motion to continue. A preliminary review of these boxes (which contain more than 31,000 pages of documents received from the government during discovery in this case) has only amplified my original conclusion that there is simply no rational means by which I could competently and professionally represent Mr. Carpenter in

2

this case should trial proceed as scheduled in July 2005. In support of this conclusion, I offer the following specific reasons:

A) Assistant United States Attorney Michael J. Pineault ("AUSA Pineault") has been personally engaged in the investigation and preparation of the criminal case against Mr. Carpenter for more than four years (since early 2001), according to documents disclosed to Mr. Carpenter in pretrial discovery. Defense counsel has a professional and ethical obligation to master all of the facts and circumstances relevant to the pending criminal prosecution so that he knows as much about the universe of information relevant to his client's case as does the prosecutor.

B) This case includes a wide array of documents and prior testimony. Attorney Goldstein has performed a preliminary review of the **27 boxes** forwarded by Greenberg Traurig LLP which revealed the following:

  1) Boxes one through thirteen (1-13) contain general discovery documents received from the government. According to the bate stamping, there are **25,596** pages of documents contained in these thirteen boxes.

  2) Boxes fourteen and fifteen (14-15) contain documents forwarded by the government pursuant to its Brady and Jencks discovery obligations. These documents are bate stamped 25,761 through 31,036 (a total of **5,275** pages of documents).

3

3) Given that these 31,036 pages of documents were forwarded to the defense by the government, I must assume that AUSA Pineault has a working knowledge of all documents contained therein. I therefore believe I have a professional and ethical obligation to study all of these documents to attain the same working knowledge regarding them as the prosecutor.

4) Boxes sixteen and seventeen (16-17) contain the documents identified by the government as trial exhibits. These exhibits, which are numbered 1-213, are bar-coded for entry into the government's trial software program, known as *Sanction II*. A preliminary review indicates that **918 pages** of trial exhibits have been scanned into the *Sanction II* system. In addition to these documents, there are additional exhibits that have <u>not</u> been scanned into the system, which amount to approximately half a banker's box worth of documents (exhibit numbers 114 (audiotape), 147a-147d, 148a-148c, 168, 169a-169f, 170, 192-99, 212 and 213).

5) Boxes nineteen through twenty-four (19-24) contain the witness files assembled by Mr. Carpenter's former attorneys at Greenberg Traurig LLP. This universe of documents appears to be a subset of the discovery provided by the government organized by specific potential witnesses, but it also likely contains documents provided to Greenberg Traurig by Mr. Carpenter's civil litigation attorneys

4

(*i.e.*, documents other than the approximately 31,000 pages provided by the government).

6) Box twenty-five (25) contains materials generated by the limited defense investigation that has been performed to this point, a small amount of materials forwarded to Greenberg Traurig by Mr. Carpenter's civil counsel, the government's expert disclosure documents, the defendant's expert disclosure documents, and other miscellaneous documents.

7) Boxes twenty-six and twenty-seven (26-27) contain "working documents" identified by Mr. Carpenter and/or his civil counsel as being pertinent to his defense.

C) A review of the foregoing materials indicates that there are more than **31,000** pages of raw discovery provided to the defendant by the government. Moreover, in the government's March 14, 2005 automatic discovery letter to prior counsel, wherein the government made its Local Rule 116.2(B)(1) disclosure, the government invited defense counsel to review documents in its possession that were made available to prior counsel during "open file discovery" in this case, but apparently were not copied by prior counsel. This letter indicates that Greenberg Traurig may not have copied and/or the government may not have forwarded all relevant documents during discovery in this case. As such, in addition to all of the documents contained within the 27 boxes forwarded to Attorney Goldstein, there appears to be yet **another universe of documents** within the

5

government's possession that would have to be reviewed prior to a trial in this case.

D) In addition to the 27 boxes of documents forwarded by Greenberg Traurig, I have learned that Martin Paley, the President of Benistar Property Exchange Trust Company Inc ("BPE") and a pivotal witness in this case, produced **19 boxes** of documents in connection with parallel civil litigation in February 2002 and **four to five additional boxes** in July of 2002 according to a Memorandum and Opinion on Plaintiffs Motion to Reinstate Verdict, August 26, 2004, pg 11 fn 16, in the civil case <u>Cahaly v. Benistar Property Exchange Trust Co.</u>, Consolidated Action Nos. 01-0116 BLS2, Massachusetts Superior Court. Given Paley's centrality to the prosecution, a thorough review of these documents by trial counsel in preparation for cross-examining Paley is mandated

E) I have been informed that the government is in possession of the <u>entire</u> civil litigation file and that certain portions of it have been proffered to prior trial counsel pursuant to the government's mandatory discovery obligations. I must therefore assume that the prosecutor is familiar with all of the depositions conducted in the civil case, all of the civil trial transcripts, pleadings, and court orders, as well as all of the documents subpoenaed and produced in the civil case. I have a professional and ethical obligation to master all of this material so that I know as much about it as does the prosecutor.

F) For example, I have been informed by civil counsel (Attorney Order) that the civil case resulted in the following:

1. Over **3,300 pages** of trial transcripts;
2. **Four boxes** of trial exhibits (325 trial exhibits);
3. Over **5,300 pages** of deposition transcripts;
4. Over **12,000 pages** of documents exchanged in discovery;

G) In addition, Benistar Ltd produced 6000 pages of documents to the Government in connection to this investigation, all of which need to be reviewed. Affiant is currently unaware as to whether there is any overlap of the 6000 pages of Benistar Ltd documents and the 31,036 pages of Government discovery provided to him by Greenberg Traurig.

H) Civil counsel's knowledge of and familiarity with these documents and files is simply not transferable to criminal trial counsel, who alone must decide whether and when to make objections, ask certain questions, and introduce certain documents into evidence.

I) As this Court knows, there were several decisions of the Massachusetts Superior Court in its resolution of the civil litigation paralleling the criminal charges in this case. Given the fact that AUSA Pineault has had more than four years to follow the evolving civil litigation, it would be prudent for me to have learned, personally, all of the various allegations contained in the civil litigation. Although Attorney Order is available to assist, I cannot simply unconditionally delegate to civil counsel the responsibility for knowing the scope of information contained in the civil

7

litigation files given the responsibilities of trial counsel and the necessity of trial counsel knowing the breadth of information available to and presumably known by Government counsel.

J) In addition to all of the foregoing, my preliminary analysis of the case so far has identified the need to conduct a meaningful factual investigation of various issues and persons as is more fully particularized in the supplemental *ex parte* sealed Declaration

K) Various expert witnesses have been disclosed by both the prosecution and defense. These witnesses, if permitted to testify, address a range of complex subjects including but not limited to options investing – its risks and its benefits – and the defendant's particular options investment strategy. Trial counsel needs to fully immerse himself in this subject in order to properly present defense testimony and in order to properly cross-examine the government's testifying expert – Marc Allaire ("Allaire").

L) Many of the exchangors are sophisticated real estate developers and/or investors who had his or her own attorneys. Trial counsel needs to master the documents and depositions of each group of exchangors including not only the seven exchangors listed in the superseding indictment who lost money due to the stock options losses, but also the 120 other exchangors whose § 1031 exchanges were handled successfully by BPE and who did not lose a penny.

M) In conjunction with my preliminary review of the case, I have has also had the opportunity to review the legal pleadings filed by the defense in this

8

case to date. After my preliminary review, I have concluded that there are numerous legal issues that have been identified and should be the subject of pretrial motions in order to enable the court to determine these matters pretrial. For instance,

1) *Motion for Subsequent Discovery*. At my suggestion, the defendant has recently retained a forensic computer consultant given that BPE's president Martin L. Paley ("Paley") and his administrative officer Linda Jokinen ("Jokinen") forwarded a computer hard drive to the government, but, on information and belief, the hard drive contained deleted files material to this case. Additionally, other files on the mirror image of the hard drive which was provided to prior counsel during pretrial discovery could not be accessed because they were password-protected or encrypted. Consequently, the defendant has filed an emergency motion contemporaneously herewith seeking an order requiring the government to produce the <u>original</u> hard drive for an independent examination by the defendant's forensic computer consultant at his facilities to retrieve deleted files and access password-protected files and other potentially relevant data.

2) *Motion In limine regarding Paley's oral and written representations*. All of the oral representations to be relied upon by the government in this case were made by Paley to the exchangors, and all of the written representations to be relied upon

9

by the government were made by Paley or delivered by Paley to the Exchangors. Consequently, I believe a legal basis exists to file a motion *in limine* to exclude evidence of <u>all</u> alleged misrepresentations (oral and written) because none can be attributed to the defendant given that Paley has not been charged as a co-conspirator in this case, nor were any statements made within the parameters of any other exception to the hearsay and confrontation requirements.

3) <u>Motion in limine to exclude evidence of loss</u>. I have learned that the government has taken the official position in its pleadings and in oral argument that BPE's investment gains and losses are not material to the charges returned by the grand jury in this case. Given this position, I believe a motion *in limine* should be filed to exclude evidence of the $9MM loss. If the gains and losses are irrelevant, then what happened to the funds *after* they were obtained by BPE is also irrelevant.

4) <u>Improper venue as to NH Counts: Counts 3 & 4</u>. While I understand the Court has denied a motion to dismiss all counts for lack of venue, there appears to remain a significant issue regarding venue for the two New Hampshire counts (counts three and four of the superseding indictment). Moreover, even if the Court does not dismiss these two counts, a motion *in limine* should be filed to exclude all evidence regarding the New Hampshire exchange.

5) *In limine motion regarding civil case*. Three motions flow from the existence of the civil case: (a) a motion *in limine* to exclude evidence that there was a civil case and/or that a judgment was obtained, (b) a motion *in limine* to exclude evidence of civil liability on specific causes of action such as fraud and conversion, and (c) a motion *in limine* to exclude evidence of any adverse orders issued in the civil case (*i.e.*, pre-judgment attachments).

6) *In limine motion regarding other corporate/white-collar cases*. A motion *in limine* should be filed to exclude evidence of or reference to any other well-known corporate/white-collar cases such as WorldCom, Enron, Tyco, Cendant, Healthsouth, etc.

7) *In limine motion regarding government's summary fact witness*. The fact that BPE lost $9MM at PaineWebber is not contested in this case. As such, a motion *in limine* to exclude all testimony of the government's summary fact witness that $9MM was, in fact, lost, should be considered.

8) *In limine motion regarding government's expert*. Since gains and losses are not material to the scheme as alleged by the Government, it does not matter how the funds were invested (bullish v. bearish, stocks v. options, etc.), and there would therefore be no need for the government's expert testimony regarding stock options. If the alleged crime was inducing the exchangors to part with the funds in the first place, then it does not

11

matter what happened to the funds *after* they were obtained, whether they were invested in stocks v. options, or whether they were invested at all. Finally, the need exists to investigate a motion to exclude the government's expert witness on Daubert/Lanigan grounds.

9) *In limine motion regarding exchangors' attorneys testifying as to meaning of exchange documents*. It is my understanding that the government intends to elicit testimony from exchangors' attorneys regarding their understanding or their clients' understanding of the meaning of the exchange documents. A motion *in limine* needs to be prepared to exclude such testimony on the grounds that the exchangors' state of mind is not a relevant issue in this case; rather, it is the defendant's *mens rea* that constitutes the issue of concern in this case. Moreover, such testimony constitutes hearsay and implicates the attorney-client privilege (which can be waived only by the client, not the government), the exchange documents speak for themselves, and they contain an integration clause stating that all understandings between BPE and the exchangors are contained in the documents.

10) *In limine motion regarding exchangors' testimony of their understanding of the documents*. For the reasons described in the preceding paragraph, any proposed testimony from the exchangors regarding their understanding of the exchange documents should

be excluded--their state of mind is irrelevant to the instant prosecution.

11) *In limine motion to exclude the word "victim."* A motion *in limine* must be filed to preclude the government from referring to the seven exchangors who lost money as "victims." See *Assented to Motion of United States To Take Deposition of Prospective Trial Witnesses* at 1 (Docket No. 56) (April 22, 2005) ("[Darling] is one of seven victims referenced in the Indictment."). The exchangors can be referred to as "victims" only if a crime was committed and only after there has been a conviction.

12) *In limine motion regarding reasons for switching from Merrill Lynch to PaineWebber.* A motion *in limine* should be filed to exclude any evidence as to the reasons why BPE moved its accounts from Merrill Lynch to PaineWebber. Such testimony raises the specter that the jury will infer criminal conduct on the part of the defendant simply because Merrill Lynch decided not to handle BPE's investments after September 2000. Certainly, conclusions and/or inferences drawn by Merrill Lynch employees are irrelevant to the instant prosecution and any arguable relevance is substantially outweighed by the undue prejudice generated by such evidence.

N) The magnitude of pretrial discovery in this and the parallel civil proceeding require an unusual scope of pretrial preparation. First, as described above, I

13

will need to review and master **all** of the pleadings, discovery, depositions and testimony generated in the corollary civil litigation. While *some* of these documents are contained within the **27 boxes** forwarded by Greenberg Traurig, there is at least another **20,000 pages** of documents from the civil litigation which also must be mastered. See ¶7F supra. Second, I will need to learn the history underlying all of Mr. Carpenter's business relationships. Third, if the Court allows expert testimony regarding stock options investments, in addition to learning about stock options, I will need to focus on the causes and results of the historic stock market collapse of the second half of 2000 in order to effectively convey to a jury the overall market and economic conditions that contributed to and/or caused the investment losses in this case.

8. I do not intend to suggest that former trial counsel were not effective in preparing a defense of *their* selection. I have, however, made certain threshold determinations based on my preliminary review of the materials which has generated the need for additional factual and legal investigation as detailed above.

9. I do not believe this case to be simple or straightforward. Knowledge is not simply transferable given the dynamics of a trial and the need for whoever is trial counsel to independently assimilate a wide universe of information from tens of thousands of pages of documents and transcripts and to have that information instantaneously available to trial counsel, who alone can make the strategic decisions of what questions to ask (or not ask) a witness, what objections to make during his adversary's presentation, and how to articulate evidentiary and legal arguments that cannot fully be anticipated by a trial team. The

breadth of pretrial discovery in this case and the complexity of factual and legal issues that permeate this case simply prevent me from satisfying the legal and ethical mandate of providing effective assistance of counsel if a trial is held in July 2005.

10. I estimate that it will take me six months to master fully all of the factual, evidentiary and legal issues in this case and be prepared for trial, notwithstanding my other professional commitments. As such, I would be prepared to file an appearance as trial counsel if this case were continued until November, 2005 for trial.

I declare on this date, April 28, 2005, that the foregoing is true and correct to the best of my information and belief.

_____
MARTIN G. WEINBERG, ESQ.

Dated: April 28, 2005