UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 04-10029-GAO |
| DANIEL E. CARPENTER, | ) ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S EMERGENCY
MOTION FOR FURTHER TRIAL CONTINUANCE TO NOVEMBER 2005**

The United States opposes defendant Daniel E. Carpenter's ("Carpenter's") motion requesting an additional four month continuance in the trial of this case, on three principal grounds: (1) Carpenter substantially overstates the size and complexity of the case; (2) his Sixth Amendment argument fails to acknowledge the three month continuance that he already has received; and (3) substantial interests, including the age and infirmity of several witnesses, militate against a further postponement of the trial.

ARGUMENT

1. <u>Defendant's Motion Significantly Overstates the Size and Complexity of This Case</u>

This case is not particularly large or complex. Seven victims entrusted $9 million dollars to the defendant and his company based on representations that the funds would be held in escrow and returned to them. Instead, Carpenter transferred the funds to a trading account and gambled and lost the money in the options market.

There are five principal categories of documents: (a) the promotional materials and literature that the victims received and on which they relied in entrusting their funds to the defendant's company; (b) the escrow and exchange agreements that the victims executed at the

time they retained the company; (c) wire and deposit records documenting the victims' transmission of funds to Carpenter's company; (d) brokerage records showing what Carpenter, in fact, did with the money; and (e) internal corporate documents relating to the operation of Carpenter's company.

The above-described universe of documents totals approximately 2000 pages. Even within this universe, substantial duplication exists. For example, the promotional materials are largely identical from victim to victim; the same boilerplate escrow/exchange agreements were used for each transaction, etc. The government produced a complete set of the foregoing documents to defense counsel prior to the original April 4, 2005 trial date. They are itemized on the attached exhibit list, which the government also produced to counsel. See Exhibit A.

The government is unclear how the defendant has transmogrified a straightforward fraud case involving approximately 2000 pages of relevant documents into one that allegedly requires six months to prepare for trial because of an asserted need to review tens of thousands of pages of records.

Some of the overstatement seems attributable to double and triple counting by the defendant. For example, defense counsel asserts the need to review documents produced: (a) in the civil litigation; (b) in criminal discovery; and (c) by defendant's corporation as if they were three potentially separate universes of documents. They are not. Virtually everything produced in criminal discovery was obtained from the civil litigation which, in turn, came from defendant's corporation, the victims, and/or the defendant's brokers. They are the same records, oftentimes with the same documents reproduced multiple times.

Defendant likewise describes the government's Jencks and Brady production as if it were

a separate universe of materials. It is not. Again, the bulk of the government's Jencks/Brady production consisted of deposition and trial transcripts and other sworn statements (interrogatory answers, verified complaints, responses to requests for admissions) from the civil litigation. It is therefore inaccurate for the defendant's continuance motion to characterize the Jencks/Brady material and the civil transcripts/pleadings as if they are separate sets of materials.

In addition to double and triple counting, the defendant appears to have included substantial quantities of superfluous records in the universe of materials that he asserts will require six months to review. For example, the funds that each victim transmitted to the defendant to be held in escrow originated from the sale of commercial real estate. The underlying transactional documents from each real estate closing have no relevance to the allegations of the indictment. Yet, the various box and page counts that the defendant underscores throughout his motion include a considerable volume of such closing documents (e.g., offers to purchase, purchase and sale agreements, and the like) – documents that defense counsel need spend little (if any) time reviewing at all.

At the same time that he overstates the quantity of material that counsel must review, the defendant understates the extent of preparedness of his defense team. Carpenter has already effectively tried this case once. He was the defendant in a civil fraud case filed by most of the same victims, which was consolidated and tried in Suffolk Superior Court in November, 2002 (Cahaly, et al. v. Benistar Property Exchange Trust Co., et al., No. 01-0116). Carpenter was represented in the civil case by Connecticut attorney Richard S. Order, who was admitted *pro hac vice* in this case shortly after the indictment was returned.

Based on the government's review of the civil case file, Mr. Order was directly involved

in all facets of the case. He signed the pleadings, he handled the arguments, and he deposed and/or cross-examined at the civil trial almost every witness that the government has stated it intends to call in this case.

The fact that Carpenter has tried the case once, civilly, and has the benefit of having on his criminal defense team the attorney who conducted that trial provides him with a significant advantage. Even if Mr. Order does not assume a speaking role at the trial of this case, he can prioritize for any new attorney the documents and evidence that are relevant, the witnesses who are significant, and the issues that are most critical.

In short, contrary to the impression given by defendant's motion, counsel is not walking into an enormous warehouse of documents that he must painstakingly piece together by himself. He is inheriting a finite case that has been tried once, effectively teed-up for trial again, and comes with an attorney on the defense team who knows the facts as well as, if not better than, anyone.

2. <u>Defendant's Sixth Amendment Argument Fails to Acknowledge the Two Continuances That He Already Has Received</u>

Carpenter's motion also fails to acknowledge the significant amount of additional preparation time that he has already been given. Trial in this case was supposed to start on April 4, 2005. Approximately 11 days before that date, Carpenter's then-lead attorneys, at the firm Greenberg Traurig, requested and received a continuance, until May 9, based on their assertion of an unexpected scheduling conflict involving another case. Almost immediately after receiving that continuance, Carpenter fired Greenberg Traurig and sought a further continuance for the purpose of hiring replacement lead counsel. In response, the Court postponed the trial a second time, from May 9 to July 11.

Carpenter now asserts that his Sixth Amendment right to effective assistance of counsel requires a third continuance. He is wrong. The Sixth Amendment does not vest a defendant with the unqualified right to discharge his counsel shortly before trial and thereby obtain a succession of continuances that frustrate the public's (including the victims') interest in the prompt, fair and ethical administration of justice.

Here, the Court already has granted two continuances totaling slightly more than three months. For the reasons explained above, that is ample time for successor counsel to be retained and prepare for trial, particularly given the knowledge and experience of the other attorneys who make up Carpenter's defense team.

To the extent that Carpenter wishes to retain a particular lead trial attorney, and that attorney has asserted an unwillingness to accept the representation without a further continuance into the late fall, this Court already declined once to grant such a lengthy postponement. Moreover, the case law makes clear that a defendant has no right to representation by a particular attorney when such representation would require undue delay. E.g., United States v. Woodard, 291 F.3d 95, 106-09 (1st Cir. 2002); United States v. Poulack, 556 F.2d 83, 86 (1st Cir. 1977) (the right of an accused to choose his own counsel "cannot be insisted upon in a manner that will obstruct reasonable and orderly court procedure"); United States v. Hallock, 941 F.2d 36, 44 (1st Cir. 1991)("a defendant has no right to representation by a particular attorney when such representation would require undue delay."); United States v. Richardson, 894 F.2d 492, 498 (1st Cir. 1990)(defendant cannot manipulate his right to counsel of choice to delay proceedings); United States v. Allen, 789 F.2d 90, 92, n.4 (1st Cir. 1986) (defendant's right is to effective counsel, not to counsel of his own choice at any cost in terms of delay); Maynard v. Meachum,

545 F.2d 273, 278 (1st Cir. 1976) (court need not tolerate unwarranted delays and may require a defendant to proceed to trial even if he is not entirely satisfied with his attorney).

3.  <u>Substantial Interests Militate Against a Further Postponement of the Trial</u>

Finally, significant countervailing interests militate against a further extended continuance of the trial date.

Of the seven victims in this case, three are over the age of 70. Of these three, one is 89, the second is 84, and the third is 72. Government counsel is informed that the 72 year old has a heart condition and the 84 year old has received treatment in the past for cancer. A fourth victim, although younger, likewise has had cancer.

In addition, a fifth witness, who formerly was employed at defendant's company, is seriously ill and has informed government counsel that she very well may not live to the fall.

In light of these facts, the public interest argues in favor of maintaining the July 11 trial date. Although the government has scheduled videotaped depositions of the two most aged and/or infirm witnesses, testimony by videotape is not the same as live testimony. It is not the same for the jury, which will not have the benefit of live witnesses to assess; it is not the same for the government, which must conduct any videotaped examinations without the benefit of knowing how the court will rule on any evidentiary objections that defense counsel makes; and it is not the same for the witnesses (including the victims), who will be deprived of the opportunity to present their testimony directly to the finders of fact.

## CONCLUSION

For the foregoing reasons, the government requests that the Court deny Carpenter's motion seeking a further four month continuance and order that trial commence, as currently

scheduled, on July 11, 2005.

                                            Respectfully submitted,

                                            MICHAEL J. SULLIVAN
                                            United States Attorney

                       By:

                                            **/s/ Michael J. Pineault**
                                            Michael J. Pineault
                                            Jonathan Mitchell
                                            Assistant U.S. Attorney
                                            U.S. Courthouse, Suite 9200
                                            1 Courthouse Way
                                            Boston, MA 02210

Date: May 3, 2005