UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                                )
UNITED STATES OF AMERICA        )
                                )
        v.                      )   CRIMINAL NO. 04-10029-GAO
                                )
DANIEL E. CARPENTER             )
                                )
_____)
```

## DEFENDANT'S REPLY MEMORANDUM IN FURTHER SUPPORT OF HIS EMERGENCY MOTION FOR FURTHER TRIAL CONTINUANCE TO NOVEMBER 2005

On Friday, April 29, 2005, the defendant filed an emergency motion to continue trial in the above-referenced matter from July 11, 2005 to November 2005. On Tuesday, May 3, 2005, the government filed its opposition to the defendant's motion. The defendant offers the following reply to the government's opposition, addressing the arguments in the order raised by the government.

1.  The government continues to maintain that the case is not complex, arguing that there are only five principal categories of documents that total approximately 2000 pages. (Government Opposition at 1-2). The government's contention that only 2000 pages are relevant to the instant prosecution is somewhat confounding, given that, according to defendant's prior trial counsel, Greenberg Traurig, the government has provided the defendant with approximately 31,000 pages of document in discharging its discovery obligations. Certainly, the mere act of producing this universe of documents reflects an acknowledgment that all of these documents are, at the very least, potentially relevant to the defense of this case. While the government, with the benefit of more than four years of learning and study, might believe the case to be simple, it has undoubtedly reached that conclusion only because it has utilized those four years to crystallize the 31,000 pages of

1

documents into a streamlined prosecution case-in-chief that apparently implicates only 2000 pages of these documents.

Defense counsel, however, has an unqualified obligation to review and learn the entire 31,000 page universe to determine what documents are relevant and exculpatory and what additional areas must be investigated.[1] The government fails to recognize that the defense of a federal prosecution does not mirror the prosecution's case, as many times there exist documents not relied upon by the government that either negate the government's theory of proof or support an affirmative defense. Indeed, the government has not even addressed the separate universe of documents dealing with their chief witness, Martin L. Paley ("Paley").

The government has not denied that Paley turned over approximately 23 to 24 boxes to the government, and it does not contest that it received from Paley a computer hard drive (an issue addressed in a *pro se* discovery motion). Moreover, the government does not identify in its analysis any documents required to cross-examine the government's proposed witnesses, including cross-examination of Mr. Paley. While the government prefers a case focused upon only the exchangors' records, the government has ignored the fact that a defense to this case may rely upon the defendant's good faith and lack of criminal intent, which would be evidenced by the other 120 or so clients who successfully completed their §1031 exchanges.

While the government insists there are overlaps in the defendant's quantification of relevant documents, one must at the very least begin with the 31,000 page production by

---

[1]. Indeed, in the defense of any federal prosecution, the documentary production by the government during the discovery phase of the litigation routinely constitutes the proverbial tip of the iceberg. It is typically this universe of documents that produces some evidentiary and factual leads for the defendant's own, independent investigation.

2

the government, as the defendant logically assumes that the government did not produce multiple copies of the same documents.[2] However, even if there is a complete overlap—i.e., even if every single document relevant to this case is contained in the government's 31,000 pages of discovery, in addition to all other responsibilities of trial counsel, some of which are detailed in the *ex parte* affidavit and some in the publicly-filed affidavit, the three months—i.e., the period between early April 2005 and July 11, 2005—is simply not sufficient to level the playing field presently tilted in the government's favor due to its four years of preparation.

Likewise, whatever Mr. Order's knowledge of documents might be today, that knowledge is not simply transferable to Attorney Weinberg. For example, during cross-examination of Mr. Paley, Mr. Order will not be able to magically transfer his knowledge to Mr. Weinberg, such that Mr. Weinberg would suddenly realize what question to ask or not ask as a follow-up to a prior question. Moreover, because Mr. Order is not a criminal defense practitioner, he is unable to critically analyze his factual base of knowledge in the appropriate context of established criminal law. Factual knowledge is of little utility if one cannot apply it to established case law to determine what facts are potentially helpful, objectionable, or admissible. Therefore, for all of the reasons discussed in the defendant's original emergency motion to continue the trial to November 2005, the fact that Mr. Order might have a working knowledge of the civil trial should not deprive the defendant of the right to representation by effective and competent criminal trial counsel.[3]

---

[2]. The defendant did not represent that each universe is separate, but instead only that they exist.

[3]. In any event, on July 14, 2005, Mr. Order is scheduled to begin a civil antitrust trial in the United States District Court for the District of Connecticut in Hartford that the parties anticipate will last three to four weeks. He is serving as lead counsel in that four-year old case.

3

2. The government asserts that the defendant "is wrong" in asserting that his Sixth Amendment right to effective assistance of counsel requires a continuance of the trial in this case to November. (Government Opposition at 5). While the defendant does not quarrel with the basic premise of the government's argument—that a defendant does not have an unqualified right to the counsel of his choosing, that legal maxim is simply not applicable to the unique procedural posture of this case. The cases cited by the government involve the routine dynamic where a defendant already has competent counsel to represent him at trial, he wishes to switch counsel on the eve of trial, and the court rejects his request to terminate existing counsel. In this case, the Court has already determined that there was a total breakdown of communication between the defendant and prior counsel and therefore appropriately allowed Greenberg Traurig to withdraw as counsel in this case. As such, unlike the cases cited by the government, the issue presented by this motion is not the defendant's preference of counsel, but instead his lack of <u>any</u> criminal trial counsel.

For example, in one case cited by the government, <u>United States v. Woodward</u>, 291 F.3d 95, 106-09 (1st Cir.2002), the district court denied the defendant's motion to continue in order to obtain new counsel, thereby forcing the defendant to continue to trial with the attorney that had represented him throughout the proceedings. <u>Woodward</u>, 291 F.3d at 107-109. On appeal, the First Circuit addressed whether the district court erred in denying the defendant's motion to continue the trial to permit original counsel to withdraw. In this case, the Court has already addressed the issue whether prior counsel should be allowed to withdraw and, in balancing the equities (and unlike the string of cases cited by the government), has allowed Greenberg Traurig to withdraw. As a result, the cases cited by the government are inapposite. <u>See, e.g.</u>, <u>United States v. Poulack</u>, 556 F.2d 83 (1st

Cir.1977) (district court rejected defendant's request for counsel to withdraw); United States v. Richardson, 894 F.2d 492 (1st Cir.1990) ("The sole issue presented by this appeal is whether the district court erred in denying Richardson's request to substitute a privately-paid lawyer for his court-appointed lawyer on the morning of trial."); United States v. Allen, 789 F.2d 90 (1st Cir.1986) (addressing issue whether defendant's "Sixth Amendment right to effective assistance of counsel was violated by the district court's failure to inquire adequately into his request for substitute counsel"); Maynard v. Meachum, 545 F.2d 273 (1st Cir.1976) (issue whether defendant's waiver of counsel was competent, intelligent and voluntary).

In Wheat v. United States, 486 U.S. 153, 159 (1988), the Supreme Court noted that the "essential aim of the [Sixth] Amendment is to guarantee an effective advocate for each criminal defendant rather than to ensure that a defendant will inexorably be represented by the lawyer whom he prefers." In this case, since the defendant has no effective advocate prepared to represent him at trial, it simply is not an issue of preference but of necessity. Thus, the essential aim of the Sixth Amendment will be frustrated unless the Court allows the defendant's emergency motion to continue.

3.   While the defendant understands the government's concern for the wishes of the purported "victims" in this case for a July trial, the Court must ascribe priority to the defendant's Sixth Amendment right to the effective assistance of counsel over the wishes of the alleged "victims." Today is May 4, 2005, and the defendant does not have a lead trial attorney experienced in the practice and procedure of federal criminal law. The alleged "victims" in this case have already secured a civil judgment against the defendant and hence their desire for a trial in the criminal process is nothing more than a base desire

5

to exact retribution. Indeed, it is precisely because of the alleged "victims'" bias and anger towards the defendant and their desire to exact retribution, that the defendant needs the hand of experienced criminal defense counsel to represent him during a trial in this case.

Likewise, while the government believes that videotaped depositions are a poor substitute for live trial testimony, Rule 15 of the Federal Rules of Criminal Procedure was created to solve the very problems presented in this case, where several of the government's witnesses are apparently elderly or ill. Rule 15 affords the government ample opportunity to preserve the testimony of any witness the government believes will be unavailable for a November 2005 trial date. While the government might prefer live testimony, there is nothing constitutionally or practically deficient about the process created by Rule 15.[4]

4. In arguing that "[t]his case is not particularly large or complex," the government states:

> "Seven victims entrusted $9 million dollars to the defendant and his company based on representations that the funds would be held in escrow and returned to them. Instead, Carpenter transferred the funds to a trading account and gambled and lost the money in the options market."

(Government Opposition at 1). These few sentences actually support the defendant's contention that the complexity of this case warrants a continuance of trial. The government intends to call an expert to testify regarding the options market and the unreasonably risky trading of the defendant, hence the government's assertion that the defendant "gambled" and "lost" the money. As such, defense counsel will not only have to review and understand the universe of documents at issue in this case, he will need to obtain a working

---

[4] The government has already noticed the Rule 15 depositions of two of its witnesses for May 5 and 6, 2005. The defendant does not object to the government noticing depositions of additional witnesses at mutually convenient times prior to November 2005, if necessary.

knowledge of the complex industry of options trading, as well as master the arcane section of the Tax Code regarding 1031 like-kind exchanges. Clearly, counsel's obligation to learn these two complex industries, such that counsel can conduct effective cross-examination of the government's expert and other witnesses and prepare an affirmative defense, illuminates the defendant's need for a continuance of the trial.

## Conclusion

For the foregoing reasons, the defendant respectfully requests that this Court grant a four-month continuance of the trial to November 2005.

## Request for Oral Argument

The defendant respectfully requests oral argument on his motion to continue trial.

DANIEL E. CARPENTER,
By his attorney,

Alan M. Dershowitz, Esq.
(BBO #121200)
1563 Massachusetts Avenue
Cambridge, MA 02138
(617) 496-2187

Dated: May 4, 2005

## CERTIFICATE OF SERVICE

I hereby certify that a true and accurate copy of the foregoing Motion was served by hand delivery on this 4th day of May, 2005 on Michael J. Pineault, Esq., Assistant U.S. Attorney, Office of the U.S. Attorney, 1 Courthouse Way, Suite 9200, Boston, MA 02210.

Alan M. Dershowitz, Esq.