UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) |
| | ) |
| DANIEL E. CARPENTER | ) |

CRIMINAL NO. 04-10029-GAO

# DEFENDANT'S VERIFIED EMERGENCY MOTION TO TRANSFER VENUE TO THE DISTRICT OF CONNECTICUT PURSUANT TO FED. R. CRIM. P. 21(b)

Defendant Daniel E. Carpenter, through undersigned counsel, respectfully files this emergency motion to transfer this case in its entirety to the District of Connecticut in the interest of justice and for the convenience of the parties and witnesses pursuant to Fed. R. Crim. P. 21(b).

This emergency motion is brought at this stage of the proceedings given a recent decision of the District of Connecticut in a related case wherein the defendant's rights under Rule 21 were implicated, and because the relevant factors to be considered by the Court for a transfer under Rule 21(b) weigh heavily in favor of transfer of this case to the District of Connecticut. See United States v. Lopez, 343 F. Supp. 2d 824, 835 (E.D. Mo. 2004) ("It does not necessarily follow from the mere fact that venue is proper in this district that the trial of the case must necessarily be held in this district") (transferring trial to defendant's home district in Florida).

Mr. Carpenter, who was born and raised in Connecticut, who currently lives and works in Connecticut, and who has at all relevant times alleged in the Superseding Indictment ("SSI") (Docket No. 34) lived and worked in Connecticut, would suffer substantial inconvenience and additional expense and be unfairly prejudiced absent a transfer due to the strong interest of a

criminal defendant to be tried in his home district.[1]  See, e.g., United States v. Martino, 2000

U.S. Dist. LEXIS 17945, at *19 (S.D.N.Y. Dec. 14, 2000) ("Most relevant here is the location of

the defendant.  Courts in this district have accorded greater weight to the defendant's interest in

being tried in the district of his residence than to any other factor"); United States v. Russell, 582

F. Supp. 660, 662 (S.D.N.Y. 1984) ("wherever possible, defendants should be tried where they

reside"); United States v. Kennedy, 1986 U.S. Dist. LEXIS 24988, at *2 (E.D. Pa. May 28, 1986)

("it is preferable to try a defendant in the district where he resides.").

Furthermore, (i) Mr. Carpenter's wife serves as chairman and chief financial officer of an

80-employee company based in Simsbury, Connecticut, and it would be physically impossible

for her to effectively discharge her managerial duties, attend her husband's trial each day in

Boston, provide support to the Carpenters' only child who attends Trinity College in Hartford,

and somehow also manage to take care of the Carpenter household which includes several pets;

(ii) according to MapQuest, the Carpenter's home in Simsbury is only 12 miles and 28 minutes

from the federal courthouse in Hartford, but is 112 miles and more than two hours from the

federal courthouse in Boston (and with rush-hour traffic heading into and out of Boston each

workday, the actual travel time is closer to *three hours each way*); and (iii) the Carpenters' only

child, who recently transferred in the middle of her freshman year from Skidmore College in

upstate New York to Trinity College in downtown Hartford so that she could be closer to her

parents during this very difficult time in the Carpenter family, would be unable to attend her

father's trial absent a transfer (which she otherwise would be able to accomplish if the trial were

---

[1]  The SSI alleges that Mr. Carpenter is "a resident of Connecticut" and that "[h]is office is located at Benistar's
corporate headquarters in Simsbury, Connecticut."  SSI ¶ 3.  Simsbury is a suburb of Hartford.  According to
MapQuest (www.mapquest.com), Simsbury is only 12 miles from the federal courthouse in Hartford.

held in Hartford because, according to MapQuest, Trinity College is only a 5-minute drive from the federal courthouse in Hartford).

Additionally, of the approximately 50 witnesses planned to be called in this trial (including the 27 witnesses already disclosed by the government), more witnesses live in Connecticut than in Massachusetts and the vast majority live in Connecticut, New York and New Jersey – meaning that a transfer to the District of Connecticut is clearly in the best interests of the witnesses in this case. Furthermore, two of the government's chief witnesses – both former employees of Benistar, Ltd. who worked with Mr. Carpenter in Connecticut (one of whom was the sole live fact witness to have testified before the grand jury and the only witness to have received immunity from the government) – also live in Connecticut.[2]

Mr. Carpenter also would be severely prejudiced and inconvenienced absent a transfer because a trial in Boston would cause an undue hardship to and burden on his wife and daughter, both of whom plan on attending each day of the trial if it is held in Hartford. See Kennedy, 1986 U.S. Dist. LEXIS 24988, at *2-3 (granting transfer to defendant's home district where "the defendant's wife and children . . . could not otherwise attend the trial and offer emotional support to the defendant.").

Finally, Connecticut is clearly the "nerve center" or "center of gravity" where the alleged criminal acts occurred, if they occurred at all. Mr. Carpenter is the only person or entity that has

---

[2] The government's witness list identifies the following number of witnesses and their locations: MA – 15, NY – 6, CT – 3, NH – 2, and NJ – 1 (total = 27). Although Mr. Carpenter's witness list is not yet due to be disclosed to the government, Mr. Carpenter currently intends to call the following number of witnesses from these locations: CT 15, NY – 2, NJ – 1, FL – 1, IL – 1 (total = 20). Consequently, when the estimated 20 witnesses contemplated by Mr. Carpenter are included, the geographic distribution of the approximately 47 witnesses in this case breaks down as follows: CT – 18 (38%), MA – 15 (32%), NY – 8 (17%), NH – 2 (4%), NJ – 2 (4%), FL – 1 (2%), and IL – 1 (2%). Furthermore, at this stage of the proceedings, Mr. Carpenter is not required to make specific showings or submit affidavits or witness lists. See United States v. Coffee, 113 F. Supp. 2d 751, 755 n. 5 (E.D. Pa. 2000) ("we cannot agree that our findings must be driven by affidavits or specific showings as to each witness regarding either their specific inability to be present for trial or the testimony they would give.").

been indicted in this case. The SSI makes clear that all of Mr. Carpenter's actions and all of the

events that the government alleges constitute a crime were committed in Connecticut (*i.e.*,

causing Benistar Property Exchange Trust Co., Inc. ("BPE") to invest in stock options at the

New York offices of Merrill Lynch and PaineWebber). See, e.g., SSI ¶¶ 2-3, 8, 11, 13-15, 26,

28, 31-33, 38-39, 42, 44, 46-49, 51.

As further reason in support hereof, defendant respectfully refers this Court to the

following Memorandum of Law incorporated herein.

## REQUEST FOR ORAL ARGUMENT

Defendant requests oral argument on the within motion at the Court's earliest

convenience.

## LOCAL RULE 7.1(A)(2) STATEMENT

Defendant's counsel, Jack E. Robinson, Esq., has conferred with Michael J. Pineault,

AUSA, in a good faith but unsuccessful attempt to resolve or narrow the issue.

## MEMORANDUM OF LAW

## I.    THIS CASE SHOULD BE TRANSFERRED IMMEDIATELY TO THE DISTRICT OF CONNECTICUT

### A.    Legal Standard

Rule 21(b) of the Federal Rules of Criminal Procedure states, in pertinent part:

(b) **For Convenience**. Upon the defendant's motion, the court may transfer the
proceeding . . . against that defendant to another district for the convenience of the
parties and witnesses and in the interest of justice.

Fed. R. Crim. P. 21(b). "The defendant bears the burden of justifying a transfer under Rule

21(b)." United States v. Guastella, 90 F. Supp. 2d 335, 338 (S.D.N.Y. 2000).

"Disposition of a Rule 21(b) motion is vested in the sound discretion of the district

court." United States v. Maldonado-Rivera, 922 F.2d 934, 966 (2d Cir. 1990), cert. denied, 501

U.S. 1211 (1991). See also United States v. Winter, 663 F.2d 1120, 1150 (1st Cir. 1981), cert. denied, 460 U.S. 1011 (1983) ("trial court's decision to deny a change in venue is reviewable under the abuse of discretion standard.").

However, a court's failure to follow "certain minimum procedures" in deciding a Rule 21(b) motion constitutes an abuse of discretion that may be reviewed on mandamus. See In re United States, 273 F.3d 380, 387 (3d Cir. 2001) (requiring "a sufficient explanation of the factors considered, the weight accorded them, and the balancing performed."); In re Hampers, 1990 U.S. App. LEXIS 23242, at *5 (1st Cir. 1990) (issuance of writ of mandamus to the District of New Hampshire reversing decision to retransfer case to District of Nevada). Once a criminal case is initiated, the focus of the Court must necessarily shift to protecting the rights of the accused. Mr. Carpenter is the only person or entity indicted in this case, all of his actions that are alleged to constitute a crime occurred in Connecticut, and he is a lifelong resident of Connecticut.

This case is clearly better off transferred to the District of Connecticut – particularly because venue provisions "should, whenever possible, be construed so to permit trial at the residence of the defendant." United States v. Cashin, 281 F.2d 669, 675 (2d Cir. 1960).

**B.**    ***Platt* Factors**

In Platt v. Minnesota Mining & Mfg. Co., 376 U.S. 240 (1964), a criminal antitrust case, the Supreme Court enumerated ten factors that are to be considered by a court in deciding whether to transfer a criminal case under Rule 21(b). They are:

(1) location of [the] . . . defendant; (2) location of possible witnesses; (3) location of
events likely to be in issue; (4) location of documents and records likely to be involved;
(5) disruption of defendant's business unless the case is transferred; (6) expense to the
parties; (7) location of counsel; (8) relative accessibility of [the]place of trial; (9) docket
condition of each district . . . involved; and (10) any other special elements which might
affect the transfer.

Id. at 243-44. Although Platt involved a corporate defendant, "the ten Platt factors are used in

cases involving individual defendants as well." In re United States, 273 F.3d at 388. While none

of the ten factors is alone controlling, "it remains for the court to try and strike a balance and

determine which factors are of greatest importance." United States v. Stephenson, 895 F.2d 867,

875 (2d Cir. 1990), cert. denied, 501 U.S. 1211 (1991).

### (1)    Location of the Defendant

The first of the Platt factors, the location of the defendant, weighs heavily in favor of

transfer to the District of Connecticut. Mr. Carpenter lives in Simsbury, Connecticut with his

wife and daughter, he works at the offices of Benistar located in Simsbury, Connecticut, and he

lived and worked in Simsbury, Connecticut during the entire period of the alleged criminal

conduct. See SSI ¶¶ 3, 8, 13.

Although a defendant does not have an absolute right to be tried in his home district, the

location of the defendant is the most significant factor in any transfer analysis. Courts generally

have recognized that "it is preferable to try a defendant in the district where he resides."

Kennedy, 1986 U.S. Dist. LEXIS 24988, at *2 (transferring case to district of defendant's

residence). See also Russell, 582 F. Supp. at 662 (transferring case to defendant's home district

and noting that "it can be a hardship for defendants to stand trial far away from home"); United

States v. Clark, 360 F. Supp. 936, 944 (S.D.N.Y. 1973) (transferring case to defendant's home

district, where the disruption to the defendant's family life and business occasioned by a criminal trial "is obviously increased by a long trial far away from home").[3]

Mr. Carpenter and his family could not easily commute from their home near Hartford to Boston for trial, since the trip during rush hour would take at least *three hours each way.* Consequently, absent a transfer, Mr. Carpenter would "be forced to choose between the burden of daily commuting or obtaining accommodations in [Boston] throughout the duration of the trial." Kennedy, 1986 U.S. Dist. LEXIS 24988, at *2-3. In actuality, the length of the rush-hour commute would require Mr. Carpenter to stay in a Boston hotel and incur substantial expense during this estimated four-week trial so that he could assist his counsel in preparing for trial following the end of each trial day and ensure his timely appearance in court each morning.

By contrast, trial in Connecticut would permit Mr. Carpenter to return home each night, save the expense of a four-week stay in a Boston hotel, receive the support and comfort of his family each day during and after trial, and in turn provide comfort and support to his wife and daughter at an emotionally trying time. Furthermore, a trial in Boston would make it impossible for Mr. Carpenter's daughter to attend the trial. These considerations also weigh heavily in favor of transfer to the District of Connecticut, where the federal courthouse in Hartford is less than a 30-minute commute from Mr. Carpenter's home. See, e.g., Kennedy, 1986 U.S. Dist. LEXIS

---

[3] See also United States v. Diaz, 1999 U.S. Dist. LEXIS 19228, at *4-6 (E.D. La. 1999) (transferring case to defendant's home district in Texas); United States v. Lima, 1995 U.S. Dist. LEXIS 7796 (N.D. Ill. 1995) (transferring case to defendant's home district in New Jersey); United States v. McDonald, 740 F. Supp. 757, 762 (D. Alaska 1990) (transferring case to defendant's home district in Washington state); United States v. Bein, 539 F. Supp. 72, 73-74 (N.D. Ill. 1982) (transferring case to defendant's home district in New York); United States v. Posner, 549 F. Supp. 475, 477-78 (S.D.N.Y. 1982) (transferring case to defendant's home district in Florida); United States v. Hoover, 1980 U.S. Dist. LEXIS 10778, at *2-3 (S.D.N.Y. 1980) (transferring case to defendant's home district in Texas); United States v. Guastella, 90 F. Supp. 2d 335, 338 (S.D.N.Y. 2000) ("Courts should, wherever possible, try defendants where they reside"); United States v. Barrientos, 485 F. Supp. 789, 791 (E.D. Pa. 1980) (real weight attached to home district); United States v. Herold, 309 F. Supp. 997, 998 (E.D. Wis. 1970) (transferring case from the Eastern District of Wisconsin to the Western District of Wisconsin *solely* because the defendant lived and worked there).

24988, at *2-3 ("If defendant were to be tried in Philadelphia he would be forced to choose

between the burden of daily commuting or obtaining accommodations in Philadelphia

throughout the duration of the trial . . . A similar choice confronts the defendant's wife and

children who could not otherwise attend the trial and offer emotional support to the defendant . . .

This factor clearly favors transfer . . ."); United States v. Fassnacht, 2002 WL 63523 (N.D. Ill.

Jan. 15, 2002) (defendant's residence in New Jersey with his wife and two children favored

transfer of venue from Chicago to New Jersey, since a trial in Chicago could deprive him of his

family's support).

    Mr. Carpenter has lived and worked in Connecticut his entire adult life. Furthermore, he

has no contact with Massachusetts other than the fact that his *former* trial attorneys from the law

firm of Greenberg Traurig, LLP were located in Boston. The first (and most important) Platt

factor clearly favors transfer.

### (2)  Location of Possible Witnesses

    The second factor, location of possible witnesses, also favors transfer. As described in

note 2, supra, more of the possible witnesses in this case are located in Connecticut than in

Massachusetts, and the vast majority of the possible witnesses are located in Connecticut, New

York and New Jersey – making Connecticut a much more convenient forum than Massachusetts

for the vast majority of the witnesses in this case. Moreover, almost half of the government's

witnesses reside *outside* Massachusetts and *none* of the key Merrill Lynch and PaineWebber

witnesses reside in Massachusetts.

    Furthermore, *all* of Mr. Carpenter's potential character witnesses reside and work in

Connecticut. As courts have recognized, the impact of character witnesses is generally greater in

the district where such witnesses live and work. "[T]he defendant has identified a number of

Florida residents who will testify as character witnesses for him and argues persuasively that the impact of their testimony on a jury would be greater in Florida where they live and work than it would be on a jury in New York." United States v. Ohran, 2000 U.S. Dist. LEXIS 6480, at *8-9 (S.D.N.Y. May 12, 2000). See also United States v. Aranoff, 463 F. Supp. 454, 458 (S.D.N.Y. 1978) (location of character witnesses is "significant"). As Mr. Justice Murphy noted in his concurrence in United States v. Johnson, 323 U.S. 273 (1944):

> **Very often the difference between liberty and imprisonment in cases where the direct evidence offered by the government and the defendant is evenly balanced depends upon the presence of character witnesses. . . .** The inconvenience, expense and loss of time involved in transplanting these witnesses to testify in trials far removed from their homes are often too great to warrant their use. **Moreover, they are likely to lose much of their effectiveness before a distant jury that knows nothing of their reputation**.

Id. at 279 (emphasis added).

Based on the government's disclosures, Mr. Carpenter has learned that he was indicted on 19 counts of mail and wire fraud by a federal grand jury in Massachusetts *solely* on the basis of hearsay testimony by an FBI agent reading his notes of various witness interviews, and the live testimony of *only one fact witness* – Ms. Jackie Spielman ("Spielman"), a former employee of Benistar, Ltd. However, Spielman – the only live fact witness to have appeared before the grand jury and the only witness to whom the government has granted immunity – *lives in Connecticut*. Consequently, a transfer of this case to the District of Connecticut would be substantially more convenient not only for Mr. Carpenter, his family, and the vast majority of the other witnesses in this case, but also for the government's sole immunized witness.[4]

Clearly, the location of potential witnesses (and the substantial inconvenience they will suffer having to testify in Boston) clearly weighs heavily in favor of transfer. See United States

---

[4]  The government's other principal witness who previously worked with Mr. Carpenter in Connecticut (Ms. Janet May) also lives in Connecticut.

v. Coffee, 113 F. Supp. 2d 751, 755 (E.D. Pa. 2000) ("Together, a head count of all the witnesses' inconvenience tips very much in favor of [Connecticut], and thus this factor weighs heavily in favor of transfer."). Additionally, to the extent the exchangors will have to travel to Connecticut to testify, the burden on them will be far less than the clearly demonstrated burden imposed on Mr. Carpenter if he must defend himself in Boston. In fact, in the related civil case, five of the exchangors completed their entire direct and cross-examination by multiple parties within the space of two trial days.

### (3)    Location of Events Likely To Be At Issue.

The third Platt factor – the location of the events in issue – generally carries considerable weight. United States v. Alter, 81 F.R.D. 524, 526 (S.D.N.Y. 1979) (transferring case where the "nerve center" of the criminal activity was located outside the district). This important factor also weighs in favor of transfer because the SSI alleges that if any crime was committed at all, it was committed in Connecticut.

The SSI describes the structure of BPE as a "partnership" between Mr. Carpenter's company (Benistar, Ltd.) located in Connecticut (SSI ¶ 2), and a company described as "BPE-Newton" which was owned by Mr. Martin L. Paley ("Paley"), the president of BPE, located in Newton, Massachusetts. SSI ¶ 11. Mr. Paley and his administrative officer (and first cousin) Linda Jokinen, through their company BPE-Newton, handled all sales, all marketing, all administrative functions, all communications with the exchangors, and coordinated their transactions from BPE-Newton's offices in Newton, Massachusetts. SSI ¶ 12. Mr. Carpenter's role, accomplished through his company Benistar, Ltd. located in Simsbury, Connecticut, was merely as an "investment adviser" – handling and investing exchangor funds on behalf of BPE through accounts located at Merrill Lynch and PaineWebber. SSI ¶ 13.

The SSI describes Mr. Carpenter's role as follows:

> CARPENTER opened and controlled the BPE accounts at Merrill Lynch and at
> PaineWebber . . . CARPENTER communicated directly with Merrill Lynch and
> PaineWebber concerning the accounts, including signing wire transfer and disbursement
> requests. CARPENTER also was advised on a regular basis of the account balances.

SSI ¶ 15. It is undisputed that Mr. Carpenter engaged in such activity not in Massachusetts, but
in his offices located in Simsbury, Connecticut. SSI ¶ 3. As a result, *all* of the alleged criminal
activity of investing the exchangors' funds in stock options – the central focus of the SSI – took
place in Connecticut.

In cases such as this, where the vast majority (if not all) of the alleged criminal conduct
took place in another district, courts have not hesitated to transfer the case to the district that was
the "nerve center," Alter, 81 F.R.D. at 526, or the "center of gravity," United States v. Clark, 360
F. Supp. 936, 941 (S.D.N.Y. 1973), of the alleged criminal conduct. For example, in United
States v. Ringer, 651 F. Supp. 636 (N.D. Ill. 1986), the court transferred a case involving
securities fraud and mail fraud charges to the Southern District of New York because most of the
alleged criminal conduct took place there. As the court observed, "[e]ven a cursory glance at the
indictment demonstrates that this factor calls for transfer. Despite an apparent effort on the
Government's part to insert the word 'Chicago' whenever it could into the indictment, almost
every fact alleged either took place in New York or was directed from there by defendants." Id.
at 638.

In this case, the "nerve center" or "center of gravity" of the alleged criminal conduct (*i.e.*,
Mr. Carpenter causing BPE to invest the funds in stock options) clearly occurred or was directed
from Connecticut. By contrast, none of the alleged criminal conduct occurred in Massachusetts.
Because it is clear that the alleged criminal conduct charged in the SSI was centered in
Connecticut, where all of the stock options investments were made and directed by Mr.

11

Carpenter from his offices located in Simsbury, Connecticut (and not in Massachusetts), this factor weighs heavily in favor of transfer.

### (4)    **Location of Documents**

While Mr. Carpenter recognizes that in this modern age of internet communications and electronic mail, the location of documents is perhaps not as important a factor as it was at the time Platt was decided (1964), nonetheless this factor clearly favors transfer. Virtually all of BPE's documents produced to the government in response to a subpoena issued in 2001 are stored in Mr. Carpenter's office in Simsbury, Connecticut. This is especially true with respect to the voluminous Merrill Lynch and PaineWebber account statements spanning more than two years and related documents that are vital to the underlying theory of the government's case (and Mr. Carpenter's defense).

### (5)    **Disruption of Defendant's Business**

Although Mr. Carpenter and BPE are no longer engaged in the Section 1031 property exchange business, Mr. Carpenter's remaining business is managing and overseeing litigation against PaineWebber and other parties arising from the civil case, as well as operating his employee benefit consulting business, from his office in Simsbury, Connecticut. If the trial is held in the District of Connecticut, Mr. Carpenter will be better able to squeeze in at least some of his work during the evenings. He would be unable to do so if the trial were held in Boston.

### (6)    **Expense to the Parties**

Travel, accommodations, meals and related expenses to be incurred by Mr. Carpenter, his wife, and the vast majority of the witnesses in this case will present a major financial hardship to all non-governmental parties if this case is tried in Boston. Conversely, if the trial were held in Connecticut, those incremental expenses would be *de minimis*.

While Mr. Carpenter will suffer a tremendous financial burden if the case is not transferred, the government will hardly suffer any financial pain at all if the case is transferred. While the government may have to bear the minor inconvenience of moving some documents and staff to Connecticut for a four-week trial, that cost is minimal compared to the cost to be incurred by Mr. Carpenter absent a transfer. The government's expense of shuttling in the seven exchangors listed in the SSI from Massachusetts for a couple of hours of testimony each will also be minimal. In any event, "[t]he United States of America has, for all practical purposes, unlimited financial resources to bring to bear. **Unlike the [Carpenters], the Government can, and does, mint money.**" Coffee, 113 F. Supp. 2d at 757 (emphasis added).

### (7)    Location of Counsel

With the recent withdrawal of Mr. Carpenter's Boston-based trial attorneys from the law firm of Greenberg Traurig, LLP, Mr. Carpenter currently does not have trial counsel. Furthermore, while it is doubtless true that the Assistant United States Attorneys currently assigned to this case would have to travel to Connecticut, "**we give little weight to whatever inconvenience th[ese] particular Assistant United States Attorney[s] may suffer for spending a few weeks in [Connecticut].**" Coffee, 113 F. Supp. 2d at 758 (emphasis added). Consequently, this is a neutral factor.

### (8)    Relative Accessibility of Place of Trial

Mr. Carpenter concedes that "[t]he efficiency of modern air transportation renders rather sterile any argument" that one forum is more accessible than the other. United States v. U.S. Steel Corp., 233 F. Supp. 154, 158 (S.D.N.Y. 1964). Consequently, this is also a neutral factor.

## (9)    Docket Condition of Each District

The District of Massachusetts has a far more crowded (and delay-plagued) criminal

docket than the District of Connecticut. This factor weighs heavily in favor of transfer.

According to the *2004 Federal Judicial Caseload Statistics* published by the

Administrative Office of the U.S. Courts, as of March 31, 2004 (the latest date for which data are

available), the District of Massachusetts had 748 criminal cases pending versus only 357

criminal cases pending in the District of Connecticut. Similarly, for the 12-month period ending

March 31, 2004, the District of Massachusetts had a total of 125 juries impaneled (civil and

criminal) while the District of Connecticut had only 87 criminal and civil juries impaneled. See

generally http://www.uscourts.gov/library/statisticsalreports.html. The fact that the District of

Connecticut impanels *30% fewer* juries than the District of Massachusetts demonstrates that the

District of Connecticut is a far less busy court than its sister district in Massachusetts.

Chief Judge Young has recently lamented the crowded and over-worked criminal docket

in the District of Massachusetts. See United States v. Richardson, 324 F. Supp. 2d 339, 340 (D.

Mass. 2004) ("This is a period of unprecedented trial activity in the United States District Court

for the District of Massachusetts. **Criminal trials are up 100%**. . . . For three consecutive

weeks in May-June 2004, the Court sitting in Boston impaneled five cases every Monday while

handling two multi-week cases as well (one running eight weeks). This activity has placed

added strains on an already depleted corps of dedicated court reporters. (We have already lost

one of our very best to a court that is far less busy.) There are other operational challenges as

well.") (emphasis added).[5]

---

[5] Judge Wolf has also voiced concerns that the District of Massachusetts has "limited resources" which are being
strained to the breaking point by virtue of the large number of drug and gun cases clogging the district's docket. See
*Federal Judge Accuses U.S. Attorney of Letting Corruption Slide*, The Boston Globe at B-1 (Feb. 6, 2004).

This factor clearly favors transfer, especially because the government, in its recently-filed opposition to the defendant's motion for a continuance, places substantial emphasis on the "age and infirmity of several witnesses." See Gov. Opp. Br. (Docket No. 62) at 1 (May 3, 2005).

### (10)    Special Considerations

There are several additional special factors warranting transfer of this case to the District of Connecticut.

### (a)    Recent Transfer of FOIA Case

Earlier this year, Mr. Carpenter commenced an action against the Justice Department under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, in the District of Connecticut. Mr. Carpenter's FOIA request was directed to the United States Attorney for the District of Massachusetts and it sought any and all documents provided by a certain business competitor of Mr. Carpenter's to AUSA Michael J. Pineault. In an order dated April 28, 2005, the court in the District of Connecticut (Thompson, J.) transferred the FOIA case to the District of Massachusetts at the request of the government pursuant to 28 U.S.C. § 1404(a). The *sole* basis for transfer of the FOIA case to the District of Massachusetts was the existence of this pending criminal case in the District of Massachusetts. The transfer order also instructed that the case be marked by the clerk as "related" to this criminal matter.

However, in his transfer order, Judge Thompson specifically noted "that presumably [Mr. Carpenter] has been aware throughout the pendency of his criminal case of his rights under Rule 21 of the Federal Rules of Criminal Procedure." Carpenter v. U.S. Dept. of Justice, No. 05-cv-00172 (AWT) (Docket No. 10) at 3, n. 1 (D. Conn. Apr. 28, 2005) (copy attached hereto as

**Exhibit 1**). It was this judicial statement that caused Mr. Carpenter to further investigate his rights under Rule 21 and this motion is a result of that further investigation.[6]

### (b)    Improper Venue as to Counts 3 and 4

Another special factor favoring transfer is that venue in this district is clearly improper with respect to Counts 3 and 4 of the SSI.

"[W]hen a defendant is charged in more than one count, venue must be proper with respect to **each** count." United States v. Geibel, 369 F.3d 682, 696 (2d Cir. 2004) (emphasis added). Furthermore, "[t]he burden of showing proper venue is on the government, which must do so by a preponderance of the evidence." United States v. Scott, 270 F.3d 30, 34 (1st Cir. 2001).

"[V]enue under the mail and wire fraud statutes lies at the place where an individual causes a mailing or wire communication to be **sent or received**." United States v. Donato, 866 F. Supp. 288, 292 (W.D. Va. 1994) (dismissing mail and wire fraud indictment for lack of venue) (emphasis added). See also United States v. Brennan, 183 F.3d 139, 144 (2d Cir. 1999) (dismissing indictment because mail did not move from or into district of prosecution).

Counts 3 and 4 of the SSI involve a *single* exchange transaction performed by BPE for Bellemore Associates, LLC ("Bellemore"). Unlike the other exchangors listed in the SSI, however, Bellemore was located in New Hampshire and its single exchange involved properties located in New Hampshire. The SSI charges that:

---

[6] If this Court transfers the criminal case to the District of Connecticut, it can also *re-transfer* the FOIA case back to the District of Connecticut at the same time because, upon transfer of the criminal case, the *sole* reason for the initial transfer of the FOIA case (*i.e.*, the pendency of the criminal case in Massachusetts) would no longer exist. Furthermore, pursuant to D. Conn. L. Civ. R. 83.7, the file of the FOIA case will not have been transferred to the District of Massachusetts until after 11 days from the date of the transfer order – May 9, 2005 – meaning that a re-transfer of the FOIA case to Connecticut can occur relatively quickly before any proceedings are undertaken, and judicial resources expended, in that case in Massachusetts.

On or about August 9, 2000, $444,659.65 in proceeds from the sale of the Bellemore property was wired from New Hampshire to Mellon Bank in Pittsburgh, PA for the benefit of the Merrill Lynch B01 Account [located in New York].

SSI ¶ 90. See also SSI ¶ 103 (Count 4).

**Since the wire transmission charged in Count 4 was not sent from or received in Massachusetts, venue regarding Count 4 is obviously lacking and Count 4 should be dismissed**. See United States v. Percuoco, 630 F. Supp. 784, 786 (D. Mass. 1986), aff'd, 814 F.2d 806 (1st Cir. 1987) ("An indictment, returned in a district other than where the crime was committed, must be dismissed.").

Count 3 involves simply a facsimile letter sent by an attorney in New Hampshire to BPE-Newton "notifying of forthcoming $444,659.65 wire," which was sent the next day. SSI ¶ 103 (Count 3). However, no funds were transmitted with this letter and, in fact, Count 3 is the *only* count in the SSI that charges a mail or wire transmission that did *not* include the sending of funds. Since venue of Count 4 is improper, venue of Count 3 is likewise improper because Count 3 is multiplicitous of Count 4 (*i.e.*, both counts relate to the transmission of the *same* funds from New Hampshire to Pennsylvania and neither count charges an offense different from the other).[7]

Not only does the lack of venue for Counts 3 and 4 weigh heavily in favor of transfer, but this Court should dismiss Counts 3 and 4 of the SSI for lack of venue pursuant to Fed. R. Crim. P. 12(b)(3) as part of its order transferring this case to the District of Connecticut pursuant to Fed. R. Crim. P. 21(b).

---

[7] Multiplicity refers to charging what should be charged as a single offense in multiple counts. United States v. Serino, 835 F.3d 924, 930 (1st Cir. 1987).

### (c)    <u>Timing</u>

The timing of this emergency motion is appropriate in light of the totality of the circumstances regarding this case. <u>See</u> Fed. R. Crim. P. 21(d) ("A motion to transfer may be made at or before arraignment or at any other time the court or these rules prescribe."). To date, the Court has conducted only one oral argument on a substantive matter (defendant's motion to dismiss in September 2004). Moreover, in light of the unavoidable withdrawal of Mr. Carpenter's trial counsel on March 31, 2005, the posture of this case has changed dramatically – thereby warranting the filing of this emergency motion at this time. Furthermore, the currently scheduled trial date (July 11th) is still two months away. <u>Compare</u> <u>United States v. Maynie</u>, 257 F.3d 908, 915 (8th Cir. 2001) (Rule 21(b) motion denied when made on a Friday and trial scheduled for following Monday). There is more than ample time for the case to be transferred to the District of Connecticut and tried in a timely fashion there.

### C.    <u>Weighing of *Platt* Factors</u>

After considering each of the ten <u>Platt</u> factors, eight weigh heavily in favor of transfer and two are neutral. Consequently, this case should be transferred to the District of Connecticut.

The government will likely respond that six of the seven exchangors listed in the SSI live in Massachusetts and a trial in Massachusetts would be more convenient for them. However, the Constitution protects the rights of the accused, not the convenience of the witnesses. Therefore, the interests of these six witnesses must yield to the overarching Constitutional interests of the defendant, as well as the convenience of his family and the majority of the remaining witnesses to have a trial in Connecticut.

Additionally, one of the six Massachusetts exchangors lives roughly equidistant between the Boston and Hartford federal courthouses and, consequently, he should be ambivalent as to

the location of trial. Mr. Brian Fitzgerald lives in Upton, Massachusetts (SSI ¶ 93), which is near Worcester. According to MapQuest, Upton is 45 miles from the Boston courthouse and only 69 miles from the Hartford courthouse. However, when rush-hour traffic delays heading into and out of Boston are taken into account, Mr. Fitzgerald is basically equidistant from both courthouses.

Moreover, two of the government's Massachusetts witnesses (exchangor Gail Cahaly and her husband Ronald Cahaly) have purposefully availed themselves of Connecticut administrative and judicial proceedings related to this case. Not only did the Cahalys attend *two* administrative hearings in Connecticut that arose from the related civil case, but Gail Cahaly filed a separate lawsuit against BPE, Benistar, Ltd. and Mr. Carpenter in *Connecticut* state court and obtained prejudgment attachments against them.[8] Obviously, the Cahalys (both of whom appear on the government's witness list) have no problems whatsoever traveling to Connecticut regarding this case.

## CONCLUSION

Defendant respectfully requests that the Court grant this motion, immediately transfer this case in its entirety to the District of Connecticut pursuant to Fed. R. Crim. P. 21(b), and in doing so dismiss Counts 3 and 4 of the superseding indictment for lack of venue pursuant to Fed. R. Crim. P. 12(b)(3).

---

[8] In a unanimous decision, the Connecticut Supreme Court reversed and vacated the prejudgment attachments. See Cahaly v. Benistar Property Exchange Trust Co., Inc., 268 Conn. 264, 842 A.2d 1113 (2004).

Dated:  May 5, 2005

                     DANIEL E. CARPENTER,
                     By his attorney,


                     Jack E. Robinson, Esq. (BBO # 559683)
                     2187 Atlantic Street
                     Stamford, CT 06902
                     Tel:  (203) 425-4500
                     Fax: (203) 425-4555
                     E-mail:  Robinsonesq@aol.com


## **VERIFICATION**

    I hereby verify under penalty of perjury, pursuant to 28 U.S.C. § 1746(2), that the factual statements contained herein are true and correct.


Daniel E. Carpenter


## **CERTIFICATE OF SERVICE**

    I hereby certify that on this 5th day of May, 2005, I caused a true copy of the foregoing Motion to be hand delivered to Michael J. Pineault, AUSA, Office of the U.S. Attorney, 1 Courthouse Way, Suite 9200, Boston, MA 02210


Jack E. Robinson