```
               UNITED STATES DISTRICT COURT FOR
                 THE DISTRICT OF MASSACHUSETTS


                                    )
UNITED STATES OF AMERICA,           )
                                    )
          Plaintiff,                )
                                    )   Criminal Action
                                    )   No. 04-10029-GAO
vs.                                 )
                                    )
                                    )
DANIEL E. CARPENTER                 )
                                    )
          Defendant.                )
                                    )



         TRANSCRIPT OF FINAL PRETRIAL CONFERENCE



      BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
             UNITED STATES DISTRICT JUDGE


              United States District Court
             John J. Moakley U.S. Courthouse
                   1 Courthouse Way
              Boston, Massachusetts  02210
                     March 24, 2005
                       2:00 p.m.



                      * * * * * *


             SHELLY M. KILLIAN, RPR, CM, CRR
                  Official Court Reporter
             John J. Moakley U.S. Courthouse
              1 Courthouse Way, Room 3510
                    Boston, MA  02210
                     (617) 737-7117
```

Page 2

```
 1  APPEARANCES:
 2  For the Plaintiff:
 3  Michael J. Pineault
    Jonathan F. Mitchell
 4  United States Attorney's Office
    John Joseph Moakley Federal Courthouse
 5  1 Courthouse Way, Suite 9200
    Boston, Massachusetts  02210
 6
 7  For the Defendant:
 8  A. John Pappalardo, Esq.
    Evan Georgopoulos, Esq.
 9  Greenberg Traurig, LLP
    One International Place
10  Boston, Massachusetts  02110
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

Page 3

```
 1             P R O C E E D I N G S
 2         (The following proceedings were held in open court
 3  before the Honorable George A. O'Toole, Jr., United States
 4  District Judge, United States District Court, District of
 5  Massachusetts, at the John J. Moakley United States Courthouse,
 6  1 Courthouse Way, Boston, Massachusetts, on March 24, 2005.)
 7         THE CLERK:  All rise.  For a final pretrial
 8  conference in the case of United States of America versus
 9  Daniel Carpenter.  This is docket CR 04-10029.  Would counsel
10  please identify yourselves for the record.
11         MR. PINEAULT:  Good afternoon, your Honor.  Michael
12  Pineault for the United States.
13         MR. MITCHELL:  Jonathan Mitchell for the United
14  States, your Honor.
15         MR. PAPPALARDO:  John Pappalardo for Mr. Carpenter.
16         MR. GEORGOPOULOS:  Evan Georgopoulos for
17  Mr. Carter, your Honor.
18         THE COURT:  Good afternoon.  I have a recently
19  filed Rule 17 motion, so recently that I'm not surprised
20  there's not a written opposition from the government.  What's
21  the government's position on it?
22         MR. PINEAULT:  Your Honor, the government is not
23  going to oppose the motion.  Two things, though.  First, I have
24  spoken with the expert who is going to be the recipient of the
25  Rule 17 subpoena.  And just in the interest of disclosing to
```

Page 4

```
 1  defense counsel, he does not believe he has any records or
 2  documents that would be responsive to the request.  The request
 3  targets investment advice he may have given his clients,
 4  investment performance he may have from a previous employment.
 5  I caught him on the phone.  He obviously hadn't had the
 6  opportunity to do a search, but he didn't believe he had
 7  anything.  But either way, the government's not going to oppose
 8  the motion.  The only thing I would note is my hope that there
 9  would be reciprocity.  In other words, if I wanted to serve a
10  similar subpoena on defendant's experts, that they would not
11  object to that.
12         THE COURT:  Mr. Pappalardo?  Or Mr. Georgopoulos,
13  whoever wants to address that, the last point particularly,
14  reciprocity.
15         MR. PAPPALARDO:  Your Honor, I --
16         MR. GEORGOPOULOS:  Your Honor, if I may, I don't
17  want to respond in a blanket fashion, but I would certainly
18  think that by and large to the extent the government seeks
19  reasonable and appropriate impeachment evidence.
20         THE COURT:  Well, there's no objection in
21  principle.  You may find something you want to --
22         MR. GEORGOPOULOS:  That's exactly right, your
23  Honor.
24         THE COURT:  -- discuss.  That's fair enough, I
25  guess.
```

Page 5

```
 1         MR. PINEAULT:  Fair enough, your Honor.
 2         THE COURT:  Okay.  What else then?
 3         MR. PAPPALARDO:  Your Honor, if I may, we -- I am
 4  here today to ask for a continuance of the trial date.  And I
 5  should underscore that it is for personal reasons.  It's not on
 6  behalf of this case or Mr. Carpenter.
 7         I learned on Friday of last week that a fairly
 8  significant matter that I'm involved in has an accelerated
 9  trial schedule.  I learned on Friday afternoon, I attempted to
10  contact Mr. Pineault, was unable to do so but we spoke on
11  Monday.
12         Your Honor, for the past 20 months I've been
13  involved in a matter in Russia involving the -- formerly the
14  richest person in Russia and the largest company in Russia.
15  The individual has been on trial since June of 2003 on a very
16  unusual and unprecedented series of charges involving economic
17  crimes.  Unusual because they've never been charged before;
18  unprecedented because not only haven't they been charged
19  before, the charges changed during the course of the trial.
20         In connection with that, we -- my law firm and
21  principally me -- is providing legal advice to the client on --
22  actually, two of the three clients on trial, Mr. Khodorkovsky,
23  Mr. Lebedev and also to the holding company, which owns various
24  interests including what's now left of Yukos Oil after
25  expropriation by the state.  The matter was -- scheduled is the
```

Page 6

1  wrong word.  We had anticipated based upon the schedule of the
2  trial that the final arguments would take place no earlier than
3  the latter part of April but most probably sometime in May.  I
4  learned on Friday afternoon that the arguments could take place
5  as early as this week or perhaps next week.  Next week being
6  more likely because I checked at 12:30 before coming over here
7  today.
8       My role, your Honor, in that case is significant.
9  We are advising the Russian attorneys with respect to the
10 defenses to the economic crimes.  And, again, they have never
11 tried cases like this before because there haven't been cases
12 like this before.  We wrote the brief that is going to be filed
13 with the Russian courts consisting of an analysis of the case,
14 at least up until this point in time, and are instrumental in
15 the defense.  I should represent to the Court that in no way,
16 shape, or form will I be arguing the case.  I don't speak
17 Russian, although people on our trial -- our immediate trial
18 team at Greenberg Traurig include Russian lawyers out of our
19 Washington office -- but we are providing the structuring of
20 the final arguments that are going to take place in that case.
21      The reason why this is important, your Honor, is
22 that we have no illusions about whether or not the three-judge
23 panel will convict the defendants that are before the court.
24 There's no question but that they will convict them because
25 it's not a level playing field, in very simple terms.  What is

Page 7

1  significant, however, is that under the Russian Constitution,
2  there is a provision that allows for the functional equivalent
3  of the Russian Supreme Court to be the European Court of Human
4  Rights at Strasbourg.  There's a Russian judge on that court.
5  And in an unprecedented manner, the European Court of Human
6  Rights has already accepted jurisdiction of this case.  It's
7  unprecedented because the conviction hasn't been entered yet.
8  But it is critically important to frame the issues in the final
9  argument in a fashion that is conducive to the review of the
10 European court.
11      I should also indicate, your Honor, that along the
12 way we were lead counsel and provided the brief for the Swiss
13 Supreme Court to -- in connection with an MLAT request, Mutual
14 Legal Assistance Treaty, to -- after the Swiss prosecutor froze
15 a substantial amount of money in the order of $6 billion in
16 Switzerland, we wrote the brief that resulted in the unfreezing
17 of those assets based upon the lack of a meritorious case in
18 Russia.  And as recently as last Friday were successful in our
19 collaboration with British attorneys relating to extradition
20 requests for other Russian citizens to bring them into the fold
21 as it relates to this case.
22      It would be impossible for me to do that and try
23 Mr. Carpenter's case at the same time.  And I submit to the
24 Court that, again, I've discussed this matter with
25 Mr. Carpenter, who, as the Court knows, is interested in

Page 8

1  receiving a speedy trial.  He fully is aware of my situation.
2  He wants me to be involved in the trial of his case, and he
3  indicated that if the Court were to see fit to grant a
4  continuance here, that of course there would be -- he would
5  agree to excludable time until the case was tried.
6       I would ask the Court to consider this request.  We
7  have not asked for a continuance in this case, your Honor.  The
8  case was indicted in February of 2004, it was superseded in
9  August of 2004, and we have not asked for a continuance prior
10 to this.  But these are relatively unusual circumstances.  I've
11 never been in this position before, and I ask the Court to
12 consider our request.
13      I understand what Mr. Pineault's concerns are.  If
14 the Court wishes, after Mr. Pineault speaks because he can
15 articulate them, I will address those concerns.
16      THE COURT:  All right.  Mr. Pineault.
17      MR. PINEAULT:  Here are my concerns, your Honor.
18 There are seven victims in this case, whom the indictment
19 alleges were defrauded of cumulatively $9 million by the
20 defendant.  Of those seven victims, three of them are over the
21 age of 70.  One of them is 89, turning 90 this year; another
22 one is 84; the third one is 73.  The 89-year-old lost 300,000;
23 the 84-year-old lost $3.4 -- I'm sorry, 3.2 million; the
24 73-year-old lost 3.4 million.  It is an open question for
25 anyone who's 89 years old how much longer they have.

Page 9

1       In addition to those three, there is a witness, who
2  I view to be an important witness, a former employee of
3  Benistar property, which was Mr. Carpenter's company, who has a
4  very severe liver disease, your Honor.  I spoke with her
5  yesterday.  She quite candidly told me -- she's not old, she's
6  about 50.  She told me she does not think she will be here in
7  the fall, if it were to slide that far.  And she's not frankly
8  doing very well right now.  So I don't have justice one
9  witness, your Honor, I have several witnesses who because of
10 their age or health are question marks.
11      Another victim is a cancer survivor.  He has only
12 one lung now.  His voice box is gone, he's in a wheelchair.  He
13 tells me he's doing fine, but there are no guarantees in life,
14 particularly for someone with his medical past.
15      So my concern is that a continuance -- it sounds as
16 if the continuance would not just be of the one or two-week
17 variety, but it would be a substantial period of time and I'm
18 just not sure my witnesses will make it.
19      Now, the victims, I would say Mr. Pappalardo has
20 offered to take Rule 15 depositions and preserve their
21 testimony that way.  My concern with that is they have a right,
22 your Honor, they have a right not just to testify to a video
23 camera but to testify to the jury, to be here when the jury
24 returns its verdict I think.  They have a right of allocution
25 now at sentencing.  I think it's in their interests -- and I'm

Page 10

1 really here advocating on their behalf -- it's in their
2 interests to see justice done from their perspective in their
3 lifetimes.  And that is why I do have a serious problem with
4 continuing it.
5      I would only add, Mr. Pappalardo has been very
6 frank with the Court.  He does not have a speaking role in the
7 proceedings at Moscow.  I know nothing about them other than
8 what he has told me, which is the same as what he just told the
9 Court, but I think it fair to say the Moscow proceedings would
10 go forward without him.  These proceedings would not.  And I
11 would argue that that should be given some weight as well.
12      THE COURT:  Since we last addressed the issue, has
13 anyone's estimate of the trial time for this case changed?  I
14 think we were in the range of three weeks or so before.
15      MR. PINEAULT:  My estimate, your Honor, now the
16 government should be able, depending on the length of the
17 cross-examination, should be able to complete its case in two
18 weeks.  How much of a case the defense intends to put on, I'm
19 sure they'll reserve that final decision until later, but it's
20 entirely possible we'd bleed into a third week.
21      MR. PAPPALARDO:  Well, your Honor, I can elaborate,
22 if you wish, on my role if that's important to the Court.
23      THE COURT:  Well, actually, perhaps your role in
24 both cases.  I mean, I can't help but notice in this case not
25 only is Mr. Georgopoulos here, but there are appearances

Page 11

1 anyway of co-counsel from New York and Hartford and so on.
2      MR. PAPPALARDO:  Yes, your Honor, there are.  But I
3 would be the one trying the case.  And this matter has -- I've
4 been with the case, your Honor, unlike any of the other
5 lawyers, I have been with the case since January of 2001.  A
6 grand jury subpoena went out in this case in early 2001.  The
7 case was indicted in February of 2004.  I've been involved with
8 the case from the beginning with Mr. Carpenter.  I am really
9 the only one in a position to try the case at this juncture.  I
10 was preparing to try the case, and I will represent to the
11 Court that if the case were to go forward on April 4th, I would
12 be here.  I am simply asking the Court to consider the
13 predicament that I am in, not Mr. Carpenter.
14      And I offered, as Mr. Pineault has suggested,
15 videotape depositions for any witnesses that he wishes, that he
16 thinks may be so infirm that they couldn't last until whenever
17 the continuance would be, again, if the judge saw fit, if your
18 Honor saw fit to grant the continuance.  And if the witness
19 wished to appear before the jury at that time, even with a
20 deposition, then obviously Mr. Pineault can put that witness
21 on.  There is now, you know, based upon the age of the victims,
22 from what I can see, you know, an accelerated sense of urgency,
23 but I offer that solution to the Court to resolve the problem.
24      I will tell you that the Dechert lawyers are not
25 involved in the case in terms of being trial counsel and

Page 12

1 neither is Mr. Dershowitz.  The trial counsel you're looking
2 at, your Honor.
3      THE COURT:  The -- as I understand from what you've
4 said, and correct me if I understand this wrong, you still
5 don't know exactly when the Russian opportunity will present
6 itself?
7      MR. PAPPALARDO:  The only -- your Honor, it's very
8 difficult to describe.  It's nothing like I would have expected
9 prior to 20 months ago.  The entire case is controlled by the
10 prosecution.  They tell the court what to do.  And we received
11 notice on Friday afternoon that the final arguments will be
12 held very soon.  They pressed for a date.  We've been in
13 communication with the Russian lawyers every single day.  They
14 said be prepared to fly over here immediately, and I have two
15 people in Washington prepared to fly over on a phone call
16 notice, as would I based upon the same notice if a continuance
17 were granted in this case.
18      I should also say, your Honor, that the matter has
19 been going on now, as I indicated, on trial since June.
20 They've been in pretrial motions in the case since April of
21 2004.  There is some lengthy -- we anticipate that there will
22 be lengthy arguments.  The prosecutor argues first and then the
23 functional equivalent of the IRS, who is a party to the
24 criminal case, gets to argue.  Then the defendants get to
25 argue, each defendant, in final argument.  Then each lawyer

Page 13

1 gets to argue.  There are several lawyers representing each
2 individual.
3      Your Honor, what we do when we're in Moscow -- I
4 came back from there ten days ago -- is that we collaborate
5 with the Moscow lawyers with respect to focusing on the issues
6 that are going to be important and structuring not only the
7 issues but the arguments in order to frame those issues in an
8 appropriate fashion for the European Court of Human Rights.
9 And obviously this is a fluid situation.  One of the things
10 that I didn't mention is that -- which is probably something
11 that -- well, is clearly something that doesn't occur here,
12 there's a continuing investigation with respect to these
13 individuals.  And that continuing investigation results in, for
14 lack of a better word, evidence introduced by the prosecutor
15 for which there is no discovery.
16      So things change on a daily basis, and you have to
17 be able to react to that against the backdrop of the charges.
18 It's not something that you can mail in.  It's something you
19 have to be present for and interact at night with and early
20 morning with with the Russian counsel.  And again, your Honor,
21 I will not be -- I'll be in the courtroom if I was there, as I
22 always am, but I would not be arguing the case on behalf of any
23 of the defendants.  I'd be interacting with the Russian counsel
24 for purposes I've just described.
25      THE COURT:  One of the things that concerns me,

Page 14

1  without a firm date this may or may not -- I mean, the
2  prediction now is that it's coming soon but it might not, I
3  guess.
4       MR. PAPPALARDO:  Your Honor, it's hard to
5  describe.  I think that what -- if I could give you my
6  analysis.  What is happening is that the Houston court last
7  week in connection with the bankruptcy that was filed on behalf
8  of Yukos Oil denied the petition on jurisdictional grounds.
9  And I think in the wake of that, which occurred last week, the
10 Russian procurator decided to accelerate the trial to have it
11 timed to coincide and have the arguments timed to coincide with
12 the seizure of other oil fields that are in the works.  They
13 seized the main oil field in December, which we were over there
14 for, and they have several more to seize.
15      I think that the best -- the conventional wisdom
16 anyway by the Russian lawyers is that is what is happening.
17 They were told that they would not be permitted to argue any
18 longer and that the final arguments would take place.  And they
19 fully expect that that's what will occur.  None of the motions
20 that they have filed in the case have been allowed in since
21 June.  And for that reason, they said to, you know, please be
22 prepared to come over here right away.  I would represent to
23 the Court that if we were not in court today, I would not be
24 here.  It's that imminent.
25      Now, does that mean the arguments would take place

Page 15

1  next week?  I don't know.  I can't represent to the Court
2  because I simply don't know.  My sense is that it would
3  probably be next week or no later than the beginning of the
4  following week, which also is timed to coincide with the
5  beginning of this trial.
6       THE COURT:  Once the arguments begin, how long will
7  they last?
8       MR. PAPPALARDO:  Your Honor, it -- my sense is that
9  that the arguments themselves would probably last for two
10 weeks.  That's my sense.  There are three lawyers -- four
11 lawyers for one defendant, three lawyers for another.  The
12 government will argue, the equivalent of the IRS will argue --
13 or at least we think he will argue -- the defendants will argue
14 and then there will be a rebuttal by the government and then
15 the matter will be taken under advisement.  I think it would
16 likely -- the way it appears now to me, it would encompass the
17 very time that we had blocked out; that is, the three weeks for
18 this trial.
19      (Pause.)
20      THE COURT:  You may have heard from informal
21 conversations, we're pretty booked is the problem here.
22 Through May we have several criminal trials already planned and
23 so I'm looking at May trying to figure out if I can squeeze
24 this into May.  But before I go to great lengths to do that, I
25 want to be sure May works.  Does it?

Page 16

1       MR. PINEAULT:  Your Honor, I have a trial scheduled
2  in front of Judge Woodlock May 31st, at the very end of the
3  month.  I would be ready to go to him and request a continuance
4  in that one.
5       THE COURT:  I'm thinking earlier in May.  The date
6  I'm looking at is May 9th, a Monday.
7       MR. PINEAULT:  That would be fine with the
8  government.  Wait, let me check.  That would be fine with the
9  government, your Honor.
10      THE COURT:  Mr. Pappalardo?
11      MR. PAPPALARDO:  Your Honor, I don't have my
12 Blackberry with me.  As far as I know it's okay.  If I could
13 just confirm that with your clerk later today.
14      THE COURT:  Well, what I would like to do is
15 reserve myself because I want to find out a little bit about
16 the competing cases.  Among other things, get an assessment of
17 how likely there are to be trials.  Last I heard they were.
18 Things change.
19      Actually, I think what I would like to do is maybe
20 to adjourn this pretrial until next Monday afternoon, just
21 through the weekend, let's do a little investigating.  I leave
22 open the question.  This is not a promise.  I don't know.
23 Because the alternative is to go September at the earliest, I
24 think, and I don't want to do that for a number of reasons,
25 including the ones that Mr. Pineault mentioned but just

Page 17

1  generally.  So why don't we just pause and find out.  We may
2  know actually more from the Russian situation at that point,
3  too.
4       Let's see what's -- what I can find out about the
5  competing cases.
6       MR. GEORGOPOULOS:  Your Honor, if I may, if I could
7  just request a point of clarification on that, are you saying
8  then for present purposes we should assume that the May 9th
9  date is the trial date?
10      THE COURT:  No, you can consider it a candidate.
11      MR. GEORGOPOULOS:  But should we, you know, for
12 example, certain disclosure obligations and other matters --
13      THE COURT:  That's why I want to do it on Monday
14 because it will satisfy the seven-day obligation for the
15 government.  I think that's the next time frame.  We're past
16 the 21 day.
17      MR. PINEAULT:  The 21-day disclosures have been
18 made, your Honor.
19      THE COURT:  The next one is seven, I think.
20      MR. PINEAULT:  It is.
21      THE COURT:  That will be Monday.
22      MR. GEORGOPOULOS:  Unless I was mistaken, I was
23 under the impression the government's exhibit and witness list
24 were due today.
25      THE COURT:  No.  At least seven days.

Page 18

1	MR. PINEAULT:  It's a seven-day rule, and I think
2	what Mr. Georgopoulos is referring to is the rule that provides
3	for computation of time.  When the designated time is fewer
4	than 11 days, you don't count weekends and holidays.  So if you
5	count seven business days, that would be today, your Honor.
6	     THE COURT:  I've never interpreted the local rule
7	that way.  It would be interesting because, you know, sometimes
8	I don't know what our colleagues do.  Do other judges interpret
9	it as excluding, for the purposes of Rule 116 point whatever?
10	     MR. PINEAULT:  I've always treated it as seven
11	calendar days, your Honor.  But the federal rule which
12	Mr. Georgopoulos is turning to right now does say that it's
13	titled Computation of Time.  And it says whatever the time
14	designated by these rules or local rule.
15	     THE COURT:  I don't think anybody's ever thought of
16	it that way but --
17	     MR. PINEAULT:  I'm happy to produce a witness list
18	and also an exhibit list, your Honor.  There's the
19	administrative act of photocopying all the exhibits, which I
20	guess I could go through, in order to get them over there
21	tomorrow.  Or I could wait till Monday.
22	     MR. GEORGOPOULOS:  That's Rule 45, your Honor.  To
23	respond to Mr. Pineault, I do not want to unnecessarily put the
24	government through its paces if the matter is going to be
25	continued to the 9th.  And hence my -- at the same time I don't

Page 19

1	want to prejudice my client by not having access to materials
2	necessary to go forward, if in fact that should be what occurs.
3	     MR. PINEAULT:  Let me do this, your Honor.  If it's
4	acceptable to defense counsel, I will get them the exhibits
5	tomorrow morning because I would very much like to preserve the
6	possibility of the April 4 date.  So I will do that.  If it
7	proves to be unnecessary, so be it.
8	     THE COURT:  Okay.
9	     MR. GEORGOPOULOS:  And the witness list as well?
10	     MR. PINEAULT:  Yes.
11	     THE COURT:  All right.  So we'll just reconvene at
12	2:00 on Monday afternoon.
13	     THE CLERK:  Monday, March 28th.
14	     MR. PINEAULT:  I'm sorry, 2:00, your Honor?
15	     THE CLERK:  2:00.
16	     THE COURT:  Okay.  All right.
17	     THE CLERK:  All rise.
18	     (Adjourned, 2:40 p.m.)
19	         CERTIFICATION
20	     I certify that the foregoing is a correct
21	transcript of the record of proceedings in the above¡entitled
22	matter to the best of my skill and ability.
23	     _____  _____
24	     Shelly M. Killian              Date
25	     Official Court Reporter