UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DANIEL E. CARPENTER )<br>_____) | CRIMINAL NO. 04-10029-GAO |

## DEFENDANT'S MOTION TO DISMISS FOR VIOLATION OF THE SPEEDY TRIAL ACT

Defendant Daniel E. Carpenter, by his undersigned counsel, hereby moves to dismiss the superseding indictment (Dkt. #34) for violation of the Speedy Trial Act, 18 U.S.C. §§ 3161-74 (the "Act").[1] Because more than 70 non-excludable days have already passed since the arraignment, the superseding indictment must be dismissed.

## LOCAL RULE 7.1(A)(2) STATEMENT

Mr. Carpenter's counsel has conferred with Michael J. Pineault, AUSA in a good faith, but unsuccessful, attempt to resolve or narrow the issue.

## REQUEST FOR ORAL ARGUMENT

Mr. Carpenter respectfully requests oral argument on the within Motion at the final pretrial conference scheduled for **Thursday, June 30, 2005, at 2:00 p.m.**

---

[1] Mr. Carpenter's assertion that his rights under the Act have been violated is not at all inconsistent with his prior motion dated April 29, 2005 for a trial continuance to November 2005 (Dkt. #59), which sought to avoid having to proceed with a fundamentally unfair trial on July 11, 2005 with defense counsel who are less than fully prepared. This motion instead looks retrospectively to a violation of the Act that occurred *prior* to the filing of the April 29, 2005 continuance motion, and was triggered by admissions contained in the government's May 31, 2005 brief filed in the First Circuit.

1

## MEMORANDUM OF LAW

**I.   VIOLATION OF THE ACT REQUIRES DISMISSAL**

The Act is designed "to protect a defendant's constitutional right to a speedy trial, and to serve the public interest in bringing prompt criminal proceedings." United States v. Scantleberry-Frank, 158 F.3d 612, 614 (1st Cir. 1998) (quotation omitted). The Act provides that the government must bring a criminal defendant to trial no more than 70 days after the later of the filing date of the indictment or the arraignment. See 18 U.S.C. § 3161(c)(1).

If a criminal indictment is not brought to trial within the 70-day time limit imposed by Section 3161(c)(1), as extended by operation of Sections 3161(h)(1)-(9), the penalty provisions of the Act mandate that the indictment "**shall be dismissed on motion of the defendant**." 18 U.S.C. § 3162(a)(2) (emphasis added). The defendant has the burden of proof to support a motion to dismiss for violation of the Act, id., and failure to move for dismissal prior to trial constitutes a waiver under the Act. Id.

Based upon (i) a careful analysis of the entire docket in this case, (ii) a detailed accounting for every day of the pretrial time period, and (iii) an admission by the government contained in its brief filed on May 31, 2005 in the First Circuit in opposition to Mr. Carpenter's petition for a writ of mandamus, it is clear that the 70-day clock has already expired and the superseding indictment must be dismissed.

**a.   Commencement of the 70-Day Period.**

Where, as in this case, the indictment preceded the arraignment, the 70-day clock begins to run from the date of arraignment. See 18 U.S.C. § 3161(c)(1). The original indictment against Mr. Carpenter was returned on February 4, 2004 (Dkt. #1) and Mr. Carpenter was arraigned on February 24, 2004. See 2/24/04 electronic docket entry.

2

However, since the date of arraignment is itself a "proceeding," and as such excludable pursuant to Section 3161(h)(1), the 70-day period commences on the day *after* arraignment – in this case February 25, 2004.

However, on the date of arraignment, Magistrate Judge Cohen entered an Order on Excludable Time (Dkt. #5) excluding 28 days of time "commencing Tuesday, February 24, 2004, the date of the arraignment herein, and concluding Tuesday, March 23, 2004." Id. Consequently, the 70-day clock in this case actually began to run on **March 24, 2004**.

    **b.**    **April 6, 2004 Status Conference: (13 Days Run Off; 13 Days Elapsed).**

Magistrate Judge Cohen held an initial status conference on April 6, 2004. The next day, April 7th, he issued an Order on Excludable Delay (Dkt. #11) excluding the period "commencing April 6, 2004 and concluding June 3, 2004." Id. Also, the conduct of the status conference on April 6th was a "proceeding" under Section 3161(h)(1), resulting in that date being excluded. Consequently, **13 days** had elapsed by the time the clock was halted on April 6, 2004.

    **c.**    **June 3, 2004 Status Conference: (0 Days Run Off; 13 Days Elapsed).**

At the June 3, 2004 status conference, Magistrate Judge Cohen entered an Order on Excludable Delay (Dkt. #20) excluding time "commencing Thursday, June 3, 2004, and concluding Thursday, July 8, 2004." Id. As a result, the clock remained halted on June 3, 2004 with **13 days** having elapsed.

    **d.**    **July 8, 2004 Status Conference: (0 Days Run Off; 13 Days Elapsed).**

Magistrate Judge Cohen held what was originally envisioned to be a final status conference on July 8, 2004, at which a briefing schedule was set regarding Mr. Carpenter's supplemental motion to dismiss the indictment for lack of venue. However, no order on

3

excludable time was entered at that status conference. Consequently, the clock began to run again on **July 9, 2004**.

    e.    **Order on Excludable Time Entered on July 20, 2004: (11 More Days Run Off; 24 Days Elapsed).**

On Saturday, July 10, 2004, Magistrate Judge Cohen attempted to enter electronically an Order of Excludable Time and Final Status Report dated July 9, 2004, excluding time through September 10, 2004. (Dkt. ##24, 25, 26.) However, this order did not become effective until **July 20, 2004** – the date on which it was entered on the Court's docket. See id. Because the order had no legal significance until it was formally entered on the Court's docket on July 20, 2004, the clock ran 11 days from July 9 through July 19, 2004.

"[W]e hold that when a judge rules on a motion by written order, that motion has not been promptly disposed of under Section 3161(h)(1)(F), even though the order is signed by the judge, **until the order is officially filed by the clerk of court**." United States v. Martinez, 749 F.2d 623, 625 (11th Cir. 1984), reh'g denied, 753 F.2d 1087 (11th Cir. 1985) (quotation omitted) (emphasis added).[2] See also Fed. R. Crim. P. 55 ("The clerk must enter in the records every court order or judgment and the date of entry"); United States v. Schiavo, 504 F.2d 1 (3d Cir.), cert. denied, 419 U.S. 1096 (1974) (failure to reduce an oral order to written form and enter it on the court's docket makes an order null and void); Ludgood v. Apex Marine Corp., 311 F.3d 364, 368 (5th Cir. 2002) (final judgment must be set forth on a separate document and entered on the district court docket in order to be valid); D. Mass. ECF

---

[2] In this case, however, the order purportedly entered by Magistrate Judge Cohen was *unsigned*. The documents identified in the Court's docket as Dkt. ##24, 25 and 26 are identical (*i.e.*, all three docket entries refer to the *unsigned* order dated July 9, 2004). Apparently, the problem was caused by "technical error." (Dkt. #26.) The July 9th order also omits the "/s/ Lawrence P. Cohen" designation above the Magistrate Judge's signature block as required by the Court's ECF Procedures Pamphlet. See *Electronic Case Filing ("ECF") Administrative Procedures Pamphlet*, ¶ J(2) at 7-8 (D. Mass. Oct. 24, 2003).

4

Procedures Pamphlet, ¶ N at 9-10 (requiring electronic orders in a document format to be signed electronically by the judicial officer).³

As a result of Magistrate Judge Cohen's "technical error," which caused the entry in the docket of the July 9th order to be delayed until July 20th, **11 days ran off the speedy trial clock before the order became effective**. Nor did the order's eventual entry on the docket on July 20th cause the order to apply retroactively or *nunc pro tunc* to its purported July 9th issuance date. See United States v. Tibboel, 753 F.2d 608, 611 (7th Cir. 1985) (Posner, J.) ("The Act does not permit retroactive continuances; the continuance must be granted before the time sought to be excluded begins to run."); United States v. Tanner, 941 F.2d 574, 583 (7th Cir. 1991), cert. denied, 502 U.S. 1102 (1992) (order "cannot be a *nunc pro tunc* retroactive justification for previously unauthorized delays."); United States v. Kelly, 45 F.3d 45, 47 (2d Cir. 1995) ("the district court's *nunc pro tunc* 'ends of justice' finding was ineffective to toll the speedy trial clock.").

### f.  Sep. 21, 2004 Hearing on Motions to Dismiss: (0 Days Run Off; 24 Days Elapsed).

Pursuant to Section 3161(h)(1)(F), delay resulting from certain pretrial motions, "from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," id., is excludable from the 70-day clock. Once all papers are filed on a motion, the Act allows the additional exclusion of up to 30 days while the court has the motion "under advisement." See 18 U.S.C. § 3161(h)(1)(J).

---

³ Since the July 9, 2004 order *remains unsigned to this day*, arguably it remains a nullity and the clock continued to run from and after July 20th until Mr. Carpenter filed his supplemental motion to dismiss for lack of venue on August 20, 2004 (Dkt. #27) – causing another 31 days to run off and bringing the total elapsed time to **55 days** by August 20, 2004 (meaning that the 70-day clock expired on **November 5, 2004**). Mr. Carpenter expressly relies on this argument in the alternative.

5

Mr. Carpenter's reply brief on the motion to dismiss for lack of venue was filed on September 16, 2004. (Dkt. #31.) Normally, the 30-day clock under which the Court may take the motion under advisement would begin on the next day – September 17th. However, the Court held a hearing on the motion on September 21, 2004. See 9/21/04 electronic docket entry. Consequently, the 30-day period under which the Court could take the matter under advisement expired on October 21, 2004 (even though the order denying the motion to dismiss was not issued and entered until November 9, 2004 (Dkt. #44)) – meaning **24 days** had elapsed as of that date.

g.  **Nov. 3, 2004 Motion for Excludable Delay: (13 More Days Run Off; 37 Days Elapsed).**

On November 3, 2004, the government filed a motion for excludable delay. (Dkt. #43.) However, the motion was a nullity because, among other reasons, it lacked the required certification under Local Rule 7.1(A)(2). Consequently, the filing of this motion had no impact on the 70-day clock, which continued to run. This fact was confirmed by an electronic docket entry made by the Court on November 5, 2004, stating that "[t]ime has **not** been excluded as to Daniel E. Carpenter." See 11/5/04 electronic docket entry (emphasis added). As a result, the clock continued to run for 13 more days from October 22 through November 3, 2004, with, as of November 3rd, **37 days** having elapsed.

h.  **Nov. 15, 2004 Pretrial Conference: (11 More Days Run Off; 48 Days Elapsed).**

The Court held a pre-trial conference on November 15, 2004, in which the Court tentatively set a trial date of December 6, 2004. See 11/15/04 electronic docket entry. By the date of the pretrial conference, November 15th, **48 days** had elapsed (Nov. 4-14 but excluding

6

Nov. 15th itself pursuant to Section 3161(h)(1)). The Court set a final pretrial conference for November 29, 2004.

### i. Nov. 17, 2004 Motions: (1 More Day Run Off; 49 Days Elapsed).

On November 17, 2004, two "joint" motions were filed: (a) Joint Motion to Continue Trial Date (Dkt. # 45); and (b) Joint Motion for Excludable Delay. (Dkt. #46.) Both "motions" were signed by Mr. Carpenter's attorneys at the time: A. John Pappalardo, Esq. and Evan Georgopoulos, Esq., of the Greenberg Traurig law firm. Since one day (November 16th) had run off the clock, the total elapsed time reached **49 days** once these motions were filed on November 17, 2004.

### j. Nov. 28, 2004 (12 More Days Run Off; 61 Days Elapsed).

#### (1) Motion to Continue (Dkt. #45.)

This motion sought a possible continuance of the December 6, 2004 trial date "subject to further communications between the parties and the Court concerning Speedy Trial Act issues and possible alternative dates." See Dkt. #45. This motion merely sought to set a trial date that was amenable to the parties and the Court in light of Mr. Carpenter's ultimate decision as to the exercise of his rights under the Act. As a result, the motion to continue was simply a motion to set a trial date – which is **not** a motion resulting in excludable time under the Act.

This precise issue occurred in United States v. Brown, 285 F.3d 959 (11th Cir. 2002), where the government filed a similar "motion" that really just "report[ed] on time under the Speedy Trial Act and request[ed] a trial date." Id. at 960. In that case, the district court accepted the government's argument that the filing of this "motion" tolled the 70-day clock under Section 3161(h)(1)(F). The Eleventh Circuit, however, reversed Brown's conviction –

7

holding that the submission was not a "motion" within the meaning of the Act. The Court reasoned that "[i]f the Government could extend the seventy-day period merely by filing a request to set a trial date . . . there would be nothing left of the requirements of 3161(h)(8) and no teeth in the Speedy Trial Act as a whole." Id. at 962. "Accordingly, we find that a document that does nothing more than remind the court that it must set a case for trial under the terms of the Speedy Trial Act is **not a motion** within the meaning of 18 U.S.C. § 3161(h)(1)(F)." Id. (Emphasis added.)

Brown is directly applicable here. Nothing would remain of Mr. Carpenter's speedy trial rights if the 70-day period could be extended merely by reporting to the Court on the amount of speedy trial time elapsed and requesting a trial date. Also, the fact that the motion in this case was a "joint" motion is irrelevant to the time computation required under the Act. Whether made by the government or jointly with the defendant, a motion seeking only to set a trial date is not a "motion" which tolls the running of the 70-day clock.

The First Circuit has not faced quite this situation, but has warned against the use of pretextual "motions" or other procedural devices to circumvent the Act. See United States v. Scott, 270 F.3d 30, 56-57 (1st Cir. 2001) (warning against "loopholes" intended to "avoid the STA timeline"); United States v. Staula, 80 F.3d 596, 602 n.3 (1st Cir. 1996) (First Circuit "will not permit either the district court or the prosecution to jerry-build a 'hearing' in order to thwart the concinnous operation of the Speedy Trial Act"); United States v. Zayas, 876 F.2d 1057, 1058-59 (1st Cir. 1989) (observing that pretextual jury empanelment would not toll speedy trial period). The "motion" merely to set a trial date and report on concerns under the Act falls into this category of "motions" that do not toll the running of the 70-day clock.

8

### (2) Motion for Excludable Delay (Dkt. #46.)

Mr. Carpenter did not consent to the filing of the purported "joint" motion for excludable delay filed on November 17, 2004. (Dkt. #46.) In fact, the very existence of this "motion" was first brought to Mr. Carpenter's attention, ironically, by the government in its May 31, 2005 brief filed in the First Circuit in opposition to Mr. Carpenter's petition for a writ of mandamus – where the government made the following admission:

> There was a brief two-week period in mid-November 2004 when trial was tentatively scheduled for December 6, 2004, **pending Carpenter's decision whether to agree to excludable time under the Speedy Trial Act**.

See In re Carpenter, No. 05-1749 (1st Cir. May 31, 2005), Gov. Br. at 4 n.3 (emphasis added).

The government admits that in mid-November 2004 Mr. Carpenter had not yet decided how he was going to exercise his rights under the Act in terms of a trial date (*i.e.*, whether to proceed to trial in December 2004). As it turns out, Mr. Carpenter did not make that decision until the pretrial conference held on November 29, 2004 (see below), at which time the Court set a trial date – with the consent of Mr. Carpenter – for April 4, 2005. **However, during a two-week period in mid-November 2004, Mr. Carpenter was seriously considering and weighing his options as to whether he would proceed to trial in December 2004**.

The government's statement in its First Circuit brief is an admission by the government that Mr. Carpenter was actively deciding during that two-week period whether to proceed to trial in December 2004 – meaning that the 70-day clock was *not* tolled during the time Mr. Carpenter was evaluating his options.[4]

---

[4] "[T]he federal government is a party-opponent of the defendant in criminal cases." United States v. Kattar, 840 F.2d 118, 130 (1st Cir. 1988) (quotation omitted). Consequently, the government's statement in its First Circuit brief is admissible for all purposes as a binding admission of a party-opponent pursuant to Fed. R. Evid. 801(d)(2).

9

By the time of the November 29, 2004 pretrial conference, **61 days** had elapsed because the period November 17-28, 2004 was *not* excludable under the Act.

k.     **Nov. 29, 2004 Pretrial Conference: (0 Days Run Off; 61 Days Elapsed).**

The Court held a pretrial conference on November 29, 2004, in which the trial was continued to April 4, 2005. The Court entered an electronic order stating that "[a]ll time between 11/29/04 and 4/4/05 is excluded in the interest of justice." See 11/29/04 electronic order. The Court also set a final pretrial conference for March 24, 2005.

l.     **Thurs., Mar. 24, 2005 Conference: (0 Days Run Off; 61 Days Elapsed).**

Mr. Carpenter was not present in Court at the Thursday, March 24, 2005 pretrial conference when Attorney Pappalardo (who was and continues to be involved in the Khodorkovsky trial in Russia) advised the Court:

> I am here today to ask for a continuance of the trial date. And I should underscore that it is for personal reasons. **It's not on behalf of this case or Mr. Carpenter**.

See Transcript, 3/24/05 Conference at 5 (emphasis added). Clearly, this initial continuance was sought not by Mr. Carpenter, but to alleviate scheduling conflicts faced by his counsel.[5]

At the same March 24th conference, Attorney Pappalardo also stated:

> It would be impossible for me to [try the Khodorkovsky case in Russia] and try Mr. Carpenter's case at the same time . . . **Mr. Carpenter who, as the Court knows, is interested in receiving a speedy trial**.

See Transcript, 3/24/05 Conference at 7-8 (emphasis added). Although the Court identified May 9, 2005 as a potentially available trial date, the Court withheld judgment and instructed the parties to return to Court on March 28, 2005. At this juncture, **61 days** had elapsed.

---

[5] Consequently, this Court's statement in its electronic order dated May 17, 2005 that "[t]he trial was then continued further *at the defendant's request* to May 9, 2005" is inaccurate. See 5/17/05 electronic order (emphasis added).

10

    **m.**    <u>**Mon., Mar. 28, 2005 Conference: (0 Days Run Off; 61 Days Elapsed).**</u>

Mr. Carpenter and his wife arrived at the courthouse to attend the conference on Monday, March 28, 2005, but were "shooed away" and dissuaded by Attorney Georgopoulos from attending the conference and sitting in the courtroom. As a result, Mr. Carpenter and his wife waited in the courthouse cafeteria and did not hear this statement made by Attorney Pappalardo:

> If the Court orders us to go forward [on May 9th], I'll go forward. I don't know how much time I'm going to spend dealing with this case or in this country between now and May 9th . . .

<u>See</u> Transcript, 3/28/05 Conference at 4. Thereafter, without inquiring whether Mr. Carpenter himself was expressly aware that his counsel could not commit to prepare to try the case by May 9th, the Court set a May 9th trial date. At this point, **61 days** had elapsed.

    **n.**    <u>**Tues., Mar. 29, 2005 Termination of Counsel: (0 Days Run Off; 61 Days Elapsed).**</u>

Having been precluded by his attorneys from attending the March 28th conference, Mr. Carpenter immediately ordered, on an emergency basis, the transcripts from both the March 24th and March 28th hearings. Those transcripts were delivered to Mr. Carpenter electronically on Tuesday, March 29th. After reading the transcripts, Mr. Carpenter discovered for the first time that Attorney Pappalardo would be unable to commit spending the amount of time necessary to prepare for trial on May 9th. As a result of this discovery, Mr. Carpenter terminated Greenberg Traurig that day. Still **61 days** had elapsed.

    **o.**    <u>**Wed., Mar. 30, 2005 Motion for Excludable Delay: (0 Days Run Off; 61 Days Elapsed).**</u>

On Wednesday, March 30, 2005, Attorney Georgopoulos apparently executed a Joint Motion for Excludable Delay (Dkt. #50) excluding time from April 5, 2005 through May 9,

11

2005. However, Mr. Carpenter neither had knowledge of this document nor did he give his consent to its execution.

Moreover, by this time no attorney at Greenberg Traurig had any authority, apparent or otherwise, to take any action on behalf of Mr. Carpenter in this case since the firm had been terminated on March 29, 2005. Consequently, the purported Joint Motion for Excludable Delay (Dkt. #50) is a nullity and is unenforceable against Mr. Carpenter. See, e.g., United States v. Flemmi, 225 F.3d 78, 88 (1st Cir. 2000), cert. denied, 531 U.S. 1170 (2001) ("a promise of use immunity made independently by an FBI agent exceeds the scope of his actual authority (and is, therefore, unenforceable).").[6] Still **61 days** had elapsed.

### p. Thurs., Mar. 31, 2005 Emergency Hearing: (0 Days Run Off; 61 Days Elapsed).

On Thursday, March 31, 2005, Mr. Carpenter's other counsel filed an emergency motion to continue based on the impossible breakdown in communication and irreconcilable differences between Mr. Carpenter and Greenberg Traurig. The Court granted the motion on the same day in part and set a trial date of July 11, 2005. See 3/31/05 electronic docket entry. The Court also granted the motion of Greenberg Traurig to withdraw. See id. However, there was no discussion at the March 31st hearing (and no representation by counsel) regarding excludable time under the Act. See generally Transcript, 3/31/05 hearing. Thus, **61 days** had still elapsed.

---

[6] In a federal criminal prosecution alleging violations of federal statutes, the district court must apply federal common law. "[F]ederal common law incorporates general principles of contract and agency law." Intergen N.V. v. Grina, 344 F.3d 134, 144 (1st Cir. 2003). "Unless otherwise agreed, authority to act as agent includes only authority to act for the **benefit** of the principal." Restatement of the Law Second, Agency 2d (2000), § 39 (emphasis added). Since the execution of the joint "motion" can in no way be deemed to have been for the benefit of Mr. Carpenter – and was executed by the agent after the agency had been terminated – execution of the document was unauthorized and, therefore, the document is unenforceable against Mr. Carpenter.

q. **Clock Starts Again on April 5, 2005: (0 Days Run Off; 61 Days Elapsed).**

The 70-day time clock began to run again on April 5, 2005 because (a) the Court's electronic order dated November 29, 2004 excluded time only through April 4, 2005; and (b) the joint "motion" purportedly executed on March 30, 2005 by Attorney Georgopoulos was a nullity in that it was executed without authority (apparent or otherwise) and at a time when Greenberg Traurig did not represent Mr. Carpenter in this matter.

r. **April 22, 2005 Motion to Take Depositions: (17 Days Run Off; 78 Days Elapsed).**

On April 22, 2005, the government filed an assented-to Motion to Take Deposition of Prospective Trial Witnesses. (Dkt. #56.) Because the Court granted the motion by electronic order dated April 25, 2005, see 4/25/05 electronic docket entry, the clock restarted on April 26, 2005. Thus, 17 days ran off from April 5 through April 21, 2005, and 78 days had elapsed.

s. **Mr. Carpenter's Emergency Motions Filed: (3 Days Run Off; 81 Days Elapsed).**

On April 29, 2005, Mr. Carpenter filed emergency motions seeking discovery and a further trial continuance to November 2005 in light of his predicament regarding representation. See Dkt. ##57-59. Consequently, the clock stopped on Friday, April 29, 2005.[7]

t. **May Decisions on Motions: (0 Days Run Off; 81 Days Elapsed).**

The Court issued its orders deciding the April 29th motions on May 4, 2005. See Dkt. #63. The next day, May 5th, Mr. Carpenter filed the first of his motions to transfer venue pursuant to Fed. R. Crim. P. 21(b). See Dkt. #66. Those motions were denied in an electronic

---

[7] On April 29, 2005, the Court also belatedly granted the invalid Joint Motion for Excludable Time filed on March 30, 2005. See Dkt. #50.

13

order of the Court dated May 17, 2005, in which the Court made several findings on the record regarding the Act. See 5/17/05 electronic docket entry. In light of the arguments made in this Motion to Dismiss, Mr. Carpenter expressly objects to the findings contained in the Court's May 17, 2005 electronic order regarding excludable time.

 u. **Clock Starts Again on May 18, 2005: (0 Days Run Off; 81 Days Elapsed).**

In light of Mr. Carpenter's objection to the Court's May 17, 2005 electronic order, Mr. Carpenter respectfully contends that the clock started again on May 18, 2005.

 v. **Clock Stopped Upon Mandamus Filing: (2 Days Run Off; 83 Days Elapsed).**

Mr. Carpenter's filing of a petition for a writ of mandamus in the First Circuit on May 20, 2005 tolled the running of the speedy trial clock under Section 3161(h)(1)(E). See United States v. Tyler, 878 F.2d 753, 757 (3d Cir. 1989) (government mandamus petition tolled speedy trial clock until ruling by Court of Appeals). As of the date hereof, Mr. Carpenter's mandamus petition remains pending in the First Circuit. Consequently, **83 days** have elapsed.

 w. **Summary.**

If trial were to commence on July 11, 2005, **at least 83 days** of non-excludable time will have elapsed since the initial arraignment in this case. Alternatively, because Magistrate Judge Cohen never signed his "order" dated July 9, 2004 (Dkt. ## 24-26), see note 3 supra, the 70-day clock expired on **November 5, 2004** (prior to any of this Court's orders on discovery, substantive matters or with respect to excludable time). Either way, the superseding indictment (Dkt. #34) "**shall be dismissed on motion of the defendant**." 18 U.S.C. § 3162(a)(2) (emphasis added).

## **CONCLUSION**

In light of the Supreme Court's recent decision in Arthur Anderson LLP v. United States, 544 U.S. ___, 2005 WL 1262915 (U.S. May 31, 2005) (requiring proof of "consciousness of wrongdoing" for criminal liability), Mr. Carpenter could very well be the only defendant in the United States still on trial for fraud simply for incurring investment losses in the stock market crash of 2000. See also Editorial, *The Sihpol Verdict*, The Wall Street Journal at A8 (June 10, 2005) ("[T]he criminalization of widely accepted business practices *ex post facto* is both unjust and offensive to the rule of law . . . to be convicted of a crime in America you should first have to break the law.").

Consequently, the motion should be granted and the superseding indictment dismissed.

Dated: June 13, 2005

>
> DANIEL E. CARPENTER,
> By his attorney,
>
>
> **/s/ Jack E. Robinson**
> Jack E. Robinson, Esq.
> (BBO #559683)
> 2187 Atlantic Street
> Stamford, CT 06902
> (203) 425-4500
> Robinsonesq@aol.com