UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
        v.                          )   CRIMINAL NO. 04-10029-GAO
                                    )
DANIEL E. CARPENTER                 )
_____)

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF
INVESTMENT LOSSES
(Defendant's Motion *In Limine* No. 1)**

Defendant Daniel E. Carpenter, through undersigned counsel, respectfully moves *in limine* to exclude any evidence proffered by the government of investment losses.

In its brief filed on September 10, 2004 (Dkt. #29) in opposition to Mr. Carpenter's motion to dismiss for lack of venue, the government made the following admissions:

> Whether Carpenter's fraudulent scheme (and his speculative options trading) subsequently resulted in gains or losses is **irrelevant**. The gravamen of the offense was the scheme to obtain funds through fraudulent pretenses.

Gov. Br. at 6 (emphasis added).

These admissions, which are binding on the government as a party-opponent, necessarily mean that the alleged scheme to defraud was simply Benistar Property Exchange Trust Co., Inc. ("BPE") obtaining and investing exchangor funds – **regardless of whether such investments "resulted in gains or losses."**

In light of the government's admissions, Mr. Carpenter now respectfully moves *in limine* to preclude the government from introducing at trial **any** evidence that BPE's investment of the exchangors' funds resulted in losses. The mere fact that losses are

1

charged in the superseding indictment does not imbue such evidence with admissibility. Rather, evidence of losses – like all evidence – must independently conform to the mandates imposed by the Federal Rules of Evidence.

"Evidence which is not relevant is not admissible." Fed. R. Evid. 402. Furthermore, because "the federal government is a party-opponent of the defendant in criminal cases," United States v. Kattar, 840 F.2d 118, 130 (1st Cir. 1988) (quotation omitted), the government's statement that BPE's investment losses are "irrelevant" is admissible for all purposes (including pretrial motions *in limine*) as a binding admission by a party-opponent pursuant to Fed. R. Evid. 801(d)(2).

The government should have to bear the consequences of its own acts and statements, and this Court should grant Mr. Carpenter's motion *in limine* precluding the government from introducing **any** evidence at trial that the funds were lost.  See United States v. GAF Corp., 928 F.2d 1253, 1262 (2d Cir. 1991) ("There is merit still in that 'rough and ready' view of the adversary process which leaves parties to bear the consequences of their own acts.").

## REQUEST FOR ORAL ARGUMENT

Mr. Carpenter requests oral argument on the within motion at the final pre-trial conference scheduled for June 30, 2005.

## LOCAL RULE 7.1(A)(2) STATEMENT

Mr. Carpenter's counsel has conferred with Michael J. Pineault, AUSA in a good faith, but unsuccessful, attempt to resolve or narrow the issue.

## MEMORANDUM OF LAW

I.      **THIS MOTION MUST BE DECIDED *BEFORE* TRIAL**

"The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility and relevance of certain forecasted evidence." United States v. Chan, 184 F. Supp.2d 337, 340 (S.D.N.Y. 2002). See also Luce v. United States, 469 U.S. 38, 41 n.4 (1984) (noting that although the Federal Rules of Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials); Jones v. Stotts, 59 F.3d 143, 146 (10th Cir. 1995) (explaining that a motion *in limine* seeks guidance from the court regarding an evidentiary dispute in order to aid the parties in formulating trial strategy).

Because "the entire structure of the case, and the parties' preparations, may turn on whether a central piece of evidence is to be admitted . . . trial judges have discretion to make purportedly final advance rulings to admit or exclude evidence." United States v. Lachman, 48 F.3d 586, 590 (1st Cir. 1995). "In criminal matters, district courts are *required* to rule pre-trial on evidentiary motions in a limited class of cases." United States v. Lubell, 301 F. Supp.2d 88, 90 (D. Mass. 2004) (quotation omitted) (emphasis added). One such class of cases includes the present case, where evidence of BPE's investment gains or losses "is entirely segregable from questions of guilt or innocence." United States v. Barletta, 644 F.2d 50, 58 (1st Cir. 1981).

In light of the government's binding admission that evidence of BPE's gains or losses is "irrelevant," this Court should grant Mr. Carpenter's motion prior to trial.

## II. THE CONTESTED EVIDENCE IS INADMISSIBLE

To be admissible, evidence must be relevant. See Fed. R. Evid. 402 ("All relevant evidence is admissible . . . Evidence which is not relevant is not admissible."). The fate of *all* irrelevant evidence is exclusion. Id. Evidence is relevant if it tends to be probative of the defendant's guilt or innocence. In this case, whether BPE made or lost money on its investments (whether by investing in stock options or anything else) is completely irrelevant to the issue of whether Mr. Carpenter engaged in mail and wire fraud by allegedly causing BPE to obtain funds from the seven exchangors listed in the superseding indictment ("SSI") through fraudulent pretenses. In other words, if *obtaining* funds through fraudulent pretenses is the gravamen of the offense in this case (as the government claims), then whether the funds were ultimately lost *after* they were obtained by BPE is completely irrelevant.

Furthermore, there are no gradations when it comes to relevancy. "[T]here is no such thing as 'highly relevant' evidence or, . . . 'marginally relevant' evidence. Evidence is either relevant or it is not." United States v. Foster, 986 F.2d 541, 545 (D.C. Cir. 1993).

In this case, the government has admitted that evidence of BPE's gains or losses is irrelevant. Consequently, such evidence is completely (as opposed to "partially" or "marginally") irrelevant and, therefore, inadmissible. And while a district court normally "has some flexibility in admitting or excluding evidence on the basis of relevancy," United States v. Nazzaro, 889 F.2d 1158, 1168 (1st Cir. 1989), **that flexibility evaporates completely when the government itself admits that the contested evidence is irrelevant**.

"To determine the relevance of evidence, we consider its probative value. That is, we examine its relationship to the elements of the offense and to any offered defenses." United States v. Spinosa, 982 F.2d 620, 629 (1st Cir. 1992). To prove mail and wire fraud, "the government must show three elements: (1) a scheme to defraud based on false pretenses; (2) the defendant's knowing and willing participation in the scheme with the intent to defraud; and (3) the use of interstate mail or wire communications in furtherance of that scheme." United States v. Cheal, 389 F.3d 35, 41 (1st Cir. 2004).

Clearly, the elements of mail and wire fraud have nothing whatsoever to do with BPE's subsequent investment performance. Whether BPE's investments (whether in stock options, Treasury Bonds, stocks or certificates of deposit) made or lost money obviously has no relationship whatsoever to the alleged use of the mails or wires. Nor is BPE's investment performance related in any way to the alleged scheme to defraud based on false pretenses or an intent to defraud. Consequently, the extrinsic evidence consisting of BPE's investment performance has no bearing at all on the allegations of mail and wire fraud in this case and should be excluded.

For example, in United States v. DeSantis, 134 F.3d 760 (6th Cir. 1998), DeSantis was convicted of mail fraud regarding the solicitation of interests in an investment partnership operated by DeSantis that consisted of a collection of bars. The bars later lost their liquor licenses, which caused the investors in the partnership to lose several million dollars as the partnership was forced to declare bankruptcy.

At around the time that DeSantis was raising funds for the partnership, he pled guilty to a felony (filing false tax returns) and Ohio law precludes convicted felons from holding or controlling liquor licenses. However, the indictment did not allege that this

5

was a part of the alleged scheme to defraud (which had to do solely with the amount of commission paid to the broker who solicited the investors).  At trial, the government sought to impeach DeSantis' version of why the bars were forced to shut down by requiring DeSantis to read into the record portions of an Ohio state court opinion which upheld the revocation of the liquor licenses, finding that DeSantis continued to maintain control over the bars even though he had represented to the liquor commission that he had ceded control to his partner (Hobbs).

In reversing all of DeSantis' convictions, the Sixth Circuit held, inter alia, that "whether DeSantis did or did not cede control to Hobbs is **irrelevant** in determining the material issue in the case – whether he intended to mislead investors by representing that [the broker] would receive a 10% commission."  Id. at 766 (emphasis added).

In United States v. McFayden-Snider, 552 F.2d 1178, 1182 (6th Cir. 1977), defendant's convictions for mail and wire fraud were reversed because evidence that the defendant had been a prostitute who "worked" the 1972 Democratic National Convention in Miami was "wholly unrelated to the charges against her of mail and wire fraud."  Id.

In United States v. Harvey, 991 F.2d 981, 996 (2d Cir. 1993), a child pornography conviction was reversed because the trial judge allowed into evidence the fact that the police had seized *adult* pornography from the defendant's home.  "The above-described X-rated material, which did not involve either child pornography or simulated child pornography, did not bear on the disputed trial issues, and thus was not relevant."  Id.

In United States v. McGowan, 274 F.3d 1251, 1254 (9th Cir. 2001), the conviction was reversed (after the district court denied the defendant's motion *in limine*) because the expert testimony offered by the government concerning the structure of drug

6

trafficking organizations was irrelevant and inadmissible where the defendant was not charged with conspiracy to import drugs. Similarly, in the present case, Mr. Carpenter is not charged with any crime for poor investment performance.

In United States v. Carter, 969 F.2d 197, 200 (6th Cir. 1992), defendant's narcotics convictions were reversed because the district court allowed "the government to use a plethora of irrelevant financial information." Id. (introduction of evidence that defendant purchased a few appliances over a two-year period, filed false loan applications and failed to file tax returns completely irrelevant as to whether the defendant sold cocaine to FBI agents on the date in question).

In United States v. Mandel, 591 F.2d 1347, 1366 (4th Cir. 1979), cert. denied, 445 U.S. 961 (1980), the Governor of the State of Maryland was convicted of mail fraud regarding an alleged bribery scheme. In reversing the convictions, the Fourth Circuit held that the use of evidence that the Governor had violated the Maryland Code of Ethics to show fraudulent intent was improper. Such evidence was irrelevant and inadmissible because "[t]he code clearly does not apply to the Governor of Maryland . . [w]e do not think that a breach of an inapplicable Code of Ethics should give rise to a violation of federal criminal law." Id.

"Where the relevant evidence is reasonably separable, a trial judge may restrict the prosecutor's presentation to the relevant evidence only, and may curtail the proponent's inquiry into irrelevant and unfairly prejudicial details." United States v. Burke, 948 F.2d 23, 27 (1st Cir. 1991). See also United States v. Marbella, 73 F.3d 1508, 1513 (9th Cir.), cert. denied, 518 U.S. 1020 (1996) (proffered testimony regarding

witness statement irrelevant and inadmissible because defendant "had committed the mail fraud" before the statement was made).

Since evidence of BPE's investment performance is "irrelevant," such evidence is inadmissible.

### III. THE GOVERNMENT'S ADMISSION THAT BPE'S INVESTMENT PERFORMANCE IS IRRELEVANT IS BINDING FOR ALL PURPOSES PURSUANT TO FED. R. EVID. 801(d)(2)

A party's own out-of-court statements are not hearsay when they are offered against that party. See Fed. R. Evid. 801(d)(2)(A)-(D).[1] Such statements are party admissions. Since the government has admitted that evidence of BPE's investment performance is irrelevant, Mr. Carpenter's motion *in limine* clearly should be granted because the government's admission is substantive proof that whether BPE's investments made or lost money is "irrelevant."

This admission is binding on the prosecution in this case because the United States Department of Justice "is a party opponent of the defendant in criminal cases." United States v. Kattar, 840 F.2d 118, 130 (1st Cir. 1988) (quotation omitted). See also Giglio v. United States, 405 U.S. 150, 154 (1972) ("The prosecutor's office is an entity and as such it is a spokesman for the Government").

In Kattar, the defendant was indicted on three counts of wire fraud, one count of fraudulently taken monies and one count of extortion. After the district court issued a judgment of acquittal on one wire fraud count, the defendant was acquitted by the jury of

---

[1] "A statement is not hearsay if . . . [t]he statement is offered against a party and is (A) the party's own statement, in either an individual or representative capacity or (B) a statement of which the party has manifested an adoption or belief in its truth, or (C) a statement by a person authorized by the party to make a statement concerning the subject, or (D) a statement by the party's agent or servant concerning a matter within the scope of the agency or employment, made during the existence of the relationship. . ." Id.

8

all counts except the extortion charge. On appeal, the defendant claimed, inter alia, that the district court committed reversible error by preventing the defendant from introducing statements made by the government in (i) a sentencing memorandum filed in an earlier related criminal action, and (ii) a brief filed in an earlier related civil proceeding. The defendant claimed that he should have been allowed to introduce those statements as admissions of a party-opponent.

After holding that the government is a party-opponent of the defendant in criminal cases, the First Circuit ruled that "[i]t was therefore error to exclude those documents" under Fed. R. Evid. 801(d)(2)(B). Kattar, 840 F.2d at 131. The First Circuit also suggested that "[i]ndeed, because the prior assertions were made by representatives of the specific party-opponent (the Justice Department) itself, they might be admissible as the party's own statements under Rule 801(d)(2)(A)." Id. at n.9.[2]

Here, the admissions were made not only by the Justice Department, but by the Office of the United States Attorney for the District of Massachusetts in a brief filed *in this very case*. Consequently, the admissions are binding on the government and admissible for all purposes (including pre-trial motions *in limine*) pursuant to Fed. R. Evid. 801(d)(2)(A)-(D).

Furthermore, the government's admissions are admissible as *substantive evidence* of the facts stated. "[W]e note that a [party's] own statements are never considered to be hearsay when offered by the [opponent]; they are treated as admissions, competent as evidence . . ." United States v. Singleterry, 29 F.3d 733, 736 (1st Cir. 1994). See also United States v. Yildiz, 355 F.3d 80, 82 (2d Cir. 2004) ("This Court has recognized that

---

[2] The First Circuit affirmed Kattar's extortion conviction, holding that the admissions sought to be introduced were relevant only to the fraud counts – on which Kattar was acquitted. Id. at 131.

the government's attorneys can bind the government with their in-court statements . . . and filings.") (citations omitted).

In <u>United States v. GAF Corp.</u>, 928 F.2d 1253 (2d Cir. 1991), defendant corporation and its vice-chairman were convicted of securities fraud, wire fraud and other related charges stemming from GAF's unsuccessful tender offer for Union Carbide in 1985. Defendants sought to introduce the original bill of particulars submitted by the government that contradicted the government's amended bill of particulars. Defendants sought to introduce the original bill as a binding admission of a party-opponent pursuant to Fed. R. Evid. 801(d)(2). In reversing all of the convictions, the Second Circuit agreed that the admissions contained in the first bill of particulars were binding on the government and the defendants should have been allowed to introduce them into evidence. "There is merit still in that 'rough and ready' view of the adversary process which leaves parties to bear the consequences of their own acts." <u>Id.</u> at 1262.

The same holds true here. The government, of its own volition, made the binding admissions contained in its brief. The government must now "bear the consequences" of its own acts.

**IV.   EVEN IF EVIDENCE OF LOSSES WERE RELEVANT, SUCH EVIDENCE WOULD BE UNFAIRLY PREJUDICIAL AND SHOULD BE EXCLUDED PURSUANT TO FED. R. EVID. 403**

Assuming, <u>arguendo</u>, that evidence of investment losses were somehow relevant, such evidence should still be excluded pursuant to Fed. R. Evid. 403.[3] Evidence of

---

[3] "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury . . ." Fed. R. Evid. 403.

investment losses exceeding $9 million (SSI ¶¶ 53, 58) should be excluded because its probative value is substantially outweighed by its unfairly prejudicial effect.

In light of the government's position that evidence of losses is irrelevant, the only true purpose for the government to offer such evidence (as it has already disclosed in its trial exhibits) would be to inflame the passion of the jury regarding the amount of the losses, attempt to generate compassion for the alleged "victims," and have the jury decide the case on an improper basis – emotion – rather than the relevant facts.

In <u>United States v. Varoudakis</u>, 233 F.3d 113 (1st Cir. 2000), the defendant – who was charged with arson in connection with hiring an acquaintance to burn down his failing restaurant in order to collect insurance proceeds – was convicted based largely on the testimony of his long-time girlfriend (and co-conspirator in the arson) who stated that she saw the defendant set fire to his leased car 16 months before the restaurant fire to collect insurance proceeds. On appeal, the First Circuit reversed the convictions, holding that the district court erred by denying the defendant's motion *in limine* to exclude the car fire evidence.

While under Rule 403 "it is only unfair prejudice which must be avoided," <u>United States v. Rodriguez-Estrada</u>, 877 F.2d 153, 156 (1st Cir. 1989), "courts use the term 'unfair prejudice' for evidence that invites the jury to render a verdict on an improper emotional basis." <u>Varoudakis</u>, 233 F.3d at 122. The First Circuit ruled that since the government did not need the car fire evidence in order to establish the details of the personal relationship between the defendant and his girlfriend, admission of the evidence was unfairly prejudicial. <u>Id.</u> at 124 ("the probative value of the car fire evidence was substantially outweighed by the danger of unfair prejudice").

Similar unfair prejudice to Mr. Carpenter would result here if evidence of over $9 million in losses were admitted at trial. The amount of the loss is not probative of whether the funds were originally obtained by false pretenses.

## V.   ALLEGATIONS OF LOSSES IN THE INDICTMENT ARE PREJUDICIAL SURPLUSAGE AND ARE NOT ADMISSIBLE

The mere fact that losses are charged in the superseding indictment does not imbue such evidence with admissibility. Rather, evidence of losses – like all evidence – must independently conform to the mandates imposed by the Federal Rules of Evidence.

Allegations of monetary loss are prejudicial surplusage that should be excluded. In United States v. Rush, 807 F. Supp. 1263, 1265-66 (E.D. La. 1992), the indictment alleged that the State of Louisiana lost $10 million due to the defendant's alleged fraud. In holding that the allegation had "no place in the indictment," id. at 1266, the court reasoned that the "allegation [was] not necessary in the indictment, and, in fact, its inclusion could prejudice the defendant."

This reasoning applies to the present case with equal force, in that admission into evidence of allegations that the exchangors lost $9 million would severely and unfairly prejudice Mr. Carpenter (particularly since the government has conceded that whether the investments "made or lost money is irrelevant").

## CONCLUSION

Because the government has admitted that evidence of BPE's investment performance is irrelevant, defendant Daniel E. Carpenter respectfully requests that his motion *in limine* be granted precluding the government from introducing any evidence that any exchange funds were lost.

>DANIEL E. CARPENTER,
>By his attorney,
>
>**/s/ Robert M. Goldstein**
>Robert M. Goldstein
>Mass. Bar No. 630584
>20 Park Plaza, Suite 903
>Boston, MA 02116
>(617) 742-9015
>rmg@goldstein-lawfirm.com

Dated: June 23, 2005

## CERTIFICATE OF SERVICE

I hereby certify that true and accurate copy of the foregoing pleading has been served by electronic filing on this 23rd day of June, 2005, on Michael J. Pineault, Esq., Assistant U.S. Attorney, Office of the U.S. Attorney, 1 Courthouse Way, Suite 9200, Boston, MA 02210.

>**/s/ Robert M. Goldstein**
>Robert M. Goldstein