UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10029-GAO |
| | ) | |
| DANIEL E. CARPENTER | ) | |

**DEFENDANT'S MOTION *IN LIMINE* TO EXCLUDE ALL EXPERT TESTIMONY OR, IN THE ALTERNATIVE, TO EXCLUDE ALL TESTIMONY REGARDING EVENTS OCCURRING *AFTER* NOVEMBER 20, 2000**
**(Defendant's Motion *In Limine* No. 7)**

Defendant Daniel E. Carpenter, through undersigned counsel, respectfully moves *in limine* to exclude all testimony (and exhibits in support thereof) offered by the government's expert witness – Mr. J. Marc Allaire ("Allaire"). Allaire's testimony is irrelevant, prejudicial, outside the scope of expert testimony, and unnecessary. See Fed. R. Evid. 402, 403, 702, 703, 704.

The proposed trial exhibits that the government seeks to offer through Allaire show that the government's intention is to prosecute Mr. Carpenter solely for his investment strategy. However, the government has already admitted that the investment strategy utilized – and whether it resulted in gains or losses – is irrelevant. Consequently, the proposed trial exhibits by which the government seeks to elicit Allaire's testimony should also be excluded, to wit: Government Trial Exhibits 190 through 202 (annexed hereto as **Exhibits 1 through 13**) (collectively, the "Exhibits").

However, in the alternative, **all** evidence (testimony and exhibits) relating to any events that occurred **after** November 20, 2000 should be excluded as being irrelevant and prejudicial. See Fed. R. Evid. 402, 403. This is because the superseding indictment ("SSI,"

Dkt. #34) alleges that the last of the seven exchangors to have entered into an initial property exchange with Benistar Property Exchange Trust Co., Inc. ("BPE") was Mr. Jeffrey Johnston, and he did so on or about November 20, 2000.[1] SSI ¶ 78. Since Johnston was the last exchangor to have received any alleged false representations that his money would be "held safe" (SSI ¶¶ 17, 49) before sending his money to BPE, and since the government contends that the gravamen of the offense was false representations, what occurred <u>after</u> the last of the allegedly false representations were made is completely irrelevant and prejudicial.

Clearly, the government seeks to introduce testimony regarding events that occurred in December 2000 because that is when the bulk of the $9 million was lost. However, by the government's own admission, losses are "irrelevant," and so the purpose of such evidence would be only to prejudice the jury against Mr. Carpenter regarding the amount of the losses. Consequently, all testimony and exhibits regarding events <u>after</u> November 20, 2000 should be excluded.

This motion *in limine* should be granted because the Supreme Court has recently reiterated that criminal liability requires "consciousness of wrongdoing." <u>Arthur Anderson LLP v. United States</u>, 125 S.Ct. 2129 (2005). Mr. Carpenter could very well be the only defendant in the United States still on trial for fraud simply for incurring investment losses in the stock market crash of 2000. <u>See also</u> Editorial, *The Sihpol Verdict*, <u>The Wall Street Journal</u> at A8 (June 10, 2005) ("[T]he criminalization of widely accepted business practices *ex post facto* is both unjust and offensive to the rule of law . . . to be convicted of a crime in America you should first have to break the law.").

---

[1] The SSI alleges several transactions involving Mr. Joseph Iantosca which occurred in December 2000 (Counts 8-11, 19), but Iantosca had been a BPE client since May 2000 (SSI ¶ 70) and clearly would have received any alleged false representations regarding the "safety" of his funds prior to that time (*i.e.*, at the very beginning of his business relationship with BPE).

**REQUEST FOR ORAL ARGUMENT**

Mr. Carpenter requests oral argument on the within motion at the final pre-trial conference scheduled for June 30, 2005.

**LOCAL RULE 7.1(A)(2) STATEMENT**

Mr. Carpenter's counsel has conferred with Michael J. Pineault, AUSA in a good faith, but unsuccessful, attempt to resolve or narrow the issue.

**MEMORANDUM OF LAW**

**I.      ALLAIRE'S TESTIMONY IS IRRELEVANT AND PREJUDICIAL**

In light of the government's admission that whether BPE's investments subsequently resulted in gains or losses is "irrelevant," Allaire's testimony – which will be focused on *how* BPE invested the funds (*i.e.*, the investment strategy) and the *amount* of such losses – is also irrelevant and prejudicial.  See Fed. R. Evid. 401, 402, 403.  Mr. Carpenter expressly incorporates herein his **Defendant's Motion *In Limine* No. 1** in further support of this argument.  Consequently, Allaire's testimony (and exhibits in support thereof) should be excluded.

If Allaire's testimony and exhibits are not excluded, then Mr. Carpenter will be required to call several potential countervailing experts.  As a result, this trial – which should be focused on whether the government can prove the essential elements of mail and wire fraud (including Mr. Carpenter's scienter) – will instead devolve into a time-consuming and hyper-technical satellite litigation regarding the complex process and providence of stock options investing.

Such an unnecessary diversion will also jeopardize Mr. Carpenter's ability to select a fair and impartial jury given the widespread personal experiences that members of the jury

3

venire will very likely have had with the aftermath of the December 2000 stock market collapse.

## II.     ALLAIRE'S TESTIMONY IS UNNECESSARY

Allaire's testimony is unnecessary because the underlying factual predicate – that BPE invested in stock options – can easily be elicited through other government witnesses (*i.e.*, the numerous Merrill Lynch and PaineWebber witnesses) and, in any event, does not require specialized knowledge that will assist the jury in understanding the evidence or determining the facts.  See Fed. R. Evid. 702, 703.

Furthermore, the jury does not need to hear any of Allaire's proposed opinions (see Point III, infra) for the reasons set forth in **Defendant's Motion *In Limine* No. 1**.

## III.    ALLAIRE'S TESTIMONY IS INADMISSIBLE PURSUANT TO FED. R. EVID. 704(b)

Allaire's "expert" testimony is inadmissible because expert witnesses testifying in a criminal case are prohibited from giving an opinion or inference with regard to the ultimate issue of whether the defendant's mental state or condition was sufficient to constitute an element of the crime charged or of a defense to the crime.  See Fed. R. Evid. 704(b).[2]

"[W]e hold that Rule 704(b) prohibits all direct expert testimony concerning a criminal defendant's intent, regardless of the witness's field of expertise, so long as intent is an element of the crime charged."  United States v. Valle, 72 F.3d 210, 216 (1st Cir. 1995). Mail and wire fraud both require the specific "intent to defraud."  See United States v. Cheal, 389 F.3d 35, 41 (1st Cir. 2004) (necessary element of mail and wire fraud is "intent to

---

[2] "No expert witness testifying with respect to the mental state or condition of a defendant in a criminal case may state an opinion or inference as to whether the defendant did or did not have the mental state or condition constituting an element of the crime charged or a defense thereto.  Such ultimate issues are matters for the trier of fact alone."  Id.

4

defraud"). Consequently, Allaire may not opine or offer any evidence that Mr. Carpenter had the specific intent to defraud the exchangors.

"Rule 704(b) does not prohibit an expert witness from stating his opinion and reviewing facts from which a jury could determine whether a defendant had the requisite criminal intent. Rather, the rule prohibits an expert witness from testifying that a defendant did or did not possess the requisite mental intent at the time of the crime." United States v. Orr, 68 F.3d 1247, 1252 (10th Cir. 1995) (citation omitted). See also In re Pharmatrak, Inc. Privacy Lit., 292 F. Supp.2d 263, 268 (D. Mass. 2003) ("While experts may testify to facts from which a jury may find the requisite intent, no expert may opine about a criminal defendant's intent when, as here, intent is an element of the alleged crime.").

Allaire's testimony is inadmissible because it will tend to provide an opinion or inference that (a) Mr. Carpenter had the necessary scienter (*i.e.*, intent to defraud) to commit mail and wire fraud by virtue of his "bullish" options investment strategy and that its "resulting risk level was materially higher than the stock market's overall risk"; and (2) Mr. Carpenter's options investment strategy negates his defense of good faith. See United States v. Callipari, 368 F.3d 22, 33 (1st Cir. 2004), rev'd on other grounds, 125 S.Ct. 985 (2005) ("To convict a defendant of wire fraud . . ., the government must prove beyond a reasonable doubt that he acted with intent to defraud the alleged victim. Good faith is a complete defense and it is the government's burden to disprove it beyond a reasonable doubt.") (citations omitted).

The government clearly intends to elicit from Allaire's testimony that BPE's investment strategy was not "safe." However, whether BPE's investments were "safe" goes

5

to intent and Allaire is precluded from opining as to whether Mr. Carpenter had the specific intent to defraud.

"Rule 704(b) may be violated when the prosecutor's question is plainly designed to elicit the expert's testimony about the mental state of the defendant, or when the expert triggers the application of Rule 704(b) by directly referring to the defendant's intent, mental state, or mens rea.  Rule 704(b) prohibits testimony from which it necessarily follows, if the testimony is credited, that the defendant did or did not possess the requisite mens rea . . . The defendant's intent is an ultimate issue of fact that the jury alone must decide." United States v. Watson, 260 F.3d 301, 309-10 (3d Cir. 2001) (reversing conviction because expert opinion that defendant's mental state was to distribute drugs rather than use them personally was inadmissible under Rule 704(b)) (quotations and citations omitted).  Allaire's testimony that BPE's investments were not "safe," if allowed, would necessarily invade the jury's exclusive province of determining whether Mr. Carpenter had the requisite scienter to defraud the exchangors.  Consequently, Allaire's testimony is inadmissible.

Nor will Allaire's testimony, as proffered, simply be limited to providing "predicate facts from which a jury might infer such intent." United States v. Schneiderhan, 404 F.3d 73, 81 (1st Cir. 2005).  Rather, Allaire's testimony will go directly to the ultimate issue of whether BPE's investment strategy was "safe" and, consequently, whether Mr. Carpenter had the requisite scienter to commit mail and wire fraud.

## IV. ALTERNATIVELY, *ALL* EVIDENCE AFTER NOVEMBER 20, 2000 SHOULD BE EXCLUDED

In the alternative, this Court should exclude all testimony and exhibits relating to events which occurred after November 20, 2000 because such evidence is completely irrelevant to the last of the alleged false representations that were made to Mr. Johnston on or about November 20, 2000. In other words, if the gravamen of the offense is false representations (as the government contends), then the last allegedly false representation must have occurred on or about November 20, 2000 when Johnston executed his agreements with BPE. No allegedly false representations were made to Iantosca regarding his December 2000 exchanges because Iantosca had been a BPE client since May 2000, and if any false representations were made to him they would have been made prior to that time in order to induce Iantosca to use BPE as his qualified intermediary.

The only reason the government seeks to introduce evidence regarding events *after* November 20, 2000 is because that is when the bulk of the $9 million was lost.[3] The government should not be allowed to introduce irrelevant and highly prejudicial evidence.[4] Fed. R. Evid. 402, 403.

## CONCLUSION

For all of the foregoing reasons, defendant Daniel E. Carpenter respectfully requests that his motion *in limine* be granted and that either (i) all testimony and exhibits offered by the government's expert witness be excluded; or (ii) that all testimony and exhibits relating to events occurring after November 2000 be excluded. Obviously, if the government's expert is

---

[3] The government alleges that $2.8 million in losses had been incurred by the end of November 2000. See SSI ¶ 50.

[4] Consequently, the following Government Trial Exhibits should be excluded: 23, 34-35, 42, 50, 58, 83, 90-94, 95-99, 100-04, 105-114, 116-17, 134, 169-70, 173-76, 186-89, 190-213.

excluded, then Mr. Carpenter will have no need to call any experts.  This will make for a much smoother, simpler trial that will be fair and less prejudicial to Mr. Carpenter.

        DANIEL E. CARPENTER,
        By his attorney,

        **/s/ Robert M. Goldstein**
        Robert M. Goldstein
        Mass. Bar No. 630584
        20 Park Plaza, Suite 903
        Boston, MA 02116
        (617) 742-9015
        rmg@goldstein-lawfirm.com

Dated:  June 23, 2005

**CERTIFICATE OF SERVICE**

    I hereby certify that true and accurate copy of the foregoing pleading has been served by electronic filing on this 23rd day of June, 2005, on Michael J. Pineault, Esq., Assistant U.S. Attorney, Office of the U.S. Attorney, 1 Courthouse Way, Suite 9200, Boston, MA 02210.

        **/s/ Robert M. Goldstein**
        Robert M. Goldstein