# Greenberg Traurig

Evan Georgopoulos
Tel. (617) 310-6201
Fax (617) 279-8401
georgopoulose@gtlaw.com

March 4, 2005

**BY HAND**
Michael J. Pineault, Esq.
Assistant U.S. Attorney
Office of the United States Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210

Re:  United States v. Daniel E. Carpenter
     Criminal No. 04-10029-GAO

Dear Mr. Pineault:

Pursuant to Fed. R. Crim. P. 16(b)(1)(C), we write to provide the following summary of the anticipated expert testimony of four (4) expert witnesses whom the defense currently intends to call at trial during the defendant's case-in-chief, if necessary: (a) Timothy W. Hayes, CMT; (b) Arthur A. Eubank, Jr., Ph.D.; (c) Max G. Ansbacher; and (d) Lawrence L. Blacker, Esq.

### (1)  Timothy W. Hayes, CMT

The defendant has retained Mr. Hayes to testify as an expert witness regarding historical fourth quarter and December stock market rallies. Enclosed is a copy of Mr. Hayes' Curriculum Vitae ("CV"), which the defendant plans to offer as an exhibit. The defendant is compensating Mr. Hayes at the fixed fee of $5,000 plus reimbursement of reasonable expenses (including travel expenses).

Mr. Hayes is the Chief Investment Strategist for Ned Davis Research, Inc. (NDR), which Barron's states is a "master of market history and technical analysis," where he heads the firm's global and U.S. asset allocation services. Mr. Hayes also serves as Research Council coordinator and oversees NDR's quarterly *Investment Strategy*, writing sections on strategy, asset allocation, U.S. stock market and style allocation, and global allocation. On a weekly basis, Mr. Hayes writes the *Stock Market Focus*, which features top-down stock market perspective, quantitatively-based analyses, asset allocation recommendations, and the latest changes to NDR's *Focus List* of the most attractive stocks in top-ranked industry groups. Mr. Hayes is featured regularly on CNBC, and his market commentary is often quoted in The Wall Street Journal, Barron's, Investor's Business Daily, New York Times, Financial Times, and other financial publications.

ALBANY
AMSTERDAM
ATLANTA
BOCA RATON
BOSTON
CHICAGO
DALLAS
DENVER
FORT LAUDERDALE
LOS ANGELES
MIAMI
NEW JERSEY
NEW YORK
ORANGE COUNTY, CA
ORLANDO
PHILADELPHIA
PHOENIX
SILICON VALLEY
TALLAHASSEE
TYSONS CORNER
WASHINGTON, D.C.
WEST PALM BEACH
WILMINGTON
ZURICH

Greenberg Traurig LLP | Attorneys at Law | One International Place | Boston, MA 02110 | Tel 617.310.6000 | Fax 617.310.6001   www.gtlaw.com

Michael J. Pineault, Esq.
March 4, 2005
Page 2 of 5

Among the articles in which Mr. Hayes has been quoted are the following, both of which are enclosed herewith and which the defendant currently intends to introduce as exhibits: (a) E.S. Browning, *Hope For Stocks: The 'Usual' 4th – Quarter Rally*, The Wall Street Journal at C1 (Oct. 11, 2004); and (b) E.S. Browning, *Investors Watch for 'Santa' Rally*, The Wall Street Journal at C1 (Dec. 6, 2004). Mr. Hayes has written a book, The Research-Driven Investor, published in November 2000. He has contributed to several other books, and his research articles have appeared in the Journal of Technical Analysis, Technical Analysis of Stocks and Commodities, and other publications. In 1996, Mr. Hayes won the Charles H. Dow Award for groundbreaking research in technical analysis. Sponsored by Dow Jones Telerate, the Market Technicians Association, and Barron's, the award recognizes an outstanding original work that best expounds on the principles of technical analysis. Mr. Hayes is a 1980 graduate of Kenyon College and has held the Chartered Market Technician (CMT) designation since 1995.

Mr. Hayes will provide a detailed description of fourth quarter and December stock market rallies (using the Dow Jones Industrial Average, S&P 500, and the Nasdaq) since at least 1980, with particular emphasis on the period 1998-2000.

Mr. Hayes will then provide a detailed description of the differences between the fourth quarter and December rallies in 1999 and 2000, and the reasons for a smaller rally in 2000 than in 1999.

Mr. Hayes will also provide an expert opinion that it would have been reasonable for any investor (including the defendant) to have expected the same kind of fourth quarter and December rallies in 2000 as had occurred in 1999 and historically.

Finally, Mr. Hayes will provide a detailed description of how the markets reacted with a sharp increase in the first week of January 2001 after the Federal Reserve's interest rate cut immediately after the New Year.

### (2) Arthur A. Eubank, Jr., Ph.D.

The defendant has retained Arthur A. Eubank, Jr., Ph.D., to testify as an expert witness regarding stock option investment risk. Enclosed is a copy of Dr. Eubank's CV, which the defendant plans to offer as an exhibit. The defendant is compensating Dr. Eubank at the rate of $275/hour plus reimbursement of reasonable expenses (including travel expenses).

Dr. Eubank is the President of Eubank Economics, Inc., an economic and financial consulting firm that engages in business and investment consulting, as well as litigation support. As his CV states, Dr. Eubank holds an A.B. degree from the University of Illinois at Champaign-Urbana, an M.B.A. from Indiana State University, and a Ph.D. from Pennsylvania State University.

Michael J. Pineault, Esq.
March 4, 2005
Page 3 of 5

As is reflected in his CV, Dr. Eubank has received numerous honors and awards, published various articles and other publications, has given numerous lectures and conference seminars, and is a member of various professional organizations and societies, all relating to finance, economics, securities and investments (including stock options).

Dr. Eubank has, among other things, served as president of a market maker firm on the Chicago Board Options Exchange (CBOE), served on the CBOE Appeals Committee, and provided electronic options trading consulting services.

Dr. Eubank will provide a detailed description of how a typical options investment involving writing naked puts and calls works. Dr. Eubank will then provide an expert opinion that stock options as an investment vehicle are no more inherently risky than stocks, bonds or futures. Dr. Eubank will also provide an expert opinion that "bullish" trading strategies such as writing naked puts are not more inherently risky than stocks.

### (3) Max G. Ansbacher

The defendant has retained Max G. Ansbacher to testify as an expert witness regarding stock option investing in general, and writing naked put and call options in particular. Enclosed is a copy of Mr. Ansbacher's CV, which the defendant plans to offer as an exhibit. The defendant is compensating Mr. Ansbacher at the fixed fee of $25,000 plus reimbursement of reasonable expenses (including travel expenses).

Mr. Ansbacher is the President, sole shareholder and principal of Ansbacher Investment Management ("AIM"). AIM is a hedge fund whose primary investment strategy is writing naked put and call options and is one of the largest firms in America using this options investment strategy as its primary investment method. Prior to establishing AIM, Mr. Ansbacher worked for 20 years at Bear, Stearns & Co. where he successfully managed options accounts for a number of his clients on a discretionary basis.

Mr. Ansbacher is the author of The New Options Market, the first book ever published on exchange traded options, and which has become one of the all-time best-selling books on the subject. A Fourth Edition was published by John Wiley & Sons in 2001. His second book, How to Profit from the Coming Bull Market (Prentice-Hall, 1981), correctly predicted the great bull market which began in 1982. Mr. Ansbacher's third book is The New Stock Index Market (Walker & Co., 1983). Mr. Ansbacher is also the creator of *The Ansbacher Index*, which was created to determine stock market sentiment by analyzing the ratio of the prices of puts and calls on a stock market index.

Mr. Ansbacher has given lectures on options at over 50 investment conferences throughout the United States and overseas. He has been a regular guest commentator on

Michael J. Pincault, Esq.
March 4, 2005
Page 4 of 5

Bloomberg, CNBC, Fox and CNNfn. His articles on options have appeared in Forbes and Barron's, and he has been the subject of articles in Bloomberg Wealth Manager and Derivative Strategies magazines. A graduate of Phillips Exeter Academy, the University of Vermont and Yale Law School, Mr. Ansbacher received an advanced degree in tax law from New York University in 1963. He is a member of the bar in New York, Vermont and the District of Columbia.

Mr. Ansbacher will provide a detailed description of how investors can make money investing in naked put and call options (including "bullish" strategies such as writing puts). Mr. Ansbacher will then present an expert opinion that investing in naked puts and calls is no more inherently risky than investing in stocks, bonds or commodity futures. Mr. Ansbacher will also provide his expert opinion that "bullish" trading strategies, such as writing naked puts, are not more inherently risky than investing in stocks, bonds or commodity futures and do not entail "unlimited" risk.

### (4)   Lawrence L. Blacker, Esq.

The defendant has retained Lawrence L. Blacker, Esq., to testify as an expert witness regarding regulations and procedures for consummating like-kind property exchanges pursuant to 26 U.S.C. § 1031 and 26 C.F.R. §1.1031. A copy of Mr. Blacker's CV, which the defendant plans to offer as an exhibit, is enclosed herewith. The defendant is compensating Mr. Blacker at the fixed fee of $5,000 plus reimbursement of expenses.

Mr. Blacker has been a member of the Massachusetts bar since 1969, having graduated from the New England School of Law. In 1978, Mr. Blacker received an LL.M. in taxation from Boston University School of Law. Mr. Blacker formed Exchange Realty Corp. in 1989 to facilitate 1031 exchanges as a qualified intermediary, which was before the Internal Revenue Service promulgated regulations governing 1031 exchanges. In 2001, Mr. Blacker formed Newport Exchange Corp., also to facilitate 1031 exchanges as a qualified intermediary. Mr. Blacker has been a member of the Federation of Exchange Accomodators (FEA) since 2001, and passed a comprehensive examination to become a Certified Exchange Specialist.™ In addition to having given numerous lectures to attorneys, accountants, real estate brokers and taxpayers on 1031 exchanges, Mr. Blacker has written a number of articles on 1031 exchanges which have appeared in the New England Journal of Real Estate. Mr. Blacker has more than 15 years of experience in handling 1031 exchanges.

Mr. Blacker will provide a detailed description of how a typical 1031 exchange works, with a focus on the role of the qualified intermediary ("QI").

Mr. Blacker will then present his expert opinion that the governing 1031 statute and regulations (i) do not prevent the QI from investing exchangor funds in stock options; (ii) mandate that the exchangor have no control over the funds held by the QI during the holding

Michael J. Pineault, Esq.
March 4, 2005
Page 5 of 5

period; and (iii) call for the nullification of any tax benefits if these "safe harbor" restrictions are violated.

    Mr. Blacker will then provide his expert opinion that the law regarding 1031 exchanges at the time of the events alleged in the superseding indictment (2000) and to this day has permitted flexibility in the types of investments made by the QI, limited <u>solely</u> by the QI's contract with the exchangor.

    Mr. Blacker will also provide his expert opinion that since the agreements between Benistar Property Exchange Trust Co., Inc. ("BPE") and the exchangors provided that BPE would invest the funds at its "discretion," BPE's investment of exchangor funds in stock options did not violate the governing 1031 statute or regulations.

    To the extent that the evidence ultimately adduced at trial differs in any material respect from that anticipated by the defendant, the testimony of any expert witness is subject to revision to reflect the evidence actually introduced.

    Please also note that the defendant has not yet finalized the format of any charts and demonstrative aids that he plans to use at trial, although the substance of the information contained in such materials will largely track the information described herein.

    Finally, the defendant understands that pursuant to Fed. R. Crim. P. 16(c) and Local Rule 116.7 his disclosure obligations are continuing in nature, and shall promptly supplement this disclosure consistent therewith, as and if necessary.

    Please do not hesitate to contact me if you have any questions.

                                              Sincerely,

                                              Evan Georgopoulos

Enclosures