UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10029-GAO |
| ) | |
| DANIEL E. CARPENTER, ) | |

**DEFENDANT'S VERIFIED MOTION TO DISMISS BASED ON THE UNCONSTITUTIONAL MAKE-UP OF THE GRAND JURY**

Defendant Daniel E. Carpenter, through undersigned counsel, respectfully moves to dismiss the superseding indictment because the one-year durational residency requirement for grand jurors, contained in 28 U.S.C. § 1865(b)(1) and the Court's Plan for Random Selection of Jurors (as revised November 2000) (the "Jury Plan"), violates Mr. Carpenter's rights under 28 U.S.C. § 1867(a) and the equal protection guarantees contained in the Due Process Clause of the Fifth Amendment.[1]

The one-year durational residency requirement, in addition to being unconstitutional, engenders grand jury prejudice against out-of-state defendants like Mr. Carpenter (who currently resides in Connecticut and did so when the grand jury returned the indictment). Such prejudice is evident in this case because while the grand jury indicted Mr. Carpenter – who did not make any representations to the exchangors – the grand jury did not indict Martin L. Paley, the president of the company at the center of this case and the person who dealt with the exchangors and made the representations to them. Mr. Paley was a Massachusetts resident at the time the indictment was returned.

---

[1] Equal protection guarantees extend to the federal government's actions via the Due Process Clause of the Fifth Amendment. See Bolling v. Sharpe, 347 U.S. 497, 500 (1954) (companion case to Brown v. Bd. of Education, 347 U.S. 483 (1954)).

1

Given that no newly-arrived citizens were allowed to sit on the grand jury, it is likely that the grand jury favored the Massachusetts resident (Mr. Paley) over the Connecticut resident (Mr. Carpenter) because Massachusetts citizens who may have moved from Connecticut or elsewhere less than one year prior to the formation of the grand jury were automatically disqualified from serving.  The one-year durational residency requirement precludes out-of-state defendants like Mr. Carpenter from the benefit of being investigated by a fair and impartial grand jury that is not prejudiced against non-Massachusetts residents and biased in favor of Massachusetts residents.  It also removed from the grand jury the most likely grand jurors to have questioned why Mr. Carpenter would be prosecuted in Massachusetts rather than in Connecticut or New York, the only states in which he conducted any activities that are alleged as the bases for the crimes charged in the superseding indictment.

## REQUEST FOR ORAL ARGUMENT

Mr. Carpenter requests oral argument on the within motion at the Court's earliest convenience.

## LOCAL RULE 7.1(A)(2) STATEMENT

Mr. Carpenter's counsel has conferred with Michael J. Pineault, AUSA in a good faith, but unsuccessful, attempt to resolve or narrow the issue.

**MEMORANDUM OF LAW**

I. **THE ONE-YEAR DURATIONAL RESIDENCY REQUIREMENT IS UNCONSTITUTIONAL**

    A.    **Legal Standard**

Pursuant to 28 U.S.C. § 1867(a), Mr. Carpenter may move to dismiss the indictment if the Jury Plan substantially fails to comply with the provisions of federal law in selecting the grand jurors:

> In criminal cases, before the voir dire examination begins, or within seven days after the defendant discovered or could have discovered, by the exercise of diligence, the grounds therefor, whichever is earlier, the defendant may move to dismiss the indictment or stay the proceedings against him on the ground of substantial failure to comply with the provisions of this title in selecting the grand or petit jury.

28 U.S.C. § 1867(a).[2]

The Jury Plan provides, in relevant part, as follows:

    10.    **QUALIFICATIONS, EXEMPTIONS, AND EXCUSES FROM JURY SERVICE**

        (a)    **QUALIFICATIONS**

> Any person shall be deemed qualified for jury service unless he or she: . . . (3) has not resided within the judicial district for a period of one year or more.

Jury Plan, § 10(a)(3). The Jury Plan's one-year durational residency requirement most likely originated from the 1968 enactment of the following statute:

> [A]ny person [is] qualified to serve on grand and petit juries in the district court unless

---

[2] This motion is timely because the voir dire examination has not yet begun and the government informed Mr. Carpenter on June 24, 2005, in its partial opposition to Mr. Carpenter's motion for the grand jury selection records (Dkt. #95), that the government opposed the release of certain grand jury information to which Mr. Carpenter is entitled by statute. On June 30, 2005, the Court granted the defendant's motion for the grand jury selection records without limitation (other than to maintain the confidentiality of the information).

3

>he—(1) is not a citizen of the United States eighteen years old who has resided for a period of one year within the judicial district.

28 U.S.C. § 1865(b)(1).³

Both 28 U.S.C. § 1865(b)(1) and the Jury Plan are unconstitutional because the one-year durational residency requirement, whereby any person who has not resided in Massachusetts for at least one year is **automatically disqualified** from serving on the grand jury, violates the Constitutional right to travel and the guarantees of equal protection of the laws imbedded in the Fifth Amendment. The one-year durational residency requirement violates the right to travel because it acts as a "penalty" imposed on those residents who choose to migrate to Massachusetts (*i.e.*, those persons who have migrated to Massachusetts within one year are ineligible to serve on the grand jury). The durational residency requirement also violates equal protection principles because it creates two classes of Massachusetts citizens and restricts a fundamental right, *i.e.*, the right of all citizens not to be discriminated against from serving on the grand jury.

As a result, the one-year durational residency requirement is subject to strict scrutiny – in other words, subject to a determination of whether it is narrowly tailored to further a compelling governmental interest. Since no such interest can be discerned, the one-year durational residency requirement violates the right to travel as well as the right to equal protection of the laws contained in the Due Process Clause of the Fifth Amendment. Consequently, the requirement is unconstitutional and Mr. Carpenter is entitled to dismissal of the superseding indictment because it was returned by an unlawfully constituted grand jury.

---

³ The original version of this statute, enacted in 1948, did *not* contain a durational residency requirement. See 62 Stat. 951, c. 646, 80th Cong., 2d Sess. (June 25, 1948) ("Any citizen of the United States who has attained the age of 21 years and *resides* within the judicial district, is competent to serve as a grand or petit juror.") (Emphasis added).

### B. The One-Year Durational Residency Requirement Invidiously Discriminates Against New Residents

In United States v. Arnett, 342 F. Supp. 1255 (D. Mass. 1972), the constitutionality of the one-year durational residency requirement contained in 28 U.S.C. § 1865(b)(1) was upheld in a two-sentence ruling that merely recited the legislative history of the statute and in which no Constitutional analysis was undertaken. See id. at 1261 ("The residential requirement 'assures some substantial nexus between a juror and the community whose sense of justice the jury as a whole is expected to reflect.'") (quoting S.Rep. No. 891, 90th Cong., 1st Sess.; H.Rep. No. 1076, 90th Cong., 2d Sess., reprinted in 1968 U.S. Code Cong. & Admin. News 1792 at p. 1796).[4]

However, Arnett and similar lower court cases from other circuits either (a) predate the maturation of the right to travel as part of the Supreme Court's equal protection jurisprudence used to strike down various durational residency requirements; (b) contain outdated, overly simplistic or clearly erroneous reasoning in light of the Supreme Court's recent cases on the subject; and/or (c) fail to apply strict scrutiny analysis. See, e.g., United States v. Perry, 480 F.2d 147, 148 (5th Cir. 1973) ("We do not think it can be fairly asserted that new residents are a distinguishable or cognizable class"); United States v. Duncan, 456 F.2d 1401, 1406 (9th Cir. 1972) (applying rational relationship, as opposed to strict scrutiny, analysis); United States v. Rosenthal, 482 F. Supp. 867, 873 (M.D. Ga. 1979) (citing Perry for the blanket statement that "[t]he one year residence requirement for jurors is not

---

[4] The purpose of the requirement, as explained in the legislative history, runs counter to the underlying rationale supporting the federal judicial system as being less susceptible to local bias. See, e.g., 28 U.S.C. §§ 1441 et seq. (providing out-of-state civil defendants the means to avoid local bias by removing cases from state court to federal court).

unconstitutional."). Arnett and similar cases have been effectively overruled by a recent line of Supreme Court cases known as the "durational residence cases," in which the Court has consistently struck down durational residency requirements involving the denial of fundamental rights, privileges and benefits.

In Shapiro v. Thompson, 394 U.S. 618 (1969), three appeals were consolidated challenging the one-year durational residency requirements for the right to receive welfare benefits in Connecticut, Pennsylvania and the District of Columbia. The effect of the durational residency requirement in each case was to "create two classes of needy resident families indistinguishable from each other except that one is composed of residents who have resided a year or more, and the second of residents who have resided less than a year, in the jurisdiction. On the basis of this sole difference the first class is granted and the second class is denied welfare aid upon which may depend the ability of the families to obtain the very means to subsist – food, shelter and other necessities of life." Id. at 627. The Court struck down the one-year durational residency requirements in all three cases as "invidious discrimination denying [the families] equal protection of the laws." Id.

The Court also based its decision on the right to travel. "The constitutional right to travel from one State to another . . . occupies a position fundamental to the concept of our Federal Union. It is a right that has been firmly established and repeatedly recognized." Id. at 630 (quotation omitted). "If a law has no other purpose . . . than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it [is] patently unconstitutional." Id. at 631 (quotation omitted). The Court also applied strict scrutiny to the one-year durational residency requirement. "Since the classification here touches on the fundamental right of interstate movement, its constitutionality must be judged by the stricter

6

standard of whether it promotes a compelling state interest. Under this standard, the waiting-period requirement clearly violates the Equal Protection Clause." Id. at 638.[5]

In Dunn v. Blumstein, 405 U.S. 330 (1972), a newly-arrived Tennessee resident (who happened to be a law professor) attempted to register to vote in the upcoming state election but was rebuffed because Tennessee had a one-year durational residency requirement in order to be eligible to vote in state elections. A three-judge federal court found the requirement unconstitutional because it created a "suspect" classification penalizing some Tennessee residents due solely to recent interstate movement. The Supreme Court agreed.

"Durational residence laws penalize those persons who have traveled from one place to another to establish a new residence during the qualifying period. Such laws divide residents into two classes, old residents and new residents, and discriminate against the latter to the extent of totally denying them the opportunity to vote." Id. at 334-35. Reiterating that durational residency requirements are to be analyzed under strict scrutiny, id. at 335, the Court struck down the requirement because "Tennessee's durational residence laws classify bona fide residents on the basis of recent travel, penalizing those persons, and only those persons, who have gone from one jurisdiction to another during the qualifying period." Id. at 338.

The Court again focused its analysis on the right to travel. "Travel is permitted, but only at a price; voting is prohibited." Id. at 341. "Durational residence laws impermissibly condition and penalize the right to travel by imposing their prohibitions on only those persons who have recently exercised that right." Id. at 342. "In sum, durational residence laws must

---

[5] The Court also found that, with respect to the District of Columbia durational residency requirement imposed by Congress, "the one-year requirement violates the Due Process Clause of the Fifth Amendment." Id. at 641-42 (quotation and citation omitted).

be measured by a strict equal protection test: they are unconstitutional unless the State can demonstrate that such laws are necessary to promote a compelling governmental interest." Id. at 342 (quotation omitted).

In Memorial Hospital v. Maricopa County, 415 U.S. 250 (1974), Arizona imposed a one-year durational residency requirement for the receipt of free non-emergency medical care. Applying strict scrutiny to the Arizona requirement, the Court struck it down on right to travel and equal protection grounds.

"Not unlike the admonition of the Bible that, 'Ye shall have one manner of law, as well for the stranger, as for one of your own country,' the right of interstate travel must be seen as ensuring new residents the same right to vital government benefits and privileges in the States to which they migrate as are enjoyed by other residents." Id. at 261 (quoting Leviticus 24:22 (King James Version)). Finding that the Arizona requirement "creates an invidious classification that impinges on the right of interstate travel by denying newcomers basic necessities of life," id. at 269 (quotations omitted), the Court struck down the one-year durational residency requirement.

In Zobel v. Williams, 457 U.S. 55 (1982), Alaska issued its annual natural resources dividend to adult residents based on the length of each citizen's residence. Unlike the durational residency cases described above, however, the Alaska program did not impose any threshold waiting period on those seeking dividend payments. Even those who had lived in Alaska less than one year were eligible. However, the statute created fixed, permanent distinctions among Alaska citizens based on how long they have lived in the State and paid higher dividends correlated to longer residencies.

Even though not a classic durational residence case, the Supreme Court applied equal protection analysis and, for the first time, admitted openly what had been previously inferred, *i.e.*, that analyses under the right to travel and the right to equal protection were effectively the same. See id. at 61 ("In reality, the right to travel analysis refers to little more than a particular application of equal protection analysis."). After finding that the Alaska statute created "distinctions between residents based on when they arrived in the State," id. at 60, n.6, the Court did not hesitate to strike down the Alaska statute. "Alaska's reasoning could open the door to state apportionment of other rights, benefits, and services according to length of residency [such as grand jury service]. It would permit the States to divide citizens into expanding numbers of permanent classes. Such a result would be clearly impermissible." Id. at 64.

In Hooper v. Bernalillo County Assessor, 472 U.S. 612 (1985), New Mexico granted a property tax exemption limited to those Vietnam veterans who resided in the State before May 8, 1976.[6] Citing Zobel, the Court struck down the New Mexico statute on equal protection grounds. "The State may not favor established residents over new residents based on the view that the State may take care of 'its own,' if such is defined by prior residence. Newcomers, by establishing bona fide residence in the State, become the State's 'own' and may not be discriminated against solely on the basis of their arrival in the State after May 8, 1976." Id. at 623.

In Attorney General of New York v. Soto-Lopez, 476 U.S. 898 (1986), New York State provided civil service preferences to veterans who joined the armed forces at the time they were citizens of New York. Veterans who were New York residents – but who were not

---

[6] By proclamation, President Ford designated May 7, 1975 as the last day of the Vietnam Era. The New Mexico legislature added a one-year grace period to that date.

residents at the time they joined the armed forces – claimed the distinction violated their equal protection rights.  The Court, applying strict scrutiny, agreed.  "Because the creation of different classes of residents raises equal protection concerns, we have also relied upon the Equal Protection Clause in these [durational residence] cases.  Whenever a state law infringes a constitutionally protected right, we undertake intensified equal protection scrutiny of that law."  Id. at 904.  "[T]he right to migrate protects residents of a State from being disadvantaged, or from being treated differently, simply because of the timing of their migration, from other similarly situated residents."  Id.  "For as long as New York chooses to offer its resident veterans a civil service employment preference, the Constitution requires that it do so without regard to residence at the time of entry into the services."  Id. at 911-12.

More recently, in Saenz v. Roe, 526 U.S. 489 (1999), California limited the maximum welfare benefits available to residents who had lived in the State for less than one year.  In affirming the invalidation of the requirement on equal protection principles, the Court focused on the right to travel.  "The 'right to travel' discussed in our cases embraces at least three different components.  It protects the right of a citizen of one State to enter and to leave another State, the right to be treated as a welcome visitor rather than an unfriendly alien when temporarily present in the second State, and, **for those travelers who elect to become permanent residents, the right to be treated like other citizens of that State**."  Id. at 500 (emphasis added).

After confirming that equal protection principles protect "the third component of the right to travel," id. at 503, the Court reaffirmed that durational residency requirements are subject to strict scrutiny.  Id. at 504 ("Neither mere rationality nor some intermediate standard

10

of review should be used to judge the constitutionality of a state rule that discriminates against some of its citizens because they have been domiciled in the State for less than a year.").

The clear weight of these modern precedents shows that the one-year durational residency requirement for eligibility to serve on a federal grand jury, found in both 28 U.S.C. § 1865(b)(1) and the Jury Plan, is unconstitutional because it treats new residents different from old residents *solely* on the basis of when they arrived in Massachusetts. Such an exclusion is not narrowly tailored to further a compelling governmental interest. To the contrary, the exclusion is clearly irrational. If a person is a U.S. citizen over 18 years old and is otherwise qualified to serve on a federal grand jury, he or she does not automatically lose for one year the capacity to serve and decide issues of **federal** – as opposed to state – law, simply because he or she has relocated to another state within the past year.

Consequently, because the grand jury that indicted Mr. Carpenter was improperly constituted, the superseding indictment must be dismissed.

  **C.**  **The Unconstitutional Make-Up Of The Grand Jury Requires Dismissal**

A citizen's right not to suffer discrimination in grand jury selection and a defendant's right to a fair and impartial grand jury are bedrock Constitutional principles. See Strauder v. West Virginia, 100 U.S. 303, 309 (1879) (overturning state law limiting grand and petit jury service to white males); Batson v. Kentucky, 476 U.S. 79, 85-86 (1986) ("the defendant does have the right to be [charged] by a jury whose members are selected pursuant to nondiscriminatory criteria.").[7] The superseding indictment must be dismissed because it is the fruit of an unconstitutional grand jury. Although a criminal defendant has no right to a grand jury composed in whole or in part of the defendant's own race, sex, or origin, "he or she

---

[7] The basic principles prohibiting exclusion of persons from jury service "are essentially the same for grand juries and for petit juries." Alexander v. Louisiana, 405 U.S. 625, 626 n.3 (1972).

does have the right to be [charged] by a jury whose members are selected by nondiscriminatory criteria." Powers v. Ohio, 499 U.S. 400, 404 (1991).

Furthermore, Mr. Carpenter clearly has Constitutional standing to raise the equal protection claims of persons – in this case newly-arrived citizens – who have been unlawfully excluded from the grand jury venire. See id. at 415 ("We conclude that a defendant in a criminal case can raise the third-party equal protection claims of jurors excluded by the [government] because of their [newly-arrived status]."); Campbell v. Louisiana, 523 U.S. 392 (1998) (white defendant has standing to raise an equal protection challenge to discrimination against black persons in the selection of his grand jury).

Mr. Carpenter – as a Connecticut defendant in a Massachusetts federal criminal proceeding – clearly has standing to challenge the make-up of the grand jury on which newly-arrived Massachusetts citizens were automatically disqualified from serving. Included in that clearly identifiable and suspect class, obviously, are people who moved into Massachusetts from Connecticut (or elsewhere) during the year preceding the formation of the grand jury. The exclusion of newly-arrived Massachusetts citizens from Connecticut (or other states) caused substantial harm to Mr. Carpenter because it deprived him of the right to a fair and impartial grand jury – *i.e.*, one less susceptible to prejudice against out-of-state residents and bias in favor of Massachusetts residents; and one that may have questioned why Mr. Carpenter would be prosecuted in Massachusetts rather than in Connecticut or New York, the only states in which he conducted any activities that are alleged as the bases for the crimes charged in the superseding indictment.

As the Supreme Court observed in Peters v. Kiff, 407 U.S. 493, 503-04 (1972):

> When any large and identifiable segment of the community is excluded from jury service, the effect is to remove from the jury room qualities of human nature and varieties of human experience, the range of which is unknown and perhaps unknowable. It is not necessary to assume that the excluded group will consistently vote as a class in order to conclude, as we do, that its exclusion deprives the jury of a perspective on human events that may have unsuspected importance in any case that may be presented.

No federal grand jury that automatically disqualifies newly-arrived citizens from service can possibly serve and perform the representational due process and equal protection values expressed in Peters. The varieties of human experience and the perspective on human events held by citizens who have just moved into Massachusetts from other states are invaluable given the charging function of a federal grand jury – particularly in a case such as this where the grand jury had the choice of indicting a Massachusetts resident and/or a Connecticut resident and it decided to indict only the Connecticut resident.

"The exclusion of [newly-arrived citizens] from jury service, like the arbitrary exclusion of any other well-defined class of citizens, offends a number of related constitutional values." Id. at 498. The exclusion of newly-arrived Massachusetts citizens is a clear and facial violation of the right to travel and equal protection principles. As a result, Mr. Carpenter has standing to challenge the grand jury make-up and has suffered direct and identifiable harm from an indictment issued by an unconstitutional grand jury.

## CONCLUSION

Based on the foregoing, Mr. Carpenter respectfully requests that the superseding indictment be dismissed by virtue of having been returned by a grand jury whose make-up violates the Constitutional right to travel as well as the equal protection guarantees inherent in the Due Process Clause of the Fifth Amendment.[8]

---

[8] By challenging the make-up of the grand jury on Constitutional grounds, Mr. Carpenter does not waive any rights to challenging the demographic characteristics of the grand jury.

Dated:  July 1, 2005

                                        DANIEL E. CARPENTER,
                                      By his attorney,

                                      **/s/ Jack E. Robinson**
                                      Jack E. Robinson, Esq.
                                      (BBO #559683)
                                      2187 Atlantic Street
                                      Stamford, CT 06902
                                      (203) 425-4500
                                      Robinsonesq@aol.com


## **VERIFICATION**

    Pursuant to 28 U.S.C. §§ 1746(2) and 1867(d), I hereby verify under penalty of perjury that the foregoing factual statements, *i.e.*, that (a) 28 U.S.C. § 1865(b)(1) and the Jury Plan both contain a one-year durational residency requirement, (b) Mr. Carpenter was a resident of Connecticut at the time of the indictment and remains so today, and (c) Mr. Paley was a resident of Massachusetts at the time of the indictment, are true and correct.  Executed on July 1, 2005.

                                        **/s/ Jack E. Robinson**
                                        Jack E. Robinson, Esq.