UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10029-GAO |
| ) | |
| DANIEL E. CARPENTER, ) | |

**DEFENDANT'S EMERGENCY VERIFIED MOTION TO DISMISS THE SUPERSEDING INDICTMENT DUE TO GRAND JURY BIAS**

Defendant Daniel E. Carpenter, through undersigned counsel, respectfully moves on an emergency basis to dismiss the superseding indictment prior to trial because the Deputy Foreperson of the grand jury (Participant # 100398784) was, at all material times, a manager of the Trust and Estate Planning Department in the Boston office of Goodwin Procter LLP, the law firm that represents PaineWebber in this matter. This grand juror – who played a leadership role on the grand jury – had a legal and financial conflict of interest in Mr. Carpenter's indictment and conviction. As a result, the grand jury is presumed to be biased as a mater of law and the superseding indictment must be dismissed.

It has now become clear why the government objected to Mr. Carpenter reviewing the grand jury selection records. The government has known since the beginning of the investigation of this case in early 2001 that the Boston office of Goodwin Procter represented and continues to represent PaineWebber. The government has issued subpoenas to the Boston office of Goodwin Procter for PaineWebber documents. The government has met with and spoken to attorneys from the Boston office of Goodwin Procter about this case on numerous occasions. The government interviewed three PaineWebber witnesses in the presence of

1

attorneys from the Boston office of Goodwin Procter on June 20, 2001.[1] The government has scheduled the availability of PaineWebber witnesses at trial by coordinating with the Boston office of Goodwin Procter. Yet, the government did not strike from the grand jury a management employee in the Boston office of Goodwin Procter.

Goodwin Procter even discloses on its web site that PaineWebber is one of its clients. See www.goodwinprocter.com. Obviously, the Deputy Foreperson of the grand jury would be automatically dismissed from the petit jury for cause.[2] Her involvement in the grand jury – especially as Deputy Foreperson – taints the entire prosecution. Such a clear violation of Mr. Carpenter's right to an unbiased grand jury under the Grand Jury Clause of the Fifth Amendment requires that the superseding indictment be dismissed prior to trial.[3]

### REQUEST FOR ORAL ARGUMENT

Mr. Carpenter requests oral argument on the within motion at the Court's earliest convenience, but in no event later than **Friday, July 8, 2005**.

---

[1] Once the FBI 302 report of that interview was provided to the grand jury, and the Deputy Foreperson saw that her employer was directly involved in the investigation, she should have alerted the presiding judge and immediately sought to be discharged from the grand jury. Additionally, this presented another occasion on which the conflict should have leapt out at the prosecutor and he should have taken the necessary steps to remove the Deputy Foreperson from the grand jury.

[2] PaineWebber was not dismissed from the civil case until 2002 and the $88 million NASD arbitration claim brought by Mr. Carpenter against PaineWebber was commenced in late 2003. Consequently, during the entire time that the grand jury was investigating this case and at the time both the original and superseding indictments were returned (February 2004 and September 2004, respectively), Goodwin Procter's employee played a leading role in causing Mr. Carpenter to be indicted while Goodwin Procter was actively litigating *against* Mr. Carpenter on behalf of PaineWebber.

[3] To add insult to Mr. Carpenter's Constitutional injury, the Deputy Foreperson signed the superseding indictment on behalf of the entire grand jury. See Dkt. #34 at 33. Thus, Mr. Carpenter has been indicted by an employee of the law firm against which he has been actively litigating for the past four years.

**LOCAL RULE 7.1(A)(2) STATEMENT**

Mr. Carpenter's counsel has conferred with Michael J. Pineault, AUSA in a good faith, but unsuccessful, attempt to resolve or narrow the issue.

**MEMORANDUM OF LAW**

I. **THE SUPERSEDING INDICTMENT MUST BE DISMISSED FOR *PER SE* GRAND JURY BIAS**

The grand jury that returned the original indictment and the superseding indictment in 2004 (the "Grand Jury") was impaneled on or about April 2, 2003 and was dismissed late last year. It consisted of 23 regular members and 10 alternates.[4] The Grand Jury was impaneled specifically for the Economic Crimes Unit of the United States Attorney for the District of Massachusetts.

The Deputy Foreperson of the Grand Jury, during the Grand Jury's investigation of this case, was the manager of the Trusts and Estate Planning Department in the Boston office of Goodwin Procter LLP. The Boston office of Goodwin Procter has been the law firm representing PaineWebber in this matter from the beginning of the Grand Jury's investigation in 2001 through the present. Goodwin Procter has also been actively litigating against Mr. Carpenter on behalf of PaineWebber since the civil case began in early 2001 and in the NASD arbitration, which was filed in December 2003 and is scheduled for a full-week hearing starting on September 19, 2005. Although PaineWebber obtained summary judgment in its favor on the exchangors' claims in the civil case in 2002, Goodwin Procter's active

---

[4] One of the alternates (Participant #100409362) did **not** satisfy the 1-year durational residency requirement of 28 U.S.C. § 1865(b)(1) and, therefore, was unqualified to serve. Although Mr. Carpenter has filed a motion to dismiss alleging that this statutory provision is unconstitutional as applied to this case (Dkt # 104), the current state of the law contains the residency requirement and, therefore, the superseding indictment should be dismissed for this additional reason pursuant to 28 U.S.C. § 1867(d).

representation of PaineWebber was evident when it appeared at depositions in May 2004 in connection with the exchangors' motion to reinstate the jury verdict against Merrill Lynch. Furthermore, Goodwin Procter will undoubtedly represent PaineWebber on the exchangors' appeal of the grant of its summary judgment motion.

Such a clear, obvious, troubling and unconstitutional conflict cannot be allowed to stand. The risk of bias, where the Deputy Foreperson of the Grand Jury was, during deliberations, employed as a manager by the attorneys for one of the major players in this matter (the entire $9 million was lost at PaineWebber during a two-week period in December 2000), is so great that the Grand Jury's entire deliberations in this case lack Constitutional validity and are deemed to have been biased *per se* because one of its leaders had a legal and financial conflict of interest in Mr. Carpenter's indictment and conviction.

The government is even more blameworthy for this transgression. It had an obligation to ensure that there were no conflicts of this nature on the Grand Jury.[5] In this case, the government had actual knowledge of the conflict but failed to take the necessary steps to protect the integrity of the process. The government's failure to police the grand jury process and to ensure a fair and unbiased grand jury in this case is particularly egregious because it enjoyed the privilege of *ex parte* dealings with the Grand Jury without the presence of counsel for the target, Mr. Carpenter, who certainly would have objected to the service of a grand juror from Goodwin Procter. Such an abuse of that privilege should be met with the only appropriate sanction – immediate dismissal of the superseding indictment. Dismissal is

---

[5] This is particularly true with respect to a grand jury impaneled solely for the Economic Crimes Unit, where it is more than likely that a large Boston law firm represents a party involved in a case being investigated by the Economic Crimes Unit. Once it became known that a grand juror, not to mention the Deputy Foreperson, worked for one of the largest law firms in the Commonwealth, the government should have provided the juror with a list of names so that her employer could run a conflicts check – especially in a case involving two of the world's largest brokerage firms.

4

particularly appropriate in Mr. Carpenter's case because this Deputy Foreperson led the Grand Jury to return *two* indictments against Mr. Carpenter.

A fundamental guarantee of the Grand Jury Clause of the Fifth Amendment is that an indictment must be returned by an unbiased grand jury. Costello v. United States, 350 U.S. 359, 363 (1956); United States v. Burke, 700 F.2d 70, 82 (2d Cir. 1983) (finding that a right to an impartial grand jury is a "constitutional guarantee."). This Constitutional requirement is echoed in the Jury Selection and Service Act of 1968. See 28 U.S.C. § 1866 (jurors may be excluded where they may not be able to render impartial jury service). If a court determines that a grand jury was biased, the indictment returned by that grand jury must be dismissed. Vasquez v. Hillery, 474 U.S. 254, 263 (1986) ("When constitutional error calls into question the objectivity of those charged with bringing a defendant to judgment, a reviewing court can neither indulge a presumption of regularity nor evaluate the resulting harm.").

An indictment can be dismissed for a Constitutional violation that renders the grand jury proceedings so fundamentally unfair that prejudice must be presumed. See Bank of Nova Scotia v. United States, 487 U.S. 250, 256-57 (1988) (finding that prejudice can be presumed and no harmless error analysis necessary when "the structural protections of the grand jury have been so compromised as to render the proceedings fundamentally unfair."). There is no proposition more fundamental than that persons with a legal and/or financial interest in a case cannot evaluate a case objectively. They are biased as a matter of law and cannot serve as grand jurors:

> A fair trial in a fair tribunal is a basic requirement of due process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness. To this end no man can be a judge in his own case **and no man is permitted to try cases where he has an interest in the outcome**.

In re Murchison, 349 U.S. 133, 136 (1955) (emphasis added).  Even the perception of unfairness or bias must be eliminated.  This maxim was recently echoed by the Second Circuit in United States v. Torres, 128 F.3d 38, 41 (2d Cir. 1997), cert. denied, 523 U.S. 1065 (1998):

> It is well-settled in our circuit that judges *must* presume bias in certain highly limited situations where a juror discloses a fact that creates such a high risk of partiality that the law requires the judge to excuse the juror for cause.

Id. (emphasis in original).

Jurors who have a relationship with a party are "automatically presumed bias[ed]" and their disqualification is mandated.  Id. at 45 (quoting 3 William Blackstone, Commentaries *480-81 (stating that a juror has implied bias if he is a party's attorney)).  "A party may demonstrate implied bias by showing that the juror has a personal connection to the parties or the circumstances."  Caterpillar, Inc. v. Sturman Indus., 387 F.3d 1358, 1371, 1373 (Fed. Cir. 2004) (internal quotations omitted) (holding that juror was impliedly biased because her "financial well-being was to some extent dependent upon defendant's.").

The Deputy Foreperson's financial well-being, as a management employee of Goodwin Procter, obviously is to a large extent dependent upon the financial well-being of Goodwin Procter, whose financial well-being, in turn, is dependent to a certain extent on the litigation successes of its client PaineWebber.  The Deputy Foreperson clearly has a legal and financial conflict of interest regarding whether Mr. Carpenter is indicted and convicted, because PaineWebber – her employer's client – will benefit substantially both with respect to the civil case (which is currently on appeal) and the upcoming NASD arbitration for $88 million scheduled to begin on September 19, 2005, if Mr. Carpenter can be held criminally liable for the $9 million instead of PaineWebber.

If Goodwin Procter is successful in staving off these legal challenges to its client, obviously that would inure to the substantial economic benefit of Goodwin Procter and, naturally, to all of Goodwin Procter's employees – such as the Deputy Foreperson. The original indictment was returned in February 2004, two months after Mr. Carpenter had commenced the NASD arbitration seeking $88 million against PaineWebber. It is not too difficult to see that improper influences very easily could have been brought to bear to ensure that Mr. Carpenter was indicted.[6]

A grand juror who is employed by the law firm representing a party, witness or subject of a criminal investigation is biased *per se*. The Deputy Foreperson, because she was employed by the law firm that represents PaineWebber in this very case, is biased *per se* because her employer has a direct legal and financial interest in seeing Mr. Carpenter indicted and convicted. The fact that the Deputy Foreperson may not have worked on the civil case or the NASD arbitration is immaterial because *any* employee of Goodwin Procter should have been excused for cause from serving on the Grand Jury due to the same principles underlying the imputed disqualification rules of Rule 1.10 of the Massachusetts Rules of Professional Conduct set forth in Supreme Judicial Court Rule 3:07. See also 28 U.S.C. § 455(b)(2) (requiring federal judicial officers to disqualify themselves when they have served in private practice with lawyers involved in the matter in controversy).

---

[6] PaineWebber's answer in the NASD arbitration was originally due on February 3, 2004, but Goodwin Procter requested an extension from February 3 to February 13, 2004 (which was denied by the NASD). The Grand Jury returned the original indictment against Mr. Carpenter on February 4, 2004. (Dkt. #1.) Now that Mr. Carpenter has discovered that Goodwin Procter had one of its agents in the Grand Jury room, Goodwin Procter's request for a 10-day extension in which to file its NASD answer, coming as it did around the same time that the indictment was handed down, seems more than purely coincidental.

Unlike legal disqualifications such as age or language proficiency, juror bias infects the entire grand jury process. For unless the grand jurors deliberated with absolutely no discussion, the Deputy Foreperson may have influenced the other members of the Grand Jury by disclosing that Goodwin Procter represented PaineWebber and arguing that Mr. Carpenter, rather than PaineWebber, is to blame for the exchangors' $9 million in losses. Because the Deputy Foreperson of the Grand Jury was in the unique position to "shift blame" from PaineWebber onto Mr. Carpenter, the Grand Jury was biased *per se* and the superseding indictment must be dismissed. See United States v. Polichemi, 219 F.3d 698, 704 (7th Cir.), cert. denied, 531 U.S. 993 (2000) ("a court must excuse a juror for cause if the juror is related to one of the parties in the case, or if the juror has even a tiny financial interest in the case.").

## CONCLUSION

Based on the foregoing, Mr. Carpenter respectfully requests that the superseding indictment be dismissed due to grand jury bias in violation of the Grand Jury Clause of the Fifth Amendment.

Dated: July 5, 2005

                                        DANIEL E. CARPENTER,
                                      By his attorney,

                                      **/s/ Jack E. Robinson**
                                      Jack E. Robinson, Esq.
                                      (BBO #559683)
                                      2187 Atlantic Street
                                      Stamford, CT 06902
                                      (203) 425-4500
                                      Robinsonesq@aol.com

**VERIFICATION**

Pursuant to 28 U.S.C. §§ 1746(2) and 1867(d), I hereby verify under penalty of perjury that the foregoing factual statements, *i.e.*, that (a) the Deputy Foreperson of the Grand Jury (Participant #100398784) stated on her Juror Qualification Questionnaire that she was the manager of the Trusts and Estate Planning Department in the Boston office of Goodwin Procter LLP, (b) Goodwin Procter LLP has represented PaineWebber in this case from the very beginning and continues to do so, and (c) an alternate grand juror (Participant # 100409362) stated on his Juror Qualification Questionnaire that he did not satisfy the one-year durational residency requirement, are true and correct. Executed on July 5, 2005.

                                              **/s/ Jack E. Robinson**
                                              Jack E. Robinson, Esq.