UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 04-10029-GAO |
| DANIEL E. CARPENTER, | ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO DISMISS BASED ON THE ALLEGEDLY
UNCONSTITUTIONAL MAKE-UP OF THE GRAND JURY**

The United States opposes defendant Daniel E. Carpenter's motion to dismiss, which is premised on Carpenter's constitutional challenge to the one-year residency requirement contained in the District of Massachusetts' Plan for Random Selection of Jurors (hereafter, the "Plan"), and, by implication, his challenge to the identical requirement in 28 U.S.C. § 1865(b)(1). Defendant's motion is deficient in at least the following principal respects:

First, Carpenter has wholly failed, as a factual matter, to establish that any substantial and identifiable class of citizens was excluded from impanelment on his grand jury as a result of the challenged durational residency requirement. Indeed, Carpenter has not identified a single individual who was: (a) summonsed to report for jury duty on the day Carpenter's grand jury was impaneled, and (b) excluded from duty based on the Plan's one-year residency requirement. The relevant juror questionnaires and associated data have been made available and inspected by Carpenter's counsel. The government has inspected them as well. The foregoing records indicate that, out of the 450 individuals who were summonsed for jury duty on the date that Carpenter's grand jury was impaneled, not a single one was excused (precluded) from service on

the ground that he or she had failed to live in Massachusetts for the requisite year.[1]  Carpenter inexplicably makes no mention of this fact in his pleading.

Second, Carpenter lacks standing to challenge the Plan's residency requirement.  See United States v. Huber, 457 F. Supp. 1221, 1232 (S.D.N.Y. 1978) (holding that defendant had no standing to challenge section 1865(b)(1)'s one-year residency requirement).  Unlike in Powers v. Ohio, 499 U.S. 400 (1991), Campbell v. Louisiana, 523 U.S. 392 (1998), and the other cases that he cites, Carpenter's claims do not satisfy the three criteria that the Supreme Court has articulated as governing the standing analysis.  His arguments do not involve any cognizable "injury in fact" that he, personally, has suffered.  Nor does he have a "close relation" to the third parties whose rights he seeks to vindicate.  Powers, 499 U.S. at 410-11.  Among other reasons, Carpenter's claims do not involve alleged discrimination against members of any suspect class in the course of the grand jury selection process.

Third, Carpenter has not cited – and the government has not found – a single decision striking down a durational residency requirement in connection with any jury selection plan.  To the contrary, the cases that the government has reviewed in the limited time available to research the question have all rejected constitutional challenges to the one-year requirement.  E.g., United States v. Perry, 480 F.2d 147, 148 (5th Cir. 1973); United States v. Duncan, 456 F.2d 1401, 1406

---

[1]  Several individuals responded "No" to the question: "Has your primary residence for the past year been in this state?"  For most, however, the negative answer resulted from the fact that they had permanently moved *out of* Massachusetts.  For others, the answer related to the fact that they were full-time college students at out-of-state institutions and hence unavailable.  On only one questionnaire was the basis for the answer unclear.  That juror, however, was excused on medical grounds, not because of his answer to the residency question.  In short, no one was excused (precluded) from jury service because he/she had failed to live in Massachusetts for the requisite year.

(9th Cir. 1972); United States v. Rosenthal, 482 F. Supp. 867, 873 (M.D. Ga. 1979); United States v. Arnett, 342 F. Supp. 1255, 1261 (D. Mass. 1970).

Fourth, none of the Supreme Court decisions cited by Carpenter warrants a different result. (Motion at 6-10). All involved durational residency requirements that were enacted in materially different contexts, such as eligibility for welfare benefits, free medical care, and the right to vote. The Supreme Court deemed the residency requirement in each of these contexts to constitute the imposition of a penalty upon the exercise of the constitutional right of interstate travel. It accordingly held that the residency requirements must be shown to be necessary to promote a compelling governmental interest. In so holding, however, the Court took pains to note that not all durational residency requirements constitute penalties on the right to travel, and, therefore, such requirements are not *per se* unconstitutional. See Memorial Hospital v. Maricopa County, 415 U.S. 250, 256-57 (1974). In fact, the Supreme Court has rejected constitutional challenges to durational residency requirements in at least two contexts: (a) in-state college tuition programs; and (b) divorce court waiting periods. See Attorney General v. Soto-Lopez, 476 U.S. 898, 905 & n.5 (1986) (citing cases).

Application of the foregoing principles to this case requires the rejection of Carpenter's arguments. Unlike welfare benefits, medical care, or the right to vote, the Plan's residency requirement does not rise to the level of a cognizable penalty upon any individual's right to travel. It is not tenable for Carpenter to contend that anyone would premise a decision to move to Massachusetts on whether he/she would immediately be able to serve on a federal grand jury. Among other reasons, given the necessary time lag between when a person moves into the state, when their name would thereafter be added to the local resident lists, when they might then be

added to the District's Master Jury Wheel, and when, after all that, they might be selected at random and summonsed for federal grand jury duty, it would seem a distinctly tiny number of individuals who have even the smallest statistical chance of being summonsed in during their first twelve months of residency.[2]  Given the absence of any cognizable impact on the right to travel, Carpenter's arguments fail.  See United States v. Duncan, 456 F.2d at 1406 (concluding that the principles articulated by the Supreme Court in Shapiro v. Thompson, 394 U.S. 618 (1969), were not automatically transferrable to jury service).

Fifth, even if this court chooses to reach the substance of Carpenter's constitutional claims, they are without merit.  The Plan's one-year residency requirement does, in fact, promote governmental interests.  Specifically, as the Ninth Circuit held in United States v. Duncan, 456 F.2d 1401 (9th Cir. 1972), the provision "give[s] effect to the requirement of the Sixth Amendment that the jury be 'of the State and district wherein the crime shall have been committed . . . .'"  Id. at 1406.  As the court explained,

> Historically, one of the virtues of the jury, whether grand or petit, is supposed to be that it is a local body acquainted with local conditions, customs and mores.  The residency requirement seems to us to be rationally related to that notion.

Id.

Finally, even if Carpenter could demonstrate a constitutional flaw in the Plan's residency requirement, which the government disputes, he would not be entitled to the dismissal of the indictment.  Put succinctly, the existence and impact of the residency requirement does not so impugn "the fundamental fairness of the process itself . . . as to undermine the integrity of the

---

[2] The facts of the specific impanelment in this case bear this out. Four hundred-fifty jurors received summons.  None was excused on the basis of the one-year residency requirement.

indictment." <u>Hobby v. United States</u>, 468 U.S. 339, 345 (1984) (race and gender-based discrimination in the appointment of grand jury foremen did not require the dismissal of the indictment).

CONCLUSION

For all of the foregoing reasons, the United States requests that Carpenter's motion to dismiss be denied.

                                                Respectfully submitted,

                                                MICHAEL J. SULLIVAN
                                                United States Attorney

By:

                                                **/s/ Michael J. Pineault**
                                                Michael J. Pineault
                                                Jonathan Mitchell
                                                Assistant U.S. Attorney
                                                U.S. Courthouse, Suite 9200
                                                1 Courthouse Way
Dated: July 7, 2005                          Boston, MA 02210