UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 04-10029-GAO |
| DANIEL E. CARPENTER, | ) ) | |
| Defendant. | ) ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S MOTION
FOR JURY QUESTIONNAIRE AND INDIVIDUAL VOIR DIRE**

The United States opposes defendant Daniel E. Carpenter's ("Carpenter's") motion for jury questionnaire and individual voir dire, on three principal grounds.

First, Carpenter's proposed procedures are unnecessary and time-consuming. This case has not generated pretrial publicity. Nor does it raise sensitive social, racial, or religious issues. Nonetheless, Carpenter has submitted a 15 page, 56 question Jury Questionnaire and, in addition, proposes up to 16 minutes of attorney-conducted voir dire for each potential juror. The questionnaire is lengthy and intrusive, Carpenter's proposed process will significantly prolong jury selection, and he has made no showing that any of it is necessary to the impanelment of a fair and impartial jury in this case. The United States therefore objects to the use of defendant's questionnaire, opposes individual voir dire, and instead suggests that the Court conduct oral voir dire of the venire pursuant to its traditional process, based on questions submitted by the parties. E.g., Real v. Hogan, 828 F.2d 58, 62 (1st Cir. 1987) ("The district court has broad discretion as to the manner in which it conducts the voir dire and the inquiries it chooses to make, subject only to the essential demands of fairness.").

Second, Carpenter is simply too late in requesting that the Court materially alter its usual

jury selection procedures. He filed his motion less than one week before trial. The proposal that he belatedly makes would extend the jury selection process over at least two days, thereby postponing openings until Day 3 and substantially altering the schedule for the first week of trial.[1] No justification exists for making such a last-minute change.

Third, the proposed questionnaire that Carpenter submits has a significant number of problems, including questions that are unnecessary, one-sided, argumentative, seem intended to promote Carpenter's theories of defense, and intrude unnecessarily into jurors' privacy. Defense counsel submitted a very similar 15 page proposed questionnaire in United States v. Mueffelman. The court in that case (Gertner, J.), although historically receptive to questionnaires and individual voir dire, nonetheless excised a number of counsel's proposed questions as inappropriate.[2]

What follows is an illustrative, but not all-inclusive, list of some of the questionnaire's deficiencies:

Nos. 1-15. These questions substantially overlap with information requested on the court's own Juror Qualification Questionnaire. There is no need to ask the jurors to repeat it again.

Nos. 18-19. These questions are one-sided. If they are to be asked, they should include employment by defense counsel and/or public defender's offices, not just law enforcement.

No. 20. This question also is one-sided, for the same reason.

Nos. 21 and 22. These questions are not even-handed. Only the latter is phrased in terms

---

[1] According to the docket, that is how long jury selection took in United States v. Mueffelman, No. 01-10387-NG, which Carpenter cites as a model for how the impanelment should be conducted. (Motion at 2).

[2] See Memorandum and Order re: Jury Selection, issued February 9, 2004 (attached as Exhibit A).

of whether there would be an impediment to the juror's fair consideration of the evidence. No justification exists for the lack of parallelism.

No. 27. This question unjustifiably raises the specter of sequestration and the possibility that the trial might go considerably longer than 3 weeks. In doing so, it risks scaring off otherwise suitable jurors.

No. 28. This question asks the juror to agree or disagree with various statements. Some of the statements are contrary to the instructions the jurors will receive. The sole relevant question is whether the jurors are willing to follow the law, as given by the Court. The government notes that the court in Mueffelman expressly declined to include an almost identical question on the questionnaire in that case.

No. 29. The court in Mueffelman declined to ask this question as well.

Nos. 31-49. These questions sound as if they were drafted by a pollster attempting to conduct a public opinion survey on wealth, taxes, and investing in the stock market. The multiple choice questions and answers, in particular, are one-sided, suggestive, and seem intended to implant in the jurors' minds the seeds of themes that the defendant will then play at trial. The sole relevant question is whether, given the nature of the allegations in this case, each juror believes he/she can give fair, impartial consideration to the evidence that is introduced. There is no need to ask jurors whether they believe "everyone fiddles a little bit on their taxes" (No. 31f), whether wealthy people who seek to defer taxes are "deplorable" (No. 31d), and the like.

Moreover, to the extent these questions are intended to elicit potential conflicts or biases flowing from past dealings with any of the parties or witnesses, this can be handled in the traditional way by reading a list of the witnesses and inquiring whether any of the prospective jurors know or have had past dealings with any of them.

Nos. 50-55. The court in Mueffelman declined to ask substantially identical questions.

In sum, no need or justification exists for the Court to employ the questionnaire or the voir dire procedures requested by the defendant. The United States requests, instead, that the Court conduct oral voir dire of the venire pursuant to its traditional process, based on questions submitted by the parties. The government will submit its list of proposed voir dire questions under separate cover, within the next day.

                    Respectfully submitted,

                    MICHAEL J. SULLIVAN
                    United States Attorney

By:    **/s/ Michael J. Pineault**
                    Michael J. Pineault
                    Jonathan Mitchell
                    Assistant U.S. Attorney
                    U.S. Courthouse, Suite 9200
                    1 Courthouse Way
                    Boston, MA 02210

Date: July 7, 2005