UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DANIEL E. CARPENTER, )<br>_____ ) | CRIMINAL NO. 04-10029-GAO |

**DEFENDANT'S MOTION FOR LEAVE TO FILE CONSOLIDATED
REPLY BRIEF REGARDING GRAND JURY MOTIONS**

Defendant Daniel E. Carpenter, through undersigned counsel, respectfully moves for leave to file a short consolidated reply brief in further support of Mr. Carpenter's two motions to dismiss the superseding indictment regarding grand jury infirmities. Mr. Carpenter contends that a short reply (contained herein) will aid the Court in considering the issues raised by the government – all of which are based on incorrect legal standards and/or insufficient factual predicates.

**LOCAL RULE 7.1(A)(2) STATEMENT**

Mr. Carpenter's counsel has conferred with Michael J. Pineault, AUSA in a good faith, but unsuccessful, attempt to resolve or narrow the issue.

**REPLY BRIEF**

**I.  THE GOVERNMENT'S OPPOSITIONS LACK MERIT**

The government has filed oppositions to Mr. Carpenter's two motions to dismiss regarding grand jury infirmities. Both oppositions are without merit.

**A.  Motion to Dismiss Based on the Unconstitutional Make-up of the Grand Jury**

The government first argues that Mr. Carpenter has not identified any specific people who were excluded from the grand jury by virtue of the one-year durational residency

1

requirement. Gov. Opp. 1. No such showing, however, is required. Mr. Carpenter is challenging the residency requirement on Constitutional grounds. The fact that none of the 450 people summonsed to serve on *Mr. Carpenter's* grand jury were excluded under the requirement is entirely irrelevant to whether such exclusion "restricts the right to travel and thereby abridges the liberty guaranteed by the Fifth Amendment." Aptheker v. Secretary of State, 378 U.S. 500, 505 (1964).[1]

Second, citing United States v. Huber, 457 F. Supp. 1221, 1232 (S.D.N.Y. 1978), the government contends that Mr. Carpenter lacks standing to challenge the durational residency requirement. Gov. Opp. 2. Aside from the fact that Huber (which has no precedential effect in any event) was decided well before the maturation of the right to travel as described in the Supreme Court cases cited by Mr. Carpenter in his motion (Def. Br. 8-11), the government's standing argument flies in the face of the Supreme Court precedents referred to in the government's opposition and cited by Mr. Carpenter. See, e.g., Campbell v. Louisiana, 523 U.S. 392, 401 (1998) ("a defendant has standing to litigate whether his [indictment] was procured by means or procedures which contravene due process.").

Mr. Carpenter may assert the constitutional claims of a third party so long as he can demonstrate: (1) injury in fact, (2) a close relation with the third party, and (3) some hindrance to the third party's ability to protect his or her own interests. See Camacho v. Brandon, 317 F.3d 153, 159 (2d Cir. 2003) (citing Campbell, 523 U.S. at 397). Clearly Mr. Carpenter has suffered injury, because he has been indicted. Also, he "seeks to assert the well-established equal protection rights of [newly-arrived] persons not to be excluded from grand jury service on the basis of their [newly-arrived status]." Campbell, 523 U.S. at 398.

---

[1] The government's argument on this point also completely ignores the fact that the Court's jury plan includes the durational residency requirement as an absolute bar to grand jury service.

"[Mr. Carpenter] and the excluded grand juror share a common interest in eradicating discrimination from the grand jury selection process, and [Mr. Carpenter] has a vital interest in asserting the excluded juror's rights because his [indictment] may be [dismissed] as a result." Id. at 400. "As a final matter, excluded grand jurors have the same economic disincentives to assert their own rights as do excluded petit jurors." Id. Thus, Mr. Carpenter clearly has standing to challenge the durational residency requirement.

Third, all of the cases cited by the government in which the durational residency requirement was upheld (Gov. Opp. 2-3) were in the 1970s – long before the Supreme Court's definitive pronouncements regarding the right to travel and the Fifth Amendment. See Def. Br. 8-11.

Fourth, the government's contention that some durational residency requirements have been upheld in other areas (such as with in-state college tuition programs and divorce cases) (Gov. Br. 3) ignores the clear holding that in dealing with fundamental Constitutional rights and privileges (such as the right not to be discriminated against from serving on a grand jury), the Supreme Court has consistently struck down durational residency requirements erected as barriers to the exercise of such fundamental rights. See Attorney General of New York v. Soto-Lopez, 476 U.S. 898, 907 (1986) ("[W]e have held that even temporary deprivations of very important benefits and rights can operate to penalize migration.").

Fifth, the government – by citing United States v. Duncan, 456 F.2d 1401 (9th Cir. 1972) (applying minimal rational relationship test) (Gov. Br. 4) – fails to realize that the Supreme Court requires the application of *strict scrutiny* to durational residence requirements impacting fundamental and important Constitutional rights. See Saenz v. Roe, 526 U.S. 489, 504 (1999) ("Neither mere rationality nor some intermediate standard of review should be

3

used to judge the constitutionality of a state rule that discriminates against some of its citizens because they have been domiciled in the State for less than a year.").

In light of the foregoing, the government's contention that the durational residency requirement does not penalize the right to travel (Gov. Br. 3-4) is frivolous. An otherwise qualified person who recently moved to Massachusetts from Rhode Island is automatically disqualified from serving on a Massachusetts federal grand jury for an entire year. It is difficult to imagine a more onerous penalty on the right to travel. See Dunn v. Blumstein, 405 U.S. 330, 341 (1972) ("Travel is permitted, but only at a price; [grand jury service] is prohibited.").

If this Court determines that the one-year durational residency requirement for grand jury service is unconstitutional *as applied to the facts of this case* (as Mr. Carpenter contends), the *only* appropriate remedy is dismissal of the superseding indictment. It is downright silly for the government – relying on Hobby v. United States, 468 U.S. 339 (1984) (discrimination in choosing the ministerial grand jury foreperson not a basis for dismissal) – to assert that a violation of the fundamental rights contained in the Grand Jury Clause of the Fifth Amendment does not warrant dismissal. Gov. Br. 4-5. See, e.g., Miller-El v. Dretke, 125 S. Ct. 2317, 73 U.S.L.W. 4479 (June 13, 2005) (re-affirming that discrimination in jury selection violates equal protection principles).

### B.    Motion to Dismiss Due to Grand Jury Bias

The government's opposition regarding Mr. Carpenter's motion to dismiss due to grand jury bias can be dispensed with in short order.

The government goes to great lengths to argue that Mr. Carpenter offers no specific evidence of what actually occurred in the grand jury room and, therefore, can show no actual

4

bias. Gov. Br. 1-3. The government fails to realize, however, that Mr. Carpenter need not show any actual bias because a manager of PaineWebber's law firm serving as Deputy Foreperson of the grand jury – on the facts of this case – clearly results in *implied* bias. Even the *appearance* of bias, prejudice or impropriety in the grand jury room must be eliminated. The implied bias doctrine furthers that interest by dispensing with specific factual inquiries regarding actual bias. See United States v. Torres, 128 F.3d 38, 45 (2d Cir. 1997), cert. denied, 523 U.S. 1065 (1998) ("In contrast to the inquiry for actual bias, which focuses on whether the record at voir dire supports a finding that the juror was in fact partial, the issue for implied bias is whether an average person in the position of the juror in controversy would be prejudiced."). It is hard to imagine that an average person – employed as a manager at PaineWebber's law firm – would not be prejudiced in favor of PaineWebber and against Mr. Carpenter, since if Mr. Carpenter had not been indicted perhaps the grand jury would have indicted indict PaineWebber and its employees for causing the loss of the $9 million within a two-week period in December 2000.

      The government relies almost entirely on the argument that Mr. Carpenter has not provided any specific facts regarding what actually occurred in the grand jury room to show that the Deputy Foreperson was biased or prejudiced. However, unlike the government, which had access to the grand jury for over 18 months on an ex parte basis, Mr. Carpenter has no knowledge of what transpired in the grand jury room. Consequently, at the very least, Mr. Carpenter should be entitled to inspect the grand jury minutes for the 18+ months that this specific grand jury deliberated (as well as the charge given the grand jury). Only then would Mr. Carpenter be in a position to make the specific factual showing on which the government

5

seems to hang its argument. Moreover, the Court would then be in a better position to determine whether voir dire of the Deputy Foreperson is in order.

Finally, the civil cases cited by the government are inapposite. Gov. Br. 3. Having a manager at PaineWebber's law firm serving as the Deputy Foreperson of the grand jury in this case, given PaineWebber's substantial involvement in the facts and circumstances of this matter, is similar to having an employee of the U.S. Attorney's Office serve on the grand jury. See United States v. Polichemi, 219 F.3d 698, 705 (7th Cir.), cert. denied, 531 U.S. 993 (2000) (juror who was employee of the U.S. Attorney's Office should have been excluded as a matter of law due to implied bias). After all, it is entirely plausible that another grand jury – one on which an employee of PaineWebber's law firm did not serve as Deputy Foreperson (or in any capacity) – may have decided to indict PaineWebber and/or its employees since all of the $9 million was lost due to actions taken by PaineWebber.[2]

## **CONCLUSION**

For all of the foregoing reasons, Mr. Carpenter's motion(s) to dismiss should be granted. Alternatively, Mr. Carpenter should be entitled to a stay of the proceedings pursuant to 28 U.S.C. § 1867(a) while he inspects the grand jury minutes and the grand jury charge.

---

[2] Furthermore, even if AUSA Pineault did not know that the Deputy Foreperson worked for PaineWebber's law firm (Gov. Br. 3), constructive knowledge of such an important fact must be ascribed to the Office of the U.S. Attorney – regardless of whether AUSA Pineault himself in "good faith" did not know of the PaineWebber connection. See Brady v. Maryland, 373 U.S. 83, 87 (1962) (disclosure required "irrespective of the good faith or bad faith of the prosecution.").

Dated: July 7, 2005

                                DANIEL E. CARPENTER,
                                By his attorney,

                                **/s/ Jack E. Robinson**
                                Jack E. Robinson, Esq.
                                (BBO #559683)
                                2187 Atlantic Street
                                Stamford, CT 06902
                                (203) 425-4500
                                Robinsonesq@aol.com