UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10029-GAO |
| | ) | |
| DANIEL E. CARPENTER, | ) | |

**DEFENDANT'S EMERGENCY MOTION TO CONDUCT
VOIR DIRE, INSPECT ALL GRAND JURY TRANSCRIPTS, AND
STAY THE PROCEEDINGS PENDING FURTHER INVESTIGATION**

Defendant Daniel E. Carpenter, by and through undersigned counsel, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(ii) and Fed. R. Evid. 606(b), respectfully moves on an emergency basis:

(1) to conduct voir dire of the Deputy Foreperson of the grand jury (who signed both the original and superseding indictments) – the manager of the Trusts and Estates Planning Department of the Boston office of Goodwin Procter LLP, as well as attorneys R. Todd Cronan and Mark Blais of the Boston office of Goodwin Procter;[1]

(2) to inspect transcripts of **all** grand jury proceedings in this case including, but not limited to, (a) the proceedings that resulted in the return of the original and superseding indictments, (b) any factual or other representations made by government counsel to the grand jury, and (c) any instructions regarding the law which government counsel presented to the grand jury; and

(3) to stay the proceedings in this matter so that these issues can be fully investigated and resolved, as required by established First Circuit and other circuit precedent.

---

[1] Goodwin Procter (including Attorneys Cronan and Blais) represents PaineWebber in this criminal case, the $88 million NASD arbitration claim filed by Mr. Carpenter, and the related civil litigation.

1

At an emergency hearing held on Friday, July 8, 2005, the Court ordered the government to disclose transcripts of some, but not all, of the grand jury proceedings – consisting of the testimony of the only two witnesses to have appeared before the grand jury (an FBI agent and Ms. Jackie Spielman – a former secretary for Mr. Carpenter and the government's sole immunized witness). A cursory review of those materials has shown, as suspected, that further inquiry is necessary to determine to what extent extraneous information and/or influences were improperly and unlawfully brought to bear upon the grand jury investigation in this matter, thereby unconstitutionally poisoning Mr. Carpenter's right to an independent and impartial grand jury.

PaineWebber is mentioned in roughly half of the transcript pages reviewed so far, including questions from grand jurors regarding PaineWebber's potential liability. PaineWebber is clearly identified as having a financially and legally adverse relationship to Mr. Carpenter. It is beyond peradventure that the grand jurors in general, and the Deputy Foreperson in particular, knew that PaineWebber had substantial involvement in this case. Due to Goodwin Procter's longstanding and extensive representation of PaineWebber, it was a clear conflict of interest for a Goodwin Procter employee (and a manager no less) to sit in judgment of Mr. Carpenter.

What is less clear is to what extent Goodwin Procter's involvement representing PaineWebber in this very case was known by the Deputy Foreperson, to what extent extraneous information regarding Mr. Carpenter's disputes with PaineWebber, the merits and/or outcome of the civil lawsuit, etc. infiltrated the grand jury proceedings, and to what extent the Deputy Foreperson unlawfully poisoned the grand jury process with extraneous prejudicial information

and/or engaged in prohibited communications with third parties (*i.e.*, her colleagues at Goodwin Procter who represent PaineWebber) regarding the grand jury's investigation.[2]

Clearly, only through voir dire of the Deputy Foreperson and her colleagues at Goodwin Procter who currently represent PaineWebber in this and related actions, can it be determined whether and to what extent she brought any extraneous information or influences to bear upon the grand jury's investigation.

<u>**REQUEST FOR ORAL ARGUMENT**</u>

Mr. Carpenter requests oral argument on the within motion at the Court's earliest convenience prior to trial.

<u>**LOCAL RULE 7.1(A)(2) STATEMENT**</u>

Mr. Carpenter's counsel has conferred with Michael J. Pineault, AUSA in a good faith, but unsuccessful, attempt to resolve or narrow the issue.

<u>**MEMORANDUM OF LAW**</u>

**A.      <u>Grand Jury Transcripts Produced So Far Reveal Need For Further Investigation</u>**

According to the government, the only witnesses who testified before the grand jury were FBI Special Agent John Caldwell (who testified on January 14 and February 4, 2004) and Jackie Spielman, Mr. Carpenter's former secretary at Benistar Ltd. in Connecticut and the government's sole immunized witness (who testified on February 4, 2004).[3]

---

[2] In light of newly-discovered evidence, there is now a concern that Goodwin Procter had **advance notice** of the issuance of the indictment.  See Part C, infra.

[3] Jackie Spielman's testimony concluded at 2:35 p.m. on February 4, 2004.  FBI Special Agent Caldwell's testimony concluded at 3:48 p.m.  The indictment was signed by the Deputy Foreperson (Goodwin Procter's management employee) and filed in Court at 4:18 p.m. that same day.  (Dkt. #1.)  The Deputy Foreperson also signed the superseding indictment returned on September 24, 2004.  (Dkt. #34.)

Based on just a cursory review of the grand jury transcripts provided so far, there can be no doubt whatsoever that the grand jury as a whole, and the Deputy Foreperson in particular, knew that PaineWebber had substantial involvement and potential liability in this case:

GRAND JUROR: If he had checked escrow on either of those accounts, would those have signified anything to PaineWebber?

AUSA PINEAULT: That's a legal question.

FBI AGENT: I think it's a legal question. I would say in my experience, yes.

GRAND JUROR: Okay.

AUSA PINEAULT: It's sort of hard to answer that question because, again, if the victims in this case had sued PaineWebber, saying that box was checked off, you should have known - - -.[4]

GRAND JUROR: That's what I'm asking.

AUSA PINEAULT: Yes.

GRAND JUROR: If that check box was checked, **are there legal implications of PaineWebber to protect that money**?

AUSA PINEAULT: **There may be civil, legal obligations that arise as a result. I think the victims' lawyers would tell you one answer and the PaineWebber, if it were sued, would give you another one**, but - - yes.

Jan. 14, 2004 Grand Jury Tr. at 61-62 (emphasis added).

This is just one of many examples in which the grand jury delved into PaineWebber's potential liability in this case. Clearly, if the grand jury indicted Mr. Carpenter, that would inure to the benefit of PaineWebber (and Goodwin Procter) by deflecting liability from PaineWebber onto Mr. Carpenter.

---

[4] AUSA Pineault twice framed the issue of PaineWebber being sued as a hypothetical, even though he knew for a fact that the exchangors had indeed sued PaineWebber.

4

It was also obvious to the grand jury, from Jackie Spielman's testimony, that Mr. Carpenter had substantial legal claims against PaineWebber:

AUSA PINEAULT: Okay. How did you learn that there was something wrong with the client fund situation at PaineWebber on this day we're talking about?

SPIELMAN: **Because PaineWebber called and asked for me to wire money to a client, and that had never happened before, it had always gone through the Newton office**. And Dan wasn't in the office that day. And so I went and I asked somebody, Donna, who was next in charge when Dan and Molly aren't available, what to do, because he wasn't there to sign the wire. And – well, then we have to back up a bit. **PaineWebber, I told them Dan wasn't there. And PaineWebber said to, well, can you stamp it for us, the Dan stamp**.

AUSA PINEAULT: And the Dan stamp was a signature stamp?

SPIELMAN: Yes. And so that's when I went down and talked to Donna and asked her what to do. And she said to stamp it and send it. And so that's what I did. **And he flew off his rocker when I called him and told him. And he, he got back and he got on the phone with PaineWebber and was trying to make it their fault because they're not supposed to accept the Dan stamp**. And there was another big fight and that was the end of that day.

Feb. 4, 2004 Grand Jury Tr. at 20-21 (emphasis added). From this exchange, it was obvious to the grand jury that PaineWebber's interests and those of Mr. Carpenter were adverse and that Mr. Carpenter was placing blame on PaineWebber.

There can be no doubt that it was obvious to the grand jury that (1) PaineWebber's potential liability in this case was substantial and (2) the interests of PaineWebber and Mr. Carpenter were (and continue to be) adverse. It is now imperative that Mr. Carpenter be given the opportunity to review any additional transcripts relevant to this case, and (initially) to conduct voir dire of the Deputy Foreperson and the Goodwin Procter attorneys centrally involved in the PaineWebber litigation in this and related proceedings.

To show presumed bias on the part of the grand jury, warranting dismissal of the superseding indictment, it must be determined "whether an average person in the position of the juror in controversy would be prejudiced." United States v. Torres, 128 F.3d 38, 45 (2d Cir. 1997), cert. denied, 523 U.S. 1065 (1998). Mr. Carpenter respectfully contends that on the factual record that currently exists, presumed bias can clearly be found and the superseding indictment should be dismissed on this basis immediately. However, there now appears to be evidence pointing to *actual* bias. The only way to determine whether actual bias existed in the grand jury room is for Mr. Carpenter to review transcripts of all the grand jury proceedings and (initially) to conduct voir dire of the Deputy Foreperson and the Goodwin Procter attorneys.

**B.    Voir Dire Is Necessary Under Established First Circuit And Other Circuit Precedent**

Federal Rule of Evidence 606(b) allows a grand juror to testify "on the question whether extraneous prejudicial information was improperly brought to the [grand] jury's attention or whether any outside influence was improperly brought to bear upon any [grand] juror." Fed. R. Evid. 606(b). This rule allows testimony by a grand juror as to objective misconduct or irregularities that suffice as grounds for dismissing an indictment – such as private communications between a grand juror and an outside party (*i.e.*, advance notice from the Deputy Foreperson to her colleagues within Goodwin Procter that an indictment of Mr. Carpenter was imminent) or extraneous prejudicial information that was considered by the grand jury (*i.e.*, the grand jury being poisoned against Mr. Carpenter by extra-record statements made by the Deputy Foreperson looking to protect the interests of PaineWebber and Goodwin Procter). On the troubling facts unearthed so far, voir dire is clearly necessary.

In United States v. Rhodes, 556 F.2d 599 (1st Cir. 1977), defendants' federal drug trial had been preceded by a highly-publicized seizure of 8 tons of marijuana on their farm. After

defendants' convictions, it was learned that the jurors had known about and discussed the earlier seizure (which was not in evidence). The district court denied a motion for new trial *without* conducting voir dire and the First Circuit reversed. "**The trial court's denial of the motion without conducting any investigation . . . was an altogether insufficient response to the serious matters raised by the allegations of the affidavit**." Id. at 602 (emphasis added).

In United States v. Swinton, 75 F.3d 374 (8th Cir. 1996), a defendant convicted of bank fraud was contacted after trial by one of the jurors who told Swinton that, during jury deliberations, another juror announced that Swinton had a criminal record. Although Swinton did have a prior felony conviction, evidence of such was excluded at trial. Ruling that the district court erred by not investigating what the Eighth Circuit determined was "extraneous prejudicial information," the Eighth Circuit remanded for voir dire to investigate potential juror misconduct. "Extrinsic or extraneous influences include . . . communications or other contact between jurors and outside persons." Id. at 381 (internal quotation omitted).

Just as private communications between an outside party and a petit juror raise Sixth Amendment concerns, see Parker v. Gladden, 385 U.S. 363, 364 (1966) (per curiam), so do private communications between an outside party and a grand juror raise Fifth Amendment concerns. If the Deputy Foreperson had communications within Goodwin Procter regarding the grand jury's investigation of this case, those communications qualify as extrinsic or extraneous influences which, at the very least, require voir dire. See United States v. O'Brien, 972 F.2d 12, 14 (1st Cir. 1992) ("Any unauthorized private communication between jurors and persons associated with the case is presumptively prejudicial" and obligates the district court to "conduct a sufficient inquiry to determine whether the communication was harmless."); United States v. Gaston-Brito, 64 F.3d 11, 12 (1st Cir. 1995) ("When a nonfrivolous suggestion is made that a

jury may be biased or tainted by some incident, the district court must undertake an adequate inquiry to determine whether the alleged incident occurred and if so, whether it was prejudicial.") (internal citations and quotations omitted).

Because "an extraneous influence on a juror is one derived from specific knowledge about or a relationship with either the parties or their witnesses," United States v. Herndon, 156 F.3d 629, 636 (6th Cir. 1998), voir dire is necessary to determine to what extent information regarding this case flowed between and among PaineWebber, Goodwin Procter and the Deputy Foreperson, resulting in prejudice to Mr. Carpenter's right under the Grand Jury Clause to a fair and impartial grand jury.

### C. The Newly-Disclosed Grand Jury Transcripts Raise Troubling Concerns That Goodwin Procter Received Advance Notice of Mr. Carpenter's Indictment in January/February 2004

The need for additional investigation is particularly compelling in this case given that cause now exists to suspect that Goodwin Procter perhaps received **advance notice** of Mr. Carpenter's indictment in January/February 2004.

Mr. Carpenter caused to be filed an $88 million NASD arbitration claim against PaineWebber in December 2003 that is scheduled for hearing on September 19, 2005. PaineWebber is represented in the NASD arbitration by Attorneys Cronan and Blais in the Boston office of Goodwin Procter. PaineWebber's answer in the NASD proceeding was due on February 3, 2004, but in late January 2004 Goodwin Procter requested a 10-day extension that was ultimately denied by the NASD. Thus, Goodwin Procter filed its answer on behalf of PaineWebber on February 3, 2004. The grand jury returned the original indictment against Mr. Carpenter late in the afternoon on the next day – February 4, 2004.

In the answer filed by Goodwin Procter on the day *before* the indictment was returned, Goodwin Procter submitted as one of its defenses:

**(4)    Benistar's Claims Are Barred By Its Intentional Acts and <u>Criminal Misconduct</u>.**

<u>See</u> pertinent parts of answer annexed hereto as **Exhibit 1** (emphasis added).

Allegations of criminal conduct (prior to conviction) in civil proceedings are extremely rare because such allegations are generally deemed to constitute libel *per se* and might not be covered by the pleadings privilege. Such allegations are even less likely coming from a firm with the reputation of Goodwin Procter. Goodwin Procter obviously knew that a grand jury investigation of this case had been underway since at least June 2001 because Goodwin Procter attorneys had attended interviews of various PaineWebber witnesses conducted by AUSA Pineault and FBI Special Agent Caldwell. **However, did Goodwin Procter also know on or prior to February 3, 2004 that an indictment of Mr. Carpenter was imminent?**[5]

Such advance knowledge would certainly explain Goodwin Procter's request for an extension to February 13, 2004 in which to answer the NASD complaint, as well as the stridency with which Goodwin Procter included allegations of criminality in its NASD pleading. The requested voir dire will shed light on this issue as well.

**D.    Mr. Carpenter Has Satisfied The Test For Access To All Grand Jury Transcripts**

Mr. Carpenter has clearly established a "particularized need," <u>Thomas v. United States</u>, 597 F.2d 656, 658 (8th Cir. 1979), as well as the substantial likelihood of "a gross and prejudicial irregularity influencing the grand jury," <u>United States v. Burford</u>, 755 F. Supp. 607,

---

[5] Neither Mr. Carpenter nor his attorneys received advance warning that an indictment was imminent. In fact, the issuance of the indictment on February 4, 2004 came as a complete surprise to Mr. Carpenter (who was traveling at the time visiting colleges with his daughter) and his attorneys, who **one day earlier** had met with AUSA Pineault and were not told that an indictment was imminent.

9

614 (S.D.N.Y. 1991), entitling him to access to all of the grand jury transcripts. Not only has Mr. Carpenter's argument that the superseding indictment be dismissed on account of presumed bias been strengthened, but Mr. Carpenter now has specific facts that *actual* bias might have infected the grand jury proceedings. The only sure way to determine if actual bias existed is for Mr. Carpenter to review the transcripts of **all** the grand jury proceedings.

## CONCLUSION

Mr. Carpenter respectfully contends that sufficient evidence exists of implied grand jury bias for the Court to dismiss the superseding indictment immediately. However, if the Court determines that further evidence of *actual* bias is necessary, Mr. Carpenter requests that he be entitled to:

(1) conduct voir dire of the Deputy Foreperson and Goodwin Procter attorneys R. Todd Cronan and Mark Blais;[6]

(2) inspect transcripts of **all** grand jury proceedings in this case including, but not limited to, (a) the proceedings that resulted in the return of the original and superseding indictments, (b) any factual or other representations made by government counsel to the grand jury, and (c) any instructions regarding the law which government counsel presented to the grand jury; and

(3) a stay of the proceedings in this matter until these issues can be fully resolved.

---

[6] Mr. Carpenter expressly reserves the right to seek voir dire of (a) the entire grand jury, (b) the Foreperson (to determine the responsibilities of the Deputy Foreperson), and (c) a representative of the U.S. Attorney's Office (to establish that the grand jury questionnaires were available to AUSA Pineault and that his Office must be deemed to have had constructive knowledge of the Deputy Foreperson's conflict).

Dated:  July 10, 2005

                        DANIEL E. CARPENTER,
                        By his attorney,

                        **/s/ Jack E. Robinson**
                        Jack E. Robinson, Esq.
                        (BBO #559683)
                        2187 Atlantic Street
                        Stamford, CT 06902
                        (203) 425-4500
                        Robinsonesq@aol.com