UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
UNITED STATES OF AMERICA            )
                                    )
        v.                          )        CRIMINAL NO. 04-10029-GAO
                                    )
DANIEL E. CARPENTER                 )
_____)

## DEFENDANT'S MOTION *IN LIMINE*
### (Trial Motion No. 1)

Now comes the Defendant, Daniel E. Carpenter, by and through undersigned counsel,

and hereby moves during trial, *in limine*, regarding the following legal and evidentiary issues:

1.      Rule 806 of the Federal Rules of Evidence specifically provides that when a

"hearsay statement, or a statement defined in Rule 801(d)(2), (C), (D), or (E), has been

admitted in evidence, the credibility of the declarant may be attacked [] by any evidence

which would be admissible for those purposes if declarant had testified as a witness."  During

yesterday's testimony, during direct examination of Brian Fitzgerald, the government elicited

numerous statements made by declarant Martin Paley, ostensibly pursuant to Rule

801(d)(2)(D), and then simultaneously elicited statements that impeached the credibility of

the declarant Martin Paley (including questions whether Mr. Fitzgerald was ever advised that

his money would be invested in stock options).  During cross-examination of Mr. Fitzgerald,

pursuant to Rule 806, the defendant attempted to impeach the credibility of declarant Martin

Paley, the government objected and the Court sustained the objection.  Clearly, the defendant

should have been allowed to impeach the credibility of declarant Martin Paley through Mr.

Fitzgerald via Rule 806.  As such, the defendant moves *in limine* for an order allowing the

defendant to impeach the credibility of Mr. Paley through future government witnesses when

the government elicits Rule 801(d)(2)(D) statements on direct examination, should the defendant so choose.  The defendant further moves to strike the testimony of Brian Fitzgerald in its entirety, given the fact that the defendant's constitutional right to cross-examination was improperly limited.  See Fed.R.Evid. 608(b); Davis v. Alaska, 415 U.S. 308 (1974).

     2.     The defendant moves, *in limine*, to prohibit the government from eliciting from their "Merrill Lynch" witnesses testimony concerning Merrill Lynch's decision to stop the defendant from trading at their firm.  The defendant expects the government to elicit from the Merrill Lynch witnesses, including but not limited to Gary Stern and Gerald Levine, that, in their and other Merrill Lynch employees *opinion*, the defendant's trading strategy was too aggressive and so "Merrill Lynch" decided that they would prohibit the defendant from taking any additional positions in the market.  Whether, in the opinion of any employee of Merrill Lynch, the defendant's trading strategy was too aggressive is irrelevant to the issue whether Mr. Carpenter had the lawful right to invest the exchangors' proceeds, which is the sole issue in this case.  Fed.R.Evid. 401.  Moreover, any arguable relevance is significantly outweighed by the prejudice of these "opinions" and judgments that Mr. Carpenter's trading strategy was too aggressive.  Fed.R.Evid.403.  The jury is likely to conclude that if the prestigious brokerage house of Merrill Lynch has prohibited Mr. Carpenter from further trading, then Mr. Carpenter must have been doing something wrong.  Merrill Lynch has other concerns when an investor begins losing money, such as the potential for liability given the large amount of commissions earned from a client such as BPE, and so their decision to stop trading is not directly related to the defendant's trading strategy, and is also self-serving.  Clearly, any arguable limited relevance of this evidence is significantly outweighed by its prejudice.  Finally, the proposed testimony is impermissible expert opinion.  The government has not

noticed any of the Merrill Lynch employees as experts in this case and their _opinions_ and

_conclusions_ regarding whether the defendant's trading strategy was "too aggressive," and

whether Merrill Lynch had the lawful or regulatory authority to prohibit him from further

trading, are within the province of expert testimony.  Fed.R.Evid.701 and 702.  As such, the

Court should prohibit the Merrill Lynch witnesses from testifying concerning the fact that

Merrill Lynch determined that the defendant should be prohibited from further trading, as

well as any related testimony. [1]

     3.     The defendant moves, _in limine_, to prohibit the government from further

eliciting evidence from its witnesses regarding their understanding of the agreements.  Given

the Court's ruling in this case that the exchangors' understanding of the contracts is not

relevant and its order excluding that evidence from trial, the government has begun to elicit

this evidence in a different manner, asking their exchangor witnesses, near the conclusion of

direct examination for the most substantial impact on the jury possible, whether they were

ever told or they ever knew that their funds would be invested in the market and/or via the

options market, and whether they ever invested money in the options market, and whether

they would have given their money to Mr. Paley if they had known it would be invested in the

options market.  The only relevance of these questions and answers is to circumvent the

Court's ruling that the exchangors' understanding of the agreements are not relevant to the

issues in controversy in this case.  The questions are designed solely to allow the exchangors

to testify that they did not understand the agreements to provide them with notice that their

funds would be invested.  The inference the government is asking the jury to draw, and the

---

[1]  The arguments advanced in this paragraph apply equally to the PaineWebber witnesses and their
opinions and conclusions that the defendant should be prohibited from further trading, and the
defendant moves _in limine_ on the same grounds with respect to the PaineWebber witnesses as well.

argument the government will make during closing, is that all of the exchangors told you that they never knew their money would be invested in the options market, *i.e.*, that was their understanding of the contracts. The Court has already excluded this evidence. As such, the defendant moves, *in limine*, to prohibit the government from asking questions of this nature to future exchangor witnesses. The defendant further moves to strike all of these previous questions and answers from the record and to prohibit the government from arguing during closing any inferences or conclusions from this testimony, including but not limited to the fact that the exchangors did not understand or believe that their money would be invested.

The Defendant,
Daniel E. Carpenter,
By his attorney,

**/s/ Robert M. Goldstein**
Robert M. Goldstein
Mass. Bar No. 630584
20 Park Plaza, Suite 903
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

Dated: July 15, 2005