UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10029-GAO |
| ) | |
| DANIEL E. CARPENTER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
TRIAL MOTION IN LIMINE NO. 2**

The United States opposes defendant Daniel E. Carpenter's ("Carpenter's") motion in limine, which seeks to preclude the government from calling witnesses and introducing exhibits that will establish the process by which the wire transfers at issue in this case were transmitted by the sending financial institutions. The government premises its opposition on the following grounds.

First, the need for the witnesses and exhibits at issue was created by the defendant's belated filing of a motion on June 23, 2005 (Docket 84) seeking to dismiss virtually all of the indictment's wire fraud counts.[1] In his motion, defendant argued for the first time that the wire transfer of funds out of Massachusetts bank accounts was insufficient to support venue in this District if the bank in question operated a centralized wire room and that wire room was located in a different state. Defendant contended that 11 of the indictment's 13 wire fraud counts fell victim to this argument because the sending institutions were multi-state banks with centralized wire rooms located outside Massachusetts.

---

[1] Although styled as a motion in limine or, in the alternative, to dismiss, the relief requested would have resulted in the dismissal of the wire fraud counts.

Defendant never had raised this argument before in any of the numerous dispositive motions he had filed, including his earlier venue motions, which were premised on entirely different grounds. The government had no knowledge of, nor did it anticipate, that defendant would mount an eve-of-trial challenge to wires made from Massachusetts bank accounts based on an argument that the banks operated centralized wire rooms and those wire rooms were located outside the District.

Contrary to the defendant's assertions, the government moved rapidly to respond to the defendant's new argument. On June 24, the day after the motion was filed, the government began contacting all of the sending institutions from which the wires had been transmitted and requesting production of all wire transfer records.[2] On June 29, twelve days before trial, the government served a revised witness list on the defendant, disclosing that it intended to call representatives from each of those financial institutions, as well as from the Federal Reserve Bank, which operates the national Fedwire system. On July 1, ten days before trial, the government began producing wire transfer records as it received them, and has since continued forwarding all subsequently produced records immediately upon receipt.

The evidence at issue is neither voluminous nor complicated. There are typically three documents evidencing each wire: (1) the wire transfer request; (2) a computerized printout, received by the sending institution, confirming the Federal Reserve system's receipt of the transfer request; and (3) a second computerized printout, from the Federal Reserve's database,

---

[2] The government notes that it has long possessed the relevant wire transfer records of the *receiving* institutions (Merrill Lynch and PaineWebber), which document the transmission of funds from Massachusetts accounts. The government did not have, however, the records of the *sending* institutions, which document the internal bank procedures by which each of the wires was requested and processed.

2

documenting the successful wire. The government also has received in certain instances, and produced to defendant, the sending customer's bank statements documenting the debiting of the wire amount from its account.

The government has interviewed witnesses at each of the sending financial institutions, as well as at some of the sending customers, and produced the 302's from those interviews to defendant. Most of the 302's are less than a page and state almost identical information. In brief, each wire began with a request from the bank's customer, which was transmitted electronically by phone, fax, or computer to the bank's wire room, which then transmitted it electronically to the Federal Reserve's Fedwire system. Once in the Fedwire system, two things happened: (1) an electronic debit was made to the reserve account of the sending institution on the books and records of the Federal Reserve Bank in the district where the sending institution was located; and (2) an electronic credit was made to the reserve account of the receiving institution on the books and records of the Federal Reserve Bank in the district where the receiving institution was located. Corresponding electronic debits and credits were made by the sending and receiving institutions to the accounts of their customers (i.e., the people/entities who had sent or received the money).

For 10 of the 13 wires charged in the indictment, the initiating electronic transmission originated in Massachusetts, the wire cleared through the Federal Reserve Bank of Boston ("FRBB"), and the ultimate debit was made to a Massachusetts account. Of the remaining three wires, one originated in New Hampshire and cleared through Boston. The second two originated in Massachusetts and cleared through the Federal Reserve in New York. In all instances, the wires had sufficient nexus to Massachusetts to support venue.

The government anticipates calling one witness per wire to testify to the foregoing, likely in ten minutes or less apiece.[3] It also anticipates calling a witness from the FRBB to explain the Fedwire system. All of this is necessitated by the defendant's contention, first articulated on June 23, that establishing the wire transfer of funds from Massachusetts accounts is not sufficient to support venue. Because of that contention, and because of the inevitability that the defendant will vigorously appeal any conviction, the government believes it advisable to document as thoroughly as possible the fact that 12 of the 13 wire transfers charged in the indictment began with an electronic transmission from Massachusetts and the 14th cleared through the Federal Reserve Bank in Boston. To do that, the government needs to call the above-referenced witnesses and introduce the above-described documents.

The government does not quarrel with the defendant's right to contest what the government believes to be an indisputable nexus between Massachusetts and each of the wire transfers charged in the indictment. However, by the same token, the government deserves the opportunity to marshal and present the evidence necessary to respond to the defendant's arguments. The evidence is discrete. It is uncomplicated. And the government has produced it as rapidly as it has received it.

For all of the foregoing reasons, the government requests that defendant's motion be denied.

---

[3] Several of the wires are from accounts at Citizens Bank. However, because of difficulties experienced by Citizens in retrieving its records, the government will need to call as witnesses representatives from each of the Citizens customers who initiated the wires.

                    Respectfully submitted,

                    MICHAEL J. SULLIVAN
                    United States Attorney

By:

                    **/s/ Michael J. Pineault**
                    Michael J. Pineault
                    Jonathan Mitchell
                    Assistant U.S. Attorneys
                    U.S. Courthouse, Suite 9200
                    1 Courthouse Way
                    Boston, MA 02210

Date: July 20, 2005