UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                      )
UNITED STATES OF AMERICA    )
                                      )
        v.                            )        CRIMINAL NO. 04-10029-GAO
                                      )
DANIEL E. CARPENTER         )
_____)

### DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON COUNTS 1-2 AND 4-13 FOR LACK OF VENUE PURSUANT TO FED. R. CRIM. P. 29(a) (Defendant's Rule 29 Motion No. 1)

Defendant Daniel E. Carpenter, by and through undersigned counsel, respectfully moves at the close of the government's evidence and at the close of all the evidence, pursuant to Fed. R. Crim. P. 29(a), for judgments of acquittal on Counts 1-2 and 4-13 of the superseding indictment for lack of venue.

Venue on these wire fraud counts is improper in this District because the actual wire transfers charged in Counts 1-2 and 4-13 were not sent from or received in Massachusetts.[1] Now that Mr. Carpenter has been placed in jeopardy on those counts, judgments of acquittal should be entered thereon pursuant to Fed. R. Crim. P. 29(a).

### FACTUAL BACKGROUND

The facts relevant to determining venue of Counts 1-2 and 4-13 are undisputed.  None of the wires were sent from or received in Massachusetts.  All of the wire rooms for the sending financial institutions were, at all material times, located in New York (Counts 1-2)

---

[1]  Count 3 does not charge a wire transfer of funds, but merely the sending of a letter via facsimile from New Hampshire to Massachusetts.  Count 14 charges a wire transfer sent **directly** from Bay State Savings Bank in Worcester, Massachusetts to PaineWebber's account at Bank of New York in New York City.  Thus, while Mr. Carpenter does not challenge venue with respect to Counts 3 and 14, he has moved for a judgment of acquittal with respect to all counts on other grounds as discussed in Defendant's Rule 29 Motion No. 3.

(Tr. 10-139, 140); New Hampshire (Count 4) (Tr. Day 11); Rhode Island (Counts 5-11) (Tr. 10-105); and Pennsylvania (Counts 12-13) (Tr. 10-125, 131).  It is also undisputed that the subject wire transfers were received in Pennsylvania (Merrill Lynch's account at Mellon Bank in Pittsburgh) or New York (PaineWebber's account at Bank of New York in New York City).

Consequently, none of the actual wire communications charged in Counts 1-2 and 4-13 (*i.e.*, wires from specific financial institutions to Merrill Lynch or PaineWebber) were sent from or received in Massachusetts.

**MEMORANDUM OF LAW**

I.     **VENUE FOR COUNTS 1-2 AND 4-13 IS IMPROPER IN THIS DISTRICT**

A.     **These Wire Transfers Lack A Sufficient Nexus To Massachusetts**

"The government initiates criminal prosecutions and, thus, has first crack at selecting venue.  When that choice is challenged, the government must prove by a preponderance of the evidence that venue is proper *as to each individual count*."  United States v. Salinas, 373 F.3d 161, 163 (1st Cir. 2004) (emphasis added).  The fact that venue in this District may be proper with respect to some counts has no bearing on the propriety of venue vis-à-vis the other counts in the indictment.  "The criminal law does not recognize the concept of supplemental venue."  Id. at 164.

Although the First Circuit has not spoken directly on the issue, the majority view is that because the wire fraud statute does not contain a specific venue provision, the general venue provision for offenses that occur in more than one district, 18 U.S.C. § 3237(a), applies – meaning that venue in wire fraud cases is proper in any district in which **the wire**

**communication charged in the indictment** "was begun, continued, or completed."[2]  Id.  See also United States v. Kim, 246 F.3d 186, 191 (2d Cir. 2001) ("the act of causing a wire to be transmitted in furtherance of a fraud is criminalized by the statute, and that a wire is 'transmitted' both where it was sent and where it was received.").[3]  However, as explained below, a wire communication that is merely preparatory to the actual wire transmission charged in the indictment cannot form the basis of venue for wire fraud.

In United States v. Scott, 270 F.3d 30 (1st Cir. 2001), cert. denied, 535 U.S. 1007 (2002), the First Circuit in a bank fraud (forgery) case applied the Supreme Court's venue analysis outlined in United States v. Rodriguez-Mareno, 526 U.S. 275 (1999), holding that "[v]enue must be determined from the nature of the crime alleged, determined by analyzing the conduct constituting the offense, and the location (or, if the crime is a continuing one, locations) of the commission of the criminal acts."  Scott, 270 F.3d at 35.

In Scott, defendant was a paralegal at a Boston law firm who, among other crimes, forged endorsements on checks payable to the law firm and its clients, and deposited the checks in his personal bank account in Texas.  Scott challenged venue on the bank fraud counts, claiming that venue was proper in Texas, not Massachusetts.  In upholding this Court's determination that venue was proper in Massachusetts, the First Circuit found that Scott's "[t]aking the checks was an act necessary to this particular scheme."  Id. at 36.  Thus,

---

[2]  The first paragraph of 18 U.S.C. § 3237(a) provides: "Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."  However, no other Circuit has adopted the holding in United States v. Pace, 314 F.3d 344, 349-50 (9th Cir. 2002), stating that venue for wire fraud also exists in those locations from which the wire transmission was "orchestrated."

[3]  The defendant nevertheless contends that the proper standard for venue in mail and wire fraud cases is the long-standing rule, i.e., the location of the origin and receipt of the wire and mail transmission. Otherwise, venue could be virtually universal in a mailing or wire that traverses numerous districts on a cross-country journey.

the act by which Scott actually took the checks (*i.e.*, received the funds) caused venue to be proper in Massachusetts because he received the funds in Massachusetts.

In the challenged wires here, BPE did not receive the funds from the property exchange transactions until the wire transfers were actually sent from the respective banks' wire rooms, none of which are located in Massachusetts. The preliminary acts of the Massachusetts senders instructing their local bank branches to begin the wire transfer process, and the local bank branches' communications to their respective wire rooms, did not constitute the actual transmission of funds. The actual transmission of funds was effectuated when the wire rooms actually engaged in the act of releasing the funds into the Fedwire system. (Tr. 10-85, 86.) That specific act in all cases took place outside of Massachusetts. BPE received the funds outside of Massachusetts because the bank wire rooms released the funds into the Fedwire system outside of Massachusetts. And, unlike <u>Scott</u>, it is without question that Mr. Carpenter did not commit *any* act in Massachusetts. Thus, even under <u>Scott</u>'s venue analysis, this District lacks venue with respect to the challenged counts.[4]

In <u>United States v. Geibel</u>, 369 F.3d 682 (2d Cir.), <u>cert. denied</u>, 125 S.Ct. 619 (2004), three defendants who were buying call options based on inside information regarding corporate takeovers were charged with, *inter alia*, 80 counts of insider trading. Even though the defendants were located outside of New York, the government argued that venue in the Southern District of New York was proper because: the inside information was misappropriated in New York; the defendants were aware that the tipper was located in New

---

[4]  In <u>Scott</u>, had the facts been reversed (*i.e.*, the defendant had worked in a Texas law firm, forged the checks in Texas and mailed them to his Massachusetts bank account), venue would exist in Texas because that is where the checks (and the funds) would have been obtained. In the present case, the funds were not obtained in Massachusetts because the banks' wire rooms – from which the funds were actually sent – are located outside of Massachusetts.

York; each option trade placed by the defendants was the direct result of communications from or to New York; each defendant made cash contributions which they knew would eventually be sent to the tipper in New York; and the call options were purchased through the American Stock Exchange located in New York. Id. at 697.

The Second Circuit, however, found that with respect to all but a handful of the 80 insider trading counts, venue in the Southern District of New York was improper because the government submitted "no evidence showing that defendants directly contacted New York when they engaged in insider trading." Id. "[V]enue cannot be grounded merely on [the tipper's] initial misappropriation and the fact that the information originated in New York." Id.

Similarly in this case, the government submitted no evidence that Mr. Carpenter directly contacted any of the exchangors in Massachusetts to induce them to wire funds to BPE. Mr. Carpenter's limited conduct in this case (restricted to merely investing the funds from his office in Connecticut with brokerage firms in New York) "was too anterior and remote to confer venue in [Massachusetts]." Id. Furthermore, venue cannot be grounded merely on the initiation of the wire transfer process by the sender at a Massachusetts branch where no funds are actually transmitted. Indeed, to hold otherwise would be to grant the District of Massachusetts *carte blanche* on venue in any wire fraud case merely because the perfunctory act of filling out the wire transfer request form occurred in Massachusetts – even if the wire and, therefore, the funds were actually sent from elsewhere.

The defendant in Scott, unlike Geibel, really did commit criminal acts (misappropriation of checks and forgery) in the district where he was charged. The fact that Scott sent his ill-gotten gains to Texas after-the-fact did not remove venue from

5

Massachusetts.  In the present case, however, the only transmissions charged in the indictment are the wire transfers by which the funds were actually sent to BPE – all of which occurred outside Massachusetts.  Thus, <u>Scott</u> is inapposite.

**B.**     <u>**The Only Acts Occurring In Massachusetts Were Merely Preparatory To Sending The Funds And, Therefore, Are Insufficient To Create Venue**</u>

The government seeks to prove venue by showing that all but one of the subject wire transfers were initiated by senders (not the exchangors themselves but the purchasers of the exchangors' relinquished properties) through their local bank branches in Massachusetts.  <u>See</u>, <u>e.g.</u>, Tr. 10-140 (Q: Where did the wire process start?  A:  In Braintree, Massachusetts.).  However, the preparatory act of initiating in Massachusetts the process by which a wire transfer is ultimately sent from the bank wire room located *outside* of Massachusetts is insufficient to satisfy the wire fraud venue requirement in light of the conduct charged in the indictment (*i.e.*, the actual **transmission of funds** to BPE's accounts at Merrill Lynch and PaineWebber).

For example, someone sending a wire can take the preparatory step of authorizing his local bank branch in Braintree, Massachusetts to request that the wire room in New York send a wire transfer on his behalf, but the branch may not correctly process the request, the wire room may not approve the request, the wire room may fail to process the request correctly, the wire room may suffer a technical problem with its Fedwire system terminal (Tr. 10-85, 86), the wire room may return the request to the branch for more information, the wire room may suffer an Act of God, etc.  Any one of these occurrences would result in the wire transfer *not* being sent and BPE not receiving the funds.  Clearly, unless and until the *wire room* actually releases the wire into the Fedwire system, no wire communication in which funds are actually

transferred to BPE occurs because the actions taken by the senders in Massachusetts are merely preparatory to the act of actually transmitting the funds.

The Fifth Circuit just recently rejected the government's argument on this precise issue, reversed the conviction and remanded for the entry of a judgment of acquittal in United States v. Strain, 396 F.3d 689 (5th Cir. 2005).

In Strain, the defendant was charged in the Western District of Texas (where she lived) with one count of harboring a fugitive (her husband) who was wanted for narcotics offenses. Strain, having told U.S. Marshals that she had not spoken to her husband in two weeks, the next day drove with her three children to New Mexico where she ultimately met up with her husband and where they were later both arrested. Strain was tried and convicted in the Western District of Texas. She challenged venue at trial via two motions for acquittal under Fed. R. Crim. P. 29(a), one at the close of the government's case and one at the close of all the evidence. The district court denied both motions. However, the court gave the jury special instructions regarding proof of venue by a preponderance of the evidence. The jury returned a special verdict finding that "the offense charged . . . was **begun** in the Western District of Texas." Id. at 692 (emphasis added).

On appeal, Strain argued that, given the lack of evidence to support venue, the district court erred in denying her motions for acquittal. The government's response was twofold and echoes the government's arguments in this case. The government's first contention that it met its evidentiary burden is discussed below in Part C. The second argument was that venue was proper in the Western District of Texas because "Strain's telephone conversations and subsequent journey across the Western District of Texas toward Carlsbad [New Mexico]

constituted the **beginning** of the continuing act of harboring that was completed in New Mexico." Id. (emphasis added).

This argument is precisely the argument the government is making in the present case (*i.e.*, the senders of the wires in Massachusetts took preparatory steps to initiate the wire transfer process through their respective local bank branches and, therefore, the wire transfer process "began" in Massachusetts). See Tr. 10-140 (Q: Where did the wire process start? A: In Braintree, Massachusetts.). The Fifth Circuit rejected this argument out of hand, holding that Strain's driving through the Western District of Texas on her way to New Mexico was merely a preparatory act insufficient for venue purposes. "[18 U.S.C.] § 3237(a) does not exempt continuing offenses from the general principle that **preparatory acts alone cannot support venue**." Strain, 396 F.3d at 697 (emphasis added). See also United States v. Beech-Nut Nutrition Corp., 871 F.2d 1181, 1189-90 (2d Cir. 1989) (holding that telephoning brokers to place orders for adulterated juice and mailing sales confirmations in the Eastern District of New York was "merely prior and preparatory to" the offense, making venue improper). Specifically, the Fifth Circuit held:

> Strain's telephone conversations with [her husband] and subsequent journey through the Western District of Texas toward Carlsbad, **although indispensable to the ultimate act of harboring in New Mexico, were preparatory acts for the commission of the actual crime**—much like purchasing a gun and traveling to a bank to commit a robbery—and thus insufficient to support a finding of venue.

Strain, 396 F.3d at 697.

The same analysis controls here. The acts of the senders contacting their local Massachusetts bank branches and those branches initiating the banks' internal processes by which wire transfers were ultimately sent through the Fedwire system by the banks' wire rooms located outside of Massachusetts, "although indispensable to the ultimate act of

[sending wire transfers from outside Massachusetts] were preparatory acts," id., for the

sending of the actual wire transfers from the banks' respective wire rooms.  Receipt by a wire

room of a request from a branch to effectuate a wire transfer does not necessarily mean that

the wire transfer will occur and BPE will receive the funds.  There are numerous other steps

that must be satisfied and the failure of any of those could result in no wire transfer being

processed and no receipt of funds by BPE.  As testified to by the government's bank

witnesses, the "actual wire" does not occur until the wire room releases the funds.  See, e.g.,

Tr. 10-125.

### C.    The Government Has Not Met Its Evidentiary Burden

The government's only other basis to prove venue is that the wire transfers (excluding

Counts 1 and 2, which cleared through the Federal Reserve Banks of New York and

Cleveland (Tr. 10-95)), cleared through the Federal Reserve Bank of Boston (the "Boston

Fed").[5]  However, the government has failed to prove by a preponderance of the evidence that

the wires actually passed through the Boston Fed.  The government also failed to meet its

burden on a similar issue in Strain, which was the government's first argument in support of

venue in that case.

The government's first argument in support of venue in Strain was that it was more

likely than not that when Strain talked to her husband on the telephone in the Western District

of Texas the night before she left for New Mexico to meet up with him that "she warned him

to stay away from Midland [Texas]," Strain, 396 F.3d at 694, thereby engaging in the act of

harboring in the district of prosecution.  The Fifth Circuit dismissed this argument as well,

---

[5]  The government's witness from the Boston Fed testified that the wires were not processed by the
Boston Fed because the host mainframe for the Fedwire network is located outside of Massachusetts.
See Tr. 10-94, 95.

holding that the government failed to meet its evidentiary burden.  "[T]here is no evidentiary hook to which the jury might attach the inference suggested by the Government."  Id. at 695.  "Although there is ample evidence to show that, during this telephone conversation, Strain made plans to meet and harbor [her husband] in New Mexico, there is nothing in the testimony to suggest that Strain warned [him] to stay away from Midland in general or her residence in particular."  Id. at 696.  As a result, the Fifth Circuit held that the government failed to meet its burden and "failed to proffer evidence from which a jury could infer that it was more likely than not that the alleged warning occurred."  Id.

In the present case, the **only** evidence offered by the government that the subject wire transfers traveled "through" Massachusetts was testimony from the Boston Fed's employee (Ralph Ventresco) that: (i) any depository institution with a "01" or "21" prefix in its ABA routing number (Tr. 10-84); (ii) would have the Boston Fed as its administrative reserve bank (where the depository institution's master account is maintained) (Tr. 10-86); and (iii) that all wire transfers sent from those institutions would involve an electronic debit being made "on [the Boston Fed's] books."  (Tr. 10-86.)

However, Ventresco also testified on cross-examination as follows:

> Q:     But isn't it true that depository institutions may have master accounts at Federal Reserve Banks other than their administrative reserve bank?
>
> A:     Yes.

(Tr. 10-96.)

> Q:     So during a 12-month period [after a bank merger] it's possible that a bank located in [the] New England region could have its master account at a Federal Reserve Bank other than the Boston Fed, correct?
>
> A:     That's true for the transaction period because generally they haven't consolidated all of their back-end operations at that point.

Q:      And in your experience, there have been a lot of bank mergers in New England

       in the last five years, haven't there?

A:      Yes.

(Tr. 10-97.)

In light of this competing testimony, it is equally likely that given all of the bank mergers that have occurred in New England during the past five years, that in the year 2000 the wire transfers at issue here "cleared" through a Federal Reserve Bank other than the Boston Fed, even though the ABA routing numbers of the banks which sent the wires began with the "01" and "21" prefix. Consequently, the government has assumed but failed to provide any proof that the master accounts for these banks were located at the Boston Fed at the time the wires were sent. At most, the government has proven only that the Boston Fed served as these banks' administrative reserve bank. As in <u>Strain</u>, the government has failed to meet its burden and "failed to proffer evidence from which a jury could infer that it was more likely than not that the [wires cleared through the Boston Fed]." <u>Strain</u>, 396 F.3d at 696.

<u>**CONCLUSION**</u>

There is no genuine dispute of the material facts leading to the conclusion that none of the challenged wire transfers were sent from or received in Massachusetts. The wire transfers in Counts 1 and 2 cleared through the Federal Reserve Banks of New York and Cleveland. (Tr. 10-95.) The government has failed to satisfy its evidentiary burden to prove that it was more likely than not that the remaining wire transfers cleared through the Boston Fed. And the acts of the senders initiating the wire transfer process by requesting their local bank branches in Massachusetts to further request that the banks' out-of-state wire rooms actually

release the wire transfers into the Fedwire system were merely preparatory and prior to the actual transmission of the funds and receipt thereof by BPE.

WHEREFORE, the defendant respectfully requests that the Court enter judgments of acquittal on Counts 1-2 and 4-13 of the superseding indictment for lack of venue.

The Defendant,
Daniel E. Carpenter,
By his attorney,


**/s/ Robert M. Goldstein**
Robert M. Goldstein
Mass. Bar No. 630584
20 Park Plaza, Suite 903
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com


Dated:  July 25, 2005