UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 04-10029-GAO |
| DANIEL E. CARPENTER | ) ) ) | |

**DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL ON
COUNTS 3, 15 AND 19 PURSUANT TO FED. R. CRIM. P. 29(a)
FOR LACK OF SUBJECT MATTER JURISDICTION
(Defendant's Rule 29 Motion No. 2)**

Defendant Daniel E. Carpenter, by and through undersigned counsel, respectfully moves at the close of the government's evidence and at the close of all the evidence, pursuant to Fed. R. Crim. P. 29(a), for judgments of acquittal on Count 3 (wire fraud), Count 15 (mail fraud) and Count 19 (mail fraud) of the superseding indictment for lack of subject matter jurisdiction. Judgments of acquittal should be entered on these counts because the charged transmissions were not "in furtherance of" the alleged fraudulent scheme and, therefore, do not fall within the jurisdictional predicate of the mail fraud and wire fraud statutes. See 18 U.S.C. §§ 1341, 1343.

Count 3 is the only count in the indictment that does not charge the transmission of funds to BPE. Rather, it charges as wire fraud merely the sending of a letter via facsimile from an attorney to BPE-Newton on August 8, 2000 stating that "I anticipate funds in the amount of $444,659.65 being wired into your account as Bellemore Associates, LLC's net proceeds." (Gov. Ex. 29.) However, merely notifying BPE of one's **intention** to send money is insufficient because the essence of the fraudulent scheme charged in the indictment is that "[c]lients were induced to **wire funds to BPE** . . ." Indictment ¶ 27 (emphasis added). Thus,

any transmission to BPE by which funds are not **actually sent** cannot possibly be in furtherance of the alleged scheme to defraud.

Similarly, Counts 15 and 19 charge mail fraud for the sending by Airborne Express of checks from BPE-Newton to Benistar, Ltd. in Connecticut **after** the funds had already been obtained by BPE in the Newton office. Once the funds had been obtained by BPE, the alleged fraud was complete. See Indictment ¶ 101 ("BPE continued . . . to solicit and induce clients **to entrust funds to BPE**") (emphasis added). Put another way, what happened to the funds *after* they had already been obtained by BPE and how they were accounted for and transmitted internally within BPE after-the-fact are completely irrelevant to the alleged fraudulent scheme of "**obtaining** money and property by means of false and fraudulent pretenses." Indictment ¶¶ 103, 105 (emphasis added).

Since the transmissions charged in Counts 3, 15 and 19 were not in furtherance of the alleged fraudulent scheme, this Court should enter judgments of acquittal on those counts because subject matter jurisdiction under the mail and wire fraud statutes is lacking.

## MEMORANDUM OF LAW

I. **SUBJECT MATTER JURISDICTION IS LACKING REGARDING COUNTS 3, 15 AND 19 BECAUSE THEY CHARGE TRANSMISSIONS NOT "IN FURTHERANCE OF" THE ALLEGED FRAUDULENT SCHEME**

To prove mail and wire fraud, "the government must show three elements: (1) a scheme to defraud based on false pretenses; (2) the defendant's knowing and willing participation in the scheme with the intent to defraud; and (3) the use of interstate mail or wire communications **in furtherance of** that scheme." United States v. Cheal, 389 F.3d 35, 41 (1st Cir. 2004) (emphasis added). Whether this Court's subject matter jurisdiction has been properly invoked is determined by whether the communications charged in Counts 3, 15 and

2

19 were "in furtherance of" the alleged fraudulent scheme to obtain funds by false and fraudulent pretenses. Clearly, since the funds had already been obtained (Counts 15 and 19), or were not being obtained at all (Count 3), the jurisdictional predicate is fatally lacking with respect to these three counts.

The Supreme Court has dealt with this issue in a long line of cases. See Kann v. United States, 323 U.S. 88 (1944); Parr v. United States, 363 U.S. 370 (1960); United States v. Maze, 414 U.S. 395 (1974); Schmuck v. United States, 489 U.S. 705 (1989). In Schmuck, the Supreme Court held:

> The federal mail fraud statute does not purport to reach all frauds, but only those limited instances in which the use of the mails is a part of the execution of the fraud, leaving all other cases to be dealt with by appropriate state law.

Schmuck, 489 U.S. at 710 (emphasis added).[1]  Because the alleged fraud of actually obtaining the funds had already been executed (Counts 15 and 19), or was not being executed at all (Count 3), these three counts fall outside the federal mail and wire fraud statutes.

In Kann, corporate officers were accused of establishing a dummy corporation through which they diverted profits of their own corporation to their own use. As part of the scheme, the defendants were accused of having fraudulently obtained checks payable to themselves that were cashed or deposited at a bank and then mailed for collection to the drawee bank. In reversing the defendants' mail fraud convictions, the Supreme Court held that the fraud was completed at the point at which the defendants cashed the checks (*i.e.*, obtained the funds), *not* when the depository bank mailed the checks for collection:

> *[T]he scheme was completely executed* as respects the transactions in question when the defendants received the money intended to be obtained by their fraud, and the subsequent banking transactions between the banks concerned were merely *incidental and collateral to the scheme and not a part of it*.

---

[1] "The Court has analyzed mail and wire fraud offenses similarly, because they share the same relevant statutory language." United States v. Boots, 80 F.3d 580, 586 n.11 (1st Cir. 1996).

3

Kann, 323 U.S. at 95 (emphasis added).

Here, the alleged scheme was completely executed once BPE actually obtained the funds. Counts 15 and 19 charge communications that occurred <u>after</u> the funds had been obtained and the alleged scheme had already reached fruition, and the transmission in Count 3 did not even convey any funds. The transmissions charged in these three counts were merely incidental and collateral to the alleged scheme of obtaining the funds and not a part of it. Consequently, judgments of acquittal should be entered on these three counts.

In <u>Parr v. United States</u>, 363 U.S. 370 (1960), defendants were charged with mail fraud for having fraudulently obtained products and services through the unauthorized use of a credit card issued to their employer. The mailing element was purportedly satisfied when the credit card issuer mailed invoices to the employer for payment and when the employer mailed payment in the form of a check. Relying on <u>Kann</u>, the Supreme Court held that these mailings were not in furtherance of the scheme because it was immaterial to the defendants *how* the credit card issuer went about collecting payment. <u>Parr</u>, 363 U.S. at 393. Specifically:

> these were essentially state crimes and could become federal ones, under the mail fraud statute, only if the mails were used for the purpose of executing such scheme.

<u>Id.</u> at 385 (quotations omitted). Here, the mails were not used by BPE in Counts 15 and 19 for the purpose of executing the alleged fraudulent scheme because the funds had already been obtained. Nor was the letter sent via fax in Count 3 for the purpose of executing the alleged scheme, because it transmitted no funds.

In <u>United States v. Maze</u>, 414 U.S. 395 (1974), defendant allegedly stole his roommate's credit card, headed south on a two-week spending spree, and obtained food and lodging at motels along the way by placing the charges on the stolen card. The government argued that the mailing element was supplied by the fact that the defendant knew that each

4

motel would mail an invoice to the bank that had issued the credit card, which in turn would mail a bill to the cardholder for payment. The Supreme Court found that these mailings could not support mail fraud charges because the defendant's scheme had reached fruition when he checked out of each motel "and there is no indication that the success of his scheme depended in any way on which of his victims ultimately bore the loss." Id. at 402.

The mailings charged in Counts 15 and 19 were not sufficiently closely related to the alleged fraudulent "scheme" of BPE's obtaining the funds because the funds had already been obtained by the time the mailings in Counts 15 and 19 had occurred. Similarly, the fax sent in Count 3 was immaterial to the success of the alleged scheme because the transaction by which the funds were intended to be sent to BPE could have very easily failed prior to BPE receiving any funds.

In Schmuck v. United States, 489 U.S. 705 (1989), the Supreme Court affirmed the mail fraud convictions, holding that for a mailing to be part of the execution of a fraudulent scheme, "the use of the mails need not be an essential element of the scheme. It is sufficient for the mailing to be incident to an essential part of the scheme or a step in [the] plot." Id. at 710-11. The Schmuck Court did not overrule Kann, Parr or Maze. Rather, it distinguished these cases as follows:

> The intrabank mailings in Kann and the credit card invoice mailings in Parr and Maze involved little more than post-fraud accounting among the potential victims of the various schemes, and the long-term success of the fraud did not turn on which of the potential victims bore the ultimate loss.

Schmuck, 489 U.S. at 714.

Counts 15 and 19, like the mailings in Kann, Parr and Maze, involved little more than after-the-fact accounting within BPE, and the fax sent in Count 3 was neither incidental to an

5

essential part of the alleged scheme nor a step in the alleged plot of obtaining the funds because informing of an *intention* to send money is not the same as actually sending money.

The use of the mails in Counts 15 and 19 and the wire facilities in Count 3 was not sufficiently related to the alleged scheme of BPE obtaining the funds. At most, the transmissions charged in these counts were tangential and immaterial to the act of obtaining the funds and, therefore, could never qualify to form the basis of mail and wire fraud. See United States v. Pacheco-Ortiz, 889 F.2d 301, 305 (1st Cir. 1989) ("[F]or the mailings to be considered in furtherance of the scheme, the scheme's completion or the prevention of its detection must have depended in some way on the mailings"); United States v. Greenleaf, 692 F.2d 182, 186 (1st Cir. 1982) ("The government urges us to adopt a rule that at any time a defendant sets in motion a scheme that leads ineluctably to mailings, he can be guilty of mail fraud. Our reluctance to do so stems from the fact that under this test, the conviction in United States v. Maze, supra, would have been affirmed.").

In United States v. Evans, 148 F.3d 477 (5th Cir. 1998), the defendant (a parole officer) submitted falsified travel vouchers to her supervisor to hide crimes in connection with her treatment of a parolee. After the supervisor's review and approval of the vouchers, they were mailed to department headquarters for routine processing for reimbursement. The Fifth Circuit reversed the mail fraud convictions, holding that the mailing requirement had not been satisfied because the defendant had "cleared the final hurdle" in her scheme when the supervisor approved the travel vouchers. Id. at 483. The Fifth Circuit also noted that "if Evans's travel vouchers had been thrown away by her supervisor, the scheme would have continued just the same." Id.

Counts 15 and 19 fall outside the mail fraud statute because BPE "cleared the final hurdle" in the alleged scheme when the funds were received in the BPE-Newton office. The sending of the checks by Airborne Express to Connecticut afterwards is exactly like the after-the-fact mailings in Kann, Parr and Maze. Furthermore, whether the fax in Count 3 had never been sent or, once received, been "thrown away" by BPE, that would have had no impact on whether BPE ultimately obtained the funds from the Bellemore transaction.

In United States v. Strong, 371 F.3d 225 (5th Cir. 2004), two brothers engaged in a scheme whereby they would purchase used cars at auction, pay for the cars with buyers' drafts that they never intended to honor, use forged signatures to apply for and obtain new titles from the local office of the state motor vehicles department (which then mailed the fraudulent applications to the department's headquarters), and then use those fraudulently obtained titles to sell the cars to innocent purchasers (without ever paying the auction houses who futilely attempted to reclaim the cars). In upholding the district court's granting of a Rule 29 motion, the Fifth Circuit, relying on the Kann-Maze line of cases and distinguishing Schmuck, found that the "in furtherance of" requirement was not satisfied because the mailing of the title applications neither advanced the fraudulent scheme nor contributed to an effort to hide it, and that each fraudulent act was complete when the defendant received the titles in person from the local motor vehicles office. Strong, 371 F.3d at 230-31.

Here, the transmissions in Counts 3, 15 and 19 neither advanced the alleged scheme to obtain the funds nor contributed to an effort to hide it. The alleged scheme was obtaining the funds by false or fraudulent pretenses, not processing the funds internally after they had been obtained or learning about an attorney's intention to send the funds.

Strong is important for the additional reason that, for the first time since Schmuck, a Court of Appeals has clearly and cogently synthesized the singular key holding in the Kann-Schmuck line of cases:

> [I]t is clear that the Court's statement that a mailing need merely be "incident to an essential part of the scheme" to satisfy the mail fraud statute, . . . is cabined by the materiality of the mailing, as well as its timing: A tangential mailing occurring <u>after</u> the success of a fraud scheme is complete would <u>never</u> qualify, even if the mailing is "incidental" to a part of the scheme.

Strong, 371 F.3d at 229 (citations omitted) (emphasis added). This means that the "perpetuation theory" of Schmuck (*i.e.*, the mailing is sufficient if it perpetuates the scheme or is a step in the plot) contains an element of materiality.[2] Although the First Circuit has recently opined that the "perpetuation theory" outlined in Schmuck "binds us now," United States v. Cacho-Bonilla, 404 F.3d 84, 91 (1st Cir. 2005), the transmissions charged in Counts 3, 15 and 19 did not "perpetuate" the alleged fraudulent scheme because they either occurred *after* the scheme (*i.e.*, obtaining the funds) had already been completed (Counts 15 and 19), or had nothing at all to do with obtaining the funds (Count 3).

Schmuck preserves the exceptions outlined in Kann, Parr and Maze that after-the-fact accounting once the funds have been obtained or transmissions not material to obtaining the funds simply do not fulfill an essential element of the mail and wire fraud statutes and, therefore, a federal district court has no subject matter jurisdiction over such acts.

WHEREFORE, the defendant respectfully requests that the Court enter judgments of acquittal on Counts 3, 15 and 19 of the superseding indictment for lack of subject matter jurisdiction.

---

[2] For example, had Paley mailed a "Thank You" card to each client after each exchange, thanking them for using BPE as their 1031 intermediary, those mailings would not be in furtherance of the scheme because they are not material to obtaining the funds.

8

        The Defendant,
        Daniel E. Carpenter,
        By his attorney,


**/s/ Robert M. Goldstein**
Robert M. Goldstein
Mass. Bar No. 630584
20 Park Plaza, Suite 903
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

Dated:  July 25, 2005