*Notify*          9/73

## COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT
CIVIL ACTION
NOs. 01-0116BLS2,
01-0229BLS2, 01-0330BLS2,
01-0581BLS2, 01-3433BLS2,
01-4305BLS2;
NO. 01-0075 (Norfolk County)
(Consolidated Actions)

GAIL A. CAHALY and others[1]
Consolidated Plaintiffs

vs.

BENISTAR PROPERTY EXCHANGE TRUST CO., INC. and others[2]
Consolidated Defendants

### MEMORANDUM OF DECISION AND ORDER ON PLAINTIFFS' CLAIMS UNDER G. L. c. 93A

At the conclusion of a long trial in Phase I of this case, the jury returned verdicts against the defendants Benistar Property Exchange Trust Co., Inc. (Benistar Property), Daniel Carpenter, and Martin Paley on claims of breach of fiduciary duty, conversion, and intentional misrepresentation, and against the defendant Molly Carpenter on a claim of breach of fiduciary duty. Phase II of the trial was limited to the plaintiffs' claims against these same defendants under G. L. c. 93A, which was tried to the court in March of 2003. By agreement of all parties concerned, these claims are to be considered solely on the basis of the evidence presented at trial. I consider below the Chapter 93A claims against each of

---

[1] Jeffrey M. Johnston; Byron Darling; Massachusetts Lumber Company, Inc.; Joseph Iantosca, Individually and as Trustee of the Faxon Heights Apartment Realty Trust and Fern Realty Trust; Belridge Corporation; Bellemore Associates, LLC; and R&B Enterprises.

[2] Benistar Employer Services Trust Corporation; Martin L. Paley; Molly Carpenter; Daniel E. Carpenter, Esq.; UBS PaineWebber, Inc. Carpenter Financial Group, LLC; Benistar Admin. Services, Inc.; Jane Doe Affiliates and Subsidiaries of Benistar Defendants and Jane Doe Entities controlled by Daniel Carpenter; Merrill Lynch Pierce Fenner & Smith, Inc.; and U.S. Property Exchange.

the defendants in question separately.[3]

## Discussion

Benistar Property: As noted above, the jury determined in answers to special questions that Benistar Property owed a fiduciary duty to each plaintiff and breached that duty; converted the plaintiffs' property exchange funds that had been entrusted to Benistar Property[4]; and was liable for misrepresentation(s) to the plaintiffs.[5] I agree with the jury's answers, and adopt them.

In light of the conclusion that Benistar Property committed breaches of fiduciary duty, acts of conversion and fraudulent misrepresentations in relation to connection with the plaintiffs and their funds, it follows that Benistar Property is liable to the plaintiffs under G. L. c. 93A. See *Datacomm Interface, Inc. v. Computerworld, Inc.*, 396 Mass. 760, 780 (1986). See also *Nickerson v. Matco Tools Corp.*, 813 F.2d 529, 531 (1st Cir. 1985). Further, this kind of intentional conduct leads to an award of multiple damages. See *Datacomm Interface, Inc., supra*. See also *St. Paul Surplus Lines Ins. Co. v. Feinbold & Feingold Ins. Agency, Inc.*, 427 Mass. 372, 376 (1998).[6] I conclude that the plaintiffs should be awarded double damages against Benistar Property, as well as their reasonable attorneys' fees

---

[3] The plaintiff Bellemore Associates, LLC has asserted a claim against the defendants under the New Hampshire analogue to G. L. c. 93A, N.H. Rev. Stat. §. 358A. My understanding is that this claim was dismissed at the summary judgment phase of this case.

[4] Before the trial occurred, I had granted the plaintiffs' motion for partial summary judgment on the conversion claim, concluding that liability against Benistar Property was established as matter of law on that claim, but leaving the issue of damages for trial.

[5] Also before trial, I had allowed the plaintiffs' summary judgment motion on their breach of contract claim against Benistar Property, again leaving open the issue of damages. The breach of contract claim, however, is not relevant to the plaintiffs' claims under G. L. c. 93A and is not further discussed in this memorandum..

[6] Indeed, no one argues to the contrary on behalf of Benistar Property, although it has been represented throughout by counsel. In the circumstances, I take Benistar Property as having in effect waived any defense to the plaintiffs' c. 93A claims against it.

2

with respect to the c. 93A claims.

Daniel Carpenter: The undisputed evidence, including the affidavit executed under the pains and penalty of perjury and filed with this court on or about January 29, 2001, shows that Daniel Carpenter (referred to sometimes hereafter as Daniel) caused Benistar Property to be incorporated as a Delaware corporation on October 7, 1998; and that Daniel served as its chairman and secretary at all relevant times.[7] He was unquestionably the person entirely or virtually entirely responsible for authorizing and directing the uncovered option trading with the plaintiffs' funds at both Merrill Lynch and PaineWebber. Further, the evidence was clear that while Benistar Property was authorized to receive and take possession of the plaintiffs' funds, insofar as the funds were used to enable Daniel to engage in highly risky, uncovered option trading this went beyond any grant of authority provided by the plaintiffs, and neither Benistar Property nor Daniel returned all of the plaintiffs' funds to them when the demand was made to do so. In addition, one might reasonably infer from all the evidence[8] that (1) Daniel was also responsible in whole or in part for authoring the contents of the information about Benistar Property and the safety of funds entrusted to Benistar Property, that appears in promotional

---

[7] The evidence is not so clear as to the identity of the shareholder(s) of Benistar Property: Daniel Carpenter's affidavit describes Benistar Property as a wholly owned subsidiary of Benistar Ltd; various Merrill Lynch account authorization forms indicate that Daniel Carpenter was the sole shareholder, the sole director and the sole officer (see, e.g., trial ex. 72, 73); other Merrill Lynch account documents indicate that Molly Carpenter was the "managing director" of Benistar Property, and also an officer (treasurer) (see trial ex. 74); and Daniel Carpenter's assertion of his Fifth Amendment rights in response to questions posed to him could be understood as indicating he and his wife Molly were the sole shareholders of Benistar Property. The confusing lack of clarity reflected in these different evidentiary sources may itself be significant to the plaintiffs' claim concerning the need pierce one or more corporate veils – the subject of Phase III of this case – but all the sources together speak to the fact that Daniel Carpenter has been deeply connected to Benistar Property from its inception.

[8] I include here the inference against Daniel that I draw on account of his assertion of his Fifth Amendment privilege not to testify. See, e.g., *Lentz v. Metropolitan Property and Cas. Ins. Co.*, 437 Mass. 23, 26 (2002), and cases cited.

3

materials and on the Benistar website (see, e.g., trial ex. 11, 35, 69A), even though he did not communicate this information directly to any of the plaintiffs in these cases; and (2) Daniel played a significant role in preparing, in terms of substantive content, the form agreements (exchange agreements, escrow agreements, account selection forms) that each of the plaintiffs executed in connection with their selection of Benistar Property as their intermediary.

In sum, the trial evidence, including Carpenter's assertion of his Fifth Amendment privilege in response to a variety of questions put to him by plaintiffs' counsel, amply supported the jury's answers to special questions that he was personally liable for breach of fiduciary duty towards the plaintiffs, for conversion of the plaintiffs' funds, and for intentional misrepresentations. Again, I agree with and adopt the jury's findings on these claims.

The plaintiffs' c. 93A claims against Daniel Carpenter relate to the substance of all three of these common law claims. Thus, the plaintiffs assert that Daniel's unauthorized use of the plaintiffs' funds for uncovered, highly chancy option trading, both at Merrill Lynch and PaineWebber, with the resulting loss of most of the plaintiffs' funds, in addition to qualifying as a breach of fiduciary duty and conversion, was both unfair and deceptive. They also argue that Daniel's misrepresentations in promotional materials about the safety of entrusting exchange property sale proceeds with Benistar Property, and the false statements in the form agreements concerning the establishment of separate escrow accounts and the investment of funds in a "3 % per annum account," or a 6% per annum account[9], were at least deceptive. I agree, and note that the absence of a direct interaction between

---

[9] Daniel Carpenter and other defendants have argued repeatedly in this case that the statements in the form agreements concerning a 3 % account and 6 % account do not misrepresent anything, and that all the plaintiffs knew their funds would be held in accounts in the name of Benistar Property and invested by the brokerage companies involved, Merrill Lynch or PaineWebber. It may well be true the plaintiffs knew or should have known their funds would

4

Daniel and the plaintiffs in the presentation of this information does not defeat the claim. Cf., e.g., *Kattar v. Demoulas*, 433 Mass. 1, 14-15 (2000).

As indicated above in connection with Benistar Property, Daniel Carpenter's liability on the three common law claims would ordinarily lead to the conclusion that he committed a wilful or knowing violation of G. L. c. 93A, § 11. E.g., *St. Paul Surplus Lines Ins. Co. v. Feinbold & Feingold Ins. Agency, Inc.*, supra, 427 Mass. at 372; *Datacomm Interface, Inc. v. Computerworld, Inc.*, supra, 396 Mass. at 780. Daniel argues, however, that he cannot be found liable under c. 93A, because any unfair or deceptive act he may have committed did not occur "primarily and substantially in the commonwealth." G. L. c. 93A, § 11, eighth para. Daniel carries the burden of proof on this issue. *Id.* See *Kuwaiti Danish Computer Co. v. Digital Equipment Corp.*, 438 Mass. 459, 470 (2003).

At all times relevant to this case Daniel Carpenter lived and worked in Connecticut, and the branches of Merrill Lynch and PaineWebber with which he dealt were located in New York City. He directed the purchases and sales of stocks by Merrill Lynch and PaineWebber generally over the telephone and by fax from Connecticut. There was some evidence of a few personal meetings between at least two of the Merrill Lynch employees and Carpenter, but these occurred in New York City. It is true that Benistar Property's office was in Newton, Massachusetts, that all or at least almost all the

---

be so held and would be invested by the brokerage firms, but the description of the two types of brokerage accounts in the form agreements may reasonably be understood as referring to accounts that would provide no more than a 3 % or 6 % return, which certainly implies a relatively risk-free type of investment account. Put another way, the form agreements do not state or suggest in any conceivable way that Benistar Property was going to be free to invest the plaintiffs' funds in any way it (or more to the point, Daniel Carpenter) saw fit, with total discretion to select the degree of risk involved, so long as Benistar Property paid to the plaintiffs either 3 % or 6 % per annum interest. Moreover, it certainly cannot be said, in light of the escrow agreement, that the plaintiffs knew or should have known that Daniel would aggregate all the plaintiffs' funds in one or two trading accounts with Merrill Lynch or Paine Webber, instead of individual "escrow" accounts.

plaintiffs signed the various agreements and related forms (the exchange agreement, the escrow agreement, the account selection form) with Benistar Property in Massachusetts, and that all or almost all the plaintiffs suffered loss in Massachusetts. However, the situs of loss, while it may be considered, is not determinative. See *Makin, U.S.A., Inc. v. Metlife Capital Credit Corp.*, 25 Mass. App. Ct. 302, 309-310 (1988); *Goldstein Oil Co. v. C.K. Smith Co.*, 20 Mass. App. Ct. 243, 249 and n. 7, further app. rev. denied, 395 Mass. 1104 (1985). See also *Kuwaiti Danish Computer Co., supra*, 438 Mass. at 472 n. 13. What matters is "whether the center of gravity of the circumstances that give rise to the [c. 93A] claim is primarily and substantially within the Commonwealth." *Id.* at 473. In light of the facts just stated concerning the actual conduct of Daniel's that lies behind the specific portion of the plaintiffs' c. 93A claims tied to Carpenter's unauthorized investment activity, I conclude that Carpenter has established that it did not occur primarily and substantially in Massachusetts. See *id.* at 473-475.

That is not the end of the matter, however. The plaintiffs' c. 93A claims against Daniel Carpenter are also based on his misrepresentations to the plaintiffs in the various Benistar Property promotional materials as well as in the text of the form exchange and escrow agreements that they signed. With respect to the promotional materials, Daniel Carpenter has not established that these materials were not prepared in Massachusetts; in any event, they certainly were used in Massachusetts because they were shown and provided to the various plaintiffs here. Similarly, the form exchange and escrow agreements and account selection forms, with their deceptive provisions about opening an escrow custodial account for the benefit of the individual "exchangor" [i.e., a person in each of the plaintiff's position], placing the exchangor's funds in a 3 percent per annum account ("ready asset money market account") or a 6 percent per annum account ("investment account") with interest accruing after the third day, were given to the plaintiffs in Massachusetts, and relied and signed by them

6

there. Further, to the extent that any of the plaintiffs looked at and relied on deceptive information about the safe nature of Benistar Property's services that appeared on the Benistar website, the plaintiffs did so in Massachusetts.

In considering the question of the primary locus of unfair or deceptive conduct in violation of c. 93A that is premised on misrepresentations, courts have looked at factors such as where the defendant committed the misrepresentations, where the plaintiff received and relied on the misrepresentations, and where the plaintiff's losses were centered. See *Clinton Hosp. Ass'n v. Corson Group, Inc.*, 907 F.2d 1260, 1265-1266 (1st Cir. 1990). See also *Roche v. Royal Bank*, 109 F.3d 820, 827-830 (1st Cir. 1997); *Bushkin Assocs. Inc. v. Raytheon Co.*, 393 Mass. 622, 638 (1985). It is reasonably clear that in this case, Massachusetts lies at "the center of gravity" (*Kuwaiti Danish Computer Co., supra*, 438 Mass. at 473) in relation to the plaintiffs' c. 93A claims grounded in misrepresentations; at the very least, Daniel Carpenter has not carried his burden of proof to the contrary.

I am persuaded that none of the plaintiffs would have entered into agreements with Benistar Property and none of them would have entrusted their funds to Benistar Property if they had known that the information given to them through promotional information and more particularly the form agreements prepared in whole or in part by Daniel Carpenter about how their funds would be kept and invested was false, and that indeed Carpenter was going to place the funds in very risky option trading accounts and aggressively used for that purpose. The analysis of the "primarily and substantially within the commonwealth" question requires me to consider the purpose and scope of c. 93A. *Kuwaiti Danish Computer Co.*, 438 Mass. at 473. The statute is a broad, remedial statute, creating new substantive rights, and expanding the procedural devices available to enforce them. See, e.g., *Kattar v. Demoulas, supra*, 433 Mass. at 13-15, and cases cited. Daniel Carpenter created Benistar Property, and set it up to operate in

7

Massachusetts. By Carpenter's own admission (through his affidavit on file in this case), most of the clients of Benistar Property are individuals living in Massachusetts and most of the properties involved in the like kind exchanges have been located in Massachusetts. Given Carpenter's role in establishing Benistar Property and his principal role as the major director and shareholder, the Massachusetts locus of the company, and the role of the misrepresentations in which Carpenter participated in securing these Massachusetts plaintiffs as clients of Benistar Property, leading to losses sustained by them in Massachusetts, I conclude that on the particular facts of this case, the center of gravity of the plaintiffs' c. 93A claim is primarily and substantially the Commonwealth. Daniel Carpenter, therefore, properly may be found liable to the plaintiffs under c. 93A, and on the evidence presented at trial, is clearly liable for wilful or knowing conduct in violation of G. L. c. 93A, §§ 2 and 11. An award of double damages against him is appropriate.

Molly Carpenter: Only the plaintiffs Joseph Iantosca and Massachusetts Lumber Company brought claims against Molly Carpenter (referred to sometimes hereafter as Molly) under G. L. c. 93A. They argue that she committed unfair or deceptive conduct as evidenced by her breaches of fiduciary duty that the jury determined she committed.[10]

I have previously ruled that there was sufficient evidence to warrant the jury's verdict that Molly Carpenter committed a breach of fiduciary duty towards Iantosca and certain other plaintiffs. However,

---

[10] Molly Carpenter contends that Massachusetts Lumber Company cannot assert any claim against her under G. L. c. 93A, because it did not bring any claim for breach of fiduciary duty or other common law claim against her. The argument deserves rejection. Chapter 93A liability does not depend on a finding of liability on an underlying tort or contract claim. E.g., *Heller v. Silverbranch Constr. Corp.*, 376 Mass. 621, 626 (1978). Massachusetts Lumber was entirely within its rights to limit its claim to one for violation of c. 93A, and was free to seek to prove the claim based on evidence that may have also established a claim for breach of fiduciary duty.

8

Molly, like Daniel, argues that in any event, any unfair or deceptive conduct on her part did not not "occur primarily and substantially within the commonwealth," G. L. c. 93A, § 11, eighth para., and therefore she cannot be liable for any violation of c. 93A. In Molly's case, I agree with this proposition.[11]

The evidence at trial concerning Molly Carpenter focused on the fact that she was a signatory on the critical Benistar Property trading accounts at Merrill Lynch and PaineWebber. For some or all of these accounts, the brokerage firms required two signatories, and thus the plaintiffs' argument was, and is, that Molly played an essential (even if silent) role in permitting the other defendants to perpetuate their scheme of using the plaintiffs' funds to gamble with in option trading. Molly also was apparently -- at least for some of the time -- the "managing director" and treasurer of Benistar Property (see note 7 above), and gave directions to Merrill Lynch and PaineWebber personnel on a few occasions with respect to the handling or disposition of certain funds that Benistar Property either was sending to, or had previously deposited with, the brokerage firms. Accepting the plaintiffs' premise that all these acts by Molly amount to unfair or deceptive conduct, I find no evidence that such conduct occurred primarily or substantially in Massachusetts. See *Kuwaiti Danish Computer Co., supra,* 438 Mass. at 475. Molly, like Daniel, apparently lives in and works out of Connecticut, the brokerage offices are in New York, and no evidence connected Molly with the plaintiffs or with Massachusetts in any but the most desultory way.[12] Since there is no

---

[11] The absence of liability on the c. 93A claim does not, of course, remove or affect the jury's verdict on the breach of fiduciary duty claim against Molly, and judgment will enter against her on this claim.

[12] Molly Carpenter did not appear at the trial, and therefore did not testify. An inference against her could reasonably be drawn on this account. See, e.g., *Custody of Two Minors*, 396 Mass. 610, 616 (1986); *Graves v R.M. Packer Co., Inc.*, 45 Mass. App. Ct. 760, 770 (1998). I draw it. In my view, however, drawing such an inference generally against Molly Carpenter with respect to the claims against her does not permit me specifically to conclude that Molly Carpenter's unfair or deceptive conduct took place primarily in Massachusetts, or, more particularly, that on account of the "missing party" inference, Molly Carpenter has failed to meet her burden of proving that her improper conduct did not take place in Massachusetts.

9

viable claim that Molly – in contrast to her husband Daniel and Martin Paley – participated in the misrepresentations made to the plaintiffs in Massachusetts about Benistar Property's performance as an intermediary, and the plaintiffs point to no other unfair or deceptive conduct by Molly, the c. 93A claims against her fail on account of the limitations in c. 93A, § 11, eighth para.

Martin Paley: The jury concluded that Martin Paley, like Daniel Carpenter, had breached a fiduciary duty owed to each plaintiff, converted their funds, and was also responsible for intentional misrepresentations. Martin Paley was the president of Benistar Property, was based in Massachusetts, and was the individual who personally dealt with each of the plaintiffs in order to solicit their retention of Benistar Property as their § 1031 intermediary. He personally made the slide presentations and provided the promotional materials to the plaintiffs that contained the false and misleading information about the safety of entrusted funds, the creation of escrow accounts, the relatively risk-free investment accounts, etc., described above in connection with the discussion of Daniel Carpenter. Paley, like Daniel, asserted his Fifth Amendment privilege and refused to answer any questions put to him concerning any aspect of his role in or activities connected with Benistar, a course of action that permits inferences to be drawn against him, and I do draw them. Although Paley was not involved in any way with the creation, direction, or use of the Benistar Property accounts with Merrill Lynch or PaineWebber, the evidence shows he did receive benefits from Carpenter's use of the Benistar Property client funds for stock trading. (See, e.g., ex. 63.) Once more, I agree with and adopt the jury's verdicts on the three common law claims against Martin Paley.

Having been found liable for breach of fiduciary duty, conversion, and intentional misrepresention, Paley is not in a good position to argue that he did not commit an unfair or deceptive act or practice, and not surprisingly, I find that he is liable for violating G. L. c. 93A, §§ 2 and 11. And although the evidence

10

points to Daniel Carpenter as the mastermind of the scheme to use Benistar Property client funds for risky option trading without the knowledge or consent of the clients, and the person who directly carried out that scheme as mentioned, Paley benefitted from this scheme. As with Daniel Carpenter, I conclude Paley's conduct was willful or knowing and that he should be liable for double damages.

### ORDER

For the foregoing reasons, it is **ordered** that judgment is ultimately to enter for each of the plaintiffs and against each of the defendants Benistar Property, Daniel Carpenter, and Martin Paley on the plaintiffs' claims under G. L. c. 93A, in an amount that is double the damages awarded by the jury, plus reasonable attorney's fees. These judgments will be joint and several. On or before October 8, 2003, counsel for each of the plaintiffs are to file with the court their application for attorney's fees connected with their c. 93A claims, and the defendants involved are to file any opposition to the fee applications on or before October 22, 2003.

It is further **ordered** that judgment is ultimately to enter for the defendant Molly Carpenter on the claims against her under G. L. c. 93A that have been brought by the plaintiffs Joseph Iantosca, individually and as trustee of the Faxon Heights Apartment Realty Trust and the Fern Realty Trust, and Massachusetts Lumber Company.

Margot Botsford
Justice of the Superior Court

Dated: September 23, 2003

11