UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| _____ <br> ) <br> UNITED STATES OF AMERICA ) <br> ) <br>      v. ) <br> ) <br> DANIEL E. CARPENTER ) <br> _____) |   <br>   <br>   <br> CRIMINAL NO. 04-10029-GAO |

## DEFENDANT'S REPLY BRIEF IN FURTHER SUPPORT OF MOTION FOR ACQUITTAL PURSUANT TO FED. R. CRIM. P. 29(c)

Over and over – from the allegations in the indictment through the assertions in various pleadings filed with this Court – the government has contended that its case against Mr. Carpenter was a straightforward case involving affirmative acts of misrepresentation that constituted the heart of the alleged scheme to defraud, which were made by him or through a participant who the government originally characterized as an innocent conduit (Paley), and which constituted promises of "safety" and "security" that were supposedly betrayed at the moment Mr. Carpenter first invested the funds held by BPE in stock options in October 1998.

The government's evidence at trial utterly failed to prove the fraud as alleged – the "affirmative misrepresentation" fraud.  Instead, the evidence produced by the government proved (at most) only that Paley, who alone communicated with each of the seven exchangors whose funds were not repaid, failed to disclose that the written agreements did not foreclose Mr. Carpenter's intention and discretion to invest the funds in the stock market as a vehicle to generate the promised returns and, alone, create an opportunity for profit.  Notably, the government did not prove that BPE had an affirmative duty to disclose the intended investment vehicles given the written agreements' transfer to BPE of total discretion and control over the funds.

The government did not prove that Mr. Carpenter had a meaningful opportunity to make disclosures beyond those in the written agreements.  The government did not prove that Mr. Carpenter knew he had any duty to supplement the written agreements with oral disclosures addressing his investment strategy.  The government did not prove Paley's statements were within the scope of Mr. Carpenter's authorization and did not prove that Mr. Carpenter knew of or authorized any utilization of marketing materials (which themselves did not contain material misstatements) in Paley's sales efforts with the seven exchangors.  Additionally, the government did not prove that Mr. Carpenter caused mailings or wires in furtherance of any scheme to defraud – given that Mr. Carpenter had no contact with the exchangors.  In short, the government failed to prove either the scheme to defraud it charged or the one it transitioned to – the "omissions" theory of fraud – beyond a reasonable doubt.  As such, an acquittal is warranted. See United States v. Carucci, 364 F.3d 339 (1st Cir. 2004) (affirming district court's granting of Rule 29 motion); United States v. Pappathanasi, 2005 WL 2033374, *4 (D. Mass. Aug. 24, 2005) (Wolf, J.) (granting judgment of acquittal because "the court must enter a verdict of acquittal if the evidence is insufficient to sustain the verdict").

The numerous evidentiary insufficiencies in this case are not surprising.  Mr. Carpenter, although charged as a con man who lied to his clients, in fact fits none of the models for a white-collar criminal.  First, he did not personally profit from his over 2-year investment of time and energy in BPE even though there were times, such as year-end 1999, when BPE's investment accounts at Merrill Lynch reflected gains from Mr. Carpenter's trading strategy in excess of $600,000.  Tr. 10:28.  Second, BPE fulfilled its commitment to 119 of 126 of its exchangors, in contrast to the classic case involving misappropriation where the wrongdoer does not wait years to begin to take the property either as excess compensation or as a straight-line embezzlement.

Tr. 10:33. Mr. Carpenter did neither: in fact, 90% of the fees went to Paley and the prosecution auditor testified to Mr. Carpenter's insertion of $2 million of funds from his other company to attempt to bolster BPE's business. Tr. 10:32. Third, Mr. Carpenter did not conceal *his* intention to invest the funds from the representative of the only exchangor with whom he had personal contact. Instead, he invited David Patterson to call Merrill Lynch and imposed no limits on what Gerald Levine would tell Patterson about the means by which BPE intended to meet its investment objectives. Tr. 9:102.

All other communications with the exchangors – both the 119 who received full repayment of their funds with interest and the seven who did not – was by Paley who alone (a) made oral representations to them that were not endorsed or even known to Mr. Carpenter, (b) selected which, if any, marketing materials to provide them – again without authorization by or knowledge of Mr. Carpenter, and (c) was the architect of the written materials that alone provide the basis for the prosecution's claim that Mr. Carpenter was liable for what they disclosed and for what they did not disclose to the exchangors.

Mr. Carpenter's business life did not revolve around the success of BPE. His earnings were not related to BPE's sales. He had no incentive to improperly push the exchangors or to deceive them in any way, for his livelihood was based not on 1031 exchanges (which he was only familiar with due to Paley), but from the operations of other businesses in the successful Benistar family of companies. Correspondingly, he had no intent to harm BPE's clients and no intent to defraud.

The investment losses were not the result of his skimming the profits or taking personal positions in conflict with the trading positions of BPE, they were the result of a good faith

attempt to profit from investments that were consistent with the advice being given to investors by experts working with the country's largest brokerage firms such as Merrill Lynch and PaineWebber. If Mr. Carpenter's trading practices were risky or in hindsight unwise or not prudent, the errors were not those of a criminal but simply those of a corporate executive who traded in the open, not behind closed doors, not via e-trades but through brokers who recorded his every investment, and who believed in good faith that he had the authority to do that which he did without concealment and without any indicia that he believed he was engaged in wrongdoing.

When this case is stripped of the crime that was not charged (omissions) and the crime that was not proven (misrepresentations), what remains is nothing more than a civil breach of contract action between BPE and the exchangors. For these and other reasons, an acquittal under Rule 29(c) is the appropriate remedy for criminal charges where *none* of the essential elements were proved beyond a reasonable doubt.[1]

I.    **AN ACQUITTAL IS WARRANTED BECAUSE THERE WAS INSUFFICIENT PROOF THAT MR. CARPENTER "CAUSED" ANY OF THE CHARGED MAILINGS AND WIRES**

The indictment did not allege that Mr. Carpenter was a principal in the sending of the mailings and wires. His liability, if any, rests on the prosecution's proof beyond a reasonable

---

[1] By relying on irrelevant, immaterial and inadmissible civil and administrative proceedings (Gov. Br. 7-8) that were not introduced into evidence, the government is not only highlighting the underlying weakness of its opposition, see United States v. Miranda, 2005 WL 2217071, *9 (11th Cir. Sep. 14, 2005) ("The sole ground for a post-trial motion under Rule 29(c) is that the evidence was insufficient to sustain a conviction"), but is skirting the Canons of Ethics. Clearly, the civil case and the grievance proceeding brought by Mrs. Cahaly are totally irrelevant to the criminal action. However, to the extent the government seeks to play this game, the Court should be aware that the government failed to inform the Court that once an appellate court had the opportunity to review the civil allegations, Mr. Carpenter scored a victory. See Cahaly v. Benistar Property Exchange Trust Co., Inc., 268 Conn. 264, 842 A.2d 1113 (2004) (Connecticut Supreme Court unanimously reversing and vacating prejudgment remedy obtained by Mrs. Cahaly against Mr. Carpenter).

doubt that he "caused" the wires and mailings.  The prosecution, however, failed to meet this burden.  Thus, an acquittal is warranted.

> The Court correctly instructed the jury on causation as follows:
>
> To cause an interstate wire transmission is to **do an act** with the knowledge that a reasonably foreseeable consequence of that act is that an interstate wire communication will be transmitted by someone.  Similarly, to cause the mails to be used is to **do an act** with the knowledge that it is reasonably foreseeable that the use of the mails will follow.

Tr. 12:13 (emphasis added).  However, the government failed to link any **act** of Mr. Carpenter to any of the 19 charged mailings and wires.  Thus, there is insufficient evidence for a conviction.

The government can point to no **act** of Mr. Carpenter that resulted in any of the 19 charged mailings and wires being sent.  Prior to the mailings and wires at issue, Mr. Carpenter did not meet with the exchangors, did not sell to the exchangors, did not communicate with the exchangors, and did not know the identities of the exchangors.  In fact, certain of the exchangors did not know that Mr. Carpenter even existed.  See Tr. 2:105 (Snider: "I didn't know [Mr. Carpenter] existed.").  Because the exchangors' only contact with BPE was through Paley and/or Jokinen, since no conspiracy was charged, since the aiding and abetting theory was disavowed by the prosecution at trial (Tr. Charging Conf. 31), and since the prosecution failed to prove any **act** by Mr. Carpenter which caused any of the 19 charged mailings and wires to be sent, there is a gaping hole in the prosecution's proof that Mr. Carpenter is liable for any of the charged mailings and wires, thus requiring an acquittal.

At most, the government has provided evidence of causation **only** with respect to the successful October 1998 Jane Carey transaction as to which attorney David Patterson testified regarding communications with Mr. Carpenter.  See Tr. 9:79-98.  But that transaction is not one of the 19 charged in the indictment.  Furthermore, while the indictment did charge Mr. Carpenter

with aiding and abetting under 18 U.S.C. § 2, the government specifically withdrew that

instruction – which was the only legal "hook" by which a rational fact-finder could link Paley's

acts to Mr. Carpenter.  Without aiding and abetting, and without a conspiracy charge, Mr.

Carpenter can only be convicted by **his own acts**.  This gaping deficiency in the government's

proof is completely fatal to the convictions and alone requires an acquittal.

**II.    AN ACQUITTAL IS WARRANTED BECAUSE THERE WAS NO PROOF THAT MR. CARPENTER WAS LIABLE FOR ANY MISREPRESENTATIONS OR HAD A DUTY TO DISCLOSE THE MANNER OF THE INVESTMENTS**

Given the Court's finding that Mr. Carpenter could not be held liable for Paley's oral

representations (Tr. Charging Conf. 45), the BPE written materials constitute the entire universe

of representations for which Mr. Carpenter could be held criminally liable.  However, there was

no evidence that Mr. Carpenter reviewed and/or edited any of these materials – only testimony

from Paley and Jokinen that they **sent** the materials "to Connecticut," Tr. 2:134, with no

evidence that Mr. Carpenter ever actually saw, reviewed or edited them.[2]  This lack of proof is

just one reason for the Court to enter an acquittal.

Another reason for acquittal is, assuming, *arguendo*, that Mr. Carpenter did review and

edit the BPE written materials, those materials do not contain any affirmative misrepresentations,

do not make any promises regarding "safety" or "security," and certainly do not invoke any

obligations on BPE (let alone Mr. Carpenter) to disclose how the funds are to be invested.  See

United States v. Cassiere, 4 F.3d 1006, 1022 (1st Cir. 1993) (affirming Chief Judge Young's

instructions on failure to disclose: "A failure to disclose a material fact may also constitute a

---

[2]  The government relies on a June 1999 internal memorandum from Mr. Carpenter to Paley outlining some internal operating procedures for BPE (Tr. Ex. 179) in an attempt to show that Mr. Carpenter must have reviewed and edited the BPE written materials.  However, based on David Patterson's testimony, the written materials were all devised in October 1998 – well before the June 1999 internal procedures memorandum on which the government relies.  Moreover, the memorandum deals only with handling the funds and real estate closings – **not** with marketing to prospective exchangors (which was Paley's job).

false or fraudulent misrepresentation if, one, the person was under a general professional or a
specific contractual duty to make such a disclosure; and, two, the person actually knew such
disclosure ought to be made; and three, the person failed to make such disclosure with the
specific intent to defraud.").

Here, the government failed to prove any of the three prongs as required in Chief Judge
Young's instructions.  The government did not prove that Mr. Carpenter was under a general
professional or specific contractual duty to disclose how he was investing the funds.  The
government did not prove that Mr. Carpenter knew such a disclosure ought to be made, and the
government did not prove that Mr. Carpenter failed to make such a disclosure with the specific
intent to defraud.  In fact, the evidence was overwhelming that Mr. Carpenter had no *opportunity*
to make any disclosures to the exchangors – even if he had intended to do so.  Furthermore, there
was absolutely no evidence provided showing a specific intent to defraud.

The government failed to connect Mr. Carpenter to any of the BPE written materials,
failed to prove that any of those materials contained express misrepresentations, and failed to
prove that Mr. Carpenter had a duty to disclose how he was investing the funds.  See Langford v.
Rite Aid of Alabama, Inc., 231 F.3d 1303 (11th Cir. 2000) (retailer had no statutory, regulatory,
contractual or other duty to disclose differential pricing structure and, therefore, was not liable
under the mail and wire fraud statutes) (citing Bonilla v. Volvo Car Corp., 150 F.3d 62, 71 (1st
Cir. 1999)).  Consequently, an acquittal is warranted.

## III.   THE GOVERNMENT FAILED TO DISPROVE "GOOD FAITH" AS A MATTER OF LAW

The government asserts that it carried its burden of disproving Mr. Carpenter's good faith
defense that he had the legal and contractual authority to invest the funds in his unfettered
discretion – including in stock options.  The government's *only* basis for this assertion, however,

is its argument that Mr. Carpenter's good faith defense "flew squarely in the face of the core purpose of 1031 exchanges." Gov. Br. 7. The purpose of 1031 exchanges and what the BPE agreements provided is not a matter of dispute. The agreements, the statute governing 1031 exchanges (26 U.S.C. § 1031), and the regulations governing 1031 exchanges (26 C.F.R. § 1.1031(k)-1), all speak for themselves. No rational trier of fact could have engrafted onto these clear written words an implied understanding that the funds had to be invested in a certain manner. In sum, there was insufficient evidence to negate Mr. Carpenter's good faith, thus warranting an acquittal.

"[T]he courts are the final authorities on issues of statutory construction." <u>Federal Election Comm'n v. Dem. Sen. Campaign Comm.</u>, 454 U.S. 27, 32 (1981). Consequently, once the case had been reduced to what was contained in the written materials and once the Court found that Paley's oral statements could not be attributed to Mr. Carpenter, it was for the Court to determine – *i.e.*, by granting Mr. Carpenter's *pre*-verdict Rule 29(a) motion(s) for acquittal – whether the content of the governing 1031 statute, 1031 regulations and BPE written materials negated Mr. Carpenter's good faith belief that he had the discretion to invest the funds as he saw fit.[3]

There was no threshold proof, such as concealment or false oral statements by Mr. Carpenter, to satisfy the government's burden of proof on this issue. Alternatively, even if, *arguendo*, the burden was satisfied, there was insufficient evidence to warrant a rational fact-finder in negating Mr. Carpenter's good-faith belief. Since the 1031 statute, 1031 regulations and the BPE written materials do not preclude stock option investments, the Court should grant

---

[3] All of Mr. Carpenter's pre-verdict motions for acquittal were incorporated by reference in his post-verdict motion for acquittal.

the Rule 29 motion because the government utterly failed to disprove Mr. Carpenter's good faith belief that he could invest the funds at his discretion.

## IV.  THE PROSECUTION'S OFFERING PROOF OF DIFFERENT BEHAVIOR AT TRIAL THAN THAT CHARGED IN THE INDICTMENT IS A CONSTRUCTIVE AMENDMENT

Notwithstanding the government's attempts at hair-splitting on this issue, see Gov. Br. 2-3, the theory on which Mr. Carpenter was convicted (omissions) represents *different behavior* on his part than that charged in the indictment (making affirmative misrepresentations).  Omitting or failing to disclose something (*i.e.*, being silent) involves completely *different behavior* than expressly stating a falsehood (*i.e.*, speaking).  Because the government charged one kind of behavior in the indictment, but proved another kind of behavior at trial, the government constructively amended the indictment.

For example, in United States v. Wozniak, 126 F.3d 105 (2d Cir. 1997), the defendant was charged with a cocaine conspiracy but the evidence at trial was limited to a marijuana conspiracy.  The Second Circuit found a constructive amendment because "[h]ad Wozniak been aware that the government would seek a conviction mostly based on marijuana evidence, he might have chosen a different trial strategy."  Id. at 110.  The same applies here.  Had Mr. Carpenter been aware that the government would seek a conviction based on omissions instead of affirmative misrepresentations, he definitely would have chosen a different trial strategy – *i.e.*, he would have introduced evidence that he was under no statutory, regulatory, contractual or any other duty to disclose the kinds of investments being made instead of spending all of his time and energies distancing himself from Paley's alleged affirmative misrepresentations.

The Second Circuit also based its decision in Wozniak on the fact that the indictment "stated no single set of operative facts that would alert Wozniak that at trial he would face

marijuana evidence as well as whatever cocaine evidence the government possessed." Id. at 111. Similarly, the indictment here presented no single set of operative facts that put Mr. Carpenter on notice he would face omissions evidence as well as evidence regarding affirmative misrepresentations.

The existence of an omissions theory of mail and wire fraud for the first time at trial gave the jury an alternative basis on which to convict that was not charged in the indictment. See Haines v. Risley, 412 F.3d 285, 291 (1st Cir. 2005) ("a defendant cannot be convicted of a crime other than the one with which he is charged, even if the evidence shows that he is guilty of this other crime."). Because affirmative misrepresentations require proof of different behavior than omissions, the government's reliance on omissions at trial resulted in a constructive amendment of the indictment which is a *per se* violation of the Fifth Amendment.

The government responds to Mr. Carpenter's constructive amendment argument by contending that he cannot "assert that he had no notice he was being charged with a scheme to defraud that encompassed both express misrepresentations and the failure to provide complete, truthful information." Gov. Br. 3. In support of this assertion, the government contends that the indictment put Mr. Carpenter on notice that he was being charged with omissions simply because a single sentence buried in 3 out of 108 paragraphs in the indictment alleges that "[h]e did not notify or direct BPE personnel to notify current or prospective clients that he was using client funds in this fashion [*i.e.*, investing in stock options]." Indictment ¶¶ 41, 49, 101; Gov. Br. 3.

However, this is clearly insufficient to satisfy the notice requirement under the Due Process Clause to notify Mr. Carpenter that he was charged with an omissions theory of mail and wire fraud – especially when affirmative misrepresentations are the *only* thing mentioned in the charging paragraphs of the indictment. See Indictment ¶¶ 103, 105 ("false and fraudulent

pretenses, representations, and promises"). <u>See also</u> <u>United States</u> v. <u>Yefsky</u>, 994 F.2d 885, 893 (1st Cir. 1993) (indictment must "inform the accused of the specific offense . . . with which he is charged.").

## V.    AN ACQUITTAL IS WARRANTED BASED ON IMPROPER VENUE

This Court, in its Memorandum decision on venue dated July 27, 2005 (Dkt. 148), determined that venue was proper because "[a]n essential element of all the crimes alleged in the indictment is the defendant's knowing and willful participation in a scheme to defraud," Memorandum at 2, and that Massachusetts was the "locus" of such scheme.  <u>Id.</u>

However, in <u>United States</u> v. <u>Ramirez</u>, 420 F.3d 134 (2d Cir. 2005), decided *after* this Court issued its Memorandum, the Second Circuit held that devising and/or participating in a scheme to defraud is *not* an essential conduct element for determining venue under the mail (and, by implication, wire) fraud statute.  Because it is undisputed that Mr. Carpenter committed no act in Massachusetts, caused no act in Massachusetts, was not a principal in the transmission of the mailings and wires, and because this Court determined venue on a standard in conflict with <u>Ramirez</u>, an acquittal is warranted.  <u>See</u> <u>United States</u> v. <u>Strain</u>, 407 F.3d 379, 380 (5th Cir. 2005) (per curiam) ("Moreover, where, as here, the government tries a case to a jury verdict but fails to prove venue by a preponderance of the evidence, federal district courts routinely grant Rule 29 motions for acquittal . . . The fact that the jury reached a verdict not supported by evidence—and subsequently reversed by this court—does not entitle the government to a second chance at prosecution.").

Furthermore, the government's theory of venue – which was adopted by the Court – is unsustainable under <u>United States v. Cabrales</u>, 524 U.S. 1 (1998).[4]  In <u>Cabrales</u>, the Supreme

---

[4]  <u>Cabrales</u>, unlike <u>United States</u> v. <u>Rodriguez-Moreno</u>, 526 U.S. 275 (1999), was a unanimous decision.

Court held that Missouri was not a place of proper venue for money laundering offenses that were begun, conducted and completed in Florida even though the funds that Cabrales deposited were allegedly derived from illegal narcotics activity in Missouri.  Significantly, the Supreme Court was careful to explain that Cabrales committed no acts in Missouri, id. at 5, "the counts at issue do not charge Cabrales with conspiracy," id. at 7, "they do not link her to, or assert her responsibility for, acts done by others," id., "[n]or do they charge her as an aider or abettor in the Missouri drug trafficking.  See 18 U.S.C. § 2 (one who aids or abets an offense 'is punishable as a principal')."  Id.[5]

The case at bar is precisely like Cabrales.  It is undisputed that (i) Mr. Carpenter committed no acts and engaged in no conduct in Massachusetts; (ii) the indictment does not charge Mr. Carpenter with conspiracy; (iii) the evidence at trial does not link him to, or assert his responsibility for, acts done by others (such as Paley or Jokinen)[6]; and (iv) the government completely abandoned its aiding and abetting theory at trial.  It is important to note that after Cabrales, Congress amended the money-laundering statute to authorize prosecutions in the district where the specified unlawful activity occurred.  See 18 U.S.C. § 1956.  No such broadening of the basis for venue has been enacted for mail and wire fraud that would permit venue to be founded on conduct other than the transmission of the mailings and wires in question.  This makes the decision in Ramirez that much more compelling.

---

[5]  Although the indictment charged Mr. Carpenter with aiding and abetting under 18 U.S.C. § 2, the government completely abandoned that charge during trial when it presented Paley as a culpable co-principal instead of as an innocent accessory.  While the government requested a jury instruction on aiding and abetting prior to trial (Dkt. 124), during the charging conference the government stated: "It's acceptable to the government not to give this one."  Tr. Charging Conf. 31 (referring to the government's proposed aiding and abetting instruction).

[6]  Even the Court acknowledged: "I don't think that there is enough, even the evidence of general supervision or decision-making, is enough to connect any statement by Mr. Paley . . . with Mr. Carpenter."  Tr. Charging Conf. 45.

## **CONCLUSION**

Based on the foregoing, this Court should grant the motion for acquittal.


Dated:  September 26, 2005


DANIEL E. CARPENTER,
By his attorneys,



**/s/ Robert M. Goldstein**
Robert M. Goldstein
Mass. Bar No. 630584
20 Park Plaza, Suite 903
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com



**/s/ Jack E. Robinson**
Jack E. Robinson, Esq.
(BBO # 559683)
2187 Atlantic Street
Stamford, CT 06902
Tel:  (203) 425-4500
Robinsonesq@aol.com