# MARTIN G. WEINBERG, P.C.
## ATTORNEY AT LAW

20 PARK PLAZA, SUITE 905
BOSTON, MASSACHUSETTS 02116

(617) 227-3700

FAX (617) 338-9538

NIGHT EMERGENCY
(617) 901-3472

EMAIL: owlmgw@worldnet.att.net

November 2, 2005

**BY HAND**
The Honorable George A. O'Toole, Jr.
United States District Judge
District of Massachusetts
Suite 2300
One Courthouse Way
Boston, MA 02210

Re:   United States v. Daniel E. Carpenter, No. 04-cr-10029-GAO

Dear Judge O'Toole:

During oral argument on Monday, October 31, 2005, in support of his Rule 29 motion, the defendant contended that the government had failed to prove, as required by the Court's instructions, that the defendant did an act that caused any of the charged mailings or wire transmissions. Your Honor asked counsel whether an act done in October 1998 – two years *before* the charged scheme to defraud (see indictment ¶¶103,105) – could legally "cause" the 19 charged wires and mailings that occurred in August-December 2000. Defense counsel responded that such an act would be two years prior to both the scheme to defraud and the charged mailings and wires, thus falling outside the charged conduct and attenuated (both factually and legally) from the mailings and wires in question. The defendant further contended that the absence of any acts in 2000 other than acts of investing resulted in further deficiencies of proof as to the scheme to defraud and specific intent to defraud. Your Honor then asked whether there was any case law on the issue of whether the defendant's acts in October 1998 reviewing and accepting the written agreements would constitute proof of subsequent criminal conduct when the same or similar agreements were presented to the exchangors in 2000 without any new initiative or involvement by the defendant.[1]

After further research, it is clear that the *actus reus* (physical conduct) and the *mens rea* (state of mind) must concur in time, which is commonly referred to as the Principle of Concurrence, an ancient and fundamental axiom of criminal jurisprudence. See, e.g., Paul H. Robinson, *Criminal Law* § 4.1 at 217 (1997) (concurrence requirement "means that the required culpability as to the element must exist **at the time of the conduct** constituting the offense.") (emphasis added). "It is fundamental that a person is not criminally responsible unless criminal intent accompanies the wrongful act." Gasho v. United States, 39 F.3d 1420, 1429 (9th Cir.1994), cert. denied sub nom. Ball v. Gasho, 515 U.S. 1144 (1995) (citing Morissette v.

---

[1] The defendant does not yet have a transcript of the proceedings and is relying upon his best memory regarding the questions asked by the Court during the hearing and addressed herein.

United States, 342 U.S. 246, 251 (1952) (a crime is the "concurrence of an evil-meaning mind with an evil-doing hand")). See also United States v. Gumbs, 283 F.3d 128,132 n.3 (3d Cir.2002) ("the *actus reus* element of a crime is the wrongful deed that comprises the physical components of a crime and that generally must be coupled with *mens rea* to establish criminal liability"). In Garnett v. State, 332 Md. 571, 632 A.2d 797 (1993), Chief Judge Murphy, writing for the court, addressed the general requirement of the **concurrence of *mens rea* and *actus reus*** for criminal culpability in the context of mistake of fact in a statutory rape prosecution:

> "At common law, a crime occurred only upon the **concurrence** of an individual's act and his guilty state of mind. In this regard, it is well understood that generally there are two components of every crime, the ***actus reus*** or guilty act and the ***mens rea*** or the guilty mind or mental state accompanying a forbidden act. The requirement that an accused have acted with a culpable mental state is an axiom of criminal jurisprudence. Writing for the United States Supreme Court, Justice Robert Jackson observed:
>
> > "The contention that an injury can amount to a crime only when inflicted by intention is no provincial or transient notion. It is as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil. Crime as a compound concept, generally constituted only from a **concurrence** of an evil-meaning mind with an evil-doing hand, was congenial to an intense individualism and took deep and early root in American soil. Morissette v. United States, 342 U.S. 246, 205-252, 72 S. Ct. 240, 243-244, 96 L. Ed. 288 (1952)."

The import of the foregoing to this case is apparent. The government has never contended in this case that there was a concurrence of *actus reus* and *mens rea* at the time of the defendant's "acts" in October 1998—indeed, the scheme charged in the indictment is limited to August to December 2000.[2] Concomitantly, even if *arguendo* the defendant had the necessary *mens rea* in 2000, the absence of an act in 2000 prevents the concurrence of the *actus reus* and *mens rea* necessary to establish the elements of the mail and wire fraud charges. In other words, according to the government's proof, in October 1998 there was alleged an *actus reus* but no *mens rea*, and in August-December 2000 there was alleged the *mens rea* but no *actus reus*. This lack of temporal concurrence between *actus reus* and *mens rea* in August-December 2000 is fatal, pursuant to both the Concurrence Principle and the Causation Principle, as there was an absence of proof of any act by Mr. Carpenter in the pivotal 2000 time period that had a causal relationship to the 19 wire and mailings in question.[3]

Also during oral argument, the prosecution contended that its reliance on what the defendant did *not* say to the exchangors was not a new theory of omission liability but instead a "half-truth" theory that required no proof of a duty to disclose. Although there exists case law that in general recognizes the "half-truth" middle ground theory of fraud liability, the theory and

---

[2] The government's argument that the indictment could be construed more broadly because of several references in the indictment to the history of BPETCO is belied by the specific language of the critical charging paragraphs 103 and 105, which link the scheme to defraud to the time period of the mailings and wires.

[3] The record is absolutely clear that Mr. Carpenter did not receive, review, edit, accept, or modify exchange documents on an ongoing basis prior to the transmission of wires or checks and in particular the record does not show his receipt or review of the exchange documents in relation to the seven exchangors identified in the indictment

its supportive precedent are most often applied in the context of oral statements that are incomplete and misleading, rather than to omissions in written statements, particularly legal agreements. See, e.g., United States v. Townley, 665 F.2d 579, 585 (5th Cir.), cert. denied, 456 U.S. 1010 (1982) ("[U]nder the mail fraud statute, it is just as unlawful to **speak** 'half-truths' or to omit to state facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading") (emphasis added); United States v. Autori, 212 F.3d 105, 119-20 (2d Cir.2000) (omissions sufficient for mail fraud conviction where oral statements were made); United States v. Allen, 554 F.2d 398 (10th Cir.1977) (half-truth definition of deceitful statements applied to various counts of oral statements). Applying the half-truth definition of fraudulent statements to legal documents that were reviewed by lawyers and advisors who had the right to seek additional information in a context where neither statute or regulations require certain categories of disclosure, cf. Baron v. Smith, 285 F.Supp.2d 96 (D.Mass.), aff'd 380 F.3d 49 (1st Cir.2004), would require an expansion of the half-truth jurisprudence beyond its logical boundaries.

The government conceded during oral argument it was not relying on the so-called third category of fraud (wholesale omissions) and therefore did not charge or allege a duty of disclosure in this case. Although, it should be noted that despite the government's concession an examination of the record reflects that the government did indeed argue an omission by silence, rather than half-truth, theory of liability during its summation, see Tr. 12:26, 91-95; Rule 29 Reply Br. at 9-10, and asked questions of its witnesses at the end of direct examinations designed to elicit wholesale omissions, see Tr. 11:64 (Johnston); Tr. 2:103 (Snider); Tr. 3:107 (Darling); Tr. 3:132 (Fitzgerald); Tr. 4:52 (Adams); Tr. 4:125 (Bellemore); Tr.11:44 (Cahaly); Motion to Set Aside Verdict and Grant a New Trial Pursuant to Fed.Crim.P.Proc.33 at 38-39.

An acquittal is warranted because this enlargement of proof violates the requirement that fraud schemes be particularized in the indictment, United States v. Yefsky, 994 F.2d 885, 893 (1st Cir.1993), in part to prevent a "prosecution free to roam at large – to shift its theory of criminality so as to take advantage of each passing vicissitude of the trial and appeal," Russell v. United States, 369 U.S. 749, 768 (1962), and in part so that a defendant is only tried on charges contained in the indictment, Stirone v. United States, 361 U.S. 212, 218 (1960). Mr. Carpenter cannot be held criminally liable for "half-truths" in the context of legal agreements, especially considering this theory of proof was not charged in the indictment and the government concedes it is not relying on an "omission" theory of liability. All of the government's pretrial pleadings focus on affirmative misrepresentations, which is consistent with an indictment that does not even contain the words "omission," "duty to disclose," or "half-truth."

The defendant respectfully submits that a judgment of acquittal is necessary and appropriate for all of the foregoing reasons, as well as those stated during oral argument.

Respectfully,

/s/ Martin G. Weinberg

Martin G. Weinberg
Robert M. Goldstein

cc:   Michael J. Pineault
      Assistant U.S. Attorney