

**U.S. Department of Justice**

*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*  *United States Courthouse, Suite 9200*
*1 Courthouse Way*
*Boston, Massachusetts  02210*

November 3, 2005

BY HAND

The Honorable George A. O'Toole, Jr.
U.S. District Court
1 Courthouse Way
Boston, MA 02210

      Re:    U.S. v. Daniel Carpenter, No. 04-10029-GAO

Dear Judge O'Toole:

      The United States submits this letter to respond to assertions contained in Attorney Weinberg's post-hearing correspondence of November 2, 2005 and to address two additional issues that arose at the October 31, 2005 oral argument in this matter.

A.    Time Period of Charged Scheme/Conduct

      Defense counsel mischaracterizes the indictment and misstates the evidence with respect to the time period of the charged scheme and conduct.  The scheme was not limited to the period from August to December, 2000.  The false and fraudulent pretenses charged in the indictment and proven at trial were contained in promotional materials and exchange documents that dated back to the formation of Benistar Property Exchange Trust Co. ("BPE") in 1998, and that continued in use through BPE's demise in late 2000/early 2001.

      Moreover, the evidence was sufficient to support a reasonable jury's conclusion that Carpenter's conduct – and his participation in the scheme – did not begin and end in 1998, as the defendant now claims, but rather extended throughout the same time period.  Carpenter first reviewed, edited, and approved the promotional materials and exchange documents in the fall of 1998.  He knew these items contained false and fraudulent representations and misleading omissions.  This was established at trial by, inter alia, evidence showing that at the same time Carpenter was revising, discussing, and signing the exchange and escrow agreements with Attorney Patterson – which promised to hold Patterson's client's funds in a fixed interest escrow account, not transfer the money without her written authorization, and return it for her replacement exchange – Carpenter was opening an options trading account at Merrill Lynch and receiving explicit warnings from Merrill regarding the risks posed by such trading.

Further, Carpenter knew that the false and misleading exchange documents remained in use following the Patterson exchange and that clients continued to send funds to BPE in reliance on those documents. Among other things, Jackie Spielman testified that copies of the exchange documents were sent to Carpenter's Connecticut office in connection with each 1031 closing and that she advised Carpenter of the receipt of those documents and also of the receipt of incoming client funds. (Tr. 7:11-13). Linda Jokinen further testified that the documents were modified to reference PaineWebber instead of Merrill Lynch in October, 2000, after Merrill Lynch terminated Carpenter's trading privileges, and that she sent the revised documents to Connecticut for Carpenter's review and approval, "because Daniel had to have final word on all documents." . (Tr. 3:51-52; see also Gov. Ex. 182A). This provided an additional basis for the jury to conclude that Carpenter knew full well that the false and misleading materials remained in circulation.

Having thus participated in putting the materials into the stream of commerce beginning in October, 1998, and knowing thereafter that the materials remained in use and were continuing to induce clients to entrust their funds to BPE through the end of 2000, Carpenter cannot claim that his "acts" or his participation ended in 1998. He knew the representations that were contained in the materials regarding how client escrow funds would be handled; he personally conducted the options trading that violated those representations; he knew the materials directed clients to wire and/or mail their funds to BPE; he knew that the materials continued to be distributed, and that clients continued to send in money through December, 2000; and he continued to misappropriate, trade, and lose millions of dollars throughout the same time period. In short, Carpenter's assertion that his "acts" ended in 1998 flies in the face of overwhelming evidence to the contrary.

B.    Theory of Liability

Carpenter likewise misstates the law and the facts with respect to the charged theories of liability. He cites no case law to support his assertion that a "half-truth" theory of fraud liability should only be applied to oral statements. Carpenter's contention, which would criminalize misleading half-truths if made orally but permit them if disseminated in writing, is nonsensical.

Carpenter also is incorrect in contending that: (a) the indictment alleges only affirmative misrepresentations; and (b) the government constructively amended the indictment by advancing an "omissions" theory at trial. As the government previously has demonstrated, the indictment charges not only direct false statements but also the concealment of facts. See Indictment ¶¶ 31, 41, 46, 49, 55, 99, 101; see also Pattern Criminal Jury Instructions for the District Courts of the First Circuit, Instruction No. 4.18.1341 (2003) (The term "false or fraudulent pretenses" includes "actual, direct false statements as well as half-truths and the knowing concealment of facts.").

C.    Venue

Defense counsel acknowledged at oral argument that if the First Circuit elects to adopt the reasoning of United States v. Perez, 280 F.3d 318 (3rd Cir. 2002), he must establish that:

2

(1) he objected to venue prior to or at the close of the prosecution's case in chief; (2) there is a genuine issue of material fact with regard to proper venue; and (3) he timely requested a jury instruction on venue. Id. at 334.

The focus of the parties' discussion at oral argument was on the second element. The government notes, however, its view that Carpenter failed adequately to comply with the third element as well. Specifically, it was not until after his conviction, in briefing his Rule 33 motion, that Carpenter first cited the court to Perez and other decisions discussing the circumstances under which the issue of venue must be submitted to the jury. Prior to that, Carpenter was untimely in filing his requested jury instructions. (Tr. 9:147). Proposed instructions were due on July 11, the first day of trial. Carpenter did not file his until Friday, July 22, on the eve of the business day before the charge conference. (Dkt. 141). Even then, although Carpenter requested a jury instruction on venue (Def. Proposed Instruction No. 25), he did not cite a single case holding that such an instruction was required. He cited only United States v. Ebersole, 411 F.3d 517 (4th Cir. 2005), in which the court noted in a footnote that submitting venue to the jury was an "appropriate procedure" for resolving a factual dispute relating to venue, but did not state that it was required. Id. at 526 n.10.[1] Similarly, at the charge conference, when the court expressed its understanding that such an instruction might sometimes be given, but that the court had found no authority stating that it was required (Tr., Charge Conference, at 4-6),[2] defense counsel did not refer the court to Perez or to any of the other cases that it now cites. Counsel mentioned only a case named Strain (Tr. at 4), in which, like Ebersole, the court apparently had submitted the issue of venue to the jury but did not explain why. United States v. Strain, 396 F.2d 689, 692 (5th Cir. 2005).

It is neither sufficient nor proper for a defendant to wait until after trial to provide a court with legal authority in support of an assertion that he now claims entitles him to a new trial. For all of the reasons that the government set forth in its previous opposition papers, the government asserts that there is no genuine issue of material fact that would have required submitting the issue of venue to the jury. The government further contends, however, for the additional reasons set forth above, that the defendant failed adequately to preserve the issue.

D.    Local Rule 116.2(B)(2)

Finally, the government submits two additional thoughts concerning Carpenter's assertion that the government violated Local Rule 116.2(B)(2)(e).

Carpenter rests his contention on the argument that the government had in its possession

---

[1] The defendant's proposed instruction cited three other venue cases, all of which related to the appropriate legal standard. None addressed the issue of the appropriate decision maker.

[2] The court stated: "I can imagine it [instructing a jury on venue] being done. The question is is it required. And that's what I find nothing on." (Tr. at 4).

evidence casting doubt on Martin Paley's credibility with respect to Paley's claims regarding the timing and extent of his knowledge concerning Carpenter's options trading; that such evidence constituted proof that Paley had committed a "prosecutable federal offense" – namely, perjury and/or the making of false statements; and that it was not sufficient for this evidence to be provided to defense counsel for use on cross-examination; rather, the government had an additional obligation under Local Rule 116.2(B)(2)(e) to serve on defense counsel a written notice explicitly characterizing the foregoing information as evidencing a federal offense.[3]

At the hearing, the government noted the problems inherent in any interpretation of Local Rule 116.2(B)(2)(e) that defined "prosecutable federal offense" as encompassing a government attorney's credibility assessments, as distinct from things such as an uncharged tax or narcotics offense. On the issue of credibility, the government contended that its obligation was to disclose all information in its possession casting doubt on a witness' credibility, as it did here, and that doing so discharged its discovery responsibilities.

Further reflection on this issue following the hearing yields the following additional observations. First, Local Rule 116.2(B)(2) contains a provision that squarely addresses the issue of witness credibility. That provision, which is 116.2(B)(2)(a), defines the government's discovery obligations as consisting of the production of "any information that tends to cast doubt on the credibility . . . of any witness." (emphasis added). Given the express language of this provision, it is fair to interpret 116.2(B)(2)(a) as specifically intending to define the scope of the government's discovery obligations with respect to witnesses whose credibility may be subject to challenge. As noted above, the rule requires the government to disclose the information in its possession. It does not require the government to disclose assessments or opinions that it may have formed based on that information.

Second, even if Carpenter's legal contentions regarding the scope of 116.2(B)(2)(e) are correct, no prejudice resulted. Defense counsel challenged Paley's credibility from the start of the trial to its finish, and he did so having received in discovery everything relevant to mounting an effective assault on Paley's veracity. Carpenter's current claim that he would have fundamentally altered his theory of defense or his conduct of the trial is meritless. Absent a reasonable probability that the result of the trial would have been different – and none exists here – Carpenter's Brady and Giglio claims do not support his request for a new trial. E.g., Strickler v. Greene, 527 U.S. 263, 281-82 (1999); Conley v. United States, 415 F.3d 183, 188-89 (1st Cir. 2005); United States v. Dumas, 207 F.3d 11, 16 (1st Cir. 2000) (impeachment information that is cumulative of other information already disclosed cannot give rise to a Brady violation); United States v. Haire, 371 F.3d 833, 841 (D.C. Cir. 2004) (no showing that the allegedly withheld

---

[3] Carpenter likewise dismisses as inadequate the government's decision to refrain from asking Paley any questions on direct examination that might have elicited responses whose credibility potentially was suspect. Indeed, Carpenter has attempted to turn the government's good intentions against it by characterizing this decision as a "concession" by the government that it had concluded Paley was a perjurer, which it wasn't.

4

evidence raised "a reasonable probability of a different result").

      For the reasons set forth above and in the government's previous written and oral submissions, Carpenter's motions for acquittal or, alternatively, for a new trial should be denied.

                                     Sincerely,

                                     **/s/ Michael J. Pineault**

                                   Michael J. Pineault

cc:    Robert Goldstein, Esq. (via ECF)
        Jonathan Mitchell, Esq. (via ECF)