UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                                  )
UNITED STATES OF AMERICA   )
                                                  )
             v.                               )   CRIMINAL NO. 04-10029-GAO
                                                  )
DANIEL E. CARPENTER            )
_____)

**Defendant's Motion to Reconsider Denial of Rule 29 Motion
On the Issue of Causation**

Extraordinary cases require extraordinary relief. While the defendant is mindful that the Court has devoted significant time and attention to his post-trial motions, he respectfully requests that this Honorable Court reconsider its opinion denying his Rule 29 motion with regard to a single, discrete issue: <u>causation</u>.

As the Court noted in its Memorandum and Order of December 15, 2005, the only categories of evidence regarding the defendant's *own* actions in this case consisted of (a) acts done approximately two years *before* the charged scheme to defraud, *see* Memorandum and Order at 13 ("On the evidence, any acts by [Carpenter] that preceded any given mailing or wire transmission (and therefore could have caused the transmission) were confined to setting up of the Benistar Property Exchange Trust business with Paley"), and (b) transparent and open investing of the exchangors' funds through two titans of the financial industry *after* the alleged crime was completed, *see* Memorandum and Order at 27 ("In each case, the crime was completed when the mailing or wire transmission occurred, before Carpenter had invested [] any of the money"). Because there simply were *no* causative acts taken by the defendant *within* the time frame of the charged scheme to defraud (August – December 2000), the government failed to submit sufficient evidence on an essential element of the crime charged. Wherefore,

1

given the gravity of a citizen's Constitutional right not to be placed twice in jeopardy, the defendant respectfully urges the Court to reconsider its decision denying the defendant's Rule 29 motion.

I.  Argument

On the issue of causation, the Court instructed the jury as follows:

> To cause an interstate wire transmission is to do **an act** with the knowledge that a reasonably foreseeable consequence of that act is that an interstate wire communication will be transmitted by someone. Similarly, to cause the mails to be used is to do **an act** with the knowledge that it is reasonably foreseeable that the use of the mails will follow.

Memorandum and Order at 12 (emphasis added). The jury was appropriately focused singularly and solely on Carpenter's acts *vel non*, to the exclusion of any acts committed or conducted by Paley or any other Benistar Property Exchange Trust Company ("BPE") employee, as there was no conspiracy charge, no agency instruction, and the government disavowed any reliance on an aiding and abetting theory of proof. *See* Memorandum and Order at 15, n.6 (Court emphasizing that the analysis "is directed toward Carpenter's culpability as a principal," that "the government disavowed a theory of Carpenter's culpability based on his having aided or abetted Paley," and so Carpenter's conviction can only "rest on his own acts, not on Paley's attributed to him"). As the Court correctly observed, based on all of the evidence admitted at trial, in assessing the sufficiency of the evidence on the issue of causation, the only acts the jury could have found were committed by Carpenter that preceded any given mailing or wire transmission were those taken in connection with the formation of BPE—*i.e.*, acts taken in or about October 1998, twenty-two months prior to the scheme charged in the indictment. *See* Memorandum and Order at 13 ("Carpenter stands farther back, both in time and in proximity, from the critical events that are the gist of the charged offenses," and "any acts by [Carpenter] that

2

preceded any mailing or wire transmission (and therefore could have caused the transmission) were confined to setting up of the Benistar Property Exchange Trust business with Paley"). Given the fundamental fact that the only acts *arguendo* taken by the defendant that preceded any given mailing or wire transmission were committed approximately two years *before* the inception of the charged scheme to defraud, *see* Indictment at ¶¶103, 105 (charging August 2000 to December 2000 scheme), these acts simply cannot constitute an essential element of the charged crime.

It seems axiomatic, the defendant respectfully contends, that acts taken two years *before* the existence of the charged scheme to defraud—*i.e.*, acts taken when no scheme to defraud existed—cannot serve as the necessary predicate acts for causation purposes. Compare United States v. Bortnovsky, 879 F.2d 30, 37 (2d Cir. 1989) (mailing sent two years *after* the scheme). The defendant has found no authority for the proposition that acts taken years before the inception or formation of a fraudulent scheme can serve as the necessary and essential element of causation. Because the charged scheme did not exist in 1998 (at the time of the subject "acts"), such acts are simply ineligible to be relied upon as an essential element of the crime charged. It is as if the government has relied exclusively on a Rule 404(b) prior bad act to prove an essential element of the charged crime, which clearly is impermissible.

There was no scheme to defraud from October 1998 to August 2000. Every single BPE exchange was successful from inception through August 2000 (and even thereafter) and the company had returned every dollar forwarded to it by every exchangor (plus their 3% or 6% return) from inception to August 2000 (and thereafter).[1]

---

[1]. Indeed, it is important to note that the first failed exchange did not occur until January 2001—notwithstanding the ups and downs of the market from October 1998 to December 2000-- and so the

3

If a scheme to defraud existed from 1998 to July 2000 then it was clearly uncharged and outside the ambit of the indictment, and would necessarily need to embrace the 119 successful exchanges that predated the seven failures. Regardless, because it did not exist (as the defendant contends) or was uncharged (which, the defendant contends, is beyond dispute given the specific time limits contained in paragraphs 103 and 105 of the indictment), the essential element of causation cannot be fulfilled by first concluding that a non-charged scheme in fact existed and that Carpenter did nothing thereafter (after October 1998) to withdraw from the non-existent and/or uncharged scheme, instead "effectively ratifying and renewing the initial institution of the scheme" allegedly jointly formed by Paley and Carpenter. Memorandum and Order at 14-15. A theory of "ratification" is not sustainable with regard to the issue of causation, especially in this case, wherein the jury received no agency instruction and the government disavowed an aiding and abetting theory of proof. Moreover, the government did not charge a conspiracy and there should be no hypothesizing of a presumption of continuity, which is a concept applicable to conspiracy cases, but not to the substantive crimes charged in this case (mail and wire fraud).

The defendant's causative acts *vel non* stand alone, the only conceivable acts were taken when no scheme existed (or at least well outside the ambit of the charged scheme), and, respectfully, the gaping hole in the evidence presented by the government cannot be plugged by reliance on conspiratorial analogies and the notion of affirmative withdrawal. For very good reason, the Court expressed its skepticism "of an approach that would tend

---

defendant did not have reason to believe in August 2000 or thereafter that he would not successfully return all of the exchangors' funds plus their expected return, as he had done for every exchange that preceded January 2001. It should also be noted that as a result of the PaineWebber arbitration hearings, which were initiated by Carpenter, the exchangors will recover all of their losses, as the National Association of Securities Dealers arbitration tribunal has just this month entered a finding against PaineWebber and an order requiring PaineWebber to pay $13,900,000.00 pursuant to the original $88,000,000.00 claim.

4

to treat mail or wire fraud substantive charges as implicitly charging a conspiracy." Memorandum and Order at 14. Transporting conspiracy concepts like presumptions of continuity and burdens of withdrawal into a substantive offense under the rubric of ratification is without a basis in the Court's instructions to the jury. The government deliberately chose not to charge a conspiracy, not to request an agency instruction, and to disavow an aiding and abetting theory. As such, the defendant respectfully contends that the government's failure of proof on the issue of causation cannot be saved by a "ratification" theory of proof or "the notion of affirmative withdrawal," neither of which were charged or argued by the government (nor was the jury instructed on either of these theories).

II.     Conclusion

Acts taken within the October 1998-August 2000 time period cannot, by definition, be essential elements of the later conceived alleged offense. The defendant has found no precedent for basing the essential element of causation on conduct that antedates the charged scheme by approximately two years. Respectfully, the defendant contends that the Court did not properly resolve this critical aspect of the causation issue. WHEREFORE, the defendant respectfully requests that the Court reconsider its denial of the defendant's Rule 29 motion and thereafter ALLOW said motion.

Respectfully submitted,
DANIEL E. CARPENTER,
By his attorneys,


**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
(BBO #519480)
20 Park Plaza, Suite 905
Boston, MA 02116
(617) 227-3700


**/s/ Robert M. Goldstein**
Robert M. Goldstein, Esq.
(BBO #630584)
20 Park Plaza, Suite 903
Boston, MA 02116
(617) 742-9015


**/s/ Jack E. Robinson**
Jack E. Robinson
(BBO #559683)
2187 Atlantic Street
Stamford, CT 06902
(203) 425-4500

Dated:  December 29, 2005