UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10029-GAO |
| | ) | |
| DANIEL E. CARPENTER | ) | |

**Defendant's Reply to Government's Opposition
to Motion to Modify Conditions of Release and Return of Passport**

I.    Introduction

    For more than five years, the Defendant, Daniel E. Carpenter, has endured the ordeal of civil litigation and for over two years the heightened burdens of being accused, unjustly, by the prosecution of crimes he vigorously contends he did not commit. These parallel accusations have taken a grave toll on the serenity of his family life and on the success of his business life. His conviction, with the concomitant press release by the United States Attorney's Office trumpeting that he "misappropriated" his clients' funds, a press release circulated widely by his business competitors, traumatized the ongoing Benistar related businesses. Then, on December 15, 2005, his conviction was vacated and he again is presumed innocent. Additionally, an arbitration panel in New York awarded his company and the Exchangors $13,000,000.00 in a lawsuit brought by Mr. Carpenter against PaineWebber. Now, faced with another 12-18 months (due to the government's appeal) he will be able to seek the finality and vindication that only a new trial will afford him, Mr. Carpenter seeks the right to travel - with his family to regain some peace and for his business to explore foreign business opportunities to fill the void of business lost in the wake of the negative publicity related to this case.

The Government, recognizing that there is no real risk of flight or danger to the community or to another person - the only standards that would warrant a denial of the motion at issue – does not seriously contest Mr. Carpenter's motion on these grounds, knowing that Mr. Carpenter has no intention to run from what he believes are spurious accusations, knowing he would not jeopardize his credibility with the Court and/or risk further prosecution pursuant to 18 U.S.C. §§3146 and 3147, and knowing that he is deeply committed to exonerating himself in both the criminal and civil litigation. Instead, the government demonizes Mr. Carpenter, raising the baseless spectre that he has and wants to conceal assets in foreign countries. The truth is just the opposite – Mr. Carpenter wants to generate assets through legitimate business relationships with lawyer, bankers, and businessmen who live and work outside the United States.  He does not seek to travel in secrecy; instead his motion, if allowed, requires him to provide Pretrial Service with his itinerary in advance of any international travel.  The prosecution's unsupported and irresponsible suppositions about his intentions should not substitute for a history of complying with each and every order of pretrial release and, ironically, with Magistrate Judge Cohen's delaying the surrender of his passport so that he could travel internationally in the months immediately after his first judicial appearance in February 2004.

Wherefore, based on the foregoing and the arguments made *infra*, Mr. Carpenter respectfully seeks leave of Court to file this Reply and asks that his motion to modify his conditions of release and for the return of his passport be allowed.

2

II.    Argument

First, while the government continues to suggest that Mr. Carpenter has assets in addition to those disclosed to Probation, neither the government, the Exchangors nor any other party has ever discovered any assets other than those honestly and fully disclosed by Mr. Carpenter, notwithstanding the exhaustive discovery conducted in related civil litigation and the unlimited resources available to the government in this case. If there were any additional assets, they would have been located long before this point of the BPETCO fiasco. The government's suggestions to the contrary are baseless.

Second, Mr. Carpenter's devotion to his family, his community, the various charitable endeavors he has supported over the years, and the companies he has founded over the course of his professional career render the suggestion that he would flee the jurisdiction preposterous. Over the past five years, against the unrelenting tide of the related BPETCO litigation and the instant criminal prosecution, Mr. Carpenter has done everything in his power to maintain his family structure, provide emotional support for his daughter and physical and financial support for his elderly parents, preserve his personal and professional reputations, save the Benistar companies from failing (which included the difficult decision to divorce himself from the companies he founded), and establish his innocence. It certainly has not been an easy endeavor.[1] Indeed, as of December 14, 2005, Mr. Carpenter was an emotionally devastated man, firm in his belief that an innocent man had been wrongfully convicted, and it appeared the Benistar

---

[1] For example, after Mr. Carpenter's conviction, the government issued a press release that described Mr. Carpenter's conduct as "misappropriating" funds, which is the equivalent of a death sentence in Mr. Carpenter's area of expertise. Counsel for Mr. Carpenter went so far as to write a letter to the government requesting a modification of the press release (i.e., omitting the word "misappropriation"). Notwithstanding that the government derived no materially gain from the press releases' use of the word "misappropriation," the government refused to modify the terms of its release.

3

companies would not survive.[2] However, after the Court's ruling on December 15, 2005 granting Mr. Carpenter a new trial, both he and the companies have undergone a rebirth. Mr. Carpenter is emotionally, psychologically and physically re-energized, and has even assumed a more active role in developing business opportunities, given the fact that he is now again a presumed innocent individual. There simply is no risk that Mr. Carpenter would now abandon everything he has fought to preserve, with every essence of his being, to flee the jurisdiction.

Third, the specifics of Mr. Carpenter's involvement with Benistar *vel non* are irrelevant and immaterial to issues at the heart of any bail controversy. The Bail Reform Act is directed towards addressing any risk of flight and/or danger to the community, both of which are entirely absent in this case. Mr. Carpenter is a citizen of the United States and resides in Simsbury, Connecticut with his wife of twenty-three years. His daughter is a student at Trinity College in Hartford, Connecticut. Mr. Carpenter has elderly parents who reside near him and rely upon his constant support and assistance. The courtroom was filled with family, friends and Benistar employees throughout the trial, and Mr. Carpenter has expended considerable efforts in defending himself in the instant prosecution and the related civil litigation.[3] Stated simply, there is no risk of flight, whatsoever. While the government points to the jury's verdict as evidence of some alleged fear of retrial and hence an increased risk of flight, the government conveniently ignores the Court's finding that "the case was not so strong that it can confidently be said that the repeated 'gambling' references had no illegitimate effect on the jury's assessment

---

[2] Company revenues had fallen radically.
[3] Additionally, Mr. Carpenter is in the vortex of triangular litigation with the Exchangors and PaineWebber, all of which has been vitalized by the recent $13,000,000.00 arbitration award against PaineWebber, which is the subject of on-going appeals.

4

of the evidence" and that a finding that Mr. Carpenter did <u>not</u> act with an intent to defraud "would have been rationally possible on the evidence." (Memorandum and Order of December 15, 2005 at 28). Contrary to the Government's suggestion that Mr. Carpenter's knowledge of his guidelines somehow enhances his risk of flight, Mr. Carpenter's daily attendance at trial, his conformity with each requirement of pretrial release, his availability for sentencing on December 19, 2005 (a date vacated as a result of the allowing of a new trial four days earlier), his involvement and investment in his defense team, his solemn obligations to and love for his family, his business, and his community, and his profound commitment to vindicate his reputation from what he firmly believes are false accusations extinguish *any* risk of flight. Moreover, any violation of bail, much less full fledged flight, would be utterly self-destructive: Mr. Carpenter would risk a new charge, more easily provable, with serious potential sentencing consequences, *see* 18 U.S.C. §§3146, 3147, he would risk his continued status on bail, he would risk an enhancement of sentence if convicted at retrial, and mostly he would certainly jeopardize his credibility and honor with the Court that entrusted him to travel. *See United States v. Patriarca*, 776 F.Supp. 593, 598 (D.Mass.1991) (Wolf, J.) (Court rejecting government's motion for detention in part based on defendant's ability to discern what is in his best interest and to conform his conduct to that"). If necessary, Mr. Carpenter welcomes a retrial at which the government does not unfairly argue matters outside the evidentiary record so as to wrongfully inflame the jury to decide the case on irrelevant matters, wherein the government does not misconstrue the nature of their case and deceive the defense into believing that it believed Paley was some innocent conduit, and wherein the government does not hijack the trial from one in which losses

5

supposedly do not matter to one wherein they emphasize losses while giving melodramatic (and non-evidentiary) accounts of the Exchangors' life stories during closing arguments.

Fourth, while the government posits that international travel is rare, the Bail Reform Act specifically provides that if the Court concludes that pretrial release on personal recognizance or upon execution of an unsecured appearance bond is not sufficient, the Court "shall order" release "subject to the *least restrictive further condition, or combination of conditions, that such judicial officer determines will reasonably assure the appearance of the person as required and the safety of any other person and the community ….*" 18 U.S.C. §§3142(b) and (c)(1)(B) (emphasis added). The language is important for several reasons. First, restrictions should not even be imposed unless the Court first finds that personal recognizance or execution of an unsecured appearance bond is not sufficient conditions for pretrial release (and it should be in this case). Second, if restrictions are imposed, they must be the "least restrictive." Third, any conditions imposed should relate *only* to the need to assure the appearance of the defendant and/or mollify any danger to any person or community, not some baseless speculation that the defendant will deposit assets in some foreign jurisdiction. There is simply an unconditional absence of any proof of any illegal wrongdoing regarding assets or any intent to secret unspecified, illusory assets overseas, which would jeopardize Mr. Carpenter's status before the Court, given the fact that any such wrongdoing would endanger Mr. Carpenter's bail status, his existing travel rights, and would run the real risk of undermining his credibility before this Court. Mr. Carpenter's desire to obtain the right to travel internationally is nothing more than addressing the need to relieve his family of

6

the stress created by the past five years of litigation and to explore business opportunities in a global marketplace. The government's unfounded suggestions are nothing more than a transparent attempt to denigrate Mr. Carpenter before the Court with specious and unfounded accusations.

Fifth, in this case, there is already precedent for allowing Mr. Carpenter to travel internationally. Prior to initially surrendering his passport in this case, Magistrate Judge Cohen allowed Mr. Carpenter to travel to Turks & Caicos and Bermuda, amongst other destinations. Mr. Carpenter returned from those trips, as he will return from any future trips. Any suggestions to the contrary should be rejected.

III.    Conclusion

WHEREFORE, the defendant respectfully requests that his motion be ALLOWED.

          Respectfully submitted,
          DANIEL E. CARPENTER,
          By his attorneys,


**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
BBO No. 519480
MARTIN G. WEINBERG, PC
20 Park Plaza, Suite 905
Boston, MA   02116
(617) 227-3700
owlmcb@att.net


**/s/ Robert M. Goldstein**
Robert M. Goldstein, Esq.
BBO No. 630584
20 Park Plaza, Suite 903
Boston, MA 02108
(617) 742-9015
rmg@goldstein-lawfirm.com

Dated: February 24, 2006

## **CERTIFICATE OF SERVICE**

    I, Robert M. Goldstein, hereby certify that on February 24, 2006, this document filed through the Court's CM/ECF system will be sent electronically to the registered participants including Michael Pineault, Assistant United States Attorney, John Joseph Moakley Federal Courthouse, 1 Courthouse Way, Suite 9200, Boston, MA, 02210, as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants.

                                        */s/ Robert M. Goldstein*