UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Eastern Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| *v.* | ) | No. 04-CR-10029-GAO |
| | ) | |
| DANIEL E. CARPENTER | ) | |

**DEFENDANT'S VERIFIED MOTION TO TRANSFER VENUE FOR CONVENIENCE**

Defendant Daniel E. Carpenter respectfully seeks, based on Fed. R. Crim. P. 21(b) and the just exercise of this Court's sound discretion, to transfer venue of this mail and wire fraud retrial for convenience to either of two federal courthouses—both of which are substantially closer to Simsbury, Connecticut, the place where Mr. Carpenter lives, works and worships, than the Boston federal courthouse (3 ½ hours during rush-hour). Specifically, Mr. Carpenter seeks transfer of this case to the District of Connecticut in Hartford (45 minutes during rush-hour) or, preferably, the Western Division of the District of Massachusetts in Springfield (30 minutes during rush-hour) (the geographic area encompassing the Hartford and Springfield courthouses is collectively referred to herein as the "Hartford-Springfield Corridor").[1]

The retrial of this case would have occurred in early 2006 but for the government's appeal of this Court's new trial order based on the government's improper closing argument.

---

[1] The Hartford-Springfield Corridor forms a single economic area because both cities are closely linked geographically, economically, socially, and culturally. According to the Hartford-Springfield Economic Partnership: "Linked by the Connecticut River, Interstate 91 and a shared airport, industrial and cultural heritage, Greater Hartford and Greater Springfield together form an economic powerhouse. Only 25 miles apart, the two cities anchor a combined region that constitutes the second largest population, education and economic center in New England." http://www.hartfordspringfield.com (last visited December 14, 2007). Although Simsbury is closer to Hartford "as the crow flies," *see* map annexed hereto as **Exhibit 1**, *Mr. Carpenter actually prefers that the case be transferred to Springfield* because there is less rush-hour traffic and a faster commute (along rustic Route 10 from Simsbury) to Springfield, thereby making Springfield more convenient. There is also better, easier, safer, and more convenient parking at the Springfield courthouse than the Hartford courthouse. *See* n. 8, *infra*. Mr. Carpenter has verified the truth of the factual averments contained herein pursuant to 28 U.S.C. § 1746(2). Consequently, no separate affidavit is required.

Now, two years later, the retrial has been set for May 2008, and Mr. Carpenter looks forward to a successful resolution of this four-year long nightmare for himself and his family. This time, however, Mr. Carpenter implores the Court to exercise its just and sound discretion and transfer this case to a place wholly more convenient to the defendant—a venue where Mr. Carpenter's daughter, both of his elderly parents, his friends, and supporters can attend, virtually all of whom were unable to exercise their rights to attend Mr. Carpenter's public trial the first time in Boston due to the long distances and prohibitive costs involved.

Although the Court denied a similar motion made on the eve of the first trial, *see* Dkt. 05/17/05, there are substantial reasons for the Court to grant the motion this time around based on substantially changed circumstances (*i.e.*, having already faced one Boston trial and now having to endure another years later). First, the retrial is *six months away*. Second, the retrial has been delayed two years only because of the government's original appeal. Third, after the First Circuit's decision affirming this Court's new trial order was issued in July 2007, an additional *two-month* delay was caused by the government seeking and receiving not one but *two extensions* in which to petition the First Circuit for rehearing, *and then declining to do so*. Fourth, the defendant has already endured the stress, strain and expense of one Boston trial. And fifth, fairness and the interest of justice support this Court in exercising its just and sound discretion to transfer this case to the Hartford-Springfield Corridor.

## **ARGUMENT**

### A. **Legal Standard.**

The Court may transfer the case "for the convenience of the parties and witnesses and in the interest of justice." Fed. R. Crim. P. 21(b). The Supreme Court has delineated the following ten factors for consideration in evaluating a Rule 21(b) motion:

> (i) location of the defendant; (ii) location of possible witnesses; (iii) location of the events at issue; (iv) location of documents and records; (v) disruption of defendant's business; (vi) expense to the parties; (vii) location of counsel; (viii) relative accessibility of place of trial; (ix) docket condition of each district; and (x) any other special elements which might affect the transfer.

*Platt v. Minnesota Mining & Manufacturing Co.*, 376 U.S. 240, 243-44 (1964). Venue provisions "should, whenever possible, be construed so to permit trial at the residence of the defendant." *United States v. Cashin*, 281 F.2d 669, 675 (2d Cir. 1960). Courts have "liberally construed [Rule 21(b)] so as to minimize inconvenience to a defendant." *United States v. Benjamin*, 623 F. Supp. 1204, 1211 (D.D.C. 1985). Indeed, "[n]othing in Rule 21(b) or in the cases interpreting it place on the defendant seeking a change of venue the burden of establishing truly compelling circumstances for such a change. It is enough if, all relevant things considered, the case would be better off transferred to another district." *United States v. Coffee*, 113 F. Supp. 2d 751, 770 (E.D. Pa. 2000).[2]

### B. **Background.**

Mr. Carpenter lives and works in Simsbury, Connecticut, a small town located almost on the Massachusetts border in North-Central Connecticut that lies in the middle of the Hartford-Springfield Corridor.[3] All of the acts with which Mr. Carpenter was charged (i.e., investing the

---

[2] These principles are also consistent with the Venue Clause, U.S. CONST. art. III, § 2, cl. 3:
  The object of this clause is to secure the party accused from being dragged to a trial in some distant state, away from his friends, and witnesses, and neighborhood, and thus to be subjected to the verdict of mere strangers, who may feel no common sympathy, or who may even cherish animosities or prejudices against him. Besides this, a trial in a distant state or territory might subject the party to the most oppressive expenses, or perhaps even to the inability of procuring the proper witnesses to establish his innocence.
3 Joseph Story, *Commentaries On The Constitution* § 925 (Boston, Hilliard, Gray & Co. 1833).

[3] According to www.mapquest.com ("Mapquest"), the most popular mapping site on the internet, Simsbury is 29 miles (43 minutes) from the Springfield courthouse, 12 miles (25 minutes) from the Hartford courthouse, and 111 miles (two hours) from the Boston courthouse. However, during rush-hour the Springfield courthouse is closer to Simsbury (30 minutes) than the Hartford courthouse (at least 45 minutes). During rush-hour on the Massachusetts Turnpike, it normally takes Mr. Carpenter *3 ½ grueling hours each way* to drive between Simsbury and the Boston courthouse. "[T]he average speed of any driver on the Mass Pike inside of rt. 495 is less than a tortoise during rush hour." Posting of Becky to http://www.mikedidonato.com/ 2005/02/08/the-beep (Feb. 19, 2005, 07:53:33 EDT) (last visited December 14, 2007).

funds held by Benistar Property Exchange ("BPE") in stock options or reviewing BPE's promotional materials) occurred at Mr. Carpenter's office in Simsbury, not in Massachusetts and certainly not in Boston.  *See United States v. Carpenter*, 405 F. Supp. 2d 85, 94 (D. Mass. 2005), *aff'd in part, appeal dismissed in part*, 494 F.3d 13 (1st Cir. 2007), *petition for cert. filed*, 76 U.S.L.W. 3226 (U.S. Oct. 16, 2007) (No. 07-515) ("Carpenter stands farther back, both in time and proximity, from the critical events that are the gist of the charged offenses.  On the evidence, any acts by him that preceded any given mailing or wire transmission (and therefore could have caused the transmission) were confined to setting up of the Benistar Property Exchange Trust business with Paley.").[4]

Mr. Carpenter is about to become one of the very few Americans that will be forced to run the gauntlet defending himself in a federal criminal twice for the same charged offense.  The government was at "home" for the first contest; fundamental fairness dictates that Mr. Carpenter be at "home" for the second contest.  However, the Hartford-Springfield Corridor is also the government's "home."  *See United States v. Benjamin*, 623 F. Supp. 1204, 1212 (D.D.C. 1985) (the government "should be, 'at home'" any place "in which a federal court sits.").  Compounding the problem, though, is the fact that Mr. Carpenter is scheduled to confront the most harrowing experience of his life again in a courtroom far removed from his home—after having already been forced to expend substantial sums and be away from his family, friends, and home during the first trial in Boston.  It is not fair or necessary to force Mr. Carpenter to stand trial again so far from his home, which will result in him sleeping in a hotel room instead of his own bed, eating in restaurants instead of his own kitchen, and preparing his defense each evening during the trial in a hotel conference room instead of his own den, all far from his daughter,

---

[4]  BPE president Martin L. Paley ("Paley") testified that he drove to Simsbury on September 11, 1998, to have lunch with Mr. Carpenter, and it is then and there that they decided to form BPE.  Tr. 8:4; 8:5.  Paley also testified that Mr. Carpenter "wanted no involvement in the 1031 business" and just "handled the funds."  Tr. 8:8.

elderly parents, dogs, friends, supporters, community and religious groups. It is an incredibly difficult burden to stand trial even once, but it becomes impossibly difficult and burdensome to sustain such stress, strain, inconvenience, and expense twice in a city far removed from one's home, work, family, friends, and support network.

Furthermore, since it is undisputed that *all* of Mr. Carpenter's acts occurred in Simsbury, it is not unfair or unreasonable for the retrial of this case to occur in a location that is convenient for *both* the defendant and the government and which encompasses the location of the acts allegedly committed by the defendant.[5]

### C. *Platt* Factors Favor Transfer.

While the Court previously determined that the *Platt* factors did not necessitate a transfer of this matter, the circumstances surrounding this case have evolved to where eight of the ten *Platt* factors favor transfer. *See Coffee*, 113 F. Supp. 2d at 759 (granting transfer motion because six factors favor transfer, three factors are neutral, and one factor disfavors transfer).

Numerous courts have held that a criminal defendant should be tried in a court close to where the defendant lives. *See*, *e.g.*, *United States v. Russell*, 582 F. Supp. 660, 662 (S.D.N.Y. 1984) ("wherever possible, defendants should be tried where they reside"); *United States v. Kennedy*, 1986 WL 6227, at *1 (E.D. Pa. May 28, 1986) ("it is preferable to try a defendant in the district where he resides."); *United States v. Lenihan*, 19 F.3d 1430, 1994 WL 102149, at *4 (4th Cir. Mar. 29, 1994) (unpublished) (holding venue rights should be used to "safeguard against the unfairness and hardship involved when an accused is prosecuted in a remote place") (*quoting Platt*, 376 U.S. at 245); *United States v. Lima*, 1995 WL 348105, at *3 (N.D. Ill. Jun. 1,

---

[5] Due to the late 2000 stock market crash, the funds of several Exchangors totaling $9 million were lost at PaineWebber. After the first trial, BPE obtained a final judgment against PaineWebber for $14.2 million due to PaineWebber's mishandling of BPE's accounts. *See In re UBS PaineWebber, Inc.*, Index No. 600156/06 (N.Y. Commercial Div. Apr. 18, 2007).

1995) (ordering transfer and stating proposed venue "would cause less disruption to [defendant's] family life"). Indeed, several courts have found this factor to be the most important. *See United States v. Martino*, 2000 WL 1843233, at *6 (S.D.N.Y. Dec. 14, 2000) ("Most relevant here is the location of the defendant. Courts in this district have accorded greater weight to the defendant's interest in being tried in the district of his residence than to any other factor."); *United States v. Muratoski*, 413 F. Supp. 2d 8, 11 (D. N.H. 2005) ("Considering the *Platt* factors, it is of course a physical, emotional, and economic hardship for this defendant to face trial in New Hampshire, far from his home in Illinois . . . Defendants, ordinarily, should be tried where they reside.").

Nor should the fact that a trial date has been set for *six months* from now be an issue. *See United States v. Ferguson*, 432 F. Supp. 2d 559, 568 (E.D. Va. 2006) (transferring case on April 10, 2006, even though "the Court has set a firm date of May 22, 2006, for trial."). In *Ferguson*, the transfer motions were filed on or about March 1, 2006—only *two months* before trial. Here, trial is six months away and Mr. Carpenter's petition for a writ of certiorari is currently pending in the United States Supreme Court.[6] In *Ferguson*, defendants (all but one of whom resided in Connecticut) were successful in having their mail, wire, and securities fraud trial transferred to Connecticut. "[T]he Court finds that Defendants have shown that adjudicating this case in the Eastern District of Virginia will result in a 'substantial balance of inconvenience' because three (3) out of the four (4) Defendants reside closer to the Connecticut courthouse than to the Alexandria courthouse." *Ferguson*, 432 F. Supp. 2d at 563-64. Mr. Carpenter obviously lives

---

[6] *See Carpenter v. United States*, 76 U.S.L.W. 3226 (U.S. Oct. 16, 2007) (No. 07-515). The National Association of Criminal Defense Lawyers ("NACDL") has filed an *amicus* brief supporting grant of the writ, one of the few times the NACDL has intervened in a case at the certiorari stage since *Arthur Andersen, LLP v. United States*, 544 U.S. 696 (2005). *See* Brief of *Amicus Curiae* NACDL, No. 04-368, 2004 WL 2812101 (Dec. 8, 2004). Moreover, as in the First Circuit, the government has sought its *second* extension in which to file its opposition to approximately January 21, 2008. Based on the Supreme Court's case distribution schedule, the petition will now likely be heard at the February 15, 22, or 29, 2008 conferences, meaning that it will be mid-to-late February before it is known whether certiorari has been granted.

much closer to the federal courthouses in the Hartford-Springfield Corridor than he does to the Boston courthouse. "As the crow flies," the Boston courthouse is *three times* as far as the Springfield courthouse and *ten times* as far as the Hartford courthouse. In actuality, during rush-hour, the travel times are much worse.

     Mr. Carpenter has had particularly close ties and connections to the Hartford-Springfield Corridor his entire life, which continue to the present day. Mr. Carpenter was born in Canton, Connecticut. Mr. Carpenter resides in Simsbury with his wife (Molly) and his daughter (Caroline). Mr. Carpenter attended secondary school at Avon Old Farms School in Avon, Connecticut, and after attending Bowdoin College in Maine, he returned to Connecticut to attend law school at the University of Connecticut in Hartford. Mr. Carpenter's elderly parents, Edgar (89) and Constance (86), still reside in Canton, Connecticut, only 5 miles (10 minutes) from Mr. Carpenter's home, and primarily rely on Mr. Carpenter for their care and comfort. *See United States v. Hanley*, 1995 WL 60019, at *2 (S.D.N.Y. 1995) (transferring case so defendant could be closer to his wife and child, and provide care for elderly mother). Mr. Carpenter's daughter (Caroline) attends Trinity College in downtown Hartford. Mr. Carpenter's business and offices are located in Simsbury. Mr. Carpenter worships in Simsbury and participates in numerous civic, charitable, educational, and youth activities in Simsbury and the surrounding area. In sum, *all* of Mr. Carpenter's business, personal, family, civic, religious, philanthropic, and community ties and connections are in the Hartford-Springfield Corridor. By contrast, Mr. Carpenter has no ties or connections whatsoever to the Boston area.

     Furthermore, Mr. Carpenter's wife (Molly) serves as chairman of an 80-employee company based in Simsbury, and it would be physically impossible for her to effectively discharge her managerial duties, attend Mr. Carpenter's trial each day in Boston, and somehow

also manage to take care of the Carpenter household (which includes several dogs). Additionally, the Carpenters' only child (Caroline), who attends Trinity College in downtown Hartford, would be unable to attend Mr. Carpenter's trial should it occur in Boston in May 2008 (but would be able to attend a May 2008 trial in the Hartford-Springfield Corridor). Finally, Mr. Carpenter's elderly parents could attend a trial in the Hartford-Springfield Corridor, but would be physically unable to attend a Boston trial. In fact, it was precisely because of the long distances to Boston that Mr. Carpenter's parents were unable to attend the first trial. *See United States v. Valdes*, 2006 WL 738403, at *4 (S.D.N.Y. Mar. 21, 2006) ("[F]amily obligations, including the care of children, militate in favor of transferring proceedings to the district in which a defendant resides.").

Moreover, the length and strain of the rush-hour commute between Simsbury and Boston would require Mr. Carpenter and his wife to stay in a Boston hotel and incur substantial expense during this estimated three-week trial (as was required during the first trial). "The United States of America has, for all practical purposes, unlimited financial resources to bring to bear. Unlike [Mr. Carpenter], the Government can, and does, mint money." *Coffee*, 113 F. Supp. 2d at 757. "Here, the government is in a better position to bear the additional expense [if any] of trying the case in [the Hartford-Springfield Corridor]." *Ferguson*, 432 F. Supp. 2d at 567-68.

By contrast, a trial in the Hartford-Springfield Corridor would permit Mr. Carpenter to return home each night, avoid the expense of a lengthy stay in a Boston hotel and the cost of boarding several dogs, receive the daily support and comfort of his family, friends, dogs, and supporters, and in turn provide comfort and support to his wife, daughter, and elderly parents during this ordeal. *See Kennedy*, 1986 WL 6227, at *1 ("If defendant were to be tried in [Boston] he would be forced to choose between the burden of daily commuting or obtaining

8

accommodations in [Boston] throughout the duration of the trial . . . A similar choice confronts the defendant's wife and children who could not otherwise attend the trial and offer emotional support to the defendant . . . This factor clearly favors transfer . . .").

Finally, other than the location of witnesses and the location of counsel, the remaining *Platt* factors favor transfer. *See* Dkt. Nos. 66, 71 and 75, which are expressly incorporated herein by reference (analyzing remaining *Platt* factors).[7]

## CONCLUSION

It is not easy to defend oneself in a Federal criminal trial once, much less twice. Mr. Carpenter and his family have been in a state of uncertainty and anxiety since December 2000, when BPE collapsed with the stock market. Mr. Carpenter respectfully suggests that it would be fair and consistent with the interests of justice if the second trial occurred in a courthouse close in proximity to Mr. Carpenter's home and support network. Based on the foregoing, Mr. Carpenter implores this Court, in the just exercise of its sound discretion, to transfer this retrial to the Hartford-Springfield Corridor.[8]

## LOCAL RULE 7.1(A)(2) STATEMENT

Mr. Carpenter's counsel has conferred with Jonathan Mitchell, AUSA, in a good faith but unsuccessful attempt to resolve or narrow the issue.

---

[7] For example, among the most important *Platt* factors is the disruption of defendant's business. If the case is transferred, Mr. Carpenter will be able to maintain daily "hands-on" management of his business activities during weekdays and weekends, even while on trial. *See Muratoski*, 413 F. Supp. 2d at 11 ("likely loss of income and/or employment if [defendant] were tried in this district is another factor that counsels in favor of transfer.").

[8] Springfield is the preferred venue because the rush-hour commute to the Springfield courthouse from Simsbury is shorter than the same commute to the Hartford courthouse (and is much less hectic because Route 10 to Springfield winds its way through the farms of Simsbury and Granby, CT). The Columbus Center Parking Garage is next door to the Springfield courthouse and the two buildings are connected by an airwalk. However, there are no garages or other convenient parking facilities near the Hartford courthouse, where parking problems are so acute that the court warns jurors not to park on the street at risk of being towed.

**VERIFICATION**

I verify under penalty of perjury that the foregoing factual averments contained herein are true and correct. Executed pursuant to 28 U.S.C. § 1746(2) on December 17, 2007.

/s/ Daniel E. Carpenter
Daniel E. Carpenter

Respectfully submitted,
DANIEL E. CARPENTER,
By his attorneys,

/s/ Robert M. Goldstein
Robert M. Goldstein, Esq.
(BBO #630584)
20 Park Plaza, Suite 903
Boston, MA 02116
(617) 742-9015
rmg@goldstein-lawfirm.com

Jack E. Robinson
Jack E. Robinson, Esq.
(BBO #559683)
2187 Atlantic Street, Suite 905
Stamford, CT 06902
(203) 425-4500
Robinsonesq@aol.com

Dated: December 17, 2007

**CERTIFICATE OF SERVICE**

I hereby certify that this document filed through the ECF system on the date hereof will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Jack E. Robinson
Jack E. Robinson