UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Eastern Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10029-GAO |
| | ) | |
| DANIEL E. CARPENTER | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS THE SUPERSEDING INDICTMENT *WITH* PREJUDICE FOR VIOLATIONS OF THE SPEEDY TRIAL ACT**

**INTRODUCTION**

Defendant Daniel E. Carpenter, by his undersigned counsel, hereby moves to dismiss the superseding indictment *with* prejudice for at least four separate violations of the Speedy Trial Act of 1974, as amended, 18 U.S.C. §§ 3161-3174 ("STA" or the "Act").  The violations include: (i) due to the government's ill-advised and dilatory interlocutory appeal of this Court's new trial order, more than 70 non-excludable days have elapsed since Mr. Carpenter's arraignment *four years ago*; and (ii) the continuance granted at the November 26, 2007 status conference did not toll the STA clock due to the lack of explicit on-the-record findings as required by 18 U.S.C. § 3161(h)(8)(A) and *Zedner v. United States*, 126 S. Ct. 1976 (2006), resulting in more than *another* 70 non-excludable days having elapsed since the government's interlocutory appeal became final in September 2007.

As a result of these (and at least two other) violations of the STA in this case, the superseding indictment must be dismissed pursuant to 18 U.S.C. § 3162(a)(2).  Due to the circumstances attendant to the delay—all of which are of the government's own doing—all charges against Mr. Carpenter should be dismissed *with* prejudice. [1]

---

[1]  On June 13, 2005, Mr. Carpenter filed a motion to dismiss (Dkt. #79) on different STA grounds than those advanced herein, which was denied by the Court on June 30, 2005.  That prior motion is expressly incorporated herein by reference and constitutes the fourth STA violation and basis upon which to dismiss the superseding indictment.

## BACKGROUND

Mr. Carpenter was charged in a February 2004 indictment (Dkt. #1) with 19 counts of mail and wire fraud.  A superseding indictment charging the exact same offenses was returned in September 2004.  Dkt. #34.  On November 17, 2004, pursuant to a joint motion for excludable delay (Dkt. #46), the government clearly admitted and stipulated that "thirty-eight days of non-excludable time will have elapsed under the Speedy Trial Act at the time that trial commences in this matter."  *Id.* at 2.  By electronic order dated May 17, 2005, the Court granted the government's motion for excludable delay (Dkt. #68) to exclude additional time up through and including the trial date of July 11, 2005.  Consequently, as of the commencement of the trial, the government has conceded that **38 days** of non-excludable time had run off the STA clock.

A jury returned a guilty verdict on all charges against Mr. Carpenter on July 27, 2005.  Dkt. #149.  On December 15, 2005, this Court denied Mr. Carpenter's motion for judgment of acquittal but granted Mr. Carpenter's motion for a new trial and vacated the guilty verdict.  Dkt. #192.  *See United States v. Carpenter*, 405 F. Supp. 2d 85 (D. Mass. 2005).  On January 9, 2006, the government filed an interlocutory appeal of this Court's new trial order pursuant to 18 U.S.C. § 3731 (Dkt. #195), and Mr. Carpenter cross-appealed both the denial of his motion for judgment of acquittal and the denial of his motion for reconsideration thereof.  Dkt. #198, #201.  No additional time ran off the STA clock between the Court's new trial decision and the government's interlocutory appeal because Mr. Carpenter had other *post-trial* motions pending at the time (Dkt. #189, #193), which were subsequently denied as moot.  *See* 18 U.S.C. § 3161(h)(1)(J) (excluding up to 30 days of delay "during which any proceeding concerning the defendant is actually under advisement by the court.").  Thus, at the time of the government's interlocutory appeal, **38 days** had

run off the STA clock. Once the government filed its interlocutory appeal, the STA clock stopped.

18 U.S.C. § 3161(h)(1)(E).

In July 2007, the First Circuit affirmed this Court's new trial order and dismissed Mr.

Carpenter's cross-appeal for lack of appellate jurisdiction. *See United States v. Carpenter*, 494 F.3d

13 (1st Cir. 2007). The government then sought not one, but two extensions in which to petition the

First Circuit for rehearing en banc, but after two additional months of delay the government

ultimately decided not to seek rehearing. On Friday, September 28, 2007, the First Circuit issued its

mandate under Fed. R. App. P. 41.[2] Pursuant to Fed. R. App. P. 41(c), the mandate became

effective when it was issued—Friday, September 28, 2007. Consequently, the STA clock, *on which*

*38 days had already elapsed prior to the government's interlocutory appeal*, resumed running on

the following day, Saturday, September 29, 2007. As a result, the 70-day period expired on

**October 30, 2007**—almost an entire month *before* the November 26, 2007 status conference.[3]

Assuming, *arguendo*, that the STA clock reset to zero after the government's interlocutory

appeal, the STA still has been violated. After the issuance/receipt of the First Circuit's mandate,

this Court scheduled a status conference for November 26, 2007. Thus, by the time of the

November 26 status conference, a separate **59 days** had run off the STA clock. After the status

conference had concluded, and as an after-thought by AUSA Mitchell, the Court granted a

continuance to May 5, 2008 at the government's behest, but *without* making any oral or written on-

---

[2] *See* First Circuit case number 06-1373 (government's interlocutory appeal), 06-1374 (Mr. Carpenter's cross-appeal from the denial of his motion for judgment of acquittal), and 06-1488 (Mr. Carpenter's appeal of the denial of his motion for reconsideration).

[3] The mandate in all three appeals was *issued* by the First Circuit on September 28, 2007, but was not entered on the district court's docket until October 2, 2007. Dkt. #220, #221. While there is conflicting authority among the Circuits—and even within the First Circuit—as to whether the *issuance* or the *receipt* of the mandate triggers the STA clock, *compare United States v. Joost*, 133 F.3d 125, 130 (1st Cir. 1998) (issuance), with *United States v. Ferris*, 751 F.2d 436, 438-39 (1st Cir. 1984) (receipt), that conflict has no bearing here because even if the later date is utilized, the STA clock expired on November 3, 2007 instead of October 30, 2007. However, because the majority rule is that the date of the mandate's *issuance* controls, that is the date used in the calculations herein.

the-record findings as required by 18 U.S.C. § 3161(h)(8)(A), *Zedner*, and the U.S. Attorney's

Criminal Resource Manual § 628.    Nor was Mr. Carpenter's assent to the continuance obtained,

even though he was present in the courtroom at the time.  The lack of explicit on-the-record

findings had the effect of *not* tolling the STA clock.  Mr. Carpenter then filed a motion to transfer

venue on December 17, 2007 (Dkt. #223), thereby stopping the STA clock, *see* 18 U.S.C. §

3161(h)(1)(F), **80 days** after any alleged "fresh clock" had begun to run.  Because the continuance

did not include any explicit on-the-record findings as required by 18 U.S.C. § 3161(h)(8)(A) and

*Zedner*, the STA clock expired, yet at least once again, on **December 7, 2007**.

     As stated above, this is the fourth separate violation of the STA in this case.  Therefore, the

law demands that Mr. Carpenter's superseding indictment be dismissed *with* prejudice.  The

following tables contain a chronology of the relevant docket entries:

**A.    STA Clock Does *Not* Reset To Zero After Interlocutory Appeal.**

| Date | Action | Speedy Trial Days | |
|---|---|---|---|
| Jul 11, 2005 | Trial begins, STA clock stops[4] | By stipulation (Dkt. #46) | 38 |
| Sep 28, 2007 | First Circuit mandate issued | Jul 11, 2005– Sep 28, 2007 | 38 |
| Sep 29, 2007 | STA clock resumes | Sep 28, 2007– Sep 29, 2007 | 39 |
| **Oct 30, 2007** | **STA clock expires** | **Sep 29, 2007– Oct 30, 2007** | **70** |
| Nov 26, 2007 | Status conference; continuance granted to May 5, 2008 | Oct 30, 2007– Nov 26, 2007 | 97 |
| Dec 17, 2007 | Carpenter files motion to transfer venue; STA clock stops (18 U.S.C. § 3161(h)(1)(F)) | Nov 26, 2007– Dec 17, 2007 | 118 |

---

[4]  Although jury selection occurred on July 11, 2005, the jury was not empanelled and sworn until the next day—July 12, 2005. Dkt. at 07/12/2005. Because "the STA clock was tolled upon the *empanelment* of the trial jury," *United States v. Reynoso*, 336 F.3d 46, 48 (1st Cir. 2003) (emphasis added), technically a total of *39* non-excludable days had elapsed before the STA clock stopped on account of the trial. However, because the government has stipulated that 38 days had run off the clock by this time, and the additional day has no bearing on the STA analysis, the 38-day number is used in the calculations herein.

**B.**    **STA Clock *Hypothetically* Reset To Zero After Interlocutory Appeal.**

| Date | Action | Speedy Trial Days | |
|------|--------|-------------------|---|
| Sep 28, 2007 | First Circuit mandate issued | | 0 |
| Sep 29, 2007 | STA "fresh clock" starts | Sep 28, 2007– Sep 29, 2007 | 1 |
| Nov 26, 2007 | Status conference; continuance granted to May 5, 2008 | Sep 29, 2007– Nov 26, 2007 | 59 |
| **Dec 7, 2007** | **STA clock expires** | **Nov 26, 2007– Dec 7, 2007** | **70** |
| Dec 17, 2007 | Carpenter files motion to transfer venue; STA clock stops (18 U.S.C. § 3161(h)(1)(F)) | Dec 7, 2007– Dec 17, 2007 | 80 |

## ARGUMENT

"[T]he Speedy Trial Act comprehensively regulates the time within which a trial must begin." *Zedner*, 126 S. Ct. at 1985. Among other things, one of the purposes of the Act is "to quantify and make effective the Sixth Amendment right to a speedy trial." *Henderson v. United States*, 476 U.S. 321, 333 (1986) (White, J., dissenting) (internal citations omitted). *See also United States v. Hastings*, 847 F.2d 920, 923 (1st Cir. 1988) ("justice delayed is justice denied."). "*[T]he onus is not on the Defendant* to ensure that the government or court comply with the STA's provisions." *United States v. Gomez-Olmeda*, 296 F. Supp. 2d 71, 77 (D. P.R. 2003) (emphasis added). "Providing a defendant with a speedy trial . . . is the responsibility of the government and the court, not of defense counsel." *United States v. Doran*, 882 F.2d 1511, 1517 (10th Cir. 1989). *See also Barker v. Wingo*, 407 U.S. 514, 527 (1972) ("a defendant has no duty to bring himself to trial.").

A defendant must be brought to trial within 70 days of indictment or arraignment, whichever is later. 18 U.S.C. § 3161(c)(1). "The sanction for failure to adhere to this time limit is severe—the indictment is dismissed on motion of the defendant." *United States v. Barnes*, 159 F.3d 4, 9 (1st Cir. 1998). *See* 18 U.S.C. § 3162(a)(2). The Act automatically excludes numerous kinds of pre-trial delays from the 70-day limit, 18 U.S.C. § 3161(h)(1)-(7), including "delay resulting from any

interlocutory appeal." 18 U.S.C. § 3161(h)(1)(E). The Act also grants district courts flexibility to exclude other delays, including delays granted at the request of the parties, but *only* if the district court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice . . . outweigh the best interests of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(8)(A). This is known as an "ends-of-justice" exclusion.

### I.    The STA Clock Does *Not* Reset To Zero After An Interlocutory Appeal.

Because the government has previously stipulated that 38 non-excludable days had already run off the STA clock by the time the trial began (July 11, 2005), it necessarily follows that the superseding indictment must be dismissed if the STA clock does *not* reset to zero after an interlocutory appeal—because the 70-day period otherwise expired on October 30, 2007. Dismissal of the superseding indictment in this case is required because the Act and all known precedent provide that an interlocutory appeal *interrupts, but does not restart*, the 70-day period.

In *United States v. Pitner*, 307 F.3d 1178 (9th Cir. 2002), Pitner was tried and convicted on some counts, the district court declared a mistrial as to other counts, and the grand jury subsequently issued a superseding indictment. Pitner then challenged the new indictment on double jeopardy grounds and, when that challenge was rejected by the district court, Pitner took an interlocutory appeal to the Ninth Circuit. After the Ninth Circuit dismissed Pitner's interlocutory appeal for lack of jurisdiction, and denied Pitner's petition for rehearing en banc, the Ninth Circuit's mandate was issued and "[t]he district court and Pitner's attorney began counting the 70-day Speedy Trial clock on this day for the second trial." *Id.* at 1181. Following a status conference and prior to the second trial, in which Pitner was ultimately convicted, Pitner filed a motion to dismiss on STA grounds which the district court denied. On appeal, the Ninth Circuit ordered the dismissal

of the superseding indictment, ruling that the STA had been violated because it was a mistake for

the district court and Pitner's attorney to have started a "fresh clock" after the interlocutory appeal:

> The parties and the district court in this case labored under a misconception regarding the effect of Pitner's interlocutory appeal on the calculation of his Speedy Trial Act deadline. They assumed that, at the conclusion of the appeal, a new 70-day period began. The Act and our precedent are to the contrary.

*Id.* at 1182.  "The effect of this interlocutory appeal was to *interrupt*, not to restart, the running of

the 70-day clock."  *Id.* (emphasis in original).  "Interlocutory appeals interrupt the seventy day

period; they do not start it running."  *United States v. Crooks*, 804 F.2d 1441, 1445 (9th Cir. 1986),

*modified on reh'g*, 826 F.2d 4 (9th Cir. 1987).  *See also Ferris*, 751 F.2d at 441 ("For the purposes

of a Speedy Trial Act calculation, the clock stopped running until the interlocutory appeals had been

resolved.").

In *United States v. Dessesaure*, 2007 WL 4404118 (D. Mass. Nov. 21, 2007), *appeal*

*docketed*, No. 08-1029 (1st Cir. Jan. 4, 2008), the defendant's motion to suppress was granted by

the district court (Gertner, J.) and the government took an interlocutory appeal.  The First Circuit

reversed, denied en banc review, and issued its mandate on March 7, 2006.  "Nothing further

happened in this case until June 6, 2006, three months later."  *Id.* at *2.  At a June 29, 2006 status

conference, the government conceded that a violation of the STA had occurred, but urged dismissal

without prejudice.  In finding that the STA had been violated and dismissing the indictment *with*

prejudice, Judge Gertner noted that "the government fails to include the non-excludable days *that*

*accrued prior to the government's appeal*."  *Id.* at *3 (emphasis added).  Section 3161(h)(1)(E)

provides that delay resulting from interlocutory appeals "is excluded from the STA calculation, to

be sure, *but the clock is not reset to day one*."  *Id.* (emphasis added).  *See also United States v.*

*Winston*, 492 F. Supp. 2d 15 (D. Mass. 2007), *appeal dismissed*, No. 07-2090 (1st Cir. Sep. 21,

2007) (Ponsor, J.) (dismissing indictment because more than 70 non-excludable days had elapsed *including* 24 days that had run *before* the government's interlocutory appeal).[5]

After an interlocutory appeal becomes final, the STA clock resumes running from where it was at the time of the appeal. The reason for this rule is obvious. If a "fresh clock" were to begin after each interlocutory appeal, the government could easily circumvent the limitations of the STA by filing interlocutory appeals *seriatim* challenging a district court's dismissal orders, new trial orders, suppression orders, seizure orders and/or bail orders. *See* 18 U.S.C. § 3731. When the government decided to take an interlocutory appeal of this Court's new trial order, it inherited the STA clock that existed at the time of the appeal (38 non-excludable days having elapsed). Once the interlocutory appeal became final (upon issuance of the First Circuit's mandate), the government did not receive a "fresh clock." Since only 32 non-excludable days remained on the STA clock after the issuance of the mandate, the STA clock expired on October 30, 2007. Because the government thoroughly failed to monitor the case post-appeal, the government has only itself to blame now that the STA has been violated and the case must be dismissed. *See United States v. Dusenberry*, 246 F. Supp. 2d 802, 803 (N.D. Ohio 2002), *aff'd*, 78 Fed. App'x 443 (6th Cir. 2003), *cert. denied*, 541 U.S. 951 (2004) ("the government [should] timely apprise the Court of the status of Dusenberry's appeals . . . so that the Court may remain knowledgeable about the speedy trial

---

[5] In *Winston*, the parties and the district court both assumed (incorrectly) that the STA clock was tolled during the time in which Winston sought a petition for certiorari in the Supreme Court in relation to a successful interlocutory appeal *by the government*, even though the First Circuit's mandate—which revested jurisdiction in the district court and triggered the STA clock—had been issued. *Id.* at 17. Here, the government's interlocutory appeal was *unsuccessful* and the First Circuit issued its mandate with respect to both the government's appeal and Mr. Carpenter's cross-appeal on September 28, 2007. Moreover, although Mr. Carpenter filed a petition for certiorari in the Supreme Court on October 16, 2007 which remains pending (No. 07-515), he petitioned for certiorari *only* with respect to his cross-appeal of the denial of his motion for judgment of acquittal. Certiorari was *not* sought with respect to the First Circuit's affirmance of this Court's new trial order, which became a final order on the date the mandate was issued and regarding which *no further appeal or cross-petition for certiorari was filed by the government*. Consequently, for purposes of the STA calculation regarding the government's interlocutory appeal, Mr. Carpenter's certiorari petition on his cross-appeal has no effect.

calculation."); *United States v. Pomales-Lebrón*, 2008 WL 152092, *6 (1st Cir. Jan. 17, 2008)

("The government compounded the problem by obviously failing to review the record.").

Under 18 U.S.C. § 3161(e), the government receives a fresh 70-day clock "[i]f the defendant

is to be tried again following a declaration by the trial judge of a mistrial or following an order of

such judge for a new trial . . . [or] [i]f the defendant is to be tried again following an appeal or a

collateral attack."  18 U.S.C. § 3161(e).  However, this section does not apply to *interlocutory*

appeals, which are governed by § 3161(h)(1)(E), but only to appeals from a *final* judgment (*i.e.*,

conviction):

> this language [§ 3161(e)] is designed for situations when an appeal or collateral attack has
> caused a retrial.  It is not suited for application to interlocutory appeals . . . the crucial
> sentence of § 3161(e) must be read as applying only to retrial occasioned by a decision on
> appeal (or collateral attack).

*Pitner*, 307 F.3d at 1184, 1185.  *See also United States v. Kington*, 875 F.2d 1091, 1108-09 (5th

Cir.), *reh'g denied*, 878 F.2d 815 (5th Cir. 1989) ("Some appeals occasioning a retrial—such as a

defendant's successful appeal from a *final conviction*—are not interlocutory and must obviously be

treated under § 3161(e).") (emphasis added); *United States v. Rivera*, 844 F.2d 916, 919 (2d Cir.

1988) ("In a case where the *appellate court orders a new trial after conviction*, it is the appeal that

constitutes 'the action occasioning the retrial,' and the 70-day period begins to run, according to §

3161(e), on the date the appeal becomes final.") (emphasis added); *United States v. Mack*, 669 F.2d

28, 32 (1st Cir. 1982) ("It is true that the phrase in § [3161](e), 'if the defendant is to be tried again

following an appeal or collateral attack,' *assumes conviction after trial*.") (emphasis added).[6]

---

[6]  There was no conviction in this case because this Court's new trial order vacated the jury's guilty verdict, resulting in
neither a sentence nor a judgment.  *See* Fed. R. Crim. P. 32(k)(1) ("In the judgment of conviction, the court must set
forth the plea, the jury verdict or the court's findings, the adjudication, and the sentence."); *Berman v. United States*,
302 U.S. 211, 212 (1937) ("[f]inal judgment in a criminal case means sentence.  The sentence is the judgment.")
(citations omitted).

Because there was neither a conviction after trial nor a judgment in this case, the "fresh clock" provisions of § 3161(e) are inapplicable. They apply *only* when the appeal or collateral attack has caused the retrial *after conviction*, or a new trial is ordered by the district court from which there is no interlocutory appeal by the government. However, once there is an interlocutory appeal, as here, the provisions of § 3161(h)(1)(E) control and the existing 70-day clock remains in place after the appeal becomes final. "[A]n interlocutory appeal after a [new trial] only *interrupts* the running of the Speedy Trial clock for the retrial; it does not restart the clock." *Pitner*, 307 F.3d at 1183 (emphasis added).

The government has stipulated that 38 days had already run off the STA clock *before* the government took its interlocutory appeal. Because an interlocutory appeal does not reset the STA clock to zero, and because the government failed to inform the Court that a November 26, 2007 status conference would put the temporal posture of the case well beyond the 70-day limit, the STA clearly has been violated. As a result, all charges against Mr. Carpenter must be dismissed.

## II.    Even If The STA Clock *Hypothetically* Resets To Zero After An Interlocutory Appeal, There Was No Excludable Delay Due To A Continuance Which Lacked Explicit On-The-Record Findings.

Assuming, *arguendo*, that the STA clock resets to zero after an interlocutory appeal, the STA still has been violated in this case because the continuance granted at the November 26, 2007 status conference did not toll the STA clock.

At the November 26 status conference, the parties parried back and forth as to when they would prefer trial. Mr. Carpenter generally sought a trial date in the summer of 2008, whereas the government pushed for a trial in the Spring of 2008. The Court eventually settled on a trial date of May 5, 2008. After the status conference had ended and all counsel were leaving their respective counsel tables, and solely as a last minute after-thought, the government raised the STA issue.

There was no formal (even oral) motion by the government, just a cursory statement: "Your Honor, the Speedy Trial Act?" 11/26/07 Tr. at 11. Without making any explicit oral or written findings on the record, the Court stated simply: "Yeah. We will exclude the time." *Id.* This was the full extent of the STA discussion and analysis.[7]

Not only did the Court not refer to the Act's ends-of-justice provision in granting the continuance, no findings (explicit or otherwise) were made or alluded to. Most importantly, Mr. Carpenter's assent was not obtained, even though he was present in the courtroom at the time.

The Act requires that no ends-of-justice continuance may be granted unless the district court "sets forth, in the record of the case, either orally or in writing, its reasons for finding that the ends of justice" are served and that such reasons outweigh other interests. 18 U.S.C. § 3161(h)(8)(A). "[I]f a judge fails to make the requisite findings regarding the need for an ends-of-justice continuance, the delay resulting from the continuance must be counted, and if as a result the trial does not begin on time, the indictment or information must be dismissed." *Zedner*, 126 S. Ct. at 1989. In other words, "without on-the-record findings, there can be no exclusion under § 3161(h)(8)." *Id. See also United States v. Gardner*, 488 F.3d 700, 718 (6th Cir. 2007) ("If the court does not provide properly explainable reasons, the resulting delay is not excludable.").

Although ends-of-justice findings "may be entered on the record after the fact, *they may not be made after the fact*." *United States v. Apperson*, 441 F.3d 1162, 1180 (10th Cir. 2006), *cert. denied*, 127 S. Ct. 1003 (2007) (emphasis added). "[I]t must be clear from the record that the trial court struck the proper balance when it granted the continuance." *United States v. Spring*, 80 F.3d 1450, 1456 (10th Cir. 1996) (internal quotations omitted). Although "[t]he best practice, of course,

---

[7] The sanction of dismissal *with* prejudice for violation of the STA "gives the prosecution a powerful incentive to be careful about compliance." *Zedner*, 126 S. Ct. at 1984. The government's lackadaisical attitude towards the STA's requirements in this case—raising STA issues literally after the status conference had already concluded—support dismissal of the indictment *with* prejudice as a cautionary lesson to the government that the STA's provisions require strict adherence.

is for a district court to put its findings on the record at or near the time when it grants the

continuance," *Zedner*, 126 S. Ct. at 1989, n.7, "[t]he balancing must occur contemporaneously with

the granting of the continuance because Congress intended that the decision to grant an ends-of-

justice continuance be prospective, not retroactive." *Apperson*, 441 F.3d at 1180. *See also United*

*States v. Shanahan*, 2007 WL 2332727, at \*5 (D. N.H. Aug. 15, 2007) (unpublished)  ("I decline to

rewrite history by now classifying my February 15 scheduling order as an ends-of-justice

continuance.  With this period running against the speedy trial clock, I conclude that more than

seventy non-excluded days have accrued since the date occasioning a mistrial, and accordingly the

superseding indictment must be dismissed.").[8]

"The district court's [November 26] order does not contain any findings.  Instead, it

summarily reschedules the jury trial to [May 5, 2008] and excludes the period of time occasioned by

this delay . . . We cannot conclude on this record that the district court considered the proper factors

at the time it granted the continuance." *United States v. Williams*, 2007 WL 4443224, at \*9 (10th

Cir. Dec. 20, 2007) (dismissing indictment for STA violation) (internal quotations omitted).  "The

district court's statements – that the jury trial is continued and the intervening period is excluded

under § 3161(h)(8)(A) – fall woefully short of the Act's requirements.  The record is silent

regarding whether the district court considered the relevant factors at the time it granted the

continuance." *Id.*  In fact, as here, "the Court failed to cite the Act's ends-of-justice provision." *Id.*

at \*10.  Because the record is completely devoid of any ends-of-justice requests by the government

or findings by the Court, either oral or written, the continuance "cannot be justified under the Act,

and the time periods covered by them are not excludable." *Id.*

---

[8]  While the relevant docket entry in this case, *made on the following day*, states that "[a]ll time between 11/26/07 and 5/5/08 is excluded in the interest of justice," Dkt. at 11/26/07, no "interest of justice" findings were made on the record.

Here, the government failed to request, and the Court did not make, oral or written findings

with respect to granting an ends-of-justice continuance to May 5, 2008. Nor was there any

balancing of the countervailing interests underlying the Act. "After *Zedner*, the ends-of-justice

exception cannot support exclusion of the [162] days from [November 26, 2007] through [May 5,

2008]." *United States v. Sanders*, 485 F.3d 654, 659 (D.C. Cir. 2007). This is especially so where,

as here, as of the November 26 status conference the government had not moved for a continuance

or the setting of an actual trial date. *See United States v. Barnes*, 159 F.3d 4, 13 (1st Cir. 1998)

("Although we have held that there is no need to articulate the basic facts critical to a motion for a

continuance *when they are set forth in the motion papers*, . . . here, no one moved to continue the

trial.") (emphasis added). Because the government failed to file a motion, there was no objective

basis upon which the Court could have balanced the relevant factors in granting the continuance. In

fact, this case is exactly like *Zedner*, where the district court "made no mention of the Act and did

not make any findings to support exclusion." *Zedner*, 126 S. Ct. at 1982.

Because it is undisputed that the government did not request, and the Court did not make,

any explicit on-the-record findings when the continuance to May 5, 2008 was granted, the period

covered by the continuance (162 days) is *not* excluded under the STA, thereby causing the 70-day

STA clock to have expired on December 7, 2007. As a result, all charges against Mr. Carpenter

must be dismissed.

III.    **Aside From The Government's Stipulation That 38 Days Had Elapsed Prior To Trial, In Actuality The STA Clock Expired In November 2004—*Eight Months Before Trial*.**

In light of the government's admissions contained in its opposition (Dkt. #96) to Mr.

Carpenter's previous motion to dismiss on STA grounds (Dkt. #79), **77 days** ran off the STA clock

as of **November 16, 2004**—one day prior to the filing of the parties' joint motion to continue the

trial.  Dkt. #45.

> a.          **Through July 8, 2004: 13 Days Elapsed**

"[T]he government agrees that **13 days** had elapsed off the clock as of the status conference

that took place before Magistrate Judge Cohen on July 8, 2004."  Dkt. #96 at 1-2 (emphasis in

original).

> b.          **May 6, 2004 Motion to Dismiss Has No STA Effect**

While a motion to dismiss was filed on May 6, 2004 (Dkt. #13), that motion was signed and

filed by Evan Georgopoulos, Esq. of Mr. Carpenter's former law firm of Greenberg Traurig LLP.

While the filing of such a motion would normally stop the clock pursuant to 18 U.S.C. §

3161(h)(1)(F), this motion did *not* stop the clock because Attorney Georgopoulos did not file his

appearance until May 13, 2004 (Dkt. #15)—one week later.

Consequently, the motion is a nullity as far as the STA clock is concerned because it was

signed and filed by an attorney who had not, at the time of filing, appeared in the case.[9]  *See* Fed. R.

Crim. P. 49(d) ("A paper must be filed in a manner provided for in a civil action"); Fed. R. Civ. P.

11(a) ("Every pleading, written motion, and other paper shall be signed by *at least one attorney of*

*record* in the attorneys' individual name") (emphasis added); D. Mass. L.R. 83.5.2 ("All other

appearances in a case shall be made by filing a notice of appearance . . .").  Thus, the STA clock did

not stop by virtue of the May 6, 2004 motion to dismiss.

> c.          **Magistrate Judge Cohen's July 9, 2004 Order Is A Nullity**

Former Magistrate Judge Cohen attempted *three times* to enter electronically an Order of

Excludable Time and Final Status Report dated July 9, 2004, excluding time through September 10,

---

[9]  Attorney Pappalardo filed a hand-written appearance *solely in his own name* at the arraignment.  Dkt. #6.  The
appearance filed by Attorney Georgopoulos on May 13, 2004 confirms this fact, because that document enters "the
appearance of Evan Georgopoulos *and the law firm of Greenberg Traurig LLP*."  (Dkt. #15) (emphasis added).

2004. Dkt. #24, #25, #26. However, this order is a nullity because none of the three versions

(which are all exactly alike) were signed by a judicial officer. *See United States v. Schiavo*, 504

F.2d 1, 7-8 (3d Cir. 1974) (failure to reduce an oral order to written form and enter it on the court's

docket makes an order null and void); D. Mass. ECF Procedures Manual, January 1, 2006, ¶ N(1)

("Any order *signed* electronically has the same force and effect as if the judge had affixed his/her

signature to a paper copy of the order and it had been entered on the docket conventionally.")

(Emphasis added). Thus, the order dated July 9, 2004, excluding time through September 10, 2004,

is a nullity and had no effect on the STA clock.

### d.      Clock Starts Again on July 9, 2004

Since former Magistrate Judge Cohen's unsigned order dated July 9, 2004 is a nullity, the

Speedy Trial clock started again on July 9, 2004.

### e.      Clock Stops on August 19, 2004: 55 Days Elapsed

Because Mr. Carpenter filed a motion to dismiss for lack of venue on August 20, 2004 (Dkt.

#27), the clock stopped on August 19, 2004. As a result, 42 additional days elapsed as of August

19, 2004, for a total of 55 days run off the STA clock.

### f.      November 2, 2004: 67 Days Elapsed

According to the government, "**12 additional days** elapsed" from "October 22 to November

2," Dkt. #96 at 2 (emphasis in original), resulting in a total of 67 days elapsed by November 2.

### g.      November 15, 2004: 76 Days Elapsed

According to the government, "**9 additional days** ran off the clock between November 3

and the date of the initial pretrial conference in this case on November 15, 2004." Dkt. #96 at 3

(emphasis in original). Thus, 76 days had elapsed as of this Court's initial pretrial conference held

on November 15, 2004.

    **h.**        **November 16, 2004: 77 Days Elapsed**

"The government agrees that **1 additional day** elapsed on November 16." *Id.*

Based on the government's own admissions as to the days elapsed on the STA clock, the undisputed fact that the May 6, 2004 motion to dismiss was signed and filed by an attorney who had not yet entered an appearance in the case, and the undisputed fact that former Magistrate Judge Cohen's three orders dated July 9, 2004 were all unsigned, the motion and the orders have no STA effect. As a result, **77 days** ran off the STA clock as of November 16, 2004, requiring that all charges against Mr. Carpenter be dismissed.

    **IV.**        **The Circumstances Require Dismissal *With* Prejudice.**

Whether a case should be dismissed *with* prejudice requires a court to consider "(1) the seriousness of the offenses; (2) the circumstances leading to the delay; (3) the impact reprosecution would have on the administration of justice and the enforcement of the Speedy Trial Act; and (4) any related miscellaneous factors, including whether the delay resulted in actual prejudice to the defendant." *Barnes*, 159 F.3d at 16; 18 U.S.C. § 3162(a)(2). Here, the circumstances attendant to the now *four-year delay* weigh heavily in favor of dismissal *with* prejudice.

    **1.**        **Seriousness of the Offenses.**

This mail and wire fraud prosecution should never have been brought in the first place, because it is an attempt by the government to criminalize what is essentially a civil breach of contract dispute among sophisticated business parties. *See McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990) ("Nor does a breach of contract in itself constitute a scheme to defraud."). Benistar Property successfully completed over $100 million in like-kind exchange transactions for 119 out of 126 Exchangors. There was no fraud here. In fact, the parallel civil case—upon which all of the charges, evidence, and witnesses in the criminal case are based—

is now awaiting a decision by the Massachusetts Supreme Judicial Court ("SJC") as to whether Mr.

Carpenter even has *civil* liability to the Exchangors.  *See Cahaly v. Benistar, Ltd.*, 449 Mass. 1107,

871 N.E.2d 491 (2007) (appeal pending).  There was no theft, misappropriation, or embezzlement.

The government's own forensic auditor and fact witness testified that Mr. Carpenter invested and

lost $2 million of his own company's money in Benistar Property in an effort to mitigate the

investment losses and to stave off the financial failure of the company.  The resulting $9 million

investment loss was caused by PaineWebber's mishandling of Benistar Property's accounts during

the worst stock market crash since (until recently) 1929, rather than anything attributable to Mr.

Carpenter.  In December 2005, an NASD arbitration panel agreed, and awarded Benistar Property

$12.6 million against PaineWebber.  The award was upheld on appeal and a final judgment in the

amount of $14.2 million was entered in Benistar Property's favor against PaineWebber in New

York state court.  *See In re UBS PaineWebber, Inc.*, Index No. 600156/06 (N.Y. Commercial Div.

Apr. 18, 2007).  At bottom, there was no fraud, no criminal intent, no loss (in light of the

PaineWebber award and subsequent judgment), and no crime—just unfortunate investment losses

for which PaineWebber was ultimately held *fully* responsible.[10]  Even this Court found that the case

"was not so strong," *Carpenter*, 405 F. Supp. 2d at 103, to confidently say that the prosecutorial

misconduct that occurred at trial did not have an "illegitimate effect," *id.*, on the jury.  There was no

crime here.

The seriousness of the offense aspect of the analysis "centers primarily on society's interest

in bringing the particular accused to trial.  The graver the crimes, the greater the insult to societal

interests if the charges are dropped once and for all, without meaningful determination of guilt or

innocence."  *United States v. Hastings*, 847 F.2d 902, 925 (1st Cir. 1988).  Mr. Carpenter was not

---

[10]  "Business fraud deserves to be prosecuted, but the criminalization of widely accepted business practices *ex post facto* is both unjust and offensive to the rule of law."  Editorial, "The Sihpol Verdict," *The Wall Street Journal*, A8 (June 10, 2005).

charged with drug crimes, crimes of violence, conspiracy, or obstruction.  He should not even have

been charged with mail and wire fraud for a contractual dispute resulting in losses for which a third

party was ultimately held responsible.  The SJC could ultimately rule that Mr. Carpenter has no *civil*

liability to the Exchangors.  Society's interest in re-prosecuting Mr. Carpenter, an upstanding

business and family man in his small Connecticut community, is non-existent, especially where

there was no evidence of fraudulent intent and no loss.  In a case such as this, the balance weighs

heavily in favor of dismissal *with* prejudice—so that Mr. Carpenter can finally clear his name after

seven years of being unfairly blamed for the losses for which PaineWebber has now been ultimately

held responsible.

> **2.**    **The Circumstances Attendant To The Delay.**

"When a STA violation is caused by the court or the prosecutor, it weighs in favor of

granting a dismissal with prejudice."  *United States v. Ramirez*, 973 F.2d 36, 39 (1st Cir. 1992).

The government is solely to blame for the STA violations in this case.  Its listless, nonchalant, and

lackadaisical approach to monitoring the STA deadlines in this case cries out for a dismissal with

prejudice—especially where it was the government's own ill-advised and dilatory interlocutory

appeal that caused the most egregious STA violations, and forced Mr. Carpenter to endure another

*two years* under the Sword of Damocles and by which he has had to put his life essentially "on

hold."  This pattern of knowing, intentional and persistent delay, neglect, and inaction on the part of

the government clearly supports dismissal with prejudice.

> **3.**    **The Administration Of Justice And The STA.**

As in *Dessesaure*, "[t]his was a flawed prosecution in many respects . . . [n]or is it clear that

reprosecution would be as easy as the government suggests."  *Id.* at *5.  Paley's persistent perjury in

this case *and* in the civil case will prevent him from being a witness at any retrial—without whose

testimony the government will be unable to offer *any* evidence that Mr. Carpenter reviewed Paley's

promotional materials.  The perjury of key Merrill Lynch witness Gerald Levine in the civil case

will likewise keep him off the witness stand at a retrial. Without Paley and Levine, the

government's case—to the extent it existed at all—evaporates into thin air.[11]  "To allow the

government to continue this prosecution, saved yet again from its own blatant errors, would make a

mockery of the STA and the criminal justice system as a whole." *Id.  See also Hastings*, 847 F.2d

at 926 ("whenever the government – for whatever reasons – falls short of meeting the Act's

requirements, the administration of justice is adversely affected.").  Finally, the odds of a retrial are

low in any event because Mr. Carpenter clearly has a double jeopardy claim under *Abney v. United

States*, 431 U.S. 651 (1977), and *Richardson v. United States*, 468 U.S. 317 (1984).

###    4.    Length Of Delay And Prejudice To Defendant.

It has been *eight years* since the stock market crash of 2000 which precipitated these events,

*seven years* since the government has been investigating Mr. Carpenter, and *four years* since Mr.

Carpenter was indicted.  Mr. Carpenter's retrial would have occurred *two years* ago but for the

government's dilatory interlocutory appeal.  Depending upon which ground is relied upon, as of

January 28, 2008, the STA violations here range from 48 days to 92 days.  *See Ramirez*, 973 F.2d at

37, n.2 (affirming dismissal with prejudice based on delay of between 31 and 46 days); *Dessesaure*

(dismissing with prejudice based on delay of 60 days).  This period of delay, when combined with

all of the other factors which fail to illuminate the government's conduct in this case in the most

flattering light (i.e., indicting an innocent man under the mail and wire fraud statutes for an

---

[11]  Paley's testimony in the civil case not only contradicts his key testimony in the criminal case, but the government will be hard-pressed even to call Paley as a witness at the retrial without running afoul of its *Brady*, *Giglio*, and *Napue* obligations.  The government will have similar problems with Levine, whom the Exchangors' civil attorney (and former SJC justice) Charles Fried recently accused during oral argument before the SJC of providing "false, perjured testimony" in the civil case.  *See* Video Webcast of Oral Argument at 32:10, *Cahaly*, SJC No. 10041 (Jan. 7, 2008), *available at* http://www.suffolk.edu/sjc/ archive/2008/SJC_10041.html (last visited January 28, 2008).

unintended breach of contract that was caused by a third party's malfeasance, obtaining a guilty

verdict only through prosecutorial misconduct, and cavalierly ignoring the STA deadlines), all

support dismissal with prejudice.[12]

## CONCLUSION

Because of the egregious manner in which the government has caused the STA to be

violated in this case, all charges against Mr. Carpenter must be dismissed *with* prejudice.

Respectfully submitted,
DANIEL E. CARPENTER,
By his attorneys,[13]


*Jack E. Robinson*
Jack E. Robinson, Esq.
(BBO #559683)
2187 Atlantic Street, Suite 905
Stamford, CT 06902
(203) 425-4500
Robinsonesq@aol.com

Dated:  January 28, 2008

## CERTIFICATE OF SERVICE

I hereby certify that this document filed through the ECF system on the date hereof will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Jack E. Robinson*
Jack E. Robinson

---

[12]  According to *The Wall Street Journal*, Wall Street write-downs in 2007-2008 related to the subprime mortgage mess will approach $200 billion, with Merrill Lynch ($22.4 billion) and PaineWebber, now UBS ($14.4 billion), leading the pack.  Investments in so-called collateralized debt obligations ("CDOs") were backed by home mortgages, generally considered to be the "safest" investment next to Treasuries.  Unlike many cases in which the investment banks were contractually precluded from investing in CDOs, Benistar Property had no limitations—contractual, legal, equitable, statutory, or regulatory—on the kinds of investments it could make.  That the government has decided to create a crime where none exists argues very much in favor of dismissal of all charges *with* prejudice.

[13]  Defendant's co-counsel, Attorney Goldstein, is currently on trial in a complex multiple defendant white-collar criminal trial in the Southern District of Ohio and, consequently, is unavailable to review, sign, or file pleadings in this case at the present time.