UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.     ) | Case No.  04-10029-GAO |
| ) | |
| DANIEL E. CARPENTER, ) | |
| ) | |
| Defendant.    ) | |

**GOVERNMENT'S RESPONSE TO DEFENDANT'S MOTION
TO DISMISS FOR VIOLATIONS OF THE SPEEDY TRIAL ACT**

The United States hereby responds to Defendant's Motion to Dismiss the Superseding Indictment with Prejudice for Violations of the Speedy Trial Act.  Defendant principally contends that the Speedy Trial Act ("STA") was violated because the Court failed to make on-the-record findings to support its exclusion of the period from the status hearing on November 26, 2007, through the trial date of May 5, 2008.  Although this argument is demonstrably off-the-mark, the government notes that, for an entirely separate reason, there may have been an STA violation.

As detailed below, there is a division among the Courts of Appeals that have considered the issue, as to whether – under the STA provision that deals with retrials, 18 U.S.C. § 3161(e) – the issuance of the mandate from the Court of Appeals resets the STA "clock."  The First Circuit has not addressed the issue, and the circuits that have confronted it are split.  If the clock was indeed reset, by the government's calculation **fifty-eight** non-excludable days have elapsed.  If the STA clock was not reset, and if there was no other pending motion that would toll the STA clock, there could be a violation of the STA, as **seventy-one** non-excludable days may have elapsed.

Although the government believes that the most reasonable reading of Section 3161(e) is that the Court of Appeals issuance of its mandate in this case reset the STA clock, if the Court adopts this position and is wrong, yet another retrial might follow. To avoid this outcome, the government believes that it would be prudent to dismiss the case without prejudice. The government could then promptly re-indict the case, in keeping with 18 U.S.C. §3288, so that the trial of this matter could go forward as scheduled.

I.      **The Court's Exclusion of the Time After the Status Hearing is Well-Supported in the Record.**

The thrust of the defendant's motion is that the Court did not comply with the requirements of 18 U.S.C. § 3161(h)(8) in that it failed to make "explicit on-the-record findings" to support its exclusion of the time from the November 26, 2007 hearing to the May 5, 2008 trial date. Because of this purported lacuna, the defendant contends, the STA clock has expired. Section 3161(h)(8) of course permits exclusion of any period of delay resulting from a continuance of trial if the "ends-of-justice" served by the continuance outweigh the public's and the defendant's interests in a speedy trial. Section 3161(h)(8) further requires that the reasons for the continuance be set forth in the record, either orally or in writing. The provision does not require that the court's findings be worded in any particular way. As the First Circuit has made clear, what matters is that the balancing required by Section 3161(h)(8) must be evident in the record: "To ensure the appropriateness of this balance, the trial court ordinarily must elucidate its reasons for approving such a continuance [citations omitted], *save for cases in which those reasons are readily apparent from the circumstances*." United States v. Barnes, 251 F.3d 251, 256 (1st Cir. 2001) (emphasis added).

The reasons for the Court's scheduling the trial date on May 5, 2008 are abundantly apparent in the transcript of the November 26, 2007 status hearing. From start to finish, the hearing was directed toward finding the earliest possible trial date that would accommodate the schedule of the defendant's lead counsel. Defense counsel represented that he would be occupied for the next several months because of two major trials, one an "incredibly complicated" four to six week trial of a complex white collar case in the Southern District of Ohio, and the other a large RICO prosecution in this District that likely would go to trial "sometime in April or May." See Transcript of Status Hearing (Nov. 26, 2007) at 3-5. Defense counsel further noted that if the Supreme Court were to grant his petition for a writ of certiorari, the retrial of this case naturally would have to be postponed. For these reasons, defense counsel requested that the Court set *not a trial date*, but a further status hearing in late-February or early-March – three months later – at which time the Court could "deal with the Supreme Court issues" and then select a trial date, if necessary. See Transcript at 2-3.

The government responded by acknowledging generally the defendant's interest in allowing his defense counsel adequate opportunity to prepare for trial, noting that "the Court can set a trial date with Mr. Goldstein's trial in mind." Transcript at 4. Contrary to the assertion in the defendant's motion that the government sought a "continuance,"[1] however, the government

---

[1] See Defendant's Motion at 3. At no point during the hearing was there the slightest suggestion that the government sought to prolong the proceedings. The defendant's characterization of the Court's order as a "continuance . . . at the government's behest" continues his Orwellian refrain, which makes its way into all his pleadings, that the government has sought to delay trial of this matter, when the record points to the opposite conclusion. Indeed, it was the defendant who sought repeatedly to continue this matter before the first trial, who has sought to transfer this matter to Connecticut – which inevitably would result in a long delay – and who sought in the last hearing to push off the retrial until next summer.

3

urged the Court to set a trial date, as opposed to a status hearing.  See Transcript at 4-5.  Indeed, counsel for the government emphasized later in the hearing that the public's interest in a prompt trial was heightened by the infirmities of certain government witnesses.  Transcript at 6.  The Court then inquired further of defense counsel regarding his trial schedule and noted that the Court's own schedule was filling up, implying that waiting until March to set a trial date, as defense counsel proposed, would entail further delay.  Transcript at 5.  For this reason, the Court said that it wished to set a realistic trial date that would not interfere with defense counsel's schedule.  Transcript at 5.  Defense counsel responded that the earliest realistic date would be in July.  Transcript at 6.  After further inquiry about the nature of defense counsel's other pending trials, and noting the possibility of that counsel's RICO trial might be continued, the Court set a trial date of May 5.

If anything can be said about this lengthy exchange over a simple scheduling issue, it is that the Court was attempting to balance the defendant's interest in having prepared counsel against the public's interest in a speedy trial.  To argue now, as the defendant does in his motion, that the reasons for the Court's scheduling the matter somehow were not apparent ignores the record of the hearing and the surrounding circumstances.  To state the obvious, the defendant was in no position, and understandably so, to try this case on November 26, 2007.  Scheduling this matter *at least* a few months after the hearing, given defense counsel's trial schedule, was inevitable under the circumstances.  The alternative would have been to force defense counsel off the case, a decision that would have undermined the defendant's interest in continuity of counsel, which the STA expressly recognizes as an important consideration in granting continuances.  See 18 U.S.C. § 3161(h)(8)(B)(iv); see also United States v. Scantleberry-Frank,

4

158 F.3d 612, 615 (1st Cir. 1998) (excluding time period resulting from "continuance . . . granted to aid defense counsel, and maintain continuity of counsel"). Given the preceding conversation, it came as no surprise that when the undersigned AUSA requested that the time be excluded under the STA, the defendant *did not object*. For this same reason, the record satisfies the Barnes standard that a trial court's findings to exclude time under Section 3161(h)(8) be "readily apparent" in the record.[2]

## II. In Light of a Circuit Split of the Issue of Whether the STA Clock Resets Upon the Issuance of the Mandate, It May Be Prudent to Dismiss the Case Without Prejudice.

At first glance, the calculation of how much time remains on the STA clock appears straightforward. The starting point is the first sentence of Section 3161(e), which provides that,

> If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from date the action occasioning the retrial becomes final.

18 U.S.C. §3161(e). In this case, the Court issued its new trial order on December 15, 2005, thereby resetting the 70-day clock. Defendant filed a motion, under seal, on that same date. The United States, of course, does not know the nature of that motion and therefore is not in a position to determine whether the filing of that motion tolled the STA clock. Depending on whether the sealed motion tolled the STA clock, STA time may have run until December 29, when the defendant filed a motion seeking reconsideration of the Court's denial of defendant's

---

[2] If the Court believes that the record of the November 26 status hearing leaves any doubt about the basis for its exclusion of time from the status hearing to the scheduled trial date, the Court may amplify those findings in the record. The Court may put these findings in the record at any time up to the point at which it rules on the defendant's motion. See Zedner v. United States, 547 U.S. 489, __, 126 S.Ct. 1976, 1989 (2006).

Rule 29 motion (Docket Number 194), an event that under Section 3161(h)(1)(J) stopped the clock. While that motion for reconsideration was pending, the government filed its notice of appeal. Therefore, unless the STA clock was tolled by the defendant's sealed motion, prior to the filing of the government's notice of appeal, **thirteen** non-excludable days elapsed.

If the defendant's sealed motion did not toll the STA clock, then the critical legal question is whether the First Circuit's issuance of its mandate[3] reset, or simply restarted, the STA clock. Under the law of at least two circuits, the mandate from the Court of Appeals would reset the clock by virtue of the application of the second sentence of Section 3161(e), which provides that "[i]f the defendant is to be tried again following an appeal or a collateral attack, the trial shall commence within seventy days from the action occasioning the retrial becomes final . . . ." United States v. Kington, 875 F.2d 1091, 1109 (5th Cir.1989) (resetting clock following appeal of district court's mistrial order); see also United States v. Lasteed, 832 F.2d 1240, 1242-43 & n. 5 (11th Cir.1987) (resetting clock after appeal). Under this reading of Section 3161(e), in this case the STA clock would have reset upon the issuance of the mandate from the Court of Appeals on September 28, 2007. As a result, from that day to the date of the status hearing on November 26, 2007, a total of **fifty-eight** non-excludable days would have elapsed.

The outcome would be different in other circuits, where the issuance of the mandate would not trigger a reset under Section 3161(e), but would simply restart the STA clock pursuant to Section 3161(h)(1)(E) (which provides for the exclusion of delays resulting from an interlocutory appeal). See United States v. Pinter, 307 F.3d 1178, 1185 (9th Cir. 2002); United

---

[3] The issuance of the mandate from the Court of Appeals, not its receipt in the district court, triggers the provisions of the STA. See United States v. Rush, 738 F.2d 497, 507 (1st Cir. 1984).

States v. Rivera, 844 F.2d 916, 919 (2d Cir. 1988).  Section 3161(h)(1)(E) does not reset the STA clock with a fresh seventy days, but rather restarts it where it was before the appeal.  In this case, if thirteen days indeed elapsed before the notice of appeal, the additional fifty-eight days between the issuance of the First Circuit's mandate and the scheduling conference on November 26, 2007, would bring the total to **seventy-one** non-excludable days, representing a violation of the STA by one day.

  The government firmly believes that the Fifth and Eleventh Circuits got it right.  The plain language of Section 3161(e) provides that when new trial orders are appealed, the mandate from the Court of Appeals resets the STA clock.  Nevertheless, given the absence of relevant authority in the First Circuit and the split of opinion among other circuits, the government is apprehensive about the prospect that upon the defendant's appeal of his conviction at retrial, this matter might be remanded for a third trial if the First Circuit decides that the clock was not reset upon the issuance of its mandate.  Such an outcome would serve no one's interests.

  Because the motion filed by Defendant on December 15, 2005 was filed under seal, the United States is not in a position to know whether that motion tolled the STA clock.  Unless the Court concludes that the sealed motion tolled the STA clock, the question of whether the STA clock has expired turns on a legal question that has divided the circuits.  In that case, the government submits that the more prudent course would be to dismiss the indictment without

prejudice,[4] and afford the government the opportunity promptly to re-indict it, pursuant to 18 U.S.C. §3288, so that the case may proceed to trial on schedule.

> Respectfully submitted,
>
> MICHAEL J. SULLIVAN
> United States Attorney
>
> /s/ Jonathan F. Mitchell
> JONATHAN F. MITCHELL
> Assistant U.S. Attorney

CERTIFICATE OF SERVICE

I hereby certify that this document, filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and that paper copies will be sent to those indicated as non registered participants on this date.

dated: February 11, 2008

> /s/ Jonathan F. Mitchell
> JONATHAN F. MITCHELL

---

[4] Contrary to the defendant's contention, there is no basis whatsoever to dismiss this case with prejudice based upon an overage of at most one day. On the contrary, the defendant is charged with serious offenses, having defrauded several individuals out of a total of approximately $9 million. The one-day violation at issue in this case cannot conceivably prejudice the defendant; with a prompt re-indictment, this case should still proceed to trial as scheduled in May. In light of defendant's own request for a July trial and his counsel's statement that there is no "meaningful difference" in a four month delay in trial, see Transcript at 7, there is no basis for finding any prejudice to the defendant's interests. Given also that the split in authority on the central issue here, it would be unfair to the government, the defendant's victims and to the public generally to dismiss this matter with prejudice.