UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Eastern Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 04-10029-GAO |
| DANIEL E. CARPENTER | ) ) ) | |
| Defendant. | ) ) | |

**DEFENDANT'S REPLY IN SUPPORT OF SPEEDY TRIAL MOTION**

Defendant seeks leave to file this short reply in support of his motion to dismiss the superseding indictment *with* prejudice for several violations of the Speedy Trial Act ("STA"). Not only does the government misread, misinterpret, and misstate the law concerning the STA as it is applied to this case, but the government has on its own identified a *fifth* STA violation, to wit: 71 non-excludable days having elapsed after this Court's decision granting a new trial on December 15, 2005—which is in addition to the *four* STA violations identified in Mr. Carpenter's motion. Because "the government believes that it would be prudent to dismiss the case," Opp. at 2, and because the government's ability to obtain a new indictment is far from certain, a dismissal *with* prejudice is the only appropriate and just remedy. In support hereof, Mr. Carpenter states as follows:

1.  The government cites *United States v. Barnes*, 251 F.3d 251 (1st Cir. 2001), in its desperate attempt to characterize the general case-management discussions at the November 26, 2007 status conference as somehow rising to the level of the express on-the-record findings required for an "ends of justice" continuance under 18 U.S.C. § 3161(h)(8)(A). No objective reading of the November 26th status conference transcript supports such a conclusion. A

"lengthy exchange over a simple scheduling issue," Opp. at 4, *i.e.*, simple case-management discussions, do not result in "reasons [that] are readily apparent from the circumstances," *Barnes*, 251 F.3d at 256, supporting an ends-of-justice continuance. In fact, the concept that "case-management" discussions camouflaged as on-the-record findings could somehow satisfy the STA was expressly rejected by the Supreme Court in *Zedner v. United States*, 126 S. Ct. 1976, 1988 (2006). As a result, the November 26th status conference failed to toll the STA clock. *See* Motion at 10-13. Nor would an amplification of the Court's findings on the record at this late date, as suggested by the government (Opp. at 5, n.2), solve the problem—as the STA clock has already expired. *See United States v. Scott*, 270 F.3d 30, 57 (1st Cir. 2001) ("the disciplines of the time limits in the STA are better maintained by explanations given *before* the clock runs out.") (Emphasis added). [1]

    2.    The government identifies yet another STA violation—*for a total of five STA violations in this case*. The Court issued its new trial order on December 15, 2005 (Dkt. #192),[2] which the government contends started a fresh 70-day clock. Opp. at 5. Upon information and belief, the sealed motion filed earlier on that same day (Dkt. #193), had to do with sensitive and private issues related to Mr. Carpenter's sentencing memorandum (Dkt. #191) filed the previous day. Obviously, the new trial order issued later in the day on December 15, 2005 rendered the sealed motion moot. Consequently, according to the government, the STA clock ran from

---

[1] Despite the fact that Mr. Carpenter was present in the courtroom during the November 26th status conference, he was not asked whether he agreed to forfeit his STA rights. *Zedner* also states that the "best practice, of course, is for a district court to put its findings on the record at or near the time when it grants the continuance." *Id.* at 1989, n.7. This was not done here. Nor is it relevant that there was no objection from defense counsel after AUSA Mitchell surreptitiously raised the STA issue after the status conference had ended. Opp. at 5. *See Zedner*, 126 S. Ct. at 1987 ("a defendant may not prospectively waive the application of the Act.").

[2] The Court's new trial order (Dkt. #192) was entered on the docket on December 15, 2005 at 4:18 PM EST.

December 16 through December 29, 2005, when Mr. Carpenter filed his motion for reconsideration of the denial of his motion for judgment of acquittal. (Dkt. #194.) Thus, according to the government, a total of **13** non-excludable days elapsed before the government filed its interlocutory appeal on January 9, 2006. (Dkt. #195.)

      3.      Whether the issuance of the mandate from the First Circuit triggers a fresh 70-day clock,[3] or restarts the pre-existing clock (with 13 days, according to the government, having already elapsed), the STA has been violated because the November 26, 2007 status conference did not toll the STA clock in any event. Thus, as of December 17, 2007 (the date on which Mr. Carpenter moved to transfer venue), under the government's calculation either **80 or 93** non-excludable days had elapsed, thereby resulting in an STA violation that requires dismissal.

      4.      Contrary to the government's contention, there is no circuit split as to whether an *interlocutory* appeal creates a fresh 70-day clock—because no such fresh clock is created under the circumstances where a district court grants a new trial and the government then challenges that decision by taking an interlocutory appeal under 18 U.S.C. § 3731. *See* Motion at 6-10. The two cases cited by the government are clearly inapposite. In *United States v. Kington*, 875 F.2d 1091 (5th Cir. 1989), a mistrial was declared "for the very purpose of permitting the appeal." *Id.* at 1109. Here, there was no mistrial, the new trial order clearly was not issued for purposes of taking an appeal, and the government's interlocutory appeal was taken 13 non-excludable days (as the government contends) into the new 70-day period for the *second* trial. Those 13 days are not somehow magically erased simply because the government decides to take an interlocutory

---

[3] The government agrees with Mr. Carpenter that it is the *issuance* of the mandate from the First Circuit, rather than its receipt by the district court, that triggers the STA clock. Opp. at 6, n.3.

appeal *after the new 70-day clock has already begun to run.*[4]  In fact, exactly the opposite is the case.  The time during an interlocutory appeal "is excluded from the STA calculation, to be sure, *but the clock is not reset to day one*."  *United States v. Dessesaure*, 2007 WL 4404118, *3 (D. Mass. Nov. 21, 2007) (emphasis added) (Gertner, J.).  The other case cited by the government, *United States v. Lasteed*, 832 F.2d 1240 (11th Cir. 1987), involved a mistrial and then an appeal by the defendant after the denial of his motion to dismiss on double jeopardy grounds.  *Id.* at 1241.  That is clearly different from the situation where, as here, the 70-day clock for the second trial has already started, and thereafter the government decides to take an interlocutory appeal.[5]  Rather than a circuit split, the law is unanimously clear in situations such as this: "The effect of this interlocutory appeal was to *interrupt*, not to restart, the running of the 70-day clock."  *United States v. Pitner*, 307 F.3d 1178, 1182 (9th Cir. 2002).

5.  Whichever way the issue is analyzed, there has been an STA violation (as the government effectively concedes).  While there may be a reasonable dispute as to whether the STA period in this case consists of 71 days, 80 days, 93 days, 118 days, or 162 days, there is no dispute that "[t]he sanction for a violation of the Act is dismissal."  *Zedner*, 126 S. Ct. at 1990.

6.  The dismissal here should be *with* prejudice for several reasons, *see* Motion at 16-20, including because Mr. Carpenter has been subjected to numerous and extensive delays in this four-year nightmare, to wit: a year and a half delay due to the government's dilatory and unsuccessful interlocutory appeal; an additional 60-day delay in the First Circuit where the

---

[4] For example, *if no interlocutory appeal had been filed*, it is undisputed that a retrial would have had to begin within 70 non-excludable days after December 15, 2005.

[5] In criminal cases, the government has 30 days in which to appeal.  *See* Fed. R. App. P. 4(b)(1)(B).  If Mr. Carpenter had not filed his motion for reconsideration (Dkt. #194) on December 29, 2005, and the government had waited until the 30th day after the new trial order to file its appeal, *i.e.*, January 14, 2006, there is no doubt that 30 non-excludable days would have run off the STA clock by that time—and the interlocutory appeal would not have magically erased those 30 days.

government sought not one but two extensions in which to seek rehearing, and then failed to seek rehearing; and several delays in the government's responses to various pre- and post-trial motions (including Mr. Carpenter's recent motion to transfer venue). While all of these time periods are obviously excludable under the STA, they nonetheless have resulted in precious time being taken out of Mr. Carpenter's life while he has labored under the Sword of Damocles of a federal indictment. The resulting cost and burden to himself, his family, and his business has been incalculable.

7.      Contrary to the government's stated intention to "promptly re-indict" the case, Opp. at 8, it is far from certain that the government will be able to obtain a new indictment. The grand jury that indicted Mr. Carpenter *four years ago* was led by a representative of PaineWebber, whose interests were clearly adverse to Mr. Carpenter. *See* Dkt. #107. Since indictment and the trial, and through Mr. Carpenter's efforts, Benistar Property has obtained a roughly $15 million judgment against PaineWebber for PaineWebber's having caused the losses at the heart of this case. It is highly doubtful that, when presented with evidence of the PaineWebber judgment, a grand jury would blame Mr. Carpenter and indict him for losses that have already been determined to have been caused by PaineWebber.

8.      However, an even larger obstacle looms ominously in the path to a new indictment of Mr. Carpenter—the perjury of Martin Paley and Merrill Lynch witness Gerald Levine. *See* Motion at 19. Because the key witness in the original grand jury was an FBI agent recounting his discussions with Paley and providing FBI 302 Reports in relation thereto, and the content of those discussions and reports have now been proven to be false, the government will be unable simply to regurgitate its prior grand jury testimony without running the risk of knowingly presenting false and perjured testimony to the grand jury. Yet, without this evidence,

5

it is logically and factually impossible for a grand jury to connect Mr. Carpenter to anything other than investing the funds—which even the superseding indictment does not allege is a crime. In other words, with the *inclusion* of the PaineWebber evidence and the *exclusion* of the Paley and Levine evidence, a new grand jury would be hard-pressed even to indict the proverbial "ham sandwich" in this case. The government's low probability of obtaining a new indictment, combined with the substantial problems that will ensue if a new indictment is somehow obtained, strongly militate in favor of a dismissal *with* prejudice.

9. Furthermore, on the facts of this case, there are numerous procedural problems with the government seeking to re-indict the case under 18 U.S.C. § 3288. In light of the numerous pretrial motions that Mr. Carpenter would file upon any re-indictment, including a detailed Bill of Particulars and an *Abney* double jeopardy motion to dismiss, there is little chance of another trial happening at all, let alone in May 2008.

10. This month marks the *four-year anniversary* of Mr. Carpenter's indictment in this case—a case that should never have been brought because no crime was committed. Dismissal of the superseding indictment *with* prejudice would be a fitting and just end to a baseless and wasteful prosecution of an innocent business executive over a civil breach of contract dispute involving sophisticated parties, where *all* of the plaintiffs' losses have since been determined to have been caused by a third party—PaineWebber. In baseball a batter gets three strikes, in football an offense gets four downs, but here the government has committed *five* STA violations. Enough is enough. "To allow the government to continue this prosecution, saved yet again from its own blatant errors, would make a mockery of the STA and the criminal justice system as a whole." *Dessesaure*, 2007 WL 4404118 at *5. This Court can and must end this fiasco now, once and for all, by dismissing all charges against Mr. Carpenter *with* prejudice.

6

        Respectfully submitted,
        DANIEL E. CARPENTER,
        By his attorneys,[6]


        *Jack E. Robinson*
        Jack E. Robinson, Esq.
        (BBO #559683)
        2187 Atlantic Street, Suite 905
        Stamford, CT 06902
        (203) 425-4500

Dated: February 12, 2008

## CERTIFICATE OF SERVICE

  I hereby certify that this document filed through the ECF system on the date hereof will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

        */s/ Jack E. Robinson*
        Jack E. Robinson

---

[6] Defendant's co-counsel, Attorney Goldstein, is currently on trial in a complex multiple defendant white-collar criminal trial in the Southern District of Ohio and, consequently, is unavailable to review, sign, or file pleadings in this case at the present time.

7