UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Eastern Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10029-GAO |
| | ) | |
| DANIEL E. CARPENTER | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S SECOND SUPPLEMENT TO SPEEDY TRIAL MOTION**

At the March 26, 2008 hearing, the Court invited the parties to address the issue of whether Mr. Carpenter's petition for a writ of certiorari to the Supreme Court *on his interlocutory cross-appeal* affected the Speedy Trial Act ("STA") calculation. A case directly on point from the Tenth Circuit squarely holds that a petition for a writ of certiorari does **not** result in excludable time under the STA. Furthermore, based upon a recalculation of the STA clock—using the government's own admissions and calculations—at least **82** non-excludable days have run off the STA clock in this case. *See* table on page 9, *infra*.[1]

Because more than 70 non-excludable days have elapsed, there is no discretion involved and the superseding indictment **must** be dismissed. *See* 18 U.S.C. § 3162(a)(2) ("the information or indictment **shall** be dismissed on motion of the defendant.") (emphasis added). The government wisely concedes that it is in the best interests of all parties to dismiss this case if the STA violation "is a close call." The STA violation in this case is *not* a close call (only one day as suggested by the government), but rather **a clear violation of at least 12 days** based on the statute and relevant case law. However, whether the period is 71 days or 82 days, *any* STA violation requires dismissal. *See United States v. Dezeler*, 81 F.3d 86 (8th Cir. 1996) (dismissing due to 71 days).

---

[1] This violation is in addition to *four* other STA violations noted in Mr. Carpenter's original brief.

1

I.     **STA Recalculation.**

In determining whether an STA violation has occurred, "[a]n inquiring court must follow a two-step process. First, the court must do the basic mathematics and determine the aggregate time elapsed awaiting trial. Second, it must determine how many days should be excluded from that ultimate sum." *United States v. Staula*, 80 F.3d 596, 600 (1st Cir. 1996). Between the issuance of this Court's new trial order on December 15, 2005 and the scheduled new trial date of May 5, 2008, a total of **872 days** will have elapsed (approximately 2 ½ years). The salient issue is how many of those 872 days should be excluded under the STA. By the government's own admissions and calculations, **71 days** are *non*-excludable. However, by Mr. Carpenter's recalculation, based on the statute and relevant case law, at least **82 days** are *non*-excludable. Either way, the STA has been violated and the superseding indictment must be dismissed.

A.     **Dec. 15, 2005: New Trial Order; STA Days (0).**

On December 15, 2005, the Court issued an order granting Mr. Carpenter's motion for new trial but denying his motion for judgment of acquittal. (Dkt. #192.) *See United States v. Carpenter*, 405 F. Supp. 2d 85 (D. Mass. 2005).

B.     **Dec. 15, 2005: Motion; STA Days (0).**

At the March 26, 2008 hearing, the Court stated that the sealed motion filed by Mr. Carpenter on December 15, 2005 (Dkt. #193) would *not* have stopped the STA clock—presumably because the motion related to sentencing issues rendered moot by the Court's new trial order entered on that same date. This motion has no STA effect.

C.     **Dec. 16, 2005: New STA Clock Starts; STA Days (1).**

"If the defendant is to be tried again following a declaration by the trial judge of a mistrial or following an order of such judge for a new trial, the trial shall commence within seventy days from the date the action occasioning the retrial becomes final." 18 U.S.C. § 3161(e). The action

2

occasioning the retrial was this Court's December 15, 2005 new trial order. *See United States v. Rivera*, 844 F.2d 916, 919 (2d Cir. 1988) (holding that where mistrial is followed by an interlocutory appeal, the action occasioning retrial is the granting of the mistrial). Thus, the STA clock began to tick on the following day—December 16, 2005.

**D.    Dec. 29, 2005: Motion Has No STA Effect; STA Days (14).**

On December 29, 2005, Mr. Carpenter filed a motion for reconsideration of the denial of his *post-trial* motion for judgment of acquittal. (Dkt. #194.) However, the STA clock did **not** stop because this was not a **pretrial** motion.

Excludable periods include "delay resulting from any **pretrial** motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion." 18 U.S.C. § 3161(h)(1)(F) (emphasis added). A motion for reconsideration of the denial of a *post-trial* motion for judgment of acquittal, by definition, is not a *pretrial* motion. *See* Fed. R. Crim. P. 12(b)(2) (defining pretrial motion as one "that the court can determine without a trial of the general issue."). Because a motion challenging the sufficiency of the evidence cannot possibly be made before trial, *see* Fed. R. Crim. P. 29 (Rule 29 motion can be made only "[a]fter the government closes its evidence or after the close of all of the evidence"), neither a Rule 29 motion nor a motion seeking reconsideration thereof can be deemed a *pretrial* motion.

Nor can the motion for reconsideration be considered "under advisement" by the Court on December 29, 2005, thereby triggering the 30-day excludable period under 18 U.S.C. § 3161(h)(1)(J). "A motion is deemed to be taken under advisement when the court receives all the papers it reasonably expects." *United States v. Barnes*, 159 F.3d 4, 12 (1st Cir. 1998). *See also United States v. Smith*, 415 F.3d 682, 686 (7th Cir. 2005) ("the period of advisement begins as soon as the prosecutor's response is due, no matter when the prosecutor filed."). The government's opposition (Dkt. #196) was due and was filed on January 12, 2006, *after* the

3

government had already stopped the STA clock by filing its interlocutory appeal on January 9, 2006. Thus, the December 29, 2005 motion for reconsideration did **not** stop the STA clock, which continued to run until the government filed its interlocutory appeal on January 9, 2006.

E.  **Jan. 9, 2006: Government Interlocutory Appeal Stops STA Clock; STA Days (24).**

On January 9, 2006, the government filed its interlocutory appeal of the Court's new trial order. (Dkt. #195.) Because excludable periods include "delay resulting from any interlocutory appeal," 18 U.S.C. § 3161(h)(1)(E), the STA clock stopped ticking on January 9, 2006, prior to which **24 days** had already elapsed on the STA clock. The government's interlocutory appeal was designated in the First Circuit as No. 06-1373.

F.  **Jan. 18, 2006: Carpenter Interlocutory Cross-Appeal Has No STA Effect; STA Days (24).**

On January 18, 2006, Mr. Carpenter filed his interlocutory cross-appeal from the denial of the motion for judgment of acquittal. (Dkt. #198.) This appeal had no STA effect because the STA clock had already stopped ticking by virtue of the government's interlocutory appeal on January 9, 2006. Mr. Carpenter's interlocutory cross-appeal was designated in the First Circuit as No. 06-1374.

G.  **Feb. 6, 2006: Carpenter Interlocutory Cross-Appeal of Motion for Reconsideration Has No STA Effect; STA Days (24).**

On February 6, 2006, Mr. Carpenter filed his interlocutory appeal from the denial of the motion for reconsideration of the denial of the motion for judgment of acquittal. (Dkt. #201.) This interlocutory appeal had no STA effect and was designated in the First Circuit as No. 06-1488.

H.  **Jul. 18, 2007: First Circuit Decision Has No STA Effect; STA Days (24).**

On July 18, 2007, the First Circuit issued its opinion and judgment affirming the District Court's new trial order (No. 06-1373), and dismissing Mr. Carpenter's interlocutory cross-appeals

4

(Nos. 06-1374 and 06-1488) for lack of appellate jurisdiction. *See United States v. Carpenter*, 494 F.3d 13 (1st Cir. 2007). However, a court of appeals decision has no STA effect until the mandate is issued. "The court's mandate must issue 7 calendar days after the time to file a petition for rehearing expires," Fed. R. App. P. 41(b), and a petition for rehearing must be filed "within 14 days after entry of judgment." Fed. R. App. P. 40(a)(1). Thus, the *earliest* that a court of appeals mandate can issue is 21 days after entry of judgment (unless the time is shortened by special order of the court).

**I.   Sep. 24, 2007: Government Decision Not To Seek Rehearing Has No STA Effect; STA Days (24).**

On September 24, 2007, after the government sought and was granted not one, but *two* extensions in which to seek rehearing, the government informed the First Circuit by letter that it would *not* seek rehearing. No STA effect because the mandate was still not issued.

**J.   Sep. 25, 2007: Carpenter Motion To Stay Mandate Has No STA Effect; STA Days (24).**

The next day, September 25, 2007, Mr. Carpenter filed a motion to stay the issuance of the mandate pending the filing of a petition for certiorari pursuant to Fed. R. App. P. 41(d). No STA effect.

**K.   Sep. 28, 2007: First Circuit Issuance of Mandate Marks End of STA Excludable Period; STA Days (24).**

On September 28, 2007, the First Circuit denied Mr. Carpenter's motion to stay the mandate and issued the mandate regarding all three interlocutory appeals. This action marked the end of the STA excludable period. It is the *issuance* of the mandate from the First Circuit, rather than its *receipt* by the District Court, that triggers the STA's provisions. *See United States v. Joost*, 133 F.3d 125, 130 (1st Cir. 1998) ("The STA clock began to run on August 30, 1996 (the day after our mandate in *Joost I* became final)."); *United States v. Rush*, 738 F.2d 497, 509 (1st

Cir. 1984) ("it is the date on which the mandate is issued which determines when the district court reacquires jurisdiction for further proceedings.").

The issuance of the mandate has jurisdictional significance. Once a timely notice of appeal is filed in the district court, "it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982). The court of appeals maintains exclusive jurisdiction over the case until the mandate is issued, and "[t]he mandate is effective when issued." Fed. R. App. P. 41(c). Although the mandate is automatically stayed during the pendency of a petition for rehearing or a motion to stay the mandate, Fed. R. App. P. 41(d)(1), the only way for a party to stay the issuance of the mandate—and thereby continue to deprive the district court of jurisdiction—is to file a motion to stay the mandate in the court of appeals (as Mr. Carpenter did here). *See* Fed. R. App. P. 41(d)(2).

However, once the mandate issues, the court of appeals is automatically *divested* of jurisdiction over the case, and jurisdiction is automatically *revested* in the district court. *See Rush*, 738 F.2d at 509 ("it is the date on which the mandate is issued which determines when *the district court reacquires jurisdiction for further proceedings*.") (emphasis added); *Boston & Maine Corp. v. Town of Hampton*, 7 F.3d 281, 282 (1st Cir. 1993) ("We lack jurisdiction here. The mandate issued in this case on April 20, 1993, and issuance of the mandate formally marks the end of appellate jurisdiction.") (internal citations and quotations omitted); *United States v. Fraser*, 407 F.3d 9, 10 (1st Cir. 2005) (holding that an untimely petition for rehearing "cannot be granted because mandate has issued."). Similarly, once the mandate issues, the district court automatically reacquires jurisdiction over the case. *See Charpentier v. Ortco Contractors*, 480 F.3d 710, 713 (5th Cir. 2007) ("This court retains control over an appeal until we issue a mandate."); 16A Wright, Miller & Cooper, *Federal Practice & Procedure: Jurisdiction 3d* §

3987 (1999) ("Until the mandate issues, however, the case ordinarily remains within the jurisdiction of the court of appeals and the district court lacks power to proceed further with respect to the matters involved with the appeal.").

The jurisdictional significance of the mandate is underscored by First Circuit Local Rule 41, which provides that, in criminal cases, the mandate will *not* be stayed "simply upon request" (in order to minimize unnecessary delay in the administration of justice). Because jurisdiction over this case was automatically revested in the District Court on the date the mandate was issued (September 28, 2007), the STA clock resumed ticking the next day (September 29, 2007).

L.    **Sep. 29, 2007: STA Clock Resumes Ticking; STA Days (25).**

The STA clock resumed ticking on September 29, 2007, the day after the mandate was issued. *See Joost*, 133 F.3d at 130 ("The STA clock began to run on August 30, 1996 (the day after our mandate in *Joost* I became final).").

The majority rule is that, after an interlocutory appeal, the STA clock does not **reset** to zero, but instead **resumes** ticking from where it had stopped immediately prior to the appeal. *See United States v. Ferris*, 751 F.2d 436, 441 (1st Cir. 1984) ("For the purposes of a Speedy Trial Act calculation, *the clock stopped running until the interlocutory appeals had been resolved*.") (emphasis added); *United States v. Pitner*, 307 F.3d 1178, 1182 (9th Cir. 2002) ("The effect of this interlocutory appeal was to *interrupt*, not to restart, the running of the 70-day clock.") (emphasis in original); *United States v. Rivera*, 844 F.2d 916, 919 (2d Cir. 1988) ("the speedy trial clock *resumed* on the date the exclusion allowed for an interlocutory appeal, § 3161(h)(1)(E), ended, i.e., when the appeal became final.") (emphasis added); 3B Wright, King & Klein, *Federal Practice & Procedure: Criminal 3d* § 833 at 410-11 (3d ed. 2004) ("These exclusions operate to stop the clock rather than reset it.");

Two recent cases in the District of Massachusetts also follow the majority rule. *See United States v. Dessesaure*, 527 F. Supp. 2d 193, 196 (D. Mass. 2007) ("Such time is excluded from the STA calculation, to be sure, but the clock is not reset to day one."); *United States v. Winston*, 492 F. Supp. 2d 15 (D. Mass. 2007) (dismissing because 24 days had elapsed prior to government's interlocutory appeal). In *Winston*, the government conceded the issue that it raises here, *i.e.*, whether an interlocutory appeal **resets** the STA clock to zero or **resumes** the clock from where it was prior to the appeal. *See* Gov. Mot. For An Order of Excludable Delay at 1, *United States v. Winston*, No. 04-cr-30026, Dkt. #37 (D. Mass. May 20, 2007) ("Prior to the appeal, approximately 24 days had run on the STA from January 29, 2005, the day after this Court's suppression order, through February 21, 2005, the day before the government's notice of appeal was filed."). The government—in fact, the same U.S. Attorney's Office—is judicially estopped from taking a position in *Carpenter* that is diametrically opposed to the position it adopted on the exact same issue in *Winston*. *See New Hampshire v. Maine*, 532 U.S. 742, 749 (2001) ("The doctrine of judicial estoppel prevents a party from asserting a claim in a legal proceeding that is inconsistent with a claim taken by that party in a previous proceeding.") (internal quotations and citations omitted).

**M.     Nov. 26, 2007: Status Conference; STA Days (82).**

Nothing happened to toll the STA clock between the issuance of the mandate on September 28, 2007, and the status conference on November 26, 2007, prior to which **82** non-excludable days had elapsed on the STA clock as follows:

| **Date** | **Action** | **Speedy Trial Days** | |
|---|---|---|---|
| Dec. 15, 2005 | Motion for new trial GRANTED; Motion for judgment of acquittal DENIED (Dkt. #192). | | 0 |
| Dec. 16, 2005 | STA clock starts for new trial (18 U.S.C. § 3161(e)). | | 1 |
| Dec. 29, 2005 | Carpenter files motion for reconsideration of denial of motion for judgment of acquittal (Dkt. #194); STA clock does **NOT** stop because this is not a **pretrial** motion. | Dec. 16, 2005 through Dec. 29, 2005 | 14 |
| Jan. 9, 2006 | Government files interlocutory appeal of new trial order (Dkt. #195); STA clock stops (18 U.S.C. § 3161(h)(1)(E)); Appeal designated First Circuit No. 06-1373. | Dec. 29, 2005 through Jan. 9, 2006 | 24 |
| Jan. 18, 2006 | Carpenter files notice of cross-appeal from denial of motion for judgment of acquittal (Dkt. #198); No STA effect; Appeal designated First Circuit No. 06-1374. | | 24 |
| Feb. 6, 2006 | Carpenter files notice of appeal from denial of motion for reconsideration of denial of motion for judgment of acquittal (Dkt. #201); No STA effect; Appeal designated First Circuit No. 06-1488. | | 24 |
| Jul. 18, 2007 | First Circuit opinion filed and judgment entered in all three appeals AFFIRMING new trial order in No. 06-1373, and DISMISSING Nos. 06-1374 and 06-1488 for lack of appellate jurisdiction; no STA effect. | | 24 |
| Sep. 24, 2007 | After government seeks and is granted not one, but *two* extensions in which to seek rehearing, government informs First Circuit by letter that it will not seek rehearing; no STA effect. | | 24 |
| Sep. 25, 2007 | Carpenter files motion in First Circuit to stay the issuance of the mandate; no STA effect. | | 24 |
| Sep. 28, 2007 | First Circuit denies Carpenter's motion to stay issuance of the mandate and issues the mandate in all three appeals; marks the end of the STA excludable period. | Jan. 9, 2006 through Sep. 28, 2007 | 24 |
| Sep. 29, 2007 | STA clock resumes ticking. | | 25 |
| Nov. 26, 2007 | Status conference. | Sep. 29, 2007 through Nov. 26, 2007 | 82 |

## II. Petition For Certiorari Has No STA Effect.

The Tenth Circuit appears to be the only Circuit to have addressed the issue of whether the filing of a petition for a writ of certiorari tolls the STA clock, and has squarely held that such time is **not** excludable under the STA (*unless* the court of appeals stays its mandate, which did *not* occur in the instant case).

In *United States v. Scalf*, 760 F.2d 1057 (10th Cir. 1985), the defendant's first trial for armed robbery ended in a conviction that was reversed on appeal based on a suppression of evidence issue. The date for his second trial was originally set for July 14, 1983, but on July 5th the government made an oral motion for a continuance. The government's motion was made so that the Solicitor General of the United States could determine whether or not to seek certiorari. The motion for continuance was granted on July 13th, and the new trial date was scheduled for November 14, 1983, although trial actually began on November 16. The defendant was again convicted upon his second trial, and on his second appeal contended that his conviction must be reversed and the indictment dismissed because of an STA violation.

In reversing the conviction and ordering the indictment dismissed, the Tenth Circuit squarely held:

> We have already held that the period begins to run when the mandate of the appellate court is issued. **An application to seek certiorari or a decision to make such application has no effect on the finality of an appellate decision unless the mandate of the court is stayed** or withdrawn in connection with such an event. *See* Fed. R. App. P. 41(b). Furthermore, the time consumed in making a decision whether to seek certiorari is not an excludable period of delay recognized by Section 3161(h), and a continuance granted for such purpose is likewise not excludable delay. 18 U.S.C. § 3161(h), particularly (h)(8) (1982). **That time therefore cannot operate to toll the statutory time period**.

*Id.* at 1059 (emphasis added). *See also United States v. Kington*, 715 F. Supp. 781, 792 n.28 (N.D. Tex. 1988), *aff'd in part, rev'd in part on other grounds*, 875 F.2d 1091 (5th Cir. 1989)

("Since the Fifth Circuit mandate was not stayed, this petition for certiorari did not toll the statutory period under the Speedy Trial Act.").

The STA contains a long list of permissible delays, or excludable periods, during which the STA clock does not tick. *See* 18 U.S.C. § 3161(h)(1)-(8). However, a delay caused by the filing of a petition for certiorari is **not** among them. Courts considering excludable periods under the STA are necessarily bound by the ancient maxim of statutory construction, *expressio unius est exclusio alterius*, which means "to express or include one thing implies the exclusion of the other." *Black's Law Dictionary* 620 (8th ed. 2004). *See also United States v. Carrasquillo*, 667 F.2d 382, 388 (3d Cir. 1981) ("Section 3161(h) specifies eight periods of delay that are to be excluded in computing the time within which the defendant's trial must commence. We believe that the list is exclusive. There is nothing in the statute or in the legislative history to the contrary."). The long and exclusive list of permissible STA delays impliedly excludes delays that are not mentioned—such as those caused by the filing of a petition for a writ of certiorari.

Furthermore, Mr. Carpenter's petition for certiorari was filed *only* with respect to his interlocutory cross-appeal to determine whether appellate jurisdiction existed to review the sufficiency of the evidence at the first trial. The petition for certiorari has no STA effect for the additional reason that no matter what decision emanated from the Supreme Court, there would have been no impact on a new trial.

There are four possible scenarios: (1) if the Supreme Court denied certiorari, as happened here, there is no impact on a new trial; (2) if the Supreme Court granted certiorari, but affirmed the First Circuit's decision that jurisdiction was lacking, there is no impact on a new trial; (3) if the Supreme Court granted certiorari, reversed the First Circuit on the jurisdictional issue, remanded the matter to the First Circuit to consider the sufficiency of the evidence, and the First Circuit affirmed the denial of the Rule 29 motion, there is no impact on a new trial; and (4) if

11

everything in (3) occurred but the First Circuit reversed the denial of the Rule 29 motion and held that the evidence was insufficient in the first trial, there still would be no impact on a new trial *unless* Mr. Carpenter moved for a stay of the second trial pending the First Circuit's decision regarding the sufficiency of the evidence in the first trial. *See United States v. Porter*, 807 F.2d 21, 24 (1st Cir. 1986) (holding that after a new trial is ordered and defendant is convicted in a second trial, defendant cannot challenge in the second appeal the sufficiency of the evidence in the first trial.).

In other words, regardless of what *might* have happened in the Supreme Court, the posture of this case would be exactly as it is now—the parties engaging in preparations for the second trial. However, the STA does not allow for surmise and conjecture into what *might* have occurred. Instead, the STA requires precise mathematical calculations based on what *did* occur. Because the petition for certiorari had no STA effect whatsoever, the STA has been violated and the superseding indictment must be dismissed.[2]

### III.   Dismissal *With* Prejudice Is Appropriate.

All of the factors which determine whether dismissal is with or without prejudice militate heavily in favor of dismissal *with* prejudice. *See* 18 U.S.C. § 3162(a)(2).

First, the charged offenses here are not serious. In fact, there was no crime at all. Neither the applicable agreements between Benistar Property Exchange ("BPE") and the Exchangors, nor federal law governing § 1031 exchanges, precludes stock option investments. There was no

---

[2] In *Winston*, the parties and the court assumed, without any discussion or analysis, or citing any authority, that the STA clock was tolled during the time which the defendant sought a petition for certiorari in relation to *the government's successful interlocutory appeal*. *See Winston*, 492 F. Supp. 2d at 17-18. Perhaps this is because the petition was sought in the *same appeal* by which the government successfully appealed the district court's suppression order, so the proceedings in the Supreme Court could conceivably be deemed to be an ongoing part of the same interlocutory appeal that tolled the STA clock pursuant to 18 U.S.C. § 3161(h)(1)(E). Here, however, the situation is markedly different. The government did not seek certiorari after losing its interlocutory appeal (although it had the right to do so), and Mr. Carpenter sought certiorari only in relation to his own cross-appeal challenging the sufficiency of the evidence, which had no bearing whatsoever on the grant of a new trial or the government's appeal.

embezzlement, theft, or misappropriation. Even the government's own auditor testified that Mr. Carpenter invested and lost $2 million of his own company's money in an effort to mitigate the investment losses. Although Mr. Carpenter was indicted for causing the $9 million loss, UBS PaineWebber has since been found solely responsible for causing the loss.[3] In fact, there was not even a civil breach of contract here, because BPE's failure to perform its contractual obligations and return the Exchangors' funds is legally excused by UBS PaineWebber's supervening misconduct under the doctrine of frustration of purpose. *See Fredette v. Allied Van Lines, Inc.*, 66 F.3d 369, 373-74 (1st Cir. 1995) ("The doctrine of frustration of purpose, recognized in Massachusetts as elsewhere, excuses a party from contractual obligations under certain defined circumstances."). Thus, there was not even a breach of contract. But even if there was a simple breach of contract at the heart of this case, that does not rise to the level of a scheme to defraud. *See McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990) ("Nor does a breach of contract in itself constitute a scheme to defraud.").[4] Furthermore, while the public has a great interest in bringing to trial defendants, especially recidivists, who have been accused of committing serious crimes, *see United States v. Johnson*, 29 F.3d 940, 946 (5th Cir. 1994), it cannot be seriously argued that the public has any interest whatsoever in further prosecuting Mr. Carpenter, who has no criminal record, and who has been accused of merely

---

[3] Just today, UBS PaineWebber announced a total of almost $40 billion in write-downs due to investments in supposedly "safe" mortgage-backed securities, while Merrill Lynch's losses total $20 billion—yet neither have been charged with a crime simply for losing money. The essence of the charges against Mr. Carpenter is that, rather than investing in stock options, he should have invested in something "safe" like mortgage-backed securities—precisely the kinds of investments causing the carnage on Wall Street today.

[4] The superseding indictment alleges at most that Mr. Carpenter read, reviewed, or edited certain documents that allegedly contain misrepresentations. Allegations regarding oral misrepresentations have already been dropped and replaced with "half-truths" and "omissions" in documents that contain integration clauses. Applying the half-truth or omission definition of fraudulent statements after-the-fact to negotiated contracts that contain integration clauses is inappropriate. *See United States v. Blankenship*, 382 F.3d 1110, 1135 (11th Cir. 2004) ("a contract is not a factual assertion, and therefore cannot be characterized as 'true' or 'false.'").

reading, reviewing, and possibly editing documents.  *See* Indictment ¶¶ 24-29.  This factor clearly favors dismissal with prejudice.

Second, the circumstances attendant to the delay are entirely the government's doing by virtue of its interlocutory appeal—without which Mr. Carpenter's retrial would have occurred *two years ago*—as well as the government's failure to alert the Court that an STA violation would occur by setting a status conference almost two months after the issuance of the First Circuit's mandate.  "When a STA violation is caused by the court or the prosecutor, it weighs in favor of granting a dismissal *with* prejudice."  *United States v. Ramirez*, 973 F.2d 36, 39 (1st Cir. 1992) (emphasis added).  This factor clearly favors dismissal with prejudice.[5]

Third, the U.S. Attorney's Office in the District of Massachusetts ("USAO") seems to have adopted a rather nonchalant attitude toward its obligations under the STA.  *See Dessesaure*, 527 F. Supp. 2d at 197 (60-day violation); *Winston*, 492 F. Supp. 2d at 18 (108-day violation).  Dismissing this case with prejudice will send a strong message to the government in general, and the USAO in particular, regarding the importance of insuring "that the Speedy Trial Act's provisions are scrupulously complied with."  *Id.* at 20, n.3.  *See also United States v. O'Hearn*, 2004 WL 1553599, *1 (D. Mass. Jul. 9, 2004), *appeal dismissed*, 386 F.3d 304 (1st Cir. 2004) ("There is a strong possibility that the Speedy Trial time has run since at least 78 days of unexcluded time appear on the record."); *United States v. Medugno*, 233 F. Supp. 2d 184 (D. Mass. 2002) (government concedes 28-day violation); *United States v. Franklin*, 2006 WL 1581783 (D. Mass. Jun. 8, 2006) (180-day violation); *United States v. Bundu*, 479 F. Supp. 2d 195 (dismissing with prejudice for 300-day violation).  The general pattern of USAO inattention

---

[5] The President's Commission on Law Enforcement study which led to the adoption of the STA "recommended a maximum period of four months from arrest to trial in felony cases," as opposed to the four years in this case. *See* President's Commission on Law Enforcement and Criminal Justice, *The Challenge of Crime in a Free Society* at 154 (Washington, D.C., Government Printing Office, 1967).

14

to the STA rights of defendants in this District "becomes more conducive to dismissal with prejudice than if delay stems from some solitary bevue." *United States v. Hastings*, 847 F.2d 920, 925 (1st Cir. 1988). This factor clearly favors dismissal with prejudice.

Fourth, dismissal with prejudice also will highlight the obligation of courts to be vigilant sentinels of defendants' STA rights. *See United States v. Maxwell*, 247 F. Supp. 2d 10, 12 n.1 (D. Mass. 2002), *aff'd*, 351 F.3d 35 (1st Cir. 2003) (Chief Judge Wolf's "practice [is] to have the Courtroom Deputy perform independent STA calculations . . . [which] provides an additional protection against inadvertent STA violations."); *United States v. Leichter*, 96 F. Supp. 2d 5, 9 (D. Mass. 2000) ("this court accepts responsibility for the resulting violation of Defendants' Speedy Trial rights."). This factor clearly favors dismissal with prejudice.

Fifth, *all* of the delays in this case have been caused by the government seeking extensions to file motions and briefs, whereas Mr. Carpenter has never requested a single extension. Whether it was asking for additional time to respond to various motions in order to accommodate vacation schedules (Dkt. #171, #224), or whether it was seeking not one, but two extensions in the First Circuit in which to seek rehearing, and then deciding not to seek rehearing, it has been the government which has been the cause of the inordinate amount of delay in this case. This factor clearly favors dismissal with prejudice.

Sixth, the administration of justice and enforcement of the STA support dismissal with prejudice. "This was a flawed prosecution in many respects . . . After the appeal, the government failed to restart the prosecution in a timely fashion." *Dessesaure*, 527 F. Supp. 2d at 198 (dismissing with prejudice). This factor clearly favors dismissal with prejudice.

Seventh, the length of the delay and overall prejudice to the defendant is the strongest factor in favor of a dismissal with prejudice. Contrary to the government's assertion, the STA violation here is not one day, but at least 12 days. More importantly, the amount of time between

trials in this case is almost **900 days, or 2 ½ years**.  Mr. Carpenter has had to endure being the subject of a federal criminal investigation regarding this civil dispute involving the Exchangors as long as George W. Bush has been President.  Mr. Carpenter has had to awaken each morning with a federal indictment pending against him for almost as long as the Iraq War.  The criminal case against Mr. Carpenter has a longer life than modern Iraq and Afghanistan.  If this case were to go to trial again, the government would have to offer proof of events that occurred **a decade ago**.  When the federal investigation began into this matter in early 2001, Mr. Carpenter's daughter was a freshman in high school.  This year, two months from now, she will graduate from Trinity College in Hartford.  She would like to be able to take her father along on a June trip to Paris that is planned with the President of Trinity College and other graduating students and their families.  Mr. Carpenter would like to be able to take this trip free forever from the taint and heavy burden of a possible new indictment.  "We have likewise recognized that the sheer length of the period involved can weigh toward a dismissal with prejudice."  *United States v. Lewis*, 2008 WL 659578, *5 (9th Cir. Mar. 13, 2008) (internal citations and quotations omitted).  This factor clearly favors dismissal with prejudice.

Eighth, as the Supreme Court has explained, Mr. Carpenter has a strong "liberty interest" that can only be vindicated in this case and under these circumstances by a dismissal with prejudice:

> Inordinate delay between public charge and trial, . . . wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'"

*Barker v. Wingo*, 407 U.S. 514, 537 (1972) (White, J., concurring) (quoting *United States v. Marion*, 404 U.S. 307, 320 (1971)).  Mr. Carpenter's business competitors have used the mere existence of the indictment to destroy his hard-earned business reputation.  In addition to

suffering all of the misfortunes identified by Justice White, Mr. Carpenter will never be able to reclaim the precious several years that this case has stolen from his life (not to mention the incalculable financial and emotional toll this case has taken on him and his family). *See also Marion*, 404 U.S. at 328-29 ("It is monstrous to put a man on his trial after such a lapse of time. How can he account for his conduct so far back? . . . [I]f the charge be not preferred for a year or more, how can he clear himself? No man's life would be safe if such a prosecution were permitted.") (citing Baron Alderson in *Regina v. Robins*, 1 Cox's C.C. 114 (Somerset Winter Assizes 1844)). This factor clearly favors dismissal with prejudice.

All of the relevant factors clearly favor dismissing this case with prejudice, just as the Sixth Circuit ordered in a case involving serious drug offenses resulting in a 22-year sentence:

> the fact that Congress expressly provided for both forms of dismissal suggests rather strongly that Congress contemplated that there were going to be cases **in which dismissal with prejudice would be the only reasonable option**. In light of the truly egregious and inexplicable violation of the Act under the present circumstances, I believe that this is one of those cases.

*United States v. Moss*, 217 F.3d 426, 435 (6th Cir. 2000) (Gilman, J., concurring) (emphasis added).

The foregoing reasoning leads to the following inescapable conclusions: 1) there was no crime here; 2) the facts and circumstances evidence an intentional, or at least grossly negligent, attitude on the part of the USAO to ignore its STA obligations; 3) all of the delays in this case have been caused by the USAO; 4) Mr. Carpenter has suffered severe prejudice by virtue of this four-year prosecution; and 5) a reprosecution on the facts of this case would negatively impact the administration of the STA in particular and of justice in general. Accordingly, a dismissal of the superseding indictment with prejudice is warranted.

The following chart illustrates the magnitude of the overall delay in this case:

17



## **CONCLUSION**

In light of the foregoing, the STA has been violated, the superseding indictment must be dismissed, and it should be dismissed with prejudice.

Respectfully submitted,
DANIEL E. CARPENTER,
By his attorney,


*/s/ Jack E. Robinson*
Jack E. Robinson
(BBO #559683)
2187 Atlantic Street, Suite 905
Stamford, CT 06902
(203) 425-4500

Dated:  April 1, 2008

## CERTIFICATE OF SERVICE

     I hereby certify that this document filed through the ECF system on the date hereof will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

                                      */s/ Jack E. Robinson*
                                      Jack E. Robinson