# UNITED STATES COURT OF APPEALS
## For the First Circuit
_____

No. 08-1458

## In re: DANIEL E. CARPENTER,

### Petitioner.

_____

### Defendant's Emergency Petition for a Writ of Mandamus
### to the United States District Court
### for the District of Massachusetts

_____

# EMERGENCY PETITION FOR WRIT OF MANDAMUS
_____

**Jack E. Robinson**
**(1st Cir. No. 38097)**
**2187 Atlantic Street, Suite 905**
**Stamford, CT 06902**
**203.425.4500**
**203.425.4555-fax**
**robinsonesq@aol.com**

*Attorney for Petitioner*

**Dated:  April 10, 2008**

## PRELIMINARY STATEMENT

Pursuant to 28 U.S.C. § 1651(a) and Fed. R. App. P. 21, defendant-petitioner Daniel E. Carpenter ("Carpenter") hereby submits this petition for a writ of mandamus to the United States District Court for the District of Massachusetts.  This petition is filed on an emergency basis in light of the impending retrial date of **May 5, 2008**.  The writ should issue because Mr. Carpenter "has a clear entitlement to relief, yet is threatened with irreparable harm should that relief be delayed or deferred."  United States v. Green, 407 F.3d 434, 439 (1st Cir. 2005).

Mandamus is appropriate for three reasons.  First, the District Court has committed an indisputable mathematical error in the calculation under the Speedy Trial Act of 1974, as amended, 18 U.S.C. §§ 3161-3174 ("STA"), finding that only 58 non-excludable days have elapsed when the actual number is **82** days (more than 70 days requires dismissal).  Second, the District Court abused its discretion when it summarily denied, without applying the required factors described in Platt v. Minnesota Mining & Manufacturing Co., 376 U.S. 240, 243-44 (1964) (the "Platt Factors"), Mr. Carpenter's motion to transfer venue pursuant to Fed. R. Crim. P. 21(b).  Third, the District Court failed to abide by its own Local Rule which requires that "[w]hen an appellate court remands a case to this court for a new trial, the case **shall** be reassigned to a

judge other than the judge before whom the first trial was held."  D. Mass. L.R.

40.1(K)(1) (emphasis added).

## STATEMENT OF THE RELIEF SOUGHT

By issuance of the writ, Mr. Carpenter requests that this Court correct the

STA mathematical error committed by the District Court and remand with an

order for the District Court to (i) dismiss the superseding indictment, and (ii)

determine, based on the factors contained in 18 U.S.C. § 3162(a)(2), whether

dismissal should be with or without prejudice.  Alternatively, this Court should

remand to the District Court for application of the necessary Platt Factors in

order to determine whether the case should be transferred, or simply instruct that

the case be returned to the clerk for reassignment.

## STATEMENT OF THE ISSUES PRESENTED

1.      Whether the District Court committed an indisputable mathematical

error under the STA?

2.      Whether the District Court abused its discretion by summarily

denying the motion to transfer venue without applying the required Platt

Factors?

3.      Whether the District Court violated its own Local Rule by failing to

return the case to the clerk for reassignment?

## STATEMENT OF THE RELEVANT FACTS

### 1.     STA Violation.

Mr. Carpenter was indicted on mail and wire fraud charges in February 2004.  On December 15, 2005, after a three-week jury trial and guilty verdict, the District Court granted Mr. Carpenter's motion for a new trial.  See United States v. Carpenter, 405 F. Supp. 2d 85 (D. Mass. 2005).  A new 70-day STA clock started on the following day.  See 18 U.S.C. § 3161(e).  Nothing of any STA significance occurred in the case until the government filed its interlocutory appeal challenging the new trial order on January 9, 2006.[1]  (Dkt. No. 195.)  By the time the STA clock stopped ticking by virtue of the government's interlocutory appeal on January 9, 2006, see 18 U.S.C. § 3161(h)(1)(E) (excluding delay resulting from interlocutory appeal), **24** non-

---

[1]  On December 29, 2005, Mr. Carpenter filed a motion for reconsideration of the denial of his *post-trial* motion for judgment of acquittal.  (Dkt. No. 194.)  However, the STA clock did **not** stop because this was not a **pretrial** motion.  See 18 U.S.C. § 3161(h)(1)(F) (excluding delay resulting from any *pretrial* motion).  Nor was the motion "under advisement" by the District Court, thereby triggering the 30-day excludable period under 18 U.S.C. § 3161(h)(1)(J).  "A motion is deemed to be taken under advisement when the court receives all the papers it reasonably expects."  United States v. Barnes, 159 F.3d 4, 12 (1st Cir. 1998).  The government's opposition was not due until January 12, 2006—three days *after* the STA clock had already stopped by virtue of the government's interlocutory appeal.

excludable days had run off the STA clock (*i.e.*, December 15, 2005 through January 9, 2006).

On July 18, 2007, this Court affirmed the new trial order. <u>See</u> <u>United States v. Carpenter</u>, 494 F.3d 13 (1st Cir. 2007). This Court's mandate was issued on September 28, 2007, and the STA clock resumed ticking on the following day—September 29, 2007. On November 26, 2007, the District Court held a status conference and excluded all time from that date through the trial date of May 5, 2008. Between September 28, 2007 and November 26, 2007, **58** days elapsed.

As the District Court noted in its recent order ("Order") denying Mr. Carpenter's STA motion, <u>see</u> <u>United States v. Carpenter</u>, 2008 WL 934049 (D. Mass. Apr. 8, 2008) (copy annexed hereto), **58** days elapsed between the issuance of this Court's mandate on September 28, 2007 and the November 26, 2007 status conference. <u>See</u> Order at 5. When these **58** days are added to the **24** days that had already elapsed prior to the government's interlocutory appeal, a total of **82** days have elapsed, thereby resulting in an STA violation requiring that the superseding indictment be dismissed. However, in its Order, the District Court miscalculated and failed to include the 24 days that had run off the STA clock *prior* to the government's interlocutory appeal. This mathematical error led the District Court to rule that the STA was not violated, when in fact a 12-

day STA violation has occurred.  By the time of the scheduled retrial, Mr.

Carpenter will have been under indictment *for over four years*.

### 2.    Change of Venue.

On December 17, 2007, after the STA violation had occurred, Mr.

Carpenter filed a *verified* motion to transfer venue for convenience pursuant to

Fed. R. Crim. P. 21(b).  (Dkt. Nos. 223, 227.)  Mr. Carpenter, who lives and

works in Simsbury, Connecticut (located between Hartford, Connecticut and

Springfield, Massachusetts), sought to transfer venue either to the District of

Connecticut or, preferably, to the Western Division of the District of

Massachusetts in Springfield.

Mr. Carpenter showed that while the Springfield courthouse was only 30

minutes from Simsbury during rush-hour, and the Hartford courthouse was only

45 minutes from Simsbury during rush-hour, the Boston courthouse was 3 ½

hours *each way* from Simsbury during rush-hour.  See Dkt. No. 223 at 1.  This

onerous commute from Simsbury to Boston would require Mr. Carpenter and his

wife to stay in a Boston hotel during the three-week trial *for a second time*, at

substantial financial and emotional cost, strain, and inconvenience to them and

their family.  Mr. Carpenter also showed that of the ten Platt Factors, only four

were applicable: "(1) location of the defendant; (2) location of witnesses; (3)

disruption of defendant's business; and (4) expense to the parties."  Dkt. No. 227

at 3. Of these, "three factors favor transfer and one factor, the location of witnesses, is essentially neutral given that the government's witnesses would only be required to appear in Springfield for one day." Id. The government, on the other hand, complained primarily that a transfer would be inconvenient for the "Boston-based prosecutors and [FBI] case agents" working on the case. Gov. Opp., Dkt. No. 226, at 3.

When the applicable Platt Factors are systematically and fairly analyzed, Mr. Carpenter ends up batting a respectable 3-for-4 (one factor is neutral), while the government strikes out at 0-for-4. The District Court, however, failed to undertake any analysis whatsoever, and simply denied the motion summarily without any analysis or explanation.

### 3.    **Reassignment.**

Upon remand for a new trial after the government's interlocutory appeal, the case was not "reassigned to a judge other than the judge before whom the first trial was held." D. Mass. L.R. 40.1(K)(1).

### **REASONS WHY THE WRIT SHOULD ISSUE**

### 1.    **Suitability of Mandamus.**

It is widely accepted that mandamus is an extraordinary remedy that is rarely invoked. 16 Wright, Miller & Cooper, Federal Practice & Procedure: Jurisdiction and Related Matters § 3936.2 at 667 (2d ed. 1996). Mandamus

requires "exceptional circumstances." In re Union Leader Corp., 292 F.2d 381, 383 (1st Cir. 1961). However, "rarely if ever d[oes] not mean never." Solomon v. Cont'l Am. Life Ins. Co., 472 F.2d 1043, 1045 (3d Cir. 1972). See also Cheney v. United States District Court, 542 U.S. 367, 381 (2004) ("These hurdles, however demanding, are not insuperable."). In determining whether to grant the writ, "[i]ssues of law are reviewed *de novo*." In re United States, 426 F.3d 1, 4 (1st Cir. 2005) (granting writ).

Prior to the first trial, Mr. Carpenter unsuccessfully sought mandamus on the sole issue that the District Court failed to apply the Platt Factors regarding his motion to transfer venue. See In re Carpenter, No. 05-1749 (1st Cir. Jul. 1, 2005). Now, prior to the second trial, the situation and the equities have changed dramatically in favor of granting the writ. First, Mr. Carpenter has already been forced to undergo a trial in an inconvenient and costly forum (Boston), so his motion to transfer venue this time around (to Hartford or Springfield) carries substantially more weight. Second, Mr. Carpenter has filed a *verified* motion to transfer venue, so no separate affidavits or documents are required to support his factual asseverations. See 28 U.S.C. § 1746(2). Third, the District Court's indisputable STA mathematical error, the calibration of the four relevant Platt Factors, and the failure to reassign the case pursuant to the District Court's Local Rules, all demonstrate that Mr. Carpenter has a "clear and

indisputable" right to issuance of the writ.  <u>Acton Corp. v. Borden, Inc.</u>, 670 F.2d 377, 382 (1st Cir. 1982).  <u>See also</u> <u>In re United States</u>, 565 F.2d 173, 177 (1st Cir. 1977) (granting writ due to "obvious error").

Furthermore, "mandamus might be an appropriate remedy when the district court has made a simple mathematical mistake in its computation of the number of days permitted under the Speedy Trial Act." <u>United States v. Bilsky</u>, 664 F.2d 613, 619 (6th Cir. 1981).  <u>See also</u> <u>United States v. Mehrmanesh</u>, 652 F.2d 766, 770 (9th Cir. 1980) (mandamus "standard would be met if the trial judge had simply miscounted the number of days permitted under the Speedy Trial Act.").  Mandamus is appropriate because the District Court simply miscounted the number of days—*i.e.*, failed to include the 24 days that had elapsed prior to the government's interlocutory appeal which, when added to the 58 days that the District Court *did* count, result in 82 days having elapsed.  The District Court's miscalculation under the STA warrants issuance of the writ to correct the mistake, because when those omitted 24 days are added to the 58 days acknowledged by the District Court, the STA is clearly violated.

Mandamus is also appropriate in cases involving change of venue.  <u>See</u> <u>United States v. United States District Court</u>, 209 F.2d 575 (6th Cir. 1954) ("Mandamus or a proceeding in the nature of mandamus is the appropriate procedure by which to decide the [transfer of venue] issue presented."); <u>In re</u>

Arvedon, 523 F.2d 914 (1st Cir. 1975) (granting writ to vacate transfer order); In re Balsimo, 68 F.3d 185 (7th Cir. 1995) (granting writ and "directing the district court to reconsider the motion for a change of venue"); In re United States, 273 F.3d 380, 385 (3d Cir. 2001) ("mandamus is . . . the appropriate mechanism for reviewing an allegedly improper transfer order.") (citations and quotation marks omitted).

Absent issuance of the writ, Mr. Carpenter will suffer irreparable harm. He will be forced to go to trial in less than a month on an indictment that should have been dismissed, and will have been forced to endure prejudicial pretrial delay that should have been avoided. Mr. Carpenter will also forever lose his ability to be tried in a (much less expensive) location close to his home and place of employment, as well as his right under the Local Rules to be tried in front of a different judge than the one who presided over the first trial.

## 2.    District Court Miscounted Under the STA.

The District Court ignored the 24 days that had elapsed prior to the government's interlocutory appeal on the basis that "the most sensible reading of § 3161(e) is that the order granting the new trial became final on the date that the mandate issued from the Court of Appeals after conclusion of the government's appeal." Order at 3. The District Court's position that an interlocutory appeal begins a "fresh" clock is clearly erroneous. Several courts

of appeals, as well as at least two judges within the District of Massachusetts, have correctly found that an interlocutory appeal **interrupts**, but does not **restart**, the STA clock.

In <u>United States v. Pitner</u>, 307 F.3d 1178 (9th Cir. 2002), a mistrial was declared and an interlocutory appeal followed.  After the interlocutory appeal was dismissed and the Ninth Circuit issued its mandate, "[t]he district court and Pitner's attorney began counting the 70-day Speedy Trial clock on this day for the second trial."  <u>Id.</u> at 1181.  Pitner then filed an STA motion which was denied and he was convicted after the second trial.  On appeal from the conviction, the Ninth Circuit ordered the indictment dismissed, ruling that the STA had been violated because it was a mistake for the district court and Pitner's attorney to have restarted the STA clock anew after the interlocutory appeal:

> The parties and the district court in this case labored under a misconception regarding the effect of Pitner's interlocutory appeal on the calculation of his Speedy Trial Act deadline.  They assumed that, at the conclusion of the appeal, a new 70-day period began.  The Act and our precedent are to the contrary.

<u>Id.</u> at 1182.  "The effect of this interlocutory appeal was to *interrupt*, not to restart, the running of the 70-day clock."  <u>Id.</u> (emphasis in original).

"Interlocutory appeals **interrupt** the seventy day period; they do not start it running."  <u>United States v. Crooks</u>, 804 F.2d 1441, 1445 (9th Cir. 1986),

modified on reh'g, 826 F.2d 4 (9th Cir. 1987) (emphasis added).   See also

United States v. Ferris, 751 F.2d 436, 441 (1st Cir. 1984) ("For the purposes of a

Speedy Trial Act calculation, *the clock stopped running* until the interlocutory

appeals had been resolved.") (emphasis added); United States v. Rivera, 844

F.2d 916, 919 (2d Cir. 1988) ("the speedy trial clock **resumed** on the date the

exclusion allowed for an interlocutory appeal, § 3161(h)(1)(E), ended.")

(emphasis added); 3B Wright, King & Klein, Federal Practice & Procedure:

Criminal 3d, § 833 at 410-11 (3d ed. 2004) ("These exclusions operate to stop

the clock rather than reset it.").

In United States v. Winston, 492 F. Supp. 2d 15 (D. Mass. 2007), appeal

dismissed, No. 07-2090 (1st Cir. Sep. 21, 2007), the indictment was dismissed

because more than 70 non-excludable days had elapsed *including*, as here, 24

days that had run *before* the government's interlocutory appeal.  And in United

States v. Dessesaure, 527 F. Supp. 2d 193, 196 (D. Mass. 2007), appeal

docketed, No. 08-1029 (1st Cir. Jan. 4, 2008), the district court held: "However,

the government fails to include the non-excludable days that accrued prior to the

government's appeal . . . Such time [delay from an interlocutory appeal] is

excluded from the STA calculation, to be sure, **but the clock is not reset to day one**." (emphasis added).[2]

In somehow reaching the opposite conclusion, that an interlocutory appeal *restarts* a fresh STA clock under 18 U.S.C. § 3161(e), the District Court's Order cites to several cases—none of which support the ruling contained in the Order. See Order at 3-4.  In United States v. Mack, 669 F. 2d 28 (1st Cir. 1982), the defendant pleaded guilty, collaterally attacked his conviction, appealed the denial of the collateral attack, and was afforded an opportunity to plead anew after this Court reversed the district court's decision on the collateral attack.  Id. at 29.  There, *it was the appeal itself which caused the retrial*, meaning the date the "action occasioning retrial becomes final" under § 3161(e) is the date on which the mandate issued.  That is a far cry from the situation here, where the retrial was caused by the District Court's order in the first instance—without an appeal.

In United States v. Rush, 738 F.2d 497 (1st Cir. 1984), several co-defendants filed motions to dismiss on double jeopardy grounds.  One motion

---

[2]  The government's opening brief in Dessesaure is due April 28, 2008.  An alternative mandamus remedy is for this Court to stay the retrial in Carpenter pending this Court's decision in Dessesaure, since the decision there will be dispositive of the STA issue here, and will avoid the needless waste of judicial and other resources expended in conducting a worthless second trial.

was granted, the others were denied, and the unsuccessful defendants and the

government both took interlocutory appeals.  Id. at 508.  This Court affirmed

both orders.  However, this Court's dictum cited by the District Court in the

Order actually supports Mr. Carpenter's position:

> Courts which have considered the question of when an appeal ends and
> the clock **begins to run again** for speedy trial purposes have generally
> held that the applicable date is the date on which the appellate court issues
> its mandate.

Id. at 509 (emphasis added).  Mr. Carpenter agrees with this language, because

the STA clock "begins to run again" (but is not reset to zero) when the mandate

is issued.

In United States v. Kington, 875 F.2d 1091 (5th Cir. 1989), "the mistrial

[was] declared for the very purpose of permitting the appeal."  Id. at 1109.  In

those circumstances, the Fifth Circuit held that "it is more reasonable to regard

disposition of the appeal, rather than declaration of the mistrial, as the event

occasioning retrial."  Id.  Here, however, the District Court's new trial order was

*not* granted for the purpose of allowing the government to appeal, and if the

government had not bothered to appeal, the retrial would have occurred in early

2006.  See Carpenter, 494 F.3d at 18, n.4 ("We note that the government's

ability to appeal the district court's grant of a motion for a new trial is a

relatively recent phenomenon, arising from the 1984 amendments to [18 U.S.C.]

§ 3731."). And in <u>United States v. Gilliss</u>, 645 F.2d 1269 (8th Cir. 1981), another case involving collateral attack, the Eight Circuit's question posed about when the action occasioning the retrial "becomes final," <u>id.</u> at 1276, has long ago been settled.  <u>See</u> <u>Rivera</u>, 844 F.2d at 919 ("In a case where the appellate court orders a new trial *after conviction*, it is the appeal that constitutes 'the action occasioning the retrial'. . .  In the situation at hand, however, an interlocutory appeal after the district court had declared a mistrial, *the 70-day period had already started to run anew when the mistrial was declared*, and the speedy trial clock *resumed* . . . when the appeal became final.") (emphasis added).

Finally, the Order's reliance on the legislative history of the STA is misplaced.  While Judge Stephens did testify in 1971 that he had some concerns about when an order granting a new trial became final, <u>see</u> Order at 4, his testimony was superseded by the testimony addressed to the Senate in 1974, where the witnesses were virtually unanimous in their view that an order became final within the meaning of 18 U.S.C. § 3161(e) when the district court entered the order, rather than after an appeal of such order:

> [T]here was little disagreement among witnesses appearing before the Subcommittee on Constitutional Rights as to the wisdom of commencing time limits *with the date of the order giving rise to the retrial* . . . The section as it appears in S. 754 draws a distinction between cases of retrial following declaration by a trial judge of a mistrial or an order by the trial judge for a new trial; and cases where there is a retrial following a collateral attack or appeal.

reprinted in Anthony Partridge, Legislative History of Title I of the Speedy Trial Act of 1974, at 84 (1980) (emphasis added).

This legislative history proves the fallacy of the Order's conclusion that the STA clock started anew after the issuance of the mandate from this Court. That only occurs when it is an order of an appellate court that is the cause of the retrial. However, when the district court orders a retrial in the first instance, the STA clock starts to run from the date of the district court's order. Otherwise, the government could sidestep the STA entirely by filing numerous interlocutory appeals in the same case under 18 U.S.C. § 3731 (challenging bail orders, suppression orders, forfeiture orders, dismissal orders, and new trial orders), and obtain a "fresh" clock after each interlocutory appeal. The result would be similar to the situation here, where Mr. Carpenter has been forced to live under the Sword of Damocles of a federal indictment for *more than four years*.[3]

---

[3] Nor should there be any concern about starting a second trial while an interlocutory appeal from the first trial is pending. See Order at 4-5. A defendant can always seek a stay of the second trial (in either the district court or the court of appeals) pending a decision on the interlocutory appeal.

Accordingly, the Order's conclusion that the STA clock reset to zero following the government's interlocutory appeal is clearly erroneous, 82 non-excludable days have elapsed, the STA has clearly been violated, and mandamus should be granted with an order to the District Court to dismiss the superseding indictment.

### 3.     District Court Failed to Apply *Platt* Factors.

The District Court failed even to consider, let alone apply, the relevant Platt Factors.  As a result:

> Basically what the district court did here was to truncate the right conferred by Rule 21(b), and since such a judicial act is fairly describable as usurpative and cannot be remedied by an appeal from a final judgment, we can rectify it by granting the defendant's petition for a writ of mandamus and directing the district court to reconsider the motion for a change of venue in accordance with this opinion.

Balsimo, 68 F.3d at 187.  The District Court's failure to apply the Platt Factors will cause Mr. Carpenter irreparable harm, as he will be forced to go to trial in Boston *for a second time* and "will lose forever the benefits that a grant of [his] motion to transfer the case to [Hartford or Springfield] (where the case would be tried if the motion were granted) would have produced."  Id.  Mandamus is necessary now because "overturning the conviction, like acquitting the defendant, will not recover the interest that the transfer power is designed to secure."  Id.

"[T]he case law suggests that there are certain minimum procedures that should be followed before ruling on a motion to transfer." In re United States, 273 F.3d at 387. See also In re United States, 46 Fed. App'x 133, 135 n.2 (3d Cir. 2002) (mandamus appropriate "where a transferring court fails to provide a statement of its reasons for granting a transfer."). The only way for this Court to determine if the District Court soundly exercised its discretion on this issue is if the District Court had provided "a sufficient explanation of the factors considered." In re United States, 273 F.3d at 387. No such explanation exists because the District Court did not bother to consider the Platt Factors, and instead summarily denied the motion without any consideration, analysis or discussion. While the District Court may have, in its own mind, taken into account and weighed the relevant Platt Factors, this Court has "no basis to so hold on the record before [it]." Id. at 389. Thus, mandamus should issue to remand the matter to the District Court for reconsideration—without this Court having to express any opinion as to the merits of a transfer.[4] See id.

## 4.    **Reassignment is Mandatory.**

Local Rule 40.1(K)(1) requires that any new trial after remand from this Court "**shall** be reassigned to a judge other than the judge before whom the first

---

[4] Although, as previously stated, on the four relevant Platt Factors, Mr. Carpenter bats 3-for-4, while the government strikes out at 0-for-4.

trial was held." D. Mass. L.R. 40.1(K)(1) (emphasis added). The rationale behind this Rule is sound and exists entirely without criticism of the original judge.

Where resentencing is required after a remand, cases are invariably redrawn in the District of Massachusetts. "[I]n every post-*Booker* case where the Court of Appeals has ordered resentencing as to a pre-*Booker* sentence, I have ordered the case redrawn pursuant to Local Rule 40.1(K)." Richardson v. United States, 477 F. Supp. 2d 392, 401 (D. Mass. 2007). In any case where a new trial is to occur after an appeal, the Local Rules mandate reassignment:

> I find that a fair reading of D. Mass. R. 40.1 indicates the case would have been reassigned in any event under paragraph K(1). The prior proceeding before Judge Wolf involved fact finding that resulted in a final judgment for a proceeding dependent upon credibility determinations concerning live witnesses. This is the type of proceeding that D. Mass. R. 40.1(K)(1) contemplates as a trial.

Danaipour v. McLarey, No. 01-11528, Dkt. No. 211, slip op. at 8-9 (D. Mass. Sep. 12, 2003) (Woodlock, J.).

This rule exists primarily to ensure that factual inferences and credibility determinations in the second trial are not influenced by what occurred in the first trial. This policy was acknowledged by the First Circuit in In re Dedham Water Co., 901 F.2d 3, 4 (1st Cir. 1990) (granting mandamus and ordering reassignment because "without in any way suggesting any personal criticism,

that the second trial should be before another trier.") (internal citation and quotation marks omitted) (construing D. Mass. R. 8(i), an earlier version of Local Rule 40.1(K)(1)). <u>See also id.</u> at 5 ("I agree with the court that the district court's rules unambiguously require a new judge where there must be a new trial.") (Breyer, J., dissenting); <u>O'Shea v. United States</u>, 491 F.2d 774, 779 (1st Cir. 1974) ("If the case is remanded for a new factual determination by the district court judge, the fact that he has already made a resolution, particularly if this involved error on his part, may make it difficult to reapproach the question with a free and open mind.").[5]

Because the Local Rules require that the case be reassigned, particularly where "new" evidence is to be taken in a new trial, a writ of mandamus should issue ordering reassignment in conformance with D. Mass. L.R. 40.1(K)(1).

## <u>CONCLUSION</u>

Because the government counted 71 days having elapsed under the STA, the government suggested that "the more prudent course would be to dismiss the indictment." Gov. Opp., Dkt. No. 230 at 7. Yet, the District Court declined to dismiss based on a clear mathematical miscalculation. For all of the foregoing

---

[5] Perhaps the District Court summarily denied the motion to transfer venue because it had denied the same motion (in the same fashion) prior to the first trial.

reasons, defendant–petitioner Daniel E. Carpenter respectfully requests that this Court, on an emergency basis, issue a writ of mandamus to the United States District Court for the District of Massachusetts and provide the relief requested herein.

Respectfully submitted,

DANIEL E. CARPENTER,
By his attorney,

*/s/ Jack E. Robinson*
Jack E. Robinson
(1st Cir. No. 38097)
2187 Atlantic Street, Suite 905
Stamford, CT 06902
203.425.4500
203.425.4555-fax
robinsonesq@aol.com

Dated:  April 10, 2008

## CERTIFICATE OF SERVICE

I hereby certify that on the date hereof I have caused a true and correct copy of the foregoing Petition (including the annexed exhibit) to be served on each of the following persons via the District Court's CM/ECF system, by which copies will be sent electronically to the District Court and the registered participants as identified on the Notice of Electronic Filing (NEF).  Copies were also served by hand-delivery on the following:

Hon. George A. O'Toole, Jr.        Jonathan F. Mitchell
United States District Judge         Assistant U.S. Attorney
United States District Court         Office of the U.S. Attorney
1 Courthouse Way, Suite 2300     1 Courthouse Way, Suite 9200
Boston, MA 02210              Boston, MA 02210

*/s/ Jack E. Robinson*
Jack E. Robinson