```
              UNITED STATES DISTRICT COURT
           FOR THE DISTRICT OF MASSACHUSETTS


                                )
UNITED STATES OF AMERICA,       )
                                )
        Plaintiff,              )
                                ) Criminal Action
v.                              ) No. 04-10029-GAO
                                )
DANIEL E. CARPENTER,            )
                                )
        Defendant.              )
                                )


         BEFORE THE HONORABLE GEORGE A. O'TOOLE, JR.
              UNITED STATES DISTRICT JUDGE

                    STATUS CONFERENCE




      John J. Moakley United States Courthouse
                  Courtroom No. 9
                 One Courthouse Way
            Boston, Massachusetts  02210
               Thursday, April 24, 2008
                       2 p.m.



             Marcia G. Patrisso, RPR, CRR
                 Official Court Reporter
            John J. Moakley U.S. Courthouse
            One Courthouse Way, Room 3510
              Boston, Massachusetts  02210
                     (617) 737-8728

       Mechanical Steno - Computer-Aided Transcript
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   APPEARANCES:

 2
         OFFICE OF THE UNITED STATES ATTORNEY
 3       By: Jonathan F. Mitchell and Jack W. Pirozzolo,
         Assistant U.S. Attorneys
 4       John Joseph Moakley Federal Courthouse
         One Courthouse Way
 5       Boston, Massachusetts  02210
         On Behalf of the Government
 6
         LAW OFFICE OF JACK E. ROBINSON
 7       By: Jack E. Robinson, Esq.
         Clearwater House
 8       2187 Atlantic Street
         Stamford, Connecticut  06902
 9       On Behalf of the Defendant

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1                    P R O C E E D I N G S
 2           THE CLERK:  All rise.  This is the United States
 3   District Court for the District of Massachusetts.  Court
 4   is now in session.  Please be seated.
 5           For a final pretrial conference in the case of
 6   United States of America versus Daniel Carpenter,
 7   04-10029.  Would counsel please identify yourselves for
 8   the record.
 9           MR. MITCHELL:  Good afternoon, your Honor.
10   Jonathan Mitchell and Jack Pirozzolo on behalf of the
11   United States.
12           MR. PIROZZOLO:  Good afternoon, your Honor.
13           MR. ROBINSON:  Good afternoon, your Honor.  Jack
14   Robinson.  And with me at counsel table is
15   Mr. Carpenter.
16           THE COURT:  Good afternoon.  There are a number
17   of pending motions, but I think the one that perhaps
18   deserves the most attention is the -- yeah -- well, is
19   the motion for a continuance.
20           MR. ROBINSON:  Thank you, your Honor.  On behalf
21   of Mr. Carpenter and myself, we want to apologize to the
22   Court for any inconvenience that our motion for a
23   continuance, a short 30-day continuance, might cause.
24   Frankly, we miscalculated -- we didn't think we would be
25   here, but we are where we are in terms of the posture of
```

PDF created with pdfFactory trial version www.pdffactory.com

1  the case, and we take full responsibility for that.
2  But, again, we do want to apologize to the Court and,
3  frankly, to government counsel for this request which
4  really is required from our standpoint.
5         I'm not capable of trying the case; I'm not a
6  criminal defense trial attorney.  I should add that if
7  the motion is granted, the law firm of Greenberg
8  Traurig, and specifically, Mr. John Pappalardo -- and I
9  can represent this to the Court:  that if the motion is
10 granted, Mr. Pappalardo and the law firm of Greenberg
11 Traurig will file their appearance no later than the
12 close of business this coming Monday.
13        So, again, we're not looking for an open-ended
14 continuance; we're not looking to prolong the
15 proceedings.  God knows, Mr. Carpenter has been under
16 indictment now for over four years.  He wants to get
17 this over with.  I want to make sure that -- my ethical
18 obligation is to make sure that Mr. Carpenter gets a
19 fair trial, and he just can't have that with me trying
20 this case.
21        I know Mr. Mitchell is going to get up in a
22 minute and say that, well, he's got a trial I believe in
23 front of Judge Wolf in early June.  June 9th I think is
24 the date.  This case won't be a -- shouldn't have to be
25 a three-week trial like the last one.  In fact, it

PDF created with pdfFactory trial version www.pdffactory.com

1  doesn't even need to be a three-day trial.  In the civil
2  parlance, there's no genuine issues of disputed material
3  fact.  We could stipulate, frankly, to all of the
4  evidence and all of the documents, so there's no need,
5  frankly, for live witnesses.
6         We don't need to hear from the exchangers.  Why?
7  Because we'll stipulate to all of their documents and
8  their transactions.  We don't need to hear from Mr.
9  Paley because now that oral misrepresentations are out,
10 it no longer matters what he may or may not have told
11 the exchangers.  We don't need to hear from Mr. Allaire,
12 the government's options expert, or any of the broker
13 witnesses because we'll stipulate that $9 million was
14 lost in stock options at Paine Webber.  But we certainly
15 don't need to hear from a dozen bank witnesses to prove
16 any of that.
17        We'll stipulate that the wires were originated
18 and their destinations were -- and their destinations
19 were what they were.  So, I might add, we don't even
20 need to hear from Mr. Zappala, who's the government's
21 forensic accountant.  In fact, we love his Government
22 Exhibit 212 because it shows right there that not only
23 did Mr. Carpenter not make a dime out of this deal, he
24 actually invested and lost $2 million of his own.
25        So there's really no need for us to think

PDF created with pdfFactory trial version www.pdffactory.com

1  there's going to be another three-week trial with all
2  these witnesses.  You know, in a bout of professional
3  ardor, I've actually told Mr. Carpenter that I
4  actually think I could win that type of case, but that's
5  obviously not -- nothing that I would actually put my
6  head on.
7           So the fact of the matter is, your Honor, that
8  we do apologize for the inconvenience, but in order to
9  guarantee Mr. Carpenter a fair trial, we're just asking
10 for this short 30-day continuance.  Any time in June is
11 fine.  Mr. Pappalardo and Greenberg Traurig have said
12 they'll do any day in June that the Court dictates, and
13 if Mr. Mitchell is claiming that he's got a conflict
14 with another case, as I said, this case doesn't need to
15 be as long as the last one.
16          THE COURT:  Thank you.  Mr. Mitchell?
17          MR. MITCHELL:  The government opposes the
18 motion, your Honor.  The May 5th date was set in place,
19 as the Court knows, back on November 26th.  It was
20 after -- as we well know now -- after a careful
21 balancing between then-lead defense trial counsel's
22 schedule and the Court's schedule and the government's
23 schedule.
24          And the case is a long time in coming.  The
25 second trial is -- has been coming for a long time, and

1  it should be held shortly, very soon, and that is on May
2  5th.  There is no issue -- there is no legal impediment
3  to the Court's keeping the May 5th date.
4        There is no actual ineffective assistance claim
5  here.  Mr. Robinson should give himself a little more
6  credit.  He has filed dozens of motions and has
7  competently represented Mr. Carpenter throughout these
8  proceedings, including his cross-examination of certain
9  government witnesses at the last trial.  So there's no
10 issue about competence here.  And there's no issue,
11 frankly, about, as a general matter -- inexperience, if
12 that's what he's actually saying, is not a basis to
13 invalidate a conviction on the ground of incompetency on
14 the part of counsel.
15       So for all those reasons, your Honor, and for
16 the same reason that I and Mr. Pinault before me have
17 said time and time again, the exchangers, the people,
18 the victims in this case -- and I know we can't use that
19 word in front of the jury -- have been waiting for this
20 trial, for closure here, for a long time.
21       As it stands right now, the witnesses aren't
22 getting any younger.  I said this before:  One -- the
23 one passed away a few months ago, one is incompetent,
24 and we'll be asking the Court -- as a matter of fact, I
25 filed a motion earlier today asking that their testimony

1  from the first trial be read in; another exchanger is 92
2  years old, another is 88 years old.  The events that
3  gave rise to this case occurred back in the year 2000 --
4  '99 through 2001.  And the public has an interest in
5  moving this case along, and the government has been
6  urging it from day one.
7           There is, I will say -- because there has been a
8  first trial, because matters won't be substantially
9  different this time around, I think the parties agree
10 that this is something that Mr. Robinson or whoever else
11 they get in in the next week and a half can get up to
12 speed on.  But as it stands right now, May 5th was a
13 reasonable date, so there's no reason to move it.
14          And, in fact, I do have a trial starting on June
15 9th starting in front of Judge Wolf that is a firm date.
16 And that would create a conflict with me and my schedule
17 as imposed by another judge here.  Continuity of counsel
18 is an important consideration when it comes to motions
19 to continue, and it should be here.  I can't do both
20 trials, after all.
21          So for all those reasons, your Honor, the motion
22 to continue should be denied.
23          THE COURT:  Tell me a little bit more about the
24 case in front of Judge Wolf.  What kind of case is it?
25          MR. MITCHELL:  The defendant is a career

PDF created with pdfFactory trial version www.pdffactory.com

1  criminal defense attorney who secreted $3 million in
2  stolen art for over 30 years and was caught in Europe
3  and charged with interstate -- transportation of stolen
4  property in foreign commerce.  That trial is likely to
5  last about a week.
6          THE COURT:  What's the docket number of that
7  case?
8          MR. MITCHELL:  07-10075.
9          There is one other thing, as sort of an
10 afterthought, and that is the Court will recall we were
11 in this place prior to the last trial; that is to say
12 that there was a motion to continue that the Court
13 denied.  It was in March or April of 2005.  Mr.
14 Pappalardo was counsel at that point.  Mr. Pappalardo
15 was, I'd say, unceremoniously discharged by the
16 defendant on the ground that there had been an
17 irretrievable breakdown in their lawyer-client
18 relationship.  And I question whether things are
19 different now such that he could come into this case
20 immediately.  There has to be something on the record at
21 minimal that negates that, you know, concern, because
22 that may -- I'm not prejudging this, but that may be a
23 basis for a Sixth Amendment claim.  So I flag that as a
24 concern to the Court.
25         MR. ROBINSON:  Your Honor, to that point, I can

PDF created with pdfFactory trial version www.pdffactory.com

1  specifically state that we would be happy to put
2  anything on the record to say that not only is there no
3  difference in viewpoint, Greenberg Traurig, the law
4  firm -- in fact, Mr. Gary Greenberg is in the
5  courtroom -- Greenberg Traurig was representing Mr.
6  Carpenter in the ongoing civil proceedings for the last
7  three or four years.  So there would be no breakdown in
8  communications or agreement in how the case would be
9  defended by Mr. Pappalardo.  We'd be happy to put that
10 on the record.  That's why -- in fact, why Mr.
11 Pappalardo is ready, willing and able to appear, file
12 his appearance by the close of business Monday.
13         As to Mr. Mitchell's claim that somehow I could
14 do this case, I mean, that's almost a laughable
15 contention, frankly, your Honor.  Yes, for a civil case,
16 I could probably try it.  In fact, I am involved in the
17 civil case with Mr. Greenberg.  But I've never tried a
18 federal criminal case.  I can research the law and I can
19 file motions, but that's far from actually, you know,
20 conducting a trial as lead counsel.  This would be
21 tantamount to ineffective assistance if I were the lead
22 counsel here.
23         I can't try the case; Mr. Carpenter hasn't
24 retained me to try the case; and as my ethical
25 obligations, I wouldn't even propose myself to try the

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   case.  And frankly, your Honor, we're only asking for 30
 2   days, sometime in June -- any day in June that the Court
 3   can accommodate us -- which is much more than the year
 4   and a half that we've waited while the government's
 5   appeal was pending.
 6            So, yes, I understand that everybody's getting
 7   sick and tired of this case and people are getting old.
 8   I'm getting older each day as it goes by as well.  But
 9   30 days, frankly, when the government has, you know,
10   taken a year and a half to appeal, frankly, shouldn't
11   really be that big of an issue.
12            THE COURT:  Okay.  Well, let me put it this way:
13   First of all, it seems to me that the government's
14   objections are more or less general objections rather
15   than specific ones with perhaps the exception of the
16   calendar objection, the trial calendar.  And while I
17   share the view that the case has to get to trial and be
18   finished -- obviously, I share that view -- the
19   government was willing to take a dismissal and reindict.
20   So the urgency is relevant, I guess.
21            I will grant the motion on two conditions:  One
22   is that it will be granted, not today, but upon the
23   filing of Mr. Pappalardo's appearance, which will be
24   done by Monday.
25            MR. ROBINSON:  Agreed, your Honor.
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1             THE COURT:  And the second is, a statement from
 2   Mr. Carpenter himself on the record that he has
 3   confidence in Mr. Pappalardo and trusts him to present
 4   the case.  Is that --
 5             THE DEFENDANT:  Could I speak to that issue,
 6   your Honor?
 7             THE COURT:  Yes.
 8             THE DEFENDANT:  Once again, I want to emphasize
 9   my personal apology to the Court and the government.  I
10   just want to make sure that I remind your Honor at the
11   time when I was first being put on trial -- and I guess
12   I have a unique perspective because I'm the only one in
13   the courtroom who's actually been the defendant in a
14   criminal case and knows the absolute horror of that --
15   the government seems to forget, and maybe the Court
16   doesn't remember, Mr. Pappalardo was chosen as lead
17   counsel for what arguably really was the case of the
18   century even though it wasn't in this country.  He was
19   lead counsel for Mikhail Khodorkovsky who actually, you
20   know, was a political prisoner in Russia and ended up
21   having to serve ten years.  Anybody who's read the
22   articles, whether they be in Time or Newsweek, knows
23   that Mr. Pappalardo was the hero of that case.  I just
24   want the Court to know that at the time when we had the
25   hearing before your Honor, I had just been told that he
```

1    was going to have to spend four of the six weeks of my
2    case in Russia defending Mr. Khodorkovsky.
3              So any thought that I had any worries or
4    concerns about Mr. Pappalardo are greatly exaggerated.
5    And he has been my personal attorney for over seven
6    years.  And what is only because of my fear of going
7    into court with someone who is going to be spending his
8    time with, arguably, a much more famous case than mine
9    and that I felt that I needed a full-time attorney to
10   help me, that's why I chose to go with Marty Weinberg
11   and with Rob Goldstein.  And as you remember, Marty
12   Weinberg was tied up, and even though we wanted to go
13   with a September/October, at that time we ended up
14   having to go with a July trial, and I got wedged in
15   between not only jurors' vacation schedules but the
16   government's vacation schedule.
17             So with all due respect to the Court and with
18   all due respect to the government, I believe my Firth
19   and Sixth Amendment constitutional rights trump
20   everybody's convenience or inconvenience.  But I just
21   want to give my sincerest apology to the Court for any
22   inconvenience I've caused.
23             And I certainly want to say that I don't feel
24   that we filed any frivolous motions at all.  And I just
25   want to tell you the fear that I had in the first trial,

PDF created with pdfFactory trial version www.pdffactory.com

```
 1   that Mr. Snider and Mr. Iantosca were sitting right
 2   there, and I saw them grimacing and making all sorts of
 3   comments.  So all the filings we did to move this to
 4   Hartford or Springfield was strictly because of my fear
 5   of the exchangers taking what is tantamount to a civil
 6   trial and turning it into some sort of kangaroo court.
 7            I at no time had no disrespect for the Court, no
 8   disrespect for your Honor, and certainly I have the
 9   utmost respect for the talent of John Pappalardo because
10   he is one of the greatest trial attorneys, not just in
11   Boston, but in the country.  So obviously at the time we
12   could not put that on the record, and everybody told me
13   don't put it on the record, but I have the utmost
14   respect for Mr. Pappalardo and I have the utmost respect
15   for this Court.
16            THE COURT:  June 2nd.  The first Monday in June.
17            MR. ROBINSON:  Thank you, your Honor.
18            MR. MITCHELL:  That would pose a problem for me.
19   I hate to be between you and Judge Wolf, your Honor.
20            THE COURT:  I would hate to be, too, but it's
21   when we can do it.  And I think that it's something that
22   happened -- this is a retrial of an '04 case, and I
23   think it has to take priority over an '07 case, if
24   there's competition between them.
25            So there are some other, I think, motions we can
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1    deal with sort of summarily.  I will now -- well, yeah,
 2    I will now -- well, the motion by Mr. Dershowitz to
 3    withdraw is allowed.  Actually, I guess there are two of
 4    them.  Most are redundant.
 5            THE CLERK:  Yeah.
 6            THE COURT:  The motion for reassignment of the
 7    case under local Rule 40.1 is denied.  It doesn't deal
 8    with this situation; it deals with a reversal of the
 9    trial after appeal on the merits.
10            The motion for return of the passport is denied
11    given the prospect of a trial in the near future, and
12    the motion to dismiss for grand jury irregularities is
13    also denied.
14            I won't deal with the motion to eliminate.  I
15    think we probably should have another pretrial
16    conference a little closer because although the way the
17    local rule is, although this is a retrial, we'll need
18    witness lists and exhibit lists and so on, and we
19    typically do it ten days before the trial so that we
20    know whether there's going to be reciprocal discovery --
21    reciprocal disclosure.  I expect there will be.
22            THE CLERK:  Thursday, May 22nd, 2 p.m., for a
23    final pretrial.
24            THE COURT:  Okay.
25            MR. MITCHELL:  One more issue, your Honor,
```

PDF created with pdfFactory trial version www.pdffactory.com

1   because it probably makes sense to get it out in the
2   open right now.  There are footnotes in two of the
3   defendant's motions.  And they're really not germane to
4   the motions themselves, but are discovery matters, at
5   least ostensibly, that I think should be dealt with
6   right now.
7            I'm looking at -- and I'll read this from
8   defendant's reply in support of a motion to transfer
9   venue.  A virtually identical footnote appears in one of
10  his other motions -- recently filed motions.  And this
11  has to do with the government's discovery obligations
12  concerning Marty Paley.  The footnote says, "Paley's
13  testimony in the civil case not only contradicts his key
14  testimony in the criminal case, but the government would
15  be hard-pressed to even call Paley as a witness at the
16  retrial without running afoul of its *Brady, Giglio* and
17  *Napue* obligations."  And then it says that the
18  government will have a similar problem with Merrill
19  Lynch witness Gerald Levine.
20            As it stands right now, your Honor, I don't know
21  what discovery obligation we'd be running afoul of if we
22  called these witnesses to the stand.  We do intend to
23  call each of these individuals.  So, you know, when I
24  see a, you know, *Brady* accusation like that, I'm going
25  to flag it ahead of time so that there's complete

PDF created with pdfFactory trial version www.pdffactory.com

```
 1  transparency.
 2          So I'm raising it for the Court and inviting
 3  counsel to explain exactly what he means by "possible
 4  Brady violations."
 5          THE COURT:  Mr. Robinson?
 6          MR. ROBINSON:  Well, your Honor, I would request
 7  that when Mr. Pappalardo appears, that we can explain it
 8  in writing at that time.
 9          THE COURT:  But I think you wrote the footnotes.
10  What did you have in mind?  I don't have it in front of
11  me.
12          MR. ROBINSON:  Just generally what did I have in
13  mind?  Well, Mr. Paley --
14          THE COURT:  Well, I guess the question is:  What
15  discovery do you think has not been made that ought to
16  have been made?  Testimony in the civil case?
17          MR. ROBINSON:  Yes.  There was perjury committed
18  in the civil case, so the government would have to
19  disclose to us -- disclose to Mr. Carpenter -- that it,
20  in fact, knew that these two witnesses committed perjury
21  in their civil testimony as part of its disclosure
22  obligations.  That's all we have.
23          THE COURT:  And that would be impeachment
24  evidence or --
25          MR. ROBINSON:  Well, it would be impeachment
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1  evidence as well as it would be, you know, evidence of
 2  another offense committed by those witnesses, yes.  We
 3  just wanted -- just like Mr. Mitchell, we wanted to flag
 4  the issue for the government, and I'm sure Mr.
 5  Pappalardo will elaborate at the appropriate time.
 6           MR. MITCHELL:  I guess, your Honor, now that
 7  we're several weeks in advance of the trial date, if
 8  there is something that we're supposed to turn over, I'd
 9  be happy to do it; I just don't know what we're supposed
10  to turn over.
11           THE COURT:  I'm not entirely clear either.  It
12  sounds like he wants you to tell him what he just said.
13  But anyway, we will leave it -- I'm not sure it's a live
14  issue.
15           Okay.  Thank you.  We'll be in recess.
16           MR. ROBINSON:  Thank you, your Honor.
17           THE CLERK:  All rise.  Court is in recess.
18           (The proceedings adjourned at 2:26 p.m.)
19
20
21
22
23
24
25
```

PDF created with pdfFactory trial version www.pdffactory.com

```
 1                    C E R T I F I C A T E

 2

 3       I, Marcia G. Patrisso, RPR, CRR, Official

 4  Reporter of the United States District Court, do hereby

 5  certify that the foregoing transcript constitutes, to

 6  the best of my skill and ability, a true and accurate

 7  transcription of my stenotype notes taken in the matter

 8  of Criminal Action No. 04-10029-GAO, United States v.

 9  Daniel E. Carpenter.

10

11

12                      /s/ Marcia G. Patrisso
                        MARCIA G. PATRISSO, RPR, CRR
13                      Official Court Reporter

14

15

16

17

18

19

20

21

22

23

24

25
```

PDF created with pdfFactory trial version www.pdffactory.com