UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | ) CRIMINAL NO. 04-10029-GAO |
| | ) |
| DANIEL E. CARPENTER, | ) |
| | ) |
| Defendant. | ) |

## DEFENDANT DANIEL E. CARPENTER'S
## OPPOSITION TO THE GOVERNMENT'S MOTION IN LIMINE TO PERMIT
## INTRODUCTION OF PRIOR TRIAL TESTIMONY OF
## LINDA JOKINEN AND JOSEPH IANTOSCA

Defendant Daniel E. Carpenter ("Mr. Carpenter") respectfully submits this Opposition to the Government's "Motion in Limine"[1] to permit the introduction of prior trial testimony of Mr. Joseph Iantosca and Ms. Linda Jokinen (the "Government's Motion"). As grounds for denial of the Government's Motion, and as is set forth in greater detail below, Defendant states that: significant and material factual developments have emerged since the time of the now unavailable witnesses' testimony at the first trial; the Defendant was not afforded a meaningful opportunity, and at that time did not have a similar motive, to cross-examine the now unavailable witnesses on these material, post-trial factual developments; and as a result, the Government's Motion must be denied on the basis of the Confrontation Clause.

## INTRODUCTION

Much has happened since the testimony which the Government seeks to have admitted was given by the now unavailable witnesses in July 2005. Of greatest relevance is the fact that, as a result of a settlement just reached, UBS PaineWebber, Inc. ("PaineWebber") has agreed to pay Benistar Property Exchange Trust Co., Inc. ("Benistar") the sum of $12,487,000, thereby

---
[1] This is a misnomer, of course, as the government seeks to expand, rather than limit, evidence.

BOS 46,356,337v4 5-8-08

enabling Benistar to return to the exchangors the full amount of their losses claimed in the Indictment.

## FACTS

On December 10, 2003, Benistar filed an NASD arbitration proceeding against PaineWebber alleging, *inter alia*, that PaineWebber engaged in misconduct resulting in substantial monetary losses suffered by Benistar.

On November 3, 2004, by order of the Massachusetts Suffolk Superior Court, a copy of which is attached hereto as Exhibit 1, six exchangors (plaintiffs in the certain civil action pending in Suffolk Superior Court) were assigned the ability to prosecute the NASD arbitration proceeding against PaineWebber. The court's order further stated "[a]ny damages that may be awarded to Benistar Property against PaineWebber are to be held in escrow by the plaintiffs (through their counsel) pending further order of this Court."

On July 12 and 13, 2005, the now deceased Linda Jokinen testified in the prior trial of this matter. (Tr. 2-116 through 2-141; Tr. 3-5 through 3-95) On July 14, 2005, the now unavailable Joseph Iantosca testified in the prior trial of this matter. (Tr. 4-81 through 4-93)

On December 15, 2005 a panel of three NASD arbitrators issued a unanimous arbitration award in favor of Benistar and against PaineWebber in an amount in excess of $12.5 million (the "Arbitration Award"). A copy of the Arbitration Award is attached hereto as Exhibit 2.

On January 26, 2006 the Massachusetts Suffolk Superior Court issued a further Order, a copy of which is attached hereto as Exhibit 3, stating that the six plaintiff exchangors' attorneys would "serve as the sole counsel entitled to pursue collection of the NASD award dated December 15, 2005, and in particular as sole counsel to appear on behalf of Benistar...."

On April 18, 2007 a New York state court entered judgment (the "New York Judgment"), a copy of which is attached hereto as Exhibit 4, confirming the NASD Arbitration Award.

On April 29, 2008, during the pending appeal of the Arbitration Award and New York Judgment, Benistar was advised by the six exchangors' attorneys that PaineWebber had agreed to settle the Arbitration Award and New York Judgment for the amount of $12,487,000.

Accordingly, in view of the PaineWebber settlement, the Government can no longer in good faith argue (as it did in the prior trial) that the exchangors will suffer any losses since the settlement amount exceeds the exchangors' losses alleged in the Indictment, as well as any legal fees that they may owe their attorneys.[2] The Government may no longer assert or seek to introduce testimony (as it did in the prior trial) that the exchangors will not receive the return of the monies which were placed with Benistar.

## DISCUSSION

I. **The Prior Testimony Of Mr. Iantosca And Ms. Jokinen Should Not Be Admitted, Because It Does Not Qualify For The Hearsay Exception Pursuant To Federal Rule Of Evidence 804(b)(1)**

Federal Rule of Evidence 804(b)(1) provides that, if the declarant is "unavailable," as defined by 804(a), the following is not excluded by the hearsay rule: "Testimony given as a witness at another hearing of the same or a different proceeding . . . if the party against whom the

---

[2] As the Government is further aware, a jury in the Massachusetts State Court proceeding on December 11, 2002 determined that Merrill Lynch was civilly responsible to and assessed damages in favor of the following exchangors and against Merrill Lynch: Cahaly $992,230; Jeffry Johnston $541,930; Mass Lumber $3,237,192; Joseph Iantosca $2,913,306.86; Belridge Corp. $514,834.14; and Bellmore Assoc $444,659. In a decision by the Massachusetts trial court dated February 25, 2003, the judgment against Merrill Lynch was vacated and a judgment was entered by the trial judge in favor of Merrill Lynch. Thereafter, on September 24, 2004, the Massachusetts trial court judge ordered that the exchangors were entitled to a new trial against Merrill Lynch. The exchangors and Merrill Lynch filed appeals from the trial court's decisions. The exchangors sought to reinstate the jury verdict. Merrill Lynch sought to reinstate the trial court's decision in favor of Merrill Lynch. The Massachusetts Supreme Judicial Court upheld the lower court's rulings, and a new trial is pending.

3

testimony is now offered . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination." In order to admit offered testimony under FRE 804(b)(1), "the proponent must satisfy both requirements of the rule: unavailability and similar motive and opportunity to develop the challenged testimony." United States v. Bartelho, 129 F.3d 663, 670 (1st Cir. 1997) (citing United States v. Salerno, 505 U.S. 317, 321 (1992)).

As a preliminary matter, Mr. Carpenter concedes the unavailability of both Mr. Iantosca and Ms. Jokinen, therefore the Court is left to determine whether the Government had the similar motive to develop the testimony of, and whether Mr. Carpenter had the similar motive and opportunity to cross-examine, Mr. Iantosca and Ms. Jokinen.

### A. Based Upon Intervening Events, Such As The PaineWebber Settlement, Mr. Carpenter Did Not Have A Similar Opportunity Or Motive To Cross Examine The Witnesses At The First Trial

When this Court considers whether the "similar motive" inquiry has been satisfied, it must scrutinize "the factual and procedural context of each proceeding to determine both the issue in dispute and the intensity of interest in developing the particular issue by the party against whom the disputed testimony is offered." Bartelho, 129 F.3d at 672. As explained by a leading secondary source: "The opportunity [to cross-examine] must have been such as to render the conduct of the cross examination or the decision not to cross-examine meaningful in light of the circumstances which prevail when the former testimony is offered. <u>A change of circumstances may be such as to bar compliance with this requirement</u>." McCormick on Evidence, Sec. 255 at 616 (2d ed. 1972) (emphasis added). In addition, as the Third Circuit Court of Appeals has explained, "[t]he similarity of motive requirement assures that the earlier treatment of the witness is the rough equivalent of what the party against whom the statement is offered would do at trial if the witness were available . . . ." Kirk v. Raymark Industries, Inc., 61 F.3d 147, 164 (3d Cir.

1995); see also United States v. Geiger, 263 F.3d 1034, 1038 (9th Cir. 2001) ("The 'similar motive' requirement is inherently factual and depends, at least in part, on the operative facts and legal issues and on the context of the proceedings.").

In this case, the intervening events described above clearly have led to a material change in circumstance between the instant and the prior trial. The admission of the testimony of these unavailable witnesses would be unfairly prejudicial to Mr. Carpenter, as it would prevent him from cross-examining the witnesses on the subject of these subsequently arising events. Additionally, even if it were possible to conduct the cross-examination today of Mr. Iantosca or Ms. Jokinen, such questioning would not be a "rough equivalent" of the cross-examination they faced in the prior trial.

As a result, the factual circumstances surrounding Mr. Iantosca's and Ms. Jokinen's testimony have changed greatly, and Mr. Carpenter has a distinct and developed motive to seek their cross-examination. These events go to critical, substantive portions of the two witnesses' respective testimony and would have been fertile grounds for cross-examination had the intervening events occurred prior to the first trial. Mr. Carpenter's right to confrontation therefore would be impermissibly violated by admitting into evidence the testimony at issue. Compare United States v. Monaco, 702 F.2d 860, 868 (11th Cir. 1983) (although the Eleventh Circuit acknowledged that defense attorneys were not able to cross-examine a witness on his violation of a sequestration order at the first trial, because they were not aware of it, the court allowed the testimony to be admitted under FRE 804(b)(1) since the violation "did not relate to the substance of [the witness's] testimony against appellants," and "the only effect of such cross-examination would have been to impeach [the witness's credibility]"). The former testimony of

these witnesses should not be admitted into evidence, as the Government has failed to meet the requirements of FRE 804(b)(1).

It may be argued that the liability of third parties, rather than Carpenter, was an existing motive in the cross-examination of the witnesses in the first trial, but this argument fails on the one hand to define the matter with requisite specificity, and on the other to take into the account the facts as they existed at that time, and how their change altered motives, as well. To be sure, the cross-examination sought to elicit testimony tending to show that Mr. Paley, and not Mr. Carpenter, was liable for the offense conduct. But that does not speak to all third parties, and certainly not to the newly arisen facts of the PaineWebber settlement or the new trial with Merrill Lynch.

The changed circumstances are the new facts of PaineWebber's having been found liable to Benistar and PaineWebber's resultant settlement on this issue, as well as the pending new trial in the civil proceeding against Merrill Lynch. These facts give rise to a distinct and different motives for cross-examination: (1) to establish PaineWebber's and Merrill Lynch's culpability; (2) to establish that the exchangors are to be made whole by reason of PaineWebber's settlement; and (3) to establish that this is no more than a civil dispute among many parties and that no criminal misconduct occurred. These "more particular points . . . [are] . . . quite different," Bartelho, 129 F.3d at 672, and constitute sufficiently distinct and previously inapplicable motives to warrant exclusion of the unavailable witnesses' testimony. Id. (affirming the District Court's refusal to admit at trial statements of an unavailable witness at the witness's suppression hearing, and reasoning that while the witness's credibility was generally an issue in each proceeding, the government had no interest in developing the witness's credibility specifically with respect to his statements concerning the trial defendant at the witness's suppression hearing,

6

and as a result "the government's motive at each proceeding, viewed in context, was actually quite different"); cf. United States v. Omar, 104 F.3d 519, 523-24 (1st Cir. 1997) (noting that at the time of the witness's grand jury appearance, due to another witness's similar denial, the government had no evidence with which to confront and contradict the witness, stating in *dicta* that therefore "it is arguable that the government had no meaningful opportunity to discredit [the witness] at the time").

### B. The Testimony of Mr. Iantosca Must Be Excluded

Mr. Iantosca's testimony boils down to the following assertions: (1) he did business with Benistar Property Exchange Company, Tr. 4-85; (2) he gave Benistar Property Exchange Company money, Tr. at 4-88; (3) he never got the money back, Tr. at 4-89; (4) Mr. Carpenter told him that he lost all the money "because he was playing the stock market or something. I don't know." Tr. at 4-89; (5) Mr. Paley and Mr. Carpenter asked him for additional money so that Mr. Carpenter could "play the stock market . . . and make money." Tr. 4-89-90.

Mr. Iantosca's testimony is inadmissible. This is so because there is no loss as Mr. Iantosca will fully recover his funds through the settlement with PaineWebber. Second, Mr. Iantosca may receive additional recoveries as a result of his civil action against Merrill Lynch, the retrial of which has recently been upheld by the Massachusetts Supreme Judicial Court. These subsequent events evidence that this was a civil dispute among many parties and that there was no criminal conduct.

Even if there were some question as to the admissibility of Mr. Iantosca's testimony as to the facts at issue, it is inadmissible by operation of the Confrontation Clause. The new facts of the judgment against PaineWebber and the settlement that will make the exchangors whole, as well as the continuing civil action against Merrill Lynch, are inextricably entwined with and

contradictory of Mr. Iantosca's testimony that he lost money and that Mr. Carpenter was responsible for such losses. At the time of the first trial, Mr. Carpenter could not cross-examine a witness concerning facts which had not yet come into existence. But today Mr. Carpenter is unable to confront Mr. Iantosca with these new facts on cross-examination due to his inability to testify at the second trial. Mr. Carpenter's right to confront witnesses against him precludes the admission of Mr. Iantosca's prior testimony in these circumstances.

In addition, Mr. Iantosca's testimony is unfairly prejudicial. The witness' difficulty in hearing makes for a choppy, near incoherent record, and one that is more capable of inducing sympathy for the declarant or prejudice against the Defendant than to provide any factual information. Most of the brief transcript here is comprised of Mr. Iantosca either: stating that he does not recall the information asked of him, see, e.g., Tr. 4-86, 4-88; asking that questions be restated, see, e.g., Tr. 4-86, 4-87, 4-89, 4-91; or providing personal background information of no relevance. Tr. 4-81 through 4-85. The limited probative value of his testimony is outweighed by its prejudicial effect.

Accordingly, the testimony of Mr. Iantosca must be excluded, and the Government's Motion denied.

### C.   The Testimony of Linda Jokinen Must Be Excluded

Ms. Jokinen's testimony covers a range of Benistar business practices, largely read from documents on which Martin Paley is listed as recipient or author, and all of which can be established through Government witness Martin Paley. See, e.g., Tr. 2-124 through 2-129 (running through Benistar standard operating procedures, reading from letters of Mr. Carpenter to Mr. Paley and attached memoranda, and opining on the former's authority relative to the latter); Tr. 2-134 (marketing materials were forwarded to Mr. Carpenter for review); Tr. 3-25

through 3-34, *passim* (identifying Benistar marketing materials and documents). Ms. Jokinen's testimony also goes toward showing that Mr. Carpenter handled all investment accounts, Tr. 3-54, and that Mr. Carpenter rarely spoke with her, and instead mostly to Mr. Paley. Tr. 3-66.

In sum, Ms. Jokinen's testimony at the first trial was used by the Government in an effort to demonstrate: (1) that there was a connection between Mr. Carpenter and Mr. Paley; (2) that Mr. Carpenter controlled all investment activity of Benistar; (3) the nature of Mr. Carpenter's investment activity; and (4) that the exchangors were not repaid. All but the first category, which can be addressed by the government's witness Mr. Paley, fail to meet the test for admissibility.

Ms. Jokinen's testimony is inadmissible, because it is inextricably bound up with the new facts, on which Mr. Carpenter cannot cross-examine this now unavailable witness, and so violates the Confrontation Clause. The testimony also is inadmissible as irrelevant (and unfairly prejudicial), as under the terms of the Indictment and by the Government's own admission, the alleged crimes occurred with the transfer of funds by the exchangors' to Benistar, and so the particulars of their investment is not relevant. Further, there is no loss as the exchangors will fully recover their funds through the settlement with PaineWebber, and may receive additional recoveries as a result of their new trial against Merrill Lynch.

## II.   Even If This Court Determines That The Prior Testimony Meets The Requirements Of FRE 804(b)(1), Mr. Iantosca's And Ms. Jokinen's Testimony Should Be Excluded Pursuant To FRE 403 As Duplicative Of Other Witnesses And Cumulative

Even if this Court determines that the Government has satisfied its burden under FRE 804(b)(1) and decides that Mr. Carpenter had a similar motive and opportunity to cross-examine the now unavailable witnesses at the first trial, that rule "does not exempt [the moving party] from having to show that the prior testimony they seek to introduce is relevant under Rule 401

9

and does not violated other rules of evidence, such as Rule 403." <u>United States v. Avants</u>, 367 F.3d 433, 443-44 (5th Cir. 2004). Rule 403 of the Federal Rules of Evidence provides that "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." In this case, the testimony of the unavailable witnesses is largely duplicative of the testimony expected to be elicited from other witnesses called by the Government. As such, their prior testimony would add little of probative value to the Government's case, and would only serve to prolong the trial. Therefore, their testimony is cumulative and should not be allowed under Fed. R. Evid. 403.

## CONCLUSION

WHEREFORE, defendant Daniel E. Carpenter respectfully request that this Court deny the Government's Motion In Limine To Permit Introduction Of Prior Trial Testimony of Linda Jokinen And Joseph Iantosca.

**RESPECTFULLY SUBMITTED:**
DANIEL E. CARPENTER, Defendant,
By his attorney:

/s/ A. John Pappalardo
A. John Pappalardo (BBO # 338760)
GREENBERG TAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

## Certificate of Service

    I hereby certify that on this 8th day of May, 2008, I served on counsel of record in the foregoing matter Daniel E. Carpenter's Opposition to the government's Motion in Limine to Permit Prior Trial Testimony of Linda Jokinen and Joseph Iantosca, by means of the ECF system.

                                                          /s/ A. John Pappalardo
                                                          A. John Pappalardo