UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10029-GAO |
| ) | |
| DANIEL E. CARPENTER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**UNITED STATES' MEMORANDUM IN SUPPORT OF ITS
MOTION IN LIMINE REGARDING
ARBITRATION AWARD AND POTENTIAL
SETTLEMENT REGARDING UBS PAINEWEBBER**

The United States submits this memorandum in support of its motion in limine to exclude from evidence 1) an arbitration award (the "Arbitration Award") entered against UBS PaineWebber ("PaineWebber") in favor of Benistar Property Exchange Trust Co. ("BPETC"), and 2) a potential settlement between and UBS PaineWebber and BPETC. Massachusetts state courts assigned the Arbitration Award and potential settlement to some of the victims in this case. As is discussed in more detail below, the Arbitration Award and potential settlement are not relevant to the issues in this matter and, to the extent they have any relevance at all, it is far outweighed by the risk of prejudice, confusion, and undue delay to the proceedings.

**Relevant Facts and Procedural History**

The Arbitration Award and potential settlement arise out of two separate civil actions, one being litigated in Massachusetts (the "Massachusetts Civil Action") and one being litigated in New York (the "Arbitration"). In order to provide necessary context to the United States' position here, the United States describes below the charges in this case, certain proceedings in

both the Massachusetts Civil Action and the Arbitration, and the information the United States has received about a possible settlement involving PaineWebber and BPETC.

### A.     The Pending Charges

The Superseding Indictment (the "Indictment") in this matter charges Daniel Carpenter ("Carpenter") with mail and wire fraud in violation of 18 U.S.C. §§ 1341 and 1343. The Indictment alleges that Carpenter was a principal of BEPTC. The Indictment alleges that Carpenter defrauded property owners who wished to engage in tax free property exchanges ("1031 Exchanges") with BEPTC. According to the Indictment, property owners were induced to entrust the proceeds of their real estate sales with BEPTC based on representations that BPETC would hold the money safely in escrow until directed by the property owners either to return the funds or send the funds to a third party to purchase the replacement property. The Indictment further alleges that, rather than maintaining the funds safely in escrow, Carpenter, without the property owners' knowledge or consent, used the money to trade options in an effort to enrich himself. The Indictment further alleges that Carpenter continued to accept 1031 Exchange funds from property owners and continued to engage in his speculative, self-dealing options trading even after he had incurred substantial losses.

The Indictment alleges that Carpenter first engaged in the wrongful options trading through brokerage accounts he had opened at Merrill Lynch under the name BPETC. It alleges that Carpenter later transferred the accounts to PaineWebber after Merrill Lynch terminated his trading privileges. It also alleges that Carpenter continued to engage in the options trading through the PaineWebber accounts and did so for about three months until BPETC ran out of sufficient funds to cover the scheduled closings.

B.     The Massachusetts Civil Action

Beginning in January 2001, many of the property owners whose funds had been lost (the "plaintiffs") sued BPETC, other Carpenter-affiliated companies, Merrill Lynch, PaineWebber, Martin Paley, Carpenter, and Carpenter's wife Molly.  See Cahaly v. Benistar Property Exchange Trust Co., Inc., 68 Mass. App. Ct. 668 (2007).  The plaintiffs advanced a variety of statutory and common law claims, including, inter alia, breach of contract, breach of fiduciary duty, fraud, conversion, misrepresentation and violations of the consumer protection laws.  Id. at 670-71.  The trial judge granted summary judgment for the property owners against BPETC on the plaintiffs' claims for breach of contract and conversion.  Id. at 671.[1]  In 2002, a jury found BPETC, Carpenter, and others, including Merrill Lynch, liable on all of the plaintiffs' common law and consumer protection claims.  Id.[2]

On November 3, 2004, after further proceedings not especially pertinent to this motion, the trial judge allowed the plaintiffs' bill to reach and apply any claims BPETC had against PaineWebber.  Id. at 678; see November 2004 Order, attached at Tab A.  BPETC appealed the trial judge's decision "complain[ing] that the judge was without authority, after entering judgment for the plaintiffs, to reach and apply any cause of action [BPETC] ha[d] against PaineWebber to the plaintiffs."  68 Mass. App. Ct. at 678-79.  The Mass. Appeals Court rejected BPETC's argument and affirmed the trial judge's orders assigning the claim to the plaintiffs and

---

[1] The judge granted summary judgment in favor of PaineWebber on the plaintiffs' claims against PaineWebber.  The Appeals Court affirmed the trial judge's grant of summary judgment to PaineWebber.  Id. at 682-83.

[2] After trial, the judge allowed Merrill Lynch's motion for judgment notwithstanding the verdict, but then, following a submission by the plaintiffs, changed the decision and ordered a new trial on the plaintiff's claims against Merrill Lynch.  See id. at 671-672.

giving them "control over the prosecution of the cause of action, to protect the value of the claim." Id. at 679. The Mass. Appeals Court also rejected the Benistar defendants' (including BPETC, Carpenter, and other Benistar entities) other various challenges to the judgment.

BPETC and the other Benistar defendants appealed to the SJC. One of the arguments BPETC (and the other Benistar defendants) pressed before the SJC was that the Arbitration Award in favor of BPETC against PaineWebber demonstrated PaineWebber's "supervening misconduct" that excused BPETC's failure to perform. See Benistar SJC Brief at *45, attached at Tab B. On May 8, 2008, the SJC affirmed in all respects the decision of the Mass. Appeals Court. See Cahaly v. Benistar Property Exchange Trust Company, Inc., 2008 WL 1960356 (Mass. May 8, 2008). In its opinion, the SJC rejected all of the challenges to the judgment asserted by BPETC and the other Benistar defendants. See id. at *13.

    **C.**    **The Arbitration**

In December 2003, BPETC and an affiliate, Benistar Employer Services Trust Co., Inc. ("BESTCO"), filed the Arbitration against PaineWebber. See UBS PaineWebber Inc. v. Benistar Property Exchange Trust Co., Inc., N.Y. Supreme Ct. (Nov. 16, 2006) ("New York Arbitration Opinion"), attached at Tab C. In the original claim, BPETC and BESTCO demanded compensatory damages of $29 million and punitive damages of $58 million. See Arbitration Award, attached at Tab D. BPETC and BESTCO's original theory – which they asserted before the plaintiffs were assigned the claim – was that PaineWebber improperly halted the trading and that BPETC and BESTCO could have recouped the loses if they had been permitted to keep trading. See UBS PaineWebber v. Benistar Property Exchange Company, N.Y. Supr. Ct. (Brief of Appellant UBS PaineWebber, Feb. 19, 2008) at 13, attached at Tab E.

After the plaintiffs took over responsibility for asserting BPETC's claims pursuant to the November 3, 2004 order assigning the claim, the theory of liability changed. Id. Instead of arguing that PaineWebber had acted improperly in halting the trading, the plaintiffs argued that PaineWebber acted improperly in permitting any such trading at all. Id.; see also New York Arbitration Opinion at 2. Specifically, the plaintiffs argued that PaineWebber violated the "know your customer rule" by allowing Carpenter to trade options in the BPETC accounts with the plaintiffs' money. See New York Arbitration Opinion at 6. The plaintiffs argued that Carpenter's fraud was ultra vires with respect to the very limited authority BPETC had over the funds, and that Carpenter's fraud would not prevent PaineWebber from being liable to BPETC since, by virtue of the assignment, Carpenter (the wrongdoer) would not benefit from any award. See Id. at 12-13 & n.14.

In late 2005, the Arbitration panel awarded a judgment of approximately $8.7 million in compensatory damages against PaineWebber and in favor of BPETC only. Id. at 3; see also Arbitration Award. It also awarded interest and fees, which, together with damages award resulted in a total award of over $12 million. See Arbitration Award. The compensatory damages represented the trading losses incurred in the accounts from the time the accounts were opened in October 2000 until the time they were closed in January 2001. See New York Arbitration Opinion at 3. PaineWebber appealed the award to the New York Supreme Court, which affirmed the Arbitration Award. See New York Arbitration Opinion at 15. PaineWebber has appealed the New York Supreme Court decision to the Appellate Division. That appeal is still pending.

### D. The Potential Settlement

Counsel for Carpenter has informed the United States that a settlement has been reached between the plaintiffs, acting on behalf of BEPTC, and PaineWebber in the Arbitration. Counsel for the plaintiffs has informed the United States that a settlement is close, but not yet final. Under the terms of the settlement, a payment of approximately $12 million will ultimately go to the plaintiffs. Five of the seven victims in this case are plaintiffs who will presumably recover funds under the settlement.[3] Two victims, Brian Fitzgerald and Byron Darling, will not, because they made separate settlements.

### Analysis

Carpenter, through counsel in this matter, has informed the United States that he intends to offer in evidence the Arbitration Award and, if it is consummated, the settlement between PaineWebber and the plaintiffs (through BPETC). Although Carpenter has not fully articulated the basis upon which such evidence would be admissible, Carpenter has said to the United States that both the Arbitration Award and the settlement are admissible to show a) that PaineWebber, not Carpenter, is at fault; b) that the property owners have been made whole by the settlement; and c) that this is really a civil dispute.[4] None of these proffered reasons, however, is a basis for admission of the Arbitration Award or the settlement.

---

[3] Apparently, counsel for BPETC, Carpenter, and the other Benistar-related entities in the Massachusetts Civil Action are requesting that the plaintiffs make certain concessions before agreeing not to object to the settlement. See April 29, 2008 Letter from Jack Robinson to Anthony Zelle, attached at Tab F.

[4] Carpenter articulated this theory to some extent in his recently filed opposition to the United States' request to offer the prior testimony of Linda Jokinen and Joseph Iantosca. See Opposition to Government's Motion in Limine To Permit Introduction of Prior Testimony of Linda Jokinen and Joseph Iantosca at 6.

### A.     PaineWebber's Culpability

PaineWebber's potential liability to the plaintiffs through BPETC is not legally relevant to the charges and defenses in this case, and therefore does not provide a basis for admission of the Arbitration Award under Rule 401.  The issue in this case is whether Carpenter is culpable under the mail and wire fraud statutes for obtaining the property owners' funds based on the false and misleading representations that the money would be kept safe, and not be moved, when in fact, Carpenter was moving the funds to an options trading account and was suffering, and continued to suffer, extensive options trading losses undisclosed to the property owners.  The question of whether PaineWebber was negligent (or committed other wrongdoing) in allowing Carpenter to open the BPETC accounts does not, in any way, determine the outcome of that issue.[5]  Even if PaineWebber had actively conspired with Carpenter to defraud the property owners, Carpenter would not have a defense.  See United States v. Roti, 484 F.3d 934, 935 (7th Cir. 2007) ("That two people cooperate to swindle a third does not excuse either of the schemers").

Assuming for the sake of argument that PaineWebber's culpability has some relevance to the issues in this case, the Arbitration Award should still not be admitted.  The Arbitration Award does not support the inference that PaineWebber was culpable while Carpenter was not.  The Arbitration Award provides no statement of any kind that Carpenter was not culpable.  See

---

[5]  In fact, at the prior trial in this matter, this Court sustained Carpenter's objection to evidence of certain conversations between PaineWebber personnel and Carpenter in which Carpenter admitted he was at fault, not PaineWebber.  See U.S. v. Carpenter, Trial Transcript, pp. 6-35-39; 6-52-53.   The Court said the issue of PaineWebber's fault was not relevant. Id. at 6-53.  To the extent the Court changes its view and deems PaineWebber's culpability relevant, the United States will seek to have admitted the conversations between PaineWebber and Carpenter that the Court previously excluded.

Arbitration Award at Tab D.  In fact, the record of the Arbitration shows quite the contrary.  The record shows that the Award was premised on the notion that Carpenter had committed fraud in connection with his handling of BPETC funds.  As is evident from the New York Arbitration Opinion and other parts of the record, the crucial issue was whether PaineWebber could be held liable to the corporate entity BPETC for allowing Carpenter to place the fraudulent trades through the BPETC accounts – not whether Carpenter did nor did not commit a fraud.  On this record, putting the Arbitration Award – and nothing else – before the jury to support the inference that Carpenter was not at fault would mislead the jury.

To the extent Carpenter disputes this view of the record and claims that the Arbitration Award absolved him of culpability (and the Court is inclined to allow the Award into evidence), the United States ought to be permitted in the interest of completeness to introduce additional evidence showing that the Arbitration Award did no such thing.  Cf. United States v. Wittig, 2005 WL 1227938 *2-*3 (D. Kan. May 23, 2005) (granting motion in limine to exclude evidence of pending arbitration proceedings from criminal trial; but stating that if any aspect of the arbitration should come in, the entire arbitration record would come into evidence).  The United States should be able to introduce into evidence such matters as, inter alia, a) the arbitration record, b) the New York Arbitration Opinion, c) briefs submitted in the Arbitration, d) the SJC's opinion rejecting Carpenter's argument that PaineWebber was at fault, e) the Massachusetts Appeals Court and Superior Court proceedings establishing the plaintiffs' rights to pursue the arbitration on behalf of the corporate entity BPETC, and f) additional testimony from participants in the Arbitration.  Such evidence would establish that the Arbitration Award did not determine that Carpenter was not culpable for the conduct charged here.  Adding such

evidence to the trial would, of course, increase the scope of the proof at trial and consume substantial time, effort and attention on a collateral issue, while providing very little probative value on the principal issues in the case. Still, this would be a far better alternative than allowing the jury to be misled.

The same basic arguments apply to Carpenter's attempt to introduce any settlement agreement or offer of settlement entered between PaineWebber and the plaintiffs (through BPETC). The possible settlement is not relevant to the issues in this case, and, to the extent there is any marginal relevance to the settlement, such relevance is far outweighed by the risk of confusion and undue delay of the proceedings. In addition, Fed. R. Evid. 408 prohibits introduction of offers of settlement and settlements to prove liability for or invalidity or amount of a claim. See Fed. R. Evid. 408; Roti, 484 F.3d 934, 936-37 (7th Cir. 2007) (Current Rule 408 bars admission in criminal cases of settlement with third party, with limited exceptions specified in the rule).

### B.   Repayment

The question of whether certain of the property owners in this case may ultimately be able to recoup some (or all) of their losses pursuant to an Arbitration Award or settlement has no bearing on Carpenter's culpability under the mail and wire fraud statutes either. Evidence of victims' recovery of funds is not admissible for three related, but distinct, reasons.

First, the government is not required to prove that the victims were unable to recover the lost funds. See United States v. Sindona, 636 F.2d 792, 801 (2d Cir. 1980) (in wire fraud prosecution court properly excluded from evidence a payment by third party in settlement of civil suits; fact that victim suffered no loss was irrelevant); United States v. Brocksmith, 991

F.2d 1363, 1368 n.2 (7th Cir. 1993) ("The fact that a victim received partial reimbursement from another party is not ordinarily relevant."); cf. also United States v. Vincent, 416 F.3d 593, 600 (7th Cir. 2005) (proof that a victim recovered some of the lost funds during a bankruptcy proceedings had "little to no relevance to the mail or wire fraud charges" because the "government was not obligated to prove that [the victim] lost all, or even a portion, of the entrusted money.").

Second, repayment of lost funds after the fact is not relevant to the question of the defendant's intent. See United States v. Alexander, 849 F.2d 1293 (10th Cir. 1988) (district court correctly excluded evidence of settlement in 1984 because it could not be considered relevant to defendant's intent in 1982); United States v. Bowman, 81 Fed. Appx. 104, 106 (9th Cir. 2003) (Court properly excluded evidence of defendant's attempt to find a replacement guarantor for victims because it would improperly focus jury on the "irrelevant issue of whether [defendant] intended for investors to lose their funds."). This is especially so when, as is the case here, the repayment comes from a third party years later in settlement of a separate civil litigation with the victims. See Sindona, 636 F.2d at 800-01 (settlement of civil suit by third party three years after events in criminal case was properly excluded; repayment by third party was irrelevant to defendant's intent).[6]

Third, to the extent there is any marginal relevance to evidence of repayment by third parties, it is substantially outweighed by the risk of prejudice, delay and confusion. Id.; see also,

---

[6] In fact, Courts have even excluded evidence that the defendant repaid some or all of the loss on the ground that it is not relevant to a mail fraud prosecution. See, for example, United States v. Scott, 701 F.2d 1340, 1346-47 (5th Cir. 1983). Here, Carpenter would be trying to benefit from a third party's payment.

Bowman, 81 Fed. Appx. at 106-07 (evidence of efforts at repayment properly excluded under Rule 403). Because PaineWebber's payment to the plaintiffs seven and a half years after Carpenter's scheme collapsed does not in any meaningful way tend to negate any aspect of Carpenter's state of mind (or any other element of the offense) during the relevant period of time, its admission poses too great a risk of confusion, prejudice, and undue delay to the proceedings.

Of course, evidence of Carpenter's knowledge of the losses he was incurring in the options market is, and remains, highly relevant evidence of his intent. While repayment by a third party in civil litigation years after the events at issue in sheds little, if any, light on Carpenter's intent at the time of the offense, Carpenter's own knowledge of the losses at the time he was taking money from the property owners is highly probative of Carpenter's intent at the time he was committing the alleged fraud. Such evidence, however, focuses on Carpenter's state of mind during the time he was accepting money from the property owners for the period covered by the Indictment, up to late 2000 and early 2001. It does not focus on a third party's conduct seven and a half years later.

### C.     The "Civil Dispute" Argument

Admitting the Arbitration Award and potential settlement to show that the matter was really a civil dispute would not be proper either. It is not a defense to either the mail or wire fraud statutes that the matter is really civil and not criminal. Any argument that the matter is really a civil dispute is, in essence, a jury nullification argument, which is plainly improper. See United States v. Sepulveda, 15 F.3d 1161, 1190 (1st Cir. 1993). It is not a basis upon which to admit either the Arbitration Award or the potential settlement.

**Conclusion**

For the foregoing reasons, this Court should grant the United States' motion <u>in limine</u> and exclude from evidence a) the Arbitration Award, b) the potential settlement, and c) any questions eliciting testimony from witnesses regarding the Arbitration Award or the potential settlement.

                                                Respectfully submitted,

                                                MICHAEL J. SULLIVAN
                                                United States Attorney

By:

                                                <u>/s/ Jack W. Pirozzolo</u>
                                                JONATHAN F. MITCHELL
                                                JACK W. PIROZZOLO
                                                Assistant U.S. Attorneys
                                                U.S. Attorney's Office
                                                U.S. Courthouse, Suite 9200
                                                1 Courthouse Way
                                                Boston, MA 02210

Date: May 19, 2008

**CERTIFICATE OF SERVICE**

I, Jack W. Pirozzolo, hereby certify that on May 19, 2008 I served a copy of the foregoing by electronic filing on counsel for the defendant.

                                                <u> **/s/ Jack W. Pirozzolo** </u>
                                                Jack W. Pirozzolo