# ATTACHMENT C

SCANNED ON 11/30/2008

## SUPREME COURT OF THE STATE OF NEW YORK — NEW YORK COUNTY

PRESENT:     **CHARLES E. RAMOS**                              PART __53__
                                    *Justice*

*UBS*                                               INDEX NO.         *600156/06*

                                                    MOTION DATE       _____/_____

- v -                                               MOTION SEQ. NO.   __001__

*Benister*                                          MOTION CAL. NO.   _____

The following papers, numbered 1 to _____ were read on this motion to/for _____

|                                                                 | PAPERS NUMBERED |
|-----------------------------------------------------------------|-----------------|
| Notice of Motion/ Order to Show Cause — Affidavits — Exhibits ... | _____  |
| Answering Affidavits — Exhibits _____  | _____  |
| Replying Affidavits _____ | _____  |

## Cross-Motion:   ☐ Yes   ☐ No

Upon the foregoing papers, it is ordered that this motion

is decided in accordance with
accompanying memorandum decision and order.

FILED
NOV 30 2006
NEW YORK
COUNTY CLERK'S OFFICE

Dated: ___11/16/06___                    _____
                                          HON. CHARLES E. RAMOS

Check one:   ☑ FINAL DISPOSITION     ☐ NON-FINAL DISPOSITION

Check if appropriate:     ☐ DO NOT POST

MOTION/CASE IS RESPECTFULLY REFERRED TO JUSTICE
FOR THE FOLLOWING REASON(S):

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK:COMMERCIAL DIVISION
--------------------------------------X
In the matter of the Application of

UBS PAINEWEBBER INC. N/K/A
UBS FINANCIAL SERVICES, INC.,

                    Petitioner,              Index No. 600156/06

          -against-

BENISTAR PROPERTY EXCHANGE TRUST
COMPANY, INC.,

                    Respondent.
--------------------------------------X

**Charles Edward Ramos, J.S.C.:**

In motion sequence 001, petitioner UBS Painewebber Inc.
("UBS"), moves, pursuant to Article 75 of the CPLR, to vacate the
arbitration award dated December 15, 2005 issued by the National
Association of Securities Dealers ("NASD") in favor of the
respondent, Benistar Property Exchange Trust Company, Inc.
("Benistar").

<u>Background</u>

This dispute arises from a brokerage relationship between
UBS and its former customer, Benistar.  In October 2000, after a
similar two-year relationship with Merrill Lynch, Benistar
transferred certain accounts to UBS.  The accounts transferred
were corporate accounts, qualified for options trading, and non-
discretionary[1].  At the end of eight weeks of activity, Benistar
suffered substantial losses[2].  UBS and Daniel Carpenter (the

---

[1]  A non-discretionary account restricts trading authority
to the account owner.  No discretion is granted to the broker.

[2]  Approximately $8.7 million in cumulative losses.

chairman, president, and sole owner of Benistar)[3] agreed to
close all open accounts to cease any further losses.

In a related action in Massachusetts, *Cahaly et al v
Benistar et al*[4], 16 Mass L Rep 220 (2003)(the "Massachusetts
Litigation"), it was revealed, allegedly for the first time, that
the losses incurred during Benistar's trading through UBS
represented funds entrusted to Benistar by Massachusetts
individuals and businesses, to be held and invested only in
conservative securities.  UBS was made a co-defendant in that
action and was subsequently granted summary judgment dismissing
the claims against it. *Petition*, Exhibit 8 (Memorandum and Order
on UBS's Motion to Dismiss dated February 5, 2002).  Benistar,
however, was found liable for fraud and misrepresentation,
intentional conversion of client funds, breach of fiduciary duty,
and violations of Massachusetts statutes proscribing unfair and
deceptive practices in commerce[5].

Commencing December 10, 2003, Benistar, and an affiliate,
Benistar Employer Services Trust Company, Inc. ("BESTCO"), filed
a claim against UBS in arbitration.  The amended claim alleged
that UBS was liable for the trading losses incurred due to a lack
of due diligence in allowing Benistar (through Carpenter) to make
the trades.  At the conclusion of the proceeding, Benistar was

---

[3]   See footnote 1 *supra*.

[4]   This was an action brought by the customers of Benistar
to recover lost monies traded by Carpenter through Benistar.

[5]   Benistar was liable for damages in the amount of $20
million, plus interest and attorney fees.

awarded approximately $8.7 million in compensatory damages, $3.8
million in interest, and $125,000 in attorney's fees.  This sum
represented the total losses incurred through the trading account
with UBS. *Arbitration Decision*, December 15, 2005.

### Choice of Law

In the Master Account Agreement, the parties have expressly
agreed to have the arbitration governed by the Federal
Arbitration Act ("FAA").  To the extent it is not controlling,
the parties have agreed to apply New York law to the Master
Account Agreement.

### Discussion

In its petition, UBS challenges the arbitration award.
Among the allegations, UBS argues that the Panel[6]: (1) "exceeded
their powers" under the 9 USC 10(a)(4)[7] of the FAA by refusing
to consider or decide legal issues; (2) failed to consider
material evidence under 9 USC 10(a)(3) to the prejudice of UBS;
(3) manifestly disregarded applicable law raised in UBS's
defenses; and (4) rendered an irrational award by not applying
New York law.

UBS's petition for vacatur of the arbitration award is
denied.

The FAA permits vacatur of an arbitration award where the

---

[6]  The arbitration Panel consisted of one attorney and two
non-attorneys.

[7]  Petitioner mis-cites the applicable sections of the FAA
in its petition to this Court as 9 USC 10(a)(1) and 9 USC
10(a)(3). *See Petition* at Page 1; *Petition* at ¶49.

3

arbitrators were "guilty of misconduct... in refusing to hear evidence pertinent and material to the controversy... or any other misbehavior by which the rights of any party have been prejudiced," or "where the arbitrators exceeded their powers." 9 USC 10(a).

A court may vacate an arbitration award either on the grounds set forth above or on one of the several judicially recognized "non-statutory" grounds, such as manifest disregard of the law or evidence, irrationality, or public policy. *Sawtelle v Waddell & Reed, Inc.*, 304 AD2d 103 (2003).

## Statutory Grounds for Vacatur

It is established law that judicial review of arbitration awards is extremely limited, and an award will be upheld so long as there is even a "barely colorable justification for the outcome". *Wien & Malkin LLP v Helmsley-Spear, Inc.*, 6 NY3d 471, 479 (2006), quoting *Andros Compania Maritima, SA v Marc Rich & Co*, 579 F2d 691, 704 (2nd Cir 1978). A court should not vacate an award for the arbitrator's errors of fact and law, or substitute its judgment for that of the arbitrators. *Id* at 479-480.

Section 10(a)(4) allows vacatur of an arbitration award:

"where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject matter submitted was not made."

In other words, vacatur may only be invoked where an "arbitrator exceeds his powers when he rules on issues not presented to [him] by the parties." *Hoeft v MVL Group, Inc.* 343

4

F3d 57, 71 (2nd Cir 2003).

Here, UBS fails to adequately prove that the arbitrators exceeded their powers under the FAA. The thrust of UBS's petition relies on a brief colloquy in the arbitration transcript where the Panel allegedly refuses to enforce the law. *See Tr.* at 668. Two of the three members of the Panel state that they are "not capable" of "decid[ing] legal issues." *Id* at 671. Further, that the Panel would not "make judgments on the technical...legal considerations." *Id* at 668.

In a vacuum, these statements cast a shadow of doubt on the competence of the Panel, at least in part, to adequately arbitrate this case in consideration of applicable law. However, as evidenced throughout the transcript, the Panel acted in the exact manner that it first stated it would not, in that, it clearly considered the legal issues and evidence presented, as well as made legal conclusions necessary to foster a rational decision. The statements cited by UBS merely elude to the preliminary reluctance of the Panel and/or repugnance of the idea of making judicial-type legal rulings. This certainly does not mean that the Panel did not consider the legal issues, allow their argument, make legal determinations, or disallow material evidence to be admitted or made part of the record, throughout the (three day) arbitration.

Petitioner relies heavily on the broad "brand of justice" language cited in *Banco de Seguros del Estado v Mut. Marine Office, Inc.*, 344 F3d 255, 262 (2nd Cir 2003) where the Court

5

(which ultimately ruled to uphold the arbitrator's award),
quoting *Local 1199 v Brooks Drug Co.*, 956 F2d 22, 25 (2nd Cir
1992)[8], opines that "we must determine 'whether the
arbitrator[s] acted within the scope of [their] authority,' or
whether the arbitral award is merely the 'arbitrator[s'] own
brand of justice.'"  Here, the Panel rendered a ruling based on,
and in consideration of, legal arguments that were raised by
counsel, and witness testimony that was taken during the
arbitration.  Evidence that the Panel made a ruling based on the
legal issues and evidence presented, such as UBS's failure to
fulfill due diligence obligations and adhere to "know your
customer[9]" rules before it allowed Benistar to trade under a non-
discretionary account, if at all, are found throughout the
transcript.

For example:

> ▶Merrill Lynch ended the brokerage relationship with
> Benistar due to the risk they presented to the firm and
> the broker at Merrill Lynch conveying those risks and
> described the accounts to a broker at UBS. *Tr.* 1245-
> 1246.

> ▶UBS's branch manager was left in the dark by his own
> employee about Benistar's prior history of excessive
> losses with Merrill Lynch and their subsequent shutdown
> of the account. As a result, a much less thorough
> investigation by UBS into Benistar took place before
> allowing Benistar to trade. *Tr.* 270-273, 276, 278.

---

[8]    The Second Circuit in this case affirmed the lower court,
which affirmed the decision of the arbitrator.

[9]    The "know your customer" rule provides reasonable
commercial standards by requiring the broker to use due diligence
to learn the essential facts relative to its customers. *See
Fidelity & Deposit Company of Maryland v Chemical Bank New York
Trust Co.*, 65 Misc 2d 619 (1st Dept 1970).

►Two UBS employees had prior access but only briefly[10]
visited Benistar's website which described in detail
the nature of Benistar's property exchange business
(such as acting as a third party liaison for real
estate transactions). *Tr. 842-843; 1033-1034.*

Petitioner cites *In re Arbitration Between UBS Warburg LLC
and Auerbach, Pollak & Richardson, Inc.*, 2001 WL 1586978 (NY
County, 2001), where this Court vacated an arbitration award
based on the arbitrators stating it was going to "ignore the law"
and did ignore it.  However, this case is clearly distinguishable
because the Panel here contradicted their statements by actually
considering the law and making a rational decision based on that
consideration.  Based on the foregoing, petitioner's argument for
vacatur on 9 USC 10(a)(4) grounds is without merit.

Section 10(a)(3) of the FAA provides the following:

A court may vacate an arbitration award "where the
arbitrators were guilty of misconduct in refusing to
postpone the hearing, upon sufficient cause shown, or in
refusing to hear evidence pertinent and material to the
controversy; or of any other misbehavior by which the rights
of any party have been prejudiced."

Petitioners argue that the Panel refused to hear evidence
that was pertinent and material to the controversy to their
prejudice.  More specifically, it is alleged that the Panel
disallowed evidence to be admitted related to the Massachusetts
Litigation such as a decision finding Benistar liable for fraud
(in relation to the unclean hands argument), and a decision
dismissing negligence claims of Benistar's customers against UBS

---

[10]    "Briefly" is to say that they did not look past the
"home page." *Tr. 842-843; 1033-1034.*

7

(to argue principles of collateral estoppel and res judicata).
This Court disagrees.

UBS mischaracterizes the transcript in an effort to persuade
this Court to vacate the arbitration award.  The transcript
clearly evidences that UBS was given every opportunity to
introduce relevant evidence, and relevant evidence was not
disallowed.  First, counsel for Benistar *stipulated* at the
hearing that Benistar was found liable for fraud in the
Massachusetts Litigation. *Tr.* 1546-47.  Accordingly, there was no
need for introduction of documents to prove the same[11].  In any
event, contrary to this argument, after UBS "narrow[ed] down" the
documents to be admitted into evidence to one memorandum and
decision, this "one and only one" Court order (granting UBS
summary judgment) that UBS sought to introduce was blatantly
admitted and marked as Exhibit R 42. *See Tr.* 1848-1850.

In an alleged effort to prove collateral estoppel and res
judicata, petitioner further argues that the Panel excluded a
decision from the Massachusetts Litigation (UBS's motion to
dismiss) that was relevant and material because it held that UBS
had no legal duty of due care to Benistar's customers, and that
the customers could not complain that UBS had been negligent in
failing to detect Benistar's fraud.  This alleged exclusion was
supposedly the product of a "veto" over evidentiary decisions

---

[11]  However, since the order and decision was already marked
as an Arbitrator's Exhibit in the paper submissions, it
technically was part of the record and did not require separate
admission. *Tr.* 1851-1852.

8

given to Benistar by the Panel[12]. *See Memorandum of Law in*
*Support of Petition* at pg 24.   This contention is absurd.   The
alleged "veto" did not bar counsel from unilaterally introducing
and admitting the "one and only one" summary judgment order
previously discussed (over opposing counsel's objection).
Furthermore, in consideration of the limiting statement by
counsel above, the attempt to admit another order may have been
properly rejected as waived or untimely.   However, as noted in
the transcript, the Arbitrator's Exhibits that were attached to
the paper submissions were technically part of the record and
needed not to be formally introduced into evidence. *Tr.* 2463;
1851.

Nevertheless, UBS examined an expert witness (a former
Judge) as to the effect of all the decisions from the
Massachusetts Litigation. *Tr.* 1686 *et seq.*   The arguments for
preclusion under res judicata and collateral estoppel were not
persuasive to the Panel because the identical issues in the
arbitration were not litigated in the Massachusetts Litigation,
and thus preclusion was not appropriate.   *See Tr.* 1717-1720.

Lastly, in answering a question by the Panel as to whether
the parties had a full and fair opportunity to be heard, counsel

---

[12]   In an evidentiary ruling, the Panel required that the
parties stipulate to all orders from the Massachusetts Litigation
(impliedly not already submitted in the paper submissions) that
were binding on the arbitration and to introduce those into
evidence. *Tr.* 1555-1556.   However, they subsequently (and
unnecessarily) admitted the "one and only one" order and decision
(granting UBS summary judgment) over opposing counsel's
objection. *Tr.* 1848-1850; 1856-1857.

for UBS states: "UBS has had the opportunity to present its
evidence, and I appreciate, greatly appreciate the attention of
the Panel." *Tr.* 2484.  Indeed, if counsel for UBS felt wronged by
the Panel in any way, this was the precise time it was to be
articulated.

<u>Non-Statutory Grounds for Vacatur</u>

In a further attempt to vacate the arbitration award (and to
suggest that the Panel's award was not based on the merits),
petitioner argues that the Panel manifestly disregarded the
defenses raised by UBS and/or rendered an irrational award by
allegedly abdicating their obligation to apply New York law.

To modify or vacate an arbitration award on the ground of
manifest disregard of the law, a court must find "both that: (1)
the arbitrators knew of a governing legal principle yet refused
to apply it or ignored it altogether and (2) the law ignored by
the arbitrators was well defined, explicit, and clearly
applicable to the case."  *Id* at 481 quoting *Wallace v Buttar*, 378
F3d 182 (2nd Cir 2004).

Similarly however, this is a "severely limited doctrine" and
gives extreme deference to arbitrators.  *Wien & Malkin LLP v
Helmsley-Spear, Inc.*, 6 NY3d 471, 480, 481 (2006) quoting
*Government of India v Cargill Inc.*, 867 F2d 130 (2nd Cir 1989).
It requires more than a simple error in law or a failure by the
arbitrators to understand or apply it; and it is more than an
erroneous interpretation of the law. *Id* citing *Duferco Intl.
Steel Trading v T Klaveness Shipping A/S*, 333 F3d 383, 389 (2nd

10

Cir 2003). The doctrine only applies where the arbitrators act
with "egregious impropriety," and where none of the provisions of
the FAA apply. *Id* at 480 quoting *Duferco Intl. Steel Trading v T
Klaveness Shipping A/S*, 333 F3d 383 *supra* at 389.

Furthermore, a court may infer that the arbitrators
manifestly disregarded the law if it finds that the error made by
them is so obvious that it would be instantly perceived by the
average person qualified to serve as an arbitrator. *Sawtelle v
Waddell & Reed, Inc.*, 304 AD2d 103 *supra* at 108. "Determining
whether to make this inference is not an easy task and a
reviewing court must proceed with caution." *Id*.

It is uncontested that UBS adequately raised legal defenses
of unclean hands[13] to the Panel prior to and during the
arbitration. *See e.g.* Tr. 665-666; 1718; 2339-2340; *Petition*, Ex.
12 at pg 21; Ex. 5 at pg 4; Ex. 13 at pg 2; Ex. 6 at pg 1. What
remains disputed is whether the Panel, in rendering the award,
either considered the defense and deemed it meritless, or
alternatively, refused to apply (or ignored altogether) a clearly
applicable law to the case. Based on the arbitration transcript,

---

[13] Unclean hands is an equitable doctrine invoked by courts
to prevent a plaintiff that might otherwise be entitled to relief
from such relief on the basis that the plaintiff's own conduct is
so egregious as to outweigh the need to punish the defendant.
*Reuters Transaction Servs. v Bloomberg LP*, 2004 US Dist LEXIS
27336 (SDNY 2004). In New York, courts apply the maxim requiring
clean hands where the party asking for the invocation of an
equitable doctrine has committed some unconscionable act that is
directly related to the subject matter in litigation and has
injured the party attempting to invoke the doctrine. *De Beers LV
Trademark Ltd. v Debeers Diamond Syndicate Inc.*, 2005 US Dist
LEXIS 9307 (SDNY 2005).

this Court finds the former to be applicable.

As previously detailed, UBS relies on the brief colloquy in the transcript, where members of the Panel state that they are "not capable" of "decid[ing] legal issues" and would not "make judgments on the technical...legal considerations." *Tr.* at 668 et seq. However, the transcript is riddled with evidence that the Panel did just the opposite. For example:

> ►The attorney on the Panel, in an exchange with UBS's counsel asks: "Let's assume that PaineWebber breached its due diligence obligations to understand who the client was or what the company was about. Is the fact that Mr. Carpenter committed a fraud, does that mean that on behalf of Benistar properties it has dirty hands and can't recover?" *Tr.* 664-665.

> ►In an exchange with UBS's counsel, the Chairman of the Panel points out that, in effect, the Panel will consider applicable law, but will not defer to counsel's interpretation of the law; "You [UBS] are telling us that this is the law, but that is your interpretation of the law. I am sure Mr. Zelle [Benistar's counsel] has a different interpretation, but it puts this Panel between a rock and a hard place." Another Panel member then adds: "It *will* be fun." *Emphasis added.* (*Evidencing a preliminary reluctance, but an affirmative intention to consider applicable law.*) *Tr.* 668.

> ►Evidencing the Panel's knowledge of the legal standard applied to arbitration awards, the Chairperson states: "Manifest disregard of the law. ...we don't want to do that." *Tr.* 668.

> ►In an exchange with Benistar's counsel, the attorney on the Panel asks: "Can you separate the entity from the individual, if the individual committed fraud?" Benistar's counsel responds: "Oh, absolutely. Yes." *Tr.* 678.

> ►In the same exchange as above, the attorney on the Panel asks: "You are entitled to say that the individual who committed the fraud was not the alter ego of the company, in effect?" Counsel for Benistar retorts: "Right. And that it was the duty of the brokers to make that distinction, just like any rogue

12

director who might have signing authority that is
embezzling checks.  That is ultra vires, is the legal
term." *Tr*. 678.

▸In another exchange, here between the attorney on the
Panel and a witness, the attorney asks: "You have an
entity and you have management of the entity.  Is there
a distinction between what management of the entity
does and the entity itself, in terms of the claim?" *Tr*.
1702.

▸The attorney on the Panel, in an exchange with counsel
for Benistar notes: "The court did not say that because
of whatever fraud might have occurred, that Benistar
was prohibited from pursuing these actions in
arbitration." *Tr*. 1720.

Based on the foregoing, it is apparent that the Panel

clearly understood and considered the defenses (and counter

arguments[14]) presented.  This consideration *at least* meets the

"barely colorable justification" standard governing vacatur and

certainly fails to amount to an "egregious impropriety" by the

arbitrators.  *Wien & Malkin LLP v Helmsley-Spear, Inc.*, 6 NY3d

471, 479 *supra*, quoting *Andros Compania Maritima, SA v Marc Rich

& Co*, 579 F2d 691, 704 [2nd Cir 1978]); *Duferco Intl. Steel

Trading v T Klaveness Shipping A/S*, 333 F3d 383 *supra* at 389.

Moreover, any error in law made by the arbitrators would not be

so obvious that it would be instantly perceived by the average

person qualified to serve as an arbitrator.  *See Sawtelle v

Waddell & Reed, Inc.*, 304 AD2d 103 *supra* at 108.  Furthermore, as

mentioned, this Court is not required to vacate an award due to

---

[14] Benistar raised multiple counter arguments that
evidently persuaded the Panel.  One notable argument was that
Carpenter committed an ultra vires act of fraud, and due to an
assignment of claims from Benistar to its customers, unclean
hands does not apply because Carpenter (the wrongdoer) will not
benefit from the award.

13

the arbitrator's errors of fact and law, or substitute its
judgment for that of the arbitrators. *See Id* at 479-480 *supra*.
Therefore, the arbitrators are found not to have manifestly
disregarded the law.

To vacate an arbitration award on the grounds of
irrationality requires a compelling showing. *Battaglia v New York
City Transit Auth.,* 1994 NY Misc. LEXIS 183 (NY County 1994).
This showing must clearly provide that there was no rational
basis upon which the arbitrators could have rendered the award.
Petitioner fails to make such a showing.  Rather, the petitioner
argues that the award was irrational due to the arbitrators
alleged failure to consider applicable New York law.  As detailed
throughout the transcript, and as referenced above, there is
ample evidence that the Panel considered applicable law (such as
due diligence, unclean hands, res judicata, collateral estoppel,
etc.) when rendering its award. Therefore, the petitioner's
argument fails to show irrationality.

> "One of the reasons that courts are so limited in their
> ability to review arbitrators' decisions is that arbitration
> is a creature of contract between parties who wish to avoid
> the courtroom, and who therefore agree to forfeit the
> panoply of substantive and procedural protections they would
> be afforded in a court of law.  As the Tenth Circuit...aptly
> noted, 'Those who choose to resolve a dispute by arbitration
> can expect no more than they have agreed'. *Bowles Fin. Group
> v Stifel, Nicolaus & Co.,* 22 F3d 1010, 1011 (10th Cir 1994).
> This is, or should be, particularly true where the party
> complaining about the arbitration award is the party who
> insisted on incorporating an arbitration clause into the
> underlying contract and who drafted that clause.
> Petitioners, of course, are in precisely that category."
> *OLDE Discount Corp. v Dartley,* 1997 NY Misc. LEXIS 726 (NY
> County 1997).

An equally applicable adage is, "Those who live by the

14

sword, die by the sword." This is the case here. Petition denied.

All other arguments by petitioner not addressed in this decision are found to be without merit.

Accordingly, it is

ORDERED that petitioner's motion for vacatur of the arbitration award is denied.

Dated: November 16, 2006



HON. CHARLES E. RAMOS

Counsel are hereby directed to obtain an accurate copy of this Court's opinion from the record room and not to rely on decisions obtained from the internet which have been altered in the scanning process.

FILED
NOV 30 2006
NEW YORK
COUNTY CLERK'S OFFICE