# ATTACHMENT E

*To be Argued by:*
KEVIN T. BAINE

New York County Clerk's Index No. 600156/06

# New York Supreme Court

## Appellate Division—First Department

In the Matter of the Application of

UBS PAINEWEBBER INC. n/k/a UBS FINANCIAL SERVICES, INC.,

*Petitioner-Appellant,*

Pursuant to Article 75 of the CPLR to vacate the arbitration award dated Dec. 15, 2005 and issued by the National Association of Securities Dealers in favor of

BENISTAR PROPERTY EXCHANGE TRUST COMPANY, INC.,

*Respondent-Respondent.*

## BRIEF FOR PETITIONER-APPELLANT

WILLIAMS & CONNOLLY LLP
725 12th Street, N.W.
Washington, D.C. 20005
(202) 434-5000

FLEMMING ZULACK WILLIAMSON
ZAUDERER LLP
One Liberty Plaza, 35th Floor
New York, New York 10006
(212) 412-9500

GOODWIN PROCTER LLP
Exchange Place
53 State Street
Boston, Massachusetts 02109
(617) 570-1000

*Attorneys for Petitioner-Appellant*

PRINTED ON RECYCLED PAPER ♻



RECEIVED
FEB 19 2008
ROBINSON & COLE LLP

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................ ii

QUESTIONS PRESENTED ON APPEAL ..................................................... 1

INTRODUCTION ........................................................................................... 2

STATEMENT OF FACTS AND THE NATURE OF THE CASE ..................... 6

    A.   Benistar's Fraud ........................................................................... 6

    B.   The Massachusetts Litigation ...................................................... 9

    C.   The Arbitration Proceedings ...................................................... 12

    D.   Petition to Vacate Award ............................................................ 16

ARGUMENT .................................................................................................. 19

I.    THE ARBITRATORS MANIFESTLY DISREGARDED
    CLEARLY APPLICABLE LAW .............................................................. 21

    A.   The Applicable Law Is Clear and Well-Defined ........................... 21

        1.   UBS Had No Duty To Benistar To Uncover Its Own
            Conceded Fraud ................................................................ 22

        2.   UBS Had No Duty to Benistar's Clients ........................... 31

            a.   The New York Law of Assignment ........................ 33

            b.   *Res Judicata* ......................................................... 35

    B.   The Arbitrators Disregarded The Law ........................................ 38

II.    THE MULTI-MILLION-DOLLAR AWARD TO BENISTAR IS
    WHOLLY "IRRATIONAL" ...................................................................... 44

III.    THE PANEL EXCEEDED ITS AUTHORITY ....................................... 46

IV.    THE ARBITRATORS REFUSED TO CONSIDER MATERIAL
    EVIDENCE—NAMELY, THE MASSACHUSETTS
    JUDGMENT .......................................................................................... 49

CONCLUSION ............................................................................................... 51

# TABLE OF AUTHORITIES

## STATE CASES

*Barker v. Kallash*, 63 N.Y.2d 19 (1984) ................................................................ 26

*Barnes v. Schatzkin*, 215 A.D. 10 (1st Dep't 1925), *aff'd*, 242 N.Y. 555 (1926) ............................................................................................... 24

*Cahaly v. Benistar Prop. Exch. Trust Co.*, 864 N.E.2d 548 (Mass. App. Ct. 2007)............................................................................................. 12, 19

*Carr v. Hoy*, 2 N.Y.2d 185 (1957) ...................................................................... 26

*Casey v. Country-Wide Ins. Co.*, 240 A.D.2d 232 (1st Dep't 1997)...................... 49

*Countrywide Home Loans, Inc. v. Lafonte*, No. 14265/01, 2003 WL 1389089 (N.Y. Sup. Ct., Nassau County Feb. 13, 2003)................................... 26

*Crispino v. Greenpoint Mortg. Corp.*, 304 A.D.2d 608 (2d Dep't 2003)............... 34

*Darby v. Compagnie Nat'l Air France*, 96 N.Y.2d 343 (2001) ...................... 22, 23

*Espinal v. Melville Snow Contrs., Inc.*, 98 N.Y.2d 136 (2002) ........................... 23

*Fajemirokun v. Dresdner Kleinwort Wasserstein Ltd.*, 27 A.D.3d 320 (1st Dep't 2006)........................................................................................ 36

*Farley v. Town of Hamburg*, 34 A.D.3d 1294 (4th Dep't 2006) ........................... 27

*Fekety v. Gruntal & Co.*, 191 A.D.2d 370 (1st Dept. 1993) ................................. 30

*Fesseha v. TD Waterhouse Investor Servs., Inc.*, 305 A.D.2d 268 (1st Dept. 2003)............................................................................................... 29, 30

*Hamilton v. Beretta U.S.A. Corp.*, 96 N.Y.2d 222 (2001) ................................ 22, 23

*In re Dean Witter Managed Futures Ltd. P'ship Litig.*, 282 A.D.2d 271 (1st Dept. 2001) ...................................................................................... 30

*In re Hunter*, 4 N.Y.3d 260 (2005)....................................................................... 36

*In re Reilly v. Reid*, 45 N.Y.2d 24 (1978) ........................................................... 36

*In re Spear, Leeds & Kellogg v. Bullseye Sec., Inc.*, 291 A.D.2d 255 (1st Dep't 2002)..................................................................... 21, 44, 49

*In re State Office of Mental Health v. N.Y. State Corr. Officers & Police Benevolent Ass'n*, 46 A.D.3d 1269, 848 N.Y.S.2d 444 (3d Dept. 2007)..... 45, 49

*In re UBS Warburg LLC v. Auerbach, Pollack & Richardson, Inc.*, 294 A.D.2d 245 (1st Dep't 2002).................................................................. 39

*Int'l Ribbon Mills, Ltd. v. Arjan Ribbons, Inc.*, 36 N.Y.2d 121 (1975) ............. 33, 34

*Johnson v. Jamaica Hosp.*, 62 N.Y.2d 523 (1984) ...................................... 23

*Lauer v. City of New York*, 95 N.Y.2d 95 (2000)......................................... 23

*Liberman v. Worden*, 268 A.D.2d 337 (1st Dept. 2000)................................. 30

*Manning v. Brown*, 91 N.Y.2d 116 (1997)................................................ 26

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Benjamin*, 1 A.D.3d 39 (1st Dep't 2003)....................................................................................... 36

*Motor Vehicle Accident Indemnification Corp. v. Travelers Ins. Co.*, 246 A.D.2d 420 (1st Dep't 1998)............................................................... 49

*Palsgraf v. Long Island R.R. Co.*, 248 N.Y. 339 (1928) ............................... 23

*Partlow v. Kolupa*, 122 A.D.2d 509 (3d Dep't 1986)..................................... 36, 37

*Perl v. Smith Barney Inc.*, 230 A.D.2d 664 (1st Dept. 1996) ........................ 30

*Reno v. D'Javid*, 42 N.Y.2d 1040 (1977).................................................... 26

*Riggs v. Palmer*, 115 N.Y. 506 (1889)..................................................... 25

*Robischon v. Genesee Valley Med. Care, Inc.*, 92 Misc. 2d 854 (N.Y. Sup. Ct., Monroe County 1977), *aff'd*, 65 A.D.2d 681 (4th Dep't 1978)................. 34

*Roslyn Assocs. v. Inc. Vill. of Mineola*, 84 A.D.2d 581 (2d Dep't 1981) .............. 34

*Sawtelle v. Waddell & Reed, Inc.*, 304 A.D.2d 103 (1st Dep't 2003)............. *passim*

*Stuart v. Tomasino*, 148 A.D.2d 370 (1st Dep't 1989) ................................ 25, 26

*Trans-Resources, Inc. v. Nausch Hogan & Murray*, 298 A.D.2d 27 (1st Dep't 2002)........................................................................................ 34

*Uram v. Garfinkel*, 16 A.D.3d 347 (1st Dep't 2005) ................................................. 44

*Wien & Malkin LLP v. Helmsley-Spear, Inc.*, 6 N.Y.3d 471 (2006) .......... 21, 22, 42

## FEDERAL CASES

*Aircraft Braking Sys. Corp. v. Local 856 Int'l Union*, 97 F.3d 155 (6th Cir. 1996)........................................................................................ 36

*Banco de Seguros del Estado v. Mut. Marine Office, Inc.*, 344 F.3d 255 (2d Cir. 2003)........................................................................................ 46, 47, 48

*Bennett v. U.S. Trust Co.*, 770 F.2d 308 (2d Cir. 1985)........................................... 30

*De Kwiatkowski v. Bear, Stearns & Co.*, 306 F.3d 1293 (2d Cir. 2002) ................ 29

*Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383 (2d Cir. 2003)........................................................................................ 39, 42

*Goldman v. Architectural Iron Co.*, 306 F.3d 1214 (2d Cir. 2002) ......................... 39

*Halligan v. Piper Jaffray, Inc.*, 148 F.3d 197 (2d Cir. 1998) ................................. 21

*Hamilton v. Beretta U.S.A. Corp.*, 264 F.3d 21 (2d Cir. 2001) .............................. 23

*Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085 (2d Cir. 1995) ............................ 25

*Hoeft v. MVL Group, Inc.*, 343 F.3d 57 (2d Cir. 2003).......................................... 48

*Hoteles Condado Beach v. Union de Tronquistas Local 901*, 763 F.2d 34 (1st Cir. 1985)........................................................................................ 50

*In re Bennett Funding Group, Inc.*, 336 F.3d 94 (2d Cir. 2003)............................. 25

*In re Mediators, Inc.*, 105 F.3d 822 (2d Cir. 1997)................................................. 25

*Indep. Order of Foresters v. Donald, Lufkin & Jenrette, Inc.*, 157 F.3d 933 (2d Cir. 1998) ........................................................................................ 29

*Jaksich v. Thomson McKinnon Sec., Inc.*, 582 F. Supp. 485 (S.D.N.Y. 1984)....... 43

*Jordan (Bermuda) Inv. Co. v. Hunter Green Invs. LLC*, No. 00 Civ. 9214
(RWS), 2007 WL 2948115 (S.D.N.Y. Oct. 3, 2007)..............................30

*Local 1199 v. Brooks Drug Co.*, 956 F.2d 22 (2d Cir. 1992) ....................47

*Miller v. N.Y. Produce Exch.*, 550 F.2d 762 (2d Cir. 1977) .......................24

*Nat'l Commercial Bank v. Morgan Stanley Asset Mgmt., Inc.*, No. 94 Civ.
3167(DC), 1997 WL 634292 (S.D.N.Y. Oct. 15, 1997).........................30

*Press v. Chem. Inv. Servs. Corp.*, 166 F.3d 529 (2d Cir. 1999)................29

*Sands Bros. & Co. v. Alba Perez TTee Catalina Garcia Revocable Trust*,
No. 04 Civ. 0005(JFK), 2004 WL 2186574 (S.D.N.Y. Sept. 28, 2004)...........29

*Shearson Lehman Hutton, Inc. v. Wagoner*, 944 F.2d 114 (2d Cir. 1991) .............25

*Tucker v. Janney Montgomery Scott, Inc.*, No. 96 CIV 1923(LLS), 1997 WL
151509 (S.D.N.Y. Apr. 1, 1997)....................................................43

*United States v. Carpenter*, 405 F. Supp. 2d 85 (D. Mass. 2005)...........................12

*United States v. Carpenter*, 494 F.3d 13 (1st Cir. 2007) ...........................12

*Weber v. E.D.& F. Man Int'l, Inc.*, No. 97 C 7518, 1999 WL 258496 (N.D.
Ill. Apr. 9, 1999).......................................................................43

*Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200 (2d Cir. 2002)..........39, 42

*W. Employers Ins. Co. v. Jefferies & Co.*, 958 F.2d 258 (9th Cir. 1992) ...............47

## FEDERAL STATUTES

9 U.S.C. § 10(a)(3) ................................................................5, 49

9 U.S.C. § 10(a)(4) ................................................................5, 46

## STATE STATUTES

N.Y. Gen. Oblig. Law § 13-105 .................................................33

N.Y. Gen. Oblig. Law § 13-109 .................................................33

v

## OTHER AUTHORITIES

6 Am. Jur. 2d *Assignments* § 144 (2007) ................................................................. 34

## QUESTIONS PRESENTED ON APPEAL

An arbitration panel has found a brokerage firm liable to its customer for failing to detect and prevent the customer's own conceded fraud, and has ordered the brokerage firm to pay the customer's losses, which were due solely to the customer's own trading decisions.  The question presented is whether the arbitration award against the brokerage firm should be vacated under the provisions of the Federal Arbitration Act and the decisions of this Court.  (The IAS Court declined to vacate the award.)  More specifically, the questions presented are:

      1.    Whether the arbitration panel manifestly disregarded applicable law and the prior binding decision of a Massachusetts court.  (The IAS Court held that there was no manifest disregard.)

      2.    Whether it was irrational for the panel to shift the customer's trading losses to the broker on the theory that the broker should have detected the customer's fraud.  (The IAS Court held that the decision was not irrational.)

      3.    Whether the panel exceeded its authority (a) by refusing to decide issues of New York law that it was obligated to decide—namely, whether the broker owed a legal duty to the customer to detect the customer's own fraud, or (b) by deciding a matter that it was not authorized to decide—namely, whether the

broker breached some duty to the victims of its customer's fraud. (The IAS Court held that the panel did not exceed its authority.)

4.    Whether the panel refused to consider material evidence—specifically, evidence of the Massachusetts court's rulings that exonerated the broker of any liability to the victims of the customer's fraud. (The IAS Court held that the panel did not fail to consider material evidence.)

## INTRODUCTION

This is the second proceeding presenting claims for losses sustained by Benistar Property Exchange Trust Co. ("Benistar") as a result of option trading it engaged in through an account at UBS Financial Services ("UBS"). In the first proceeding, the Massachusetts courts determined conclusively (a) that Benistar had engaged in a massive fraud by using client funds to finance risky option trading that the clients had not authorized; (b) that Benistar was liable to its clients for the full amount of their losses (in fact, for double the losses under applicable Massachusetts law); (c) that UBS did not have knowledge of Benistar's unlawful scheme, and did not participate in, assist or conceal the scheme; and (d) that UBS had no legal duty of any kind to Benistar's clients to detect and prevent Benistar's fraudulent scheme and was not liable under any theory to Benistar's clients for their losses.

In this second proceeding, an arbitration panel has shifted liability for the trading losses from Benistar to UBS, on the theory that UBS somehow breached a duty after all to detect and prevent Benistar's fraudulent scheme. That duty in substance is the same duty alleged without success in the Massachusetts litigation—a legal duty to see through Benistar's lies, to disregard Benistar's representations as to the source of the funds in its corporate account, and to uncover a fraud that Benistar had successfully concealed from its own clients. The theory that UBS owed such a duty <u>to Benistar</u>, the entity that engaged in the fraudulent conduct, is so absurd on its face—and so obviously contrary to the law—that Benistar initially declined to advance it. As explained below, the claim was advanced only after Benistar's claim was assigned to its clients; and the claim ultimately succeeded, it appears, because the arbitration panel was told that Benistar's recovery would ultimately go to its defrauded clients. That assignment, however, cannot support the arbitration award for two reasons:

First, under well-established principles, which were repeatedly brought to the panel's attention, an assignee merely steps into the shoes of the assignor and acquires no greater rights than those of the assignor. Here, the rights of the assignor were hopelessly tainted by its own fraudulent conduct, including its misrepresentations to UBS. UBS obviously had no legal duty <u>to Benistar</u> to detect

-3-

its misrepresentations, and the arbitrators had no authority to consider any claim other than Benistar's.

Second, the assignees in this case, Benistar's customers, had already litigated their claim against UBS in Massachusetts and lost. The Massachusetts court had held that UBS had no legal duty to "the customers of its customer," R. 370, and that there was no evidence that UBS had participated in, assisted or concealed any of Benistar's wrongful acts—in short, that UBS was not liable to Benistar's customers. That judgment, which was entitled to *res judicata* effect, foreclosed any arbitration award based on the interests of Benistar's customers.

As explained more fully below, the only way for the arbitration panel to reach its result was to ignore the law, which clearly establishes that UBS owed no legal duty <u>to Benistar</u> to unearth its own fraudulent scheme, and/or to ignore the binding judgment of the Massachusetts court, which had held that UBS had no legal duty <u>to Benistar's customers</u>. The hearing transcript confirms that the panel did indeed ignore both the law and the Massachusetts judgment. The arbitrators proclaimed that they were "not capable" of "decid[ing] the legal issues," R. 104 (Tr. 671), that they would not "make judgments" on the "legal considerations" that UBS had raised, R. 104 (Tr. 668), and that they would "not get into" the Massachusetts litigation, R. 108 (Tr. 686), which they saw as having "no connection" to the arbitration, "as far as we are concerned," R. 80 (Tr. 7).

-4-

Arbitrators have substantial latitude in exercising their discretion, but there are boundaries to arbitrators' discretion. As explained more fully below, an arbitration award must be vacated (1) if there was a "manifest disregard" of clearly applicable law, *see, e.g., Sawtelle v. Waddell & Reed, Inc.,* 304 A.D.2d 103, 108 (1st Dep't 2003); (2) if the award is "irrational,", *id.*; (3) if the "arbitrators exceeded their powers" in rendering the award, 9 U.S.C. § 10(a)(4); or (4) if the arbitrators "refus[ed] to hear evidence pertinent and material to the controversy," *id.* § 10(a)(3). The arbitration award in this case is subject to vacatur on all of these grounds. The arbitrators had no authority to adjudicate the claims of Benistar's customers, as opposed to the claim of Benistar itself, and it was only through a manifest disregard of the law and a refusal to consider the *res judicata* and collateral estoppel effects of the Massachusetts judgment that the panel could have reached the irrational result that it did—an award of more than $12 million to a wrongdoer whose losses were attributable to its own fraudulent scheme and its own trading decisions.

## STATEMENT OF FACTS AND THE NATURE OF THE CASE

**A.    Benistar's Fraud**

In December 2002, a Massachusetts civil jury found that Benistar Property Exchange Trust Co. ("Benistar"), its chairman, Daniel Carpenter, and its affiliate, Benistar Employee Services Company, were liable for fraud committed against Benistar's clients. R. 300-27. Promising to hold its clients' money in stable, escrowed accounts, Benistar instead used the clients' funds to bankroll speculative options trading that resulted in steep losses. All the while, Benistar hid the fact that client dollars—not Benistar's own corporate assets—were funding its risky trades.

Benistar was in the business of acting as a "qualified intermediary" for real estate transactions. Its clients sought to qualify their real estate transactions as "like-kind exchanges" eligible for favorable tax treatment under Section 1031 of the Internal Revenue Code. Benistar facilitated these like-kind exchanges by holding the proceeds of real estate sales for its clients until they found replacement property to purchase, at which time Benistar would transmit the funds to the seller of the replacement property. Under the agreements between Benistar and its clients, during the time in which Benistar held the clients' funds as an intermediary, the money was to be held in an "escrow custodial account" for the

customers' benefit, either in a 6% "investment account" or a 3% "money market account." R. 95-96 (Tr. 635-38), 110-12 (Tr. 695-96), 122 (Tr. 1072-73).

Beginning in 1998, Benistar used its customers' funds to bankroll speculative trading in uncovered options. Benistar began the trading—via its chairman, Carpenter[1]—through accounts it opened in its corporate name with Merrill Lynch. In October 2000, Benistar transferred funds from its Merrill Lynch accounts to accounts at UBS PaineWebber ("UBS").[2] In the course of opening its accounts with UBS, Benistar made a series of intentional misrepresentations to UBS that disguised the true nature of the funds in its accounts. Most significantly, Benistar assured UBS that the funds in its trading accounts were Benistar's own corporate assets. See, e.g., R. 155-56 (Tr. 1883-85). Benistar made this misrepresentation not only in written account opening documents, R. 199, 207; see also R. 113-14 (Tr. 747-49), 118-19 (Tr. 1019-20), but also in oral statements by

---

[1]    As found by the Massachusetts trial court and independently established during the arbitration, Daniel Carpenter was the sole shareholder of Benistar Ltd., the parent of wholly-owned subsidiary Benistar Property Exchange Trust Co. ("Benistar"). See R. 147-49 (Tr. 1751-52, 1755-56), 434. Carpenter was Benistar's founder, chairman, and controlling director and officer. Id. He exercised "complete control over the financial . . . management of client funds for Benistar Property." See R. 444, 148 (Tr. 1752).

[2]    UBS Financial Services, Inc., the respondent in the arbitration and the Petitioner-Appellant here, was formerly known as UBS PaineWebber Inc. It is referred to as UBS in this brief.

-7-

Carpenter to various UBS personnel.[3] Benistar also misrepresented to UBS that it had the right and authority to engage in a specific _type_ of risky trading with the funds at issue—uncovered options trading. R. 202-05, 210-13, 122-23 (Tr. 1075-76), 154-56 (Tr. 1876, 1881-84).[4] In furtherance of its ongoing fraud, Benistar submitted to UBS corporate resolutions affirming its authority to trade options, R. 205, 213, executed a special option trading form, R. 204, 212, and attested that all statements made to UBS in the account opening process were true, R. 199, 207.

On the basis of these representations, Benistar proceeded to open a series of "non-discretionary" accounts at UBS—which meant that all trading decisions were made by Benistar, not by UBS. R. 84-85 (Tr. 168-71), 154 (Tr. 1877-78). After about eight weeks of trading activity, Benistar had accumulated trading losses totaling approximately $8.7 million. Concerned about the magnitude of these losses, UBS informed Benistar that no further option trading would be permitted in the accounts and that all open positions would be closed out to avoid further trading losses. R. 158-59 (Tr. 1960-66).

---

[3]    _See, e.g._, R. 86-87 (Tr. 177-78), 120-21 (Tr. 1062-63, 1068-69), 155-57 (Tr. 1881-84, 1900-01), 159-60 (Tr. 1967-68), 161 (Tr. 1977-79).

[4]    Benistar also misrepresented to UBS that it had more than $10 million in corporate assets (a lie that was particularly relevant as Benistar eventually sustained $8.7 million in losses). R. 199, 207, 83 (Tr. 82-83), 87 (Tr. 180-81), 116-17 (Tr. 955-56), 158 (Tr. 1963), 159-60 (Tr. 1967-68).

-8-

At the time the option positions were closed out, Carpenter reiterated to UBS that the funds in Benistar's accounts were corporate assets. R. 156 (Tr. 1885), 159-60 (Tr. 1967-68). Indeed, it was not until January 2001 that UBS learned, through the first communications it had ever had from Benistar clients, that Benistar had been trading with its clients' money, in violation of its representations to its clients and to UBS. R. 160 (Tr. 1969), 121 (Tr. 1068-69), 156 (Tr. 1884-85).

**B.    The Massachusetts Litigation**

In 2001, Benistar's clients filed suit in Massachusetts state court against Benistar, Carpenter and other defendants, including UBS and Merrill Lynch. *See Cahaly, et al. v. Benistar Prop. Exch. Trust Co., et al.*, Civ. Action No. 01-0116 ("the Massachusetts Litigation"). UBS prevailed on all claims against it. On February 5, 2002, the Massachusetts court dismissed a negligence claim against UBS, on the ground that UBS owed no legal duty of care to Benistar's clients. R. 362-71. Applying New York law, the court held that "a broker does not owe a duty of care to the customers of its customer." R. 370.

Subsequently, on January 13, 2003, the same Massachusetts court granted summary judgment to UBS on all remaining claims—aiding and abetting Benistar's breach of fiduciary duty, conversion and deceptive trade practices. R. 235-59. The court made the following observations with respect to the nature of

Benistar's accounts at UBS and the actions taken by UBS's broker in servicing

those accounts:

> The Benistar Property accounts at [UBS] were non-discretionary accounts, where [UBS]'s job was to execute the trades as directed by the customer, that is, by Carpenter on behalf of the two Benistar entities in whose names the three accounts were opened. . . .  In sum, what the record reveals is a broker engaged in servicing a particularly active and demanding customer who was engaging in risky option trading in his non-discretionary accounts.  The activity in the accounts, and therefore the broker's activities as well, may have been frequent and intense, but nothing indicates that . . . the broker . . . was doing anything that was not part of the services generally and ordinarily expected of a broker who is handling a non-discretionary option trading account managed by a customer with a highly aggressive trading style.

R. 251-52.

The Massachusetts court also noted that there was no evidence that anyone at UBS saw any of the agreements entered into between Benistar and its clients.  R. 236.  Further, the court noted, it was undisputed that "none of the plaintiffs communicated with [UBS] concerning the funds each had entrusted to Benistar Property, or advised [UBS] that the plaintiff had an ownership interest in any of the accounts opened by Benistar Property."  *Id.*  In sum, the court concluded that there was no evidence that UBS had "participated in," "substantially assisted" or "conceal[ed]" Benistar's wrongful acts.  R. 251.  On this basis, the court entered summary judgment in favor of UBS on all remaining claims.

-10-

The Massachusetts Litigation continued against the other defendants, including Benistar and Carpenter. In December 2002, a Massachusetts jury found that Benistar and Carpenter had engaged in fraud, conversion and breach of fiduciary duty, by misusing their clients' funds to engage in speculative options trading in the accounts at Merrill Lynch and UBS. R. 282-83, 300-21; *see also* R. 131 (Tr. 1546-47). The court noted its agreement with the jury's findings and adopted them in awarding double damages and attorneys' fees against Benistar and Carpenter, pursuant to the Massachusetts deceptive trade practices statute, for an award totaling approximately $19 million, plus interest.[5] R. 322-27.

The jury also found Merrill Lynch liable on several grounds, including aiding and abetting a breach of fiduciary duty. R. 315-21. The Massachusetts court granted judgment notwithstanding the verdict to Merrill Lynch, R. 278-99, but then ordered a new trial against Merrill Lynch on the basis of newly discovered evidence.

The customer-plaintiffs never appealed the Massachusetts court's decision dismissing their negligence claims against UBS. The court's grant of summary judgment to UBS on the customer-plaintiffs' remaining claims was affirmed by the Appeals Court of Massachusetts—as was the judgment against

---

[5]    When prejudgment and postjudgment interest are included, the award now easily tops $25 million.

-11-

Benistar and Carpenter.  *See Cahaly v. Benistar Prop. Exch. Trust Co.*, 864 N.E.2d

548 (Mass. App. Ct. 2007).  The Supreme Judicial Court of Massachusetts granted

a petition to review aspects of the case pertaining to Merrill Lynch, Benistar and

Carpenter.  But the Supreme Judicial Court has ruled that the judgment in favor of

UBS is no longer at issue in those proceedings.

      Ultimately, the fall-out from Benistar's fraudulent scheme included

federal criminal proceedings against its chairman, Carpenter.  *See* R. 354-61.  On

July 27, 2005, a federal jury convicted Carpenter on nineteen counts of mail and

wire fraud for a "scheme to defraud . . . [that] entailed making false representations

or half-truths to induce [Benistar's clients] to entrust their property . . . to

Benistar." *United States v. Carpenter*, 405 F. Supp. 2d 85, 102 (D. Mass. 2005).

Carpenter was granted a new trial due to the prosecution's use of inflammatory

rhetoric during its closing argument, *see id.* at 101-03, but the trial court denied his

motion for a judgment of acquittal, ruling that the evidence could support "a

conclusion that Carpenter committed the crimes alleged," *id.* at 95.  The court's

new trial order was affirmed on appeal.  *United States v. Carpenter*, 494 F.3d 13

(1st Cir. 2007).  A new trial is currently scheduled for May 2008.

## C.    The Arbitration Proceedings

      On December 10, 2003, Benistar commenced an arbitration against

UBS under the auspices of the National Association of Securities Dealers