UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v.                                      )<br>)<br>DANIEL E. CARPENTER,        )<br>)<br>Defendant.                        )<br>) | CRIMINAL NO. 04-10029-GAO |

**DEFENDANT DANIEL E. CARPENTER'S MOTION *IN LIMINE*
TO EXCLUDE ALL ALLEGED ORAL REPRESENTATIONS OF
GOVERNMENT WITNESS MARTIN PALEY TO THE EXCHANGORS AND
THEIR COUNSEL, REPRESENTATIVES OR AGENTS**

Defendant Daniel E. Carpenter ("Mr. Carpenter") respectfully moves *in limine* to preclude the Government from introducing at trial any of the alleged oral representations made to the exchangors by Government witness Martin Paley. In particular, Mr. Carpenter requests an order precluding the Government from introducing any alleged oral representations made to the exchangors and their counsel, representatives or agents by Martin Paley, and barring any reference to any such testimony at any time in the jury's presence, including but not limited to questions of witnesses, opening and closing statements, and arguments on objections or motions. The grounds for the requested order is that such testimony: calls for the introduction of hearsay not subject to any exception; is irrelevant by operation of the integration clause contained within the exchange agreements; and that any putative relevance it may possess is outweighed by the risk of unfair prejudice.

BOS 46,360,023v1 5-20-08

I. The Alleged Representations of Mr. Paley Are Inadmissible Hearsay.

The alleged representations of Mr. Paley constitute hearsay, not subject to any exception, and so are inadmissible. Mr. Paley was neither Mr. Carpenter's co-conspirator, Fed. R. Evid. 801(d)(2)(E), his authorized representative, Rule 801(d)(2)(C), nor his agent, Rule 801(d)(2)(D), and so Mr. Paley's statements are not admissible as vicarious admissions on any of these bases.

The putative representations of Mr. Paley are not admissible as against Mr. Carpenter as statements of a co-conspirator, for the simple reason that the Government has nowhere even charged the existence of any conspiracy between the two men, much less proven that any such conspiracy existed and that Mr. Paley's alleged representations were made in the course and in furtherance of it, as required under Fed. R. Evid. 801(d)(2)(E). To the contrary, the Government has repeatedly disclaimed this approach.

Instead, the Government has contended that the alleged representations of Mr. Paley are admissible here as the statements of an authorized person or agent under Fed. R. Evid. 801(d)(2)(C) (statement by declarant authorized by person against whom admission is sought to make statement on the subject matter) and 801(d)(2)(D) (statement by declarant agent or employee of person against whom admission is sought concerning matter within scope of agency/employment made during existence of said relationship).[1]

The Government, as the party seeking introduction of the statements, bears the burden of proving that the requisite agency relationship existed between Mr. Carpenter

---

[1] To the extent that the Government seriously contends that some of Mr. Paley's alleged representations do not constitute hearsay because their admission is not sought for the truth of the matter asserted, the evidence presents a substantial risk of unfair prejudicial imputation and spill over. Accordingly, this basis is discussed below in relation to the unfair prejudice resulting from the admission of the statements at issue on such basis.

and Mr. Paley, and a preliminary determination on this point under Fed. R. Evid. 104(a) is necessary in the event the Court does not exclude the statements at issue on the basis of this motion alone. Gomez v. Rivera Rodriguez, 344 F.3d 103, 116 (1st Cir. 2003) ("An agency relationship must be shown to exist by independent evidence before out-of-court statements by a purported agent can be deemed admissions by a party-opponent."). Mr. Paley's statements as to the existence of the putative agency, while relevant, are not by themselves sufficient to support the finding of any such relationship. For his part, to the extent that such a relationship of agency or authorization existed at all, Mr. Paley plainly refutes the notion that it extended beyond terms of the exchangor agreements:

> Q: And you testified yesterday that when you met with these individuals, these potential exchange clients, you didn't make any representations inconsistent with what was in the written agreements, correct?
>
> A: That's true.
>
> Q: And I would suspect that -- Dan Carpenter never authorized you to say anything other than what was in the written agreements, correct?
>
> A: That's true.

Tr. Day 8 at p.9, lines 10-18.

As his own testimony shows, Mr. Paley clearly was not authorized to speak for Mr. Carpenter on any point beyond the express terms of the written agreements, and accordingly in so far as the alleged representations extend beyond or contradict those agreements, they are inadmissible as falling outside of Fed. R. Evid. 801(d)(2)(C).

The Government's contention that Mr. Paley was Mr. Carpenter's agent under Rule 801(d)(2)(D) is also without merit. "Parties wishing to introduce the statements into evidence under the aegis of Rule 801(d)(2)(D) must establish, by a preponderance of the

evidence, (1) that an agency relationship existed; (2) that the statements were made during the course of the relationship; and (3) that the statements relate to matters within the scope of the agency. [] Although the Evidence Rules do not define 'agent' or 'servant,' federal courts grappling with Rule 801(d)(2)(D) proffers have adopted and applied the traditional meanings of those terms as reflected in the federal common law of agency." Gomez, 344 F.3d at 116 (internal citation omitted).

The Government's contention fails at the threshold for failure to establish that the requisite agency relationship existed between Mr. Carpenter and Mr. Paley. First, the Government has laid no foundation for the proposition that Mr. Paley is an agent of Mr. Carpenter personally, as opposed to the corporate entity. As corporate officers, both Mr. Carpenter and Mr. Paley are agents of the corporation, but certainly not by that reason agents for one another.

Even assuming for reason of argument only that Mr. Paley was Mr. Carpenter's agent, then his admissible oral representations as against Mr. Carpenter are limited to those authorized by Mr. Carpenter on subjects within the scope of and made during the course of Mr. Paley's employment. Any representations beyond or contradictory of those documents are beyond the scope of Mr. Paley's agency, and so are inadmissible. It follows that the putative oral representations made by Mr. Paley to the exchangors and their counsel, representatives or agents are merely redundant of the writings, and to the extent that they are not, they are inadmissible as to Mr. Carpenter and likely to engender unfair prejudice and confusion.

The underlying problem is the vicarious imposition of criminal liability on an individual by the imputation to him of the conduct of another under agency principles:

> Whatever is said by an agent to a third person, during the course of the agent's duties and within the scope of the agent's authority, relative to business contemplated by the agency in which the agent is then engaged is in legal intendment said by the principal and is admissible in evidence against such principal. [] Hence, an employee's admission against his or her own interest as to his or her negligence can result indirectly in liability being imposed upon the employer, if the employee is a party defendant. [] The admission is not evidence that the employer was negligent, but it is evidence that the employee was negligent, and the employer may become liable under respondeat superior where that doctrine properly applies.

Am. Jur. 2d, Evidence, § 815 (footnotes omitted). Application of the doctrine of respondeat superior to impose criminal liability on an individual defendant for the alleged representations of his putative agent, specifically, fraudulent misrepresentations as to which the defendant had no participation in formulating or making, or even knowledge of their having been made, is so violently contrary to fundamental fairness as to violate the basic principles of due process.

### 2. The Integration Clause Precludes Introduction of the Alleged Representations.

The BPE documents are governed by Massachusetts law, see, e.g., Gov.'s Trial Ex. 10, and contain an integration clause which reads:

> This agreement contains the entire agreement of the parties hereto, and supersedes any prior written or oral agreement between them concerning the subject matter contained herein. There are no representations, agreements, arrangements or understandings, oral or written, between the parties hereto, relating to the subject matter contained in this Agreement, which are not fully expressed herein.

Id. at 5 (emphasis added).

While extrinsic or parole evidence is admissible in instances where there has been fraud in the inducement, and the parole evidence rule has been found inapplicable in at least some jurisdictions (but not the First Circuit) in criminal cases centering on contracts

to which the Government is not a party, it is essential to note that the alleged oral representations here neither came from Mr. Carpenter, nor from his agent or authorized party within the sphere of his authority. Once again, Mr. Paley has unequivocally stated that he was not authorized by Mr. Carpenter to make any statements beyond those set forth in the exchange documents. See supra, Tr. Day 8 at p.9, lines 10-18.

In these circumstances, the limitations of the parole evidence rule coincide with the representations for which there is even the slightest evidence connecting them to Mr. Carpenter -- the written agreements. To disregard the integration clause in these circumstances is to effectively hold Mr. Carpenter responsible for the alleged representations of Mr. Paley, for which there is absolutely no evidence that he either knew of, approved of, took part in formulating, or made.

Further, these documents and their integration clauses have a stronger than usual claim to enforcement by reason of the fact that the exchangors were affluent, sophisticated individuals who utilized or had the ability to engage legal counsel. The alleged oral representations of Mr. Paley, in short, should be excluded as irrelevant by operation of the integration clause agreed to by the exchangors.

### 3. The Alleged Representations Are Unfairly Prejudicial.

Assuming, *arguendo*, that the putative representations have some relevance and basis for admission because not offered for the truth of the matter asserted, they are unfairly prejudicial and must be excluded under Fed. R. Evid. 403. It is as a practical matter impossible with any level of confidence to prevent the jury from imputing to Mr. Carpenter alleged representations made by Mr. Paley that are so closely related to the crux of this case: fraudulent inducement. The jury effectively is asked to listen to

fraudulent representations made by a colleague of the defendant, made to the very people with whom the defendant is charged with defrauding, on the precise subject matter and in the same transactions in which he is charged with defrauding them, but not to consider them as having been made or endorsed by the defendant. The imputation of these alleged representations to Mr. Carpenter is inexorable in such a scenario, and the effect thereof is incalculably, and unfairly, prejudicial. Unlike the exchange documents themselves, where there is at least some scintilla of evidence that Mr. Carpenter may have at least reviewed the written materials, there is no evidence that ties Mr. Carpenter to these alleged oral representations. To the contrary, the only evidence on this point is from Mr. Paley himself, and it refutes the contention that Mr. Carpenter authorized any representation other than those laid out in the documents. The Government's own witness has testified that he did not make representations to the exchangors inconsistent with the exchange documents, and that Mr. Carpenter never authorized him to say anything other than what was in the agreements. See supra, Tr. Day 8 at p.9, lines 10-18.

The alleged oral representations of Mr. Paley have no place in the trial of Mr. Carpenter as it has been charged by the Government.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court issue an order precluding the Government from introducing any alleged oral representations made to the exchangors and their counsel, representatives or agents by Martin Paley, and barring any reference to any such testimony at any time in the jury's presence, including but limited to questions of witnesses, opening and closing statements, and arguments on objections or motions.

**RESPECTFULLY SUBMITTED:**
DANIEL E. CARPENTER,
Defendant,
By his attorney:

/s/ A. John Pappalardo
A. John Pappalardo (BBO # 338760)
GREENBERG TAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

**Certificate of Service**

I hereby certify that on this 20th day of May, 2008, I served on counsel of record in the foregoing matter Daniel E. Carpenter's Motion In Limine to Exclude All Alleged Oral Representations Made of Government Witness Martin Paley to the Exchangors and Their Counsel, Representatives or Agents, by means of the ECF system.

/s/ A. John Pappalardo
A. John Pappalardo