UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) ) ) | |
| v. | ) ) | CRIMINAL NO. 04-10029-GAO |
| DANIEL E. CARPENTER, | ) ) | |
| Defendant. | ) ) ) | |

**DEFENDANT DANIEL E. CARPENTER'S
RENEWAL OF HIS PREVIOUS MOTION IN LIMINE TO PRECLUDE THE
GOVERNMENT AND ITS WITNESSES FROM REFERRING TO THE EXCHANGORS
AS "VICTIMS" AND MOTION *IN LIMINE* TO PRECLUDE THE GOVERNMENT
AND ITS WITNESS FROM PRESENTING EVIDENCE ON VICTIM IMPACT**

Defendant Daniel E. Carpenter ("Mr. Carpenter"), through undersigned counsel,

respectfully renews his previous filed Motion *In Limine* To Preclude The Government And Its

Witnesses From Referring To The Exchangors As "Victims" (the "Motion"). A copy of the

Motion is attached hereto as Exhibit A. The Motion, docket entry #85, was filed on June 23,

2005, and granted by this Court on June 30, 2005. The same reasons that supported the granting

of the Motion support the granting of renewal motion.

In addition, Mr. Carpenter respectfully requests that this Court preclude the Government

and its witness from presenting evidence concerning victim impact.

I.    **ARGUMENT**

A.    **Testimony And Evidence Relating To The Impact Of Losses Suffered By The
Exchangors Is Irrelevant, But Any Probative Value It May Have Is
Substantially Outweighed By Its Prejudicial Impact**

It is the position of Mr. Carpenter that evidence or testimony from the Government or its

witnesses concerning the losses suffered by the exchangors referenced in the Indictment is

irrelevant under Fed. R. Evid. 401 (as loss is not an element of wire or mail fraud), or in the

alternative inadmissible under Fed. R. Evid. 403, as its probative value is substantially outweighed by its prejudicial effect. However, even if this Court allows the admission of evidence of loss in this case, it does not follow that evidence of victim impact is relevant. In United States v. Copple, 24 F.3d 535 (3d Cir. 1994), the Third Circuit found that the trial court's ruling, admitting evidence concerning losses suffered by funeral directors in a mail fraud prosecution, "encouraged the government to introduce a wide range of victim impact testimony in addition to the testimony about the size of the losses." Id. at 545. The court held that this victim impact evidence, including testimony from funeral directors that paying back their losses affected their health, came out of their children's college savings, or forced them to break contracts, had very little to no probative value and was unfair prejudicial. Id. at 545-46. In addition, the court found the evidence of victim impact to be irrelevant for any reason. Id. at 546. Ultimately, the court held, "[t]he testimony was designed to generate feelings of sympathy for the victims and outrage toward [the defendant] for reasons not relevant to the charges . . . . It arguably created a significant risk that the jury would be swayed to convict [the defendant] as a way of compensating these victims wholly without regard to evidence of Copple's guilt." Id. See also United States v. Caputo, 374 F. Supp. 2d 632, 640 (N.D. Ill. 2005) (in a case on charges of mail and wire fraud, as well as the regulatory offense of the regulatory offense of introducing adulterated or misbranded devices into interstate commerce, the district court barred the admissibility, on Fed. R. Evid. 403 grounds, the testimony of veterans who had become blind as a result of eye injuries allegedly caused by the sterilizer placed in commerce by the defendant, and noted that "the presence and testimony of partially-blinded veterans could cause a distracting emotional reaction in the jury that could improperly influence their decision regarding Defendant's guilt on the regulatory fraud charges").

BOS 46,360,052v2 5-20-08

This Court, in granting Mr. Carpenter's motion to set aside the verdict of the first trial and for a new trial, expressed concern with the significant and dramatic evidence of loss, as well as the government's characterization of Mr. Carpenter's conduct as "gambling," noted that such evidence and argument "may have diverted the jury from consideration of the crimes charged and may thus have induced a verdict based on the jury's disapproval of the 'gambling,' rather than because the jury was satisfied beyond a reasonable doubt that the elements of the offenses charged had been proven." United States v. Carpenter, 405 F. Supp. 2d 85, 102 (D. Mass. 2000).

It is equally likely that irrelevant, and in some instances emotionally charged, evidence concerning the impact of loss upon the exchangors would induce jurors to convict Mr. Carpenter based upon their sympathies for the exchangors, rather than on the Government's evidence concerning the elements of mail and wire fraud.  Therefore, evidence concerning victim impact must be precluded.

In particular, in the first trial, the Government, through the testimony of Brian Fitzgerald ("Fitzgerald"), offered evidence concerning the impact of Fitzgerald's loss of $100,000 on both himself and his family.

Q.    Did the loss of that hundred thousand dollars have a financial impact on you?

A.    Yes it did.

Q.    What was that impact?

A.    Basically that created a little bit of a train wreck financially.  It's gone on for quite a few years.

Q.    And what did you have to do financially because of the loss of that money?

A.    That funding was based on I had several deals all put together to acquire new equipment. . . . And quickly, one of the deals I had worked diligently to put together had fallen apart, and I was out shopping for other deals to try to put together some equipment and talking to different distributors.  But in the meanwhile, I lost my funding from the bank, I was supposed to inject 20 percent

BOS 46,360,052v2 5-20-08

of the money into this, and the equipment purchase was going to be substantially larger than that hundred thousand dollars. So it set off a whole chain of events. It forced me to go into an SBA loan and several other issues. There were a lot of other issues going on at the same time that were keeping me from working, and I had been going through some cancer treatments and my daughter was in the hospital for six weeks in Boston so we had taken a room. It was just a financial train wreck is what it was.

(Tr. T. 3-128:10 - 129:10)

Fitzgerald's soliloquy regarding events occurring after his loss was irrelevant and highly prejudicial, particularly given the nature of his reference to his cancer and his daughter's hospitalization. Such testimony does not in any way serve to establish whether or not Mr. Carpenter committed mail and wire fraud, and could only serve to elicit sympathy from the jury. This evidence, and any similar victim impact evidence or testimony from any of the Government's witnesses, should be barred under Fed. R. Evid. 403 as unfairly prejudicial and misleading to the jury.

## CONCLUSION

WHEREFORE, the government and its witnesses should be precluded from referring to the Exchangors as "victims" at any time while the jury is present, and similarly precluded from introducing any evidence or testimony relating to victim impact.

RESPECTFULLY SUBMITTED:
DANIEL E. CARPENTER, Defendant,
By his attorney:

/s/ A. John Pappalardo
A. John Pappalardo (BBO # 338760)
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

*BOS 46,360,052v2 5-20-08*

5

## Certificate of Service

       I hereby certify that on this 20th day of May, 2008, I served on counsel of record in the foregoing matter Daniel E. Carpenter's Renewal Of His Previous Motion *in Limine* To Preclude The Government And Its Witnesses From Referring To The Exchangors As "Victims" And Motion *in Limine* To Preclude The Government And Its Witness From Presenting Evidence On Victim Impact, by means of the ECF system.

                               /s/  A. John Pappalardo
                               A. John Pappalardo

*BOS 46,360,052v2 5-20-08*