UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10029-GAO |
| | ) | |
| DANIEL E. CARPENTER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT DANIEL E. CARPENTER'S
MOTION *IN LIMINE* TO PROHIBIT ADMISSION OF TESTIMONY OR ARGUMENT
THAT EXCHANGORS HAVE SUFFERED MONETARY LOSS AND OPPOSITION TO
THE GOVERNMENT'S MOTION *IN LIMINE* REGARDING ARBITRATION AWARD
AND POTENTIAL SETTLEMENT REGARDING UBS PAINEWEBBER**

Defendant Daniel E. Carpenter ("Mr. Carpenter") respectfully moves *in limine* to

preclude the admission of any testimony or argument that the exchangors -- Gail Cahaly ("Ms.

Cahaly"), Jeffrey Johnston ("Mr. Johnston"), Massachusetts Lumber, Joseph Iantosca ("Mr.

Iantosca"), Belridge Corporation ("Belridge"), and Bellemore Associates ("Bellemore")

(collectively, the "Exchangors") -- have suffered any monetary loss.  As grounds for this motion,

Defendant states that:

(1)     Since the first trial in this matter, there have been material, post-trial factual

developments, namely the December 15, 2005 unanimous NASD arbitration award in favor of

Benistar and against UBS PaineWebber ("PaineWebber") in an amount in excess of $12.5

million (the "Arbitration Award") and the civil settlement between PaineWebber and Benistar

Property Exchange Trust Co., Inc. ("Benistar"), in which PaineWebber has agreed to pay

Benistar in excess of $12 million, thereby enabling Benistar to return to the Exchangors the full

amount of their losses as claimed in the Indictment (the "PaineWebber Settlement").

(2)     On May 28, 2008, Ms. Cahaly, Mr. Iantosca, Faxon Heights Apartment Realty Trust, Fern Realty Trust, Belridge, Mr. Johnston, Bellemore, and Massachusetts Lumber and Benistar entered into a stipulation and order regarding partial satisfaction against Benistar (the "Stipulation").  (See Exhibit A)  Pursuant to this Stipulation, all funds paid by PaineWebber as part of the PaineWebber Settlement will be wired directly into an account designated by counsel for the Exchangors for immediate distribution to the Exchangors.[1]  It is Mr. Carpenter's understanding that monies that would have flowed from PaineWebber to Benistar and then to the Exchangors will now flow directly from PaineWebber to the Exchangors, via their respective attorneys.  In addition, it is Mr. Carpenter's expectation that each Exchangor will receive an aggregate amount of money at least equal to the amount which he or she placed with Benistar in connection with their individual 1031 exchanges.

(3)     As a result, the government can no longer in good faith argue (as it did in the prior trial) that the Exchangors will suffer losses, since the PaineWebber Settlement amount exceeds the Exchangors' losses alleged in the Indictment, as well as any legal fees that they may owe their attorneys, and the Stipulation directs the amount of the PaineWebber Settlement, once wired to plaintiffs' counsels' accounts, to be immediately distributed to the Exchangors; and

(4)     This Court indicated in its opinion setting aside the verdict of the first trial and ordering a new trial that substantial evidence and improper argument presented by the government concerning trading strategy and losses suffered by the Exchangors had the tendency to turn the jury's attention away from the charges of the Indictment and instead to blame Mr. Carpenter for losing the Exchangors' money or being a gambler, rather than having engaged in an intentional scheme to defraud.

---

[1] Both Byron Darling and Brian Fitzgerald have previously entered into releases with Benistar and are therefore not part of the Stipulation.

2

In the alternative, if this Court permits the government to admit evidence and testimony concerning losses which were suffered by the Exchangors, Mr. Carpenter requests that this Court rule that such evidence or testimony shall "open the door," thereby permitting the introduction of evidence concerning the Arbitration Award against PaineWebber, the PaineWebber Settlement, and the Stipulation under the doctrine of curative admissibility. This is necessary in order to rebut the false and misleading impression which would be created in the mind of the jury by the government's evidence, that the Exchangors were not repaid.

Furthermore, with this motion, Mr. Carpenter opposes the government's Motion *in Limine* Regarding Arbitration Award and Potential Settlement Regarding PaineWebber, because this evidence is directly relevant to "intent" or "good faith" -- i.e., that at the time Mr. Carpenter obtained the client's funds he intended to repay their money. Additionally, the Arbitration Award, the subsequent order from the New York Supreme Court enforcing that Award, the PaineWebber Settlement, and the Stipulation are all admissible for the purpose of cross-examining the Exchangors, Anthony Zelle, Esq. (the Exchangors' attorney who has been listed by the government as a witness), and any PaineWebber witnesses called by the government, on the basis of bias against Mr. Carpenter. Moreover, the government's characterization of the outcome of the Arbitration and civil litigation involving Mr. Carpenter and PaineWebber as a "settlement" is insufficient to bar such evidence under Fed. R. Evid. 408. Mr. Carpenter should be permitted to present evidence of the Arbitration Award (which is not a "settlement"), the PaineWebber Settlement, and the Stipulation, as all three are relevant to his intent.

## DISCUSSION

## MR. CARPENTER'S MOTION *IN LIMINE*

**I.**     **Testimony and Evidence Concerning Losses Suffered By The Exchangors Should Not Be Admitted, Because By Virtue Of The Arbitration Award, The PaineWebber Settlement, And The Stipulation The Exchangors Will Not Suffer The Losses Set Forth In The Indictment**

Mr. Carpenter has previously provided the Court with the procedural history of civil litigation between Benistar, six exchangors assigned to prosecute claims on behalf of Benistar, and PaineWebber, and specifically the post-trial Arbitration award against PaineWebber in favor of Benistar, and the subsequent efforts of Mr. Carpenter to recompense the Exchangors. See Def. Daniel E. Carpenter's Opp'n To The Gvt's Mot. In Limine To Permit Introduction Of Prior Trial Test. Of Linda Jokinen And Joseph Iantosca, at 2-3. Briefly stated, as a result of the Arbitration Award, the PaineWebber Settlement and Stipulation, once a court has approved the Stipulation, the Exchangors' will receive $12,487,000 in full satisfaction of the NASD Arbitration Award against PaineWebber.

Accordingly, in view of this Arbitration Award in favor of Mr. Carpenter, as well as the PaineWebber Settlement and the Stipulation, the government can no longer in good faith argue (as it did in the prior trial) that the Exchangors will suffer any losses since the settlement amount exceeds the Exchangors' losses alleged in the Indictment, as well as any legal fees that they may owe their attorneys.[2] Similarly, the government may no longer assert or seek to introduce

---

[2] As the government is further aware, on December 11, 2002 a jury in the Massachusetts State Court proceeding determined that Merrill Lynch was civilly responsible to and assessed damages in favor of the following exchangors and against Merrill Lynch: Cahaly $992,230; Jeffry Johnston $541,930; Mass Lumber $3,237,192; Joseph Iantosca $2,913,306.86; Belridge Corp. $514,834.14; and Bellmore Assoc $444,659. In a decision by the Massachusetts trial court dated February 25, 2003, the judgment against Merrill Lynch was vacated and a judgment was entered by the trial judge in favor of Merrill Lynch. Thereafter, on September 24, 2004, the Massachusetts trial court judge ordered that the exchangors were entitled to a new trial against Merrill Lynch. The exchangors and Merrill Lynch filed appeals from the trial court's decisions. The exchangors sought to reinstate the jury verdict. Merrill Lynch sought to reinstate the trial court's decision in favor of Merrill Lynch. The Massachusetts Supreme Judicial Court

testimony (as it did in the prior trial) that the Exchangors will not receive the return of the

monies which were placed with Benistar. In fact, by way of the Arbitration and the recent

Stipulation, Mr. Carpenter has facilitated the return of the Exchangors' funds. Any argument

presented or testimony offered by the government as to the Exchangors' losses, therefore will be

inaccurate, misleading, and prejudicial, if not entirely irrelevant. This Court should preclude

such evidence, testimony, or argument.

### A.    Based Upon Intervening Events, It Is Inaccurate And Misleading To Assert That The Exchangors Have Suffered Losses As A Result Of Mr. Carpenter's Conduct

As noted by this Court in its opinion setting aside the verdict of the first trial and ordering

a new trial, the government's characterization of "losses" incurred by the Exchangors, as well as

testimony and evidence admitted on the same point, "had the tendency to lead the jury away

from the charges in the indictment by inviting them to blame Carpenter . . . because he lost the

[E]xchangors' money." United States v. Carpenter, 405 F. Supp. 2d 85, 102 (D. Mass. 2005)

(further noting, with disapproval, the "rather limited purpose" of the government's introduction

of considerable evidence concerning the "dramatic" extent and persistence of the trading losses,

in conjunction with condemnation of Mr. Carpenter for "gambling"); see also United States v.

Carpenter, 494 F.3d 13, 22 (1st Cir. 2007) ("When it resorted to the gambling metaphors in its

closing arguments, the government made its own gamble that the [District Court], despite its

uneasiness about the potential prejudicial impact of the evidence concerning trading strategy and

financial losses on the jury, would not conclude, in evaluating the inevitable motion for a new

trial, that the government had gone too far with its arguments. There is no unfairness to the

government if it has now lost that gamble.").

---

upheld the lower court's rulings, and a new trial is pending. See Cahaly v. Benistar Property Exchange Trust Co., Inc., 451 Mass. 343 (2008)

BOS 46,358,958v5 5-30-08

In the government's closing arguments, Assistant United States Attorneys Jonathan

Mitchell and Michael Pineault made frequent references to losses suffered by the Exchangors:

> Thus, by mounting an unsustainable losses [sic], the defendant
> continued to trade the same way and he lost more and more . . . .
> The defendant's scheme crashed in January of 2001 and the seven
> individuals that you heard from over the course of the last two
> weeks lost $9 million.

(Tr. T. 12-18:20 -19:1).

> And when it came to a crashing halt, the seven people you heard
> were out nine million bucks.

(Tr. T. 12-46:19-20).

> [Mr. Carpenter] took that money and he gambled it in the options
> market so that it would be worth his time.  He expected to make a
> considerable sum of money doing that, and the clients would be
> none the wiser.  It didn't work out that way, and seven clients lost
> $9 million because of what Mr. Carpenter did.

(Tr. T. 12-99:15-20).  Similar argument was offered by AUSA Mitchell in discussing the

testimony of Snider ("Carpenter lost $3 million of his money") (Tr. T 12-21:6) and Iantosca ("So

he was understandably shocked when Dan Carpenter told him in January of 2001 that his money

was gone, more than $3 million") (Tr. T 12-21:21-23).

This testimony, and the arguments relating to it in the government's closing argument,

had a strong tendency to mislead the jury, and cause them to react emotionally, rather than focus

on whether the government had satisfied its burden of proving the elements of wire and mail

frauds.  As such, the evidence should be precluded under Fed. R. Evid. 403.  See Old Chief v.

United States, 519 U.S. 172, 117 S.Ct. 644, 650 (1997) (citing Advisory Committee's Notes on

Fed. R. Evid. 403) ("'Unfair prejudice' within its context means an undue tendency to suggest

decision on an improper basis, commonly . . . an emotional one.").

6

Additionally, as a result of the Arbitration Award, the PaineWebber Settlement, and the Stipulation, any suggestion of loss on the part of the Exchangors is factually inaccurate, and misleading to the jury.

Any evidence on the subject of the Exchangors' losses is inadmissible under Fed. R. Evid. 401 based upon its irrelevance, or, alternatively under Fed. R. Evid. 403, as its probative value is substantially outweighed by the danger of its unfair prejudicial impact, as well as its tendency to confuse the issues and mislead the jury.

**II.    In The Alternative, If This Court Permits The Government To Introduce Evidence Or Testimony Concerning The Exchangors' Losses, Such Evidence Should Be Deemed To Have "Opened The Door," Thereby Permitting Mr. Carpenter To Introduce Evidence Concerning The Arbitration Award, the PaineWebber Settlement, And The Stipulation.**

If this Court rules that evidence concerning the Exchangors' losses is admissible, then, in turn, the Court should find that such evidence "opens the door" for the admissibility of evidence concerning the Arbitration Award, the PaineWebber Settlement, and the Stipulation. The principle of particular evidence "opening the door," thereby permitting the admission of other evidence as a curative measure to rebut false or incomplete impressions created in the jury's mind, is well-recognized in this Circuit and federal courts throughout the country. United States v. Whiting, 28 F.3d 1296, 1301 (1st Cir. 1994) (citations omitted) (pursuant to the doctrine of curative admissibility, "a trial judge, in his discretion, [may] admit otherwise inadmissible evidence in order to rebut prejudicial evidence which has already been erroneously admitted"); see also United States v. Elgeeh, 515 F.3d 100, 128 (2d Cir. 2008) (quoting United States v. Rosa, 11 F.3d 315, 335 (2d Cir. 1993)) ("The rule of 'opening the door,' or 'curative admissibility,' gives the trial court discretion to permit a party to introduce otherwise inadmissible evidence on an issue (a) when the opposing party has introduced inadmissible

evidence on the same issue, and (b) when it is needed to rebut a false impression that may have resulted from the opposing party's evidence.").

As referenced above, this Court has previously expressed concern with the tendency of argument and evidence presented by the government concerning the Exchangors' losses to mislead the jury. See Carpenter, 405 F. Supp. 2d at 102. This concern is even more warranted in this new trial, because intervening events (including the Arbitration Award, the PaineWebber Settlement, and the Stipulation) make any assertion or suggestion of loss on the part of the Exchangors factually incomplete and inaccurate. The false impression that will be created in the jury's mind as a result of the admission of any government evidence concerning such losses may only be rebutted by the introduction of evidence concerning Mr. Carpenter's successful efforts to repay the Exchangors, which provides the full context and complete story with respect to the loss, and ultimate return, of the Exchangors' money.

Mr. Carpenter has striven, since the loss of the Exchangors' funds, through the process of civil litigation and arbitration, to obtain payment for the Exchangors. In fact, this process of seeking to rectify the harm suffered by the Exchangors began prior to Mr. Carpenter's indictment. On December 10, 2003, nearly three months prior to being indicted for wire and mail fraud, Mr. Carpenter, through Benistar Property Exchange Trust Co., Inc. ("BPE"), filed a NASD arbitration proceeding against PaineWebber alleging that PaineWebber had engaged in misconduct resulting in substantial monetary losses suffered by BPE. This must be admitted in order to tell the full story of the events described in the Indictment, particularly if the government is permitted to reference the Exchangors' losses.

The Arbitration Award, the PaineWebber Settlement, and the Stipulation, which represent Mr. Carpenter's efforts at ameliorating the harm suffered by the Exchangors, and

facilitation of their repayment, are clearly relevant to the issue of Mr. Carpenter's intent. First, while the government is correct that success of the scheme is not an element of mail or wire fraud and hence the government does not have to prove loss, here it is assumed that the government will again be permitted to put into evidence the money lost by the Exchangors. In the first trial, the government's theory was that the loss is relevant to Mr. Carpenter's intent, and through its experts and other witnesses, the government presented substantial evidence of the $9 million loss of Exchangors' money. The government utilized the evidence of the loss and the inferences to be drawn from it, the manner in which the loss occurred, and the fact that the Exchangors were, as of the date they testified, still unpaid, in its opening and closing arguments. See e.g., Anderson v. United States, 369 F.2d 11, 15 (8th Cir. 1996) ("permissively indicative of . . . intent is the absence of any effort on [defendant's] part to rectify the wrongs suffered by victims of the . . . scheme"); see also United States v. Zehrbach, 98 Fed. Appx. 211, 218 (4th Cir. 2004) (noting that, in mail fraud prosecutions, evidence that defendant refused to make good on victim's losses is relevant to show the defendant's specific intent to defraud); United States v. Van Dyke, 605 F.2d 220, 22 (6th Cir. 1979) (considering as relevant evidence concerning intent in a mail fraud case, the fact that defendant received complaints concerning the alleged scheme and did not respond). Given that proof of loss or failure to repay is often utilized by the government-- as it was here-- as being relevant to intent, several courts have held, in similar circumstances, the corollary that "[o]n the other hand, a defendant is entitled to present proof that the victim did not suffer a loss as evidence of the lack of intent." 2 L. Sand et al., Modern Federal Jury Instructions -- Criminal, Comment to Instruction 44-5 at pp. 44-33 (2007). For example, in United States v. Thomas, 32 F.3d 418, 421-22 (9th Cir. 1994), in which defendant was charged with mail fraud involving a scheme to report false prices to his customers in the

course of his produce marketing operations, the court held the defendant was entitled to cross-examine named customers with respect to their having received overpayments. As stated in Thomas:

> The Federal Rules of Evidence provide that "relevant evidence [is] generally admissible." Fed. R. Evid. 402. In addition, the general rule in mail fraud prosecutions is that the defendant "should be permitted to offer any evidence which bears directly and not too remotely on his intention [to defraud], and the court should not exclude any evidence offered by the accused which tends to refute the fraudulent intent charged." [citation omitted]. These rules reflect the fact that individuals accused of criminal behavior should be permitted to present, within reason, the strongest case they are able to marshal in their defense.

32 F.3d at 421-22. The Ninth Circuit reversed the conviction notwithstanding the fact that an expert had in fact offered a conclusion that these customers had not lost money, finding the defendant "should have been permitted to develop fully and fairly all of the evidence that would tend to exonerate him", including argument and cross examination of the growers. Id. at 421. Of similar effect, is United States v. Foshee, 569 F.2d 401, 402-05 (5th Cir. 1978), modified on other grounds, 578 F.2d 401, 403 (5th Cir. 1978) in which defendants were convicted in a mail fraud involving a check kiting scheme. Although the defendants were permitted to introduce direct evidence that the banks involved in the charged scheme had not lost money, the trial court had precluded the defendant from arguing the point in closing argument. In reversing the conviction, the court held that the evidence had a bearing on the defendant's "good faith" or "intent" and that the Foshees had a right to urge that the banks did not lose any money. Id. at 403-04. See also United States v. Ethridge, 948 F.2d 1215, 1217 (11th Cir. 1991) ("If [the insurance company] had lost money, the government would likely have introduced that fact as evidence of intent to defraud. In our opinion, the Ethridges are equally entitled to argue that the fact that [the insurance company] did not suffer a loss related to their intent, and present

evidence to support that argument. . . . The jury, armed with all relevant evidence could then ultimately decide this issue."); United States v. Sirang, 70 F.3d 588, 595 (11th Cir. 1995) (while trial court held not to have abused its discretion in failing to give requested instruction on partial repayment as bearing on defendant's intent to defraud where partial payment was made under compulsion of litigation, counsel was permitted to introduce evidence of payment, commented on payment in summation and the jury was permitted to consider this evidence.); United States v. Clearly, 565 F.2d 43, 47-48 (2d Cir. 1977) (in context of bank fraud, the matter of repayments was ruled to be relevant to element of intent). In sum, even those decisions stating that "repayment is neither a defense nor material to the crime" generally permit the defendant to introduce evidence of repayment. See, e.g., United States v. Southers, 583 F.2d 1302, 1307 (5th Cir. 1978) (although the lower district court denied defendant's request for a jury instruction concerning restitution's relevance to intent, it did permit him to present testimony regarding his intent to repay, as well as the repayment).

Based upon the intervening events since the last trial, most notably the Arbitration Award, the PaineWebber Settlement, and the Stipulation, this Court should find any evidence concerning the Exchangors' losses to be irrelevant under FRE 401, or misleading and prejudicial under FRE 403. To the extent the evidence of loss is admitted, under the doctrine of "curative admissibility" as well as the independent relevance of repayment, Mr. Carpenter should be permitted to present evidence relating to the Arbitration Award, the PaineWebber Settlement, and the Stipulation.

## MR. CARPENTER'S OPPOSITION TO THE GOVERNMENT'S MOTION *IN LIMINE*

Mr. Carpenter hereby opposes the Government's motion *in limine* seeking to exclude evidence concerning the Arbitration Award and a "potential settlement between [PaineWebber] and Benistar Property Exchange Trust Co." The reasons for this opposition in large part mirror the rationale behind Mr. Carpenter's motion *in limine* to have such evidence admitted if the Government is permitted to present evidence concerning the Exchangors' losses. As discussed above, evidence of efforts to ameliorate losses have been deemed relevant to intent in mail and wire fraud cases, and the authority that the government cites to the contrary is distinguishable from this case. Moreover, the government's arguments concerning the potential prejudicial impact of evidence concerning the repayment of the Exchangors can only be viewed credibly if no evidence concerning loss is presented to the jury. In contrast, as argued above, to allow the government to present an incomplete and misleading portrayal of the Exchangors losing, in aggregate, over $9 million, and not permitting the defendant to demonstrate that (1) he was pursuing litigation to recover these funds from PaineWebber prior to being indicted, and (2) these amounts, through the efforts of Mr. Carpenter, have been returned to the Exchangors, is extremely prejudicial to the defendant, as it leaves the jury with the impression that these losses were never repaid, and that the defendant was indifferent to the matter.

Additionally, the government's arguments to preclude the evidence of Mr. Carpenter's efforts to repay the losses suffered by the Exchangors on the basis of Fed. R. Evid. 408 are based on incorrect interpretations of the significance of the Arbitration Award, Mr. Carpenter's subsequent conduct in seeking to enforce that award, and the purpose for which Mr. Carpenter seeks to admit such evidence.

## I.     Evidence Of Mr. Carpenter's Repayment Of The Exchangors Is Relevant

*BOS 46,358,958v5 5-30-08*

Contrary to the government's arguments, evidence of Mr. Carpenter's repayment of the Exchangors is directly relevant to the determination of Mr. Carpenter's intent. See, e.g., Anderson, 369 F.2d at 15; Zehrbach, 98 Fed. Appx. at 218 (4th Cir. 2004); Van Dyke, 605 F.2d at 222; 2 L. Sand et al., Modern Federal Jury Instructions -- Criminal, Comment to Instruction 44-5 at pp. 44-33; Thomas, 32 F.3d at 421-22; Foshee, 569 F.2d at 402-05; Ethridge, 948 F.2d at 1217; Sirang, 70 F.3d at 595, discussed supra.

Virtually every case cited to the contrary by the government differs factually and is distinguishable. For example, in United States v. Vincent, 416 F.3d 593, 600 (7th Cir. 2005), while the Seventh Circuit did hold that proof that a victim recovered some of the funds lost during bankruptcy has little to no relevance to the mail or wire fraud, the court made clear that this holding was based on the facts of that case. In Vincent, the victim recovered only $20,000 of $140,000 due and the money was not obtained voluntarily, but rather from the trustee administering the defendant's bankrupt estate and only upon order of the bankruptcy court. Id. at 601. The Court also held that "[w]hile a partial recovery might be relevant to a defendant's intent to defraud [the victim], the defendant does not advance the theory that Vincent made an honest mistake." Id. In contrast, in Mr. Carpenter's case, the Arbitration Award against PaineWebber and in favor of Benistar was made possible in the first instance only because Mr. Carpenter initiated those proceedings and, since the recent termination of those proceedings, within weeks he has agreed to turn over all of the money to the investors to make them whole for what they invested in Benistar. Moreover, unlike Vincent, Mr. Carpenter's defense is that he lacked the intent to defraud the Exchangors.

United States v. Brocksmith, 991 F. 2d 1363, 1368 n.2 (7th Cir. 1993), also cited by the government is factually inapposite and based in part on the appellate court's finding that counsel

13

waived the claim at trial.  In <u>Brocksmith</u>, the defendant had taken the victims' premium checks in the amount of $78,000 for a life insurance policy, had used their money to pay for his personal expenses, lied to the victims that someone had stolen the premium checks and then offered to pay them $10,000 in a check (which later "bounced") and $1,000 a month thereafter; an offer which they rejected.  <u>Id.</u> at 1364-65.  The Court held that while the victim testified at trial that she had rejected the defendant's offer of "repayment" it was not reversible error for the court to have precluded defendant from cross-examining her on the fact that she had received reimbursement from her insurance company because: loss was relevant in a mail fraud case; the fact that the victim received "partial reimbursement from another party is not ordinarily relevant" and; even if the "original testimony was prejudicial because it led the jury to believe the victims never recovered their loss," defendant waived the argument when counsel failed to object at trial.  <u>Id.</u> at 1368 n.21.

United States v. Bowman, 81 Fed. Appx. 104, 106 (9th Cir. 2003) is also distinguishable from the instant case.  <u>Bowman</u> involved the exclusion of evidence of defendant's "attempts to get a replacement guarantor," which is quite different than the anticipated evidence here -- that Mr. Carpenter initiated the Arbitration proceedings to obtain money to repay the Exchangors, and further has agreed to turn that money over to the Exchangors notwithstanding the fact that it has been awarded to Benistar.

The repayment of the Exchangors, and Mr. Carpenter's significant role in facilitating that repayment, is important evidence on the subject of Mr. Carpenter's intent.  The government's argument that the evidence is irrelevant is not applicable based on the factual circumstances presented by the Arbitration Award, the PaineWebber Settlement, and the Stipulation.

**A.    During The First Trial, This Court Ruled That Evidence Concerning The Arbitration Was Admissible For Impeachment Purposes**

14

In the first criminal trial, when presented with evidence concerning the Arbitration involving PaineWebber, this Court ruled that such evidence was admissible for purposes of cross-examining certain government witnesses.  Mr. Carpenter's counsel in the first trial argued in a motion in limine filed during the trial, that he had the right, under the Sixth Amendment, to cross-examine PaineWebber witnesses regarding the (then pending) Arbitration, as well as the complaints filed against PaineWebber in the parallel civil litigation, in order to expose any biases the witnesses might harbor against Mr. Carpenter or in the government's favor, or any motive or interests the witnesses might have had to shade their testimony one way or another.  See Defendant's Trial Motion in Limine No.3, Docket # 131, filed July 18, 2005, attached hereto as Exhibit B.  He further argued that such cross-examination would not open the door for the government to present evidence of civil litigation against Mr. Carpenter.

In arguing against the motion, AUSA Michael Pineault requested that if the cross-examination of the PaineWebber witnesses was permitted on the subject of the Arbitration, then the government should be allowed to "introduce the fact of the civil litigation filed against Mr. Carpenter and the others. . . . [I]f he's going to ask about the fact of the arbitration claim, then I think the jury to get the whole picture and the true picture should hear about the fact of the other litigation as well." Tr. T. 6-10-11

After hearing argument from both Mr. Carpenter's counsel and the government, the Court rejected the government's argument and determined:

> I agree with [Mr. Carpenter's counsel] on this, that the purpose of the examination of the witness, the cross-examination, would be impeachment of them only.  And so the evidence of the collateral proceedings is not admitted for some general -- because of some general relevance to the issues here but for the limited purpose of suggesting that the jurors ought to be cautious of accepting the testimony of a witness who may have a motive by reason of the

BOS 46,358,958v5 5-30-08

> other proceedings to frame the testimony in a particular way. So it's a very limited purpose, and I think expanding it, as suggested by the government, does not meet that purpose. There may be defense witnesses who can similarly be impeached, and that would be permitted on the same rules.

Tr. T. 6-11:3-15.

The same reasons that supported the decision to allow Mr. Carpenter to cross-examine witnesses on the (then) pending Arbitration, apply for the Arbitration Award (the ultimate outcome of that proceeding), the New York Supreme Court order enforcing that Award, the PaineWebber Settlement, and the recent Stipulation. These events provide possible motives for bias of the witnesses against Mr. Carpenter, as well as interests the witnesses may have in shaping their testimony in a particular manner. Mr. Carpenter's same Sixth Amendment rights exist during this trial, and as a result, the Court should permit Mr. Carpenter to cross-examine the Exchangors, Anthony Zelle (the Exchangors' attorney), and PaineWebber witnesses on the subjects of the Arbitration Award, the PaineWebber Settlement, and the Stipulation.

## II.  The Relevance of Mr. Carpenter's Repayment Of The Exchangors Is Not Substantially Outweighed By Prejudice To The Government's Case

The government asserts, without any clear support, that evidence of Mr. Carpenter's repayment of the Exchangors poses "too great a risk of confusion, prejudice, and undue delay to the proceedings." The government further implies that the fact that the repayment has been delivered to the Exchangors some seven and a half years after "Carpenter's scheme collapsed," is dispositive of the prejudice analysis under Rule 403. As a preliminary matter, the delay in Mr. Carpenter ameliorating the Exchangors' losses, is not due to any dilatory behavior on Mr. Carpenter's part. To the contrary, Mr. Carpenter's efforts to repay the Exchangors, including his bringing the Arbitration action against PaineWebber, predate the Indictment in this case.

16

Setting aside the misleading arguments concerning the time frame for the repayment of

the Exchangors, the only risk of prejudice in connection with this evidence is if the government

is successful in keeping out Mr. Carpenter's repayment of the Exchangors and allowed to present

evidence of loss as it did during the first trial.  If so permitted, the government would present an

incomplete and distorted portrait of the events and the jury would not have before it exculpatory

evidence relevant to the determination of Mr. Carpenter's intent.  No prejudice will result if the

complete story regarding the loss <u>and</u> the repayment is allowed to be presented.

### III.   The Government's Characterization Of The Arbitration Award and PaineWebber Settlement, As Well As Mr. Carpenter's Intended Use Of Independently Relevant Evidence Thereof At Trial, Is Incorrect, And Rule 408 Is Inapplicable

The government's discussion and characterization of the Massachusetts civil litigation

and the arbitration involving, among others, Mr. Carpenter, the Exchangors, PaineWebber, and

Merrill Lynch does nothing to rebut the two points concerning those proceedings which are most

significant to Mr. Carpenter's criminal case.  First, notwithstanding the parties' reference to the

term "settlement" in connection with discussions between PaineWebber, the Exchangors, and

Mr. Carpenter, the evidence that Mr. Carpenter seeks to have admitted at trial is not a

"compromise" or "compromise negotiations," but rather the outcome of an adversarial

proceeding akin to litigation which was held before the NASD, <u>i.e.</u>, the Arbitration Award.

Similarly, Mr. Carpenter's more recent, and ultimately successful, attempt to facilitate and secure

the payment ordered by Arbitration Award for the Exchangors, cannot credibly be viewed as a

"compromise" pursuant to Rule 408, but instead must be seen as Mr. Carpenter's effort at

enforcing and collecting upon a judgment rendered after a process akin to litigation.

More importantly, Rule 408 is inapposite under these circumstances, as Mr. Carpenter

does not seek to introduce evidence concerning the Arbitration Award or his efforts at securing it

for the purpose of proving "liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Instead, as discussed above, this evidence is relevant to the determination of Mr. Carpenter's intent. See, e.g., Anderson, 369 F.2d at 15; Zehrbach, 98 Fed. Appx. at 218; Van Dyke, 605 F.2d at 222; 2 L. Sand et al., Modern Federal Jury Instructions -- Criminal, Comment to Instruction 44-5 at pp. 44-33; Thomas, 32 F.3d at 421-22; Foshee, 569 F.2d at 402-05; Ethridge, 948 F.2d at 1217; Sirang, 70 F.3d at 595.

A.   **The Government's Contention That Evidence Concerning The Arbitration Award and the PaineWebber Settlement Is Barred Under Fed. R. Evid. 408 Is Based Upon A Mischaracterization Of A Finding In Mr. Carpenter's Favor As A "Settlement" And An Inapplicable Version Of The Rule**

The government, citing the current version of Fed. R. Evid. 408 (effective December 1, 2006), argues that the Arbitration Award and the PaineWebber Settlement should be barred, on the grounds that offers of settlement and settlements themselves are inadmissible to prove liability for invalidity of a claim.  This argument is incorrect, because the evidence the government seeks to exclude does not qualify as "compromise" or "compromise negotiations." In Rodriguez-Garcia v. Municipality of Caguas, the First Circuit held that it was erroneous for a trial court to exclude, under Rule 408, certain letters sent by the plaintiff to mayor of the municipality she had previously worked for. 495 F.3d 1, 3-5 (1st Cir. 2007).  The court noted that the letters were to put the defendants on notice of a claim, and in fact resulted in the plaintiff getting "exactly what she wanted," and therefore could not be characterized as settlement negotiations. Id. at 12.  In support of its determination that the letters were admissible, the court cited Merriam-Webster's Collegiate Dictionary, defining "compromise" as "a settlement of differences reached by mutual concession." Id.  Similarly, the Arbitration Award, and subsequent efforts to enforce that judgment upon PaineWebber, cannot be credibly described as

18

"compromise." An arbitration, by its nature has winners and losers and, quite distinct from a mediation, does not aim for compromise. See 6 Corpus Juris Secundum § 2 (2008) ("Arbitration is an alternative to litigation and has been distinguished from both appraisal and mediation. . . . Mediation is an intervention between conflicting parties or viewpoints to promote reconciliation, settlement, compromise, or understanding. An arbitration, unlike mediation, is in the nature of a trial on the merits. . . ."); In re Home Health Corp. of America, Inc., 268 B.R. 74, 78 (Bank. D. 2001) ("Arbitration . . . is not in the nature of settlement discussions. . . . Pleadings submitted in connection with arbitration (which may include briefs and other pleadings similar to those filed in lawsuits) are not covered by Rule 408."). The Arbitration Award was the outcome of an adversarial proceeding and therefore cannot be deemed to be a "compromise." Similarly, Mr. Carpenter's continued attempts to repay the Exchangors cannot be viewed credibly as "attempts to compromise."

Even assuming, arguendo, that this Court finds that the Arbitration Award and/or the PaineWebber Settlement are "settlements" as defined under Rule 408, such evidence is still admissible, because some courts have interpreted the pre-2006 version of Rule 408 to be inapplicable to criminal cases. See, e.g., Manko v. United States, 87 F.3d 50, 54-55(2d Cir. 1996) ("[T]he policy that underlies Rule 408 does not apply to criminal prosecutions. The policy favoring the encouragements of civil settlements, sufficient to bar their admission in civil actions, is insufficient, in our view, to outweigh the need for accurate determinations in criminal cases where the stakes are higher. It makes no difference, in this regard, whether the settlement evidence is being offered by the government . . . or by the defense . . . ."). In ordering the amendment of Rule 408, the Supreme Court of the United States noted that the amendment took effect on December 1, 2006, and would "govern in all proceedings thereafter commenced, and

BOS 46,358,958v5 5-30-08

insofar as just and practicable, all proceedings then pending." (emphasis added). This criminal matter and the Arbitration were commenced prior to the amendment to Rule 408. Even if the second clause were to apply, it is not "just and practicable" that amended Rule 408 apply here. This is particularly true due to the fact that Mr. Carpenter is facing the amended Rule 408 as a result of the government's prejudicial and misleading statements during closing arguments in the first trial, which resulted in this new trial. The government's argument that it can keep out evidence critical and relevant to Mr. Carpenter's good faith intent due, indirectly, to its own misconduct would result in a violation of basic standards of fairness, and would be manifestly unjust.

*BOS 46,358,958v5 5-30-08*

## CONCLUSION

WHEREFORE, defendant Daniel E. Carpenter respectfully requests this Court grant his

Motion in Limine to prohibit the admission of any testimony or argument that the Exchangors

have suffered any monetary loss, or alternatively, if such testimony, or evidence, is admitted or

argument offered, Defendant is permitted to introduce evidence concerning the Arbitration

Award against PaineWebber, the settlement reached between PaineWebber UBS and Benistar

Property Exchange Trust Co., Inc. in late April or early May of 2008, and the Stipulation entered

into between the Exchangors and Benistar in which Mr. Carpenter facilitated the return of the

Exchangors' monies.  Furthermore, the defendant respectfully requests this Court deny the

government's Motion *in Limine* to preclude evidence regarding the Arbitration Award,

PaineWebber Settlement, or the Stipulation.

RESPECTFULLY SUBMITTED:
DANIEL E. CARPENTER, Defendant,
By his attorney:

/s/ A. John Pappalardo
A. John Pappalardo (BBO # 338760)
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

## Certificate of Service

I hereby certify that on this 30th day of May, 2008, I served on counsel of record in the
foregoing matter Daniel E. Carpenter's Motion in Limine to Prohibit Admission of Testimony or
Argument That Exchangors Have Suffered Monetary Loss, by means of the ECF system.

/s/ A. John Pappalardo
A. John Pappalardo

BOS 46,358,958v5 5-30-08