UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS
Eastern Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 04-10029-GAO |
| | ) | |
| DANIEL E. CARPENTER | ) | |

## **DEFENDANT'S MOTION TO DISMISS ON DOUBLE JEOPARDY**

Defendant Daniel E. Carpenter respectfully moves to dismiss the superseding indictment because a retrial will violate the Double Jeopardy Clause. Mr. Carpenter has already been tried and has received the functional equivalent of an acquittal on the charges that he (1) aided and abetted Benistar Property Exchange ("BPE") president Martin L. Paley ("Paley") in a mail and wire fraud scheme; and (2) caused Paley to make **oral** misrepresentations to the Exchangors.

At the May 22, 2008 final pretrial conference, the government stated that it would *once again* attempt to prove that Paley was Mr. Carpenter's "agent,"[1] and that Paley made **oral** misrepresentations to the Exchangors.[2] Because the government will be forced to relitigate *exactly* the same facts and issues on which Mr. Carpenter has previously prevailed, retrial is barred by the collateral estoppel and res judicata components of the Double Jeopardy Clause. The concept of "continuing jeopardy," see United States v. Porter, 807 F.2d 21, 24 n.2 (1st Cir. 1986), does not apply here because Mr. Carpenter's functional acquittal on aiding and abetting and oral misrepresentations is based on insufficiency of the evidence on those issues—not legal error.

---

[1] AUSA MITCHELL: "[Paley's] representations are not hearsay; they are admissions by an agent of the defendant." 5/22/08 Tr. at 5.

[2] AUSA MITCHELL: "[Paley's] statements come in because they are - - for non-hearsay purposes; they come in for the fact that they are verbal acts and representations made to the Exchangors *that induced them* to give their money to Benistar." Id. at 6 (emphasis added).

The Ninth Circuit has recently described the protections inherent in the Double Jeopardy Clause that are particularly applicable here:

> The Double Jeopardy Clause requires the government to put on its strongest case the first time; it forbids it to conduct a series of prosecutions, involving the same fundamental issues, in which it presents additional arguments and evidence at each iteration. Here, the government has already had its chance to prove that [Mr. Carpenter aided and abetted a mail and wire fraud scheme involving oral misrepresentations]. It failed . . . Under the Double Jeopardy Clause, the government may not take a mulligan.

United States v. Castillo-Basa, 483 F.3d 890, 893 (9th Cir.), reh'g denied, 494 F.3d 1217 (9th Cir. 2007).[3]

## I.  ARGUMENT

### A.  Background.

The indictment charges 19 counts of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, and makes reference in each count to aiding and abetting under 18 U.S.C. § 2. See indictment ¶¶ 103, 105. Jeopardy attached as soon as the jury was empaneled and sworn in the first trial (in July 2005) on the charges contained in the indictment. See Crist v. Bretz, 437 U.S. 28, 35 (1978) ("jeopardy attaches when the jury is empaneled and sworn."); United States v. Pacheco, 434 F.3d 106, 112 (1st Cir.), cert. denied, 547 U.S. 1149 (2006) ("In a jury case, jeopardy attaches when the jury is empaneled and sworn."). Because jeopardy attaches when the jury is empaneled and sworn, the protections afforded by the Double Jeopardy Clause include "the defendant's valued right to have his trial be completed by a particular tribunal." Arizona v. Washington, 434 U.S. 497, 503 (1978).

---

[3] Another example of the government taking a "mulligan" is the government's attempt, literally at the 11th hour, to add a jury instruction regarding a fictitious fiduciary duty where there is none as a matter of law, so that the government can once again argue a case of omissions rather than affirmative misrepresentations as charged in the indictment. See Gov. Mot. for New Jury Instruction (Dkt. #264). Adding new charges to a deficient indictment is one of the abuses the Double Jeopardy Clause was designed to prevent.

2

After jeopardy attached in the first trial, and after the close of all the evidence, at the charging conference the government abandoned its efforts to have the jury instructed on an aiding and abetting theory of liability under 18 U.S.C. § 2. See United States v. Carpenter, 405 F. Supp. 2d 85, 95 n.6 (D. Mass. 2005); 7/25/05 Tr. Charging Conf. at 31-32.[4] Furthermore, the Court found that there was insufficient evidence to support a jury instruction that **oral** misrepresentations had been made. See Tr. Charging Conf. 45.[5] As a result, the Court found that the case "has to be confined to the substance of what's already in the writings." Id. at 46.

"[A] trial court's finding of insufficient evidence also is the equivalent of an acquittal." Richardson v. United States, 468 U.S. 317, 325 n.5 (1984). This holding in Richardson makes the concept of "continuing jeopardy" inapplicable to the unique facts of this case.[6] Because the Court found that there was insufficient evidence regarding oral misrepresentations, Mr. Carpenter has received the functional equivalent of an acquittal that oral misrepresentations were made. The government's abandonment of the aiding and abetting theory after jeopardy had attached is also the functional equivalent of an acquittal on that theory of liability because "[a] resolution in the defendant's favor of a necessary factual element of the offense is a definitive determination that the defendant cannot be convicted." Pacheco, 434 F.3d at 112. Thus, Mr. Carpenter has received the functional equivalent of an acquittal on an aiding and abetting theory of mail and wire fraud (*i.e.*, that Paley was Mr. Carpenter's agent), as well as on the charge that oral

---

[4] THE COURT: "Aiding and abetting?"
THE PROSECUTOR: "It's acceptable to the government not to give this one."
THE COURT: "Okay." 7/25/05 Tr. Charging Conf. at 31-32.

[5] THE COURT: "[Y]ou're not going to argue anything that Mr. Paley said that is different from what is in the written agreements or written materials, let me call it that, including the promotional materials."
THE PROSECUTOR: "I think that's correct, your Honor . . . we're adhering to all the written materials."
THE COURT: "I think you have to on the evidence." 7/25/05 Tr. Charging Conf. at 45.

[6] The concept of "continuing jeopardy" would apply had there not been a previous determination that the evidence was insufficient regarding aiding and abetting and oral misrepresentations.

misrepresentations were made. "**The word [acquittal] has no talismanic quality for purposes of the Double Jeopardy Clause**." Serfass v. United States, 420 U.S. 377, 392 (1975) (emphasis added).

Due to these effective acquittals, dismissal of the indictment is warranted because a retrial will result in several violations of the Double Jeopardy Clause. The first violation will occur because aiding and abetting on the one hand, and the underlying substantive offenses of mail and wire fraud on the other hand, are exactly the "same offence" for double jeopardy purposes. Thus, under the "same elements" test of Blockburger v. United States, 284 U.S. 299 (1932), retrial is barred. The second violation will occur because, in order to retry Mr. Carpenter on the underlying substantive offenses of mail and wire fraud, the government will be required to relitigate the *exact* same legal and factual issues that were already resolved in Mr. Carpenter's favor. As a result, the collateral estoppel and res judicata prongs of the Double Jeopardy Clause also bar retrial. See Ashe v. Swenson, 397 U.S. 436 (1970); Sealfon v. United States, 332 U.S. 575 (1948).

**B.    Double Jeopardy Principles Clearly Apply.**

The Double Jeopardy Clause of the Fifth Amendment commands that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." U.S. Const. amend. V. This prohibition "is not against being twice punished, but against being twice put in jeopardy; and the accused, whether convicted or acquitted, is equally put in jeopardy at the first trial." United States v. Ball, 163 U.S. 662, 669 (1896). The Supreme Court "many times has held that the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; and multiple punishments for the same offense." United States v. Halper, 490 U.S. 435, 440 (1989); see also United States v. Henry, 519 F.3d 68, 71 (1st Cir. 2008) ("Generally, this prohibition against

4

double jeopardy shields a defendant from a second prosecution for the same offense after either conviction or acquittal.") (internal quotation marks omitted).

It is the protection after a previous acquittal that is implicated here. As famously noted by the Supreme Court:

> The underlying idea, one that is deeply ingrained in at least the Anglo-American system of jurisprudence, is that the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, *as well as enhancing the possibility that even though innocent he may be found guilty*.

Green v. United States, 355 U.S. 184, 187-88 (1957) (emphasis added); see also Burks v. United States, 437 U.S. 1, 11 & n.6 (1978) ("The Double Jeopardy Clause forbids a second trial for the purpose of affording the prosecution another opportunity to supply evidence which it failed to muster in the first proceeding . . . **where the Double Jeopardy Clause is applicable, its sweep is absolute**.") (emphasis added).

It is important to note that this case does not involve a mistrial or an appeal of a legal technicality. Rather, this is a case of classic double jeopardy where Mr. Carpenter is being forced to "run the gauntlet" again, see Abney v. United States, 431 U.S. 651, 662 (1977), after the evidence was found insufficient on two main issues. As applied to the particular facts of this case, the Double Jeopardy Clause "prevents the State from honing its trial strategies and perfecting its evidence through successive attempts at conviction. Repeated prosecutorial sallies would unfairly burden the defendant and create a risk of conviction through sheer governmental perseverance." Tibbs v. Florida, 457 U.S. 31, 41-42 (1982); see also 12 Charles Viner, A General Abridgement of Law & Equity 479 (2d ed. 1794) ("[T]he mischief might be very great if the party should be put to a new trial, for then his adversary would see where he failed, and might use ill means to prove what he failed in before."). Based on the government's statements at the final

pretrial conference and its witness list, the government intends to retry the same case as the first time, which means that the government will necessarily have to relitigate and reprove the same facts and issues on which Mr. Carpenter has already prevailed.  "Where successive prosecutions are at stake, the guarantee serves a constitutional policy of finality for the defendant's benefit." Brown v. Ohio, 432 U.S. 161, 165 (1977) (internal quotation marks omitted).

### C.    Mr. Carpenter Has Been Effectively Acquitted of the Charged Conduct.

The Court has already determined that the evidence proffered at the first trial was insufficient regarding oral misrepresentations, thereby resulting in Mr. Carpenter's effective acquittal that he made, or caused Paley to make, oral misrepresentations to the Exchangors. Similarly, Mr. Carpenter has also received the functional equivalent of an acquittal that he aided and abetted mail and wire fraud, or that Paley was somehow Mr. Carpenter's agent in a mail and wire fraud scheme.  Because aiding and abetting merges into the substantive offense as a matter of law, this means that Mr. Carpenter has been effectively acquitted of being a *principal* in the mail and wire fraud scheme charged in the indictment.

"An aider and abettor charge is implicit in all indictments for substantive offenses." United States v. Footman, 215 F.3d 145, 153-54 (1st Cir. 2000) (internal quotation marks and citations omitted).  Furthermore, "aiding and abetting is not a separate offense from the underlying substantive crime." United States v. Mitchell, 23 F.3d 1, 2 (1st Cir. 1994) (internal quotation marks and citations omitted); see also United States v. Ellis, 2008 WL 2004276, *2 (10th Cir. May 12, 2008) ("aiding and abetting is not an independent crime.").  "In fact, when a person is charged with aiding and abetting the commission of a substantive offense, *the crime charged is . . . the substantive offense itself*." United States v. Smith, 198 F.3d 377, 383 (2d Cir. 1999) (internal quotation marks and citations omitted) (emphasis added).

6

Because mail and wire fraud are specific intent crimes, aiding and abetting and the substantive offenses of mail and wire fraud both require proof of "the specific criminal intent to defraud." United States v. Urciuoli, 513 F.3d 290, 300 n.8 (1st Cir. 2008) (internal quotation marks and citations omitted). Notably, one of the defendants in Urciuoli was "convicted of a single count of mail fraud, on the theory that she aided and abetted Urciuoli." Id. at 293. This shows that aiding and abetting necessarily merges with and into the substantive offenses of mail fraud and, similarly, wire fraud. See Pasquantino v. United States, 544 U.S. 349, 355 n.2 (2005) ("we have construed identical language in the wire and mail fraud statutes *in pari materia*."). "**The state of mind required for conviction as an aider and abettor is the same state of mind as required for the principal offense**." United States v. Tobin, 480 F.3d 53, 61 (1st Cir. 2007) (emphasis added). Mr. Carpenter obtained the functional equivalent of an acquittal on the theory that he aided and abetted the commission of mail and wire fraud, which encompasses the exact same set of facts, statutory elements, and *mens rea* that the government will be required to prove in a retrial that he was a principal in the mail and wire fraud scheme charged in the indictment.

The enactment of the aiding and abetting statute "abolishe[d] the distinction between principals and accessories and [made] them all principals." Hammer v. United States, 271 U.S. 620, 628 (1926). "With the enactment of that section, all participants in conduct violating a federal criminal statute are 'principals.'" Standefer v. United States, 447 U.S. 10, 20 (1980); see also Gonzales v. Duenas-Alvarez, 127 S. Ct. 815, 820 (2007) ("Indeed, every jurisdiction—all States and the Federal Government—has expressly abrogated the distinction among principals and aiders and abettors.") (internal quotation marks omitted). Mr. Carpenter is deemed, as a matter of law, to have been both an aider and abettor *and* a principal. Mr. Carpenter's effective acquittal on aiding and abetting results in an effective acquittal on the substantive offense because the commission of the substantive offense by a principal is a necessary predicate for aiding and

7

abetting liability. The Double Jeopardy Clause bars any retrial because the government will have to prove beyond a reasonable doubt that Mr. Carpenter committed—as a principal—the exact same substantive offenses for which he was previously acquitted as an aider and abettor *and a principal*. This is precisely the "second bite at the apple" against which the Double Jeopardy Clause was designed to protect—particularly since the government intends to retry the exact same case as before.

> **D.    Retrial is Barred Under the *Blockburger* "Same Elements" Test.**

The Supreme Court "has concluded that where the two offenses for which the defendant is punished or tried cannot survive the 'same-elements' test, the double jeopardy bar applies." United States v. Dixon, 509 U.S. 688, 696 (1993) (Scalia, J., joined by Kennedy, J.) (citing Blockburger v. United States, 284 U.S. 299, 304 (1932)). "The same-elements test, sometimes referred to as the "*Blockburger*" test, inquires whether each offense contains an element not contained in the other; if not, they are the 'same offence' and double jeopardy bars additional punishment and successive prosecution." Dixon, 509 U.S. at 696. See also United States v. Parrila-Tirado, 22 F.3d 368, 372 (1st Cir. 1994) ("if the crimes charged have the same elements, or if one is a lesser included offense of the other, double jeopardy at some point will bar the door.").[7]

Aiding and abetting mail and wire fraud under 18 U.S.C. § 2, and the substantive offenses of mail and wire fraud under 18 U.S.C. §§ 1341 and 1343, are one in the same, *i.e.*, they are the "same offence" for double jeopardy purposes. Because "aiding and abetting is not a separate offense from the underlying substantive crime," Mitchell, 23 F.3d at 2, by definition they are the "same offence" and thus satisfy the *Blockburger* test. Since all of the elements of aiding and

---

[7] Even if aiding and abetting were considered a lesser-included offense of mail and wire fraud, which it is not, the Double Jeopardy Clause would still bar retrial. See, e.g., Brown, 432 U.S. at 168; Illinois v. Vitale, 447 U.S. 410, 419 (1980).

8

abetting merge into the elements for mail and wire fraud, the two are the "same offence" under the *Blockburger* test and, as a result, retrial is barred under the Double Jeopardy Clause.

      E.      **Retrial is Barred by Collateral Estoppel.**

The Double Jeopardy Clause embodies the doctrine of collateral estoppel (issue preclusion). The principle of collateral estoppel, which "bars relitigation between the same parties of issues actually determined at a previous trial," Ashe v. Swenson, 397 U.S. 436, 442 (1970), is "embodied in the Fifth Amendment guarantee against double jeopardy." Id. at 445; see also Schiro v. Farley, 510 U.S. 222, 232 (1994) ("the Double Jeopardy Clause incorporates the doctrine of collateral estoppel in criminal proceedings."); United States v. Morris, 99 F.3d 476, 480 (1st Cir. 1996) ("It is settled beyond cavil that the Double Jeopardy Clause encompasses the doctrine of collateral estoppel."). "In a criminal case, a defendant who wishes to wield this doctrinal weapon against the government bears the burden of demonstrating that the issue he seeks to foreclose was in fact settled by the first proceeding." Morris, 99 F.3d at 480. Based on a "whole-record review," id. at 481, such a burden is easily met here.

The indictment essentially alleges that Mr. Carpenter somehow, by reviewing and editing certain documents, mysteriously induced the Exchangors (with whom he did not meet or communicate), or aided and abetted Paley's inducement of them, to utilize BPE as their § 1031 qualified intermediary based on materially false oral and written misrepresentations that the Exchangors' funds from the sale of their relinquished properties would be "protected" and "held safe." See indictment ¶¶ 17, 18, 27, 41. However, instead of keeping the funds "safe" (without ever defining the term), the indictment charges that Mr. Carpenter engaged "in aggressive, high

9

risk trading in the options market," see indictment ¶¶ 26, 32, resulting in "over $9 million" in investment losses at PaineWebber. See indictment ¶¶ 29, 53, 58.[8]

However, during the first trial, the government (1) conceded that no **oral** misrepresentations had been made; (2) established that Paley and his office manager Linda Jokinen were the source for and provided all of the BPE written materials to the Exchangors; and (3) abandoned its efforts to convict Mr. Carpenter under a theory that he aided and abetted someone (presumably Paley) in making alleged **written** misrepresentations to the Exchangors. Under the doctrine of collateral estoppel, retrial is barred because in order to convict Mr. Carpenter of the substantive mail and wire fraud offenses charged in the indictment (*i.e.*, that he was a principal in a mail and wire fraud scheme involving making *written* misrepresentations to the Exchangors), the government will be required to reprove the same ultimate facts that have already been determined in Mr. Carpenter's favor (*i.e.*, that he did not aid and abet the commission of a mail and wire fraud scheme involving oral *or* written misrepresentations either as an aider and abettor *or* a principal). See United States v. Lanoue, 137 F.3d 656, 662 (1st Cir. 1998) ("collateral estoppel requires that an issue of ultimate fact has been determined in the defendant's favor in a prior prosecution between the same parties.").

In United States v. Ohayon, 483 F.3d 1281 (11th Cir.), reh'g denied, 255 Fed. App'x 498 (11th Cir. 2007) (table), the defendant was acquitted of attempting to possess drugs with intent to distribute and a hung jury resulted on the charge of conspiracy with intent to distribute the same drugs. Prior to the second trial, the defendant filed a motion to dismiss on double jeopardy grounds and the motion was granted, based on the jury instructions which made it logically

---

[8] The Exchangors have recently been made whole on all of their losses, having received $12.5 million from BPE—**due solely to Mr. Carpenter's efforts and at his direction**—by virtue of BPE's judgment against PaineWebber for having caused the losses in the first place. Thus, the entire factual and legal premise of the indictment no longer exists.

inconsistent that the defendant could have been acquitted of the attempt charge but convicted on the conspiracy charge. The government appealed the dismissal to the Eleventh Circuit, which affirmed the dismissal based on the collateral estoppel component of the Double Jeopardy Clause—primarily because a retrial would necessarily involve "**the same facts, arguments, evidence, and jury instructions**." Id. at 1292 (emphasis added). See also United States v. Kramer, 289 F.2d 909, 916 (2d Cir. 1961) (Friendly, J.) (government "may not prove the new charge by asserting facts necessarily determined against it on the first trial").

Retrial is barred here for the same reasons. Mr. Carpenter has been effectively acquitted on charges that he acted as an aider and abettor *and* as a principal in an alleged mail and wire fraud scheme involving oral misrepresentations. Consequently, the Double Jeopardy Clause bars his retrial on charges that he acted as a *principal* in the exact same alleged mail and wire fraud scheme involving alleged written misrepresentations. Mr. Carpenter's effective acquittal both as an aider and abettor *and* as a principal is the controlling factor, regardless of whether alleged oral or written misrepresentations are involved.

    **F.**    **Retrial is Barred by Res Judicata.**

The Double Jeopardy Clause also embodies the doctrine of res judicata (claim preclusion). "Where a criminal charge has been adjudicated upon by a court having jurisdiction to hear and determine it, that adjudication . . . is final as to the matter so adjudicated upon, and may be pleaded in bar to any subsequent prosecution for the same offense." United States v. Oppenheimer, 242 U.S. 85, 88 (1916); see also Sealfon v. United States, 332 U.S. 575, 578 (1948) ("*res judicata* may be a defense in a second prosecution. That doctrine applies to criminal as well as civil proceedings.").

In Sealfon, the Supreme Court held that the defendant's acquittal on a charge of conspiracy to defraud precluded a subsequent prosecution for aiding and abetting the same fraud.

11

Id. at 580. "The earlier verdict precludes a later conviction of the substantive offense. The basic facts in each trial were identical." Id. In Sealfon, the defendant was tried and acquitted of conspiring to defraud the United States by submitting false invoices to a government rationing board. Thereafter, Sealfon was tried and convicted of aiding and abetting the submission of these same false invoices. In both instances, the government's case turned upon proof that a letter from Sealfon to a codefendant had been written pursuant to an agreement to violate the law. On the basis of an examination of "the facts adduced at each trial and the instructions under which the jury arrived at its verdict," id. at 579, the Court concluded that the first jury's acquittal on the conspiracy count could only have been based on a finding that the alleged illegal agreement did not exist. The Court thus determined that Sealfon's conviction on the substantive charge depended upon a fact necessarily adjudicated in his favor at the first trial and, therefore, reversed his conviction because the "basic facts in each trial were identical." Id. at 580.

  The same situation exists here. Mr. Carpenter's earlier effective acquittal on aiding and abetting a mail and wire fraud scheme necessarily precludes a subsequent prosecution for being a principal in the same scheme. In other words, since the indictment does not contain a conspiracy or agency charge, it will be impossible for the government to prove that Mr. Carpenter was a *principal* this time around without relying on the ultimate legal and factual issues already found in Mr. Carpenter's favor when he was effectively acquitted of being both an accessory and a *principal* the last time. Because Mr. Carpenter has already been effectively acquitted of this related conduct, he cannot be retried on it. See United States v. DeAngelo, 138 F.2d 466, 468 (3d Cir. 1943) ("a prior judgment of acquittal on related matters has been said to be conclusive as to all that the judgment determined."). The Double Jeopardy Clause clearly bars relitigation of the same facts, especially in this case where Mr. Carpenter has already been effectively acquitted of aiding and abetting and making oral misrepresentations.

**CONCLUSION**

As the Supreme Court observed a half century ago:

> The right not to be placed in jeopardy more than once for the same offense is a vital safeguard in our society, one that was dearly won and one that should continue to be highly valued. If such great constitutional protections are given a narrow, grudging application, they are deprived of much of their significance.

Green, 355 U.S. at 198. For all of the foregoing reasons, the superseding indictment should be dismissed because retrial, in these unique circumstances, is barred by the Double Jeopardy Clause.[9]

Respectfully submitted,<br>
DANIEL E. CARPENTER,<br>
By his attorney,<br>
<br>
/s/ Jack E. Robinson<br>
Jack E. Robinson<br>
(BBO #559683)<br>
2187 Atlantic Street, Suite 905<br>
Stamford, CT 06902<br>
(203) 425-4500

Dated: May 31, 2008

**CERTIFICATE OF SERVICE**

I hereby certify that on the date hereof this document was filed through the Court's CM/ECF system and will be sent electronically to the registered participants as identified in the Notice of Electronic Filing (NEF).

/s/ Jack E. Robinson
Jack E. Robinson

---

[9] The First Circuit, in denying appellate jurisdiction over Mr. Carpenter's cross-appeal from the denial of his motion for judgment of acquittal, noted that it was "not reviewing a double jeopardy ruling by the trial court." United States v. Carpenter, 494 F.3d 13, 26 n.9 (1st Cir. 2007), cert. denied, 128 S. Ct. 1443 (2008). Similarly, in opposing Mr. Carpenter's petition for a writ of certiorari, the Solicitor General suggested that Mr. Carpenter's double jeopardy arguments would not be justiciable unless and until he had filed a motion to dismiss in the trial court based on double jeopardy. See Brief of Respondent, Carpenter v. United States, No. 07-515, 2008 WL 194292, *12 n.4 (U.S. Jan. 23, 2008) ("petitioner did not move the district court to preclude a retrial on double jeopardy grounds."). This motion thus addresses the procedural objections previously raised by the First Circuit and the Solicitor General.