# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| _____ ) | |
| UNITED STATES OF AMERICA ) | |
| ) | |
| ) | |
| v.                          ) | CRIMINAL NO. 04-10029-GAO |
| ) | |
| ) | |
| DANIEL E. CARPENTER      ) | |
| _____) | |

## DEFENDANT DANIEL E. CARPENTER'S REQUESTS FOR INSTRUCTIONS TO THE JURY

Now comes the defendant Daniel E. Carpenter and respectfully requests that this Honorable Court provide the jury with the following instructions. The defendant intends to supplement his requested instructions with additional requested instructions focused on his theory of defense at the conclusion of the government's presentation of evidence, and he therefore reserves the right to supplement, modify or withdraw his requested instructions at the conclusion of the government's presentation of evidence.

RESPECTFULLY SUBMITTED:
DANIEL E. CARPENTER,
Defendant,
By his attorney:

/s/ A. John Pappalardo_____
A. John Pappalardo (BBO # 338760)
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

Dated: June 1, 2008

BOS 46,365,073v2 6-1-08

### INSTRUCTION NO. 1

### Overview: Wire Fraud

Mr. Carpenter is charged in Counts One through Fourteen with wire fraud in violation of 18 U.S.C. §1343. You cannot convict Mr. Carpenter of wire fraud unless you are satisfied that the government has proven each of the following elements beyond a reasonable doubt:

(1) that he made up a scheme or plan for obtaining money or property by making false promises or statements, with all of you agreeing on at least one particular false promise or statement that was made;

(2) that he knew that the promises or statements were false;

(3) that the promises or statements were material to the scheme to defraud, that is, they would reasonably induce a person to part with money or property;

(4) that he knowingly and willfully participated in the scheme to defraud, if there was one;

(5) that he acted with the specific intent to defraud cheat or harm someone and the specific intent to deceive  someone; and

(6) that he used, or caused to be used, interstate wire communications to carry out or attempt to carry out an essential part of the scheme to defraud.

_____

*See* Ninth Circuit Pattern Jury Instructions 8.101, 8.103; *United States v.  Yefsky*, 994 F.2d 885, 891-92 (1st Cir. 1993); <u>*United States v. Sawyer*</u>, 85 F.3d 713, 729 and n. 12 (1st Cir. 1996) *citing McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786 791-92 (1st Cir.1990) (explaining that mail fraud requires both intent to deceive and to

deprive) and *United States v. D'Amato*, 39 F.3d 1249, 1256-57 (2nd Cir. 1994) (in mail fraud prosecution, "the deceit must be coupled with a contemplated harm to the victim"); *see also United States v. Sawyer*, 239 F.3d 31, 40-41 (1st Cir. 2001) (in § 1346 prosecution for mail fraud/theft of honest services, "the government must prove that the accused acted with two kinds of intent: that she intended to deprive the public of her honest services, and that she intended to deceive the public").

**INSTRUCTION NO. 2**

**Overview: Mail Fraud**

Mr. Carpenter is charged in Counts Sixteen through Nineteen with mail fraud in violation of 18 U.S.C. §1341. You cannot convict Mr. Carpenter of mail fraud unless you are satisfied that the government has proven each of the following elements beyond a reasonable doubt:

(1) that he made up a scheme or plan for obtaining money or property by making false promises or statements, with all of you agreeing on at least one particular false promise or statement that was made;

(2) that he knew that the promises or statements were false;

(3) that the promises or statements were material to the scheme to defraud, that is, they would reasonably induce a person to part with money or property;

(4) that he knowingly and willfully participated in the scheme to defraud, if there was one;

(5) that he acted with the specific intent to defraud cheat or harm someone and the specific intent to deceive someone; and

(6) that he used, or caused to be used, the mails to carry our or attempt to carry out an essential part of the scheme to defraud.

---

*See* Ninth Circuit Pattern Jury Instructions 8.101; *United States v. Yefsky*, 994 F.2d 885, 891-92 (1st Cir. 1993); *United States v. Sawyer*, 85 F.3d 713, 729 and n. 12 (1st Cir. 1996) *citing McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786 791-92 (1st Cir.1990) (explaining that mail fraud requires both intent to deceive and to deprive)

and *United States v. D'Amato*, 39 F.3d 1249, 1256-57 (2nd Cir. 1994) (in mail fraud prosecution, "the deceit must be coupled with a contemplated harm to the victim"); see also *United States v. Sawyer*, 239 F.3d 31, 40-41 (1st Cir. 2001) (in § 1346 prosecution for mail fraud/theft of honest services, "the government must prove that the accused acted with two kinds of intent: that she intended to deprive the public of her honest services, and that she intended to deceive the public").

## INSTRUCTION NO. 3

### Scheme to Defraud

A scheme to defraud must be intended to deceive another, by means of false or fraudulent pretenses, representations, promises or other deceptive conduct. The government bears the burden to prove beyond a reasonable doubt that the defendant knowingly devised or intended to devise a scheme to defraud that was substantially the same as that alleged in the indictment. If the government proves a scheme to defraud, but that scheme to defraud is not substantially the same as the scheme to defraud charged in the indictment, you must find the defendant not guilty.

_____

*See, e.g., McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 790 (1st Cir. 1990); First Circuit Pattern Jury Instructions 4.16, 4.17.

## INSTRUCTION NO. 4

### Scheme to Defraud/Scheme Must be Calculated to Deceive Persons of Ordinary Prudence and Comprehension

The defendant must have intended to devise a scheme to defraud which was reasonably calculated to deceive persons of ordinary prudence and comprehension. Unless the government proves beyond a reasonable doubt that the scheme, if you find that a scheme existed, was reasonably calculated to deceive persons of ordinary prudence and comprehension, it is not a scheme to defraud within the meaning of the federal mail and wire fraud statutes, you must find the defendant not guilty.

_____

*See, e.g., Advocacy Org. v. Auto Club Ins. Ass'n*, 176 F.3d 315, 322 (6th Cir. 1999); *United States v. Cochran*, 109 F.3d 660, 664-65 (10th Cir. 1997); *United States v. Brown*, 79 F.3d 1550, 1557 (11th Cir. 1996); *United States v. Goodman*, 984 F.2d 235, 237 (8th Cir. 1993). *See also United States v. Lopez*, 71 F.3d 954, 962 (1st Cir. 1995); *United States v. Brandon*, 17 F.3d 409, 425 (1st Cir. 1994); *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990). *But see United States v. Faulhaber*, 929 F.2d 16, 18 (1st Cir. 1991); *United States v. Brien*, 617 F.2d 299, 311 (1st Cir. 1980).

## INSTRUCTION NO. 5

### Scheme to Defraud/Requirement of Intended or Contemplated Harm

Even if you find that misrepresentations were made, misrepresentations which amount to no more than deceit are insufficient to establish a scheme to defraud for purposes of either the mail fraud or the wire fraud statute. Instead, the government must also prove beyond a reasonable doubt  that Mr. Carpenter intended to harm, or contemplated harm to, the investor/exchangor named in each count.  It does not suffice that a person realized that a scheme had the capacity to cause harm; instead, the government must prove beyond a reasonable doubt that Mr. Carpenter had a conscious knowing intent to defraud and that he contemplated or intended harm to the named investors/exchangors. Moreover, the harm intended or contemplated must affect the very nature of the bargain itself.  If you find that Mr. Carpenter  had no intent to harm the investor/exchangors, then you must find Mr. Carpenter not guilty.

---

*See, e.g.*, *United States v.  Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999); *United States v. Powers*, 168 F.3d 741, 746 (5th Cir. 1999); *United States v.  D'Amato*, 39 F.3d 1249, 1257 (2d Cir. 1994); *United States v.  Starr*, 816 F.2d 94, 98 (2d Cir. 1987); *United States v. Numisgroup Intern. Corp.*, 170 F.Supp.2d 340, 345 (S.D.N.Y. 2001), *aff'd* 368 F.3d 880 (2d Cir. 2004), *vacated on other grounds*, 125 S.Ct. 991 (2005); Ninth Circuit Pattern Jury Instructions §8.101. *But see* First Circuit Pattern Jury Instructions 4.16, 4.17; *but cf. United States v.  Kenrick*, 221 F.3d 19, 27-29 (1st Cir. 2000).

## INSTRUCTION NO. 6

### Scheme to Defraud/*Actus Reus*

Even should you find an intent to harm the investor/exchangor named in any count, you may not convict Mr. Carpenter unless you also find that that intent to harm existed at the time of the criminal act, known as the *actus reus*. The indictment charges that the *actus reus* occurred at the time  each investor/exchangor transmitted funds obtained from the sale of real estate to BPETCO to be held by it as a §1031 intermediary. Therefore, if you find that Mr. Carpenter had an intent to harm the investor/exchangor which arose after the particular transfer but did not exist at the time of the transfer, then you must acquit Mr. Carpenter.

**INSTRUCTION NO. 7**

**Scheme to Defraud/Knowing and Willful Participation**

Even if you find that the scheme to defraud charged in the indictment existed, you may not convict Mr. Carpenter of mail or wire fraud unless you find that he knowingly and willfully participated in that scheme to defraud, with knowledge of its fraudulent nature, with specific intent to defraud and specific intent to deceive.

"Knowingly" means that the defendant realized what he was doing and was aware of the nature of his conduct, and did not act through ignorane, mistake or accident.

"Willfully" means to act voluntarily and intelligently and with specific intent that the underlying crime be committed -- that is to say, with bad purpose, either to disobey or disregard the law -- not to act by ignorance, accident or mistake.

---

*See, e.g., United States v. Yefsky*, 994 F.2d 885, 891-92 (1st Cir. 1993); *United States v. Sawyer*, 85 F.3d 713, 729 and n. 12 (1st Cir. 1996) *citing McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786 791-92 (1st Cir.1990) (explaining that mail fraud requires both intent to deceive and to deprive) and *United States v. D'Amato*, 39 F.3d 1249, 1256-57 (2nd Cir. 1994) (in mail fraud prosecution, "the deceit must be coupled with a contemplated harm to the victim"); *see also United States v. Sawyer*, 239 F.3d 31, 40-41 (1st Cir. 2001) (in § 1346 prosecution for mail fraud/theft of honest services, "the government must prove that the accused acted with two kinds of intent: that she intended to deprive the public of her honest services, and that she intended to deceive the public"); *See* Pattern Criminal Jury Instructions for the District Courts of the First Circuit § 2.14 Comment (Revised, 2008, Hornby, D.J.) ("the First Circuit acknowledged a split of authority over how to define the term "knowingly." The Sixth, Seventh and Ninth embrace" the above requested instruction.); *Id*. at § 2.16 ("The definition of 'willfully' [in the above requested instruction] comes from *United States v. Monteiro*, 871 F.2d 204, 208-09 (1st Cir. 1989).

**INSTRUCTION NO. 8**

**Scheme to Defraud/Breach of Contract Not a Scheme to Defraud.**

If you find that there was a breach of contract between BPETCO and a named

investor/exchangor -- even if you find a failure to fulfill a contractual promise under an

escrow agreement  to provide the investor/exchangor with the funds to complete the

§1031 exchange -- that in itself does not constitute a scheme to defraud under the mail

and wire fraud statutes.

In this case, you have heard evidence of formal escrow agreements or contracts

that the investors/exchangors entered into with BEPETCO.  A breach of contract exists

where one party fails to fulfill the binding promises made by that party to the other in the

contract.  Again, a breach of contract alone is not a crime and does not constitute mail or

wire fraud.  Nor is the failure to fulfill a contractual or other promise.  Specifically, the

mail and wire fraud statutes do not  make criminal all business practices that do not fulfill

expectations, nor do they encompass every breach of contract.

In short, the mail or wire fraud statutes do not make criminal a variety of other

breaches of obligations which may exist in the realm of civil law.

Rather, as I have instructed you you must find that the government has proved

beyond a reasonable doubt that the defendant knowingly and willfully participated in the

scheme with specific intent to defraud and with specific intent to deceive.

Accordingly, if you find that Mr. Carpenter's acts and conduct constituted no more than a breach of the contractual agreements between BPETCO and the named investors/exchangors, you must find him not guilty.

_See United States v. Carpenter, Cr. No. 04-10029-GAO, Jury Instructions, Tr. 12:16; see e.g., United States v.  D'Amato_, 39 F.3d 1249, 1261 n.8 (2d Cir. 1994); _McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc._, 904 F.2d 786, 790 (1st Cir. 1990); _Corley v. Rosewood Care Center, Inc._, 388 F.3d 990, 1007 (7th Cir. 2004);  _Soper v. Simmons Intern., Ltd_, 632 F.Supp. 244, 249 (S.D.N.Y. 1986).

**INSTRUCTION NO. 9**

**Scheme to Defraud/Breach of Contract Not a Scheme to Defraud.**

Even if you believe that Mr. Carpenter adopted a risky investment strategy by investing the funds deposited with BPETCO by the named investors/exchangors in stock options, you are instructed that investing unwisely and/or losing money, even a great deal of money, from unwise investments does not constitute the crime of mail fraud or wire fraud. Evidence of Mr. Carpenter's trading strategy may only be considered for the limited purpose of your evaluating whether there was specific intent to defraud at the time the funds of these investors/exchangors was obtained.  I must remind you that the trading strategy alone is not proof of intent; it can only be considered along with all the other evidence you have heard as to whether such specific intent existed.

In addition, simply proving that the investors/exchangors lost money as a consequence of Mr. Carpenter's investment strategy does not amount to proving that Mr. Carpenter committed mail or wire fraud.    For purposes of this case, it does not matter if, having obtained custody of the exchangor's funds without fraud, that Mr. Carpenter pursued a risky or even reckless investment strategy.  Therefore, you may not find Mr. Carpenter guilty of mail or wire fraud solely on the basis that he pursued a risky investment strategy or lost the investors/exchangors funds.   The government must prove beyond a reasonable doubt that the defendant had a specific intent to defraud, cheat or harm someone and had the specific intent to deceive.

---

*See United States v. Carpenter, 494 F.3d 13, 19 (1ˢᵗ Cir. 2007)* (noting district court ruling on motion in limine that the "jury may take account of what kind of trading was done in evaluating whether there was a culpable state of mind …" *id*. at 19; noting district court's "repeated caution that the evidence upon which the gambling terminology was based should not be used to *distract the jury on Carpenter's state of mind when he obtained his client's funds*" *id*. at 23;  noting district court's concern that gambling references had a "tendency to *lead the jury away from the charges in the indictment by inviting them to blame Carpenter because he was a gambler, or because he lost the exchangor's money, rather than because he had committed mail or wire fraud*."  *Id*. at 23-24.) (emphasis added); *See United States v. Carpenter, Cr. No. 04-10029-GAO, Jury Instructions, Tr. 12:17; United States v.  Dowlin*, 408 F.3d 647, 667 (10th Cir.  2005).

## INSTRUCTION NO. 10

### Intent to Defraud

Mr. Carpenter cannot be convicted of the mail or wire fraud offenses charged against him in the indictment unless you find unanimously beyond a reasonable doubt that he knowingly and willfully participated in a scheme with the specific intent to defraud and specific intent to deceive the named investors/exchangors. As I have instructed you, "willfully" means to act voluntarily and intelligently and with specific intent that the underlying crime be committed -- that is to say, with bad purpose, either to disobey or disregard the law -- not to act by ignorance, accident or mistake. Unless the government proves to you beyond a reasonable doubt that Mr. Carpenter had the specific intent to defraud cheat or harm the named investors/exchangors and the specific intent to deceive the named investors/exchangors, you must find Mr. Carpenter not guilty.

---

*See, e.g., Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1005 (7th Cir. 2004); *United States v. Callipari*, 368 F.3d 22, 33 (1st Cir. 2004), *vacated on other grounds* 125 S.Ct. 985 (2005); *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 790 1st Cir. 1990).

## INSTRUCTION NO. 11

### Intent to Defraud

Evidence which establishes only that a person made a mistake of judgment or an error in management, or was careless, does not establish the existence of fraudulent intent. Nor does evidence that a venture lost money or was unprofitable by itself establish the existence of fraudulent intent. Accordingly, if you find only that Mr. Carpenter mismanaged the funds of the investors/exchangors held by BPETCO or made careless or foolish mistakes of judgment regarding the investment of those funds, you must find Mr. Carpenter not guilty.

_____

*See, e.g., United States v.  Gay*, 967 F.2d 322, 329 (9th Cir. 1992).

## INSTRUCTION NO.  12

### Intent to Defraud

One who expresses an opinion honestly held by him or a belief honestly entertained by him is not chargeable with fraudulent intent even though such opinion is erroneous and such belief is a mistaken belief.

---

*See United States v.  Gay*, 967 F.2d 322, 329 (9th Cir. 1992); *United States v. Carpenter*, Cr. No.04-10029-GAO, Jury Intstructions, Tr. 12:11-12.

**INSTRUCTION NO. 13**

**Intent to Defraud/Intention to Induce Reliance**

The government must prove beyond a reasonable doubt both that the defendant's actions would have deceived a reasonably prudent person and that he had a conscious, knowing intent to defraud. A conscious knowing intent to defraud requires an intention to induce the investor/exchangor to rely on the representation. If the defendant did not believe that an investor/exchangor would decide to use BPETCO as his §1031 intermediary based upon his promises or representations, then you cannot find that he had the requisite specific intent to defraud, and he must be found not guilty.

In addition, as you have been previously instructed, the government must show that some actual harm or injury was specifically intended by the defendant. Because the government must prove the defendant intended to harm the individuals, representations even if they are misrepresentations, amounting only to deceit are insufficient to maintain a mail or wire fraud prosecution.

---

*See, e.g., Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1306 (11th Cir. 2003); *Pelletier v. Zweifel*, 921 F.2d 1465, 1499, 1503 (11th Cir. 1991); *see* 2 L. Sand, Modern Federal Jury Instructions -- Criminal, Instruction No. 44-4; *United States v. D'Amato*, 39 F.3d 1249, 1256-57 (2nd Cir. 1994) (in mail fraud prosecution, "the deceit must be coupled with a contemplated harm to the victim").

<u>**INSTRUCTION NO. 14**</u>

<u>**Intent to Defraud/Third Party Acts/Statements/Representations/Agreements**</u>

Where the government seeks to show specific intent to defraud through the acts, statements, representations, or agreements, whether written or oral, of a third party, such as Martin Paley, rather than of the defendant himself, before any such acts, statements, representations, or agreements may be attributed to the defendant, the government must prove beyond a reasonable doubt that the defendant knew that Paley was doing such acts or making such statements or representations to, or agreements with, the named investors/exchangors, and that the defendant authorized and adopted those acts, statements, representations, or agreements.

---

*See United States v. Taylor*, 832 F.2d 1187, 1193 (10th Cir. 1987); see also *United States v. Raney*, 719 F.2d 1183, 1187 n.7 (1st Cir. 1987) (before a salesman's representations may be introduced as evidence against his employer, "the prosecution must show that the employer expressly or impliedly authorized or ratified [the] salesman's statements").

<u>**INSTRUCTION NO. 15**</u>

<u>**Intent to Defraud/Good Faith**</u>

Since an essential element of the offenses charged is intent to defraud, it follows that good faith on the part of the defendant is a complete defense to a charge of fraud. This is because if a defendant acted in good faith he necessarily lacked the specific intent to defraud that must be proven in order to convict. A person acts in good faith if the person acts on the basis or an opinion honestly held, though the belief or opinion may turn out to have been, in fact, wrong. An honest belief in the truth of statements or representations is inconsistent with a specific intent to defraud.

Although good faith is said to be a defense to the charge, it is not up to the defendant to prove his good faith. Because the government alone bears the burden of proof in a criminal case, it is the government's burden to prove beyond a reasonable doubt that the defendant did not act in good faith. A person acts in good faith when he actually believed (1) that the plan would succeed, (2) that promises made would be kept and (3) that representations would be fullfulled.

Under the mail and wire fraud statutes, even false representations or statements or omissions of material facts do not amount to fraud unless done with fraudulent intent. However misleading or deceptive a plan may be, still it is not fraudulent if it was devised or carried out in good faith. An honest belief in the truth of the representations made by a defendant or caused to be made by a defendant is a good defense, however inaccurate a statement may turn out to be. Unless the government proves to you beyond a reasonable doubt that Mr. Carpenter did not act in good faith, you must acquit Mr. Carpenter.

What a person knows or intends is a matter of what is in the person's mind. Obviously there is no way of looking directly into a person's mind to see what is known or intended. Proof of intent is therefore often a matter of inference from the way a person acts or behaves through a course of events, as well as from all the other pertinent circumstances as you may find them from the evidence.

Therefore, evidence of the lack of specific intent to defraud which you may consider is evidence that the investors/exchangors did not suffer a loss and evidence of efforts made by Mr. Carpenter to ameliorate any loss.

---

*See United States v. Carpenter, Cr. No. 04-10029-GAO, Tr. 12:11-12 (good faith instruction); see, e.g., United States v. Callipari*, 368 F.3d 22, 33 (1st Cir. 2004); *United States v. Smith*, 13 F.3d 1421, 1425-26 (10th Cir. 1994); *United States v. Alkins*, 925 F.2d 541, 549 (2d Cir. 1991); *United States v. Martin-Trigona*, 684 F.2d 485, 492 (7th Cir. 1982); 2 L. Sand, Modern Federal Jury Instructions -- Criminal, Instruction No. 44-5; *see also* Comment to Instruction No. 44-5 at p. 44-33 (" … a defendant is entitled to present proof that the victim did not suffer a loss as evidence of the lack of specific intent to defraud."); *United States v. Ethridge*, 948 F.2d 1215, 1217 (11th Cir. 1991) (same); *United States v. Thomas*, 32 F.3d 418,421-22 (9th Cir. 1994) (same); *United States v. Foshee*, 569 F.2d 401, 402-05 (5th Cir. 1978) (same).

## INSTRUCTION NO. 16

### Materiality

Even if you find that the scheme to defraud charged in the indictment existed and that false or fraudulent pretenses, representation or promises were made to carry it out, you cannot convict the defendant unless the government has proved beyond a reasonable doubt that the false or fraudulent pretenses, representations, or promises that you find relate to a fact or matter that is material to the transaction involved. A material fact is one that because of its importance to the scheme alleged has a natural tendency to influence or is capable of influencing the decision-maker to whom it is addressed. Unless you find beyond a reasonable doubt that the representations or promises which the government has alleged were false and fraudulent were material to the decision of the investor/exchangor named in each count to select BPETCO as his/her §1031 intermediary, then you must find Mr. Carpenter not guilty.

---

*Neder v. United States*, 527 U.S. 1, 16 (1999) (materiality is an element of wire fraud and must be submitted to the jury); United States v. Blastos, 258 F.3d 25, 27 (1st Cir. 2001).

**INSTRUCTION NO. 17**

**Materiality/Puffing/Sales Talk/subjective or Indefinite Statements**

Even if you find that misrepresentations were made, the government must prove beyond a reasonable doubt that a reasonable person would have acted on those representations. Certain statements by their nature cannot be regarded as material. One example of such statements are referred to as "puffing," which includes enthusiastic and even overzealous "seller's talk," on which no person of ordinary prudence and comprehension would rely. There are also statements which are too subjective or indefinite for a reasonable person to rely on in making a decision and which cannot, therefore, be regarded as material. I instruct you that "safe" or "safety" in the context of the scheme charged in the indictment is such a word and cannot be regarded as material, nor can it be regarded as indicative of an intent to defraud. A reasonable investor/exchangor would not rely on a promise of "safety" of his funds without obtaining additional information.

---

*See, e.g., Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1007 (7th Cir. 2004); *Williams v. Aztar Indiana Gaming Corp.*, 351 F.3d 294, 299 (7th Cir. 2003); *United States v. Brown*, 79 F.3d 1550, 1557 (11th Cir. 1996); *United States v. Gay*, 967 F.2d 322, 329 (9th Cir. 1992); *Associates in Adolescent Psychiatry v. Home Life*, 941 F.2d 561, 570 (7th Cir. 1991).

## INSTRUCTION NO. 18

### Materiality/Written Agreements

Inaccurate representations which would not reasonably affect or influence an investor/exchangor's understanding of the written agreements between him and BPETCO cannot be regarded as material.

## INSTRUCTION NO. 19

## Materiality

Even if you find beyond a reasonable doubt that false promises, statements, or representations were made, they cannot be found to have been material unless they go to the nature of the bargain itself.

_____

*See, e.g., United States v. Regent Office Supply* Co., 421 F.2d 1174, 1180 (2d Cir. 1970); *United States v. Numisgroup Intern. Corp.*, 170 F.Supp.2d 340, 345, 348 (S.D.N.Y. 2001).

## INSTRUCTION NO. 20

### Written Agreements Controlling

As the evidence has shown, each investor/exchangor executed Exchange and Escrow Agreements with BPETCO.  Each of those agreements provided that no oral statement made to an investor/exchangor by a representative of BPETCO could substitute for, replace, or modify the terms of the written agreements.  Accordingly, in determining whether there were intentional misrepresentations made by Mr. Carpenter, you are limited to the statements which appear in the written agreements.  You are also limited to those written agreements in determining whether any such representations were material and whether Mr. Carpenter had the specific intent to defraud and to deceive the identified investors/ exchangors.

_____

*See, e.g., Corley v. Rosewood Care Center, Inc.*, 388 F.3d 990, 1006 (7th Cir. 2004); *Associates in Adolescent Psychiatry v. Home Life*, 941 F.2d 561, 570 (7th Cir. 1991).

## INSTRUCTION NO. 21

### Use of Mails/Wires

The government must prove beyond a reasonable doubt that the defendant used, or caused to be used, interstate wire communications to carry out or attempt to carry out an essential part of the scheme to defraud.

In doing so, the government must prove not only that the alleged mailing actually occurred but also that the defendant specifically intended that such mailing occur.

The use of the mails or wires must be part of the execution of the scheme. The question is whether the mailing or use of the wires was part of the execution of the scheme as conceived by the defendant at the time. If it was not, then the defendant must be found not guilty.

---

*See, e.g., United States v. Dray,* 901 F.2d 1132, 1140 (1st Cir. 1990) (First Circuit approved instruction stating that specific intent to use the mails is required but allowing it to be satisfied by proof of the reasonable forseeability of the use of the mails); *Schmuck v. United States*, 489 U.S. 705, 710 (1989); *United States v. Pimental*, 380 F.3d 575, 586 (1st Cir. 2004); *United States v. Sawyer,* 239 F.3d 31, 39-40 (1st Cir. 2001); *United States v. McCann*, 366 F.3d 46, 52 (1st Cir. 2004) ("the mailing must be for the purpose of executing the scheme").

**INSTRUCTION NO. 22**

**Use of Mails/Wires**

The mailings or use of the wires must be closely related to the scheme, and the scheme's completion must have depended in some way on the mailings or the use of the wires. If not, then the defendant must be found not guilty.

---

*See, e.g., United States v. Pacheco-Ortiz*, 889 F.2d 301, 305 (1st Cir. 1989); *United States v. Greenleaf*, 692 F.2d 182 (1st Cir. 1982); *United States v. Strong,* 371 F.3d 225, 230 (5th Cir. 2004).

## INSTRUCTION NO. 23

### Use of Mails/Wires

The mailings or use of the wires must have been  incident to an essential part of the scheme. If it was not, then the defendant must be found not guilty.

---

*See, e.g., Schmuck v. United States*, 489 U.S. 705, 710 (1989); *United States v. Pimental*, 380 F.3d 575, 586 (1st Cir. 2004).

## INSTRUCTION NO. 24

### Venue

A federal criminal defendant has a constitutional right to be tried only in the district in which the offense was committed. Venue of the wire fraud counts is proper in the District of Massachusetts only if the wire fraud offenses charged were committed within the District of Massachusetts. It is the government's burden to prove by a preponderance of the evidence that venue is proper in the District of Massachusetts. Each wire fraud count must be evaluated separately. Venue must be proper as to each wire fraud count, and it is irrelevant that venue may be proper as to some of the wire fraud counts if it was not as to others.

With respect to wire fraud offenses, venue is proper either in the district in which the wire transmission was sent or in the district in which it was received. Venue is not an arcane technicality. If the government fails to prove by a preponderance of the evidence that any of the wire transmissions charged were either sent from the District of Massachusetts or received in the District of Massachusetts, then you must acquit the defendant on the count in which that wire transmission is charged.

---

*See, e.g., United States v. Ebersole*, 411 F.3d 517, 527 (4th Cir. June 14, 2005); *see also United States v. Kim*, 246 F.3d 186, 191-92 (2d Cir. 2001); *United States v. Geibel*, 369 F.3d 682, 696 (2nd Cir. 2004) (venue must be proper as to each count); *United States v. Salinas*, 373 F.3d 161, 162 (1st Cir. 2004) (venue is "not an arcane technicality"; "the government must prove by preponderance of the evidence that venue is proper as to each individual count."

## INSTRUCTION NO. 25

## Section 1031

Under section 1031 of the Internal Revenue Code, a real estate investor may defer his liability for the payment of capital gains taxes on the sale of real estate acquired for investment purposes if he, upon the sale of the investment property, causes the proceeds of the sale to be transferred to and held by a qualified intermediary and then purchases a replacement investment property within 180 days with the proceeds of the sale held by the qualified intermediary. In order to obtain this favorable tax treatment, the law requires that the qualified intermediary take legal title to the "relinquished property", IRS Reg. § 1.1031(k)-1(g)(4), or funds during the period for which they are held. The tax provisions themselves contain no requirement or restriction as to how the intermediary can hold the proceeds. Specifically, for the purposes of the tax code, there is no limitation on how the proceeds may be invested while the qualified intermediary has legal title to the funds. It is not against the law for a qualified intermediary to invest the proceeds during the period that he holds legal title to the funds–that is not the charged offense in this case.

Section 1031(g) also uses the term "Safe Harbor" and "set[s] forth four safe harbors [one of which is a qualified intermediary] the use of which will result in a determination that the taxpayer is not in actual or constructive receipt of money or other property for purposes of section 1031 …" *See* IRS Reg. § 1.1031(k)-1(g). Under section 1031 (g), the term "Safe Harbor" means a safe harbor from taxes for purposes of deferring tax on a capital gain, so long as a person causes the proceeds of the sale to be

transferred to and held by a qualified intermediary.  Under section 1031(g) it does not

mean that the proceeds will be safely invested.

*See* Instructions in *United States v. Carpenter*, Cr. No. 04-10029-GAO, Tr. 12:15; *see
also* IRS Reg. § 1.1031(k)-1(g).  Safe Harbors.

## INSTRUCTION NO. 26

### Wisdom of Investment Strategy

If you believe that Dan Carpenter had a good faith belief that he possessed the discretion to invest the funds of BPETCO'S clients, you must find him not guilty, even if you also believe that he employed the most risky or aggressive investment strategy possible.

## INSTRUCTION NO. 27

### Attorneys and Advisors

The fact that certain exchangors had attorneys and/or advisors that assisted them with the 1031 exchange process, and/or that they had attorneys and/or advisors advise them regarding the agreements executed by and between BPETCO and the clients, is not a relevant consideration in your deliberations. The issue is not whether the exchangors or their attorneys and/or advisors believed that the agreements provided Mr. Carpenter with the discretion to invest the funds, but rather whether Mr. Carpenter had a good faith belief that he possessed the discretion to invest the clients' proceeds. If you do not find beyond a reasonable doubt that Mr. Carpenter did not possess such a good faith belief then you must find him not guilty.

## INSTRUCTION NO. 28

### Witnesses Requiring Special Caution

You have heard testimony from Martin Paley, a witness called by and for the government. You should scrutinize the testimony of Mr. Paley with particular caution and care. A witness who hopes to gain more favorable treatment in his own cause may have a reason to make a false statement because it is in his own interest. He or she may have had reason to make up stories or exaggerate what others did because he or she wanted to help himself or herself. Whether or not Mr. Paley's testimony may have been influenced by his own self-interests is for you to determine. You, the jury, must decide whether the witness's testimony has been affected by any of those circumstances, or by the witness's interest in the outcome of the case, or by prejudice against the defendant, or by the benefits that the witness has received or hopes to receive. You may give his testimony such weight as you feel it deserves, keeping in mind that it must be considered with caution and great care. If you believe that a witness has given false testimony with respect to a material fact, you may disregard the testimony of the witness in whole or in part.

## <u>INSTRUCTION NO. 29</u>

### <u>Risky/Aggressive vs. Prudent/Conservative Investments</u>

You should not consider any evidence of losses or consider whether investments were risky or aggressive, as contrasted with prudent or conservative, unless and until you are convinced the government has proved beyond a reasonable doubt that Mr. Carpenter knew that he was limited by the terms of the written agreements to making only conservative or prudent investments.

## INSTRUCTION NO. 30

### Charges against individual

The indictment contains charges against Mr. Carpenter, as an individual. If you find that BPETCO, as a corporation, has breached its contractual obligations to an exchangor or exchangors, or that BPETCO as a corporation has failed to honor the terms of its agreements, that is not a basis to convict Mr. Carpenter. You must find that the government has proved beyond a reasonable doubt that Dan Carpenter, the individual, has committed the charged offenses.

**RESPECTFULLY SUBMITTED:**

DANIEL E. CARPENTER,
Defendant,
By his attorney:

/s/ A. John Pappalardo
A. John Pappalardo (BBO # 338760)
GREENBERG TRAURIG, LLP
One International Place
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

### Certificate of Service

I hereby certify that on this 1st day of June, 2008, I served on counsel of record in the foregoing matter, Defendant Daniel E. Carpenter's Requests for Instructions to the Jury, by means of the ECF system.

/s/  A. John Pappalardo
A. John Pappalardo