UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA )<br>)<br>v. )<br>)<br>DANIEL E. CARPENTER, )<br>)<br>Defendant. )<br>) | CRIMINAL NO. 04-10029-GAO |

**DEFENDANT DANIEL E. CARPENTER'S
OPPOSITION TO THE GOVERNMENT'S REQUEST FOR INSTRUCTION
REGARDING THE DEFENDANT'S FIDUCIARY DUTY/DUTY TO DISCLOSE**

Defendant Daniel E. Carpenter ("Mr. Carpenter") hereby opposes the government's request for instruction regarding fiduciary duty/failure to disclose based on an instruction in United States v. Szur, 289 F.3d 200, 211-12 (2d Cir. 2002). Mr. Carpenter respectfully submits that this request be denied as the request: (1) is premature and can only be decided after the close of evidence; (2) is not warranted by the law or facts; and (3) has the potential for unfair confusion of civil liabilities with the crimes charged and will result in unfair prejudice to Mr. Carpenter.

**ARGUMENT**

I.   **The Requested Instruction Is Premature And Ill Founded, Not Supported By Either The Facts Or Relevant Law, And Its Allowance Has The Potential For Unfair Confusion And Would Result In Unfair Prejudice To Defendant.**

The government claims that the proposed instruction is appropriate because it "expects that the evidence at trial … will establish that Carpenter is a fiduciary" and claims that "the scope and nature of the business relationship between Carpenter and the victims, along with representations made to the victims about the safety of their money created a fiduciary relationship." Gvt. Motion. p.1. The government also urges that it is entitled to the instruction

because "[b]ased on the same facts the United States expects to introduce in this trial, the Massachusetts [Appeals Court, has] held that Carpenter was a fiduciary and that he violated his duties as a fiduciary," citing Cahaly v. Benistar Property Exchange Trust Co. Inc., 68 Mass. App. Ct. 668, 680 (Mass. App. 2007), affirmed, 451 Mass. 343 (2008)[1] (where plaintiff reposes trust in the defendant and the defendant knows of the plaintiff's reliance on him a fiduciary duty may be created; evidence that Benistar promised to hold the client funds in escrow, to safeguard those funds, and to provide expertise in the 26 U.S.C. § 1031 process was sufficient to support a finding of civil breach of fiduciary duty).  Finally, the government asserts that Mr. "Carpenter's claim (made at the first trial) that he had the authority to invest the funds in his discretion would create a fiduciary relationship with the victims."  Govt's Motion at 2.  The government does not state what that claimed fiduciary duty would have compelled Mr. Carpenter to do, other than it would encompass a "duty to disclose."

Mr. Carpenter opposes the government's request for jury instructions on fiduciary duty/failure to disclose.

### A. The Requested Instruction Is Premature, and Founded on a Dubious Premise

It is premature to assert, and on examination disingenuous, that the evidence will be the same in the federal criminal trial as it was in the civil action.  To the contrary, there is a substantial likelihood that the evidence will materially differ in the federal criminal trial, for among the most obvious of reasons that Mr. Martin Paley, Mr. Carpenter and Mrs. Carpenter all asserted their Fifth Amendment rights and declined to testify in the civil action to which the government points.  What is more, this exercise of their Fifth Amendment rights gave rise to

---

[1] Mr. Carpenter has filed a petition for rehearing in connection with the Massachusetts Supreme Judicial Court's finding in Cahaly v. Benistar Prop. Exch. Trust Co., Inc., 451 Mass. 343 (2008), that he breached his fiduciary duty to the exchangors.

adverse inferences in the civil case that are not applicable in the context of this criminal case. Further, Mr. Paley will be testifying in this case as the government's witness, as he did in the first criminal trial. At best, the suggested anticipation of the "same facts" coming into evidence in this criminal case as did in the civil case is a dubious premise. Therefore, to the extent the Court deems it to have any merit, the government's proposed instruction should be revisited at the conclusion of all the evidence.

### B. Neither the Facts Nor Applicable Law Warrants the Requested Instruction

The government's request fails under the analytical framework for such a request, as set out in United States v. Cassiere, 4 F.3d 1006 (1st Cir. 1993). There, the First Circuit set forth the parameters for a failure-to-disclose instruction, and approved the following instruction:

> A failure to disclose a material fact may also constitute a false or fraudulent misrepresentation if, one, the person was under a general professional or <u>specific contractual duty</u> to make such a disclosure; and two, the person actually knew such a disclosure ought to be made; and three, the person failed to make such a disclosure with the specific intent to defraud.

Id. at 1022 (emphasis added). In Cassiere, 4 F.3d at 1022-23, the defendant who was an attorney representing lenders, was charged with wire fraud. In the first instance there was little if no dispute that under common law that an attorney is under a "general professional ... duty" to his client. Here, in contrast the government can show no legal, professional or "specific contractual duty" on the part of Mr. Carpenter which would impose upon him a duty to disclose.

The government cites no relevant federal or state case law in support of the assertion that the relationship between a qualified intermediary under 26 U.S.C. § 1031 and the taxpayer/exchangor creates any such legal, professional or specific contractual duty. Relevant authority supporting such a proposition is particularly necessary where as here, Martin Paley was the person who had all of the contact with the taxpayers/exchangors and Mr. Carpenter had none.

Cahaly, 68 Mass. App. Ct. at 680, cited by the government does not support this proposition. As stated above, it is premature, and indeed incorrect based on the above adverted to Fifth Amendment inferences, to assert that the evidence admitted in the civil trial will be the same as that ultimately admitted in the upcoming criminal trial. Also, the issue resolved in Cahaly was whether as a matter of civil law only, there was sufficient evidence to sustain a jury's finding of a breach of fiduciary duty, not whether the defendant had a legal, professional or specific contractual duty to disclose, the failing in which amounted to fraudulent representations sufficient for a wire fraud conviction. Moreover, the finding in Cahaly was of course based on the much lower burden of proof required in a civil action (preponderance of the evidence), not the much higher burden of proof (beyond a reasonable doubt) required in a criminal action. Here, Mr. Carpenter is charged with the federal crimes of mail and wire fraud, not with violation of civil fiduciary duties and "[i]t is well settled that breach of fiduciary duty standing alone, does not constitute mail fraud." Cassiere, 4 F.3d at 1022 citing United States v. Greenleaf, 692 F.2d 182, 188 (1st Cir. 1982); 2 L. Sand, Modern Federal Jury Instructions -- Criminal, Instruction 44-4, Comment at p.4-14-15 (2007) ("[T]he courts reject that every breach of fiduciary duty is sufficient to constitute a scheme to defraud.") (collecting and citing cases).

The government's contention that a fiduciary relationship exists between a qualified intermediary and a taxpayor/exchangor is contrary to the letter and spirit of the federal tax law and applicable regulations. Under 26 U.S.C. § 1031 and applicable regulations, a qualified intermediary simply cannot be deemed to have a fiduciary duty to a taxpayer/exchangor. 26 U.S.C. § 1031 and IRS Regulation 1.1031(k)-1(g) provide four "Safe Harbors" through which sellers of real estate may avoid "constructive receipt of money or other property for purposes of

section 1031," and thereby lessen their capital gains tax exposure legally.[2] These "Safe harbors" are: (1) security or guarantee arrangements; (2) qualified escrow accounts; (3) qualified trusts; or (4) qualified intermediaries. All of the taxpayers/exchangors here elected to pursue a § 1031 exchange via the Safe Harbor of a qualified intermediary, and under IRS Reg. § 1.1031(k)-1(g)(4) the qualified intermediary "acquires the <u>relinquished property</u> from the taxpayer" (emphasis added) during the period for which it is held. It is undisputed that the tax provisions themselves: contain no requirement or restriction as to how the qualified intermediary can hold the proceeds; contain no limitation on how the proceeds may be invested while the qualified intermediary has legal title to the funds; and it is not against the law for a qualified intermediary to invest the proceeds during the period that he holds legal title to the funds.

By the very nature of 26 U.S.C. § 1031 then, a Safe Harbor qualified intermediary cannot be deemed a fiduciary to the taxpayer/exchangor, because the taxpayer has "relinquished" the property and the very purpose of § 1031 is to divest control of the property from the taxpayer/exhangor to permit the taxpayer to take advantage of deferred taxation. Any power and control retained by the taxpayer/exchangor and not vested in the qualified intermediary would be in violation of the spirit of § 1031, the purpose of which is for the taxpayer/exchangor to avoid constructive or actual receipt of the "relinquished property." <u>See</u> IRS Reg. § 1.1031(k)-1(g)(4)(i) ("in the case of a taxpayers transfer of relinquished property, involving a qualified intermediary, the qualified intermediary is not considered the agent of the taxpayer for purposes of section 1031(a)"); <u>see also</u>, IRS Reg. § 1.1031(k)-1(g)(4)(v) (Stating that the Safe Harbor of a qualified intermediary ceases to apply at the time "the taxpayer has an immediate ability or unrestricted right to received, pledge, borrow or otherwise obtain the benefits of money or other

---

[2] Section 1031(k)-1(g), "Safe Harbors," "... set[s] forth four safe harbors [one of which is a qualified intermediary] the use of which will result in a determination that the taxpayer is not in actual or constructive receipt of money or other property for purposes of section 1031 ...." <u>See</u> IRS Reg. § 1.1031(k)-1(g).

property held by the qualified intermediary.  <u>Rights conferred upon the taxpayer under state law to terminate or dismiss the qualified intermediary are disregarded for this purpose</u>.") (emphasis added).  Research has nowhere located the term "fiduciary" in the regulations associated with 1031 exchanges.  Nor has research disclosed any State statute (other than Nevada) or regulation concerning Section 1031 qualified intermediaries or whether they owe a fiduciary or other duty to the taxpayers/exchangors.  Only one State, Nevada, has passed regulations relating to qualified intermediaries.  <u>See</u> NEV. REV. STAT. § 645G, et. seq.  Section 645G provides that qualified intermediaries in § 1031 exchanges are required to be licensed by the state, and are held to particular standards as defined by the statute and that "[e]ach licensee is a fiduciary of all money, property, other considerations and instruments received by the licensee from the client." NEV. REV. STAT. § 645G.300 (2007).  In addition, § 645G.300 provides that "[e]ach licensee shall invest money related to a tax-deferred exchange of property in investments which meet the reasonable standards that are applicable to persons acting as fiduciaries in this State."  <u>Id.</u>  <u>See</u> L. Sand, <u>Modern Federal Jury Instructions -- Criminal</u>, at 44-15 (2007) (A duty to disclose may arise from "a general professional obligation such as the canon of ethics applicable to attorneys or other professionals, from an employee's fiduciary relationship to his or her employer, from a 'specific contractual duty' to make disclosure, by one's status as a public official, or from 'an explicit statutory duty created by legislative enactment.'").  Here, there simply is no apparent "general professional or a specific contractual duty which the government can point to," which is one of the prerequisites to the jury being given a <u>Cassiere</u> duty-to-disclose instruction.

Nor has the government  provided in its request the evidence it expects to present with respect to the second prong of a <u>Cassiere</u> duty-to-disclose instruction <u>i.e.</u>, that "the person actually knew such disclosure ought to be made."  <u>Cassiere</u>, 4 F.3d at 1022.  In any event, this

too highlights that the government's request is premature and should be revisited at the close of all the evidence.

        C.    **The Proposed Instruction Has the Potential to Cause Unfair Confusion and Will Result in Unfair Prejudice to the Defendant**

It is submitted that the government's proposed jury instruction should be rejected as it has the potential for unfair confusion and will result in unfair prejudice. Mr. Carpenter is charged with the crimes of mail and wire fraud, not with the violation of civil fiduciary duties. Because liability for breach of fiduciary duty in a civil matter does not, by itself, constitute criminal liability, United States v. Defries, 129 F.3d 1293, 1305-06 (D.C. Cir. 1997) ("We have held, however, that violation of a fiduciary duty cannot, in and of itself, constitute a violation of the mail fraud statute, even if the other elements of a mail fraud conviction exist.") (emphasis added), the government's requested instruction is confusing, prejudicial, and should not be given to the jury. In United States v. Pelullo, 964 F.2d 193, 214 (3d Cir. 1992), although upholding the wire fraud, the Court recognized that an instruction describing breach of fiduciary duty was distracting and potentially prejudicial. The Court specifically expressed "concern as to the potential for confusion that the issue of civil fiduciary duties may have had," as the defendant, "[was] charged with the crimes of wire fraud and racketeering and not with the violation of civil fiduciary duties." 964 F.2d at 214. It found that in light of the evidence presented by the government regarding the responsibilities of corporate officials, the trial court's instruction involving fiduciary duties "could only have distracted the jury from the issues." Id.

Here, the government's proposed instruction is equally confusing and prejudicial. Among other deficiencies, the instruction that "concealment by a fiduciary . . . can be a violation of the mail and wire fraud statutes, if the government has proven beyond a reasonable doubt the other elements of the offense," ignores Defries and other authorities which have held that a

breach of fiduciary duty does not constitute criminal liability "even if the other elements of a mail fraud conviction exist." Defries, 129 F.3d at 1305-06 ("the breach of fiduciary duty must have some element of dishonesty"); see also United States v. George, 477 F.2d 508, 508 (7th Cir. 1973) ("Not every breach of fiduciary duty works a criminal fraud.").[3] Even if Mr. Carpenter may ultimately face civil liability for breaching a fiduciary duty to the exchangors, an instruction setting forth fiduciary duty under civil law is likely to confuse the jury and divert its attention from determining whether the government has satisfied its burden of proof of establishing that Mr. Carpenter violated the elements of the crimes of mail and wire fraud.

Nor is it at all clear at this point that a Cassiere instruction should be given. In any event, in contrast with the Cassiere three pronged instruction, the government's proposed instruction from United States v. Szur, 289 F.3d 200, (2d Cir. 2002) invites the jury to find, without exception, that a duty to disclose exists if Mr. Carpenter is determined to have been a fiduciary to the exchangors. This is improper, because the crucial inquiry is not whether or not Mr. Carpenter breached any fiduciary duty to the exchangors, but rather the multiple questions of whether the duty to disclose existed between the parties which arose from "a general professional or specific contractual duty," whether Mr. Carpenter knew of this duty, and whether he breached that duty with the specific intent to defraud. In the absence, in the first instance, of any express professional or specific contractual duty to disclose between Mr. Carpenter and the exchangors, no such fiduciary relationship can be found. The government's proposed instruction on fiduciary duty/duty to disclose is therefore inconsistent with the law of the First Circuit.

---

[3] At a minimum, the government's proposed instruction should be limited by the additional instruction that a breach of a fiduciary duty is criminally fraudulent when "accompanied by a misrepresentation or nondisclosure that is intended or is contemplated to deprive the person to whom that duty is owed of some legally significant benefit." United States v. Lemire, 720 F.2d 1327, 1335 (D.C. Cir. 1983).

Just as importantly, Szur is factually inapposite. The relevant duty to disclose discussed by the court in that case was that of a securities broker to his customers/clients. This type of relationship has been defined, heavily regulated, and restricted at both the state and national level, and is therefore far different from the relationship between exchangor and Qualified Intermediary in a § 1031 exchange. As noted by Conway v. Icahn & Co., 16 F.3d 504, 510 (2d 1994), a case cited by the Court in Szur, a broker is an agent for his or her principal. In marked contrast, the IRS Regulations concerning § 1031 exchanges expressly and unequivocally bar a taxpayer from using an agent as a qualified intermediary. See IRS Reg. § 1.1031(k)-1(f)(2) ("[A]ctual or constructive receipt of money or property by an agent of the taxpayer . . . is actual or constructive receipt by the taxpayer.").

## CONCLUSION

For the foregoing reasons, defendant Daniel E. Carpenter respectfully requests this Court deny the government's request for jury instruction regarding the defendant's fiduciary duty and reserves the right to supplement this opposition during trial.

**RESPECTFULLY SUBMITTED:**

DANIEL E. CARPENTER, Defendant,
By his attorney:

/s/ A. John Pappalardo
A. John Pappalardo (BBO # 338760)
GREENBERG TAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

**Certificate of Service**

      I hereby certify that on this 2nd day of June, 2008, I served on counsel of record in the foregoing matter Daniel E. Carpenter's Opposition To The Government's Request For Instructions Regarding The Defendant's Fiduciary Duty, by means of the ECF system.

                                                   /s/ A. John Pappalardo
                                                   A. John Pappalardo