UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | **CRIMINAL NO. 04-10029-GAO** |
| | ) | |
| **DANIEL E. CARPENTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**DEFENDANT DANIEL E. CARPENTER'S
MOTION TO PRECLUDE THE ADMISSION OF TESTIMONY OF JOSEPH
IANTOSCA FROM THE FIRST CRIMINAL TRIAL**

Defendant Daniel E. Carpenter ("Mr. Carpenter") hereby respectfully requests that this

Court preclude the government from admitting the testimony of Joseph Iantosca ("Mr. Iantosca")

from the first criminal trial in this matter.  The government has indicated that, due to Mr.

Iantosca being found "incapable of caring for himself by reason of mental illness" (according to

a Norfolk County probate court on January 2, 2008), it seeks to read into evidence the testimony

of Mr. Iantosca from the first criminal trial of Mr. Carpenter.  Mr. Carpenter objects to the

introduction of such testimony because based upon: (1) medical records of Mr. Iantosca obtained

by Mr. Carpenter (and not provided by the government); (2) Mr. Iantosca's criminal record (and

more particular specific police reports not provided by the government); and (3) Mr. Iantosca's

non-responsive testimony at the first trial, there are serious questions as to Mr. Iantosca's

competency to testify at the time of the first trial.

A.      **Mr. Iantosca's Medical Records**

As part of the Probate Court proceedings referenced by the government (Docket number

07P2497GI) in its motion to admit the former testimony of Mr. Iantosca, Dr. James M. Ellison,

the Clincal Director of Geriatric Psychiatry Service at McClean Hospital in Belmont,

Massachusetts, submitted an opinion and diagnosis relating to Mr. Iantosca.  **See Exhibit A**.  Dr. Ellison reported that he examined Mr. Iantosca most recently on December 20, 2007, and found him to be suffering from "a neuropsychiatric disorder, Vascular Dementia, that manifests itself as difficulty with memory, problem solving, planning, and judgment among other emotional, cognitive, and behavioral faculties."  Dr. Ellison went on to state that he had reviewed Mr. Iantosca's medical history, which included "severe behavioral disturbance related to this disorder," and additionally he made reference to the criminal incidents discussed below, which culminated in Mr. Iantosca's psychiatric hospitalization.  Significantly, Dr. Ellison noted that Mr. Iantosca "demonstrated severe short term memory problems and difficulty with coherent thinking and understanding."

B.    **Mr. Iantosca's Criminal Record**

Prior to the commencement of this trial, the government provided Mr. Carpenter with Mr. Iantosca's Criminal History Systems Board list of offenses.  Subsequently, counsel for Mr. Carpenter obtained the criminal records associated with those offenses.  Disclosed within these records, *inter alia*, is the following information, :

On December 12, 2005 (only five months after his testimony in the first criminal trial), Mr. Iantosca was arrested for threat to commit a crime, to wit: to kill, under Mass. Gen. Laws chapter 275, § 2.  According to the Weymouth Police Department incident report, Mr. Iantosca threatened to shoot a Home Depot delivery truck driver who was making a delivery at 65 Mathewson Drive.  **See Exhibit B**  During this incident, Mr. Iantosca "jumped out of the vehicle, screaming at [the driver] to get out of the truck.  Words were exchanged between both parties.  Iantosca said, 'Come back and I'll shoot you.  I will shoot you in the face and kill you.'"  The police report also states the driver feared for his safety, so he called Weymouth Police.

Furthermore, the report states that the police officer spoke to Iantosca, who said that he "owns the business at 65 Mathewson Drive, and it's his property and he can do what he wants. [The officer] informed [Iantosca that] [the driver] had a legitimate reason for being on the property to make a delivery." Mr. Iantosca was placed on probation until January 30, 2007, ordered to stay away from the victim and ordered not to be arrested again.

In fact, Mr. Iantosca was arrested after January 30, 2007. On or about July 4, 2007, Mr. Iantosca was arrested for assault and battery on a police officer, resisting arrest, negligent operation of a motor vehicle, and failing to stop for police. **See Exhibit C.** He was placed on pre-trial probation for six months for assault and battery on the police office and negligent operation of a motor vehicle. The other charges were dismissed upon the recommendation of the Commonwealth. According to the police report, Mr. Iantosca aggressively resisted arrest until the police officer sprayed him twice in the face. On July 5, 2007, a state police officer filed a request for an immediate suspension of Mr. Iantosca's license with the Massachusetts Registry of Motor Vehicles, which stated the charges for which he had been arrested and that he was "Medically diagnosed with an acute case of 'Alzheimer's diseas with components of paranoia and disorganization.'" Id.

### C.    Mr. Iantosca's Prior Testimony

Mr. Iantosca's testimony at the first trial was choppy, and at times incoherent. Most of the brief transcript here is comprised of Mr. Iantosca either: stating that he does not recall the information asked of him, see, e.g., Tr. 4-86, 4-88; asking that questions be restated, see, e.g., Tr. 4-86, 4-87, 4-89, 4-91; or providing personal background information of no relevance. Tr. 4-81 through 4-85. The testimony on its face raises suspicion as to Mr. Iantosca's competency, and

such suspicion is only increased when taken together with Mr. Iantosca's medical and criminal history.

To Mr. Carpenter's present counsel's knowledge, no information concerning Mr. Iantosca's mental competency was disclosed by the government to Mr. Carpenter's prior counsel in advance of the first trial. To the extent that Alzheimer's, dementia, or similar mental illnesses develop over a period of time, it is certainly possible that Mr. Iantosca was suffering from these conditions at the time of the first trial. This conclusion is made even more likely given the fact that by July 5, 2007 (just two years after his testimony), he was diagnosed with "acute Alzheimer's disease."

**Conclusion**

Mr. Carpenter respectfully requests that this Court preclude the government from introducing into evidence Mr. Iantosca's testimony from the first trial. In the alternative, if this Court declines to preclude the government from introducing Mr. Iantosca's former testimony, the Court should order the government to turn over Mr. Iantosca's medical records to Mr. Carpenter and the Court and these records should be examined prior to a final determination as to Mr. Iantosca's competency at the time of the first trial. Similarly, Mr. Carpenter should be permitted to examine Mr. Iantosca's treating physician, so as to determine Mr. Iantosca's competency at the time of the first trial.

**RESPECTFULLY SUBMITTED:**

DANIEL E. CARPENTER, Defendant,
By his attorney:

/s/ A. John Pappalardo
A. John Pappalardo (BBO # 338760)
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

**Certificate of Service**

I hereby certify that on this 2nd day of June, 2008, I served on counsel of record in the foregoing matter Daniel E. Carpenter's Opposition To The Government's Request For Instructions Regarding The Defendant's Fiduciary Duty, by means of the ECF system.

/s/ A. John Pappalardo
A. John Pappalardo