# EXHIBIT D

Benistar5-19-04.txt

1

1.      COMMONWEALTH OF MASSACHUSETTS

2    SUFFOLK ss            SUPERIOR COURT DEPARTMENT
                           OF THE TRIAL COURT
3                          CIVIL ACTION 02-00116

4    ****************************************************
     CAHALY, ET AL. PLAINTIFF,
5
                      v.
6
     BENISTAR PROPERTY EXHANGE TRUST ET AL. DEFENDANTS
7
     ****************************************************
8

9                        HEARING

10            TRANSCRIPT OF PROCEEDINGS

11
                         BEFORE: Botsford, J.
12                       DATE:  May 19, 2004

13
     APPEARANCES --
14

15

16              Kathleen M. Rael

17          Official Court Reporter

18

19

20

21

22

23

24

0    2

1

2                        INDEX

3                                                   PAGE

Page 1

GOV 30629

                          Benistar5-19-04.txt
11                    Patterson and Timothy Loff.

12              THE COURT:  It got it.

13              MR. ZELLE:  Yeah.  That's been marked.

14              THE COURT:  Right.  Right.

15              MR. ZELLE:  This is just for ease of

16    reference, so you've got them out.  Exhibit 35

17    we've just marked are handwritten billing records

18    of Mr. Patterson.  Exhibit 36 is the typed up bill

19    of Mr. Patterson sent to Ms. Carey.  And we'll

20    offer them as evidence.

21              THE COURT:  Is there any objection to -- to

22    the two that weren't already admitted?

23              MR. SNYDER:  No objection, Your Honor.

24              MR. GREENBERG:  None, Your Honor.

    0    10


1               MR. ZELLE:  Okay.  Why don't we have

2     Mr. Patterson take the stand.

3                    DAVID PATTERSON,

4               (after having been first duly sworn, was

5               examined and testified as follows:)

6               THE CLERK:  Please take a seat.

7                    DIRECT EXAMINATION

8     BY MR. ZELLE:

9     Q    Was the witness sworn?  Did I miss that?

10              THE COURT:  Yes.

11    Q    ██████████, will you state your name, please?

12    A    David Patterson.

13    Q    And what do you do for a living, Mr. Patterson?

14    A    I'm an attorney.

15    Q    What's the name of your firm?

16    A    I'm a sole proprietor.  Law Offices of David
                          Page 8

GOV 30636

Benistar5-19-04.txt

13          it.

14    A     This is the affidavit that I signed and it's

15          submitted to you.

16    Q     And the attachments, can you identify those?

17    A     These are the attachments, copies of records, from

18          my files.  It's realized in --

19    Q     And --

20    A     As I realized in the deposition, one of the

21          attachments, Exhibit B, was missing the last two

22          pages.

23    Q     And that document was a fax from Mr. Paley to you?

24    A     Correct.

D    16


1     Q     Have you subsequently provided Mr. Snyder with

2           those two pages?

3     A     Yes, I have.

4                 MR. ZELLE:  Your Honor, could I shut this

5           window?

6                 THE COURT:  Sure.

7                     (Discussion had off the record.)

8     Q     Mr. Patterson, is the substance of the conference

9           that you had with Mr. Levine and Mr. Carpenter on

10          October 21, 1998, reflected in your affidavit?

11    A     Yes.

12    Q     Can you identify the paragraphs in which the

13          conference of the 21st is described?

14    A     It would be paragraph 10 and paragraph 11, pages 2

15          and 3.

16    Q     Now, when you placed the call to Mr. Levine on

17          October 22d, can you tell me by reference to your

Page 13

GOV 30641

Benistar5-19-04.txt

18    phone records what time you made that call?

19    A    According to the phone record, it was at

20         10:22 a.m.

21    Q    How long did that telephone call last?

22    A    According to this record, ten and a half minutes.

23    Q    Okay.  After that telephone call on the 22d, did

24         Mr. Levine send you a fax?

0    17


1    A    Yes, he did.

2    Q    And is that attached to your affidavit.

3    A    Yes, it is.

4    Q    And what -- what tab is that.

5    A    I believe that's Exhibit E.

6    Q    And for the Court's reference I believe that --

7         THE COURT:    Is 25?

8         MR. ZELLE:    -- fax was also marked as Exhibit

9         25.

10    Q    And what is the time on the fax identification

11         line?

12    A    10:47 a.m., October 22.

13    Q    And was that fax that came from Mr. Levine sent in

14         response to a request you made when you called

15         Mr. Levine on the 22d?

16    A    Yes, it was.

17    Q    Did you, Mr. Patterson, send Mr. Levine a letter

18         dated October 23, 1998?

19    A    I did.

20    Q    How did you send that?

21    A    I faxed it to him and then mailed it first class

22         mail.

23    Q    And is that attached to your affidavit?

Page 14

GOV 30642

Benistar5-19-04.txt

| | | | |
|---|---|---|---|
| 24 | A | It is. | |

☐  18

| | | |
|---|---|---|
| 1 | Q | And what exhibit to your affidavit? |
| 2 | A | These are blanked out.  I think it's Exhibit F. |
| 3 | Q | Take a second.  We're in no hurry. |
| 4 | A | It's blocked out on this.  I have to look at the |
| 5 | | affidavit. |
| 6 | Q | Okay.  Well -- |
| 7 | A | I can -- I can tell from the affidavit. |
| 8 | Q | Okay. |
| 9 | A | Exhibit F, yes. |
| 10 | Q | Okay.  And did the letter that sent out -- how did |
| 11 | | you send that letter? |
| 12 | A | I mailed it and it was also faxed. |
| 13 | Q | Okay.  Did the letter include attachments? |
| 14 | A | It did. |
| 15 | Q | What were the attachments? |
| 16 | A | A number of them, it included the escrow |
| 17 | | agreement, the exchange agreement, the client |
| 18 | | selection of what funds she was going to have the |
| 19 | | funds put in. |
| 20 | Q | Is that -- that document entitled at the top, |
| 21 | | Account Selection Form? |
| 22 | A | Yes, it is. |
| 23 | Q | Okay. |
| 24 | A | Merill Lynch Private Group Account Selection Form. |

☐  19

| | | |
|---|---|---|
| 1 | Q | Okay. |
| 2 | A | Then the wire transfer instructions.  And then |

GOV 30643

Benistar5-19-04.txt

9    Q    Okay.

10        THE COURT:  Who's the we when you say either

11   we did or the secretary did?

12        THE WITNESS:  Timothy Loff, the attorney who

13   I share space with.  Usually if it wasn't the

14   secretary, it would be me.

15   Q    Okay.  Directing your attention now to the

16   October 21, 1998, telephone conference that you

17   had with Mr. Levine and Mr. Carpenter.  What

18   precipitated that call?

19   A    Primarily I was concerned to make sure that there

20   be clear understanding that the funds be put in

21   the proper kind of account with the proper

22   signatories on the account.  That was one.  And

23   the other concern I had was to make sure

24   specifically that Merill Lynch understood that

0   21

1    these were escrow funds, and that they have a

2    general understanding of how this transaction was

3    meant to work.

4    Q    Will you please describe for the Court the

5    telephone conference?

6         THE COURT:  Which one is this?

7         MR. ZELLE:  The October 21, telephone

8    conference.

9    A    Well --

10   Q    It began with a call to Mr. Carpenter; is that

11   right?

12   A    Correct.  Looking at the billing record, there's a

13   brief call.  It's on the first page -- I'm

Page 17

GOV 30645

Benistar5-19-04.txt

14    sorry -- on Exhibit 31, page 3. It's number 26,

15    which is a call at 10/21/98 at 3:42 p.m., very

16    brief call. Presumably he was busy or not there.

17    Then he would have called me back. And then we

18    had the conference call.

19        THE COURT: Could you just describe what you

20    were -- not -- not what somebody might have done

21    or would have done, but what you remember you did

22    do, and then your conversation.

23        THE WITNESS: Yes.

24    Q    Why don't you go back. You placed a call to

0    22

1    Mr. Carpenter. It was of short duration. So you

2    waited -- you left a message; is that right?

3    A    Yes. I don't specifically remember leaving a

4    message. I remember the conference call.

5    Q    Okay. Why don't you then describe the conference

6    call?

7    A    Conference call, I was basically pressing

8    Mr. Carpenter for information on how the account

9    would work at Merill Lynch, who the signatories

10    were, and that was -- that was what I was really

11    pressing him. I believe there was also some

12    discussion at that point about their paperwork. I

13    had that day received a copy of the draft exchange

14    agreement, the draft escrow agreement from

15    Benistar. I had reviewed it. I had some changes.

16    So there was some discussion in that conference in

17    that first part of the call with Mr. Carpenter.

18    But the main focus, as I remember it, was on how

19    the account was going to be set up, who the

Page 18

GOV 30646

Benistar5-19-04.txt

20       signatories were.  He was not that familiar with

21       all the specifics of the Merill Lynch account, so

22       he --

23    Q   You're speaking the he, Mr. Carpenter?

24    A   Mr. Carpenter.  Because Mr. Levine was not part of

D    23

1       call at that point.  He said, The only person who

2       can answer this is Gerry Levine.  Let me get him

3       on the line.

4    Q   Okay.  And at that point in time, was it your

5       understanding that this was going to be Benistar

6       Property Exchange's first 1031 exchange?

7    A   Yes.  I had come to that conclusion.

8    Q   And did you subsequently after the discussion with

9       Mr. Levine conclude that this was also going to be

10       the first 1031 exchange that Merill Lynch was

11       doing, at least Mr. Levine was involved with?

12    A   Yes.

13    Q   Okay.  Please tell us what the conversation was

14       when Mr. Levine joined the call?

15    A   Basically I was introduced to Mr. Levine.  Right

16       away Dan said, Look, this is someone who has a

17       client, I believe he said, who wants to find out

18       the specifics of how the Merill Lynch account is

19       going to be set up.  Gerry, you are the guy who

20       can explain that to him.  So at that point I

21       described -- it was clear to me that Mr. Levine

22       did not understand about the 1031 transaction, how

23       they worked.  So I just gave a very brief summary.

24       And I made it -- I think I made it clear to him

D    24

Page 19

GOV 30647

Benistar5-19-04.txt

1      that these were my client's funds, and that it was

2      critically important that my client's name --

3      neither my client's name nor my name appear on the

4      account, because if that were to happen, were the

5      IRS to audit, you would lose the intermediary

6      protection that makes a 1031 transaction go

7      through.

8    Q  Can I just ask you to expand on a point here.  You

9       said you summarized for him a 1031 exchange.  Can

10      you tell the Court what you said or how you

11      described or summarized the 1031 exchange?

12   A  I would have described it in very general terms.

13      There is a client who sold real estate, funds are

14      held by an intermediary, which is Benistar, for a

15      period not no exceed 180 days; and that at that

16      point, the client has to select replacement

17      property; and then the funds are transferred out

18      and used to purchase new replacement property.

19   Q  Did you use the term "escrow" in describing it?

20   A  I believe I did.

21   Q  You also said that you indicated to Mr. Levine

22      that it was your client's funds.  Can you tell us

23      any more specifically what it was that you said to

24      Mr. Levine to inform him that the funds in the

0   25

1      Benistar account were the funds of your client as

2      well as Benistar's client, Ms. Carey?

3    A  I don't -- I don't think there would have been

4      anything more.  I just would have said they were

Page 20

GOV 30648