# EXHIBIT H

**DAVID D. PATTERSON**
ATTORNEY AT LAW
1087 BEACON STREET, SUITE 201
NEWTON, MASSACHUSETTS 02459-1700
TELEPHONE (617) 332-7045
FACSIMILE (617) 332-6671

OF COUNSEL
TIMOTHY R. LOFF, ESQ.

FACSIMILE TRANSMISSION

October 23, 1998

Gerald R. Levine
Merrill Lynch
Fifth Avenue Financial Center
717 Fifth Avenue-6th Floor
New York, NY 10022

Re: Exchangor: Jane W. Carey
397 Marlboro Street, Boston, MA

Dear Mr. Levine,

Enclosed please find one fully executed copy of the Escrow Agreement under which the funds will be held. Also enclosed are Exchange Agreement, and ML Account Selection Form and Benistar's Wiring Instructions.

The funds ($374,406.93) should be wired out today by the closing attorney's office to Merrill Lynch pursuant to the terms of the enclosed Wiring Instructions.

For your information the funds will be held in a Merrill Lynch account pursuant to the Escrow Agreement with Benistar's officer, Daniel E. Carpenter being the single signatory on the account.

Very truly yours,

David D. Patterson

DDP/ksd
Enc.
cc. w/o enc. Daniel E. Carpenter, Chairman, Benistar Property Exchange Trust Co, Inc.
    Martin L. Paley, President, Benistar Property Exchange

OCT-23-1998 10:29   FROM BENISTAR LTD            TO        916173326671   P.02

## ESCROW AGREEMENT

THIS ESCROW AGREEMENT is by and between Jane W. Carey of Somerville, Massachusetts (hereinafter the "Exchangor") and BENISTAR Property Exchange Trust Company, Inc. (hereinafter "BENISTAR").

WHEREAS the Exchangor wishes to utilize the services of BENISTAR as an Intermediary to facilitate a tax-deferred property exchange under IRC Code Section 1031 pursuant to the terms of the Exchange Agreement (the Agreement) between the Parties; and

WHEREAS the Exchangor will be depositing with BENISTAR an amount of funds to be deposited in the BENISTAR accounts at Merrill Lynch, Private Client Group, Fifth Avenue Financial Center, New York City, New York; and

WHEREAS the Exchangor will either use these funds at a closing on the Replacement Property to be purchased as part of the 1031 Exchange or simply take back the funds;

NOW, THEREFORE, THE PARTIES AGREE TO THE FOLLOWING:

1. BENISTAR shall open an Escrow Custodial Account under BENISTAR's name at Merrill Lynch for the Exchangor's benefit;

2. BENISTAR shall have full control over the Exchangor's funds to invest as the Exchangor directs in either the 3% Ready Asset Money Market Fund or the 6% Merrill Lynch Investment Account;

3. Only upon the Exchangor's written direction and authorization shall the funds leave the BENISTAR account. Upon the written direction of the Exchangor shall the funds be released and then the funds shall be delivered to one of only two places at the Exhangor's written direction:

    a. Directly to the Exchangor's account; or
    b. Directly to the escrow account for the closing on the Replacement Property to be purchased pursuant to the Exchange Agreement.

4. Upon distribution of the funds to the Exchangor's designated account, BENISTAR shall have no further obligation to the Exchangor.

00525

0 0 5 2 5

5. Rights, Privileges, and Immunities of BENISTAR, shall be governed as follows:

5a) <u>Custodian Only</u>. BENISTAR is not a party to the Exchange Agreement and is not bound or charged with notice of any agreement out of which this escrow may arise, and acts hereunder as a custodian only. Except for its gross negligence or willful misconduct, BENISTAR is not responsible or liable in any manner whatsoever for the sufficiency, correctness, genuineness, or validity of any document, instrument, certificates, check or agreement or for the identity or authority of any person executing or depositing the same.

5b) <u>Indemnity</u>. In the event BENISTAR becomes involved in litigation in connection with this Escrow Agreement, the Exchange Agreement or any transaction related in any way hereto, then the Exchangor agrees to indemnify and hold BENISTAR harmless of fees suffered or costs, damage or expenses incurred, except for those costs resulting from the negligence or willful misconduct of BENISTAR.

5c) <u>Actions Protected</u>. BENISTAR shall be protected absolutely in acting on any written notice, request, waiver, consent, certificate, receipt, authorization, power of attorney or other paper or document which BENISTAR in good faith believes to be genuine and what it purports to be.

5d) <u>Good Faith Actions</u>. BENISTAR shall not be liable for anything which it may do or refrain from doing in connection herewith, provided that it acts in good faith except actions that are a result of negligence or willful misconduct of BENISTAR.

5e) <u>Legal Counsel</u>. BENISTAR may confer with legal counsel in the event of any dispute or questions as to the construction of any of the provisions of this Escrow Agreement, or its duties hereunder, and it shall incur no liability and shall be fully protected in acting in accordance with the opinion and instructions of its counsel.

5f) <u>Event of Dispute</u>. In the event of any disagreement involving the Parties resulting in adverse claims or demands being made in connection with the matters covered by this Escrow Agreement or in the event that BENISTAR, in good faith, shall be in doubt as to what action it should take hereunder, BENISTAR may, at its option, refuse to take any other action hereunder, so long as such disagreement continues or such doubt exists. In such event, BENISTAR shall not be or become liable in any way or to any person for its failure or refusal to act, and BENISTAR shall be entitled to continue so to refrain from acting until the rights of the Parties shall have been adjusted and all doubt resolved by agreement among all of the interested Parties and BENISTAR shall have been notified thereof in writing signed by all parties. The rights of BENISTAR under this subparagraph are cumulative of all other rights which it may have by law or otherwise.

5g) <u>Discharge.</u> BENISTAR having delivered all the documents, instruments, checks, certificates or cash pursuant to the terms of this Escrow Agreement, shall be discharged from any further obligations hereunder.

6. This Agreement shall be governed by the laws of ~~Connecticut~~ _Massachusetts_.

7. The provisions of this Agreement shall be severable and shall not effect the rest of the Agreement if any provisions should be deemed illegal or non-enforceable for any reason. There may be several signed copies of this Agreement all having the same full force and effect of the original. A facsimile copy of this document shall be binding upon the undersigned as fully and to the same extent as an original signed copy hereof.

8. BENISTAR represents that it is a Delaware Corporation in good standing and that it is legally authorized to act as an Intermediary as set forth in the Exchange Agreement in relationship to the Relinquished Property and Replacement Property in Massachusetts.

The Parties evidence their agreement to the provisions above with their signatures below:

EXCHANGOR                          BENISTAR PROPERTY EXCHANGE
                                   TRUST COMPANY, INC.

_____            _____
Jane Carey                         Daniel E. Carpenter, Esq. Chairman

10/22/98                           10/23/98
Date                               Date

## Exchange Agreement

This agreement is entered into this date October 18, 1998 by and between Jane W. Carey, (hereinafter "Exchangor") Madeira Isle Real Estate Corp., (hereinafter "Purchaser"), and BENISTAR Property Exchange Trust Company, Inc. a Delaware corporation (hereinafter "Intermediary").

Whereas, Exchangor is the owner of an undivided 33% interest in certain real property located in Boston, in the County of Suffolk, State of Massachusetts, commonly know as 397 Marlboro Street, hereinafter "Relinquished Property"; and

Whereas, Purchaser desires to acquire the Relinquished Property, pursuant to the terms of the Purchase and Sale Agreement between Purchaser and Exchangor for the acquisition thereof, a copy of which is attached hereto as Exhibit "A" and is incorporated herein by reference; and

Whereas, Exchangor desires to effect a tax deferred exchange pursuant to Section 1031(a) of the Internal Revenue Code;

Whereas, Intermediary is a company in good standing doing business in the State of Connecticut; and is engaged in the business of acting as an intermediary in tax deferred exchanges;

Now, THEREFORE, the Parties hereto agree as follows:

1. <u>Closing Instructions</u>. The terms and conditions set forth herein shall constitute both an agreement between the parties hereto and supplemental closing instructions for the transaction which has been opened by the parties with Brody, Jacobs and Fitzgerald, hereinafter "Closing Attorney" for the transfer of the Relinquished Property to Purchaser for the consideration and on the terms and conditions provided herein and as set forth in Exhibit "A" attached hereto.

2. **Exchange.** Exchangor intends to effect a tax-deferred exchange pursuant to the provisions of Section 1031(a) of the Internal Revenue Code, the regulations promulgated thereunder, applicable court cases, and to the extent applicable, state franchise tax statutes. Exchangor has not located like-kind property in which to Exchange.

To permit Exchangor to be entitled to the benefits of a tax deferred exchange, the parties hereto agree as follows:

a) In order to avoid the duplication of transfer fees, closing costs, title insurance, and the like, the Parties agree that the obligation to make any deed transfer provided for herein may be fulfilled by the party obligated to make the transfer conveying title to the property directly to the intended transferee. Thus, based upon appropriate closing instructions, title to the Relinquished Property shall be conveyed directly from the Exchangor to Purchaser.

b) Exchangor shall execute the proper deed in favor of Purchaser and instruct the closing attorney to deliver such deed when said closing attorney holds for Intermediary the total sum of $1,425,000 less payment for costs of sale applicable thereto plus any prorations or costs of sale applicable to Exchangor as evidenced by closing attorney's "net sheet" approved by Intermediary and Exchangor and subject to encumbrances of record.

c) Exchangor agrees that Intermediary shall hold the net proceeds from the closing herein until such time as Exchangor has located suitable like-kind property or properties in which to exchange, which shall be described as the "Replacement Property." Thereafter Exchangor shall instruct Intermediary to acquire said Replacement Property on the terms and conditions negotiated by Exchangor as evidenced by a written agreement for the purchase thereof. Exchangor relinquishes any and all rights to instruct Intermediary to tender the proceeds held by Intermediary directly to Exchangor.

OCT-23-1998 10:31 FROM BENISTAR LTD TO 916173326671 P.07

However, should Exchangor fail to identify the replacement property or properties within a period of 45 days from the transfer of title of the Relinquished Property, if not previously identified or fail to acquire title to the replacement property within a period of the earlier of 180 days from the transfer of title of the Relinquished Property or the due date of the tax return, and upon written instructions of the occurrence of either of the above, Intermediary shall be obligated to tender forthwith the proceeds from the disposition of the Relinquished Property.

d) All costs and expenses of acquiring the replacement property, including cash payments toward the purchase price and all other acquisition fees incident thereto shall be borne first from the proceeds held by Intermediary and then, to the extent necessary, from the funds of Exchangor. All fees due and owing to the Intermediary shall be payable from the proceeds held by the Intermediary unless previously paid to the Intermediary by the Exchanges.

3. **Closing.** The closing herein shall occur by Closing Attorney arranging the delivery of the proper deed of the Relinquished Property to Purchaser for the consideration of $1,425,000 showing title to the property vested in Purchaser.

4. **Offer.** A condition of this Agreement is the delivery to Exchangor of an executed copy of the Exchange Agreement on or before closing. This condition is solely for the benefit of Exchangor.

5. **Possession.** Subject to the provisions hereof, possession of the Relinquished Property shall be given to Purchaser as of the date of close of escrow.

6. **Deposits.** All documents and funds to be deposited by Exchangor with closing company shall include:

   a) A proper deed conveying the Relinquished Property to Purchaser;
   b) All documents and /or statement of information as may be required by Brody, Jacobs and Fitzgerald (Closing Attorney or Company) in order to close this transaction as the first phase of a multi-party tax deferred exchange; and
   c) Any funds required by Brody, Jacobs & Fitzgerald (Closing Attorney or Company) to pay for such costs and proration which are to be borne by Exchangor, if any.

00530

All documents to be deposited by Purchaser with the Closing Attorney shall include:

    a) All documents and statements of information as may be required by Closing Attorney or Company in order to close this transaction as the first phase of a multi-party tax deferred exchange;

    b) All funds required by Closing Company to pay such costs and prorations, including the purchase price or the balance of the purchase, which are to be borne by Purchaser.

7. **Prorations.** Prorations, if any, are those set forth in the closing instructions approved by Exchangor and Intermediary.

8. **Costs.** Exchangor shall pay for only those costs previously agreed to with Purchaser and set forth in the closing instructions approved by Exchangor and Intermediary. Intermediary shall be entitled to remove from any escrows those funds due and owing from Exchangor not previously paid.

9. **Intermediary's Fees.** Exchangor agrees to compensate Intermediary for the performance of the services of such described herein in the total amount of $1,500 for both the Phase One (Relinquished Property) and Phase Two (Replacement Property) portions of the exchange. Any exchange proceeds deposited with BENISTAR shall accrue interest to the benefit of the Exchangor at the current declared BENISTAR short-term rate.

10. Exchangor and Intermediary expressly agree that any cash proceeds received from the disposition of the Relinquished Property shall be held and invested with Merrill Lynch Private Client Group in either 3% per annum in a Merrill Lynch Ready Asset Money Market account, or 6% per annum in a Merrill Lynch investment account. This latter account can not be liquidated for 30 days, whereas, the Ready Asset Money Market account can be liquidated at any time upon 48 hours written notice during the next business day. Said investment account shall be in the name of Intermediary and shall require the signature of an authorized officer of Intermediary to permit the withdrawal of any portion thereof. By the terms hereof, Intermediary shall only be required to participate in the withdrawal of funds when instructed by Exchangor and only when the instructions involve the acquisition of the replacement property of the disposition of said proceeds by Intermediary to Exchangor pursuant to the terms of paragraph 2 (c) above.

OCT-23-1998 10:32   FROM BENISTAR LTD   TO   916173326671   P.09

11.  **Time of Essence.** Time is of the essence hereof.

12.  **Notices.** Any notice to be given hereunder shall be given by personal delivery or by depositing each notice in the United States Mail, duly registered or certified, with postage prepaid, addressed as follows:

Exchangor
Jane W. Carey
c/o David D. Patterson, Esq.
1087 Beacon Street
Suite 301
Newton, Massachusetts 02459

Intermediary
BENISTAR Property Exchange Trust Company, Inc.
507 Hopmeadow Street
Simsbury, CT 06070

Purchaser
Madeira Isle Real Estate Corp.
c/o Joseph Lopisi, Esq.
Cambridge, Massachusetts 02140

Any party hereto may, from time to time, by written notice to the other, as applicable, designate a different address which shall be substituted for the one specified above. If any notice or other document shall be sent by certified mail as foresaid, the same shall be deemed to have been effectively served or delivered at the expiration of 24 hours following deposit of said notice in the United States Mail in the manner set forth above.

13.  **Assignment.** Neither this Agreement nor any interest herein shall be assignable by any party hereto without the prior written consent of the others, as applicable.

00532

OCT-23-1998  10:32    FROM  BENISTAR LTD            TO          916173326671   P.10

14. **Indemnity.** Exchangor does hereby indemnify Intermediary and hold it harmless from any loss, costs, expenses or liability it may incur subsequent to the closing or of results from Intermediary's participation in the exchange of property as described herein, to the extent such loss, cost, expenses or liability arise out of Intermediary's said Relinquished Property or Replacement Property involved in the exchange. Such indemnification does not apply to any challenge by any duly constituted legal authority as to the tax ramifications of this exchange transaction. The indemnity provided for herein shall include any liability, directly or indirectly caused by the presence on, under, or about the Relinquished Property, of any hazardous materials and any costs or expenses for repair, clean-up, or detoxification of any of said property. Exchangor acknowledges that Intermediary has made no representation as to the tax consequences of the exchange transaction, except as those set forth in Section 1031 of the Internal Revenue Code, and that Intermediary has participated in this transaction solely for Independent business reasons. This indemnity, however, does not extend to the remaining contractual obligations set forth herein pertaining to the acquisition and disposition of the personal property referred to above and any subsequent replacement property or properties of this contemplated exchange.

15. **Reporting Requirements.** Exchangor agrees that to the extent required, Exchangor shall satisfy any and all reporting requirements of any Federal, State, Municipal, or other governing authority for recipients of funds paid to or by Intermediary on behalf of and at the direction of Exchangor.

16. **Independent Tax and Legal Advice.** Intermediary has advised Exchangor to seek independent tax and legal advice both as to the income tax consequence of the exchange as contemplated by Exchangor and as to the legal effect of this agreement.

17. **Governing Law.** All questions with resect to the construction of this Agreement and the rights and liabilities of the parties hereto shall be governed by the laws of the State of Massachusetts.

18. **Inurement.** Subject to the restrictions against assignment as herein contained, this Agreement shall inure to the benefit of, and shall be binding on, the assigns, successors in interest, personal representative, estates, heirs, and legatees of each of the parties hereto, as applicable.

19. **Attorney's Fees.** In the event of any controversy, claim, or dispute between the parties hereto, arising out of or relating to this Agreement or to the breach thereof, the prevailing party, or parties, reasonable attorney's fees, and costs.

20. **Entire Agreement.** This agreement contains the entire agreement of the parties hereto, and supersedes any prior written or oral agreement between them concerning the subject matter contained herein. There are no representations, agreements, arrangements or understandings, oral or written, between the parties hereto, relating to the subject matter contained in this Agreement, which are not fully expressed herein.

21. **Counterparts.** This Agreement may be executed in several counterparts and all counterparts so executed shall constitute one agreement which shall be binding on all of the parties hereto, notwithstanding that all of the parties are not signatory to the original or the same counterparts.

A facsimile copy of this document shall be binding upon the undersigned as fully and to the same extent as an original signed copy hereof.

This Agreement has been executed as of the day and year first written above.

**EXCHANGOR**

_____
Jane W. Carey

**PURCHASER**

_____
Madeira Isle Real Estate Corp.

**INTERMEDIARY**
BENISTAR Property Exchange Trust Company., Inc.

By: _____
Daniel E. Carpenter, Esq. Chairman

OCT-23-1998 10:33    FROM BENISTAR LTD    TO    916173526671    P.12

# BENISTAR PROPERTY EXCHANGE TRUST COMPANY, INC.

### Merrill Lynch Private Client Group Account Selection Form

Please Select one of the Following:

(3% per Annum) Merrill Lynch Ready Asset Money Market Account:
Notice: The above account can be liquidated the next business day following 48 hours written notice.

_____

(6% per Annum) Merrill Lynch Investment Account:
Notice: The above account cannot be liquidated without 30 days written notice.

✓ [signature]
_____

EXCHANGOR

[signature]
Jane W. Carey

Date: October 22, 1998

TOTAL P.12

00535

OCT-23-1998 10:34 FROM BENISTAR LTD    TO    916173326673    P.13

# BENISTAR PROPERTY EXCHANGE TRUST COMPANY, Inc.

## WIRE TRANSFER INSTRUCTIONS

To:    Mellon Bank
       One Mellon Bank Plaza
       Pittsburgh, PA 15258-00001
       ABA Routing No. 043000261

For Credit to:    Merrill Lynch Account Number 101 1/730

Further Credit To:    BENISTAR Property Exchange Trust Company, Inc.
                      Account #: 849-07B01

All wire transfers must include the following:

   A. Exchangor's Name: Jane W. Carey

   B. BENISTAR Property Exchange Case Number: 98001

Please have you or your bank notify BENISTAR Property Exchange Trust Company, Inc.

2:50 pm

# DAVID D. PATTERSON, ESQ.
ATTORNEY AT LAW
1087 BEACON STREET
SUITE 201
NEWTON, MASSACHUSETTS 02459-1700

TELEPHONE: (617) 332-7045
FAX:       (617) 332-6671

## FAX COVER SHEET

TO: JERRY LEVINE, MERRILL LYNCH

FROM: DAVID D. PATTERSON, ESQ.

DATE: October 23, 1998

FAX NUMBER: 212-415-7934

NUMBER OF PAGES (INCLUDING COVER SHEET): 14

COMMENTS:

---

THE ORIGINAL OF THE TRANSMITTED DOCUMENT WILL BE SENT VIA:
( X ) FIRST CLASS MAIL            ( ) THIS WILL BE THE ONLY
                                       FORM OF DELIVERY OF THE
                                       TRANSMITTED DOCUMENT
( ) MESSENGER

( ) OVERNIGHT COURIER

---

## CONFIDENTIALITY NOTICE

The documents accompanying this facsimile transmission contain information which is confidential and privileged. This information is intended to be for the use of the addressed individual or entity. If you are not the intended recipient, please understand that any disclosure, copying, distribution, or use of the contents of this information is prohibited. If you have received this transmission in error, please notify us by telephone immediately so that we may arrange for the retrieval of the documents at no cost to you. Thank you.

00537