# EXHIBIT  J

Benistar5-18.txt

1

```
 1            COMMONWEALTH OF MASSACHUSETTS

 2    SUFFOLK ss          SUPERIOR COURT DEPARTMENT
                          OF THE TRIAL COURT
 3                        CIVIL ACTION 02-00116

 4    ****************************************************
      CAHALY, ET AL. PLAINTIFF,
 5
      V.
 6
      BENISTAR PROPERTY EXHANGE TRUST ET AL. DEFENDANTS
 7
      ****************************************************
 8

 9                        HEARING

10           TRANSCRIPT OF PROCEEDINGS

11
                          BEFORE: Botsford, J.
12                        DATE:  May 18, 2004

13
      APPEARANCES --
14

15

16                  Kathleen M. Rael

17              Official Court Reporter

18

19

20                        INDEX

21                                              PAGE

22    NOVEMBER 15, 2002 PROCEEDINGS            3

23

24    WITNESSES
        ▓▓▓▓▓▓▓▓▓▓
```

0     2

```
 1

 2

 3
```

Page 1

GOV 30524

Benistar5-18.txt

2    A    That's what it says.

3    Q    This is a letter to the Securities and Exchange

4         Commission dated February 8, 2001, on Merill Lynch

5         letterhead?

6    A    That is sent by Kevin Duffy.

7    Q    Who's Mr. Duffy?

8    A    He's a counsel in the litigation department of

9         Merill.

10            MR. NYSTROM:  Your Honor, I'd Exhibits 9 and

11        10 into evidence.

12            MR. SNYDER:  I object to that, Your Honor.

13        This witness has no familiarity with either of

14        these letters or any conversations that Mr. Duffy

15        might have had with the SCC about what it was they

16        were looking for or the fact that --

17            THE COURT:  Sustained.  I'm not going admit

18        them, but if you want to mark them for

19        identification, you can, Mr. Nystrom.

20            MR. NYSTROM:  Your Honor, if may be heard on

21        that point?  The relevance of this document is it

22        just shows a further pattern of abuse.  It shows a

23        further pattern of failure to produce relevant

24        documents in connection with these Benistar

🗆   60

1         accounts to not only the Court but to the SCC as

2         well.

3             THE COURT:  Mark them for identification.  I

4         don't have to hear any more about it.  Mark them

5         for identification.  It's A and B.

6                 (Exhibits A and B, Documents, marked for

7                 identification.)
                       Page 49

GOV  30572

Benistar5-18.txt

| | | |
|---|---|---|
| 8 | Q | Mr. Levine, when's the last time you saw Exhibits |
| 9 | | 1 through 5? |
| 10 | A | Probably when they were originated. |
| 11 | Q | Now, Mr. Levine, you have read the affidavit |
| 12 | | submitted by Mr. Paley, is that correct? |
| 13 | A | Yes. |
| 14 | Q | And how many times have you read that affidavit? |
| 15 | A | Two or three times. |
| 16 | | MR. NYSTROM:  Mark this is as the next |
| 17 | | exhibit in line. |
| 18 | | THE COURT:  It's 31? |
| 19 | | MR. NYSTROM:  Thirty-two. |
| 20 | Q | Could you read to yourself, please, paragraphs 12 |
| 21 | | and 13.  Do you understand paragraphs 12 and 13? |
| 22 | A | Yes. |
| 23 | Q | You deny that you had the conversation with |
| 24 | | Mr. Paley described in paragraphs 12 and 13? |

0    61

| | | |
|---|---|---|
| 1 | A | Absolutely.  This never took place. |
| 2 | Q | Do you deny speaking with Mr. Paley at all on |
| 3 | | October 19? |
| 4 | A | Absolutely deny it. |
| 5 | | THE COURT:  Did, Mr. Nystrom, paragraph 14 |
| 6 | | seems to be -- is that a different conversation, |
| 7 | | or -- and fifteen. |
| 8 | | MR. NYSTROM:  No, you're right, Your Honor. |
| 9 | | THE COURT:  It's all one conversation, or at |
| 10 | | least Mr. Paley's says. |
| 11 | | MR. NYSTROM:  Correct, Your Honor. |
| 12 | Q | Could you please read 14 and I believe 15 as well. |

Page 50

GOV 30573

Benistar5-18.txt

13    A    I read them.

14    Q    Do you deny that the conversation took place

15          that's also contained in paragraphs 14 and 15?

16    A    Yes, I deny it.

17    Q    You deny ever speaking with Mr. Paley in October

18          of 1998?

19    A    I've never spoken to Mr. Paley at any time ever.

20    Q    Now, Mr. Levine --

21          THE COURT:  I'm sorry, if I can just ask you,

22    and you mean deny, you don't mean you don't have a

23    recollect.  You mean you never --

24          THE WITNESS:  I never spoke to Palely.

0    62


1    Q    Now, Mr. Levine, you had a one eight hundred

2          number at Merill Lynch; is that correct?

3    A    Correct.

4    Q    It's 1(800)999-6371.  If you want to take a look

5          at Exhibit -- here.  Let me just --

6    A    Yes.  I see it here.

7    Q    And is that your personal line as well?

8    A    No.

9    Q    Where's that number go to?

10   A    Merill Lynch switchboard.

11   Q    If you asked for Gerry Levine, where's the call

12         sent?

13   A    Then it would be directed to my phone number, or

14         if that number was busy, would roll over into one

15         of the other numbers that are listed on the card.

16   Q    Now, at the Stern Levine Group, is the Stern

17         Levine Group charged for telephone calls by Merill

18         Lynch?

Page 51

GOV 30574

Benistar5-18.txt

22     me less time to ask these eight questions.

23              THE COURT:   Just hurry up.

24              MR. ZELLE:   You want me to talk to Mr.

0    98

1     Nystrom or ask him questions?

2              THE COURT:   Just go ahead.   Ask them.

3              MR. ZELLE:   All right.

4                   DIRECT EXAMINATION

5     BY MR. ZELLE:

6     Q    Just to quickly, Mr. Levine, I want to go through

7          the points, there are eight of them, I believe,

8          where your recollection or your testimony is

9          inconsistent with what's in the affidavit of Mr.

10         Palely and Mr. Patterson.

11             THE COURT:   That's going to take us a long

12         time.

13             MR. ZELLE:   No, it will not, Your Honor.   I

14         promise you.   It's two minutes.

15             MR. SNYDER:   If it's two minutes, Your Honor,

16         I don't know what the point is.

17             THE COURT:   Go ahead, Mr. Zelle.   If it's

18         more than two minutes, I'm going to stop you.

19    Q    Did you, Mr. Levine, deny that you had any

20         telephone conversation with Mr. Paley?

21    A    Yes.

22    Q    Do you deny that you had a telephone conversation

23         that included Mr. Carpenter and Mr. Patterson on

24         October 21st.

0    99

1     A    Yes.

Page 81

GOV  30604

Benistar5-18.txt

2   Q   Do you deny that you had a telephone conversation

3       with Mr. Patterson on the 22nd?

4   A   Yes.

5   Q   And do you deny that there was a -- that you

6       received a fax from David Patterson on October 23,

7       1998?

8   A   I never got one.

9   Q   Okay.  And you deny you received a letter, a mail

10      copy, from -- of a letter from Mr. Patterson that

11      was dated the 23rd?

12  A   Nothing ever came to my attention.

13  Q   And you deny that you received the escrow

14      agreement that was attached to Mr. Patterson's

15      letter?

16  A   Yes.

17  Q   And you deny you received the exchange agreement

18      that was attached to Mr. Patterson's letter?

19  A   Yes.

20  Q   And you deny that you sent Mr. Patterson a fax in

21      response to his telephone conversation with you?

22  A   I did send a fax to a Patterson for a WCMA

23      corporate account.  Has nothing at all to do with

24      any escrow accounts, any side agreements, nothing

0   100

1       in there.

2           MR. ZELLE:  Okay.  Thank you.

3           MR. GREENBERG:  Thank you, Your Honor.

4               CROSS-EXAMINATION

5   BY MR. GREENBERG:

6   Q   Mr. Levine, my name is Gary Greenberg.  A few

Page 82

GOV 30605

Benistar5-18.txt

```
 7              questions, sir.
 8                     First of all, when you said you never spoke
 9              with Mr. Paley in October of 1998, correct?
10       A      Or at any other time since.
11       Q      You've never spoken to Mr. Paley, correct?
12       A      Correct.
13       Q      Did you ever hear of the name Martin Paley in the
14              context of Benistar prior to the initiation of
15              litigation in this matter?
16       A      Never heard of his name.
17       Q      Never knew he existed in any affiliation with
18              whatsoever with Benistar; is that your testimony?
19       A      Yes.
20       Q      On -- you said that you spoke with Mr. Carpenter
21              daily; is that right?
22       A      Yes.
23       Q      On top of that, you also socialized with
24              Mr. Carpenter on occasion, is that right?
```

0    101

```
 1       A      Lunches or dinners.
 2       Q      Okay.  And during the course of those luncheons or
 3              dinners with Mr. Carpenter, did you discuss
 4              Mr. Carpenter's business activities?
 5       A      Yes.
 6       Q      So you felt that you had a pretty complete
 7              understanding as to what Mr. Carpenter's business
 8              dealings were?
 9       A      As he gave them to me.
10       Q      And you felt he was candid with you and told you
11              all about his history and what he was his doing?
12       A      Yes.
```

Page 83

GOV 30606