# EXHIBIT  K

ORIGINAL

1

2   COMMONWEALTH OF MASSACHUSETTS
    SUPERIOR COURT DEPARTMENT OF THE TRIAL COURT
3   CONSOLIDATED CIVIL ACTION NOS. 01-0116 BLS;
    01-0299 BLS; 01-0330 BLS; 01-0581 BLS;
4   01-1882 BLS; 01-00075 Norfolk; 01-1647 Middlesex

5   -------------------------------------x
    GAIL A. CAHALY, et al.,
6                               Consolidated Plaintiffs,

7           -against-

8   BENISTAR PROPERTY EXCHANGE TRUST COMPANY,
    INC., et al.,
9
                                Consolidated Defendants.
10
    -------------------------------------x
11
                            February 6, 2002
12                          9:00 a.m.

13

14

15

16      Continued deposition of GERALD LEVINE, taken

17  by Plaintiffs, pursuant to notice, at the offices

18  of Bingham Dana, 399 Park Avenue, New York,

19  New York, before Tracy Eckhoff, a Shorthand

20  Reporter and Notary Public within and for the

21  State of New York.

22

23

24

25

1                        GERALD LEVINE

2          Q.      Did you ask what kind of real estate

3     activities Benistar Property Exchange Trust

4     engaged in?

5          A.      No.

6          Q.      If you look at the next page, at the

7     bottom it says please provide the name of the

8     four most senior officials or chief principals of

9     your organization, and the only name there is

10    Daniel E. Carpenter, chairman and secretary.  Do

11    you see that?

12         A.      Yes.

13         Q.      Did you ask Mr. Carpenter if there

14    were any other senior officials or chief

15    principals?

16         A.      Yes.

17         Q.      And what did he say?

18         A.      He said it was just himself.

19         Q.      Did you ever learn of an individual

20    associated with Benistar Property Exchange Trust

21    Company named Martin Paley?

22         A.      No.

23         Q.      Let me direct your attention, it's

24    about four pages in.  It's page No. 13 at the

25    bottom.  It's the WCMA account authorization for

GOV 26624

**EDWARD SHULMAN REPORTING CO., A LegaLink Company**

GERALD LEVINE

Q.    Did you ever come to know that Marty
Paley was the president of Benistar Property
Exchange Trust Company?

A.    No.

Q.    You were aware that Mr. Carpenter was
the president -- I'm sorry -- was the chairman
and secretary of Benistar Property Exchange Trust
Company; is that right?

A.    Yes.

Q.    And that Molly Carpenter was the
treasurer?

A.    Yes.

Q.    Did you ever ask either one of them
who the president was?

A.    I don't recollect.

Q.    At some point a decision was made by
Merrill Lynch to close down the Benistar
accounts; is that right?

A.    Yes.

      MR. CRONAN:   Objection as to form.

Q.    Do you know who made that decision?

A.    Yes.

Q.    Who was that?

A.    I believe it was a joint decision made

GOV 26680

EDWARD SHULMAN REPORTING CO., A LegaLink Company

GERALD LEVINE

Q.    Can you read that for me?

A.    We have chosen Merrill as our depository for our clients so that we cannot move the funds elsewhere. If we cannot trade at Merrill, we cannot trade anywhere. You will have doomed us to our losses in a volatile market that we were perfectly positioned to profit from.

Q.    Did you have any discussion with Mr. Carpenter at any time during which he informed you that Benistar had chosen Merrill as its depository for its clients funds?

A.    None.

Q.    Were you informed of this statement after September 22?

A.    Yes.

Q.    Who informed you of this?

A.    I don't recall.

Q.    When were you informed of this?

A.    I believe I was given a copy of this letter. This was a letter that was faxed and mailed to Tom, I believe, that eventually a copy came into my possession. And I read it over and I saw those -- that statement and it was the first time I had ever seen anything mentioned at

GOV 26695

GERALD LEVINE

1

2    Q.    Did you ever have any understanding

3    that any of the funds that were deposited in the

4    Benistar Property accounts at Merrill Lynch

5    included client escrow funds?

6    A.    No.

7    Q.    Did you ever suspect that at any time

8    prior to this lawsuit?

9    MR. BERTHIAUME:  No.

10    Q.    Prior to the initiation of this

11    lawsuit, did you ever have any indication that

12    any of the funds in the Benistar Property

13    accounts were client funds?

14    A.    No.

15    Q.    What did you understand to be the

16    source of the funds that were coming into the

17    Benistar Property accounts?

18    A.    Business profits that were generated

19    by Benistar's activities.

20    Q.    If you had known that some of the

21    funds in the Benistar Property account were

22    client escrow funds, what, if anything, would you

23    have done?

24    MR. ORDER:  Objection.

25    A.    I would have immediately notified my

GOV 26711

# EXHIBIT  M

Benistar5-18.txt

1

```
 1           COMMONWEALTH OF MASSACHUSETTS

 2    SUFFOLK SS          SUPERIOR COURT DEPARTMENT
                          OF THE TRIAL COURT
 3                        CIVIL ACTION 02-00116

 4    ************************************************
      CAHALY, ET AL. PLAINTIFF,
 5
      v.
 6
      BENISTAR PROPERTY EXHANGE TRUST ET AL. DEFENDANTS
 7
      ************************************************
 8

 9                    HEARING

10          TRANSCRIPT OF PROCEEDINGS

11
                      BEFORE: Botsford, J.
12                    DATE:  May 18, 2004

13
      APPEARANCES --
14

15

16            Kathleen M. Rael

17        Official Court Reporter

18

19

20                    INDEX

21                                        PAGE

22    NOVEMBER 15, 2002 PROCEEDINGS          3

23
      WITNESSES
24
```

0    2

```
 1

 2

 3
```

Page 1

GOV 30524

Benistar5-18.txt

24

```
 1          know the answer to that.  So before we get into
 2          what he said, I'm assuming that was the basis of
 3          the objection?  Is that right, Mr. Snyder?
 4               MR. SNYDER:  That is correct.  Mr. Hanzer is
 5          an attorney.
 6               THE COURT:  Who may or may not be
 7          representing Mr. Levine in his capacity as a
 8          former employee.  So --
 9    Q     Let me ask Mr. Levine, is Mr. Hanzer your
10          attorney?
11    A     Yes.
12    Q     When did you retain Mr. Hanzer?
13    A     When Mr. Hanzer called me and said that some
14          affidavits had appeared.
15    Q     And who's paying your legal fees for Mr. Snyder?
16    A     Merill Lynch, I believe.
17    Q     That's an agreement you had with Merill Lynch?
18    A     Yes.
19    Q     So it is inaccurate when you said you had no
20          agreement with Merill Lynch?
21    A     I had no prior agreement with Merill Lynch.
22    Q     Now, Mr. Levine, you were the Merill Lynch broker
23          who handled the Benistar accounts on a daily
24          basis; isn't that correct?
```

25

```
 1    A     The primary broker, yes.
 2    Q     You handled the accounts on a daily basis?
 3    A     The primary broker, yes.  Mr. Stern was also
```

Page 20

GOV 30543

Benistar5-18.txt

```
 4        involved in these transactions, but I was the

 5        primary one.

 6    Q   And that was between October 1998 when the

 7        Benistar property accounts were opened until

 8        September 2000 when the accounts were shut down,

 9        isn't that correct?

10    A   Yes.

11    Q   And while the Merill Lynch accounts were opened,

12        you spoke with Mr. Carpenter almost everyday?

13    A   Yes.

14    Q   Sometimes for one to two hours a day?

15    A   Yes.

16    Q   And even before the Benistar accounts were opened,

17        you met with Mr. Carpenter frequent?

18    A   I initially met Mr. Carpenter in, I believe, it

19        was February of '98.  And until the accounts were

20        opened, there may have been five -- four or five

21        meetings, some by telephone, and a few in person.

22    Q   There was some social engagements, right; dinners,

23        lunches?

24    A   Yes.
```

26

```
 1    Q   Now, Benistar Property Exchange was your largest

 2        client; isn't that correct?

 3    A   Yes.

 4    Q   And Benistar Property Exchange took up more time

 5        than any other individual client you had?

 6    A   Yes.

 7    Q   And Benistar Property Exchange generated more

 8        commissions for you than any other individual

 9        clients?
```

Page 21

GOV 30544