UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                )
UNITED STATES OF AMERICA    )
                                )
        v.                      )        CRIMINAL NO. 04-10029-GAO
                                )
DANIEL E. CARPENTER         )
_____)

### Memorandum of Law in Support of  Motion to Dismiss Indictment for Violation of Constitutional Right to Speedy Trial

**I**.     **Introduction**.

       In March of last year (March 27, 2012, to be precise), Mr. Carpenter moved to dismiss

the indictment, arguing any further prosecution of this matter would violate his Constitutional

right to a speedy trial and/or sentencing.  *See* Dkt. Entries 387-88.  At the outset of that pleading,

Mr. Carpenter noted the indictment had been returned more than eight years prior.  Now, almost

two additional years have passed, and Mr. Carpenter again finds himself before the Court, given

the recent ruling by the First Circuit Court of Appeals reversing this Court's order for a new trial.

*See* Dkt. Entries 401, 402.   When filed in March 2012, the Court denied the motion on

procedural, not substantive, grounds, holding that "[w]ithout express authorization from the

Court of Appeals" the Court lacked jurisdiction to entertain the motion because the government's

appeal of the new trial order remained pending.  Dkt. Entry 392.

       With the government's appeal resolved, and the procedural obstacle removed with

today's issuance of the formal mandate by the First Circuit, Mr. Carpenter moves anew to

dismiss this case.  All prior arguments and points apply to the present posture of the case, though

in several instances with greater force.  The indictment was not returned 8 years ago, but now

just about 10 years ago.  The conduct underlying the indictment, occurring from 1998 through

1

2000, is now almost 14 to 16 years old.[1]

The speedy trial guarantee of the Sixth Amendment encompasses more than simply ensuring a speedy "trial."  Rather, it was designed by the Framers, in part, "to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, *and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges*." *United States v. Loud Hawk*, 474 U.S. 302, 311 (1986) (emphasis added), *quoting United States v. MacDonald*, 456 U.S. 1, 8 (1982).[2]  As detailed herein, Mr. Carpenter respectfully submits that the Sixth Amendment right to a speedy trial commands a prompt and speedy resolution of a criminal prosecution---from indictment to either an acquittal or final judgment.  Here, Mr. Carpenter is stuck in a seemingly endless litigation purgatory, caused by the government's improper conduct, resulting in the violation of his Sixth Amendment right to a speedy trial.  In short, Mr. Carpenter contends that the Sixth Amendment right to a speedy trial has been violated in the rather unique circumstances presented here: (1) two lengthy trials, the first of which was tainted and rendered moot because of improper government trial conduct, which not only denied Mr. Carpenter jury deliberations free from taint, but also from seeking a full appeal of events transpiring during his first trial, (2) two government appeals of the Court's decisions, (3) a defendant who has regularly asserted his innocence and right to a speedy trial, (4) a government that sat on its hands for approximately three years while the Court was forced to wrestle with a motion for new trial based on improper government conduct during a second trial, and (5) and a government that sat on its hands yet again during the most recent lengthy appeal, as

---

[1] The Court has previously observed, in granting the first new trial, that a finding of not guilty would have been rationally possible on the evidence.  Dkt. Entry 192 at 28.

[2] *See also United States v. Ewell*, 383 U.S. 116, 120 (1966) (Sixth Amendment guarantee of a speedy trial "is an important safeguard to prevent undue and oppressive incarceration prior to trial, *to minimize anxiety and concern accompanying public accusation* and to limit the possibilities that long delay will impair the ability of an accused to defend himself") (emphasis added).

contrasted with Mr. Carpenter, who alone attempted to push the First Circuit to address the appeal, despite the fact it is the government with the statutory mandate to diligently pursue its appeal, *see* 18 U.S.C. §3731 (government appeal "shall be diligently prosecuted").

The prejudice suffered by Mr. Carpenter and his family as a result of this endless litigation defies adequate description.  Indeed, while the Court is undoubtedly familiar with the procedural history of this matter, the Court may not be so familiar with the immeasurable anguish, anxiety and public obloquy that accompany litigation of this nature.  For almost ten years now, a man who believes in his legal and factual innocence with every fiber of his being has been forced to endure not one trial, but two trials; not one appeal, but two appeals, and now faces the prospect of a third appeal (and perhaps a third trial).  The entire time, his life has been on hold, his future uncertain, and every day burdened by the constant anxiety of wondering whether he will be stripped of his liberty, sentenced to jail, and torn from his family.  For all of the following reasons, Mr. Carpenter respectfully submits that the indictment should be dismissed <u>with</u> prejudice.

## II.      **<u>Mr. Carpenter's Sixth Amendment Right to Speedy Trial Has Been Violated.</u>**

### A.      ***<u>The Sixth Amendment Right to Speedy Trial Includes a Right to Prompt Resolution of Criminal Charges, from Indictment through Final Judgment</u>***.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial."  U.S. Const. amend. VI.  "If the government violates this constitutional right, the criminal charges must be dismissed."  *United States v. Dowdell*, 595 F.3d 50, 60 (1st Cir.2010), *citing Strunk v. United States*, 412 U.S. 434, 439-40 (1973).  Unlike a Speedy Trial Act violation, dismissal with prejudice is the only remedy when a violation of a defendant's constitutional right to a speedy trial has occurred; the Sixth Amendment's speedy trial protection, unlike other constitutional guarantees such as the right to an impartial jury or fair

notice of charges, cannot be remedied by a new trial because this constitutional protection is designed to limit the uncertainty and anxiety that accompanies a criminal prosecution. *See, e.g.*, *United States v. Young*, 657 F.3d 408, 413 (6th Cir.2011) ("We agree with Young that the proper remedy for a violation of a defendant's constitutional speedy-trial rights is dismissal of the indictment with prejudice"); *United States v. Elmardoudi*, 501 F.3d 935, 943, n.7 (8th Cir.2007) ("It is generally agreed that [*Strunk*] means dismissal with prejudice" and "government does not dispute that dismissal with prejudice is the only remedy for a Sixth Amendment speedy trial violation").

Indeed, a litany of Supreme Court cases make it patently clear that the Sixth Amendment's guarantee of a speedy trial was designed to protect not only against prejudice to one's defense, but also to guard against unjust and undue infringement of liberty imposed by a public prosecution, and the attendant uncertainty suffered by an accused. As the Court explained in *United States v. Marion*, 404 U.S. 307, 320 (1971):

> Inordinate delay between arrest, indictment, and trial may impair a defendant's ability to present an effective defense. *But the major evils protected against by the speedy trial guarantee exist quite apart from actual or possible prejudice to an accused's defense.* To legally arrest and detain, the Government must assert probable cause to believe the arrestee has committed a crime. *Arrest is a public act that may seriously interfere with the defendant's liberty, whether he is free on bail or not, and that may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.*

(emphasis added). Seizing upon this language, the Court in *United States v. MacDonald*, 456 U.S. 1, 8 (1982), observed:

> The Sixth Amendment right to a speedy trial is thus *not* primarily intended to prevent prejudice to the defense caused by passage of time; that interest is protected primarily by the Due Process Clause and by statutes of limitations. *The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to*

> *shorten the disruption of life caused by arrest and the presence of unresolved criminal charges.*

*MacDonald*, 456 U.S. at 8 (emphasis added); *see also Smith v. Hooey*, 393 U.S. 374, 377-78 (1969) ("Suffice it to remember that this constitutional guarantee has universally been thought essential to protect at least three basic demands of criminal justice in the Anglo-American legal system: '(1) to prevent undue and oppressive incarceration prior to trial, (2) to minimize anxiety and concern accompanying public accusation and (3) to limit the possibilities that long delay will impair the ability of an accused to defend himself'").

In *Strunk*, in explaining why dismissal is the only appropriate remedy for the denial of a speedy trial, as contrasted with the suitability of a new trial for violations of failure to afford a public trial, or an impartial jury or notice of charges, the Supreme Court emphasized that the speedy trial guarantee is different than these other Sixth Amendment guarantees: "the speedy trial guarantee recognizes that a prolonged delay may subject the accused to an emotional stress that can be presumed to result in the ordinary person from uncertainties in the prospect of facing public trial or of receiving a sentence longer than, or consecutive to, the one he is presently serving--uncertainties that a prompt trial removes."  *Strunk*, 412 U.S. at 438-39.  Likewise, in *Klopfer v. State of North Carolina*, 386 U.S. 213 (1967), wherein the defendant challenged a state criminal procedural mechanism that permitted prosecutors to *nolle prosequi* cases "with leave," which permitted prosecutors to later re-institute the charge at the prosecutor's discretion, the Court held said procedure violated the defendant's speedy trial constitutional guarantee:

> The petitioner is not relieved of the limitations placed upon his liberty by this prosecution merely because its suspension permits him to go "whithersoever he will." The pendency of the indictment may subject him to public scorn and deprive him of employment, and almost certainly will force curtailment of his speech, associations and participation in unpopular causes. By indefinitely prolonging this oppression, as well as the "anxiety and concern accompanying public accusation," the criminal procedure condoned in this case by the Supreme Court of North

Carolina clearly denies the petitioner the right to a speedy trial which we hold is guaranteed to him by the Sixth Amendment of the Constitution of the United States.

*Klopfer*, 386 U.S. at 221-23.  The Supreme Court so held notwithstanding the fact that the *nolle prosequi* with leave imposed no tangible limitations upon the defendant's liberty.  *See also Moore v. Arizona*, 414 U.S. 25, 27-28 (1973) ("The right to a speedy trial is as fundamental as any of the rights secured by the Sixth Amendment") (internal citations and quotations omitted).

Given the foregoing, it should not be surprising that many courts have assumed or held that the Sixth Amendment prohibits unnecessary delay prior to final judgment.  *See Pollard v. United States*, 352 U.S. 354, 361 (1957) (assuming without deciding that the sentence is part of the trial for purposes of the Sixth Amendment); *United States v. Nelson-Rodriguez*, 319 F.3d 12, 60 (1st Cir.2003) ("we assume for the purposes of this appeal that the right to a speedy trial extends to sentencing"). As noted by the First Circuit, "most circuits that have addressed this issue have held that the right to a speedy trial extends to [the sentencing] phase," *see Nelson-Rodriguez*, 319 F.3d at 60 (collecting cases), and that several other circuits have assumed without deciding that the right extends to sentencing.  *Id*.  The Fifth, Tenth and Eleventh Circuits have recognized the right to speedy sentencing.  *See, e.g., United States v. Abou-Kassem*, 78 F.3d 161, 167 & n.25 (5th Cir.1996); *United States v. Peters*, 349 F.3d 842, 850 & n.34 (5th Cir.2003); *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir.2006) ("[t]he Sixth Amendment guarantees all criminal defendants the right to a speedy trial; we have applied this right from arrest through sentencing"); *United States v. Miter*, 2011 WL 5420855, *1 (11th Cir.2011) (noting that the Eleventh Circuit has "recognized that the constitutional speedy trial right applies to sentencing"); *see Juarez-Casares v. United States*, 496 F.2d 190, 192 (5th Cir.1974) (holding that "the imposition of sentence is part of the trial for the purposes of the Sixth Amendment

speedy trial guarantee").[3]

The Tenth Circuit recently assumed that the constitutional right to a speedy trial not only extended to sentencing, but to entry of the final judgment.  In *United States v. Gould*, 672 F.3d 930 (10th Cir.2012), the court examined whether a 1,388 day delay between conviction and final judgment violated the Sixth Amendment.  In determining whether to consider the entire period as a whole or in two separate parts, the court observed that the "Sixth Amendment guarantees a speedy trial, which requires the entire trial, start to finish, be speedy," and thereafter assumed that the right "extends to the entry of final judgment."  *Id.* at *3.[4]

Here, too, the Court should analyze whether Mr. Carpenter's constitutional right to a speedy trial has been violated by the prolonged delay occasioned in this matter by the government's improper trial conduct and two interlocutory appeals filed by the government.  It is immaterial that Mr. Carpenter has been afforded two trials.  The critical factor, in terms of analyzing the Sixth Amendment issue, is that just about 10 years have now passed since the return of the indictment and Mr. Carpenter still suffers the ills against which the Sixth Amendment was designed to protect: *infringement of his liberty, disruption of his career, a drain on his financial resources, a curtailing of his associations, relentless public ridicule and*

---

[3] The D.C. Circuit counts the Sixth Circuit among those courts-including the Third and Fifth Circuits-that have "held the Sixth Amendment applicable to sentencing." *United States v. Gibson*, 353 F.3d 21, 27 (D.C.Cir.2003).  The Second Circuit has concluded otherwise, and in so doing argues that the Fifth Circuit line of cases relies upon an original misreading of the Supreme Court's *Pollard* decision.  *See United States v. Ray*, 578 F.3d 184 (2d Cir.2009).

[4] In *Gould*, unlike here, the defendant did not assert his right to a speedy trial, some of the delay was attributable to him, and the court did not find that the defendant was prejudiced, hence the court ultimately found the delay did not violate the Sixth Amendment.  *Id.* at *3-6.  Here, Mr. Carpenter repeatedly pressed for a resolution of this case, he repeatedly urged the First Circuit to expedite the most recent appeal, *see, e.g., United States v. Carpenter,* First Circuit Case No. 11-2133, Dkt. Entries Dated July 3, 2012 (Letter Requesting Status) and November 21, 2012 (same); *United States v. Carpenter*, First Circuit Case No. 11-2131, Dkt. Entry Dated May 22, 2012 (Motion to Remand); and *all* of the delay occasioned in this matter should be attributed to the government which despite their statutory duty, *see* 18 U.S.C. §3731, did nothing to further or expedite the appellate court's scheduling of briefing, argument, or decision.

*obloquy, and immeasurable anxiety in him, his family and his friends*.  If the Sixth Amendment right to a speedy trial is primarily intended to shorten the impairment of liberty imposed on an accused and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges, *see MacDonald*, 456 U.S. at 8, it should apply forcefully in the unique procedural context of this case.

**B.**     ***The now-familiar, pertinent Barker test***.

To determine whether a speedy trial violation has occurred, courts employ the four-part balancing test established in *Barker v. Wingo*, 407 U.S. 514 (1972), which requires a weighing of: "(1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant resulting from the delay."  *Dowdell*, 595 F.3d at 60, *citing Barker v. Wingo*, 407 U.S. at 530; *Nelson-Rodriguez*, 319 F.3d at 60 (analyzing claim that a delayed sentence violated the defendant's right to a speedy trial under the four factors set out in *Barker*).  While "[n]one of these factors is a necessary or sufficient condition to the finding of a [speedy trial] deprivation," *Nelson-Rodriguez*, 319 F.3d at 60, *citing Barker*, 407 U.S. at 533, a reviewing court must "'weigh all of the factors collectively before deciding whether a defendant's right to a speedy trial has been violated.'"  *Dowdell*, 595 F.3d at 60, *quoting United States v. Colombo*, 852 F.2d 19, 23 (1st Cir.1988); *see Barker*, 507 U.S. at 533 (identifying it as a "difficult and sensitive balancing process").

**C.**     ***By any measure, an analysis of the Barker factors warrants a finding that Mr. Carpenter's Sixth Amendment right to a speedy trial has been violated***.

1.     *The length of the delay*.

As the First Circuit has observed, the first factor "is both the trigger for analysis and one of the factors to be considered," because "[u]ntil there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance."

*Dowdell*, 595 F.3d at 60; *see also Doggett v. United States,* 505 U.S. 647, 651 (1992) (referring to the length-of-delay factor as a "double enquiry").  "[L]ower courts have generally found post-accusation delay 'presumptively prejudicial' at least as it approaches one year.'" *United States v. Santiago-Becerril*, 130 F.3d 11, 21 (1st Cir. 1997), *quoting Doggett,* 505 U.S. at 652, n.1; *United States v. Munoz-Franco*, 487 F.3d 25, 60 (1st Cir. 2007).

Here, it has been almost ten years since Mr. Carpenter entered the courtroom for an initial appearance and arraignment in this matter (Feb. 24, 2004), at which time his travel was restricted to the United States, and Mr. Carpenter now faces the prospect of yet another appeal, and perhaps a third trial thereafter (and perhaps another round of appeals thereafter).  The first appeal consumed approximately 21 months, and the second (most recent) appeal took more than two years (September 2011 to November 2013).  *See* Dkt. Entries 381, 401.  There literally is no end in sight to this interminable litigation.  When does the endless litigation end for Mr. Carpenter—will he be forced to withstand a third appeal, and, if he succeeds, a third trial?  There undeniably has been a presumptively prejudicial delay that compels analysis of the balance of factors.  *See Munoz-Franco*, 487 F.3d 25, 60 (relying on *Doggett*, finding that five-and-a-half year delay in this case creates a presumption of prejudice); *United States v. Koller*, 956 F.2d 1408, 1414 (7th Cir. 1992) (holding that an eight and one-half month delay was enough to warrant further inquiry); *Colombo*, 852 F.2d at 24 (holding that a 24 month period was long enough to be presumptively prejudicial).

> 2.  *The reasons for the delay.*

"The second factor, the reasons for the delay, has been described as '[t]he flag all litigants seek to capture,' *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986), and is often considered the 'focal inquiry.'"  *United States v. Trueber*, 238 F.3d 79, 88 (1st Cir. 2001).  In

*Barker*, the Supreme Court said:

> Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. *A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.* Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

*Barker*, 407 U.S. at 531 (emphasis added).

Here, the blame falls squarely upon the government that there is no finality to this case after a decade of litigation.  The Court has vacated jury verdicts in two separate trials due to government misconduct during its closing arguments (though the second verdict has now been reinstated by the First Circuit).  The government's first appeal was rejected by the First Circuit. That the First Circuit reversed this Court's second order for a new trial does not obviate the fact that the government's closing argument was adjudged by this Court as legally improper, which resulted in two additional years of appellate litigation.  Certainly, Mr. Carpenter is not to blame for the second trial or the second appeal.  This does not constitute a "more neutral reason such as negligence," but rather something significantly worse.  *Barker* stressed that official bad faith in causing delay "will be weighed heavily against the government."  *Id.*  Given the government alone is responsible for the content and context of its closing arguments, the government alone should be held responsible for the entire period of delay—all nine-plus years.  However, even if the fifteen months between the original indictment (Feb. 4, 2004) and the jury's first verdict (Jul. 27, 2005) were excluded, there can be no reasonable dispute that all of the ensuing delay is a direct result of the government's misconduct during the first trial.  In other words, but for the government's wrongdoing during its closing and rebuttal arguments at the first trial, Mr. Carpenter would have either been acquitted after the first trial, or sentenced a few months

thereafter and afforded his statutory right to appeal the events of the first trial.  In short, if not for

the government's trial misconduct, this case would have been disposed of, one way or the other,

a long, long time ago.  As such at the very least, all of the time post-dating the first trial should

be attributable to the government.

The government will no doubt argue that it should not be blamed for the delay

occasioned by its exercise of its statutory right to appeal the Court's first order for a new trial,

but said delay should weigh strongly in favor of dismissal, particularly where the government's

first appeal was tangential and/or frivolous. In *Loud Hawk*, the Court observed:

> Given the important public interests in appellate review, *supra,* at 655, it hardly
> need be said that an interlocutory appeal by the Government ordinarily is a valid
> reason that justifies delay. In assessing the purpose and reasonableness of such an
> appeal, courts may consider several factors. These include the strength of the
> Government's position on the appealed issue, the importance of the issue in the
> posture of the case, and-in some cases-the seriousness of the crime.  *United States
> v. Herman*, 576 F.2d 1139, 1146 (5th Cir. 1978) (Wisdom, J.). *For example, a
> delay resulting from an appeal would weigh heavily against the Government if the
> issue were clearly tangential or frivolous. Ibid. Moreover, the charged offense
> usually must be sufficiently serious to justify restraints that may be imposed on
> the defendant pending the outcome of the appeal*. *Ibid.*  Under *Barker,* delays in
> bringing the case to trial caused by the Government's interlocutory appeal may be
> weighed in determining whether a defendant has suffered a violation of his rights
> to a speedy trial.

*Loud Hawk*, 474 U.S. at 315-16 (emphasis added).  Here, during its first appeal, not only did the

government try to defend its indefensible conduct during its closing arguments, but it first argued

that its misconduct should be insulated because, it erroneously contended, Mr. Carpenter did not

preserve his objections to the government's improper closing and rebuttal arguments.  *United

States v. Carpenter*, 494 F.3d 13, 18 (1st Cir. 2007).  After rejecting this procedural roadblock,

the First Circuit agreed with the Court's conclusion that the government's "repeated references

to gambling were *intended to*, and did, inflame the jury's passions against the defendant."

*Carpenter*, 494 F.3d at 22 (emphasis added).  The First Circuit also expressed its concern "that

the government would use such provocative language in the face of the court's repeated caution that the evidence upon which the gambling terminology was based should not be used to distract the jury from its focus on Carpenter's state of mind when he obtained his clients' funds." *Carpenter*, 494 F.3d at 22.  In a concurring opinion, Judge Lynch wrote that the grant of a new trial "does not even approach being an abuse of discretion."  *Carpenter*, 494 F.3d at 29.  Because the government chose to appeal, rather than accept the Court's findings, Mr. Carpenter was forced to endure approximately 21 months of needless appellate litigation.  *See* Dkt. Entry 195 (government notice of appeal filed on Jan. 9, 2006); Dkt. Entry 220 (First Circuit mandate filed on Oct. 1, 2007).

Additionally, the charged offenses and facts were not sufficiently serious to justify the delay occasioned by not one appeal, but two government appeals.  *See Loud Hawk*, 474 U.S. at 315-16 ("Moreover, the charged offense usually must be sufficiently serious to justify restraints that may be imposed on the defendant pending the outcome of the appeal"); *Id*. at 312-13 ("holding that safeguards underlying the Sixth Amendment right to a speedy trial "may be as important to the accused when the delay is occasioned by an unduly long appellate process as when the delay is caused by a lapse between the initial arrest and the drawing of a proper indictment, or by continuances in the date of trial").   Here, the Court specifically found that this case "was not so strong that it can confidently be said that the repeated 'gambling' references had no illegitimate effect on the jury's assessment of the evidence."  *United States v. Carpenter*, 405 F. Supp. 2d 85, 103 (D. Mass. 2005).  The Court also observed that a finding of not guilty "would have been rationally possible on the evidence."  *Id*.  Given these observations, as well as the fact that the Exchangors had recouped all of their lost money through the civil courts, the government should not have consumed judicial resources and years of Mr. Carpenter's life

pursuing its first appeal, the second trial, or the second appeal. In short, the evidence of any *arguendo* criminal conduct is simply not so compelling to justify the angst and restraints imposed by not one appeal, but two appeals, each of which was focused on government misconduct during closing arguments.

In *Loud Hawk*, the Court found that the "Government's position in each of the appeals was strong, and the reversals by the Court of Appeals are prima facie evidence of the reasonableness of the Government's action," and noted that "despite the seriousness of the charged offenses, the District Court chose not to subject respondents to any actual restraints pending the outcome of the appeals." *Loud Hawk*, 474 U.S. at 316. Here, the government's position during the first appeal was rejected, the Court has observed that a not guilty verdict would also have been a rational finding after the first trial, and Mr. Carpenter has continued to suffer actual restraints pending the outcome of the appeals. Indeed, incredibly, the government still objected—eight years later—to even the temporary removal of travel restraints so that Mr. Carpenter could travel to London with his family. *See* Motion to Modify Conditions of Release and Government Opposition thereto (filed under seal). The government's decision to appeal the first new trial order and its decision to pursue a second trial should weigh heavily in favor of dismissing the indictment with prejudice.

The three-year delay between argument on Mr. Carpenter's post-trial motions (after the second trial) and the Court's allowing Mr. Carpenter's second motion for a new trial also weighs heavily in favor of dismissal with prejudice.[5] Not once during the intervening three years did the government prod the Court to issue a ruling on Mr. Carpenter's post-trial motions, or ask the

---

[5] The hearing on Mr. Carpenter's post-trial motions (attacking the verdict in the second trial) occurred on Dec. 3, 2008, and the Court issued its order allowing Mr. Carpenter's motion for new trial on Sep. 1, 2011. Of course, the second trial concluded in June 2008, and so well more than 3 years passed between the trial and resolution of the post-trial motions.

Court to exclude any time from the STA computations.  Instead, the government sat on its hands

during this three-year period (and even objected to the Court's consideration of any of the newly

discovered evidence, *see* Dkt. Entry 357).  Likewise, the government did not once push the First

Circuit to expedite its most recent appeal, as distinguished from Mr. Carpenter, who repeatedly

urged the Court to expedite the appeal.  *See, e.g., United States v. Carpenter,* First Circuit Case No.

11-2133, Dkt. Entries Dated July 3, 2012 (Letter Requesting Status) and November 21, 2012 (same);

*United States v. Carpenter*, First Circuit Case No. 11-2131, Dkt. Entry Dated May 22, 2012 (Motion to

Remand).  As the Supreme Court made clear in *Strunk v. United States*, 412 U.S. 434, 436-37

(1973), it is the government that bears "ultimate responsibility" for ensuring a speedy trial.  *Id*.

("Unintentional delays caused by overcrowded court dockets or understaffed prosecutors are

among the factors to be weighed less heavily than intentional delay," but "the ultimate

responsibility for such circumstances must rest with the government rather than with the

defendant"), *quoting Barker*, 407 U.S. at 531; *see also Dickey v. Florida*, 398 U.S. 30, 37-38

(1970) ("Although a great many accused persons seek to put off the confrontation as long as

possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the

charging authority is to provide a prompt trial").  In *Dickey v. Florida*, 398 U.S. 30, 50 (1970),

Justice Brennan observed in a concurring opinion:

> The accused has no duty to bring on his trial. He is presumed innocent until proved
> guilty; arguably, he should be presumed to wish to exercise his right to be tried quickly,
> unless he affirmatively accepts delay. The government, on the other hand, would seem to
> have a responsibility to get on with the prosecution, both out of fairness to the accused
> and to protect the community interests in a speedy trial. Judge Weinfeld of the District
> Court for the Southern District of New York has observed, 'I do not conceive it to be the
> duty of a defendant to press that he be prosecuted upon an indictment under penalty of
> waiving his right to a speedy trial if he fails to do so. It is the duty of the public
> prosecutor, not only to prosecute those charged with crime, but also to observe the
> constitutional mandate guaranteeing a speedy trial. If a prosecutor fails to do so, the
> defendant cannot be held to have waived his constitutional right to a speedy trial.' *United
> States v. Dillon*, 183 F.Supp. 541, 543 (1960).

In any event, unlike the government, Mr. Carpenter repeatedly urged the Court to rule on his post-trial motions. *See*, *e.g.*, Dkt. Entries 349, 350, 355, 359, 360. The contrast of positions between the parties (*i.e.*, the government sitting on its hands and Mr. Carpenter repeatedly requesting action) illuminates the Supreme Court's observations that a defendant suffers tangible prejudice while criminal proceedings remain pending, such as anxiety and public disdain, from which the government is immune. *See Barker*, 407 U.S. at 537. The government's failure to take any actions to pursue resolution of Mr. Carpenter's post-trial motions during this three-year delay, and its failure to ever ask for an expedited appellate schedule before the First Circuit during the most recent appeal, also weighs heavily in favor of dismissal of the indictment with prejudice.

       3.   *The defendant's assertion of his right.*

In *Barker*, the Court observed:

> Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

*Barker*, 407 U.S. at 531-32.

Mr. Carpenter has now filed three motions to dismiss for violation of his speedy trial rights. *See* Dkt. Entry 79 (Jun. 13, 2005); Dkt. Entry 229 (Jan. 28, 2008); Dkt. Entry 387-88 (March 27, 2012). He did not directly appeal the Court's denial of his motion for judgment of acquittal, but instead only filed a cross-appeal *after* the government exercised its statutory right to appeal the Court's allowance of his motion for new trial. He did not seek delay after the Court

allowed his second motion for new trial, again cross-appealing only *after* the government exercised its statutory right to appeal yet again.   During the three years between argument on his post-trial motions and the Court's allowing his second motion for new trial, Mr. Carpenter asked the Court to rule on his motions several times, asked the Court to schedule a status conference, and noted the prejudice he was suffering by the government's endless litigation against him in letters to the Court.   *See* Dkt. Entries 370, 373.   And, as noted, he repeatedly urged the First Circuit to expedite the most recent appeal.   This factor is critical to the balancing process, and it too warrants dismissal in this case.   *See Barker*, 407 U.S. at 534 ("More important than the absence of serious prejudice, is the fact that Barker did not want a speedy trial").

> 4.   *The prejudice to the defendant resulting from the delay*.

As the Court stated in *Barker*:

> Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired.  Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

*Barker*, 407 U.S. at 532. The Court, after discussing the prejudice of lengthy pretrial incarceration, observed that "even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility."   *Barker*, 407 U.S. at 532.    In *United States v. Taylor*, 387 U.S. 326, 340-41 (1988), quoting from *Barker*, the Court recognized that the longer the delay, the greater the presumptive or actual prejudice to the defendant:

> the length of delay, a measure of the seriousness of the speedy trial violation, in

some ways is closely related to the issue of the prejudice to the defendant. The longer the delay, the greater the presumptive or actual prejudice to the defendant, in terms of his ability to prepare for trial or the restrictions on his liberty:

> "[I]nordinate delay between public charge and trial, ... wholly aside from possible prejudice to a defense on the merits, may 'seriously interfere with the defendant's liberty, whether he is free on bail or not, and ... may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.'"

*Taylor*, 487 U.S. at 340-41 (internal quotation marks omitted).

In *United States v. Ferreira*, 665 F.2d 701, 707 (6th Cir. 2011), the Sixth Circuit found that a three-and-a-half year delay was presumptively prejudicial and ordered the indictment dismissed with prejudice. In doing so, the Sixth Circuit held to its previous holding in *Dixon v. White*, 210 Fed. Appx. 498, 499 (6th Cir. 2007), and observed that "a three-and-a-half-year delay necessitates a finding of presumptive prejudice is in keeping with decisions from two of our sister circuits." *Ferreira*, 665 F.3d at 707, *citing United States v. Erenas-Luna*, 560 F.3d 772, 780 (8th Cir. 2009) (applying *Doggett* and concluding that a three-year delay between indictment and arraignment caused by "the serious negligence of the government" was excessive enough to trigger a presumption of prejudice) and *United States v. Ingram*, 446 F.3d 1332, 1339 (11th Cir. 2006) (holding that a two-year, post-indictment delay caused by egregious government negligence allowed the court to presume prejudice in the fourth *Barker* prong).

The prejudice suffered by Mr. Carpenter over the past nine-plus years defies adequate description, and clearly constitutes actual prejudice. He has repeatedly complained about the agony and angst imposed upon him and his family as a result of this decade long prosecution. *See* Dkt. Entry 360 ("It is fundamentally unfair and unconstitutional to subject Mr. Carpenter and his family to another day of this malicious and misguided prosecution — after almost a decade of investigations, indictments, trials and appeals."). He has suffered a prolonged and significant

infringement of his liberty, as illustrated by his repeated motions to modify conditions of release to permit international travel. His career has been significantly disrupted and he has been subjected to relentless public ridicule and obloquy, including removal from the Connecticut legal bar and his license to practice before the IRS. *See* Dkt. Entry 360 at 11-12 ("The offensive press release has caused Mr. Carpenter substantial harm in terms of lost business and employment opportunities, yet after several requests the USAO continues to refuse to remove the press release from its website"); *id* at 13 ("As recently as this past month, the IRS's Office of Professional Responsibility has revoked Mr. Carpenter's license to practice in front of the IRS because of the libelous press release"). Indeed, the reach of this tragedy is exemplified by the fact that a school field that was named in honor of the Carpenter family was renamed as a result of this prosecution. This endless prosecution has also imposed a tremendous drain on Mr. Carpenter's financial resources. *See, e.g.*, Dkt. Entry 205 at 3 (in opposing motion for return of passport, government arguing that Mr. Carpenter "presumably has paid and continues to pay hundreds of thousands of dollars to his many lawyers"). It has resulted in significant curtailing of his associations, and not only his bar membership, as Mr. Carpenter was forced to resign from his position as a girls soccer coach and other community posts. This prosecution has also caused immeasurable anxiety in Mr. Carpenter and his family. One chilling example: When Mr. Carpenter's daughter was given the opportunity to study at Trinity College, Dublin for a summer semester of law school, she was inclined to turn down the opportunity (and went so far as to hide the opportunity from her father) because of her anxiety over leaving her parents in this state of legal limbo; she was guilt-ridden over the thought that should any new developments occur, she would not be there to support her family. Mr. Carpenter's health has suffered enormously, physically and emotionally, and his family relations have suffered due to the interminable nature

of these proceedings. **In short, every danger the Supreme Court has articulated and the Sixth Amendment's speedy trial guarantee was designed to prevent has manifested itself in this case, all to extreme prejudice to Mr. Carpenter and his family—and then some.**

**III.    The Due Process Clause of the Fifth Amendment Precludes Endless Prosecutions Resulting from Government Misconduct.**

For all of the foregoing reasons, Mr. Carpenter respectfully submits that the delay occasioned in this matter has resulted in a violation of his Fifth Amendment due process rights. U.S. Const. amend. V. ( "No person shall . . . be deprived of life, liberty, or property, without due process of law"). "A defendant maintains a right to due process in a criminal proceeding until the entry of final judgment. This right guarantees not only that the required process will be afforded, but that it will be afforded without 'oppressive delay.'" *United States v. Sanders*, 452 F.3d 572, 577 (6th Cir. 2006), *citing United States v. Lovasco*, 431 U.S. 783, 789 (1977). Delays caused by criminal appeals also "can rise to the level of a due process violation." *United States v. Pratt*, 645 F.2d 89, 91 (1st Cir. 1981) (listing cases involving appellate delays of two and three years). Here, the government's trial misconduct has caused such a pronounced delay that further proceedings would violate those "'fundamental conceptions of justice which lie at the base of our civil and political institutions,' and which define 'the community's sense of fair play and decency.'" *Lovasco*, 431 U.S. at 790. Indeed, in addition to the Sixth Amendment prejudice detailed in the preceding section, in adjudging the prejudice under the Fifth Amendment, the Court should also consider all of the delay occasioned between the conduct at issue (August to December 2000, as charged, *see* Dkt. 377 at p.4), discovery of the conduct at issue (January 2001) and the government's return of the indictment three years later (February 2004). Hence, for all of these reasons, Mr. Carpenter respectfully submits that further proceedings would violate Mr. Carpenter's Fifth Amendment right to due process of law. *See Harris v. Champion*,

15 F.3d 1538, 1558 (10th Cir. 1994) (protection against unreasonable delay in the appellate process is provided by the Due Process Clause).

**IV.**     **Conclusion**.

For all of the foregoing reasons, Mr. Carpenter respectfully requests that the Court issue an order dismissing the superseding indictment with prejudice.

Respectfully Submitted,                        Respectfully Submitted,
Daniel E. Carpenter,                           Daniel E. Carpenter,
By His Attorney,                               By His Attorney,


**/s/ Robert M. Goldstein**                    **/s/ Martin G. Weinberg**
Robert M. Goldstein, Esq.                      Martin G. Weinberg, Esq.
Mass. Bar No. 630584                           Mass. Bar No. 51948
20 Park Plaza, Suite 1000                      20 Park Plaza, Suite 1000
Boston, MA 02116                               Boston, MA  02116
 (617) 742-9015                                (617) 227-3700
rmg@goldstein-lawfirm.com                      owlmgw@att.net


Dated: December 30, 2013

**CERTIFICATE OF SERVICE**

I, Robert M. Goldstein, hereby certify that on December 30, 2013, this document has been served, via electronic filing, upon Jack Pirozzolo, Assistant United States Attorney, John Joseph Moakley Federal Courthouse, One Courthouse Way, Suite 9200, Boston, MA, 02210.

**/s/ Robert M. Goldstein**
Robert M. Goldstein