UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-10029-GAO |
| ) | |
| DANIEL E. CARPENTER, ) | |
| ) | |
| Defendant. ) | |
| ) | |

**UNITED STATES' CONSOLIDATED OPPOSITION
TO DEFENDANT'S MOTIONS TO RECONSIDER AND TO DISMISS**

The United States hereby submits this consolidated opposition to Defendant Carpenter's ("defendant" or "Carpenter") two recent motions. In his first motion (Dkt. 404), Carpenter asks the Court to reconsider its earlier denial of Carpenter's motion (Dkt. 312) for a new trial based on a supposed constructive amendment to the Superseding Indictment (the "Indictment"). In his second motion (Dkt. 406), Carpenter seeks to dismiss the Indictment due to a supposed violation of his constitutional right to a speedy trial. For the reasons that the United States discusses in more detail below, the Court should deny both motions.

I.  **THE COURT SHOULD DENY THE DEFENDANT'S MOTION FOR RECONSIDERATON BECAUSE THERE WAS NO CONSTRUCTIVE AMENDMENT TO THE INDICTMENT**

A constructive amendment "occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecution or court after the grand jury has last passed upon them." *United States v. Fisher*, 3 F.3d 456, 462 (1st Cir. 1993) (internal quotations and citations omitted). As the United States has discussed in earlier filings, no such amendment occurred here, for a variety of reasons.

1

First, the Indictment's wire and mail fraud counts were framed in the language of the governing statutes and charged Carpenter with having devised a "scheme and artifice to defraud . . . by means of false and fraudulent pretenses, representations, and promises concerning material facts and matters . . . ." *See* Dkt. 34, Indictment ¶¶ 103, 105. The statutory language set forth in the Indictment was not limited to direct false statements – what Carpenter labels "affirmative misrepresentations." It also encompassed half-truths and the knowing concealment of material facts. *See, for example*, First Circuit Pattern Criminal Jury Instructions, Instruction No. 4.12 & 4.13 (1998) (The term "false or fraudulent pretenses" includes "actual, direct false statements as well as half-truths and the knowing concealment of facts.").

Second, in addition to its recitation of the general statutory language, the Indictment made clear, through detailed factual allegations, the full scope of the false and deceptive conduct with which Carpenter was charged. Among other things, the Indictment alleged that the exchange documentation and promotional materials utilized by Benistar Property Exchange (BPE) contained material, false assurances and representations concerning the manner in which client funds would be treated and held. *See* Dkt. 34 at ¶¶ 17-24, 27-28. The Indictment further alleged that Carpenter failed to notify clients, or direct other BPE personnel to notify clients, that he was, in fact, using their funds to engage in high risk, speculative options trading, and sustaining heavy losses. *See* Dkt. 34 at ¶ 41 (Carpenter "did not notify or direct BPE personnel to notify current or prospective clients that he was using client funds [to engage in high risk, speculative options trading]"); Dkt. 34 at ¶ 31 (failure to disclose existence of Merrill Lynch trading account to clients); Dkt. 34 at ¶ 46 ("Carpenter did not disclose the existence of the [PaineWebber trading account] to BPE's clients"]); Dkt. 34 at ¶ 49 (failure to disclose to clients that he was using client funds to engage in options trading or that he was sustaining substantial losses); Dkt. 34 at ¶ 101

(same).  The foregoing allegations made plain that the fraudulent scheme charged in the indictment encompassed what the clients were told and also what they were not told regarding the manner in which their funds would be treated and held.[1]

Third, these allegations were not amended or altered, by either the United States or the Court, at trial in 2008. The United States focused on those allegations in its opening (Tr. 2:74, 82-83) and in its closing.  *See* Tr. 13:42, 50, 53, 55, 64, 69-70. The Court's jury instructions tracked them as well.  *See* Tr. 13:32 (stating that the term "false or fraudulent pretenses, representations or promises" "may encompass direct statements that are false in their entirety as well as statements of half-truths that are misleading because of what they omit.").  Indeed, Carpenter (who raised multiple objections on multiple grounds) *did not even object* to the Court's instruction that the jury could convict based on what Carpenter did not say to the exchangors.  *See* Tr. 13:140 ("Your Honor, I am content with the charge.").

Furthermore, the evidence introduced at trial was fully consistent with the charges in the Indictment and the Court's jury instructions.  The United States introduced exhibits establishing each of the document-based representations and assurances charged in the Indictment.  *See, for example*, Gov. Exs. 1-13.  The documents given to the exchangors nowhere mention that BPE would be placing the money subject to the escrow agreements in stock options.  In addition, exchangors (or their representatives) testified that they were not informed that their funds would be used to trade in stock options.  *See, for example,* Tr. 3:90 (cross-examination of E.S.) ("Q: And you didn't anticipate that [BPE's discretion to invest the funds] would be securities. A: No"); Tr. 3:95 (redirect examination of E.S.) ("Q: Did it enter your mind [] that your money would be taken

---

[1]  This is something that the United States has pointed out in previous filings in this case. *See, for example*, Dkt. 174 at 17-19; Dkt. 175 at 1-4.

by Benistar and traded in stock options? A. That would be about the furthest thing from my mind that I can think of."); Tr. 3:122 (direct examination of B.D.) ("I was never told that [B.D.'s money] would be used to trade stock options."); Tr. 12:85 (D.P.) ("Q: Did anybody, Jerry Levine, Daniel Carpenter, anybody, tell you that your client's money would be invested in stock options? [Objection overruled] A: Absolutely not.").   On this record, the Court should again reject Carpenter's assertion that he had no notice he was being charged with a scheme to defraud that encompassed both express misrepresentations and the failure to provide complete, truthful information.

In addition, contrary to what Carpenter claims in his current motion for reconsideration (Motion at 2), no "new evidence" has come to light that undermines the Court's original ruling that rejected Carpenter's claims that there was a "constructive amendment" to the Indictment. Carpenter's current motion for reconsideration repeats, nearly word for word, previous filings he made in 2005 following the first trial and the constructive amendment filing he made after the second trial. *See* Dkt. 158 at 38-43; Dkt. 160 at 7-10; Dkt. 312 at 12-15.   The only "new evidence" Carpenter points to in his current motion is not even fairly characterized in this context as "evidence."   The supposed "new evidence" is a collection of statements in the United States' briefing before the First Circuit and the First Circuit's recent opinion reversing the Court's grant of a new trial.   *See* Motion at 7-10.   Those statements are not "evidence" and they are far from "newly discovered."   Those statements are fully consistent with what the United States has alleged, and now proven, at two separate trials: that Carpenter's fraud consisted of what he knew *was and was not* told to the exchangors.

For similar reasons, the Court should also reject Carpenter's alternative argument that the Court now grant a new trial because of a "prejudicial variance" between indictment and proof.

*See* Motion at 15.   As is the case with his constructive amendment argument, Carpenter's claim here rests on the assertion that the United States engaged in a "shift of its theory of criminality to include one predicated on omissions, against which Carpenter had no notice that he should be prepared to defend."   *See* Motion at 15.   The record here does not support Carpenter's argument.  As discussed above, the theory of prosecution in this case and the allegations detailed in the Indictment charged Carpenter with a scheme to defraud in which the fraud consisted both of what the exchangers were told and what they were not told.   It is simply not correct for Carpenter to assert, as he does now, that he had "no notice that . . . he would also be required to defend at the second trial against fraud charges based on his omissions to disclose his trading strategy and history."   *See* Motion at 16.   As noted above, the Indictment alleged in describing the scheme to defraud that Carpenter "did not notify or direct BPE personnel to notify current or prospective clients that he was using client funds [to engage in high risk, speculative options trading]."   *See* Dkt. 34 at ¶ 41; *see also* Dkt. 34 at ¶¶ 31, 46, 49 and 101.

In short, the fundamental, and incorrect, assumption underlying Carpenter's argument here is that the Indictment somehow did not allege that Carpenter's fraudulent conduct included his failure to disclose to the exchangors what he was actually doing with their money.   Yet, as set forth above, the Indictment does allege in various places and in various ways that Carpenter's failure to disclose what he was actually doing with the money was part of the charges against him.  The Court has now twice considered and rejected this argument.   It also articulated its reasoning for rejecting this argument in its first opinion in this case:

> [T]he fraudulent scheme alleged in the indictment included the "omission" to clarify the half-truths that the defendant directed toward the exchangors. The theory is well within the scope of the indictment, and proof of such "omissions" was neither a variance nor a new theory.   There was no constructive amendment of the indictment.

5

*United States v. Carpenter*, 405 F.Supp.2d 85, 92 (D. Mass. 2005).   That logic applies here.   The Court should not revisit its rejection of Carpenter's constructive amendment and variance claim and, accordingly, it should deny Carpenter's motion for reconsideration.

**II. THE COURT SHOULD DENY CARPENTER'S CLAIM THAT HE HAS SUFFERED A VIOLATION OF HIS CONSTITUTIONAL RIGHT TO A SPEEDY TRIAL**

Carpenter has also moved for dismissal of this case on the ground that he has been deprived of his constitutional right to a speedy trial.   *See* Dkt. 406.   In his memorandum in support of the motion ("Memorandum"), Carpenter primarily focusses his request for dismissal on the Sixth Amendment speedy trial clause, but he also adds a Fifth Amendment due process claim.   *See* Dkt. 407.   The Court should reject Carpenter's motion.   As discussed in more detail below, Carpenter cannot establish a violation of his constitutional right to a speedy trial.

**A.   Carpenter's Sixth Amendment Claim**

**1.   The relevant legal standard.**

As Carpenter correctly points out in his Memorandum, courts employ a four part balancing test to assess whether a defendant has suffered a violation of his Sixth Amendment right to a speedy trial.   *See Barker v. Wingo*, 407 U.S. 514 (1972).   *Barker* requires a weighing of (1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant resulting from the delay.   *Id.* at 530; *see also United States v. Dowdell*, 595 F.3d 50, 60 (1st Cir. 2010) (discussing the legal standard).   "None of the four factors is either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant."   *United States v. Trueber*, 238 F.3d 79, 87 (1st Cir. 2001) (internal quotation

marks omitted). Considering these factors together, Carpenter's claim falls well short of establishing a violation. More particularly, he cannot establish on this record that at least three of the four factors – (1) the length of delay, (2) the reasons for the delay and (4) prejudice to the defendant – weigh in his favor. In fact, as discussed in more detail below, those three factors weigh against him.

### a. The length of delay.

This factor is essentially a "threshold inquiry" in which a delay of a certain duration triggers an analysis of the additional three factors. *See Dowdell*, 595 F.3d at 60. In the First Circuit, the delay deemed sufficient to trigger a weighing of the other three factors is about one year. *Id.* at 61. In his Memorandum, Carpenter's focuses on the entire duration of the litigation, from arraignment to the present, which totals nearly ten years. *See* Memorandum at 9.

While ten years is longer than the one year generally recognized as sufficient to trigger the inquiry, there is considerable question here as to whether Carpenter's reliance here on a ten-year period is appropriate for purposes of this analysis. The ten-year period Carpenter has chosen as the basis for his motion assumes that the Sixth Amendment right to a speedy trial applies to sentencing. The Circuits, however, are split on that issue. The Third, Fifth, Tenth and Eleventh, for example, have said the speedy trial clause applies to sentencing.[2] The Second Circuit has held that it does not. *See United States v. Ray*, 578 F.3d 184, 190-199 (2d Cir. 2009). The First Circuit does not appear to have decided the issue. *See United States v. Nelson-Rodriguez*, 319 F.3d 12, 60 (1st Cir. 2003) (assuming, but not deciding, that it applies). In *Ray*, the Second Circuit

---

[2] *See Burkett v. Cunningham,* 826 F.2d 1208, 1220 (3d Cir. 1987); *United States v. Campbell*, 531 F.2d 1333, 1335 (1976); *United States v. Yehling*, 456 F.3d 1236, 1243 (10th Cir. 2006); *United States v. Miter*, 446 Fed.Appx. 244 (11th Cir. 2011). Carpenter cites additional cases in his memorandum, and notes that the Sixth Circuit might be counted among this group. *See* Memorandum at 6-7 & n.3.

concluded that the right to a speedy sentencing is not properly framed as a Sixth Amendment right at all. Canvassing a variety of sources, including relevant Supreme Court precedent that other circuits had not considered as carefully, the Second Circuit concluded that the right to a speedy trial governs "the timing of trials" and not sentencing. *See Ray*, 578 F.3d at 199. Instead, it held, the right to a speedy sentencing exists as a component of the Fifth Amendment Due Process Clause. *Id.*

Should the Court apply *Ray* here, it need not proceed further in determining whether Carpenter has suffered a Sixth Amendment violation. Carpenter's current motion to dismiss and the entire analysis set forth in the Memorandum is premised on a period of time that includes the period following his 2008 trial up to the as-yet-to-be-scheduled sentencing date. And, yes, while the time period from 2004 to 2008 is greater than one year, so far as the United States can tell, the current motion and Memorandum do not argue for dismissal based on any the period of time that does *not* include the period from his 2008 trial to the present. Given that, under *Ray*, the post-trial and pre-sentencing time period is irrelevant under the Sixth Amendment and Carpenter's analysis in his current motion inextricably depends on that time period being included, the Court should deny Carpenter's Sixth Amendment claim without engaging in balancing any of the other three factors.

### b. The reasons for the delay.

This factor is the most significant of the four factors under *Barker*. The Supreme Court has described it as the "flag all litigants seek to capture." *United States v. Loud Hawk*, 474 U.S. 302, 315 (1986). The First Circuit has described it as the "focal inquiry." *Trueber*, 238 F.3d at 88 (*quoting United States v. Munoz-Amado*, 182 F.3d 57, 62 (1st Cir. 1999)). Although Carpenter would have this Court think otherwise, this factor weighs heavily against Carpenter.

As best the United States can tell from Carpenter's analysis, the ten-year period divides into essentially four time frames: (1) the time period from indictment until the first trial; (2) the time period from the first trial, through the first interlocutory appeal, up until the second trial; (3) the roughly three year period that post-trial motions were pending before the Court following the second trial; and (4) the period of time from the second interlocutory appeal through the present. The first of these four periods is largely irrelevant to this factor. Carpenter makes no claim here, nor could here, that the time it took to get through the first few years of this matter was unreasonably lengthy or were due to government negligence or misconduct.[3] Accordingly, the United States focuses here on the other three time frames.

Of the remaining three time-frames, two of them -- (2) and (4) -- are periods of delay that are, for the most part, attributable to the United States' two interlocutory appeals in this matter. The Supreme Court has made clear that these periods of time are valid reasons for delay. "Given the important public interests in appellate review . . . it hardly need be said that an interlocutory appeal by the Government is a valid reason that justifies delay." *Loud Hawk*, 474 U.S. at 315; *see also Trueber*, 238 F.3d at 89. Although a delay for a government interlocutory appeal would not be justified is if it were "clearly tangential or frivolous," *Loud Hawk*, 474 U.S. at 316, neither appeal was tangential or frivolous.

Both appeals arose after the Court granted a motion for a new trial. Obviously an order vacating a jury verdict and ordering a new trial goes to the core of the prosecution and is in no way "tangential." The two appeals were not "frivolous" either. The first appeal, although not a

---

[3] Whatever undue delay that may have occurred during that time was attributable to Carpenter's aggressive filing of motions and his change of lawyers. Indeed, Carpenter requested delays in his trial date on a number of occasions. *See, for example,* Dkt. 5/17/2005 Electronic Order (discussing multiple continuances sought by Carpenter); Dkt. 101 (request for continuance).

successful one for the government, raised significant issues about the plain error standard, and it resulted in three separate opinions from the First Circuit panel, one of which was a dissent. *See United States v. Carpenter*, 494 F.3d 13 (1st Cir. 2007).[4]  The second appeal resulted in the reversal of the Court's new trial order and directed this Court to sentence Carpenter promptly. *See United States v. Carpenter*, 736 F.3d 619 (1st Cir. 2013).   Carpenter somehow suggests that, even now, after the reversal, the appeal was frivolous because, in his view, the case was not "sufficiently serious to justify the delay occasioned by not one appeal, but two government appeals."  Memorandum at 12.  Carpenter's position on this is untenable.  Carpenter committed a multi-million dollar fraud.  The conduct was extraordinarily serious and well warranted the second appeal.[5]

The reasons for the delay during the third of the four time frames -- namely, the three years between the 2008 trial and the Court's decision on the post-trial motions -- do not weigh against the United States.  Nothing the United States did during that time frame, other than oppose Carpenter's various motions, contributed to that delay.  If anything, delay attributable to motions filed by the defendant is held against the defendant, not the government.  "When a party makes motions, it cannot use the delay caused by those motions as a basis for a speedy-trial claim." *United States v. Young*, 657 F.3d 408, 415 (6th Cir. 2011).   Not including assented-to motions

---

[4] The First Circuit has recognized that a government interlocutory appeal is justified under the Sixth Amendment even if the appeal is denied where the issues raised are difficult or complex. *See United States v. Munoz-Franco*, 487 F.3d 25, 60 (1st Cir. 2007) (denial of mandamus petition not held against the government due to the complexity of the case and events related to a recusal).

[5] Carpenter also himself bears responsibility for expending appellate resources, and causing delay, by filing his own separate appeal following the Court's September 2011 decision. *See Loud Hawk*, 474 U.S. at 314-15 and 316 ("[a] defendant who resorts to an interlocutory appeal normally should not be able upon return to the district court to reap the reward of dismissal for failure to receive a speedy trial").  The First Circuit ordered Carpenter's appeal dismissed. *See* May 5, 2013 Order, *United States v. Carpenter*, USCA, First Circuit, 11-2131 & 11-2133 (dismissing Carpenter's appeal).

regarding scheduling and brief size, the Court had before it numerous motions Carpenter had filed -- often accompanied by lengthy memoranda, supplemental memoranda, replies and sur-replies. They include, among others:

| Dkt. No. | Description |
|----------|-------------|
| 283 | Motion for Declaration of Mistrial |
| 308 | Motion for Acquittal and in the Alternative a New Trial |
| 311 | Supplemental Motion for Acquittal |
| 312 | Supplemental Motion for New Trial |
| 324 | Motion for New Trial Based on Newly Discovered Evidence Involving the Federal Trade Commission |
| 333 | Motion for New Trial based on Newly Discovered Evidence Regarding Iantosca's "Unavailability." |
| 343 | Emergency Motion for Release of Brady Materials and Leave to Subpoenas Duces Tecum to Merrill Lynch and Its Attorneys |
| 344 | Supplemental Motion for Release of Brady Materials and Leave to Serve Subpoenas Duces Tecum on Merrill Lynch and Its Attorneys |

Carpenter also filed lengthy memoranda unaccompanied by specific motions purporting to provide information to the Court on "post-trial developments." *See, for example*, Dkt. 349, 350, 373, 374. Having filed multiple motions and other pleadings during the three years, Carpenter should not be able to exploit delay resulting from those motions to allege a violation of his right to speedy trial under the Sixth Amendment.

11

### c. Defendant's assertions of his right.

Carpenter's three speedy trial motions are a matter of record. Dkt. 79, 229, and 387. Two of them (Dkt. 79 and 229) claimed violations of the Speedy Trial Act. The third (Dkt. 387) Carpenter filed with this Court when it did not have jurisdiction to decide the issue. So far as the United States can see, not one of the motions asked the Court to accelerate the trial date or sentencing date. Indeed, each filing is more accurately characterized as one of several tactical filings Carpenter made during the pendency of this case in an effort to dispose of the litigation. *See United States v. Colombo*, 852 F.2d 19, 26 (1st Cir. 1988) (in denying speedy trial claim the court noted in weighing this factor that the record showed that the defendant did not want a speedy trial until the right became a possible means of dismissing the charges against them); *cf. also Loud Hawk,* 474 U.S. at 314-15 (assertion of right must be viewed in light of other conduct, like filing repetitive motions and frivolous petitions). While it is entirely understandable for Carpenter to employ whatever tactical or legal arguments that might be available to him to avoid the consequences of his conduct, it is not reasonable to treat those arguments as genuine efforts to accelerate the trial or sentencing in this matter.

Furthermore, if we are to focus on his current motion -- the delay in Carpenter's sentencing following his second trial -- Carpenter did not file a speedy trial motion during the three year time period that the post-trial motions were under advisement by this Court following his second trial. In fact, although Carpenter has filed multiple motions during the course of this matter, Carpenter has not sought to accelerate his sentencing date. If anything, Carpenter has been seeking to delay it. As recently as January 10, 2014, in response to the United States' request for a mutually agreeable sentencing date, counsel for Carpenter declined to provide a date and took the position that *no* such sentencing should occur until *after* his December 30, 2013 motions were heard and

until *after* probation completed an updated supplemental probation report. In short, to the extent this factor weighs in Carpenter's favor at all, it does so only by the slightest of margins.

### d.   Prejudice to the defendant resulting from the delay.

This last factor -- prejudice to the defendant -- must be assessed in light of the interests of defendants that the speedy trial clause was designed to protect. *See Barker*, 407 U.S. at 532. As Carpenter points out, the Supreme Court has identified three such interests: (1) to prevent oppressive pretrial incarceration; (2) to minimize anxiety and concern of the accused; and (3) to limit the possibility that the defense will be impaired. *Id.* These three interests do not have equal weight in the analysis. The first and third interests carry greater weight in this analysis than the second, and the third interest carries the most weight "because the inability of a defendant adequately to prepare his case skews the fairness of the entire system." *Id.*; *see also United States v. Santiago-Becerril*, 130 F.3d 11, 23 (1st Cir. 1997) (describing this factor), *abrogated on other grounds, United States v. Barnes*, 251 F.3d 251, 258 (1st Cir. 2001). In addition, because Carpenter is raising his constitutional claim in a post-conviction setting, he faces an extremely heavy burden in showing prejudice. *See Perez v. Sullivan,* 793 F.2d 249, 257 (10th Cir. 1986) (discussing the difficulty a defendant faces in a post-conviction posture in showing prejudice, where many of the relevant interests and concerns of delay "disappear altogether once there has been a conviction").

The first interest, pretrial incarceration, is not implicated here because Carpenter was not incarcerated during the pendency of this case. The third interest, limiting the possibility that the defense will be impaired, also is not implicated. Tellingly, Carpenter totally ignores this most important of considerations in his discussion of prejudice. Of course, this may be for good reason: he has little basis to show harm. His claim here is that his sentencing has been unduly

delayed, but he provides nothing to show that his ability to advocate for a particular sentence has been impaired in any way, or at least in any way that would permit him to make out a speedy trial clause violation.[6] If anything, it is the United States, not the defendant, that has suffered prejudice, since some of the witnesses, including victims of Carpenter's fraud, have died during the pendency of this case.

In the end, Carpenter's sole claim of prejudice rests on the second interest: minimizing his anxiety. The First Circuit does not weigh this consideration heavily. *See, for example, Santiago-Becerril*, 130 F.3d at 23 ("In respect to [the defendant's] anxiety and concern in awaiting trial, we do not weigh this heavily, especially where [the defendant] took no early action to expedite his trial [by, among other things, demanding an earlier trial]."). Furthermore, this consideration is due even less weight in the context of Carpenter's claim that the sentencing has been unduly delayed. *See, for example, Perez*, 793 F.2d at 257 (the anxiety of the accused is not to be equated for constitutional purposes with the anxiety of a person who stands convicted and is waiting to know how long the sentence will be).

The examples of his ongoing anxiety Carpenter lists in his Memorandum do not rise to the level required to have this factor weigh in his favor given the total absence of either of the two far

---

[6] According to federal charges recently unsealed in the District of Connecticut, Carpenter allegedly engaged in an insurance fraud scheme during the years 2006 through 2013. *United States v. Daniel Carpenter et al.*, Cr. No. 3:13CR226 (RNC) (D.Ct. Dec. 12, 2013). Also during the pendency of this case, as a district court in the Southern District of New York recently found, Carpenter, operating through various corporate entities, wrongfully refused to account for the whereabouts of proceeds of a $30 million insurance award due a client of which at least $1.1 million Carpenter and his wife wrongfully used to purchase a vacation home in Rhode Island. *See Universitas Education, LLC v. Nova Group et al.*, 11 Civ. 1590 (LTS) (HBP) & 11 Civ. 8726 (LTS) (HBP) (Dkt. No. 340 (11-1590), Memorandum Opinion and Order, November 20, 2013). In that opinion, the district court not only found that the "badges of fraud are manifold" (Opinion at 16) but that Carpenter, after initially pleading the Fifth Amendment during the litigation, presented "fabricated defenses" to the court. (Opinion at 4 & n.1). Earlier today, that same court issued a preliminary injunction against Carpenter in which, among other things, it enjoined him from directly or indirectly transferring assets in excess of $20,000 per month. *See id.* 11(Dkt. No. 252 (11-8726), Memorandum Opinion and Order, January 13, 2013). While these events may well affect Carpenter's ability to defend his sentence here, they are not events he ought to be able to use to assert that the delay impaired his ability to mitigate his sentence.

more important considerations of prejudice.   In evaluating this factor, the standard is minimization, not elimination, of the natural consequences of an indictment or, in this case, a conviction.   The United States has been unable to find any cases, and Carpenter supplies none, stating that a defendant's decision to step away from coaching a girls soccer team or the renaming of a soccer field qualify as the type of consequences that should be given any substantial weight in this context.   Some of Carpenter's other claimed consequences of his "anxiety" from the delay -- his loss of bar and other professional licenses -- are not even properly attributable to pre-trial or post-trial delay.   They are consequences of his conduct.   More fundamentally for purposes of his current motion, none of Carpenter's listed collateral consequences of the ongoing case are consequences of any delay in his *sentencing*.

### B.   The Fifth Amendment Due Process Claim

To show a violation of the Fifth Amendment due process right to a prompt sentencing, a defendant must establish an unjustified reason for the delay and prejudice.   *See Ray*, 578 F.3d at 199.   Carpenter cannot show either (1) an unjustified reason for the delay or (2) prejudice.   As discussed above in connection with Carpenter's Sixth Amendment claim, the reason for the current delay in Carpenter's sentencing (at least up to the date the mandate issued and returned jurisdiction to this Court on December 30, 2013) is the United States' successful appeal of this Court's order granting a new trial.   Such a delay was entirely justified to allow the United States to vindicate the public's interest in appellate review.[7]

As to prejudice, Carpenter cannot show -- nor does he even attempt to show -- how his ability to defend his sentencing has been impaired by the delay. In contrast to the defendant in *Ray*,

---

[7] Carpenter also asks the Court to take into account in his claim of a due process violation, the period of time (August 2000 through December 2000) in which he was committing the fraud for which he now stands convicted.   That position is not reasonable.

for example, Carpenter does not discuss in any way how the delay might have undermined his rehabilitation. *See, e.g., Ray*, 578 F.3d at 201 (discussing defendant's rehabilitation during a 15-year delay in sentencing following guilty plea). Rather, in discussing the alleged prejudice he has suffered, Carpenter refers to his discussion of prejudice in connection with his Sixth Amendment claim. *See* Memorandum at 19. Yet Carpenter's argument in that context relies entirely on the "anxiety" he has felt while the case has been pending. Carpenter does not articulate how the delay he points to in any way might have compromised his ability to defend the sentencing in this case or otherwise undermined his "rehabilitation." In fact, instead of using the time during which this case has been pending to rehabilitate himself, Carpenter currently stands indicted in the District of Connecticut for a fraud scheme he is alleged to have committed while on pretrial release in this matter. *See*, *supra*, at 14-15 & n.6. Carpenter has also been adjudged in a civil case in New York not only to have committed acts of fraud in connection with the handling of life insurance proceeds, but also of presenting a fabricated defense to that court. *See*, *supra*, at 14-15 & n.6. On this record, Carpenter's need for rehabilitation appears to be as acute as ever. A sentence in this case, at this time, will hardly undermine his rehabilitation.

**CONCLUSION**

For all of these reasons, the Court should deny Carpenter's Motion for Reconsideration (Dkt. 404) and his Motion to Dismiss (Dkt. 406).

                                          Respectfully submitted,

                                          CARMEN M. ORTIZ
                                          United States Attorney

                                          By:
                                          **/s/ Jack W. Pirozzolo**
                                          JACK W. PIROZZOLO
                                          First Assistant U.S. Attorney
                                          U.S. Attorney's Office
                                          U.S. Courthouse, Suite 9200
                                          1 Courthouse Way
                                          Boston, MA 02210
                                          617-748-3189

Date: January 13, 2014

**CERTIFICATE OF SERVICE**

      I, Jack W. Pirozzolo, hereby certify that on January 13, 2014 I served a copy of the foregoing on counsel for the defendant via electronic filing.

                                         **/s/ Jack W. Pirozzolo**
                                           Jack W. Pirozzolo