UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

|  |  |
|---|---|
| UNITED STATES OF AMERICA | ) |
|  | ) |
| v. | ) |
|  | ) |
| DANIEL E. CARPENTER | ) |

_____)

CRIMINAL NO. 04-10029-GAO

**Carpenter's Reply to Government Opposition to Motion to Dismiss Indictment
for Violation of Constitutional Right to Speedy Trial**

First, the Court should reject the government's reliance upon *United States v. Ray*, 578

F.3d 184, 190-199 (2d Cir. 2009), which argues that a consideration of all *Barker* factors is not

warranted because sentencing proceedings are outside the ambit of the Sixth Amendment's

guarantee of a speedy trial.  As conceded by the government, the Second Circuit is the only

circuit to hold that the Sixth Amendment right to a speedy trial does not encompass sentencing.

It appears that five circuits other than the First Circuit have concluded otherwise, and both the

Supreme Court and the First Circuit have assumed it applies to sentencing.[1]  *See Pollard v.*

*United States,* 352 U.S. 354, 361 (1957) (assuming arguendo that sentencing is part of trial for

purposes of Sixth Amendment speedy trial right); *United States v. Nelson-Rodriguez*, 319 F.3d

12, 60 (1st Cir. 2003) (assuming that the right to a speedy trial extends to sentencing).

Second, even should the Court adopt the minority view espoused in *Ray*, there has still

been more than sufficient delay to trigger a full Due Process inquiry, as well as what the

defendant contends is the mandated *Barker* analysis—*i.e.*, there has been significant pretrial

_____

[1] As noted in Carpenter's original motion, the Fifth, Tenth and Eleventh Circuits have
unquestionably recognized the right to speedy sentencing.  The D.C. Circuit counts the Sixth
Circuit as having so held, *see United States v. Gibson*, 353 F.3d 21, 27 (D.C.Cir.2003), and the
First Circuit has identified the D.C. Circuit as having held the Speedy Trial right applies to
sentencing. *See Nelson-Rodriguez*, 319 F.3d at 60 (*citing United States v. Yelverton*, 197 F.3d
531, 535-39 (D.C.Cir.1999).

delay.[2]   Despite the government's argument to the contrary, Mr. Carpenter's motion does not

"inextricably depend[]" upon the period of time that post-dates the second trial. Govt. Opp. at 7.

Carpenter's motion argues that "even if the fifteen months between the original indictment (Feb.

4, 2004) and the jury's first verdict (Jul. 27, 2005) were excluded, there can be no reasonable

dispute that all of the ensuing delay is a direct result of the government's misconduct during the

first trial." Absent the government's misconduct during the first trial, Mr. Carpenter would have

long ago been acquitted or convicted and then sentenced in 2005.   The approximately three-year

delay between the end of the first trial and the beginning of the second trial is more than

sufficient by itself—*i.e.*, without reference to delays consequent to the second trial, to trigger

analysis of all *Barker* factors.[3]   While Mr. Carpenter respectfully submits *Ray* was wrongly

decided, the Second Circuit did acknowledge that undue delay compels dismissal of the case,

*Ray*, 578 F.3d at 191 ("Although the analysis used to identify a speedy-trial violation is flexible,

the remedy is categorical: dismissal of the charges"), and did, under its Due Process analysis,

---

[2]  In *Ray*, after finding the Sixth Amendment speedy trial right did not apply to sentencing, the court proceeded to analyze whether the delay occasioned in that case ran afoul of the Fifth Amendment, holding that in "order to determine whether a defendant has been deprived of her due process right to a prompt sentencing," the court "'must consider [1] the reasons for the delay as well as [2] the prejudice to the accused.'" *Ray*, 578 F.3d at 199, *quoting United States v. Lovasco*, 431 U.S. 783, 790 (1977).  Under that test, the Second Circuit held, "a defendant must show both prejudice and an unjustified reason for the delay in order to prove a due process violation." *Ray*, 578 F.3d at 199.  Here, for all the reasons discussed herein, as well as within his original pleadings, Mr. Carpenter respectfully submits dismissal is warranted under this test as well, pursuant to the Fifth Amendment.

[3] The government argues that the time from indictment to the first trial should be discounted because the government did not delay the first trial.  Govt. Opp. at 9. However, because of the government's misconduct during the first trial all of that time was wasted.  Thus, this time period should be considered in terms of the length of delay as well.

vacate the remainder of a defendant's unconstitutionally imposed sentence.[4]

Second, the Court should not disregard or discount the period of time consumed by the government's first appeal in assessing the "reasons for delay." The government argues that its first appeal was not "frivolous," asserting that it raised important issues regarding plain error and resulted in three opinions, including a dissent, and hence that time period should not be held against the government in the Court's analysis. Govt. Opp. at 9-10. The government fails to note that none of the three opinions in *Carpenter I* endorsed or condoned the government's trial misconduct, not even remotely. As Carpenter noted in his motion, in a concurring opinion, Judge Lynch wrote that the grant of a new trial "does not even approach being an abuse of discretion." *Carpenter*, 494 F.3d at 29. Thus, in assessing the reasons for delay, the Court should not discount the period of time consumed by the government's first appeal. Moreover, the test should not be reliant on proof of bad faith by the government, either in its conduct in the first trial or in its decision to seek an interlocutory appeal. *See e.g., United States v. Loud Hawk*, 474 U.S. 302, 325 (1986) (Marshall, J., dissenting) ("Because it is the Government as a whole-including the courts-that bears the responsibility to provide a speedy trial, the prosecutor's good faith cannot suffice to discharge that responsibility").

Third, the Court should reject the government attempts to minimize the prejudice suffered by Mr. Carpenter, as well as its suggestion that the First Circuit "does not weigh this consideration heavily." Govt. Opp. at 14. That simply is not accurate. In *United States v. Santiago-Becerril*, 130 F.3d 11, 23 (1st Cir.1997), relied upon by the government, the Court said it would not weigh the defendant's anxiety and concern in that case heavily, "especially where [the defendant] took no early action to expedite his trial…." In *Santiago-Becerril*, the defendant

---

[4] Ray had been sentenced to one day in jail and three years of supervised release (with six months to serve in a halfway house). *Ray*, 578 F.3d at 186.

was arrested in October 2004, and his trial began January 23, 2006, approximately fifteen
months later. *Santiago-Becerril*, 130 F.3d at 14-15. The anxiety suffered during those 15
months is not even remotely comparable to the factual circumstances here, where Mr. Carpenter
was convicted at the first trial, the court rightfully determined those convictions were fatally
tainted by improper argument, and Mr. Carpenter was forced to withstand a first appeal, which
affirmed the Court's new trial order. Then, after the second trial, Mr. Carpenter endured a three-
year period during which the Court was again forced to confront claims of improper government
closing arguments, and his legal status remained in limbo. During the 10 year period Mr.
Carpenter has been under a criminal accusation, as a business person and community leader, the
continued assault on his reputation and implicitly that of his family can, like the 15 year delay in
*Ray*, be deemed "extraordinary," whether under a Due Process or Sixth Amendment analysis.

Moreover, importantly, unlike the defendant in *Santiago-Becerril*, Mr. Carpenter has
repeatedly complained about the anxiety, prejudice and damage inflicted upon him in pressing
the Court to resolve his pending motions. *Cf. Santiago-Becerril*, 130 F.3d at 23 ("In respect to
Santiago's anxiety and concern in awaiting trial, we do not weigh this heavily, especially where
Santiago took no early action to expedite his trial, either by demanding an earlier trial or by
seeking a severance from the minor codefendants"). On January 6, 2011, the same day Mr.
Goldstein re-entered his appearance in this matter, Mr. Carpenter brought new authority to the
Court's attention, emphasized the anguish and damage wrought upon Carpenter and his family
by the prosecution, and asked the Court, *inter alia*, to grant his pending motions. Dkt. 373 ("Mr.
Carpenter cannot possibly overstate the damage that has been done to him and his family over
the course of the past ten years spent defending unfounded criminal accusations levied against
him in this matter "). On July 14, 2011, Mr. Carpenter requested a status conference, noting that

4

the jury returned its verdict on June 18, 2008, the Court heard argument on pending motions in December 2008, that it had "been three long years since the conclusion of the second trial in this matter, every day of which is alone punishment," that it had "been more than seven (7) years since indictments were returned in this matter," that the "emotional and psychological cost imposed upon a citizen charged with federal crimes is incalculable, even in the ordinary case," and that this "matter has consumed the past decade of Mr. Carpenter's life." Dkt. 375. Mr. Carpenter has suffered intense public obloquy, and the allegations lodged in the instant prosecution are repeatedly used against him by civil litigants. While the government argues Mr. Carpenter did not file a speedy trial motion during this three-year period, Govt. Opp. at 12, Mr. Carpenter did seek action by the Court and did complain regarding the agony of delay. *See Santiago-Becerril*, 130 F.3d at 23 ("The third factor, the defendant's assertion of his speedy trial right, 'is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right'") (*quoting Barker*, 407 U.S. at 531-32).

The government's inaction stands in stark contrast to Mr. Carpenter's attempts, detailed above, to expedite the resolution of the motions after his second trial. The government argues it did nothing during that time period to cause delay, *see* Govt. Opp. at 10, but that is not the proper focus. To the contrary, it is the government's stark and complete and ongoing failure to do something to attempt to expedite the process during the more than five year period between the end of the second trial and their most recent filing on January 13, 2014, Dkt 411, that is central to the resolution of Mr. Carpenter's speedy trial motion. It is not the defendant's duty, nor that of his attorney, to see that he is speedily prosecuted and sentenced. *See Barker*, 407 U.S. at 527 ("A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process"). Indeed, even the Second Circuit in *Ray*

held, in joining a multitude of other circuits, that "a defendant does not bear the burden of

seeking her own sentencing," a position the government did not contest in that matter. *Ray*, 578

F.3d at 190-91 (discussing Sixth and Ninth Circuit positions as well), *citing United States v.*

*Sanders*, 452 F.3d 572, 581 (6th Cir.2006) ("defendant does not have a duty to petition the court

for resentencing; the onus falls on the government"); *United States v. Martinez*, 837 F.2d 861,

866 (9th Cir.1988) ("just as a defendant has no duty to bring himself to trial, he has no

affirmative duty to aid in the execution of his sentence").   The three-year period of time post-

dating the second trial through the decisions on the motions  lie squarely at the government's

feet, as does the government silence while their interlocutory appeal remained undecided for

more than two additional years.  *Cf.* Govt. Opp. at 10.   During the pendency of the government's

second appeal, it was Mr. Carpenter alone who pressed the First Circuit to expedite his appeal.

*See, e.g., United States v. Carpenter,* First Circuit Case No. 11-2133, Dkt. Entries Dated July 3, 2012

(Letter Requesting Status) and November 21, 2012 (same); *United States v. Carpenter*, First Circuit Case

No. 11-2131, Dkt. Entry Dated May 22, 2012 (Motion to Remand).  All the while, the government

made no attempts to expedite the appellate process, despite its statutory mandate to diligently

pursue its appeal, *see* 18 U.S.C. §3731 (government appeal "shall be diligently prosecuted").   In

contrast to this history of government inaction between 2008 and its January 13, 2014 Motion to

Set a Sentencing Date, it was the defendant/appellee who alone sought judicial action both

before this Honorable Court and then the Court of Appeals.[5]

---

[5] The government somehow suggests that the defendant's position on its Motion to Set a
Sentencing Date is inconsistent with his Speedy Trial motion, however, there is no inconsistency
between contending that sentencing should occur after Probation completes its investigation
(which Probation Officer Tricia Marcy assured counsel would occur on any date set by this
Court at its status conference set for January 28, 2014, given that the re-interview of Carpenter
has already occurred) and after the Court rules on pending motions which, notably, include a
motion to preclude re-sentencing on the grounds of past violations of the Fifth and Sixth
Amendment's speedy trial and speedy sentencing imperatives.

Lastly, in terms of prejudice, the Court should reject the government argument that Mr. Carpenter faces an "extremely heavy burden" because, the government contends, he is raising the issue in a "post-conviction setting."  Govt. Opp. at 13.  In *Perez v. Sullivan*, 793 F.2d 249, 257 (10th Cir.1986), relied upon by the government, the defendant argued that the 15-month delay between his guilty plea and sentencing violated his Sixth Amendment speedy trial rights. Here, Mr. Carpenter has suffered needless, prolonged delay while still the beneficiary of the presumption of innocence.  For example, Mr. Carpenter suffered through the entirety of the first appellate period—after the Court had vacated the verdicts wrongfully obtained by improper closing arguments, and hence while still presumed innocent.  There is no added burden imposed upon Mr. Carpenter to establish prejudice here, despite the government's suggestion to the contrary.

Under a traditional Sixth Amendment test dating to his first appearance, the passage of nearly ten years constitutes a Sixth Amendment violation under *Barker*.  Alternatively, if the Court adopts the *Ray* test advanced by the government, the fourteen-year passage from the inception of the government investigation to the present, when combined with the intense prejudice suffered by Carpenter, more than satisfies the Due Process Fifth Amendment test. Wherefore, for all of the foregoing reasons, as well as those raised within his prior pleadings, Mr. Carpenter respectfully requests that the Court issue an order dismissing the superseding indictment with prejudice.

Respectfully Submitted,             Respectfully Submitted,
Daniel E. Carpenter,                Daniel E. Carpenter,
By His Attorney,                    By His Attorney,


**/s/ Robert M. Goldstein**         **/s/ Martin G. Weinberg**
Robert M. Goldstein, Esq.           Martin G. Weinberg, Esq.
Mass. Bar No. 630584                Mass. Bar No. 51948
20 Park Plaza, Suite 1000           20 Park Plaza, Suite 1000
Boston, MA 02116                    Boston, MA  02116
 (617) 742-9015                     (617) 227-3700
rmg@goldstein-lawfirm.com           owlmgw@att.net


Dated: January 20, 2014

**CERTIFICATE OF SERVICE**

I, Martin G. Weinberg, hereby certify that on January 20, 2014, this document has been served, via electronic filing, upon Jack Pirozzolo, Assistant United States Attorney, John Joseph Moakley Federal Courthouse, One Courthouse Way, Suite 9200, Boston, MA, 02210.

**/s/ Martin G. Weinberg**
Martin G. Weinberg