UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 04-10029-GAO

UNITED STATES OF AMERICA

v.

DANIEL E. CARPENTER,
Defendant.

OPINION AND ORDER
February 21, 2014

O'TOOLE, D.J.

　　The defendant was indicted in February 2004 on charges of wire fraud and mail fraud. Two trials have been held, and the defendant was twice convicted by a jury. Following each trial this Court granted the defendant's new trial motion based on improper closing arguments by the government, and the government appealed each new trial order. The first order was upheld. United States v. Carpenter, 494 F.3d 13, 29 (1st Cir. 2007). The First Circuit reversed the second new trial order, reinstated the jury's verdict, and remanded for sentencing. United States v. Carpenter, 736 F.3d 619, 622 (1st Cir. 2013) (see opinion for full procedural and factual background). Currently pending before the Court are the defendant's motions to dismiss for violation of his right to a speedy trial (dkt. no. 406) and for reconsideration of the denial of his prior motion to set aside the verdict new trial motion based on a theory of constructive amendment or material variance of the indictment (dkt. nos. 312 and 404).

**I.　Speedy Trial Rights**

　　The defendant contends that the lapse of ten years between indictment and sentencing violates his constitutional right to a speedy trial. The Sixth Amendment provides that all criminal defendants "shall enjoy the right to a speedy and public trial." U.S. Const. amend. VI. If the

government violates a defendant's right to a speedy trial, the criminal charges must be dismissed. Strunk v. United States, 412 U.S. 434, 439-40 (1973). "The speedy trial guarantee is designed to minimize the possibility of lengthy incarceration prior to trial, to reduce the lesser, but nevertheless substantial, impairment of liberty imposed on an accused while released on bail, and to shorten the disruption of life caused by arrest and the presence of unresolved criminal charges." United States v. MacDonald, 456 U.S. 1, 8 (1982).

The government argues that the Court should follow the Second Circuit's decision in United States v. Ray that the Sixth Amendment right to a speedy trial does not apply to sentencing. 578 F.3d 184, 190-99 (2d Cir. 2009). If Ray is followed, the delay between the second trial and sentencing would be analyzed in light of the Fifth Amendment right to due process. In that event, the defendant would have to show an unjustified reason for the delay and prejudice. Id. at 199. If a due process violation were to be found, the remedy would not be an automatic dismissal; rather the court would "fashion relief that counteracts the prejudice caused by the violation." Id. at 202.

While the First Circuit has not decided the issue directly, it has, like the majority of circuits, assumed that the Sixth Amendment right to a speedy trial does apply to sentencing. See United States v. Nelson-Rodriguez, 319 F.3d 12, 60 (1st Cir. 2003) (collecting cases). In light of this, I will make the same assumption and assess the defendant's motion under Sixth Amendment standards.

The Supreme Court has established a four-part balancing test to determine whether a Sixth Amendment speedy trial violation has occurred. The court must weigh: "(1) the length of the delay, (2) the reasons for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant resulting from the delay." United States v. Dowdell, 595 F.3d 50, 60

(1st Cir. 2010) (citing <u>Barker v. Wingo</u>, 407 U.S. 514, 520 (1972)). "None of these factors is a necessary or sufficient condition to the finding of a deprivation of the right to a speedy sentencing." <u>Nelson-Rodriguez</u>, 319 F.3d at 60.

As to the first factor, the ten years since indictment and the more than 5 years between conviction and sentencing is enough to trigger the inquiry into the other factors. <u>Cf.</u> <u>Barker</u>, 407 U.S. at 530 ("Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance.").

The second factor, the reasons for the delay, "is often considered the focal inquiry." <u>United States v. Trueber</u>, 238 F.3d 79, 88 (1st Cir. 2001) (internal quotation marks omitted). In examining the reasons for delay, the Supreme Court has prescribed different weights to different reasons.

> A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant.

<u>Barker</u>, 407 U.S. at 531. "Given the important public interests in appellate review it hardly need be said that an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay." <u>United States v. Loud Hawk</u>, 474 U.S. 302, 315. In this case, the defendant points to three periods of delay: (1) the government's interlocutory appeal following the first trial, (2) the delay between the second trial and the Court's order on the defendant's post-trial motions, and (3) the government's interlocutory appeal following the second trial.

The delay caused by the two interlocutory appeals should not weigh against the government. In assessing the purpose and reasonableness of an interlocutory appeal, courts look to: "(1) the strength of the government's position on the appealed issue; (2) the importance of the

issue in the posture of the case; and (3) in some cases, the seriousness of the crime." Trueber, 238 F.3d at 88. The government's appeals were not frivolous; the first appeal was decided by a divided panel, and the second appeal resulted in a reversal of the grant of a new trial. The interlocutory appeals were legitimate and justifiable, and the delay entailed in their prosecution should not be held against the government.

The delay between the second trial and this Court's order declaring a mistrial was regrettable and I accept any criticism that I contributed to the delay, but the defendant's own filings also contributed substantially to it by repeatedly expanding the scope of the issues bearing on the pending new trial motion. Post-trial filings by the defendant that necessitated deliberation by the Court included:

> 7/3/08 – Motion for Acquittal or New Trial (dkt. no. 308)
> 7/3/08 – Supplemental Motion for Acquittal (dkt. no. 311)
> 7/3/08 – Supplemental Motion for a New Trial (dkt. no. 312)
> 8/14/08 – Reply to Response to Supplemental Motion for Acquittal (dkt. no. 321)
> 8/15/08 – Reply to Response to Motion for Acquittal or New Trial (dkt. no. 322)
> 9/30/08 – Motion for New Trial Based on Newly Discovered Evidence (dkt. no. 324)
> 11/10/08 – Motion for New Trial Based on Newly Discovered Evidence (dkt. no. 333)
> 11/14/08 – Reply to Response to Motion for New Trial Based on Newly Discovered Evidence (dkt. no. 334)
> 11/25/08 – Reply to Response to Motion for New Trial Based on Newly Discovered Evidence (dkt. no. 338)
> 3/19/09 – Emergency Motion for Release of Brady Materials (dkt. no. 344)
> 3/23/09 – Supplemental Motion for Release of Brady Materials (dkt. no. 344)
> 4/2/09 – Reply to Response to Emergency Motion for Release of Brady Materials (dkt. no. 346)
> 6/10/09 – Memorandum Regarding Post-Trial Developments (dkt. no. 349)
> 6/24/09 – Second Memorandum Regarding Post-Trial Developments (dkt. no. 350)
> 7/31/09 – Status Report No. 3 (dkt. no. 353)
> 10/28/09 – Supplemental Memorandum in Support of Motion for Acquittal or New Trial (dkt. no. 355)
> 12/2/09 – Reply Response to Supplemental Memorandum (dkt. no. 359)
> 1/13/10 – Second Memorandum in Support of Motion for Mistrial, Acquittal or New Trial, and Release of Brady Materials (dkt. no. 360)
> 6/17/10 – Letter Regarding Recent Developments (dkt. no. 371)
> 1/6/11 – Notice of Supplemental Authorities (dkt. no. 373)
> 2/3/11 – Status Report (dkt. no. 374)

Each of these filings amended or added to the defendant's arguments and therefore required additional attention. The defendant certainly has the right to choose his litigation strategy; however, "[h]aving sought the aid of the judicial process and realizing the deliberateness that a court employs in reaching a decision, the defendants are not now able to criticize the very process which they so frequently called upon." Loud Hawk, 474 U.S. at 316-17.

The defendant's assertion of his rights, the third Barker factor, does not weigh in his favor. A brief history will help. The defendant was arraigned on February 24, 2004. The case was referred to a magistrate judge for pretrial supervision. The magistrate judge excluded some periods from the Speedy Trial Act ("STA") calculations, and counted some others against the "clock." A few months into the case, the defendant filed two motions to dismiss the indictment. After those motions were denied, at a status conference held on November 15, 2004, the Court set a trial date for December 6, 2004, the timing influenced principally by STA considerations. Two days later, the parties *jointly* moved to continue the trial until the end of March, 2005. At the scheduled pretrial conference held November 19, the Court set the trial for April 4, 2005, with no objection from the defendant. The parties also jointly moved to exclude the intervening time. Conferences that were held on March 24 and 28 led to a further postponement, at the defendant's request, with trial reset for May 9, 2005. On March 31, the defendant filed an "emergency" motion for a continuance, which was granted, and the trial was reset again for July 11, 2005. On April 29, the defendant again moved to postpone the trial over the government's objection, this time to November. That motion was denied, and the first trial commenced on July

11. As this timeline shows, prior to the first trial, the defendant was a proponent of the continuances from the original December trial date and the ultimate actual trial date.[1]

The defendant's post-trial motions for a judgment of acquittal or for a new trial were argued on October 31, 2005, and the Court denied the former and granted the latter by an order entered December 15, 2005. The government's notice of appeal was filed January 6, 2006, and the defendant's notice of cross-appeal was filed February 6, 2006. The mandate from the Court of Appeals affirming the grant of a new trial was entered on the docket on October 1, 2007. At a conference held on November 26, 2007, a trial date on May 5, 2008 was set. The defendant's counsel had asked for a trial in June 2008. Later, on April 29, the Court granted the defendant's request and continued the case to June 2, which is when the second trial began. Again, there was no genuine objection to the length of the continuances; they were consistent with what defense counsel requested.[2]

After the second trial and while the post-trial motions were pending, the defendant did not express any speedy trial objections until his request for a status conference filed July 14, 2011. In that filing (dkt. no. 375), he noted how long the post-trial motions had been pending. He also called attention to two new decided cases and argued their significance for some of the pending issues. The Court did not hold a status conference; the order granting the second motion for a new trial was entered about a month and a half later on September 1, 2011.

---

[1] Notwithstanding the fact that the defendant's chief trial counsel was a sponsor of the postponements, shortly before trial another lawyer for the defendant, Mr. Robinson, separately objected to the exclusion of time for the continuances and moved to dismiss on speedy trial grounds. See docket nos. 70 and 79. The objection was overruled and the motion denied. See clerk's notes dated May 17, 2005, and June 30, 2005.

[2] Once again, the right hand and the left hand were not in synch. Despite primary defense counsel's interest in a mid-2008 trial date, Mr. Robinson filed a motion to dismiss on speedy trial grounds on January 28, 2008 (dkt. no. 229), which was denied on April 8, 2008 (dkt. no. 242).

Thereafter, the defendant filed a motion (dkt. no. 387) to dismiss on speedy trial grounds in this Court while the government's second appeal was pending in the Court of Appeals, which this Court denied (dkt. no. 392) for lack of jurisdiction. Following the recent First Circuit decision, the defendant filed three more motions to dismiss on speedy trial grounds; docket number 406 which is the subject of this order; docket number 415 which was denied from the bench at the motion hearing; and docket number 426, which is a rehash of 415 and an earlier motion (dkt. no. 229) and is therefore denied.

This history shows that the defendant's assertion of speedy trial interests has been spotty at best. In contrast, over the course of the case he either requested or consented to significant continuances and to the exclusion of those periods from the STA calculation.

The fourth Barker factor, prejudice, weighs in the defendant's favor. The speedy trial right protects three interests of the defendant: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." Barker, 407 U.S. at 532. Only the second – anxiety and concern – is pertinent here. While these impacts are not to be taken lightly, this interest is often regarded as the least serious of the three interests protected by the speedy trial right. See id. at 533; United States v. Santiago-Becerril, 130 F.3d 11, 23 (1st Cir. 1997) ("In respect to [the defendant's] anxiety and concern in awaiting trial, we do not weigh this heavily. . . . While this type of prejudice is not to be brushed off lightly, considerable anxiety normally attends the initiation and pendency of criminal charges; hence only undue pressures are considered."). While the defendant has suffered through an extended ordeal, he points to no undue pressures that are not typical of a defendant awaiting trial or sentencing, and the defense points to no case where anxiety and concern alone supported a finding of a constitutional violation of the speedy trial right.

Under <u>Barker</u>'s balancing test, the defendant's constitutional right to a speedy trial was not violated, and his motion to dismiss on that ground (dkt. no.406) is denied.

## II.     Variance/Constructive Amendment

The defendant asks the Court to reconsider the denial of his Supplemental Motion for a New Trial (dkt. no. 312). Specifically he asks the Court to reconsider whether there was either a constructive amendment or a variance of the indictment created by the evidence presented by the prosecution. The defendant claims that the government's theory at trial was misrepresentation by omission, while the indictment charged affirmative misrepresentations.

"A constructive amendment occurs when the charging terms of the indictment are altered, either literally or in effect, by prosecution or court after the grand jury has last passed upon them." <u>United States v. Dowdell</u>, 595 F.3d 50, 58 n. 4 (1st Cir. 2010). The Superseding Indictment generally alleged that the defendant represented to seven exchangors that their exchange funds would be held safely and securely in an interest-bearing account; instead the defendant invested the exchange funds in risky stock options. <u>See, e.g.</u>, Superseding Indictment at ¶¶ 25-29 (dkt. no. 34). The misrepresentations were made through written statements provided to the exchangors and submitted at trial.

The government's evidence at trial and its argument to the jury did not vary from or amend the indictment. The government argued that the material provided by the defendant was either plainly false or were "half-truths" that made that statements materially misleading. This theory was well within the scope of the indictment.

The "omissions" that the defendant complains of deal with the government's contention that the defendant failed to inform the exchangors that he was using their funds that were represented to be in "escrow" accounts to actively trade in options for his own profit. The

affirmative representations that the funds were deposited in accounts maintained at Merrill Lynch and later Paine Webber were true as far as they went, but what they omitted made them misleading. Arguing that the defendant omitted material information necessary to make the affirmative statements not misleading did not transform the case from one of affirmative misrepresentations to a case of misrepresentations solely by reason of omission. There was no constructive amendment of the indictment.

## III.      Supplemental Memorandum, Docket Number 355

At oral argument on the pending motions, the defendant asked the Court to treat his "Supplemental Memorandum in Support of Defendant Daniel E. Carpenter's Motion for Declaration of a Mistrial and his Motion for Acquittal and in the Alternative for a New Trial and Request for Expedited Hearing" (dkt. no. 355) as a motion for a new trial under Federal Rule of Criminal Procedure 33. In its response to that Supplemental Memorandum, the government had suggested that, though it was not denominated a motion, it was in substance just that and should be considered under the standard applicable to such motions. See Government's Resp. to Def.'s "Supplemental Mem." Concerning New Evidence at 2 (dkt. no. 357). The defendant objected, insisting that the supplemental memorandum was not an independent motion for a new trial but further support for the then pending post-trial motions. See Def.'s Reply in Supp. of Supplemental Mem. Concerning New Evidence at 4-5 (dkt. no. 359). Those prior pending motions were addressed in the Court's order that, among other things, granted a new trial. The defendant's argument now that the Supplemental Memorandum should be treated as an unaddressed motion for a new trial is inconsistent with his express prior position and untenable in the circumstances.

## IV.      Conclusion

For the reasons stated herein, the defendant's Motion for Reconsideration (dkt. no. 404) and Motions to Dismiss (dkt. nos. 406 and 426) are DENIED.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
 United States District Judge