UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 04-10029-GAO

UNITED STATES OF AMERICA

v.

DANIEL E. CARPENTER,
Defendant.

OPINION AND ORDER
May 23, 2014

O'TOOLE, D.J.

The defendant was convicted by a jury of nineteen counts of mail and wire fraud.[1] The Superseding Indictment included a forfeiture count, and prior to sentencing the government moved for forfeiture of property in the sum of $14,053,715.52 pursuant to 18 U.S.C. § 981 and 28 U.S.C. § 2461(c). The defendant was sentenced to incarceration and ordered to pay restitution and a fine. At the sentencing hearing, I requested further briefing from the parties on the forfeiture issue. This Opinion and Order now addresses that issue.

In addition, the defendant has moved for bail pending appeal and to stay the payment of the fine and restitution, matters also resolved by this Order.

## I.      Forfeiture

After a defendant is convicted of mail and/or wire fraud, the sentencing court may order the forfeiture of "[a]ny property, real or personal, which constitutes or is derived from proceeds

---

[1] The history of this prosecution and a summary of the evidence supporting the conviction are detailed in United States v. Carpenter, 736 F.3d 619 (1st Cir. 2013).

traceable to [the] violation." 18 U.S.C. § 981(a)(1)(C).[2] There are two possible definitions of "proceeds" that may be applicable in this case. Section 981A(a)(2)(A) provides:

> In cases involving illegal goods, illegal services, unlawful activities, and telemarketing and health care fraud schemes, the term "proceeds" means property of any kind obtained directly or indirectly, as the result of the commission of the offense giving rise to forfeiture, and any property traceable thereto, and is not limited to the net gain or profit realized from the offense.

Alternatively, section 981(a)(2)(B) provides:

> In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

18 U.S.C. § 981(a)(2)(B).

Mail and wire fraud might arguably be called "unlawful activities" and thus fall within the former definition, but that section immediately follows the words "unlawful activities" with two specific categories of "fraud schemes." That would be unnecessary, of course, if the generic term "unlawful activities" had been intended to be broad enough to encompass fraud schemes. The latter definition seems more apt in the circumstances of this case, which broadly described involved the "lawful services" of a Section 1031 intermediary being "provided in an illegal manner," that is, by means of mail and wire fraud. I conclude, therefore, that for purposes of this case, "'proceeds' means the amount of money acquired through the illegal transactions resulting

---

[2] Section 981(a)(1)(C) allows a court to order forfeiture for "any offense constituting 'specified unlawful activity' [ ]as defined in [18 U.S.C. § ] 1956(c)(7)." Section 1956(c)(7)(A) incorporates "any act or activity constituting an offense listed in [18 U.S.C. § ] 1961(1)." And § 1961(1)(D) lists mail fraud and wire fraud. While § 981(a)(1)(C) is a civil forfeiture provision, it has been integrated into criminal proceedings via 28 U.S.C. § 2461(c). This circuitous statutory mechanism authorizes a court to order forfeiture in mail fraud and wire fraud proceedings. United States v. Contorinis, 692 F.3d 136, 145 n.2 (2d Cir. 2012).

in the forfeiture, less the direct costs incurred in providing the . . . services." Id. Consequently, I agree with the government that the "amount of money acquired through the illegal transactions" is the amount an exchangor committed to the custody of Benistar, as alleged in the respective counts[3] (and, per the jury verdict, proved at trial). Any reduction to account for "direct costs" of the legal activity would have to be proved by the defendant, id., and no evidence has been offered in that respect.

The defendant argues that forfeiture is not appropriate because the exchangors' funds were not "acquired" by him within the meaning of the forfeiture statute. Rather, he asserts, the funds were only held temporarily by Benistar for the benefit of the exchangors in a Merrill Lynch or Paine Webber account. Accordingly, he says, he personally never acquired the funds and they are thus not forfeitable as "proceeds" of his unlawful activity.[4]

The argument is unconvincing. For property to be "acquired" by the defendant in the necessary sense, it "must have, at some point, been under the defendant's control." United States v. Contorinis, 692 F.3d 136, 147 (2d Cir. 2012). It is clear in this case that the defendant exercised control of the exchangors' funds not only by causing Benistar to be the nominal custodian of the funds for purposes of the tax law but also by himself using the funds in his options trading. To have the benefit of the 1031 exchange, the exchangors had to relinquish control to the intermediary. The defendant's control of the property was obtained through the fraud of which he was convicted. He personally controlled the investment of the funds while in

---

[3] The government seeks forfeiture under Counts One, Two, Five, Six, and Eight through Nineteen, the amounts obtained by Benistar under these counts totaled $14,053,715.52.

[4] It is well established that dissipating the funds would not be a reason to not order forfeiture. See United States v. Hall, 434 F.3d 42, 59 (1st Cir. 2006).

3

the Merrill Lynch and Paine Webber accounts. The funds were effectively in his custody, and that satisfied the "acquired" requirement in the definition of "proceeds."

The defendant next argues that the amount of forfeiture sought by the government would violate the Eighth Amendment's excessive fines clause.

> A forfeiture will violate the Eighth Amendment's prohibition only if it is grossly disproportional to the gravity of the defendant's offense The case law invites us to consider as pertinent factors (1) whether the defendant falls into the class of persons at whom the criminal statute was principally directed; (2) other penalties authorized by the legislature (or the Sentencing Commission); and (3) the harm caused by the defendant.

United States v. Heldiman, 402 F.3d 220, 223 (1st Cir. 2005) (internal quotation marks and citations omitted).

The defendant first contends that the amount of forfeiture is disproportionate to his criminal conduct and that he, as an individual, never personally acquired the money. But, as discussed above, that is not the case. According to the verdict, he, acting for his company, obtained the exchangors' money by fraud. The forfeiture amount is exactly proportionate to the amount thus "acquired" by reason of his criminal conduct.

Second, the defendant claims that the forfeiture amount would deprive him of his livelihood. The argument is made in gross and without particulars, and is thus properly rejected. See United States v. Aguasvivas-Castillo, 668 F.3d 7, 16 (1st Cir. 2012) (upholding a $20 million forfeiture order where defendant put forth no facts to support proposition that amount would deprive him of his livelihood).

The defendant has not shown a violation of the Eighth Amendment's proscription.

Lastly, the defendant argues that the amount of his criminal forfeiture must be determined by a jury rather than the Court. In light of recent developments in the law involving sentencing this argument has some appeal. In Apprendi v. New Jersey, 530 U.S. 446 (2000) the Supreme

4

Court held that any fact, other than prior conviction, that increases a criminal penalty beyond the statutory maximum must be decided by a jury. In <u>Southern Union Co. v. United States</u>, 132 S. Ct. 2344 (2012), the Supreme Court applied the <u>Apprendi</u> rule to the imposition of criminal fines. Recently, in <u>Alleyne v. United States</u>, 133 S. Ct. 2151 (2013), the Supreme Court held that any fact that increases the mandatory minimum sentence must be submitted to a jury. Taken together, these three cases may support the proposition that facts supporting a criminal forfeiture order must be found by a jury. Since district courts have no discretion to reduce forfeiture, <u>see United States v. Phillips</u>, 704 F.3d 754, 769 (9th Cir. 2012), the statute requires to be forfeited whatever amount the court finds to be forfeitable, making that amount arguably the substantial equivalent of a minimum mandatory punishment, and thus governed by the <u>Alleyne</u> rule.

Nonetheless, notwithstanding the potential appeal of the defendant's argument, it runs directly contrary to existing Supreme Court precedent. In <u>Libretti v. United States</u>, 516 U.S. 29, 48–49 (1995), the Court expressly held that there is no Sixth Amendment right to a jury in a criminal forfeiture proceeding. This Court remains bound by that precedent. See <u>Rodriguez de Quijas v. Shearson/Am. Express, Inc.</u>, 490 U.S. 477, 484 (1989) ("If a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions."). As the law stands, the defendant has no jury trial right on the issue of forfeiture.

For the reasons stated herein, the government's Motion for Forfeiture (dkt. no. 433) is GRANTED.

## II. Bail / Stay Pending Appeal

The defendant has moved for bail pending appeal and for an order staying the imposed fine and order of restitution. Motions for bail pending appeal are governed by 18 U.S.C. § 3143(b):

> (1) . . . [T]he judicial officer shall order that a person who has been found guilty of an offense and sentenced to a term of imprisonment, and who has filed an appeal . . . be detained, unless the judicial officer finds—
>
>> (A) by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community if released under section 3142(b) or (c) of this title; and
>>
>> (B) that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in—
>>
>>> (i) reversal,
>>>
>>> (ii) an order for a new trial,
>>>
>>> (iii) a sentence that does not include a term of imprisonment, or
>>>
>>> (iv) a reduced sentence to a term of imprisonment less than . . . the expected duration of the appeal process.
>
> If the judicial officer makes such findings, such judicial officer shall order the release of the person in accordance with section 3142(b) or (c) of this title. . .

Under the statute, detention is the default setting, but it can be avoided if the court finds the enumerated conditions that warrant an exception to the norm. The First Circuit has made clear that the Bail Reform Act of 1984 creates

> no presumption in favor of release pending appeal; on the contrary, even when the conviction does not involve a crime of violence or drug offense, detention (following conviction and sentencing) is mandatory unless the judicial officer finds *inter alia* 'that the appeal is not for the purpose of delay and raises a substantial question of law or fact likely to result in' a reversal, new trial, or reduced term of imprisonment that would expire during the expected duration of the appeal process.

United States v. Colon-Munoz, 292 F.3d 18, 20 (1st Cir. 2002) (quoting 18 U.S.C. § 3143(b)(1)). A defendant seeking the benefit of the exception has the burden of establishing the factual predicate for the exception. See Morison v. United States, 486 U.S. 1306, 1306–07 (1988) (Rehnquist, Circuit Justice). See also Fed. R. Crim. P. 46(c).

I find that the defendant is unable to carry his burden under the statute. As to the finding required under § 3143(b)(1)(A), the defendant has shown through the course of this case that he is not a flight risk. However, he has not shown by clear and convincing evidence that he does not pose a danger to the safety of the community. Viewing only its text, the statute itself could be understood to mean that "safety" is to be considered only with respect to possible physical harm to persons, but courts have held that the term can be understood to refer to the prevention of pecuniary or economic harm as well. See United States v. Reynolds, 956 F.2d 192 (9th Cir. 1992); United States v. Madoff, 586 F. Supp .2d 240, 252 (S.D.N.Y. 2009); United States v. Jinwright, 2010 WL 2926084 at *2 (W.D.N.C., July 23, 2010). The defendant was recently indicted in Connecticut for mail and wire fraud offenses, the same category of offenses as he was convicted of in this case. That indictment alleges acts committed through 2010. Additionally, in a civil case in the Southern District of New York, the district judge issued a written opinion detailing her conclusions that the defendant had engaged in fraudulent acts involving a life insurance policy. At the very least, those matters prevent a conclusion "by clear and convincing evidence" that the defendant poses no risk of safety to the community.

The defendant has also failed to persuade me that he meets the criteria of § 3143(b)(1)(B) – that his appeal presents one or more substantial issues which, if decided favorably to him, would likely result in reversal, a new trial, or a favorable adjustment of his sentence. See United States v. Bayko, 774 F.2d 516, 522-23 (1st Cir. 1985). The defendant identifies issues he will

7

present on appeal, all of which have, of course, been previously addressed here: violation of the Speedy Trial Act as to both trial and sentencing; constructive amendment of the indictment or prejudicial variance; insufficiency of the evidence; and governmental reliance on perjured testimony. (The Court of Appeals has already rejected at least the last argument. United States v. Carpenter, 736 F.3d 619, 631 (1st Cir. 2013).)

I have carefully reviewed and discussed each issue when it was presented and resolved at this level. I have twice rejected the defendant's argument regarding the sufficiency of the evidence. United States v. Carpenter, 405 F. Supp. 2d 85, 93-96 (D. Mass. 2005); United States v. Carpenter, 808 F. Supp. 2d 366, 376-80 (D. Mass. 2011). I have also considered and rejected his argument about a variance or constructive amendment of the indictment. 405 F. Supp. 2d at 92. I have also previously discussed why he has not shown a violation of his right to a speedy trial. United States v. Carpenter, 542 F. Supp. 2d 183 (D. Mass. 2008); Opinion and Order (Dkt. No. 431) (Feb. 21, 2014). For the reasons stated in those prior orders, I do not believe that any of the issues he proposes to appeal present a "close" question in the necessary sense. See Bayko, 774 F.2d at 523 (defining "close" as where "there is some question that very well could be decided the other way").

As to the motion to stay the fine and restitution, that motion is likewise denied. I agree with the government that the defendant's course of conduct in this case and the more recent cases in other jurisdiction referenced above creates a risk of the dissipation of the defendant's assets that cannot be ignored.

## **III.** <u>**Conclusion**</u>

For the reasons stated herein, the government's Motion for Forfeiture (dkt. no. 433) is GRANTED. The defendant's Motions for Bail Pending Appeal (dkt. no. 452) and to Stay the Fine and Restitution (dkt. no. 458) are DENIED.

It is SO ORDERED.

<u>/s/ George A. O'Toole, Jr.</u>  
United States District Judge