UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | ) | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | No. 04-10029-GAO |
| | ) | |
| | ) | |
| DANIEL E. CARPENTER | ) | |
| | ) | |

**MOTION FOR RECONSIDERATION OF FORFEITURE ORDER (Doc. 471)**

**I.    PRELIMINARY STATEMENT**

There is no basis or reason for the imposition of forfeitures in this case. While the rules and regulations regarding civil forfeitures in the context of criminal cases have sometimes been called labyrinthine, here they led to this Court's imposing a more than $14,000,000 forfeiture on a defendant who took no profit from his company's investments, even when they had generated significant profits, and who was shown to have deposited more than $2,000,000 from his own funds, rather than the Exchangors' §1031 funds, to save his clients from any losses. Under these circumstances, where the diminishing of proceeds was due to an unforeseeable stock market collapse and the paralysis of our government due to the contested 2000 election – an event not seen in well over a century – and where Carpenter did not reduce his company's available assets by taking bonuses or engaging in extravagant expenses, where his "crime" (and, on appeal, he strongly contests the basis for his conviction) was more about what he did not say rather than what he did to Exchangors who he in fact never met, the $14,000,000 forfeiture in this case lacks any of the principled bases for forfeiture, which are largely premised on taking "gains" from a wrongdoer.

The Court adopted the premise that BPETCO was a lawful company, and thus its forfeiture could be reduced by provable expenses, but stated that Carpenter had not met his burden to prove such expenses or costs of doing business. Carpenter, however, argued at sentencing that under 18 U.S.C. §981(a)(2)(B), the forfeiture could, at most, be approximately $9 million, as the monies returned to the Exchangors at issue were part of the cost of providing BPETCO's services and should, therefore, be deducted from the forfeiture amount sought by the government.   The Court's opinion did not, however, address this issue, other than to say that Carpenter had not met his burden of proof. Carpenter seeks reconsideration based on BPETCO data which show that the amount of the monies returned to all exchangors in 2000 and 2001 exceed the amount of the forfeiture order. Under §981(a)(2)(B), no forfeiture should be ordered.

## II.    LEGAL STANDARD

A district court may grant a motion for reconsideration "if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." *United States v. Cintron*, 724 F.3d 32, 36 n.5 (1st Cir. 2013). *See United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009). "[W]hen reconsideration of an earlier ruling is requested, th*e* district court should place great emphasis on the 'interests of justice.'" *United States v. Roberts*, 978 F.2d 17, 21 (1st Cir. 1992). *See United States v. Siciliano*, 578 F.3d 61, 72 (1st Cir. 2009)("When faced with a motion for reconsideration, district courts should apply an interests-of-justice test"). "This is so . . . because such requests for reconsideration rely, in the last analysis, on the trial court's inherent power to afford relief from interlocutory decisions 'as justice requires.'" *Roberts*, 978 F.2d at 21. *See*

*United States v. Siciliano*, 578 F.3d 61, 72 (1st Cir. 2009)("When faced with a motion for reconsideration, district courts should apply an interests-of-justice test").

Moreover, most courts have long recognized the "inherent equitable powers of courts of law over their own process, to prevent abuses, oppression, and injustices." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 35 (1984) (internal quotations omitted). It seems beyond peradventure that those inherent powers of the court must include a judge's power to correct his own decisions when they are clearly based on one parties' belief that the proof that the difference between the government's forfeiture request and the government's position on "loss" in sentencing was based on the incontrovertible reality that BPETCO fulfilled its obligations as to many additional exchanges after the triggering of the period for which the government contended that all §1031 transmissions of funds were "proceeds" of Carpenter's "offense".

## ARGUMENT

If not for the passage of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. No. 106-185, §16, 28 U.S.C. §2461(c) in April, 2000, 18 U.S.C. §981 would only authorize civil forfeitures, and the government would have no case here. Not all of the defendant's property is subject to forfeiture upon conviction, but instead only property that was "used in" or is recognized as "proceeds from" the "crime" is subject to forfeitures.

FED. R. CRIM. P. 32.2(b)(1) puts the burden on the government to establish the "requisite nexus" which subjects to forfeiture the proceeds. The government has not met its burden as to any of the $14 million. Submitted with this motion as Exhibits A and B are two documents which were prepared by Carpenter's trial counsel as Defense Exhibits 258 and 259, which were ultimately not received into evidence. These documents show that BPETCO and Carpenter paid out more than $19

million to various Exchangors for exchanges occurring in 2000 and additional $7.7 million for exchanges occurring in January, 2001. Thus, if one adds up the funds paid to Exchangors in just 2000 and 2001, you have the following amounts to reduce the amount of forfeitures:

**TOTAL PAYMENTS TO BPETCO CLIENTS**

| | |
|---|---|
| **2000 Exchanges (Ex. A)** | **$19,435,748.51** |
| **2001 Exchanges (Ex. B)** | **$ 7,695,641.95** |
| **TOTAL PAYMENTS** | **$27,131,390.46** |

18 U.S.C. §981(a)(2)(B), which this Court found to be applicable here, provides:

> In cases involving lawful goods or lawful services that are sold or provided in an illegal manner, the term "proceeds" means the amount of money acquired through the illegal transactions resulting in the forfeiture, less the direct costs incurred in providing the goods or services. The claimant shall have the burden of proof with respect to the issue of direct costs. The direct costs shall not include any part of the overhead expenses of the entity providing the goods or services, or any part of the income taxes paid by the entity.

BPETCO was just such a company, providing lawful services, and the forfeiture must be reduced by these "direct costs" of conducting BPETCO's business, the returning of principal plus interest to Exchangors. Because these direct costs, as shown on the exhibits submitted herewith, exceed the $14 million in receipts, there is no sum to be forfeited. *See United States v. Hollnagel*, 2013 WL 5348317 (N.D.Ill. Sept. 24, 2013). Even were the Court to limit the inquiry to the direct costs which post-dated August 23, 2000, the date identified by the government at the sentencing hearing, *see* Tr. 2/26/14 at 19, the payments to Exchangors from August 23, 2000, through December 31, 2000, were $7,561,377, for a total of $15,257,701 through January, 2001, which would also eliminate any permissible forfeiture.

## CONCLUSION

For all the foregoing reasons, this Court should reconsider its forfeiture order and eliminate the order of forfeiture.

Respectfully submitted,

By His Attorneys,

**/s/ Martin G. Weinberg**
Martin G. Weinberg, Esq.
Mass. Bar No. 51948
20 Park Plaza, Suite 1000
Boston, MA  02116
(617) 227-3700
owlmgw@att.net

## CERTIFICATE OF SERVICE

I, Martin G. Weinberg, hereby certify that on June 3, 2014, this document has been served, via electronic filing, upon Assistant U.S. Attorneys Mary B. Murrane and Kelly Begg Lawrence.

**/s/ Martin G. Weinberg**
Martin G. Weinberg