UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA | ) |
| | ) |
| v. | )  CRIMINAL NO. 04-10029-GAO |
| | ) |
| DANIEL E. CARPENTER | ) |

**DEFENDANT DANIEL E. CARPENTER'S**
**MOTION AND ACCOMPANYING MEMORANDUM OF LAW**
**TO DISMISS ALL COUNTS FOR FAILURE TO**
**STATE A CRIME UNDER RULE 12(b)**

**INTRODUCTION**

At this late date, the government has failed to properly allege or prove **any** of the

factors for a Mail and Wire fraud indictment.  Surprisingly, even the First Circuit appears

to be unable at this late date to list even a single falsehood by Mr. Carpenter in a 50-page

opinion rife with errors.  It appears that Mr. Carpenter's only mistake was not telling

people, that he never met or communicated with, the fact that he might lose their money

at some time in the future by trading stock options in the greatest stock market crash in

U.S. history that occurred in December of 2000, despite the fact that Mr. Carpente had no

obligation or duty to disclose anything to the Exchangors and the signed agreements did

not limit his investment choices or strategies in any way.  Nor was there any duty stated

in the Indictment or claim that Mr. Carpenter was being charged with a case of omissions

or a failure to disclose. Therefore, for the reasons which follow, the Indictment should be

dismissed and my conviction vacated.

Additionally, the Indictment must be dismissed as a matter of law because it fails

to state an offense.  "[A] charging document fails to state an offense if the specific facts

alleged in the charging document fall beyond the scope of the relevant criminal statute, as a matter of statutory interpretation." *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002); *see also United States v. Russell*, 639 F. Supp. 2d 226, 236 (D. Conn. 2007) (noting that it would be proper to dismiss an indictment that fails to state an offense under the charged statute); *United States v. Sunia*, 643 F. Supp. 2d 51, 68 (D. D.C. 2009) (dismissing indictment where facts it alleged did not constitute crime charged as a matter of statutory construction); *United States v. Thompson*, No. CR-09-88-FVS, 2010 U.S. Dist. LEXIS 41005, at *2 (E.D. Wash. Apr. 27, 2010) (noting that an indictment "fails to state an offense" if the specific facts alleged in it fall beyond the scope of the relevant criminal statute as a matter of statutory interpretation).

   In a landmark decision issued in April 2012, the Second Circuit dismissed the indictment of Goldman Sachs computer programmer Sergey Aleynikov even after he had been tried and convicted, just as in Mr. Carpenter's case, because the indictment against him failed to state an actionable offense.  *United States v. Aleynikov*, --- F.3d ----, 2012 WL 1193611 (C.A.2 (N.Y.) April 11, 2012)  Even though the *Aleynikov* case deals with highly sophisticated computer programming crimes in violation of National Stolen Property Act ("NSPA") and Economic Espionage Act ("EEA"), the similarities between *Aleynikov* and Mr. Carpenter could not be more clear.  At this late date, the Government has repeatedly failed to show even a single false statement by Mr. Carpenter; much less a scheme to defraud that would rise to level necessary for a mail and wire fraud indictment. The Indictment in this case fails even to allege any specific intent on the part of Mr. Carpenter to defraud anyone.  If this were a civil case, the Court would dismiss the case under *Bell Atlantic v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662

(2009), for failure to state a claim upon which relief could be granted, and under Fed. R. Civ. P. 9(b) for failure to state fraud with sufficient particularity.  See this Court's own decision in *Baron v. Smith*, 285 F.Supp.2d 96 (D. Mass. 2003).

Not all frauds are federal frauds – and only a select set of frauds reach the level required for a federal fraud prosecution.  Specifically, in the instant case, the Government has failed to allege all five elements necessary to invoke this Court's jurisdiction to prosecute a mail and wire fraud case.  There is not a single sentence in the entire Indictment that even mentions the "specific intent" necessary to indict someone for mail and wire fraud.  Similarly, the words "knowingly" and "willfully" are nowhere to be found in the Indictment.  The Government has had many opportunities to correct the legal infirmities in the Indictment over the past 10 years and has instead elected to ignore these basic elements.  Instead, in both trials, the government has resorted to egregious prosecutorial misconduct in the closing argument to secure its unlawful, unfair and unjust jury verdict.  It is time for this Court to remedy these procedural defects and to dismiss the Indictment in its entirety and end Mr. Carpenter's 15 year nightmare stemming from the crash of 2000. Now that the NASDAQ has finally recovered to its perch of 5000 from 15 years ago, and the Exchangors have hit a judicial jackpot of over $50 Million on their $8 Million investment, it is time to vacate Mr. Carpenter's conviction as was done in *Aleynikov* and dismiss his indictment.

## I.  JURISDICTION

This Court clearly has jurisdiction to hear this motion.  Daniel E. Carpenter ("Mr. Carpenter" "I" "Me" or the "Defendant") moves to dismiss the Superseding Indictment (the "Indictment") pursuant to Fed. R. Crim. P. 12(b)(3)(B) because the Indictment fails

to allege facts sufficient to constitute a **federal** offense and because the Indictment fails to charge mail and wire fraud with the particularity needed to invoke this Court's jurisdiction. Accordingly, the allegations of the Indictment are insufficient to invoke the jurisdiction of this Court, as they fail to satisfy the legal requirement that they state facts sufficient to make out a violation of the federal mail and wire fraud statutes.

Rule 12(b)(3)(B) provides, in pertinent part, that "at any time while the case is pending, the court may hear a claim that the indictment or information fails to invoke the court's jurisdiction or to state an offense." If this Court lacks jurisdiction due to the Government's failure to allege the specific facts necessary to make my conduct a federal crime, then this Court must dismiss the Indictment under Fed. R. Crim. P. 12(b)(3)(B). Because the Government has failed to specifically allege any facts as to **all** five of the elements necessary for federal mail and wire fraud, the Indictment is defective as a matter of law, and such defect therefore deprives this Court of jurisdiction over the case, even at this late date.

## II.    LEGAL STANDARD

The First Circuit has made it clear that a motion to dismiss an indictment under Rule 12(b)(3)(B) can be **made at any time while a case is pending**, and even if the issue is raised for the first time on appeal. *See United States v. Rosa-Ortiz*, 348 F.3d 33 (1st Cir. 2003). In this case, Mr. Carpenter is challenging the validity of the Indictment before his *en banc* appeal argument is heard, which has yet to be scheduled. Therefore, this motion is timely made, this Court has jurisdiction to hear the motion, and this Court must dismiss the Indictment as a matter of law.

The First Circuit's decision in *Rosa-Ortiz*, affirmed the dismissal of an indictment charging the defendant with conspiracy to violate the Federal Escape Act, 18 U.S.C. § 751(a) because **that statute does not prohibit the conduct that was described and charged in the indictment in that case**. In *Rosa-Ortiz*, the indictment charged the defendant with conspiring to violate Section 751(a) by assisting in the escape of his co-defendant, who was in federal custody on a federal material witness warrant. The defendant pleaded guilty to that charge and appealed, arguing that his conduct was not within the crime charged. The First Circuit agreed, finding that Section 751(a), which by its terms proscribes escapes of those in federal custody "by virtue of an arrest on a charge of felony, or conviction of any offense," does not apply to the escape of one taken into federal custody on a material witness warrant. The court explained, "[t]he plain text of [Section 751(a)] does not support the indictment in this case, and 'due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope.'" *Id.* at 42 (quoting *United States v. Lanier*, 520 U.S. 259, 266 (1997)). In the case of Mr. Carpenter's Indictment, the Government has pleaded nothing more than a simple breach of contract claim, and it did not even do *that* well. But a breach of contract claim does not describe the prohibited conduct needed for an indictment charging mail and wire fraud. *See McEvoy Travel v. Heritage Travel*, 904 F.2d 786 (1990).

The Second Circuit reached a similar conclusion in *United States v. Pacione*, 738 F.2d 567, 573 (2d Cir. 1984), where the defendant moved to dismiss those counts of an indictment that charged him with violating the extortionate credit statute, 18 U.S.C. § 891 *et seq.*, by threatening to record a mortgage and a deed. Although the indictment tracked

the language of the statute, the defense argued, and Judge Knapp agreed, that the threat of non-violent conduct it alleged as a factual basis for that statutory violation "was not what congress meant to prohibit in the extortionate credit statute." *Id.* at 569. Rejecting the Government's appeal, the Second Circuit affirmed that dismissal because its analysis of the statute revealed that, as Judge Knapp had concluded, the defendant's activities as alleged in the indictment were beyond the limits of that statute. *Id.* at 572.

The conclusions reached by the First Circuit in *Rosa-Ortiz* and Second Circuit in *Pacione*, are commensurate with the positions by numerous district courts throughout the country. *See, e.g., United States v. Gray*, 101 F. Supp. 2d 580, 588 (E.D. Tenn. 2000) (dismissing count of indictment because it alleged a course of conduct involving multiple financial transactions, an offense the court held 18 U.S.C. § 1956(a)(1)(B)(i) did not criminalize); *United States v. Pees*, 645 F. Supp. 697, 704 (D. Col. 1986) (dismissing indictment alleging that defendant distributed a Schedule I substance, in violation of 18 U.S.C. § 846, where the drug charged in the offense had not been properly classified under Schedule I); *United States v. Ashford*, 403 F. Supp. 461, 464-65 (N.D. Iowa 1975) (dismissing charge that defendant violated 18 U.S.C. § 1708 for failure to state an offense because an essential element was that a letter had been stolen or embezzled while "in the mail," but the indictment charged that the letter in question was addressed "care of" the defendant, who subsequently formed the intention to steal it); *United States v. Murillo*, No. 07 Cr. 2026, 2008 U.S. Dist. LEXIS 19568, at *8 (N.D. Iowa Mar. 13, 2008) (dismissing charge for failure to state a cause of action because the social security card defendant was alleged to have used did not constitute a "means of identification" within the meaning of 18 U.S.C. § 1546(b)).

As these cases make clear, an indictment that merely tracks the language of a charged statute and alleges vague criminality **but alleges no facts that actually violate the statute it charges** cannot be sustained.  The fatal flaw in such indictments is not that they fail to allege the charge with sufficient specificity, but rather that the facts they allege make clear that the charge cannot be maintained and no actual federal crime has been committed, as is clear in Mr. Carpenter's case.

> As the Eleventh Circuit explained in *United States v. Peter*:
>
> The problem is not that the Government's case left unanswered a question as to whether its evidence would encompass a particular fact or element. Rather, it is that the Government affirmatively alleged a specific course of conduct that is outside the reach of the mail fraud statute. Peter's innocence of the charged offense appears from the very allegations made in the superseding information, not from the omission of an allegation requisite to liability.

*Id.* 310 F.3d 709, 715 (11th Cir. 2002).

That is precisely the problem in this case.  Each count of the Indictment that charges Carpenter with an alleged federal crime merely parrots the language of the mail and wire fraud statute without any details.  But none of the counts allege facts that would bring Mr. Carpenter's conduct within the meaning of the charged statutes under any circumstances.  For example, none of the mailings or wires were done by Mr. Carpenter or even contemplated by Mr. Carpenter or his staff.  None of the mailings and wires were done in **furtherance** of a scheme to defraud – because there is no description of what the scheme to defraud was, and the word "furtherance" is nowhere to be found in the Indictment – anywhere.

Not all frauds are federal frauds – and only a select set of frauds reach the level required for a mail and wire fraud prosecution.  Specifically, in the instant case, the Government has failed to allege all five elements necessary to invoke this Court's

jurisdiction to prosecute a mail and wire fraud case.  There is not a single sentence in the entire Indictment that even mentions the "specific intent" necessary to indict someone for mail and wire fraud.  Similarly, the words "knowingly" and "willfully" are nowhere to be found in the Indictment.  The Government has had many opportunities to correct the legal infirmities in the Indictment and has instead elected to ignore these basic elements.  It is time for this Court to remedy these procedural defects and to dismiss the Indictment in its entirety.

## III.   THIS COURT LACKED JURISDICTION

Before it can do anything else, a federal court must determine that it has subject matter jurisdiction to hear a case.  Federal courts are courts of limited jurisdiction, and not all frauds rise to the level of conduct falling within the federal mail and wire fraud statutes or involve the United States of America in such a way that would invoke federal jurisdiction.   The federal courts have consistently held to the principle that once jurisdiction is challenged, the District Court has **no authority to do anything** but to take action on the motion to determine whether or not it has jurisdiction to proceed.  As the Supreme Court held in *The State of Rhode Island v. The State of Massachusetts*, 37 U.S. 657 (1838), once the question of jurisdiction is raised "it must be *considered* and *decided* before the court can move one step further" (emphasis added]) *Id.* at 719.  "Jurisdiction **cannot be assumed** by a district court nor conferred by agreement of parties, but it is incumbent upon [the US Attorney] to allege in clear terms, the necessary facts showing jurisdiction which must be proved by convincing evidence." *Harris v. American Legion*, 162 F. Supp. 700 (1958), *see also McNutt v. General Motors Acceptance*, 298 U.S. 178

(1936). If a court lacked jurisdiction, any judgment that it made is null and void as a matter of law.

Just because two juries were unlawfully persuaded by the government's egregious prosecutorial misconduct does not make the defective Indictment valid. Mr. Carpenter successfully completed 119 out of 126 property exchanges and the government's own forensic auditor testified at both trials that I handled over $100,000,000 and did not take a penny for myself. Instead, when the market turned ugly in the Fall of 2000, I invested $2.4 Million of my company's money to bolster BPETCO's finances, which had also lost in the market tsunami. Even Your Honor said at my sentencing that I "always intended to repay the money" and I, in fact, did pay the Exchangers back $15 Million before the start of the second trial. Fitzgerald and Darling settled with BPETCO even before the civil trials started in 2002.

As this Court knows well, not all frauds are "federal" frauds that rise to the level necessary to be prosecuted in a federal court. In *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990), the First Circuit noted that not every use of the mails in furtherance of a scheme to defraud another of property would be mail fraud. For example, a breach of contract in itself would not constitute mail fraud. *Id.* Nor would the mere breach of a fiduciary duty. *United States v. Greenleaf*, 692 F.2d 182, 188 (1st Cir. 1982). The First Circuit has stated that the scheme "must be intended to deceive another, by means of false or fraudulent pretenses, representations, promises, or other deceptive conduct." *McEvoy* at 791.

Mr. Carpenter respectfully suggests that this Court did not have jurisdiction over him because the federal mail and wire fraud statutes do not purport to reach **all frauds**,

but only those "limited instances in which the use of the mails is a part of the execution of the fraud, leaving **all other** cases to be dealt with by appropriate state law." *Kann v. United States*, 323 U.S. 88 (1944) (emphasis added). *See also United States v. Maze*, 414 U.S. 395 (1974).   In this case, the government's indictment not only fails to address all five critical elements of mail and wire fraud, it appears that every single count in the Indictment involves an email, letter, or wire involving Mr. Carpenter that came **after** the Exchangors had already decided to use BPETCO (NKA Boston Property Exchange Transfer Company, Inc.).   All of these counts in the Indictment relate to acts occurring after the fraud had come to its full fruition.   If the alleged fraud was now a crime of omission in not telling the Exchangors that Mr. Carpenter was losing money or was trading in stock options, then none of the mailings and wires in this case satisfy the "in furtherance" requirement.   None of them.

In *Maze*, the Supreme Court reversed the mail fraud conviction, concluding that the success of Maze's scheme did not depend in any way on the mailings at issue, focusing on "the more difficult question [of] whether [the] mailings were sufficiently closely related to [Maze's] scheme to bring his conduct within the statute." *Maze*, 414 U.S. at 399, 402.   Here, as in *Maze*, the success of the alleged scheme clearly did not depend in any way on the use of mails or wires by Mr. Carpenter, as the alleged uses all occurred **after** the alleged fraud was **complete**.

All of the counts of the Indictment concerning Mr. Carpenter list mailings and wires that have nothing to do with the alleged omissions.  ("Congress could have drafted the mail fraud statute so as to require only that the mails be in fact used as a result of the fraudulent scheme. But it did not do this. . . ."). *Maze, supra* at 405 (footnote omitted);

*see also United States v. Tackett*, 646 F.2d 1240, 1244 (8th Cir. 1981) ("The statute does not reach all mailings resulting from a fraudulent scheme, but only those which are in **furtherance of the scheme**."). (Emphasis added.)   Accordingly, the federal mail and wire fraud statutes have not been properly invoked in this case, and this Court lacks jurisdiction to proceed any further with this case. The Indictment must be dismissed.

In addition to relying on court decisions that have provided limitations to the "scheme to defraud" element of the mail fraud statute, criminal defense attorneys can also examine the dictionary definition of the terms "scheme" and "defraud."   "Scheme" is defined as "a detailed plan or system...a carefully constructed arrangement...a secret, dishonest or malicious plot...." According to "*Webster's Third International Dictionary*, 'defraud' means 'to take or withhold from (one) some possession, right or interest by calculated misstatement or perversion of truth, trickery, or other deception.'" *McEvoy* at 791.   Prosecutors should be required to limit mail fraud charges to alleged conduct that meets dictionary definitions of these two terms in order to offer clearer boundaries to this element of the statute.

The Eighth Circuit Court of Appeals, in a case involving an alleged promotional coupon offer, found insufficient evidence of a scheme to defraud. *United States v. Goodman*, 984 F.2d 235 (8th Cir. 1993).   In reversing the mail fraud convictions, the court noted the distinction between coupon offers that violated the criminal law and those that did not.   The "illegal scheme involves some affirmative misrepresentation or active concealment manifesting an intent to deceive."   *Id.* at 239.   The court noted that "[w]ithout some objective evidence demonstrating a scheme to defraud, all promotional

schemes to make money…would be subject to prosecution on the mere whim of the prosecutor." *Id.*

It is well-settled that a breach of contract does not constitute mail and wire fraud. **Every circuit** to consider the matter has concluded that "**[f]raud requires much more than simply not following through on contractual or other promises**." *Corley v. Rosewood Care Ctr.*, 388 F.3d 990, 1007 (7th Cir. 2004) (emphasis added); *see, e.g., McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791 (1st Cir. 1990) ("[N]or does a breach of contract in itself constitute a scheme to defraud."); *United States v. Chandler*, 388 F.3d 796, 803 (11th Cir. 2004) ("The government agreed that breach of contract does not support a mail fraud conviction."); *United States v. Kreimer*, 609 F.2d126, 128 (5th Cir. 1980) ("[T]he [mail fraud] statute does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business contract."); *see also United States v. Vinyard*, 266 F.3d 320, 327 (4th Cir. 2001); *Johnson Enters v. Fpl Group*, 162 F.3d1290, 1318-19 (11th Cir. 1998); *United States v. Cochran*, 109 F.3d 660, 667 (10th Cir. 1997); *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1417 (3d Cir. 1991).

The Government's mail and wire fraud allegations, on their face, squarely conflict with this line of authority, and the Government's post-trial allegations that Mr. Carpenter somehow committed fraud by failing to disclose his breach to the other parties is nothing more than a semantic trick designed to evade the holdings of all of the cases cited above. If the failure to disclose a breach of contract constituted fraud, then nearly every breach of contract would constitute fraud. That is precisely the result that the above cases foreclose.

To prosecute mail and wire fraud cases arising out of contractual relationships, "much more" than a mere undisclosed breach is required. *Corley* at 1007. At a minimum, fraud "requires a showing of deception **at the time the promise is made**." *Id.* (emphasis added). In this case, the Government has made no such allegation. In fact, to the contrary, the language of the indictment suggests that the alleged breach and deceptions did not take place until at least the end of 2000, more than two years into the engagement of 126 contracts, of which 119 were successfully completed. How many "fraudulent" businesses have a 95% successful completion rate? Where is the fraudulent scheme here? Only Gail Cahaly came to BPETCO in November of 2000 and she had her own agreement drafted by her attorney husband. Moreover, at this late date, the Government has not provided even one example of Mr. Carpenter making an oral or written fraudulent misrepresentation, much less a fraudulent **material** misrepresentation as required by *Neder v. United States*, 527 U.S. 1 (1999).[1] There was never a failure to make an exchange until after January 2001.

The Government must also show that the defendant actually intended to cause economic harm to the other contracting party. *See United States v. Pennington*, 168 F.3d 1060, 1065 (8th Cir.1998); *United States v. Sun-Diamond Growers*, 138 F.3d 961, 973 (D.C. Cir. 1998). But once again, in this case, the Government has made no such allegations. Critically, the Indictment makes no allegation that Mr. Carpenter failed to perform the work called for under the contract. Other than the breach of contract allegations, the Indictment makes absolutely no allegation of actual or intended economic

---

[1] The only difference between the original indictment and the superseding indictment was that the Government added the word "material" to the word "misrepresentation" in seven different paragraphs after Professor Alan Dershowitz pointed out the obvious flaws in the original indictment at a hearing on a motion to dismiss the original indictment in September 2004. The Government made the "material" changes to the Indictment the day after the hearing on the motion to dismiss the original indictment.

harm to the Exchangors. There is no mention at all of Mr. Carpenter's "specific intent" to harm, deceive, cheat, or steal anything from anyone.  Indeed, what is apparent is that this entire dispute has worked to the economic benefit of the Exchangors, as they have used Mr. Carpenter's alleged failure to honor the contract as a rationale for a seemingly endless pursuit of judicial jackpots against Merrill Lynch, Bingham McCutchen, and PaineWebber in addition to the $15 million that Mr. Carpenter and BPETCO paid them on an $8 million loss.

Even if an undisclosed investment risk or breach of contract were generally tantamount to fraud, it could not possibly constitute fraud in this case, where the underlying contractual provision favors Mr. Carpenter's position and where the Exchangors have already recovered $15 million from BPETCO and Mr. Carpenter, over $22 million from Merrill, and another $34-$50 million from Bingham McCutchen. *See Cahaly v. BPETCO*, No. 12–P–956 (Mass. App. 2014).  The mail and wire fraud charges in this case rest, at their core, on an allegation of an undisclosed investment risk and a breach of contract claim.  Even as a general matter, such a theory would be dubious and would certainly not rise to the level necessary to be a "federal" fraud or a "criminal" offense.

If this were a case for **civil fraud**, there is no doubt that this very same Court would dismiss the action based on *Bell Atlantic v. Twombly*, 127 S. Ct. 1955 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009), and chastise the Exchangors (and the Government) for failure to plead fraud with the particularity required under Fed. R. Civ. P. 9(b).  Because the Government has not alleged any scheme to defraud, much less the particularity required (the "who", "what", "where", and "when" of fraud), this Indictment

is woefully inadequate even as a basis for **civil** fraud much less criminal fraud. As the

Seventh Circuit held in *United States v. Walters*, 997 F.2d 1219 (7th Cir. 1993), "[b]oth

the 'scheme or artifice to defraud' clause and the 'obtaining money or property'

clause…contemplate a transfer of some kind." *Id.* at 1227. In Mr. Carpenter's case there

was no "deceitful scheme" or any fraudulent material misrepresentations, but more

importantly, there are **none** specifically alleged in the Indictment. And as the Seventh

Circuit points out, just because there were losses in a "deceitful scheme," that does not

satisfy the statutory requirements of mail and wire fraud.

Moreover, the mailings relied upon by the Government, none of which originated

with Mr. Carpenter or were caused by him, occurred after the alleged "scheme" was

complete and did nothing to further the scheme. Illustrative of this point is a recent

decision by Judge Jed Rakoff, sitting by designation in the Ninth Circuit, where the

defendant defrauded his own company through phony billing and caused the payments

for the fake bills sent to a woman friend, who bought him an expensive watch that she

then sent to him. The gift of the watch had nothing to do with the fraud, yet it was that

mailing, <u>after</u> the fraud was accomplished (the money was in her hands already from the

fake billing), on which the government relied. The Ninth Circuit reversed the

defendant's mail fraud conviction, concluding that the success of the alleged scheme did

not depend in any way on the use of the mails. *See, e.g., United States v. Phillips*, 704

F.3d 754, 763 (9th Cir. 2012).

None of the wires were "steps in the plot" to mask or hide anything, and by the

time the money was sent; the alleged fraud had been completed. The Government's

problem with Mr. Carpenter is that he engaged in allegedly "risky" option trading that

was supposedly not disclosed to the Exchangors.   Mr. Carpenter could have lost the

money just as easily in auction rate municipal bonds as LandAmerica did, losing over

$400 Million of clients' funds, none of which was recovered unlike the judicial jackpot

the Exchangors have enjoyed here at Mr. Carpenter's expense.   A mere deprivation does

not suffice for a mail fraud charge.   The court stated that "…losses that occur even as the

byproduct of a deceitful scheme do not satisfy the statutory requirement" of mail and

wire fraud.   *Walters*, 997 F.2d at 1227. Ultimately, to support its mail and wire fraud

charges, the Government has simply alleged an undisclosed investment risk and a breach

of contract claim.   That allegation is insufficient as a matter of law to state an offense.   As

the D.C. Circuit explained:

> [P]remising a felony solely on a scheme to defraud an employer of the loyal
> services of his employee has spawned a fierce debate about potential over-
> criminalization of employer-employee breakdowns, better handled in the civil
> courts.   Carried to its logical extreme, such a theory would criminalize any
> intentional undisclosed breach of duty to an employer. The government appears to
> be arguing just such a theory here, but we are not inclined to accept it . . . .

*United States v. Lemire*, 720 F.2d 1327, 1336 (D.C. Cir. 1983) (footnote omitted).   This

Court should similarly reject the Government's novel and expansive theory of fraud

liability, vacate Mr. Carpenter's conviction and dismiss the Indictment pursuant to Rule

12(b)(3)(B).

## IV.   THE INDICTMENT MUST BE DISMISSED FOR FAILURE TO SPECIFICALLY ALLEGE ALL OF THE ELEMENTS OF THE OFFENSE

The Indictment also must be dismissed because (1) it fails to allege that the

victims were deprived of "property" within the meaning of the mail and wire fraud

statutes; (2) it fails to allege that Mr. Carpenter intended to defraud the Exchangors of

any property; and (3) it alleges no mailing or wiring that was in furtherance of the scheme

16

to defraud or that was a necessary part of the fraud, as required by the Supreme Court in *Parr v. United States*, 363 U.S. 370 (1960), *Maze, supra,* and *Kann, supra*. For these reasons, as written, the Indictment is insufficient on its face.

In his highly regarded report to Congress on mail and wire fraud dated July 21, 2011, Charles Doyle of the Congressional Research Service, states that the elements of mail and wire fraud that must be alleged in an indictment and proven beyond a reasonable doubt are that the defendant(s):

(1)   Used either mail or wire communications **in the foreseeable furtherance**,
(2)   of a scheme to defraud,
(3)   involving a material deception,
(4)   with the intent to deprive another of,
(5)   either property or honest services.

*See* report to Congress on the elements of mail and wire fraud by the Congressional Research Service, CRS Report R41931*, Mail and Wire Fraud: An Abridged Overview of Federal Criminal Law*, by Charles Doyle, July 21, 2011.  Failure to properly allege each and every one of these elements with sufficient facts renders an indictment facially invalid.  "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *United States v. Russell*, 369 U.S. 749, 764 (1962).

Mr. Carpenter's Indictment is devoid of any **specific** intent to defraud.  In fact, the words "mens rea," "scienter," and even the "specific intent to defraud" are nowhere to be found in the Indictment, even though those words are required by the US Attorney's Manual. *USAM Chapter 9-43.000, Criminal Resource Manual at 948*.  In fact, the only time the word "intent" is mentioned at all is in the last sentence of the last paragraph of the Indictment, where it speaks of the Government's intent, not Mr. Carpenter's:

"...it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of said defendant up to the value of the above forfeitable property."

*Indictment* at ¶ 108

This fact alone renders the Indictment defective. Just reciting the basic elements of mail and wire fraud are not enough. The Government must alleged specific facts in an indictment that comprise a crime. Generally, Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires an indictment to provide "a plain, concise and definite written statement of **the essential facts** constituting the offense charged." *United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993). (emphasis added).

Accordingly, the Indictment must contain a detailed description of the particular scheme the Defendant is charged with, devising to ensure that the Defendant has sufficient notice of the nature of the offense. *See Yefsky*, 994 F.2d at 893 ("The indictment may incorporate the words of the statute to set forth the offense, but the statutory language '"must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."'") (quoting *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)) (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888))); *cf. United States v. Nance*, 533 F.2d 699, 702 (D.C. Cir. 1976) (noting with approval mail fraud count that specifies misrepresentations); *United States v. Curtis*, 506 F.2d 985, 990 (10th Cir. 1974) (citations omitted) (dismissing mail fraud indictment that excludes false pretenses).

In *Yefsky*, the court held that the indictment was defective in that it did not provide the defendant with adequate notice of the charge (conspiracy to commit mail

fraud) against him. 994 F.2d at 993 ("Where guilt depends so crucially upon . . . a specific identification of fact, . . . cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.") (citing *Hamling*, 418 U.S. at 118).   In *Curtis*, the court stated the following in considering the sufficiency of the allegations contained in an indictment charging mail fraud:

> Mere evidential matters or detail more appropriate in bills of particular need not be pleaded in an indictment based upon 1341. [citations omitted] But as these cases demonstrate, some substantial indication of the nature or character of any scheme or artifice to defraud, or to obtain money or property by means of false pretenses, representations or promises is requisite. And it is not sufficient in this regard to merely plead the statutory language. [citations omitted] A reference to the cases cited first above will disclose that in each instance the nature of the schemes or artifices is identified or described, including the particular pretenses, representations or promises claimed to have been false.

506 F.2d at 989-90 (holding that the indictment, which pleaded little more than the statutory language without any fair indication of the nature or character of the scheme or artifice relied upon, or the false pretenses, misrepresentations or promises forming a part of it, was fatally defective).

The elements of fraud are: (1) a false representation, usually one of fact, made by the defendant; (2) the defendant's knowledge or belief that the representation was false, or was made with reckless indifference to the truth; (3) an intent to induce the plaintiff to act or to refrain from acting; (4) the plaintiff's action or inaction taken in justifiable reliance upon the representation; and (5) damage to the plaintiff as a result of such reliance. *Lord v. Souder*, 748 A.2d 393, 402 (Del. 2000), citing *Stephenson v. Capano Dev., Inc., Del. Supr.*, 462 A.2d 1069, 1074 (1983).

At this late date, the government has failed to even allege a single knowingly false, written or oral, statement by Mr. Carpenter.

It is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.  Undoubtedly the language of the statute may be used in the general description of an offence, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offence, coming under the general description, with which he is charged.

*Hamling v. United States*, 418 U.S. 87, 117 (1974) (internal quotations and citations omitted).   The Court usually accepts as true the facts alleged in the indictment and determines only whether the indictment is "valid on its face." *Costello v. United States*, 350 U.S. 359, 363 (1956).

Mr. Carpenter argues that the Indictment must be dismissed because it fails to allege that the victims were **deprived of "property" within the meaning of the mail and wire fraud statutes**, and because it **fails to allege that Mr. Carpenter intended to defraud** the Exchangors of any property.   (See, e.g., *United States v. Kurtz*, 04-CR-0155A (W. Dist. NY 2008).

In the context of mail fraud and wire fraud, "the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" *McNally v. United States*, 483 U.S. 350, 358 (1987) (quoting *Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924)).   It need not be shown that the intended victim of the fraud was actually harmed; it is enough to show the **defendant contemplated doing actual harm**, that is, **something more than merely deceiving the victim**.   As a consequence, **the deceit practiced** must be related to the **contemplated harm**, and **that harm must be found to reside in the bargain sought to be struck**. *See United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1180-82 (2d Cir.1970).

**In order for the Indictment to allege a valid charge of mail or wire fraud under these circumstances, it must allege that the Exchangors were deprived of some property right**. *See Schwartz*, 924 F.2d at 420-21 (where the seller of goods (night vision goggles) was paid for such goods, wire fraud indictment must allege a deprivation of "property" beyond the goods themselves).

With regard to the Exchangors as alleged victims, the Indictment is also insufficient. There is no allegation in the Indictment that Mr. Carpenter **ever actually possessed**, or had any "right, ownership or interest," in such "property." Moreover, even if it were assumed that the Exchangors were deprived of "property," the Indictment would still be insufficient because it does not allege **any type of misrepresentation or fraudulent conduct directed toward the Exchangors** regarding the "property." For example, the Indictment does not allege that Mr. Carpenter misrepresented to the Exchangors that the funds were to be invested in a major bank's Certificates of Deposit.

> Our cases have drawn a fine line between schemes that do no more than cause their victims to enter into transactions they would otherwise avoid-which do not violate the mail or wire fraud statutes-and schemes that depend for their completion on a misrepresentation of an essential element of the bargain-which do violate the mail and wire fraud statutes.
>
> We concluded that no conviction under the mail fraud statute could stand where the misrepresentation was "not directed to the quality, adequacy or price of goods to be sold, or otherwise to the nature of the bargain." *See United States v. Regent Office Supply Co.*, 421 F.2d 1179 (2dCir.1970).
>
> The defendants nonetheless charged their customers as if the mailings were high-rate, and produced and mailed false invoices to show that the high-rate price had in fact been paid. Id. We decided that "[t]he misappropriation of funds simply ha[d] no relevance to the object of the contract; namely, the delivery of mail to the appropriate destination in a timely fashion." *United States v. Starr,* 816 F.2d 94, 100 (2d Cir.1987). **Because "[m]isrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution,"** we concluded that such a charge can not apply to situations where the alleged victims "received exactly what they paid for" and "there was no discrepancy between benefits

reasonably anticipated and actual benefits received." *Id.* at 98-99 (internal quotation marks and citation omitted).

And as in *Regent Office*, [the Carpenter Indictment] fails to allege that [Mr. Carpenter] misrepresented "the nature of the bargain." Instead, the indictment states only that [Mr. Carpenter's] misrepresentation induced [the Exchangors] to enter into a transaction it would otherwise have avoided. Because it does not assert that [Mr. Carpenter's] misrepresentation had "relevance to the object of the contract," we do not think it is legally sufficient. *United States v. Shellef*, 507 F.3d 82, 109 (2d Cir. 2007) (citations omitted).

The heart of the mail and wire fraud statutes is to condemn – and to punish – the willful and knowing participating in a scheme to defraud – both the successful and unsuccessful. "[T]he wire fraud statute punishes the scheme, not its success." *Pasquantino v. United States*, 544 U.S. 349, 371 (2005). If there is no "scheme to defraud" then there is no mail and wire fraud. As Justice Scalia famously scolded the Supreme Court: "[I]t is mail fraud, not mail and fraud..." *Schmuck v. United States*, 489 U.S. 705, 723 (1989) (Scalia, J. dissenting).

In the context of mail fraud and wire fraud, "the words 'to defraud' commonly refer 'to wronging one in his property rights by dishonest methods or schemes,' and 'usually signify the deprivation of something of value by trick, deceit, chicane or overreaching.'" *McNally v. United States*, 483 U.S. 350, 358 (1987), *quoting Hammerschmidt v. United States*, 265 U.S. 182, 188 (1924). Although the Indictment need not show that the intended victim of the fraud was actually harmed, it must show that the defendant **contemplated doing actual harm** to the insurance carriers. He must have intended to do something more than merely deceiving the victim. *See United States*

*v. Regent Office Supply Co.*, 421 F.2d 1174, 1180-81 (2d Cir.1970). As a consequence, the deceit practiced must be related to the contemplated harm, and that harm must be found to reside in the bargain sought to be struck. *Id.* at 1182.

Furthermore, it is well established that a mere breach of contract does not constitute fraud nor does every mailing or wire that is part of an actual fraud rise to the level of federal mail and wire fraud. Not every use of the mails or wires in furtherance of an unlawful scheme to deprive another of property constitutes mail or wire fraud. Nor does a breach of contract in itself constitute a scheme to defraud. *See, e.g., United States v. Kreimer*, 609 F.2d 126, 128 (5th Cir. 1980) ("The [mail fraud] statute does not reject all business practices that do not fulfill expectations, nor does it taint every breach of a business contract"); *McEvoy Travel Bureau, Inc. v. Heritage Travel, Inc.*, 904 F.2d 786, 791-92 (1990).

The words "scheme to defraud" have long been held to mean: "to wronging one of his property rights by dishonest methods or schemes," and "usually signify the deprivation of something of value by trick, deceit, chicane or overreaching." *McNally* at 358. Nowhere in the Carpenter Indictment is anyone "deprived" of anything by "trick, deceit, chicane, or overreaching." None of those words even appear in the Indictment. Nor is there any allegation in the Indictment of any attempt by Mr. Carpenter to use the mails or the wires in the **furtherance** of any scheme to defraud. All the mailings and wires are done by other people not associated with Mr. Carpenter or BPETCO. If the "scheme to defraud" was Mr. Carpenter's investment strategy, that was done after the money was received, and was done on all 126 property exchanges, not just the five that

were not completed.   None of the talk in the Indictment mentions any "deception,"
"trickery" or "harm" meant to "deprive" anyone of anything.

It has long been held that mail and wire fraud statutes speak of schemes to
defraud or to obtain money or property by deceit or trickery.   Here, by accepting the
Exchangors' proceeds from a sale of property, BPETCO incurred a debt and a liability.
*See United States v. Howard,* 619 F.3d 723, 727 (7th Cir. 2010); *United States v. Phipps,*
595 F.3d 243, (2010) ("Mail and wire fraud are both specific intent crimes that require
the Government to prove that a defendant knew the scheme involved false
representations"); *United States v. Stalnaker,* 571 F.3d 428, 436 (5th Cir. 2009).   *See also*
*United States v. Coughlin*, 610 F.3d 89, 98 (D.C. Cir. 2010); *United States v. Maxwell*,
579 F.3d 1282, 1301 (11th Cir. 2009) ("[A]n intent to defraud is not present if the
defendant knew that he could not deceive the recipient with his statements").   If Mr.
Carpenter's investment strategy had succeeded, would there have been an indictment?
We will never know.   But that question means there was no fraudulent scheme here.

Therefore, none of these allegations go to the **materiality** of the property
exchange or to the elements of the bargain.   This is exactly why the district court in
*United States v. Kurtz*, 2008 WL 1820903 (W.D.N.Y. April 21, 2008), dismissed the
indictment against a scientist accused of mail and wire fraud for allegedly stealing
biological materials and selling them.

> "Our cases have drawn a fine line between schemes that do no more than cause
> their victims to enter into transactions they would otherwise avoid-which do not
> violate the mail or wire fraud statutes-and schemes that depend for their
> completion on a misrepresentation of an essential element of the bargain-which
> do violate the mail and wire fraud statutes.
>
> In *United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir.1970), the
> defendants sold stationery, *id.* at 1176. The defendants' scheme consisted of

directing their sales personnel to misrepresent their identities to prospective customers so that the customers would be willing to entertain their offers. *See id.* (noting, as an example, that the sales personnel fraudulently claimed that they had been referred by a friend of the customer or an officer of the customer's firm). We concluded that no conviction under the mail fraud statute could stand where the misrepresentation was "not directed to the quality, adequacy or price of goods to be sold, or otherwise to the nature of the bargain." *See id.* at 1179.

> *United States v. Starr*, 816 F.2d 94 (2d Cir.1987), is similar. The defendants there collected bulk mailings from their customers and then sent them through the post office. *See id.* at 95-96. At the post office, however, they hid high-rate mail in low-rate mail packages, and paid the low-rate price for the entire shipments. *Id.* at 96. The defendants nonetheless charged their customers as if the mailings were high-rate, and produced and mailed false invoices to show that the high-rate price had in fact been paid. *Id.* We decided that "[t]he misappropriation of funds simply ha[d] no relevance to the object of the contract; namely, the delivery of mail to the appropriate destination in a timely fashion." *Id.* at 100. Because "[m]isrepresentations amounting only to a deceit are insufficient to maintain a mail or wire fraud prosecution," we concluded that such a charge cannot apply to situations where the alleged victims "received exactly what they paid for" and "there was no discrepancy between benefits reasonably anticipated and actual benefits received." *Id.* at 98-99 (internal quotation marks and citation omitted); *cf. id.* at 102 (Newman, J., concurring) ("An indictment for defrauding the Postal Service would have led to a conviction that would surely have been affirmed. However, the indictment for defrauding the customers has led to a conviction that must be reversed.")

*United States v. Shellef*, 507 F.3d 82, 107-109 (2d Cir. 2007).  Applying these cases to

the case before it, the Second Circuit concluded:

> As in *Starr*, the indictment here does not allege, pursuant to the government's "no-sale" theory, that there was a "discrepancy between benefits reasonably anticipated" and actual benefits received. And as in *Regent Office*, it fails to allege that [the defendant] misrepresented "the nature of the bargain." Instead, the indictment states only that [the defendant's] misrepresentation induced [the manufacturer] to enter into a transaction it would otherwise have avoided. Because it does not assert that [the defendant's] misrepresentation had "relevance to the object of the contract," we do not think it is legally sufficient. *Shellef*, 507 F.3d at 109 (citations omitted). *Kurtz*, 2008 WL at *4-*6.

Just as in *Kurtz*, the Indictment here is constitutionally infirm and is defective on

its face because it fails to sufficiently allege **the specific intent to defraud** the

Exchangors out of their property or money, through the use of mailings and wires in

furtherance of the scheme to defraud. Instead, BPETCO took on a liability to pay the Exchangors back at some time in the future at a 3% or 6% rate of return. Just as with a Bank or Insurance Company, BPETCO paid a stated rate of interest and how it invested the money was BPETCO's business and not the Exchangors'. If the Exchangors would not have done the "deal" with BPETCO because of "option trading" or the trades losing money, then this is the *Shellef* "doctrine" in spades.

> As in Starr, the indictment here does not allege…that there was a "discrepancy between benefits reasonably anticipated" and actual benefits received. And as in <u>Regent Office</u>, it fails to allege that [the defendant] misrepresented "the nature of the bargain." **Instead, the indictment states only that [the defendant's] misrepresentation induced [the Exchangors] to enter into a transaction it would otherwise have avoided. Because it does not assert that [the defendant's] misrepresentation had "relevance to the object of the contract," we do not think it is legally sufficient.** *Shellef*, 507 F.3d at 109 (emphasis added).

As discussed above, the government's "scheme to defraud" theory is legally invalid.

## V.  THE INDICTMENT MUST BE DISMISSED BECAUSE IT FAILS TO ASSERT THE NECESSARY FACTS TO STATE AN OFFENSE UNDER THE MAIL AND WIRE FRAUD STATUTES

The Indictment as it relates to Mr. Carpenter is also constitutionally deficient because it contains no description beyond the conclusory allegations referencing the statute allegedly violated. As such, the Indictment in its current state deprives Mr. Carpenter of constitutionally fair notice of the charges and for that reason alone should be dismissed. *See Fleisher v. United States*, 302 U.S. 218 (1937), for the proposition, "To be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie, the defendant's commission of that crime." *United States v. Superior Growers Supply, Inc.,* 982 F.2d 173, 177 (6th Cir.1992). *See also United States v. Polychron*, 841 F.2d 833 (8th Cir.), *cert. denied*, 488

U.S. 851 (1988). A bill of particulars cannot cure a legal deficiency in the Indictment; rather, the proper result is dismissal of the indictment. *See, e.g.*, *United States v. Russell*, 369 U.S. 749, 770 (1962)("But it is a settled rule that a bill of particulars cannot save an invalid indictment"). S*ee also United States v. Norris*, 281 U.S. 619, 622 (1930).

> The Supreme Court has cautioned:

> Undoubtedly the language of the statute may be used in the general description of the offense, but it must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description with which he is charged.

*Hamling v. United States*, 418 U.S. 87, 117 (1974). *See also United States v. Novak*, 443 F.3d 150, 159 (2d Cir. 2006) (holding that, absent intent to harm or actual harm, deception alone does not constitute fraud); *United States v. Starr*, 816 F.2d 94, 98-99 (2d Cir. 1987) (holding that because the scheme was **designed to satisfy** [the Exchangors], rather than harm the [Exchangors], the deception did not constitute fraud); *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1181 (2d Cir. 1970) (rejecting government's theory that merely inducing the customers "to part with their money because of the false representations...amounted to fraud"). David Patterson had more to do with writing the Escrow Agreement with Paley than I did. See Exhibit 141 showing not even a word or mark made by Carpenter.

In *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002), the Government argued that "an indictment or information charges an offense, for purposes of Rule 12(b)(2), as long as it recites in general terms the essential elements of the offense, even if the specific facts alleged in the charging instrument fail to satisfy those elements." The

court in *Panarella* held, however, that "**for purposes of Rule 12(b)(2),**[2] **a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute**, as a matter of statutory interpretation." *Id.* (emphasis added).

The court's common sense rejection of the Government's argument in *Panarella* — that an indictment that merely tracks the language of a criminal statute states an offense even where the facts it alleges do not fall within the meaning of that statute — is consistent with the law of this and every other circuit with respect to the sufficiency of an indictment. Therefore, an indictment is thoroughly defective — under the law of this and every other circuit — when it alleges conduct, however broadly and generously interpreted, that simply does not violate the charged statutes. Merely parroting the statute will not do. There must be specific allegations of facts and the necessary elements of the stated offense to survive a motion to dismiss the Indictment. This Indictment is woefully inadequate as a matter of law, and does not state the elements of mail and wire fraud to make the breach of contract into a "federal" crime, nor does it allege the facts necessary to constitute a criminal offense. The Indictment is devoid of any facts related to Mr. Carpenter, and at most the Indictment claims that Mr. Carpenter read or edited certain documents. That is not enough for a criminal indictment.

There is also no allegation in the Indictment that Mr. Carpenter owed any "honest services" or a "fiduciary duty" to the Exchangors; he did not. In fact, IRC Code Section 1031 specifically prohibits a fiduciary relationship. Mr. Carpenter only agreed to invest

---

[2] The Federal Rules of Criminal Procedure were amended effective December 1, 2002. The new Rule 12 places the old Rule 12(b)(2), which authorizes the filing of a motion to dismiss an indictment or information for failure to state an offense, at Rule 12(b)(3)(B). Thus, although cases decided prior to that date refer to Rule 12(b)(2) as the rule permitting such motions, that rule now appears at Rule 12(b)(3)(B).

the funds for BPETCO, all to his loss.   In sum, as the Indictment relates to Mr.

Carpenter's investment activities, it fails to state a viable claim of mail or wire fraud.

### VI.   THE INDICTMENT AGAINST CARPENTER MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE ANY MONEY OR PROPERTY ACTUALLY WAS LOST BY THE EXCHANGORS

The mail fraud statute renders criminal the use of the mails in furtherance of "any

scheme or artifice to defraud, or for obtaining money or property by means of false or

fraudulent pretenses, representations or promises."  18 U.S.C. § 1341.  Although this

formulation might be read disjunctively to provide that obtention of money or property

need not be involved in the case of a "scheme or artifice to defraud," the Supreme Court

reviewed the history of the mail fraud statute in McNally v. United States, 483 U.S. 350,

356-59 (1987), and rejected this interpretation.  Id. at 359-60.  Accordingly, as the Court

stated in McNally and reiterated in Carpenter v. United States, 484 U.S. 19 (1987), §1341

"is 'limited in scope to the protection of property rights.'"  Carpenter, 484 U.S. at 25

(quoting McNally, 483 U.S. at 360).  Now that the government knows, or should know,

the Exchangors have been paid $15 million by Mr. Carpenter and BPETCO and $31

million by Merrill and $4.5 million through a reach and apply action against a settlement

earned by an independent company Mr. Carpenter once was affiliated with, there is no

loss and no breach whatsoever.  Moreover, based on the decision by the Massachusetts

State Court that Merrill's attorneys, Bingham McCutchen, were held culpable of

destroying evidence and losing evidence, there is probably another big settlement coming

from Bingham down the road. See Cahaly v. BPETCO, No. 12–P–956 (Mass. App.

2014).

In accordance with *McNally* and *Carpenter*, "[t]he essential elements of a mail fraud violation are (1) a scheme to defraud, (2) **money or property [as the object of the scheme]**, and (3) use of the mails to further the scheme." *United States v. Wallach*, 935 F.2d 445, 461 (2d Cir. 1991) (emphasis added). An in depth analysis by the Second Circuit of why this Indictment does not properly invoke the necessary element of the mail and wire fraud statutes because the allegations did not involve the "obtention of **money and property**" by fraud within the meaning of § 1341 can be found in *United States v. Miller*, 997 F.2d 1010, 1012 (1993). Even at sentencing, the Court stated that Mr. Carpenter always intended to repay the money and, in fact, he has and did in June of 2008 before the second trial in this case began.

*United States v. Cleveland*, 531 U.S. 12 (2000), showed that there must be real property or money that is the object of the fraud, and not intangibles like "licenses." To deprive victims of **<u>real property or money</u>** by fraud, trickery, or chicanery is the only way to invoke federal court jurisdiction through the mail and wire fraud statutes. "Since we hold below that the scheme to fraudulently obtain ATC-IATA approval of the Norton-Heritage arrangement was not a scheme to defraud anyone of money or property, the mailings and wirings alleged in connection with the alleged illegal payments would not constitute mail and wire fraud under *McNally*, even if they could be construed as being in furtherance of that scheme. We note, moreover, that the mere fact that these mailings and wirings occurred as a result of the scheme to fraudulently obtain ATC-IATA approval does not mean they could be construed as being in furtherance of that scheme. *See, e.g., United States v. Maze*, 414 U.S. 395, 405 (1973)." *McEvoy,* 904 F.2d at 792 n.10.

In the instant matter, there is no longer a claim that any of the Exchangors actually lost any money.  To the contrary, the Exchangors have made millions in their judicial jackpots, and have suffered no actual loss.  The Exchangors, in sum, were not deprived of property, nor was it the intent of Mr. Carpenter to deprive the Exchangors of money or property.  The Indictment is filled with speculation and theories about possible loss, but there is no specific claim of actual loss of money or property, or allegations that Mr. Carpenter **intended** any of the Exchangors to suffer any loss, which is the *sine qua non* of mail and wire fraud; he did not intend for anyone to lose money.  The Indictment, therefore, should be dismissed.

### VII.   THE INDICTMENT MUST BE DISMISSED BECAUSE IT FAILS TO ALLEGE ANY KNOWLEDGE OR EVIL INTENT ON MR. CARPENTER'S PART

The Indictment must also be dismissed because it fails to allege any "**knowledge**" on the part of the Mr. Carpenter that he was **willfully** participating in a scheme to defraud.  One of the elements which has been considered **indispensable** to an indictment for any type of crime is **knowledge**; e.g., knowledge that a law was broken.  In *Pettibone v. United States*, 148 U.S. 197 (1893), the defendants were charged with encouraging mine workers to disobey an injunction, and the Supreme Court, in reversing their conviction, stated:

> It seems clear that an indictment against a person… must charge a knowledge or notice, on the part of the accused….Unless that fact exists, the statutory offense cannot be committed…and without such knowledge or notice, the evil intent is lacking.

*Id.* at 206-207.

This requirement of a direct and explicit allegation of knowledge of breaking the law in an indictment was reiterated by the United States Court of Appeals for the Fourth

Circuit in *Asgill v. United States*, 60 F.2d 780 (4th Cir. 1932), in which the court held that

merely alleging the means intended to be used cannot be taken inferentially to support a

criminal indictment, unless the essential elements of the unlawful agreement and purpose

have been fully and clearly stated.  The court further stated: "When the charge is laid,

however, the terms of the agreement must be set forth therein and until this is done

evidence of the conduct of the parties cannot be held to be competent or responsive to the

then alleged agreement." *Id.* at 785.  In *Direct Sales Co. v. United States*, 319 U.S. 703

(1943), the Supreme Court affirmed the position it had taken in the *Pettibone* case fifty

years prior and stated:

> Without the knowledge, the intent cannot exist....Furthermore, to establish the
> intent, the evidence of knowledge must be clear, not equivocal....This, because
> charges...are not to be made out by piling inference on inference, thus
> fashioning...a dragnet to draw in all substantive crimes.

*Id.* at 711.

There is no mention in the Indictment of Mr. Carpenter's "specific intent" to

As the Supreme Court teaches us in *Morissette v. United States*, 342 U.S. 246

(1952), for there to be a crime, an evil act must be concurrent with an evil mind. "Crime,

as a compound concept, generally constituted only from concurrence of an evil-meaning

mind with an evil-doing hand," quoting Justice Holmes' famous observation that "[e]ven

a dog distinguishes between being stumbled over and being kicked." *Id.* at 251-52.

There is no mention in the Indictment of Mr. Carpenter's "specific intent" to

defraud anyone.  Furthermore, please see *Sanchez v. Triple-S Management, Corp.*, 492

F.3d 1 (2007), where the plaintiffs tried to change the mail and wire fraud claims from

one of misrepresentations to a claim of omissions, which is exactly the situation in this

case.  In *Triple-S*, the First Circuit dismissed the plaintiffs' claims and upheld the district

court's dismissal, as this Court should do now.  The First Circuit already held in *Bonilla*

*v. Volvo Car Corp.*, 150 F.3d 62 (1998), that there is no "legal, professional or contractual duty," nor even a "general obligation" to disclose.  It went on to say that "[w]hether or not this would bring business in the United States to a standstill might be debated; but it is a change, if it is ever to be made, that should be undertaken by legislatures and not by courts....However, if the disclosure was omitted in good faith, there was no fraud. *United States v. Dockray*, 943 F.2d 152, 155 (1st Cir.1991) (holding that good faith is an "absolute defense" to mail and wire fraud); *United States v. Ashman*, 979 F.2d 469, 480 (7th Cir.1992) (same)." *Id.* at 70.

With this in mind, the First Circuit in *Triple-S* went on to say:

A defendant's failure to disclose information, without more, cannot make out a violation of the mail and wire fraud statutes. *See, e.g., Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065, (11th Cir.2007); *United States v. Gray*, 405 F.3d 227, 235–36 (4th Cir.2005); *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir.2000); *United States v. Cochran*, 109 F.3d 660, 665 (10th Cir.1997); *Emery v. Am. Gen. Fin., Inc.*, 71 F.3d 1343, 1347 (7th Cir.1995); *United States v. Kamer*, 781 F.2d 1380, 1386 (9th Cir.1986)....We nevertheless observed that "[i]t would be a truly revolutionary change to make a criminal out of every salesman (assuming the use of the mails or telephone) who did not take the initiative to reveal negative information about the product and who—a jury might find— secretly harbored in his heart the hope that the buyer would never ask."

This Court should follow the *Triple-S* ruling, as the cases parallel completely:

The[] [government] do[es] not say whether [Carpenter] ha[s] a duty to disclose "the actual manner in which the [funds] were [invested]" or, if so, what the source of that duty is; they do not say whether the defendant[] "fail[ed] to disclose" or "conceal[ed]" this information with the intent to deceive the plaintiffs. Instead, they proceed on the assumption that nondisclosure alone can support mail and wire fraud claims. As we have discussed, **that is not the law**, in this circuit or elsewhere.

*Id.* at 11. (emphasis added).

Therefore, since the Indictment is devoid of any "evil acts" actually done by Mr. Carpenter and any "evil mind" is pure conjecture on the part of the government, Mr.

Carpenter's conviction should be vacated and his Indictment should be dismissed in its entirety.   Because of the lack of any specific intent to defraud on the part of Mr. Carpenter in the Indictment or any reference to anyone having **knowledge** of BPETCO and the property exchange transactions breaking the law, and based on the law of the First Circuit as stated above in *Triple-S*, *Bonilla* and *Cassiere*, and the fact that the government had an obligation to either agree to a new trial for Mr. Carpenter based on the newly disclosed Merrill evidence or to dismiss the charges altogether, Mr. Carpenter respectfully asks this Court to vacate his conviction, order his immediate release from prison and to dismiss the Indictment as was done by the Second Circuit in the *Aleynikov* case mentioned above, all pursuant to Rule 12(b)(3)(B).

<div style="margin-left: 50%;">

Respectfully Submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Reg. No. 90792-038
USP Canaan
Satellite Camp
P.O. Box 200
Waymart, PA 18472

</div>