# EXHIBIT
# ONE

5 of 7 DOCUMENTS

## Joseph Iantosca et al. v. Merrill Lynch Pierce Fenner & Smith, Inc.

### Opinion No.: 106524, Docket Number: 08-0775-BLS2

### SUPERIOR COURT OF MASSACHUSETTS, AT SUFFOLK

### 25 Mass. L. Rep. 361; 2008 Mass. Super. LEXIS 479

### November 25, 2008, Filed

**PRIOR HISTORY:** Cahaly v. Benistar Prop. Exch. Trust Co., 451 Mass. 343, 885 N.E.2d 800, 2008 Mass. LEXIS 333 (2008)

**CASE SUMMARY:**

**PROCEDURAL POSTURE:** Defendant investment company filed a motion to dismiss, for failure to state a claim, plaintiff investor's action for fraud and violation of Mass. Gen. Laws ch. 93A; the investment company claimed that the conduct alleged did not constitute either violation of ch. 93A or fraud, and that Massachusetts did not recognize a cause of action for malicious defense.

**OVERVIEW:** The investors contracted with a trust company to hold their funds in escrow while they engaged in tax-advantaged "like kind" property exchanges. The trust company deposited some of the funds in margin accounts with the investment company, and then used the funds to engage in high-risk option trading, resulting in losses of more than eight million dollars. The investors alleged that the investment company aided and abetted the trust company's breach of fiduciary duty, failed to produce documents, denied liability, and pursued litigation in an attempt to harass the investors, to impose financial costs and emotional distress on the investors, and to extort the investors to settle for less than what they were owed. The court found that the conduct alleged did not constitute either a violation of ch. 93A or fraud. In addition, Massa-

Case 1:04-cr-10029-GAO   Document 496-1   Filed 05/18/15   Page 3 of 44   Page 2

25 Mass. L. Rep. 361; 2008 Mass. Super. LEXIS 479, *

chusetts courts had never recognized a tort of malicious defense since Massachusetts law provided ample remedies for misconduct in the defense of litigation. Accordingly, the investors failed to state a claim upon which relief could be granted.

**OUTCOME:** The motion was allowed.

**CORE TERMS:** factual allegations, malicious, perjury, failed to produce, malicious prosecution, cause of action, jury verdicts, underlying case, attorneys fees, involvement, misconduct, discovery, destroyed, concealed, emotional, distress, brokers, settle, unfair, fiduciary, fraud count, failure to state a claim, underlying litigation, discovery requests, denial of liability, citations omitted, spoliation of evidence, fails to state, criminal prosecution, perjurious

## LexisNexis(R) Headnotes

*Civil Procedure > Pleading & Practice > Defenses, Demurrers & Objections > Motions to Dismiss*
[HN1] While a complaint attacked by a motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions. Factual allegations must be enough to raise a right to relief above the speculative level based on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Civil Procedure > Pleading & Practice > Pleadings > Complaints > Requirements*
[HN2] At the pleading stage, a plaintiff must present factual allegations plausibly suggesting (not merely consistent with) an entitlement to relief, in order to reflect the threshold requirement of Fed. R. Civ. P. 8(a)(2) that the plain statement possess enough heft to show that the pleader is entitled to relief. In applying this standard, a court accepts the factual allegations of the complaint as true, but disregards characterizations and conclusions.

*Antitrust & Trade Law > Trade Practices & Unfair Competition > State Regulation > Coverage*
*Torts > Business Torts > Unfair Business Practices > General Overview*
[HN3] Mass. Gen. Laws ch. 93A is a statute of broad impact that creates new substantive rights and provides new procedural devices for the enforcement of those rights. The statute applies, however, only to actions taken in the course of trade or commerce, and has never been read so broadly as to establish an independent remedy

Case 1:04-cr-10029-GAO   Document 496-1   Filed 05/18/15   Page 4 of 44

Page 3

25 Mass. L. Rep. 361; 2008 Mass. Super. LEXIS 479, *

for unfair or deceptive dealings in the context of litigation, with the statutory exception as to those engaged in the business of insurance.

***Antitrust & Trade Law > Trade Practices & Unfair Competition > State Regulation > Coverage***
***Torts > Business Torts > Unfair Business Practices > General Overview***
[HN4] The conduct of litigation is not conduct in trade or commerce, and, therefore, does not give rise to liability under Mass. Gen. Laws ch. 93A, except where the legislature has expressly subjected such conduct to that statute, as in Mass. Gen. Laws ch. 176D.

***Torts > General Overview***
[HN5] Massachusetts courts have never recognized a tort of malicious defense.

**JUDGES:** [*1] Judith Fabricant, Justice of the Superior Court.

**OPINION BY:** Judith Fabricant

## OPINION

MEMORANDUM OF DECISION AND ORDER ON DEFENDANTS' MOTION TO DISMISS

INTRODUCTION

This action arises from the events described in *Cahaly v. Benistar Property Exchange Trust Company, Inc.,* 451 Mass. 343, 885 N.E.2d 800 (2008) *("Cahaly").* The plaintiffs here, who are the plaintiffs in that case, claim fraud and G.L.c. 93A violations by the defendant Merrill Lynch based on its conduct in that litigation. Before the Court is the defendant Merrill Lynch's motion to dismiss for failure to state a claim. For the reasons that will be explained, the motion will be allowed.

BACKGROUND

The history of the dispute as it appears in the Supreme Judicial Court's decision in *Cahaly,* 451 Mass. at 345-47, is essentially as follows. The plaintiffs, a group of individuals and institutions, contracted with Benistar Property Exchange Trust Company, Inc. ("Benistar"), to hold their funds in escrow while they engaged in tax-advantaged "like kind" property exchanges. Benistar deposited the funds in margin accounts with Merrill Lynch, and later with UBS Paine Webber, Inc., and then used the funds to engage in high-risk option trading, resulting in losses of more than [*2] eight million dollars.

Case 1:04-cr-10029-GAO   Document 496-1   Filed 05/18/15   Page 5 of 44   Page 4

25 Mass. L. Rep. 361; 2008 Mass. Super. LEXIS 479, *

The plaintiffs brought a set of suits against Benistar, its principals and related entities (collectively, "Benistar"), Paine Webber, and Merrill Lynch. The claims against Merrill Lynch alleged that it aided and abetted Benistar's breach of fiduciary duty. Those cases were consolidated, and eventually tried before Judge Botsford. The plaintiffs won jury verdicts against Benistar and Merrill Lynch. Judgment entered on the verdicts against Benistar, but Judge Botsford allowed Merrill Lynch's motion for judgment notwithstanding the verdict, ruling that the evidence was insufficient to support a finding that Merrill Lynch had actual knowledge of Benistar's fiduciary role.

Thereafter, the plaintiffs moved to reinstate the jury verdict, on the ground that newly discovered evidence established Merrill Lynch's knowledge. After an evidentiary hearing, Judge Botsford declined to reinstate the jury verdict, but did order a new trial on the plaintiffs' claims against Merrill Lynch. The Supreme Judicial Court affirmed Judge Botsford's rulings in *Cahaly,* and remanded the case to this Court, where it is now scheduled for trial in June of 2009. See *Cahaly,* 451 Mass. at 369.

The  [*3] plaintiffs filed this action on February 15, 2008, while the *Cahaly* case was under advisement before the Supreme Judicial Court. The complaint sets forth the basic factual allegations underlying the claims against Merrill Lynch in *Cahaly,* along with a set of factual allegations relating to Merrill Lynch's conduct during the *Cahaly* litigation, which may be summarized as follows. In 2001, before Merrill Lynch was joined as a defendant in *Cahaly,* the plaintiffs served on it a subpoena seeking documents relating to the Benistar accounts; Merrill Lynch did not produce documents it had been provided that put it on notice of Benistar's fiduciary role. Later, after Merrill Lynch was joined as a defendant and served with discovery requests, it still failed to produce those documents. Merrill Lynch "lied about its involvement with the Benistar accounts and destroyed, concealed and/or failed to produce the documents evidencing its participation with Benistar in the misuse of Benistar's clients' funds." Merrill Lynch "has persisted in its denial of liability" despite plaintiffs' discovery of documents Merrill Lynch had "destroyed, concealed and/or failed to produce" and despite Merrill Lynch's  [*4] knowledge "that the testimony provided at trial by its brokers was perjurious." Merrill Lynch "has pursued litigation in an attempt to harass plaintiffs, to impose financial costs and emotional distress on the plaintiffs and to extort plaintiffs to settle for less than they are owed." As a result, the complaint alleges, the plaintiffs "have suffered damages in the form of the attorneys fees, the loss of use of money, tax liabilities, accountants' fees and emotional distress."

Based on those factual allegations, the complaint sets forth three counts: violation of G.L.c. 93A (count I); fraud (count II), and "malicious defense" (count III). Merrill Lynch moves to dismiss all counts, contending that the conduct alleged does not con-

Case 1:04-cr-10029-GAO Document 496-1 Filed 05/18/15 Page 6 of 44 Page 5

25 Mass. L. Rep. 361; 2008 Mass. Super. LEXIS 479, *

stitute either violation of G.L.c. 93A or fraud, and that Massachusetts does not recognize a cause of action for "malicious defense." The Court agrees.

## DISCUSSION

The Supreme Judicial Court recently addressed the standard applicable to a motion to dismiss, and adopted the newly established federal standard, as articulated in *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007): [HN1] "While a complaint attacked by a . . . motion to dismiss does not need detailed factual [*5] allegations . . . a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions . . . Factual allegations must be enough to raise a right to relief above the speculative level . . . [based] on the assumption that all the allegations in the complaint are true (even if doubtful in fact) . . ." *Iannacchino v. Ford Motor Co.,* 451 Mass. 623, 636, 888 N.E.2d 879 (2008), quoting *Bell Atl. Corp,* 550 U.S. 544, 127 S.Ct. 1955 at 1964-65, 167 L. Ed. 2d 929 (internal quotations omitted). [HN2] At the pleading stage, the plaintiff must present "factual 'allegations plausibly suggesting (not merely consistent with)' an entitlement to relief, in order to 'reflect[ ] the threshold requirement of [Fed.R.Civ.P.] 8(a)(2) that the 'plain statement' possess enough heft to 'show[ ] that the pleader is entitled to relief.' " *Iannacchino,* 451 Mass. at 636, quoting *Bell Atl. Corp.,* 127 S.Ct. at 1966. In applying this standard, the Court accepts the factual allegations of the complaint as true, but disregards characterizations and conclusions. See e.g. *Boston & Maine R.R. v. County Commr's of Middlesex,* 239 Mass. 127, 131, 131 N.E. 283 (1921).

### 1. Count I: G.L.c. 93A.

The plaintiffs' complaint alleges, in substance, that [*6] by defending against the plaintiffs' claims, and by doing so in the manner alleged, Merrill Lynch violated c. 93A and committed torts. [1] [HN3] General Laws c. 93A "is a statute of broad impact which creates new substantive rights and provides new procedural devices for the enforcement of those rights." *Kattar v. Demoulas,* 433 Mass 1, 12, 739 N.E.2d 246 (2000) (bad faith foreclosure in retaliation for plaintiff's refusal to give testimony, in reckless disregard of the truth of the proposed testimony, violated c. 93A). The statute applies, however, "only to actions taken in the course of 'trade or commerce,' . . . and has never been read so broadly as to establish an independent remedy for unfair or deceptive dealings in the context of litigation, with the statutory exception as to those 'engaged in the business of insurance.' " *Morrison v. Toys "R" Us, Inc., Massachusetts,* 441 Mass. 451, 457, 806 N.E.2d 388 (2004) (internal citations omitted). Such a broad reading of the statute, the Court observed in that case, would not further its purpose "to improve the commercial relationship between consumers and business persons and to encourage more equitable behavior in the marketplace," but would instead "expose ordinary defendants [*7] . . . to the risk of liability for multiple damages and attorneys fees for

Case 1:04-cr-10029-GAO Document 496-1 Filed 05/18/15 Page 7 of 44 Page 6

25 Mass. L. Rep. 361; 2008 Mass. Super. LEXIS 479, *

choosing to go to court rather than settling a dispute, on the ground that its litigation tactics are perceived, by the opposing side, to be unfair." *Id.,* at 457-58. [2]

1 The allegations of the complaint might be read to suggest liability based on the conduct underlying the claims in *Cahaly,* as well as based on conduct in that litigation. At argument, the plaintiffs clarified that they do not intend such a claim, which would clearly be precluded by Mass.R.Civ.P. 12(b)(9).

2 Footnote 4 of the Court's decision in *Morrison* is particularly pertinent here: "Allegations in the plaintiff's supplemental brief referring to 'bad faith' behavior exhibited by Toys during the discovery process are not before us. We see no reason, however, why appropriate channels for dealing with this alleged conduct are not adequately provided by Mass.R.Civ.P. 37(a)(4), as amended, 417 Mass. 1401 (1994); Mass.R.Civ.P. 37(c), 365 Mass. 797 (1974); and G.L.c. 231, §6F."

The plaintiffs seek to distinguish *Morrison* on the ground that their claims against Merrill Lynch "are not based on its failure to settle their aiding and abetting claims," but **[*8]** rather on its "attempting to cover-up its involvement by destroying documents and lying about its knowledge of and participating in the scheme." The distinction is less than faithful to the allegations of the plaintiffs' own complaint, which asserts that Merrill Lynch "has persisted in its denial of liability" and "has pursued litigation in an attempt to harass plaintiffs, to impose financial costs and emotional distress on the plaintiffs and to extort plaintiffs to settle for less than they are owed." More to the point, the distinction reads *Morrison* more narrowly than its language and reasoning dictate. The Supreme Judicial Court's holding, in substance, was that [HN4] the conduct of litigation is not conduct in trade or commerce, and therefore does not give rise to liability under G.L.c. 93A, except where the legislature has expressly subjected such conduct to that statute, as in G.L.c. 176D. See also *Gath v. M/A-COM, Inc.,* 440 Mass. 482, 498-99, 802 N.E.2d 521 (2003) (no cause of action under c. 93A for spoliation of evidence); *Fletcher v. Dorchester Mut. Ins. Co.,* 437 Mass. 544, 551-52, 773 N.E.2d 420 (2002) (no common-law tort cause of action for spoliation of evidence). Count I of the complaint therefore fails to **[*9]** state a claim on which relief may be granted.

2. Count II: Fraud.

Count II, after incorporating all previous allegations, alleges that "Merrill Lynch's willfully and knowingly engaging in unfair and deceptive conduct constitutes fraud." The Court has carefully examined the factual allegations in an effort to identify facts

Case 1:04-cr-10029-GAO   Document 496-1   Filed 05/18/15   Page 8 of 44

Page 7

25 Mass. L. Rep. 361; 2008 Mass. Super. LEXIS 479, *

that would establish the elements of fraud: a false statement, of material fact, intended to induce reliance, on which the plaintiffs actually and reasonably relied. See *Friedman v. Jablonski,* 371 Mass. 482, 488, 358 N.E.2d 994 (1976). That examination has not yielded the necessary results, particularly in light of the heightened pleading requirement for fraud pursuant to Mass.R.Civ.P. 9(b).

Paragraphs 12, 13 and 15 of the complaint allege Merrill Lynch was given certain information and provided with certain documents. Paragraphs 22 and 24 allege Merrill Lynch did not produce or identify those documents in response to discovery requests, and paragraph 25 alleges Merrill Lynch "destroyed, concealed and/or failed to produce" those documents. These allegations may have provided a basis for sanctions in the underlying case, pursuant to Mass.R.Civ.P. 37, but they fall far short of alleging [*10] fraud. See *Fletcher,* 437 Mass. at 550-51.

Paragraph 25 begins to approach fraud: it alleges that "Merrill Lynch lied about its involvement with the Benistar accounts." However, it does not specify exactly what the lie was, or who uttered it, or when. Nor does it indicate any reliance by the plaintiffs on the alleged lie. Paragraph 26 gets slightly more specific in alleging that "Merrill Lynch's brokers testified under oath that they had no knowledge that the Benistar accounts contained other people's money." Paragraph 29 suggests that such testimony was false, without explicitly saying so, by referring to Merrill Lynch's "knowledge that the testimony provided at trial by its brokers was perjurious." These allegations do not, however, provide the detailed specificity required by Rule 9(b) as to the particular content and timing of the statements in issue and the identity of their makers, nor do they offer anything to indicate any reliance on the allegedly false testimony. See *Equipment & Sys. for Indus., Inc., v. Northmeadows Constr. Co.,* 59 Mass.App.Ct. 931, 931-32, 798 N.E.2d 571 (2003). Count II therefore fails to state a claim on which relief may be granted. [3]

3 This conclusion makes it unnecessary   [*11] to address the more fundamental question of whether perjury in the context of litigation could ever give rise to a fraud claim. The only authority either side has identified on that question is a decision of the Appellate Division of the District Court holding that it cannot. *Reznik v. Friswell,* 2003 Mass.App.Div. 89, 91 (2003). This Court finds the reasoning of that decision persuasive.

## 3. Count III: Malicious Defense.

Count III alleges that Merrill Lynch "created false material evidence and gave false testimony in advancing such evidence," thereby engaging in "malicious defense,"

causing injury to the plaintiffs. As the plaintiffs acknowledge, [HN5] Massachusetts courts have never recognized a tort of malicious defense. Nor has any other jurisdiction done so, with the sole exception of New Hampshire. See *Aranson v. Schroeder,* 140 N.H. 359, 365, 671 A.2d 1023 (1995); compare *Wilkinson v. Shoney's, Inc.,* 269 Kan. 194, 208, 4 P.3d 1149 (2000); *Bertero v. Nat'l Gen Corp.,* 13 Cal.3d 43, 52, 118 Cal. Rptr. 184, 529 P.2d 608 (1974); *Ritter v. Ritter,* 381 Ill. 549, 555, 46 N.E.2d 41 (1943). [4] [5],

4 The plaintiffs cite *Cisson v. Pickens,* 258 S.C. 37, 43-44, 186 S.E.2d 822 (1972), as "impliedly" recognizing a cause of action for malicious defense. The claim presented there was malicious prosecution, [*12] based on the defendant's conduct in intervening as a defendant in earlier litigation, asserting a defense, and appealing from its dismissal as a party. The Court affirmed summary judgment in favor of the defendant, observing that, "[w]hile it would appear that an action for malicious prosecution may be predicated on the interposition of a defense by a defendant, where the other conditions of an action for malicious prosecution are met . . . the record here conclusively shows that the essential elements of an action for malicious prosecution are not present" (internal citation omitted). Nothing before the Court indicates that South Carolina has recognized the proposed tort in any subsequent decision.

5 It is noteworthy that the New Hampshire Court limited the claim to parties who have already prevailed in the underlying litigation. *Aranson,* 140 N.H. at 368. Thus, even under the New Hampshire rule, this action would have to be dismissed for failure to state a claim, since the underlying litigation remains pending.

The New Hampshire Court authorized the new claim over vigorous dissent. The dissenting judge pointed out that the new cause of action would tend to stimulate increased litigation, [*13] to chill vigorous but meritorious defenses, and to drive a wedge between defendants and their attorneys. The dissenting judge also noted the availability of ample remedies for misconduct in the defense of litigation, including sanctions imposed by the trial judge in the underlying case, as well as criminal prosecution for perjury. *Aranson,* 140 N.H. at 371. This Court finds the reasoning of the dissent in *Aranson* persuasive, and predicts that our appellate courts will as well.

Massachusetts law provides ample remedies for misconduct in the defense of litigation, indeed apparently more than does New Hampshire law, as far as the *Aranson* decision indicates. Under G.L.c. 231, §6F, a court may award attorneys fees, costs, and interest at one hundred and fifty percent of the statutory rate, upon a finding, after conclusion of

25 Mass. L. Rep. 361; 2008 Mass. Super. LEXIS 479, *

the underlying case, that a party's defenses were "wholly insubstantial, frivolous and not advanced in good faith." Abuses in discovery may elicit sanctions pursuant to Mass.R.Civ.P. 37. Perjury and suborning perjury may subject a party or witness to criminal prosecution, and perjury that obstructs a court in the performance of its duty may result in prosecution for criminal   **[*14]** contempt. See *Miaskiewicz v. Commonwealth,* 380 Mass. 153, 157-58, 402 N.E.2d 1036 (1980). More broadly, our courts have recognized the inherent power of a trial court to impose appropriate sanctions for misconduct in the context of litigation. *Corsetti v. Stone,* 396 Mass. 1, 26, 483 N.E.2d 793 (1985). The claim of malicious defense, like the other claims the plaintiffs seek to advance in this case, would stimulate a proliferation of litigation, with all its attendant costs, without countervailing benefit to parties or to the judicial system.

CONCLUSION AND ORDER

For the reasons stated, the Defendant's Motion to Dismiss is *ALLOWED* as to all counts.

Judith Fabricant

Justice of the Superior Court

November     , 2008

## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

|                                    |   |                             |
|------------------------------------|---|-----------------------------|
| **UNITED STATES OF AMERICA**       | ) |                             |
|                                    | ) |                             |
| v.                                 | ) | **CRIMINAL NO. 04-10029-GAO** |
|                                    | ) |                             |
| **DANIEL E. CARPENTER,**           | ) |                             |
|                                    | ) |                             |
| **Defendant.**                     | ) |                             |
|                                    | ) |                             |

### JOINT REPORT CONCERNING MERRILL LYNCH EVIDENCE

As defense counsel has reported in recent pleadings, Merrill Lynch has produced

certain documents in its ongoing state civil litigation with the Exchangors that it had not

previously disclosed. The documents were the subject of recent deposition and trial

testimony in that matter. Defendant Daniel Carpenter submits that the new documents

and testimony provide additional support for his pending motions for new trial or

dismissal of the charges in this case.

The parties hereby submit this joint report to inform the Court that, after a

meeting between counsel for Mr. Carpenter and the government's attorneys, and at the

government's invitation, defense counsel has agreed to present the government with a

memorandum outlining what defense counsel believes is this new evidence and will make

an oral presentation to the government in support of the memorandum. Upon the

completion of defense counsel's presentation and the government's review of the

evidence, the parties will report whether the government agrees that a new trial or

dismissal of the charges is appropriate in light of the new evidence.

**RESPECTFULLY SUBMITTED:**

MICHAEL K. LOUCKS,
Acting United States Attorney

By:

/s/Jack W. Pirozzolo
Jonathan F. Mitchell
Jack W. Pirozzolo
Assistant U.S. Attorneys
United States Attorney's Office
U.S. Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210

**AND**

DANIEL E. CARPENTER,
Defendant,
By his attorney:

/s/ Gary R. Greenberg
A. John Pappalardo (BBO # 338760)
Gary R. Greenberg (BBO #209420)
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

Dated: June 26, 2009

# EXHIBIT
# TWO

# DENNER • SAYEG, LLP

### COUNSELLORS AT LAW

FOUR LONGFELLOW PLACE, SUITES 3501-06, BOSTON • MASSACHUSETTS 02114
TELEPHONE: (617) 227-2800 • TELEFAX: (617) 973-1562

January 8, 2002

Michael J. Pineault, AUSA
U.S. Courthouse
Suite 9200
One Courthouse Way
Boston, MA 02210

Re:     Gregory Hassell

Dear Attorney Pineault:

     Enclosed please find documents for your review in anticipation of our meeting on
Friday.  Please call me with any questions.

Very truly yours,

Jeffrey A. Denner

JAD/ad

GOV  00002



**Date:**     8/28/01

**To:**       **DATN Investigations**
              **Dick Anagnost**
              **Phone: 603-626-4141**
              **Fax:     603-644-3657**

**From:**     **Martin Paley**
              **Phone: 617-965-0760**
              **Fax:     617-332-6764**

**Pages:**    **8 including cover sheet**

**Subject:**  **Escrow account analysis**

Here is the complete Benistar escrow account analysis as
promised.

Please note 80% of the accounts were at 3% leaving
20% at 6%. 69% of the total funds were at 3% leaving
31% at 6%. Only 6 exchanges received no interest.

GOV 00013

GOV_0001.4

**BENISTAR PROPERTY EXCHANGE**
**ESCROW ACCOUNT**
Prepared August 21, 2001
Revised August 27, 2001

| | Total Deposited | Total Disbursed | Total Interest | Total Fee Withdrawn | Net |
|---|---|---|---|---|---|
| **Escrow Invested at 3%** | | | | | |
| 561 Second St/Thompson | 1,486,526.23 | 1,491,266.61 | 12,240.38 | 7,500.00 | (0.00) |
| Abrams/524 Comm | 1,983,414.20 | 1,984,240.62 | 826.42 | 0.00 | (0.00) |
| Ahearn | 16,505.00 | 16,550.39 | 45.39 | 0.00 | 0.00 |
| Am'n Mortgage | 113,013.13 | 114,564.35 | 1,551.22 | 0.00 | (0.00) |
| American Acquisitions | 192,635.67 | 195,123.88 | 2,488.21 | 0.00 | 0.00 |
| Argiros, Alexander | 205,457.64 | 202,260.98 | 2,803.34 | 6,000.00 | 0.00 |
| Argiros, Emanuel | 205,457.64 | 201,654.14 | 2,196.50 | 6,000.00 | 0.00 |
| Aron | 47,084.13 | 47,311.70 | 227.57 | 0.00 | 0.00 |
| Bae | 273,037.35 | 273,446.91 | 409.56 | 0.00 | 0.00 |
| Billerica Celina | 799,971.10 | 790,102.60 | 131.50 | 10,000.00 | 0.00 |
| Billerica Realty (Part 1) | 4,575,000.00 | 3,418,065.75 | 9,633.45 | 0.00 | 1,166,537.70 |
| Billerica Realty (Part 2) | 0.00 | 1,166,537.70 | 0.00 | 0.00 | (1,166,537.70) |
| Bolivar | 2,206,215.21 | 2,212,753.00 | 13,537.79 | 7,000.00 | (0.00) |
| Brower | 159,045.96 | 160,010.97 | 965.01 | 0.00 | (0.00) |
| Buckley | 215,478.26 | 216,304.94 | 826.68 | 0.00 | 0.00 |
| Butler/Andrade | 60,000.00 | 60,147.95 | 147.95 | 0.00 | 0.00 |
| Cahaly | 2,412,230.00 | 500,000.00 | 0.00 | 7,500.00 | 1,904,730.00 |
| Cara Realty (1) | 30,962.01 | 30,859.32 | (102.69) | 0.00 | (0.00) |
| Cara Realty (2) | 22,950.12 | 23,403.80 | 453.68 | 0.00 | (0.00) |
| CBC | 728,770.00 | 728,770.00 | 0.00 | 0.00 | 0.00 |
| Darling | 250,767.14 | 250,982.77 | 215.63 | 0.00 | 0.00 |
| DiGirolamo | 86,522.58 | 85,929.00 | 56.42 | 750.00 | 0.00 |
| Du | 82,130.99 | 82,613.66 | 482.67 | 0.00 | 0.00 |
| Fitzgerald | 489,625.62 | 392,237.01 | 0.00 | 0.00 | 97,368.61 |

GOV 00015

**BENISTAR PROPERTY EXCHANGE**
**ESCROW ACCOUNT**
Prepared August 21, 2001
Revised August 27, 2001

| | Total Deposited | Total Disbursed | Total Interest | Total Fee Withdrawn | Net |
|---|---|---|---|---|---|
| Fobert I | 168,940.93 | 14,400.00 | 827.11 | 0.00 | 155,368.04 |
| Fobert II | 52,236.53 | 207,604.57 | 0.00 | 0.00 | (155,368.04) |
| Gangemi | 800,000.00 | 800,268.87 | 268.87 | 0.00 | 0.00 |
| Gaudet | 320,767.29 | 324,280.72 | 3,513.43 | 0.00 | 0.00 |
| Gelber | 97,521.44 | 97,524.68 | 3.24 | 0.00 | (0.00) |
| Gelber | 82,472.43 | 93,244.49 | 772.06 | 0.00 | (0.00) |
| Gelber (2) (Part 1) | 144,073.33 | 99,000.00 | 0.00 | 0.00 | 45,073.33 |
| Gelber (2) (Part 2) | 0.00 | 7,500.00 | 0.00 | 0.00 | (7,500.00) |
| Gonzalez | 162,470.15 | 163,159.62 | 689.47 | 0.00 | (0.00) |
| Granbral | 249,624.66 | 254,753.93 | 5,129.27 | 0.00 | 0.00 |
| Grant | 601,285.69 | 604,393.91 | 3,108.22 | 0.00 | (0.00) |
| Iantosca/261 Hayward | 1,657,902.33 | 674,785.95 | 0.00 | 0.00 | 983,116.38 |
| Iantosca/Faxon Heights | 2,518,659.51 | 2,000,000.00 | 0.00 | 0.00 | 518,659.51 |
| Iantosca/Fern | 1,726,999.26 | 1,726,999.26 | 0.00 | 0.00 | 0.00 |
| Iantosca/Fern/25 Morton | 1,968,323.43 | 1,175,638.95 | 0.00 | 0.00 | 792,684.48 |
| Iantosca/Fern/28 Charles | 1,142,409.36 | 0.00 | 0.00 | 0.00 | 1,142,409.36 |
| Iantosca/Fern/8 Tinson | 822,563.54 | 0.00 | 0.00 | 0.00 | 822,563.54 |
| Iantosca/Fern/Ha & Yang | 122,095.25 | 122,095.25 | 0.00 | 0.00 | 0.00 |
| JMJ Realty/Wong | 61,313.87 | 61,815.04 | 501.17 | 0.00 | 0.00 |
| JMM/Wallace (3) | 117,084.74 | 118,041.26 | 956.52 | 0.00 | 0.00 |
| JMM/Wallace (Unit 19) | 114,824.16 | 52,182.00 | 857.74 | 0.00 | 63,499.92 |
| JMM/Wallace (Unit 4) | 106,783.98 | 170,283.90 | 0.00 | 0.00 | (63,499.92) |
| Johnston | 544,430.74 | 0.00 | 0.00 | 2,500.00 | 541,930.74 |
| Jordan | 376,823.69 | 377,226.32 | 402.63 | 0.00 | (0.00) |
| Kramer | 167,294.82 | 168,311.73 | 1,016.91 | 0.00 | (0.00) |
| Lable | 299,162.12 | 299,309.65 | 147.53 | 0.00 | (0.00) |

GOV 00016

BENISTAR PROPERTY EXCHANGE
ESCROW ACCOUNT
Prepared August 21, 2001
Revised August 27, 2001

| | Total Deposited | Total Disbursed | Total Interest | Total Fee Withdrawn | Net |
|---|---|---|---|---|---|
| Lam (Unit 1) | 115,102.50 | 116,622.74 | 1,520.24 | 0.00 | (0.00) |
| Lam (Unit 3) | 118,967.02 | 116,283.89 | 519.39 | 0.00 | 3,202.52 |
| Lane/Lipsky | 135,183.59 | 137,250.23 | 2,066.64 | 0.00 | (0.00) |
| Lawler | 67,722.58 | 66,722.58 | 0.00 | 1,000.00 | 0.00 |
| Mackin, Brad | 128,546.52 | 129,094.52 | 548.00 | 0.00 | 0.00 |
| Marcou | 78,058.66 | 21,300.00 | 0.00 | 2,000.00 | 54,758.66 |
| Mather | 87,055.01 | 87,291.13 | 236.12 | 0.00 | (0.00) |
| McCartin | 203,716.99 | 204,701.53 | 984.54 | 0.00 | (0.00) |
| McNully | 105,136.23 | 106,241.78 | 1,105.55 | 0.00 | (0.00) |
| Murphy | 78,212.22 | 76,105.48 | 393.26 | 2,500.00 | 0.00 |
| O'Donovan | 277,811.65 | 278,519.50 | 707.85 | 0.00 | 0.00 |
| Paolini | 52,352.33 | 0.00 | 0.00 | 2,000.00 | 50,352.33 |
| Parsekian I | 258,707.06 | 258,707.06 | 0.00 | 0.00 | 0.00 |
| Parsekian II | 232,565.66 | 232,565.66 | 0.00 | 0.00 | 0.00 |
| Parsekian III (Part 1) | 108,537.19 | 116,885.12 | 8,347.93 | 0.00 | 0.00 |
| Parsekian III (Part 2) | 4,976.37 | 4,976.37 | 0.00 | 0.00 | 0.00 |
| Petersen | 61,655.22 | 61,706.59 | 51.37 | 0.00 | 0.00 |
| Roche | 185,067.66 | 186,074.34 | 1,006.68 | 0.00 | 0.00 |
| Roche (Blue Hill) | 498,659.41 | 505,317.10 | 6,657.69 | 0.00 | (0.00) |
| Roche (Brown) | 78,670.65 | 79,459.51 | 788.86 | 0.00 | (0.00) |
| Roche (Clark) | 65,424.83 | 66,048.20 | 623.37 | 0.00 | 0.00 |
| Roche (Hicks) | 46,212.31 | 46,212.31 | 0.00 | 0.00 | 0.00 |
| Roche (Lepe) | 80,154.71 | 80,916.97 | 762.26 | 0.00 | 0.00 |
| Roche (Scott) | 114,122.71 | 115,398.38 | 1,275.67 | 0.00 | 0.00 |
| Roche (Sherwood) | 243,371.53 | 246,792.07 | 3,420.54 | 0.00 | (0.00) |
| Roche (Westville) | 70,000.00 | 70,000.00 | 0.00 | 0.00 | 0.00 |

3

GOV 00017

**BENISTAR PROPERTY EXCHANGE**
**ESCROW ACCOUNT**
**Prepared August 21, 2001**
**Revised August 27, 2001**

| | Total Deposited | Total Disbursed | Total Interest | Total Fee Withdrawn | Net |
|---|---|---|---|---|---|
| Rudikoff | 46,954.71 | 47,371.51 | 416.80 | 0.00 | (0.00) |
| Sandoval I | 137,911.33 | 139,211.00 | 1,299.67 | 0.00 | (0.00) |
| Sandoval II | 67,216.34 | 67,515.84 | 299.50 | 0.00 | 0.00 |
| Schreuer | 40,185.02 | 40,720.09 | 535.07 | 0.00 | 0.00 |
| Segal, Eric | 64,669.11 | 64,828.71 | 159.60 | 0.00 | 0.00 |
| Siegel I | 86,371.72 | 55,000.00 | 2,754.50 | 0.00 | 34,126.22 |
| Siegel II | 157,039.16 | 0.00 | 0.00 | 0.00 | 157,039.16 |
| Siegel III | 136,305.33 | 327,470.71 | 2,754.50 | 0.00 | (188,410.88) |
| Taylor, Thomas | 113,059.39 | 113,235.95 | 176.56 | 0.00 | 0.00 |
| Thornton | 36,983.02 | 37,188.06 | 205.04 | 0.00 | 0.00 |
| Tognacci | 47,084.13 | 47,165.34 | 81.21 | 0.00 | 0.00 |
| Vandelay/Mastrocola | 591,956.70 | 593,899.82 | 2,043.12 | 0.00 | 0.00 |
| Wallace | 106,783.96 | 107,180.22 | 646.26 | 250.00 | 0.00 |
| Wallace | 114,824.18 | 115,469.15 | 894.97 | 250.00 | (0.00) |
| Wallace | 98,502.63 | 98,826.47 | 323.84 | 0.00 | 0.00 |
| Woolf | 511,646.51 | 509,146.51 | 0.00 | 2,500.00 | 0.00 |
| Xypteras (Ward) | 327,544.90 | 328,004.57 | 459.67 | 0.00 | 0.00 |
| **Total Exchanges @ 3% = 92** | **37,269,892.00** | **30,371,435.16** | **111,397.12** | **57,750.00** | **6,952,103.96** |
| Percent of Exchanges with $$ Invested @ 3%   (92/115 = 80%) | 58.98 | 71.35 | 36.53 | 85.24 | 59.41 |

4

GOV 00018

**BENISTAR PROPERTY EXCHANGE**
**ESCROW ACCOUNT**
**Prepared August 21, 2001**
**Revised August 27, 2001**

| | Total Deposited | Total Disbursed | Total Interest | Total Fee Withdrawn | Net |
|---|---|---|---|---|---|
| **Escrow Invested at 6%** | | | | | |
| Bellemore/Eaton | 444,659.65 | 0.00 | 0.00 | 0.00 | 444,659.65 |
| Brasco | 93,073.09 | 0.00 | 0.00 | 0.00 | 93,073.09 |
| Carey | 374,406.93 | 382,934.43 | 8,527.50 | 0.00 | 0.00 |
| Cavin | 170,265.83 | 170,833.86 | 568.03 | 0.00 | 0.00 |
| Darling | 322,290.35 | 15,625.00 | 0.00 | 0.00 | 306,665.35 |
| Dee Dev/D'Amico | 1,369,209.17 | 1,399,788.15 | 30,578.98 | 0.00 | 0.00 |
| Driscoll | 1,148,250.83 | 1,185,057.57 | 36,806.74 | 0.00 | 0.00 |
| Hennessey | 1,793,708.40 | 1,855,648.75 | 61,940.35 | 0.00 | (0.00) |
| Hoy | 129,334.26 | 130,819.09 | 1,484.83 | 0.00 | (0.00) |
| Iantosca/Belridge/Gosselin | 506,582.40 | 0.00 | 0.00 | 2,500.00 | 504,082.40 |
| Iantosca/Belridge/Heritage | 1,765,096.21 | 1,765,096.21 | 0.00 | 0.00 | 0.00 |
| Langley Union | 794,609.25 | 795,977.48 | 1,368.23 | 0.00 | 0.00 |
| Magic Realty | 164,831.56 | 0.00 | 0.00 | 0.00 | 164,831.56 |
| Peterson 1 | 799,000.95 | 810,674.24 | 11,673.29 | 0.00 | (0.00) |
| Peterson 2 | 282,259.49 | 282,259.49 | 0.00 | 0.00 | 0.00 |
| Rowe I (Unit 1) | 243,222.46 | 248,005.84 | 3,983.38 | 0.00 | (800.00) |
| Rowe I (Unit 2) | 267,594.80 | 267,594.80 | 800.00 | 0.00 | 800.00 |
| Shapiro | 324,729.08 | 330,761.03 | 6,031.95 | 0.00 | (0.00) |
| Sherman | 471,986.15 | 482,774.58 | 10,788.43 | 0.00 | 0.00 |
| Snider/Mass Lumber | 3,287,190.00 | 50,000.00 | 0.00 | 0.00 | 3,237,190.00 |
| Thompson | 1,486,526.23 | 1,491,266.61 | 12,240.38 | 7,500.00 | (0.00) |
| Tischler | 379,592.48 | 383,458.87 | 3,864.39 | 0.00 | (0.00) |
| Toll/Heath St | 145,221.48 | 148,125.91 | 2,904.43 | 0.00 | 0.00 |

5

Case 1:04-cr-10029-GAO   Document 484-2   Filed 06/16/14   Page 19 of 50

GOV 00013

BENISTAR PROPERTY EXCHANGE
ESCROW ACCOUNT
Prepared August 21, 2001
Revised August 27, 2001

|  | Total Deposited | Total Disbursed | Total Interest | Total Fee Withdrawn | Net |
|---|---|---|---|---|---|
| Total Exchanges @ 6% = 23 | 16,763,621.05 | 12,196,699.91 | 193,580.91 | 10,000.00 | 4,750,482.05 |
| Percent of Exchanges with $$ Invested @ 6%    (23/115 = 20%) | 31.02 | 28.66 | 63.47 | 14.76 | 40.59 |
| Total Exchanges with $$ Invested = 115 | 54,033,513.05 | 42,566,135.07 | 304,958.03 | 67,750.00 | 11,702,586.01 |

6

**BENISTAR PROPERTY EXCHANGE**
**ESCROW ACCOUNT**
**Prepared August 21, 2001**
**Revised August 27, 2001**

| | Total Deposited | Total Disbursed | Total Interest | Total Fee Withdrawn | Net |
|---|---|---|---|---|---|
| Escrow Invested with No Interest (Reverse Exchange or Money Sent Out in Several Days) | | | | | |
| ERB | 1,363,644.84 | 1,363,644.85 | 0.00 | 0.00 | (0.01) |
| Gordon | 448,581.05 | 448,581.05 | 0.00 | 0.00 | 0.00 |
| Grossi | 187,923.26 | 188,159.41 | 236.15 | 0.00 | 0.00 |
| Hoffman | 70,804.60 | 70,804.60 | 0.00 | 0.00 | 0.00 |
| Johnson | 216,345.54 | 216,345.54 | 0.00 | 0.00 | 0.00 |
| Zide | 820,780.54 | 820,780.54 | 0.00 | 0.00 | (0.00) |
| Total Exchanges with No Interest = 6 | 3,108,079.83 | 3,108,315.99 | 236.15 | 0.00 | (0.01) |
| Grand Total Exchanges = 121 | 57,141,592.88 | 45,676,451.05 | 305,194.18 | 67,750.00 | 11,702,586.00 |

GOV 00020

Aug 28 01 09:54a       Linda Jokinen       781-255-0328       p.1

**Linda's Mail**

| | |
|---|---|
| **From:** | Jackie Spielman <JSpielman@benistar.com> |
| **To:** | Linda Jokinen <lfjokinen@mediaone.net> |
| **Sent:** | Wednesday, December 27, 2000 2:45 PM |
| **Attach:** | CURRENT EXCHANGE ESCROW ACCTS.xls |
| **Subject:** | account balances 12/27 |

Here is the most recent account balances.

Jackie Spielman
BENISTAR, Accounts Receivable
860-408-7000 ext 238
Fax: 860-408-7005
jspielman@benistar.com

7/10/01

GOV 00021

Case 1:04-cr-10029-GAO   Document 484-2   Filed 06/16/14   Page 22 of 50

GOV 00022

| 12/27/00 CASE NAME **=6% acct | DATE REC'D | AMOUNT REC'D | CURRENT EXCHANGE ESCROW ACCOUNTS FEE WITHDRAWN | DATE PAID | DEBITS | DEBIT DATE | INTEREST | BALANCE |
|---|---|---|---|---|---|---|---|---|
| MAGIC REALTY ** | 3/7/00 10/6/00 | $30,000.00 $134,831.56 | | | | | | $164,831.56 |
| BELRIDGE HERITAGE | 6/1/00 6/16/00 | $1,665,096.21 $100,000.00 | | | $1,700,000.00 $65,096.21 | 7/31/00 12/6/00 | | $0.00 |
| FERN HA & YANG | 6/8/00 8/7/00 | $116,542.75 $5,552.50 | | | $100,000.00 $22,095.25 | 7/31/00 12/6/00 | | $0.00 |
| LANE & LIPSKY | 6/16/00 | $135,183.59 | | | $137,250.23 | 12/22/00 | $2,066.64 | $0.00 |
| TINA LAM UNIT 3 | 6/28/00 9/1/00 | $115,345.00 $3,622.02 | | | $15,190.00 $100,674.39 $419.50 | 7/28/00 8/29/00 12/22/00 | $519.39 | $3,202.52 |
| FERN IANTOSCA | 7/3/00 | $1,726,999.26 | | | $1,253,839.33 $11,700.00 $2,134.50 $459,325.43 | 7/31/00 8/1/00 7/11/00 12/6/00 | | $0.00 |
| TINA LAM (4) | 7/24/00 | $115,102.50 | | | $16,700.00 | 12/27/00 | | $98,402.50 |
| Roche/Sherwood | 8/2/00 | $243,371.53 | | | | | | $243,371.53 |
| BRASCO ** | 8/7/00 | $93,073.09 | | | | | | $93,073.09 |
| BELLEMORE | 8/9/00 | $444,659.65 | | | | | | $444,659.65 |
| BELLRIDGE GOSSELIN ** | 8/16/00 | $506,562.40 | $2,500.00 | 10/2/00 | | | | $504,062.40 |

GOV 00023

| CASE NAME | DATE REC'D | AMOUNT REC'D | FEE WITHDRAWN | DATE PAID | DEBITS | DEBIT DATE | INTEREST | BALANCE |
|---|---|---|---|---|---|---|---|---|
| Byron Darling | 9/8/00 | $322,290.35 | | | $15,625.00 | 11/16/00 | | $306,665.35 |
| Mass Lumber ** | 9/14/00 | $3,000,000.00 | | | $50,000.00 | 12/8/00 | | $3,237,190.00 |
| | 9/15/00 | $62,190.00 | | | | | | |
| | 9/21/00 | $225,000.00 | | | | | | |
| GELBER 2 | 9/27/00 | $144,073.33 | | | $4,000.00 | 9/28/00 | | $45,073.33 |
| | | | | | $25,000.00 | 9/28/00 | | |
| | | | | | $10,000.00 | 10/25/00 | | |
| | | | | | $35,000.00 | 11/1/00 | | |
| | | | | | $7,500.00 | 11/27/00 | | |
| | | | | | $7,500.00 | 11/27/00 | | |
| | | | | | $10,000.00 | 12/7/00 | | |
| LYLE/CAVIN ** | 10/30/00 | $170,265.83 | | | $10,000.00 | 12/15/00 | | $160,265.83 |
| CAHALY | 11/9/00 | $2,412,230.00 | $5,000.00 | 11/15/00 | $500,000.00 | 11/16/00 | | $1,904,730.00 |
| | | | | | $2,500.00 | 12/21/00 | | |
| Peolini/Dioguardi | 11/14/00 | $45,352.33 | $2,000.00 | 11/14/00 | | | | $50,352.33 |
| | 11/14/00 | $7,000.00 | | | | | | |
| John Buckley | 11/10/00 | $215,478.26 | | | $40,500.00 | 12/11/00 | | $174,978.26 |
| Brian Fitzgerald | 11/13/00 | $72,535.62 | | | $392,257.01 | 12/26/00 | | $97,368.61 |
| | 11/16/00 | $17,090.00 | | | | | | |
| | 11/16/00 | $400,000.00 | | | | | | |
| Johnston/Mullin | 11/22/00 | $28,750.00 | $2,500.00 | 11/27/00 | | | | $541,930.74 |
| | 11/22/00 | $2,500.00 | | | | | | |
| | 11/22/00 | $513,180.74 | | | | | | |
| Fern: | 12/1/00 | $1,109,409.36 | | | | | | $1,142,409.36 |
| 28 Charles St | 12/15/00 | $33,000.00 | | | | | | |

Case 1:04-cr-10029-GAO   Document 484-2   Filed 06/16/14   Page 24 of 50

GOV 00024

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| Fem:<br>8 Tinson Rd | 12/1/00<br>12/15/00 | $774,563.54<br>$48,000.00 | | | | | | $822,563.54 |

| CASE NAME | DATE REC'D | AMOUNT REC'D | FEE WITHDRAWN | DATE PAID | DEBITS | DEBIT DATE | INTEREST | BALANCE |
|---|---|---|---|---|---|---|---|---|
| Fem:<br>25 Morton St. | 12/1/00<br>12/15/00 | $1,875,323.43<br>$93,000.00 | | | $1,175,638.95 | 12/6/00 | | $792,684.48 |
| Ianiosca:<br>261-265 Hayward | 12/1/00<br>12/15/00 | $1,615,902.33<br>$42,000.00 | | | $564,785.95<br>$110,000.00 | 12/6/00<br>12/19/00 | | $983,116.38 |
| Faxon Heights:<br>135 Quincy Ave | 12/1/00<br>12/15/00 | $2,434,659.51<br>$84,000.00 | | | $2,000,000.00 | 12/6/00 | | $518,659.51 |
| Derek Marcou | 12/4/00<br>12/7/00 | $74,783.66<br>$3,275.00 | $2,000.00 | 12/7/00 | $21,300.00 | 12/22/00 | | $54,758.66 |

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| BALANCE | | | | | | | | $12,384,349.63 |

## Linda's Mail

| | |
|---|---|
| From: | Jackie Spielman <JSpielman@benistar.com> |
| To: | Linda Jokinen <lfjokinen@mediaone.net> |
| Sent: | Tuesday, December 26, 2000 4:50 PM |
| Attach: | CURRENT EXCHANGE ESCROW ACCTS.xls |
| Subject: | CURRENT ACCT BALANCES |

Here is the most recent I already took Fitzgeralds money out of this one.

Jackie Spielman
BENISTAR, Accounts Receivable
860-408-7000 ext 238
Fax: 860-408-7005
jspielman@benistar.com

7/10/01

GOV 00025

GOV 00026

| 12/26/00 CASE NAME **=5% acct | DATE REC'D | AMOUNT REC'D | CURRENT EXCHANGE ESCROW ACCOUNTS | | | | | |
|---|---|---|---|---|---|---|---|---|
| | | | FEE WITHDRAWN | DATE PAID | DEBITS | DEBIT DATE | INTEREST | BALANCE |
| MAGIC REALTY ** | 3/7/00 10/6/00 | $30,000.00 $134,831.56 | | | | | | $164,831.56 |
| BELRIDGE HERITAGE | 6/1/00 6/16/00 | $1,665,096.21 $100,000.00 | | | $1,700,000.00 $65,096.21 | 7/31/00 12/6/00 | | $0.00 |
| FERN HA & YANG | 6/8/00 8/7/00 | $116,542.75 $5,552.50 | | | $100,000.00 $22,095.25 | 7/31/00 12/6/00 | | $0.00 |
| LANE & LIPSKY | 6/16/00 | $135,183.59 | | | $137,250.23 | 12/22/00 | $2,066.64 | $0.00 |
| TINA LAM UNIT 3 | 6/28/00 9/1/00 | $115,345.00 $3,622.02 | | | $15,190.00 $100,674.39 $419.50 | 7/28/00 8/29/00 12/22/00 | $519.39 | $3,202.52 |
| FERN IANTOSCA | 7/3/00 | $1,726,999.26 | | | $1,253,839.33 $11,700.00 $2,134.50 $459,325.43 | 7/31/00 8/1/00 7/11/00 12/6/00 | | $0.00 |
| TINA LAM (4) | 7/24/00 | $115,102.50 | | | | | | $115,102.50 |
| Roche/Sherwood | 8/2/00 | $243,371.53 | | | | | | $243,371.53 |
| BRASCO ** | 8/7/00 | $93,073.09 | | | | | | $93,073.09 |
| BELLEMORE | 8/9/00 | $444,659.65 | | | | | | $444,659.65 |
| BELLRIDGE GOSSELIN ** | 8/16/00 | $506,562.40 | $2,500.00 | 10/2/00 | | | | $504,062.40 |

GOV 00027

| CASE NAME | DATE REC'D | AMOUNT REC'D | FEE WITHDRAWN | DATE PAID | DEBITS | DEBIT DATE | INTEREST | BALANCE |
|---|---|---|---|---|---|---|---|---|
| Byron Darling | 9/8/00 | $322,290.35 | | | $15,625.00 | 11/16/00 | | $306,665.35 |
| Mass Lumber ** | 9/14/00<br>9/15/00<br>9/21/00 | $3,000,000.00<br>$62,190.00<br>$225,000.00 | | | $50,000.00 | 12/8/00 | | $3,237,190.00 |
| GELBER 2 | 9/27/00 | $144,073.33 | | | $4,000.00<br>$25,000.00<br>$10,000.00<br>$35,000.00<br>$7,500.00<br>$7,500.00<br>$10,000.00 | 9/28/00<br>9/28/00<br>10/25/00<br>11/1/00<br>11/27/00<br>11/27/00<br>12/7/00 | | $45,073.33 |
| LYLE/CAVIN ** | 10/30/00 | $170,265.83 | | | $10,000.00 | 12/15/00 | | $160,265.83 |
| CAHALY | 11/9/00 | $2,412,230.00 | $5,000.00 | 11/15/00 | $500,000.00<br>$2,500.00 | 11/16/00<br>12/21/00 | | $1,904,730.00 |
| Paolini/Dioguardi | 11/14/00<br>11/14/00 | $45,352.33<br>$7,000.00 | $2,000.00 | 11/14/00 | | | | $50,352.33 |
| John Buckley | 11/10/00 | $215,478.26 | | | $40,500.00 | 12/11/00 | | $174,978.26 |
| Brian Fitzgerald | 11/13/00<br>11/16/00<br>11/16/00 | $72,535.62<br>$17,090.00<br>$400,000.00 | | | $392,257.01 | 12/26/00 | | $97,368.61 |
| Johnston/Mullin | 11/22/00<br>11/22/00<br>11/22/00 | $28,750.00<br>$2,500.00<br>$513,180.74 | $2,500.00 | 11/27/00 | | | | $541,930.74 |
| Fern:<br>28 Charles St | 12/1/00<br>12/15/00 | $1,109,409.36<br>$33,000.00 | | | | | | $1,142,409.36 |

| Fern:<br>8 Tinson Rd | 12/1/00<br>12/15/00 | $774,563.54<br>$48,000.00 | | | | | | $822,563.54 |

| CASE NAME | DATE<br>REC'D | AMOUNT<br>REC'D | FEE<br>WITHDRAWN | DATE<br>PAID | DEBITS | DEBIT<br>DATE | INTEREST | BALANCE |
|---|---|---|---|---|---|---|---|---|
| Fern:<br>25 Morton St. | 12/1/00<br>12/15/00 | $1,875,323.43<br>$93,000.00 | | | $1,175,638.95 | 12/6/00 | | $792,684.48 |
| Iantosca:<br>261-265 Hayward | 12/1/00<br>12/15/00 | $1,615,902.33<br>$42,000.00 | | | $564,785.95<br>$110,000.00 | 12/6/00<br>12/19/00 | | $983,116.38 |
| Faxon Heights:<br>135 Quincy Ave | 12/1/00<br>12/15/00 | $2,434,659.51<br>$84,000.00 | | | $2,000,000.00 | 12/6/00 | | $518,659.51 |
| Derek Marcou | 12/4/00<br>12/7/00 | $74,783.66<br>$3,275.00 | $2,000.00 | 12/7/00 | $21,300.00 | 12/22/00 | | $54,758.66 |

| BALANCE | | | | | | | | $12,401,049.63 |

GOV 0002B

# EXHIBIT
# THREE

BENISTAR

BENISTAR PROPERTY EXCHANGE TRUST CO., INC
197 NOPMEADOW ST.
SIMSBURY, CT 06070

**WIRE TRANSFER**

Page 304

| | |
|---|---|
| DATE: | August 3, 1999 |
| CLIENT: | Billerica |
| | |
| TO: | MELLON BANK |
| | ONE MELLON BANK PLAZA |
| | PITTSBURG, PA 15258-00001 |
| | ABA ROUTING 043000261 |
| | |
| FOR DEBIT TO: | MERRILL LYNCH ACCOUNT # 1011730 |
| | |
| FURTHER DEBIT | |
| TO: | BENISTAR PROPERTY EXCHANGE TRUST |
| | COMPANY, INC. |
| | ACCOUNT #: 849-07B01 |
| | |
| AMOUNT: | $200,000 |
| WIRE TO: | Fleet Bank, N.A. |
| | One Beacon Street |
| | Boston, MA 02108 |
| | ABA # 011000138 |
| | Acct.# 9356793436 |
| | |
| ACCOUNT NAME: | Dionne & Gass IOLTA Account |

Daniel E. Carpenter, Esq. Chairman

TEL: (617) 965-4396 • (888) 471-8775 • FAX: (617) 965-0130 • INTERNET.@WWW.BENISTAR.COM
TOLL FREE: (800) BENISTAR

---

BENISTAR

BENISTAR PROPERTY EXCHANGE TRUST CO., INC
197 NOPMEADOW ST.
SIMSBURY, CT 06070

**WIRE TRANSFER**

Page 305

| | |
|---|---|
| DATE: | August 5, 1999 |
| CLIENT: | Gonzales |
| | |
| TO: | MELLON BANK |
| | ONE MELLON BANK PLAZA |
| | PITTSBURG, PA 15258-00001 |
| | ABA ROUTING 043000261 |
| | |
| FOR DEBIT TO: | MERRILL LYNCH ACCOUNT # 1011730 |
| | |
| FURTHER DEBIT | |
| TO: | BENISTAR PROPERTY EXCHANGE TRUST |
| | COMPANY, INC. |
| | ACCOUNT #: 849-07B01 |
| | |
| AMOUNT: | $36,750.00 |
| | |
| WIRE TO: | Brookline Savings Bank |
| | 160 Washington St. |
| | Brookline, MA 02445 |
| | ABA # 211371489 |
| | Acct # 011005493 |
| | |
| ACCOUNT NAME: | Chobee Hoy Associates |

Daniel E. Carpenter, Esq. Chairman

TEL: (617) 965-4396 • (888) 471-8775 • FAX: (617) 965-0130 • INTERNET.@WWW.BENISTAR.COM
TOLL FREE: (800) BENISTAR



## BENISTAR

BENISTAR LTD.
247 HOPMEADOW ST.
SIMSBURY, CT 06070

Page 307

**WIRE TRANSFER**

DATE:                 August 27, 1999
CLIENT:               TOGNACCI

TO:                   MELLON BANK
                      ONE MELLON BANK PLAZA
                      PITTSBURG, PA  15258-00001
                      ABA ROUTING 043000261

FOR DEBIT TO:         MERRILL LYNCH ACCOUNT # 1011730

FURTHER DEBIT
TO:                   BENISTAR PROPERTY EXCHANGE TRUST
                      COMPANY, INC.
                      ACCOUNT #: 849-07B01

AMOUNT:               $31,084.13
                      ___81.21  Int.
                      $31,165.34

WIRE TO:              Framingham Cooperative Bank
                      828 Concord Street
                      Framingham, MA
                      ABA # 211371816
                      Acct.# 44512150

ACCOUNT NAME:         Hargraves, Karb, Wilcox & Galvani
                      Conveyance Acct.

_Daniel E. Carpenter_
Daniel E. Carpenter, Esq. Chairman

TEL: (860) 408-7000  ·  INTERNET://WWW.BENISTAR.COM  ·  FAX: (860) 408-7035
TOLL FREE: (800) BENISTAR

---



## BENISTAR

BENISTAR LTD.
247 HOPMEADOW ST.
SIMSBURY, CT 06070

Page 308

**WIRE TRANSFER**

DATE:                 August 27, 1999
CLIENT:               GONZALES

TO:                   MELLON BANK
                      ONE MELLON BANK PLAZA
                      PITTSBURG, PA  15258-00001 .
                      ABA ROUTING 043000261

FOR DEBIT TO:         MERRILL LYNCH ACCOUNT #  1011730

FURTHER DEBIT
TO:                   BENISTAR PROPERTY EXCHANGE TRUST
                      COMPANY, INC.
                      ACCOUNT #: 849-07B01

AMOUNT:               $124,710.15
                      ___689.47  Interest
                      $125,399.62

WIRE TO:
                      100 Federal Street
                      Boston, MA
                      ABA # 011000390
                      Acct.# 521-17576

ACCOUNT NAME:         Mass Legal Assist Corp. Beneficiary of IOLTA
                      by Mason & Martin, LLP

_Daniel E. Carpenter_
Daniel E. Carpenter, Esq. Chairman

TEL: (860) 408-7000  ·  INTERNET://WWW.BENISTAR.COM  ·  FAX: (860) 408-7035
TOLL FREE: (800) BENISTAR

## Left form

**BENISTAR**

BENISTAR PROPERTY EXCHANGE TRUST CO., INC.
207 NEWMEADOW ST.
SIMSBURY, CT 06070

Page 309

**WIRE TRANSFER**

DATE: September 16, 1999
CLIENT: Billerica

TO: MELLON BANK
ONE MELLON BANK PLAZA
PITTSBURG, PA 15258-00001
ABA ROUTING 043000261

FOR DEBIT TO: MERRILL LYNCH ACCOUNT # 1011730

FURTHER DEBIT
TO: BENISTAR PROPERTY EXCHANGE TRUST
COMPANY, INC.
ACCOUNT #: 849-07B01

AMOUNT: $200,000

WIRE TO: BankBoston
100 Federal Street
Boston, MA 02110
ABA# 011000390
Acct.# 161-69463

ACCOUNT NAME: Robinson Donovan Madden & Barry PC
Trustees for Clients

Daniel E. Carpenter, Esq.  Chairman

TEL: (617) 965-4396 • (888) 475-8733 • FAX: (617) 965-0120 • INTERNET://WWW.BENISTAR.COM
TOLL FREE: (800) BENISTAR

## Right form

**BENISTAR**

BENISTAR PROPERTY EXCHANGE TRUST CO., INC.
207 NEWMEADOW ST.
SIMSBURY, CT 06070

Page 310

**WIRE TRANSFER**

DATE: September 16, 1999
CLIENT: Tischler

TO: MELLON BANK
ONE MELLON BANK PLAZA
PITTSBURG, PA 15258-00001
ABA ROUTING 043000261

FOR DEBIT TO: MERRILL LYNCH ACCOUNT # 1011730

FURTHER DEBIT
TO: BENISTAR PROPERTY EXCHANGE TRUST
COMPANY, INC.
ACCOUNT #: 849-07B01

AMOUNT: $121,000

WIRE TO: US Trust
Boston, MA 02108
ABA #011001331
Acct.# 002303089-1

ACCOUNT NAME: Steven S. Gremzang Clients Funds Account

Daniel E. Carpenter, Esq.  Chairman

TEL: (617) 965-4396 • (888) 475-8733 • FAX: (617) 965-0120 • INTERNET://WWW.BENISTAR.COM
TOLL FREE: (800) BENISTAR

# BENISTAR

BENISTAR PROPERTY EXCHANGE TRUST CO., INC.
207 NEWMEAD SW ST.
SIMSBURY, CT 06070

Page 311

## WIRE TRANSFER

| | |
|---|---|
| DATE:<br>CLIENT: | September 27, 1999<br>TOLL/HEATH ST. |
| TO: | MELLON BANK<br>ONE MELLON BANK PLAZA<br>PITTSBURG, PA 15258-00001<br>ABA ROUTING 043000261 |
| FOR DEBIT TO: | MERRILL LYNCH ACCOUNT # 1011730 |
| FURTHER DEBIT<br>TO: | BENISTAR PROPERTY EXCHANGE TRUST<br>COMPANY, INC.<br>ACCOUNT #: 849-07B01 |
| AMOUNT: | $145,231.00<br>2,894.43<br>$148,125.91 |
| WIRE TO: | Peoples Federal Savings Bank<br>ABA # 211073237<br>Acct. # 8086975 |
| ACCOUNT NAME: | Maurice H. Sullivan, Jr. PC<br>Conveyancing Acct. |

_Daniel E. Carpenter_
Daniel E. Carpenter, Esq. Chairman

TEL: (813) 965-4390  •  (888) 477-3777  •  FAX: (617) 965-0120  •  INTERNET: //WWW.BENISTAR.COM
TOLL FREE: (800) BENISTAR

---

# BENISTAR

BENISTAR LTD.
207 NEWMEADOW ST.
SIMSBURY, CT 06070

Page 312

## WIRE TRANSFER

| | |
|---|---|
| DATE:<br>CLIENT: | September 27, 1999<br>Peterson |
| TO: | MELLON BANK<br>ONE MELLON BANK PLAZA<br>PITTSBURG, PA 15258-00001<br>ABA ROUTING 043000261 |
| FOR DEBIT TO: | MERRILL LYNCH ACCOUNT # 1011730 |
| FURTHER DEBIT<br>TO: | BENISTAR PROPERTY EXCHANGE TRUST<br>COMPANY, INC.<br>ACCOUNT #: 849-07B01 |
| AMOUNT: | $181,500 |
| WIRE TO: | Fleet Bank<br>One Moody St.<br>Waltham, MA 02458<br>ABA # 011 000 188<br>0023050526 |
| ACCOUNT NAME: | Delaney and Delaney<br>1OLATA Account |

_Daniel E. Carpenter_
Daniel E. Carpenter, Esq. Chairman

TEL: (800) 408-7000  •  INTERNET: //WWW.BENISTAR.COM  •  FAX: (860) 408-7033
TOLL FREE: (800) BENISTAR

# EXHIBIT
# FOUR

Total Disbursements (Debits)
from Government Exhibit 189

| | |
|---|---:|
| 7/31/2000 | 1,700,000.00 |
| 12/6/2000 | 65,096.21 |
| 7/31/2000 | 100,000.00 |
| 12/6/2000 | 22,095.25 |
| 12/22/2000 | 137,250.23 |
| 7/28/2000 | 15,190.00 |
| 8/29/2000 | 100,674.39 |
| 12/22/2000 | 419.50 |
| 7/31/2000 | 1,253,839.33 |
| 8/1/2000 | 11,700.00 |
| 7/11/2000 | 2,134.50 |
| 12/6/2000 | 459,325.43 |
| 12/27/2000 | 16,700.00 |
| 11/16/2000 | 15,625.00 |
| 12/8/2000 | 50,000.00 |
| 9/28/2000 | 4,000.00 |
| 9/28/2000 | 25,000.00 |
| 10/25/2000 | 10,000.00 |
| 11/1/2000 | 35,000.00 |
| 11/27/2000 | 7,500.00 |
| 11/27/2000 | 7,500.00 |
| 12/7/2000 | 10,000.00 |
| 12/15/2000 | 10,000.00 |
| 11/16/2000 | 500,000.00 |
| 12/21/2000 | 2,500.00 |
| 12/11/2000 | 40,500.00 |
| 12/26/2000 | 392,257.01 |
| 12/6/2000 | 1,175,638.95 |
| 12/6/2000 | 564,785.95 |
| 12/19/2000 | 110,000.00 |
| 12/6/2000 | 2,000,000.00 |
| 12/22/2000 | 21,300.00 |
| | 8,866,031.75 |

# EXHIBIT
# FIVE



# Office of the Attorney General
## Washington, D. C. 20530

May 19, 2010

MEMORANDUM TO ALL FEDERAL PROSECUTORS

From:       Eric H. Holder, Jr.
            Attorney General

Subject:    Department Policy on Charging and Sentencing

The reasoned exercise of prosecutorial discretion is essential to the fair, effective, and even-handed administration of the federal criminal laws. Decisions about whether to initiate charges, what charges and enhancements to pursue, when to accept a negotiated plea, and how to advocate at sentencing, are among the most fundamental duties of federal prosecutors. For nearly three decades, the Principles of Federal Prosecution, as reflected in Title 9 of the U.S. Attorneys' Manual, Chapter 27, have guided federal prosecutors in the discharge of these duties in particular and in their responsibility to seek justice in the enforcement of the federal criminal laws in general. The purpose of this memorandum is to reaffirm the guidance provided by those Principles.

Persons who commit similar crimes and have similar culpability should, to the extent possible, be treated similarly. Unwarranted disparities may result from disregard for this fundamental principle. They can also result, however, from a failure to analyze carefully and distinguish the specific facts and circumstances of each particular case. Indeed, equal justice depends on individualized justice, and smart law enforcement demands it. Accordingly, decisions regarding charging, plea agreements, and advocacy at sentencing must be made on the merits of each case, taking into account an individualized assessment of the defendant's conduct and criminal history and the circumstances relating to commission of the offense (including the impact of the crime on victims), the needs of the communities we serve, and federal resources and priorities. Prosecutors must always be mindful of our duty to ensure that these decisions are made without unwarranted consideration of such factors as race, gender, ethnicity, or sexual orientation.

Charging Decisions: Charging decisions should be informed by reason and by the general purposes of criminal law enforcement: punishment, public safety, deterrence, and rehabilitation. These decisions should also reflect the priorities of the Department and of each district. Charges should ordinarily be brought if there is probable cause to believe that a person has committed a federal offense and there is sufficient admissible evidence to obtain and sustain a conviction, unless "no substantial Federal interest" would be served, the person is subject to

2

"effective prosecution" elsewhere, or there is "an adequate non-criminal alternative to prosecution" [USAM 9-27.200 et seq.].

Moreover, in accordance with long-standing principle, a federal prosecutor should ordinarily charge "the most serious offense that is consistent with the nature of the defendant's conduct, and that is likely to result in a sustainable conviction" [USAM 9-27.300]. This determination, however, must always be made in the context of "an individualized assessment of the extent to which particular charges fit the specific circumstances of the case, are consistent with the purpose of the Federal criminal code, and maximize the impact of Federal resources on crime" [USAM 9-27.300]. In all cases, the charges should fairly represent the defendant's criminal conduct, and due consideration should be given to the defendant's substantial assistance in an investigation or prosecution. As a general matter, the decision whether to seek a statutory sentencing enhancement should be guided by these same principles.

All charging decisions must be reviewed by a supervisory attorney. All but the most routine indictments should be accompanied by a prosecution memorandum that identifies the charging options supported by the evidence and the law and explains the charging decision therein. Each office shall promulgate written guidance describing its internal indictment review process.[1]

Plea Agreements: Plea agreements should reflect the totality of a defendant's conduct. These agreements are governed by the same fundamental principle as charging decisions: prosecutors should seek a plea to the most serious offense that is consistent with the nature of the defendant's conduct and likely to result in a sustainable conviction, informed by an individualized assessment of the specific facts and circumstances of each particular case. Charges should not be filed simply to exert leverage to induce a plea, nor should charges be abandoned to arrive at a plea bargain that does not reflect the seriousness of the defendant's conduct. All plea agreements should be consistent with the Principles of Federal Prosecution and must be reviewed by a supervisory attorney. Each office shall promulgate written guidance regarding the standard elements required in its plea agreements, including the waivers of a defendant's rights.

Advocacy at Sentencing: As the Supreme Court has recognized, Congress has identified the factors for courts to consider when imposing sentences pursuant to 18 U.S.C. §3553. Consistent with the statute and with the advisory sentencing guidelines as the touchstone, prosecutors should seek sentences that reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford deterrence, protect the public, and offer defendants an opportunity for effective rehabilitation. In the typical case, the appropriate balance among these purposes will continue to be reflected by the applicable guidelines range, and prosecutors should generally continue to advocate for a sentence within that range. The advisory guidelines remain important in furthering the goal of national uniformity throughout the federal system. But consistent with the Principles of Federal Prosecution and given the advisory

---

[1] This memorandum has no impact on the guidance provided in the September 22, 2003 memorandum and elsewhere regarding "fast-track" programs. In those districts where an approved "fast-track" program has been established, charging decisions and disposition of charges must comply with the Department's requirements for that program.

3

nature of the guidelines, advocacy at sentencing—like charging decisions and plea agreements—must also follow from an individualized assessment of the facts and circumstances of each particular case. All prosecutorial requests for departures or variances—upward or downward—must be based upon specific and articulable factors, and require supervisory approval. Each office shall provide training for effective advocacy at sentencing.

With respect to charging decisions, plea agreements, and advocacy at sentencing, the mechanisms established for obtaining supervisory approval should be designed to ensure, as much as possible, adherence to the Principles of Federal Prosecution and the guidance provided by this memorandum, as well as district-wide consistency. Supervisory attorneys selected to review exercises of discretion should be skilled, experienced, and thoroughly familiar with Department and district-specific policies, priorities, and practices. All guidance described above must be shared with the Executive Office for U.S. Attorneys upon promulgation.

This memorandum supersedes previous Department guidance on charging and sentencing including the September 22, 2003 memorandum issued by Attorney General John Ashcroft ("Department Policy Concerning Charging Criminal Offenses, Disposition of Charges, and Sentencing"), the July 2, 2004 memorandum issued by Deputy Attorney General James Comey ("Department Legal Positions and Policies in Light of *Blakely v. Washington*"), and the January 28, 2005 memorandum issued by Deputy Attorney General James Comey ("Department Policies and Procedures Concerning Sentencing").

# EXHIBIT
# SIX

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **CRIMINAL NO. 04-10029-GAO** |
| | ) | |
| **DANIEL E. CARPENTER,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

## JOINT REPORT CONCERNING MERRILL LYNCH EVIDENCE

As defense counsel has reported in recent pleadings, Merrill Lynch has produced certain documents in its ongoing state civil litigation with the Exchangors that it had not previously disclosed. The documents were the subject of recent deposition and trial testimony in that matter. Defendant Daniel Carpenter submits that the new documents and testimony provide additional support for his pending motions for new trial or dismissal of the charges in this case.

The parties hereby submit this joint report to inform the Court that, after a meeting between counsel for Mr. Carpenter and the government's attorneys, and at the government's invitation, defense counsel has agreed to present the government with a memorandum outlining what defense counsel believes is this new evidence and will make an oral presentation to the government in support of the memorandum. Upon the completion of defense counsel's presentation and the government's review of the

evidence, the parties will report whether the government agrees that a new trial or

dismissal of the charges is appropriate in light of the new evidence.

**RESPECTFULLY SUBMITTED:**

MICHAEL K. LOUCKS,
Acting United States Attorney

By:

/s/Jack W. Pirozzolo
Jonathan F. Mitchell
Jack W. Pirozzolo
Assistant U.S. Attorneys
United States Attorney's Office
U.S. Courthouse, Suite 9200
1 Courthouse Way
Boston, MA 02210

**AND**

DANIEL E. CARPENTER,
Defendant,
By his attorney:

/s/ Gary R. Greenberg
A. John Pappalardo (BBO # 338760)
Gary R. Greenberg (BBO #209420)
GREENBERG TRAURIG, LLP
One International Place, 20th Floor
Boston, MA 02110
(617) 310-6000
(617) 310-6001 (fax)

Dated: June 26, 2009