UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | CIVIL NO. 15-cv-11895-GAO |
| v. ) | CRIMINAL NO. 04-cr-10029-GAO |
| ) | |
| DANIEL E. CARPENTER ) | |

**PETITIONER'S MOTION FOR SUMMARY JUDGMENT**

Now comes the Petitioner, Daniel E. Carpenter, who pursuant to Rule 56 of the Federal Rules of Civil Procedure (FRCP) moves this Honorable Court to grant summary judgment as to all of the issues raised below in relation to the Petitioner's habeas Petition filed as a Motion to Vacate my conviction and/or reduce my sentence pursuant to 28 U.S.C. §2255 for the following reasons described in summary below. This is a truly unique case where the undisputed facts clearly show that I am innocent of all charges and how my Fifth Amendment Right to Due Process was violated, my Sixth Amendment Rights to competent counsel and knowing what I was actually being charged with were violated and the ineffective assistance of counsel clearly prejudiced my defense. The prejudice to my rights and the incompetence of my counsel are so blatant that this Motion for Summary Judgment is not only appropriate but necessary so that this Honorable Court can grant this motion and the Petition pursuant to 28 U.S.C. §2255 (from which this was drafted) so as to require the Petitioner's immediate release from prison.

**I.   LEGAL STANDARD**

The Federal Courts routinely review Rule 56 summary judgment motions in the context of post-conviction proceedings pursuant to Section 2255 petitions to immediately deal with such motions. Unfortunately, it is the government that normally brings these motions to quickly dispose of a 2255 habeas petition filed by an indigent and incarcerated individual. In this case,

the government has had over 60 days to respond to my Petition that was docketed on May 22, 2015 as 1:15-cv-11895-GAO. For whatever reason the government has chosen to neither respond nor object to my Petition. Since the underlying facts are not in dispute, this Motion is both appropriate and timely filed and should be granted by this Honorable Court.

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." An issue as to a material fact is only genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." See e.g., *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986) quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. STATEMENT OF FACTS THAT ARE NOT GENUINELY DISPUTED

Fact 1. My 2255 Petition has been timely filed.

Fact 2. This Court has jurisdiction to grant relief in this matter.

### A. VENUE WAS IMPROPER IN MY CASE

Fact 3: Even the Indictment fails to mention any act of mine that I did in the district of Massachusetts. If reviewing documents was the crime, I did that at my office in Connecticut. If investing in stock options and losing money was the crime, I did that in the Southern District of New York. Certainly no "written or other" false statement made by me in Massachusetts or anywhere else was adduced at trial. Therefore because Venue was improper in my case and certainly not proven at all much less by a preponderance of the evidence my conviction must be vacated. See *United States v. Salinas*, 373 F.3d 161 (1st Cir. 2004), *United States v. Cabrales*, 524 U.S. 1 (1998), *United States v. Auernheimer*, Crim. No. 11-cr-470 (SDW) (3d Cir. April 11, 2014).

Fact 4: Since there was no "scheme to defraud" in this case, it is impossible for me to have caused any mailings or wires "in furtherance" of any alleged scheme to defraud.

Fact 5: All of the alleged mailings and wires in this case were done by people that I had no control over and in most cases by people that I didn't even know. It is indisputable that I did not cause nor even know about any of the alleged mailings and wires at the time they were made.

Fact 6: Venue in a criminal case must be strictly construed.

Fact 7: The individual acts of the accused himself are the only acts that can establish the "*locus delecti*" and proper venue for a criminal case.

Fact 8: I committed no acts - criminal or otherwise - in the district of Massachusetts. The Constitution requires that a trial for a crime be where the criminal acts allegedly occurred. The Indictment alleges no acts by me in Massachusetts, nor did the government allege much less prove any act by me in Massachusetts at trial.

### B. THIS COURT LACKED JURISDICTION

Fact 9: When a court without jurisdiction convicts and sentences a defendant, the conviction and sentence are void from their inception and remain void long after a defendant has fully suffered their direct force. See *United States v. Morgan*, 346 U.S. 502 (1954)

Fact 10: The most fundamental of all "fundamental errors" is "jurisdictional error" which is what happened in my case. I was tried twice, had guilty verdicts thrown out twice due to egregious prosecutorial misconduct, and then was ultimately convicted and sentenced by a court that lacked jurisdiction. This is an error of the most fundamental character that "rendered the proceeding itself irregular and invalid." See *Morgan* at 509 quoting *United States v. Mayer*, 235 U.S. 55, 69 (1914).

Fact 11: A writ of habeas corpus pursuant to 28 U.S.C. 2255 has long been available as a remedy "to attack convictions and sentences entered by a court without jurisdiction." See *United States v. Addonizio*, 442 U.S. 178, 185 (1979).

Fact 12: Such "jurisdictional" errors can never be waived and if a court lacks jurisdiction, the case must be dismissed. "A federal court has jurisdiction to try criminal cases only when the information or indictment alleges a violation of a valid federal law." See *United States v. Saade*, 652 F.2d 1126, 1134 (1st Cir. 1981).

Fact 13: "A federal court similarly lacks jurisdiction to enter a judgment of conviction when the indictment charges no offense under federal law whatsoever." See *United States v. Rosa-Ortiz*, 348 F. 3d 33 (1st Cir. 2003) citing *United States v. Peter*, 310 F.3d 709, 713 (11th Cir. 2002).

Fact 14: In *Peter*, the defendant actually pled guilty to mail fraud but the 11th Circuit overturned his conviction and his guilty plea claiming that the court that accepted his guilty plea lacked jurisdiction because his indictment failed to state a federal offense and just like my indictment even fails to state a crime.

> "The government's proof of the alleged conduct, no matter how overwhelming, would have brought it no closer to showing the crime charged than would have no proof at all. The problem is not that the government's case left unanswered a question as to whether its evidence would encompass a particular fact or element. Rather, it is that the government affirmatively alleged a specific course of conduct that is outside the reach of the mail fraud statute." See *Peter*, 310 F.3d at 713.

Fact 15: My indictment not only fails to state a federal offense, it fails to state a crime at all. See Indictment.

Fact 16: Nowhere does my indictment even allege the following five factors, all of which must be properly alleged with necessary facts and proven at trial to secure a mail and wire fraud conviction:

(1) Used either mail or wire communications **in the foreseeable furtherance**,
(2) of a scheme to defraud,
(3) involving a material deception,
(4) with the intent to deprive another of,
(5) either property or honest services.

*See* report to Congress on the elements of mail and wire fraud by the Congressional Research Service, CRS Report R41931, *Mail and Wire Fraud: An Abridged Overview of Federal Criminal Law*, by Charles Doyle, July 21, 2011.

Fact 17: My indictment does not even properly allege the facts of the case against me as required by the Sixth Amendment as I was indicted based on knowingly false oral or written material misrepresentations. At this late date, the government has failed to allege or prove ANY FALSE STATEMENT made by me in writing or orally to anyone. Instead, the government convinced the First Circuit that I had a duty to disclose the fact that I was losing money in options trading. See First Circuit decision November 26, 2013.

Fact 18: My indictment nowhere contains the words: Specific Intent to Defraud, Scienter, Mens Rea, evil intent, intent to defraud, omission, duty, fiduciary, disclosure, failure to disclose, any other words that would suggest that I had a duty to speak or disclose anything.

Fact 19: Without a duty to speak, silence is not a crime. "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Bachman v. Polaroid Corp., 910 F.2d 10*, 12-13 (1st Cir. 1990) citing *Chiarella v. United States, 445 U.S. 222*, 235 (1980).

Fact 20: Because my indictment was defective on its face, failed to state any crime much less a specific federal offense, this Court lacked jurisdiction to try my case and my conviction and sentence must be vacated and my indictment dismissed. See *United States v. Aleynikov*, No. 11-1126 (2d Cir. April 11, 2012) citing *Rosa Ortiz*, 348 F.3d 33 (1st Cir. 2003).

Fact 21: A challenge to the district court's subject-matter jurisdiction to the court's power to hear a given case can never be waived or forfeited. See *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006).

Fact 22: Constitutional challenges asserting a "right not to be haled into court at all" - similar to the jurisdictional challenges that I am facing in my 2255 Petition can never be waived by the defendant even through a guilty plea. See *Blackledge v. Perry*, 417 U.S. 21, 31 (1974).

Fact 23: My Indictment was defective and failed to establish the jurisdiction of this Court because it failed to properly allege any facts that showed me committing a federal offense or supporting the necessary elements for mail and wire fraud.

### C. MY INDICTMENT WAS CONSTRUCTIVELY AMENDED

Fact 24: My indictment clearly states that I was charged with making knowingly false and fraudulent oral and written material misrepresentations. See Indictment.

Fact 25: At this late date, the government cannot point to even a single false statement made by me to anyone.

Fact 26: Instead the government has misled the First Circuit into believing that the marketing material created by Martin Paley between 1996 and 1998 when he worked for a different property exchange firm is somehow attributable to me, despite the fact that it is indisputable that I did not work on the marketing materials. Even the Indictment says as much.

Fact 27: Therefore, I have been convicted based on an "omission" or "nondisclosure" theory of fraud.

Fact 28: Trial evidence, government arguments or jury charges that operate to broaden the possible bases for a conviction from that which appeared in the indictment is a constructive

amendment of the indictment and is a "per se" violation of the Fifth Amendment." See *United States v. Milstein*, 401 F.3d 53, 65 (2d Cir. 2005).

### D. GRAND JURY MISCONDUCT

Fact 29: While hearsay may be permissible in Grand Jury proceedings, outright perjury is not acceptable.

Fact 30: There was virtually only one witness at my Grand Jury hearings, and that was Special Agent John D. Caldwell of the FBI. The only other person to "testify" during my Grand Jury proceedings was AUSA Michael Pineault and they both "testified" falsely to the Grand Jury. Despite being asked very direct and perceptive questions by the Grand Jury, both Agent Caldwell and AUSA Pineault misrepresented the facts of this case, distorted the truth, and outright lied to the Grand Jury. This type of conduct is not just reprehensible it is a blatant violation of my Due Process rights and the Grand Jury Clause of the Fifth Amendment.

Fact 31: For example when one astute Grand Juror asked if there was any litigation going on between myself and Merrill Lynch, AUSA Pineault steps in to ask the question in a different way to disguise the fact that litigation had been going on for three years between Merrill Lynch, myself and the Exchangors. See Grand Jury Transcript at P. 52.

Fact 32: Similarly on page 55 Agent Caldwell refers to me as a "loose cannon" and on page 32 refers to me and BPETCO as a "Ponzi scheme" and focuses on the money being lost. See Grand Jury transcript.

Fact 33: Agent Caldwell refers to Gerry Levine as a manager at Merrill Lynch and improperly vouches for Levine's obvious lies by saying that Mr. Levine has given sworn testimony about the following derogatory claims about me:
"Mr. Carpenter's trading was risky" (P. 44)

"What's a million or so among friends." (P. 44)

"Mr. Carpenter displayed irrational exuberance." (P. 48)

"Mr. Carpenter had the mentality of a Riverboat Gambler." (P. 49)

See Grand Jury Testimony.

Fact 34: Not only did AUSA Pineault facilitate the injection of knowing perjury into the Grand Jury proceedings by allowing Agent Caldwell to read in selected comments from the FBI 302 Reports, AUSA Pineault knew then that this was all lies and yet he vouched for the persistent perjurers Paley, Levine, Stern, Rasmussen, and Rock as if they were telling the gospel truth and vouching for this perjurious double hearsay, second-hand testimony as if it was a first-hand personal rendition of the truth. See Grand Jury Testimony.

Fact 35: But AUSA Pineault was not satisfied with the lies being recited by Agent Caldwell, so he got into the act and "testified" that the Exchangors were not sophisticated businessmen, but rather their money was like "granny's money" that must be "kept safe" as opposed to me, who was portrayed as a "big boy" that could handle the risks and losses of trading with my own money. This is not just character assassination of a defendant; this is classic prosecutorial misconduct that warrants vacating my conviction in and of itself. See Grand Jury Transcript at page 55.

Fact 36: There are a dozen other examples of this type of egregious prosecutorial misconduct that the Court can read in my 2255 Petition.

### E. THERE WAS NO INTENDED OR ACTUAL LOSS

Fact 37: Before my second trial began in June of 2008, I signed over my $14,900,000 arbitration victory against Paine Webber. I received a credit of $15,000,000 against the

$8,000,000 in losses suffered by the Exchangors. They have gone on to receive a judicial jackpot of over $50,000,000 based on their $8,000,000 loss at BPETCO.

Fact 38: Both Darling and Fitzgerald received back most of their money invested in BPETCO. For the remainder, they settled with me and BPETCO before the civil trials began in 2002. It is not fair to give them restitution because they settled early on and missed the other Exchangors' "gravy train" judicial windfall at my expense.

Fact 39: I did not receive a fair trial because the Court allowed the government to keep out any discussion that all of the Exchangors had in fact been repaid or had a judicial windfall. When the jurors went into the jury room they would have believed that the Exchangors had not received any of their money back. That is not fair and it certainly is not Due Process.

### F. THE GOVERNMENT VIOLATED 18 U.S.C. §3731

Fact 40: Unlike in the early days of the Constitution, the only reason that the government was allowed not once but twice to appeal my new trial orders based on egregious prosecutorial misconduct was because Congress passed 18 U.S.C. §3731 into law. But the government's right to appeal the Court's overturning a guilty verdict is not unlimited. Section 3731 requires the government to be diligent in its appeal and it is not allowed to appeal if it would violate my Double Jeopardy rights. See 18 U.S.C. §3731.

Fact 41: The government was not diligent in prosecuting its appeal. After it filed its appeal on September 27, 2011, it filed absolutely no documents in the case other than those stopping my motions to remand the case to the District Court on Speedy Trial grounds like *United States v. Trueber*, 238 F.3d 79 (2001). See Docket.

Fact 42: As if that was not bad enough, the government asked for and received, not one, but two extensions that further delayed my rights to a Speedy Trial under the Sixth Amendment

and to a "diligent" prosecution of the appeal under Section 3731. No reasons for the extensions were ever given. See Docket.

Fact 43: The oral argument on the government's appeal was not heard until October 2013 - two years after it filed the unlawful appeal in September of 2011. The First Circuit questioned and apologized for the three year delay in the District Court between 2008 and 2011, but said nothing of the First Circuit's and the government's own lack of diligence between September of 2011 and October of 2013. That is not "diligent" prosecution of an appeal by any stretch of the definition.

Fact 44: The very fact that the government was allowed to pursue its second appeal under Section 3731 is a violation of the Double Jeopardy Clause of the Constitution and Section 3731 itself. Your Honor should make history; by vacating my conviction for a violation of Section 3731 and then let the government appeal that to the Supreme Court.

Fact 45: The government's first appeal of my 2005 new trial order in 2006 resulted in my new trial order being affirmed. See Docket.

Fact 46: The government should not have been allowed to retry me again in 2008, but the Supreme Court thought my case looked like the mistrial in Richardson rather than the dismissed in Burks. To the contrary, my case is just like Burks except I am not crazy and I did not rob a bank.

Fact 47: Regardless of the Double Jeopardy implications of my second trial in 2008, there can be no question that the government's second appeal of my second new trial order for prosecutorial misconduct should have been summarily dismissed by the First Circuit as a violation of the Double Jeopardy Clause and of Section 3731 itself because the first New Trial Order for prosecutorial misconduct was affirmed.

Fact 48: The Double Jeopardy Clause bars retrial where "bad-faith conduct by judge or prosecutor threatens the harassment of an accused by successive prosecutions." *United States v. Dinitz*, 96 S. Ct. 1075, 1081 (1976).

Fact 49: The government has committed a number of serious Due Process violations and the examples of egregious prosecutorial misconduct abound in this case, any one of which is worthy of overturning my conviction and dismissing my indictment. But the Supreme Court has made it clear that prosecutorial misconduct can and should trigger the Double Jeopardy Clause. See *Oregon v. Kennedy*, 102 S. Ct. 2083, 2089 (1982) and also see *United States v. Dollar*, 25 F. Supp. 2d 1320, 1332 (N.D. Ala 1998) (Outrageous government conduct required dismissal with prejudice.).

Fact 50: The Double Jeopardy Clause also protects a defendant from retrial in some other circumstances where prosecutorial misconduct is undertaken with the intention of denying the defendant an opportunity to win an acquittal. See e.g., *United States v. Wallach*, 979 F.2d 912, 916 (2d Cir. 1992) and *United States v. Cotton*, 130 F.3d 805, 806-807 (7th Cir. 1997).

Fact 51: Bad faith by the prosecutor in the submission of and reliance on false evidence may preclude retrial under the force of the Double Jeopardy Clause. See e.g., *Lockhart v. Nelson*, 109 S. Ct. 285, 288 (1998) and also *United States v. Tateo*, 845 S. Ct. 1587, 1590 (1964).

Fact 52: The government violated my Due Process rights by the use of knowingly false testimony and perjury:

> "Due Process is violated where the state has contrived a conviction through the pretense of a trial which in truth is but used as a means of depriving a defendant of liberty through a deliberate deception of court and jury by the presentation of testimony known to be perjured. Such a contrivance by the government to produce the conviction and imprisonment of a defendant is inconsistent with the rudimentary demands of justice." *Mooney v. Holohan*, 55 S. Ct. 340, 342 (1935).

Fact 53: The underlying idea of the Double Jeopardy Clause is that the state with all of its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, exposure, and ordeal and compelling him to live in a continuing state of anxiety and insecurity ... and though innocent he may be found guilty. *Green v. United States*, 78 S. Ct. 221, 223 (1957)

Fact 54: An excellent cross examination does not purge the taint of perjury from a trial nor does it satisfy and erase the government's obligations under *Napue v. Illinois*, 360 U.S. 264, 269 (1959). See *Napue*, *Mooney v. Holohan*, 294 U.S. 103, 112 (1935), *Kyles v. Whitley*, 514 U.S. 419, 434 (1995), *United States v. Mangual-Garcia*, 505 F.3d 1, 10 (1st Cir. 2007), and *United States v. Gonzalez-Gonzalez*, 258 F.3d 16, 20 (1st Cir. 2001).

## G. I DID NOT RECEIVE EFFECTIVE ASSISTANCE OF COUNSEL

Fact 55: Both the First Circuit and this Court have made a number of comments in their opinions that my counsel's performance was both substandard and detrimental to protecting my constitutional rights.

Fact 56: Just from the First Circuit's opinion overturning my second New Trial Order in November of 2013, I satisfy both prongs of *Strickland*: my attorney's performance was substandard and clearly deficient and that substandard performance led to my guilty verdict being reinstated and my current incarceration. Any amount of incarceration satisfies the prejudice prong of *Strickland*. See *Strickland v. Washington*, 466 U.S. 688 (1984).

Fact 57: Moreover, I believe that I am entitled to a declaration by this Court as a matter of law that I was the victim of the Ineffective Assistance of Counsel because my counsel, Greenberg Traurig, was negligent in my defense and then betrayed me and abandoned me in favor of their new client Merrill Lynch who was bringing in millions of dollars in new fees to

Greenberg Traurig. This created a conflict of interest in that they could not zealously attack the perjurious testimony of the Merrill employees, or push hard on the newly discovered evidence showing that not only had Merrill committed a fraud on this Court, but it had lied to government regulators, the SEC, the FBI, and even the government AUSA's prosecuting my case. This "conflict of interest" creates a per se violation of the Effective Assistance of Counsel Clause of the Sixth Amendment. See *Strickland* at 692 citing *Cuyler v. Sullivan*, 446 U.S. 335, 344,350 (1980).

Fact 58: As this Court knows well by now, there was an inexplicable gap in my case from December 3, 2008 when my post-trial motions were argued and September 1, 2011 when my second New Trial Order was granted. The Court has already listed the number of docket items where I was abandoned and left to submit on my own over 30,000 pages of transcripts of depositions that showed not just that the broker witnesses lied: Levine, Stern, Rasmussen, and Rock but all of the Exchangor witnesses committed perjury as well. Greenberg Traurig abandoned me and did not file a Rule 33 Motion based on newly discovered evidence.

Fact 59: Greenberg Traurig also did not file a motion to dismiss my indictment for Speedy Trial Act violations following the First Circuit's seminal decision in *Huete-Sandoval* in December of 2011.

Fact 60: Greenberg Traurig's representation was also clearly deficient in that they did not raise the jurisdictional defects in the indictment (see *United States v. Rosa-Ortiz*, 348 F.3d 33 (1st Cir. 2003) and F.R. Crim. P. Rule 12(b)(3)(B)) as well as my venue arguments, which the Court knows that I have persistently raised on my own for 10 years. Greenberg Traurig had an obligation to investigate the facts and the law of the case. They did neither and this is classic Ineffective Assistance of Counsel. See *Correale v. United States*, 479 F.2d 944 (1st Cir. 1973).

Fact 61: But the most egregious error to my detriment was not filing a new trial motion based on the government's obligations under *Brady-Giglo-Bagley* based on the discovery of the *Iantosca v. Merrill Lynch*, No. 08-cv-0775-D (MA Sup. Ct. Feb. 14, 2008) lawsuit of February 2008 which totally guts the government's theory of the case. In that lawsuit the Exchangors claim that BPETCO in fact did tell Merrill Lynch that the BPETCO funds were third-party client funds. When asked whether he knew about the lawsuit, AUSA Mitchell lied and said he did not know about it because Attorney Zelle had wanted to keep it buried. Now in May of 2015 in the ongoing state court litigation, not only did the government lie about knowing of the suit, Merrill's attorneys, the Exchangors, and the government all lied about the lawsuit and the perjury of the Merrill brokers, Paley and the Exchangors themselves. Greenberg Traurig never demanded to get a copy of the lawsuit or file a Rule 33 Motion based on the newly discovered evidence because it was prejudicial to their "gravy-train" client Merrill Lynch.

Fact 62: In the Supreme Court's 2012 decision on equitable tolling, *Maples v. Thomas*, 565 U.S. 132 (2012), Cory Maples was a death row inmate that was effectively abandoned by his prestigious New York law firm. In citing another famous Habeas case, *Jamison v. Lockhart*, 975 F.2d 1377 (8th Cir. 1992), the Supreme Court cites to *Strickland*'s citing to *Cuyler v. Sullivan* that deficient performance caused by a "conflict of interest" is prejudicial per se and a violation of the constitutional guarantee of Effective Assistance of Counsel as a matter of law.

Fact 63: The Supreme Court pointed out that even just one error by counsel can satisfy the deficient performance prong of Strickland if it is serious enough. See *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

Fact 64: Because Greenberg Traurig did not investigate the law or the facts of my case as well as they should have, and they made several major errors that resulted in me, an innocent

man, being incarcerated for over a year for a non-crime that I did not commit. Because their substandard performance was caused by a "conflict of interest" with Merrill Lynch, I am entitled to having my conviction and sentence vacated and my indictment dismissed due to the Ineffective Assistance of Counsel.

### H. THE SUPREME COURT'S RECENT DECISION IN ELONIS MANDATES THAT MY CONVICTION BE VACATED

Fact 65: In *Elonis v. United States*, 575 U.S. ___ (2015), Chief Justice John Roberts eloquently describes the history of criminal justice in America requiring the basic principal that "wrong doing must be conscious to be criminal" and that this principle of criminal justice in America is "as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil" citing *Morissette v. United States*, 342 U.S. 246, 250 (1952).

Fact 66: Because *Elonis* involves an individual who posted threats on Facebook to kill his ex-wife, kindergarten students, and police officers as well as slit the throat of an FBI Agent, the dissents by Justices Alito and Thomas are really "concurrences" that criticize the Court for not going for enough to establish a bright line between negligent behavior which is not criminal and "reckless" behavior that may be criminal. None of the justices thought "threats" are protected by the Freedom of Speech Clause of the First Amendment just as none of the justices thought anyone should be convicted of a crime without the necessary criminal intent, scienter, *mens rea* or "evil mind" of *Morissette*. See *Elonis* opinion.

Fact 67: The Supreme Court's decision in *Elonis* makes the description of my case in the July 27, 2015 edition of the Bloomberg Law Reporter going to the Supreme Court on Speedy Trial grounds that much more interesting, because the Bloomberg Law Reporter states that my conviction for mail and wire fraud for the "mishandling of client escrow funds" was affirmed. As

Your Honor and I both know, losing money is not a crime; negligence is not a crime; investing in stock options is not a crime; and non-disclosure without a duty to disclose is not a crime. And Internal Revenue Code (IRC) Section 1031 specifically forbids the fiduciary relationships that "client escrow funds" implies. If the Bloomberg Law Reporter cannot figure out my crime, it is because I lacked the "specific intent to do evil" that is required by both *Elonis* and *Morissette* to be a crime.

Fact 68: This is in fact the precise holding of *Elonis* that the "general rule" is that a "guilty mind is a necessary element in the indictment and proof of every crime." See *United States v. Balint*, 258 U.S. 250, 251 (1922).

Fact 69: Neither Your Honor, nor the government, nor the Bloomberg Law Reporter can tell me at this late date what conduct of mine was "knowingly" criminal from August to December of 2000. As the Supreme Court has said, to be a crime, at the very least the defendant "must know the facts that make his conduct fit the description of the offense." See *Staples v. United States*, 511 U.S. 600, 608 (1994). If Your Honor cannot tell me specifically by what act, I "intentionally" decided to commit a crime, then Your Honor must vacate my conviction based on *Elonis, Morissette*, and a dozen other Supreme Court cases including:

> *United States v. Dotterwich*, 320 U.S. 277, 281 (1943) describing the "conventional requirement for criminal conduct that there be AWARENESS of some wrong doing" (emphasis in original)";
>
> *Rogers v. United States*, 422 U.S. 35, 47 (1975) "we have long been reluctant to infer that a negligence standard was intended in criminal statutes"; and,
>
> *Cochran v. United States*, 157 U.S. 286, 294 (1895) "a defendant could face liability in a civil action for negligence, but he could only be held criminally for an evil intent actually existing in his mind."

Fact 70: Under these principles, the only thing that matters in a criminal context is what I was thinking, not what the Exchangors, Merrill Lynch, or what the government was thinking. I

successfully completed 119 of 125 property exchange transactions, settled with two Exchangors before trial, and allowed my alleged "victims" to receive over $50,000,000 on their BPETCO investment of only $8,000,000 due to my litigation against Paine Webber and Merrill Lynch. The Exchangors litigation in *Iantosca v. Merrill Lynch*, No. 08-cv-0775-D (MA Sup. Ct. Feb. 14, 2008), was dismissed because THEY did not have accounts at Merrill, only BPETCO did.

Fact 71: Therefore, based on the Supreme Court's clear cut decision in *Elonis*, this Court must vacate my conviction.

Fact 72: My Indictment nowhere mentions the critical elements of *"mens rea"* or "scienter" or "specific intent to defraud". Nowhere in my trial transcripts are the words "good faith" to be found much less disputed or disproven as the government must do.

Fact 73: Yet at my sentencing, the government compared me to Edward Okum who did 126 property exchanges without returning any money to investors so as to justify an overly harsh sentence for me (since Okum received a 100-year sentence), despite the fact that all of the BPETCO Exchangors received their money back including Iantosca, Darling and Fitzgerald who also spoke at my sentencing.

Fact 74: By the Supreme Court's standard in *Elonis*, I am absolutely innocent of all of the charges against me because it is absolutely indisputable that I never had the "evil" intent to defraud anyone.

Fact 75: Chief Justice Roberts decimates the government's entire argument in *Elonis* by citing to *Liparota v. United States*, 471 U.S. 419, 420 (1985). In *Liparota*, the Supreme Court addressed a statute making it a crime to knowingly possess or use food stamps in an unauthorized manner. The government's argument in *Liparota* was similar to its argument in *Elonis*, that a defendant's conviction could be upheld if he knowingly possessed or used food

stamps in his possession and that his use was in fact, unauthorized. But the Supreme Court rejected the government in *Liparota* (as it did in *Elonis*) because it would have criminalized "a broad range of apparently innocent conduct and swept in individuals who had no knowledge of the facts that made their individual conduct blameworthy." *Liparota* at 426.

Fact 76: Clearly that is exactly my situation, as I did no "evil act" and I possessed no "evil intent" and I certainly did not exhibit the concurrence of an "evil doing hand" at the same time as an "evil mind" as required by *Morissette*.

Fact 77: Whereas the rapper Eminem might have lyrics just as threatening or as vile as Elonis did, if the intent is "artistic" or "therapeutic" rather than evil, then there is no crime.

### III.  ARGUMENT

In my case, while investing property exchange money in stock options might arguably be negligent, and losing money might be a bad thing, it is clear from the facts of my case and from the allegations in the Indictment that I did not do any "evil" act or have any "evil" intent that would make my conduct criminal in any way shape, or form according to the Supreme Court's decision in *Elonis, Liparota*, and *Morissette*. Therefore, this Court should immediately grant my 2255 Petition, vacate my conviction, and order my immediate release from prison.

Therefore, because I satisfy both prongs of Strickland, and because Greenber Traurig's conflict of interest and their conduct created "presumed prejudice," this Honorable Court has no discretion but to grant this Motion for Summary Judgment as well as my 2255 Petition. Moreover, my 2255 Petition should be granted because Venue was improper in this case and there were multiple violations of the Speedy Trial Act and my right to a Speedy Trial. Additionally, my Fifth and Sixth Amendment rights were violated because if I had effective assistance of counsel, they would have submitted more motions to dismiss my criminal

indictment based on the violation of my right to a Speedy Trial as enumerated by the Sixth Amendment and another motion to dismiss based on the violation my right to Due Process under the Fifth Amendment for the prejudicial delay in my case that destroyed my ability to provide an effective defense.

## IV. CONCLUSION

Under penalty of perjury, I declare the preceding facts to be true and they were all mentioned in my Petition to vacate my conviction pursuant to 28 U.S.C. §2255 over 60 days ago. Since the government has not disputed or refuted any of the facts herein, they are now stipulated to be true facts that are beyond dispute. Since there is no genuine issue of material fact in the above indisputable facts, this Honorable Court should grant this Motion for Summary Judgment per Rule 56(a) of the FRCP and grant my Petition to vacate my conviction (04-cr-10029-GAO) pursuant to 28 U.S.C. §2255 and order my immediate release from prison, dismiss my indictment with prejudice and vacate my conviction.

Respectfully Submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Reg. No. 90792-038
FPC Canaan
Satellite Camp
P.O. Box 200
Waymart, PA 18472