UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA          )
                                  )
          v.                      )          Crim. No. 04-10029-GAO
                                  )
DANIEL E. CARPENTER,              )
                    Defendant.    )
_____  )

**GOVERNMENT'S CONSOLIDATED OPPOSITION TO DEFENDANT'S 28 U.S.C. §2255
MOTION TO VACATE, SET ASIDE, OR CORRECT A SENTENCE (DKT. #496-97),
AND RELATED PLEADINGS (Dkt. #477, 499, 502, 503, and 505)
<u>AND REQUEST FOR SUMMARY DISMISSAL</u>**

**LEAVE TO FILE BRIEF IN EXCESS OF 20 PAGES GRANTED ON 1/22/2016**

The United States of America submits this Memorandum in response to the Court's October

30, 2015 Order (Dkt. #508), to address the claims raised by defendant Daniel E. Carpenter

("Carpenter") in the following pleadings:   Motion to Vacate, Set Aside or Correct Sentence (28

U.S.C. §2255) (Dkt. #496), including the Memorandum in Support of that Motion (Dkt. #497);

Motion for Amended Judgment (Dkt. #499); Motion for Reconsideration of the Court's May 2014

Speedy Trial decision (Dkt. #502); Motion to Amend the §2255 Petition (Dkt #503); and Motion

for Summary Judgment (Dkt. #505).   In addition, for the reasons discussed below at pg. 21-22,

the government also asks that the Court rule on, and reject, the claims raised in Carpenter's

Motion for Reconsideration of Forfeiture Order (Dkt. #477).

In February 2004, Carpenter was indicted on nineteen counts of Mail and Wire Fraud.

Dkt. #1.   A Superseding Indictment was returned in September 2004, also charging nineteen

counts of Mail and Wire Fraud.   Dkt. #34.   Carpenter has been tried twice (in 2005 and 2008).

He was sentenced by this Court to a below-guidelines sentence of 36 months imprisonment, and

ordered to forfeit $14,053,715.52.   Dkt. #437, 438, 471.   There have been three decisions issued by the Court of Appeals in this case.   *United States v. Carpenter*, 494 F.3d 13 (1st Cir. 2007) ("Carpenter I"); *United States v. Carpenter*, 736 F.3d 619 (1st Cir. 2013) ("Carpenter II"); and *United States v. Carpenter*, 781 F.3d 599 (1st Cir. 2015) ("Carpenter III").   In the most recent decision, the Court of Appeals affirmed Carpenter's conviction and sentence, but did not reach the forfeiture issue.   *Carpenter III*, 781 F.3d at 623.

Because the Court is intimately familiar with the history of this case, the relevant facts will be discussed below only as they pertain to each specific issue.

## CARPENTER'S §2255 PETITION

On May 18, 2015, Carpenter filed a *pro se* §2255 petition.   Dkt. # 496.   Carpenter asserted the following grounds for relief: (1) Improper Venue; (2) Ineffective Assistance of Counsel; (3) Prosecutorial Misconduct in Grand Jury Proceedings; and (4) Double Jeopardy.   *Id*.   In support of his Petition, Carpenter filed a "Motion To Vacate Conviction And Reduce Sentence." (hereinafter "Motion")   Dkt. #497.   It alleges the following grounds for relief: (1) Improper Venue (pg. 10-16); (2) Ineffective Assistance of Counsel (pg. 17-23; (3) Grand Jury Misconduct (pg. 24-29); (4) Rule of Lenity/Due Process (pg. 30-36); (5) No Intended or Actual Loss (sentencing issue) (pg. 37-44); (6) Government's Failure to Allege or Prove a Duty to Disclose/ Prejudicial Variance (pg. 45-58); (7) Government's Failure to Disprove Carpenter's Good Faith (pg. 59-66);   (8) Prosecutorial Misconduct/Double Jeopardy Violation (pg. 67-70); and (9) Prosecutorial Vindictiveness (pg. 71-89).   Carpenter's 89-page Motion is unsigned and unsworn, and asserts countless factual allegations without any reference to the record.

This Memorandum will address each of the grounds raised in Carpenter's Motion in the order presented.   Most of the grounds raised by Carpenter were previously litigated in this Court

and on appeal, and thus they may not be relitigated on collateral review because of the "law of the case" doctrine.   Those issues which he failed to raise either in this Court or on appeal are "procedurally defaulted," and may only be considered on collateral review if Carpenter establishes cause and actual prejudice, which he has failed to do.   The only issue Carpenter has raised which is actually ripe for consideration by the Court is his claim of ineffective assistance of counsel.   However, Carpenter has failed to establish either a legal or factual basis for that claim, and thus the entirety of his §2255 Petition should be dismissed without a hearing.

### LEGAL PRINCIPLES APPLICABLE TO §2255 CLAIMS

"[A] prior opportunity for full and fair litigation is normally dispositive of a federal prisoner's habeas claim.   If the claim was raised and rejected on direct review, the habeas court will not readjudicate it absent countervailing equitable considerations; if the claim was not raised, it is procedurally defaulted and the habeas court will not adjudicate it absent countervailing equitable considerations (e.g., actual innocence or cause and prejudice, *see United States v. Frady*, 456 U.S. 152 (1982))." *Withrow v. Williams*, 507 U.S. 680, 721 (1993) (Scalia, J., concurring); *Bucci v. United States*, 662 F.3d 18, 27 (1st Cir. 2011) ("Collateral relief in a §2255 proceeding is generally unavailable if the petitioner has procedurally defaulted his claim by 'fail[ing] to raise [the] claim in a timely manner at trial or on [direct] appeal.'"), *quoting Berthoff v. United States,* 308 F.3d 124, 127-28 (1st Cir. 2002).[1]

"[T]he law of the case doctrine 'posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case.'"

---

[1] Although Carpenter continues to assert his innocence, his bare assertion does not meet the "actual innocence" test, which "is implemented by asking if without the error 'it is more likely than not that no reasonable juror' would have convicted him."   *Brache v. United States*, 165 F.3d 99, 102 (1st Cir. 1999), *quoting Schlup v. Delo,* 513 U.S. 298, 327 (1995).

*United States v. Matthews*, 643 F.3d 9, 12 (1st Cir. 2011), *quoting Arizona v. California*, 460 U.S. 605, 618 (1983).   "This means that 'a legal decision made at one stage of a civil or criminal case, unchallenged in a subsequent appeal despite the existence of ample opportunity to do so, becomes the law of the case for future stages of the same litigation."   *Id.*, *quoting United States v. Bell*, 988 F.2d 247, 250 (1st Cir. 1993); *United States v. Wallace*, 573 F.3d 82, 87-88 (1st Cir. 2009); *Ellis v. United States*, 313 F.3d 636, 646 (1st Cir. 2002) (reversing district court finding of prejudice; "a court ordinarily ought to respect and follow its own rulings, made earlier in the same case").   "The exceptions to the law of the case doctrine must be applied with special caution on collateral review."   *Matthews*, 643 F.3d at 15.   A defendant should not be allowed to raise an issue on collateral review when he had a "full and fair opportunity" to raise it in the district court and on direct review.   *Id.* at 15.   Similarly, issues disposed of in a prior appeal may not be reviewed again by way of a §2255 motion.   *Singleton v. United States*, 26 F.3d 233, 240 (1st Cir. 1994); *Argencourt v. United States*, 78 F.3d 14, 16 n. 1 (1st Cir. 1996) ("Another of his arguments . . . was raised and decided against him on his direct appeal . . . Argencourt is not free to relitigate this issue."); *United States v. Michaud*, 901 F.2d 5, 6 (1st Cir. 1990) ("claims raised in the §2255 motion were decided on direct appeal and may not be relitigated under a different label on collateral review").

If a petitioner fails to raise an issue on direct appeal, "the claim is procedurally defaulted." *Ellis*, 313 F.3d at 643.   "It is, therefore, unreviewable on collateral attack unless the petitioner can show (1) cause sufficient to excuse his failure to raise it on direct appeal, and (2) actual prejudice."   *Id.*, citing to *Bousley v. United States*, 523 U.S. 614, 622 (1998).   Where the claim not only arises on collateral attack but also is procedurally defaulted, the "actual prejudice" standard is "whether the error had a substantial and injurious effect or influence on the outcome of

the proceedings." *Ellis* at 644, citing *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993). The impetus for the "actual prejudice" standard "is that the bar should be held fairly high on post-conviction review." *Ellis* at 644. "Such proceedings are meant to afford relief only to those who have been grievously wronged, not to those who show merely a possibility – even a reasonable possibility – of harm." *Id*. "The bottom line is that a court cannot grant collateral relief on 'mere speculation that the defendant was prejudiced by trial error; the court must find that the defendant was actually prejudiced by the error.'" *Ellis* at 645, quoting *Calderon v. Coleman*, 525 U.S. 141, 146 (1998). "Evidentiary hearings on §2255 petitions are the exception, not the norm, and there is a heavy burden on the petitioner to demonstrate that an evidentiary hearing is warranted." *Moreno–Morales v. United States*, 334 F.3d 140, 145 (1st Cir. 2003).

In light of this high bar, evidentiary hearings are rare in Section 2255 actions. "In most situations, motions can be 'heard' effectively on the papers, with the parties submitting evidentiary proffers by means of affidavits, documentary exhibits, and the like." *United States v. McGill*, 11 F.3d 223, 225 (1st Cir. 1993). Moreover, when such motions are presented to the trial judge, "the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *Id*. A hearing is unnecessary "when a §2255 motion is conclusively refuted as to the alleged facts by the files and records of the case." *Id*. at 225-26. In short, Section 2255 petitions maybe denied without a hearing if the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or if the allegations need not be accepted as true because they are contradicted by the record, are inherently incredible, or are conclusions rather than statements of fact. *Id*. at 226; *Moreno-Espada v. United States*, 666 F.3d 60, 66 (1st Cir. 2012) (district court did not err when it dismissed defendant's §2255 petition based on the filings, where the petition contained no sworn

5

statements or affidavits but instead just "groundless affirmations that evidence in the record bears out his claim of prejudice.").

Summary dismissal of a §2255 petition is justified when petitioner raises issues which are "entirely conclusory and without any supporting specific factual allegations." *Tse v. United States*, 2006 WL 3782708 (D. Mass. 2006) (O'Toole, J.), citing to *United States v. LaBonte*, 70 F.3d 1396, 1412-1413 (1st Cir. 1995), *reversed on other grounds*, *United States v. LaBonte*, 520 U.S. 751 (1997).   "A habeas application must rest on a foundation of factual allegations presented under oath, either in a verified petition or supporting affidavits." *LaBonte* at 1413, citing to Rule 2, Rules Governing Section 2255 Proceedings, 28 U.S.C. §2255.   "Facts alluded to in an unsworn memorandum will not suffice." *Id*. (a petitioner who failed to present his factual allegations under oath "was not entitled to the relief that he sought").

### CARPENTER'S §2255 CLAIMS (Dkt. #496, 497)

### 1.   Improper Venue

Carpenter argues that venue in Massachusetts was improper.   Motion at 10-16 (Dkt. #497).   This claim is precluded by the "law of the case" doctrine because the Court previously rejected the identical claim.   Moreover, Carpenter failed to raise the issue on direct appeal, and it is thus procedurally defaulted.

Carpenter first raised a claim of improper venue in "Defendant's Supplemental Motion to Dismiss the Indictment for Lack of Venue" and a memorandum in support.   Dkt. #27-28.   The government filed an opposition to that motion.   Dkt. #29.   The Court denied Carpenter's motion on November 9, 2004, "substantially for the reasons set forth in the government's opposition.   Dkt. #44.

Carpenter raised the issue again in "Defendant's Motion in Limine to Exclude all Evidence Relating to Counts 3 and 4 for Lack of Venue or, in the Alternative, to Dismiss," and "Defendant's Motion in Limine to Exclude all Evidence relating to Counts 1-2 and 5-13 for Lack of Venue or, in the Alternative, to Dismiss."   (Dkt. #83-84).   The government opposed both motions.   Dkt. #99.   After a hearing, the Court denied both motions.   Docket entry 06/30/2005.

Carpenter raised it again after his first trial as part of his "Motion for Judgment of Acquittal . . . for Lack of Venue."   Dkt. #142.   On July 27, 2005, the Court denied Carpenter's venue claims, concluding that the evidence presented at trial was sufficient under both Supreme Court and First Circuit precedents to justify venue in Massachusetts for all the charged counts. Dkt. #148.   Carpenter also raised the venue issue as part of his motion for a new trial.   Dkt. #158.   After careful consideration in a written decision, the Court rejected Carpenter's venue claims.   *United States v. Carpenter*, 405 F. Supp. 2d 85, 88-92 (D. Mass. 2005).

After his second trial, Carpenter raised the venue issue again in support of his "Motion for a New Trial."   Dkt. #312.   The Court denied that motion.   *United States v. Carpenter*, 808 F. Supp. 2d. 366, 386 (D. Mass. 2011).   Carpenter thereafter failed to raise the issue on appeal.

Carpenter has litigated the venue issue before this Court, and his claims have been rejected.   Pursuant to the "law of the case" doctrine, there is no basis for this Court to reconsider its earlier decisions.   Moreover, the claim is procedurally defaulted because Carpenter failed to raise it on direct appeal, and he has made no attempt to establish cause and actual prejudice for failing to do so.   This basis for relief should be rejected.

**2.**  **Ineffective Assistance of Counsel**

**The Legal Standard**

A defendant seeking post-conviction relief on the basis of ineffective assistance of counsel must show: (1) that his "counsel's representation fell below an objective standard of reasonableness[;]" and (2) that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 694 (1984).   The petitioner bears the burden of establishing the need for relief under Section 2255.   *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998).

"Under the first prong of *Strickland*, there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight." *Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006) (quoting *Strickland*, 466 U.S. at 689); *see also Bucci v. United States*, 662 F.3d at 30.   To that end, "[i]t is only where, given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it,' that the ineffective assistance prong is satisfied." *Knight*, 447 F.3d at 15.   "A competent defense counsel is 'entitled to formulate a strategy that [is] reasonable at the time and to balance limited resources in accord with effective trial tactics and strategies.'" *Bucci*, 662 F.3d at 31 (quoting *Harrington v. Richter*, ___ U.S. ___, 131 S. Ct. 770, 790 (2011).   "Indeed, while criminal defendants are entitled to competent representation, the constitution 'does not insure that defense counsel will recognize and raise every conceivable constitutional claim.'" *Bucci*, 662 F.3d at 31 (*quoting Engle v. Isaac*, 456 U.S. 107, 133-34 (1982).   A defendant may not satisfy the first part of the test simply by identifying potential, or even actual errors by counsel.   Rather, he must show "that

counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

Under the second, prejudice, prong, "a reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* at 694. "[T]his is a 'highly demanding' and 'heavy burden.'" *Knight*, 447 F.3d at 15 (internal citation omitted).

Moreover, "[a] defendant's failure to satisfy one prong of the *Strickland* analysis obviates the need for a court to consider the remaining prong." *Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir. 2010). In other words, if a defendant cannot establish "prejudice," a court need not even inquire into the attorney's conduct.

In situations where trial counsel had a potential or actual conflict of interest, a defendant still "must demonstrate that his counsel's performance was affected by the conflict, but need not also establish that the difference in performance prejudiced him in the same sense as in an ineffective assistance claim." *United States v. DeCologero*, 530 F.3d 36, 77 (1st Cir. 2008) (holding that the claim fails where defendant fails to make any viable argument as to what his attorney might have done differently). "Showing an adverse effect, however, still requires more than mere speculation." *Id*. "[T]he defendant 'must show that [the attorney] might plausibly have pursued an alternative defense strategy, and that the alternative strategy was in conflict with, or may not have been pursued because of, [the attorney's] other loyalties or interests.'" *Id*. at 77, quoting *United States v. Ramirez-Benitez*, 292 F.3d 22, 30 (1st Cir. 2002). To prevail, a defendant must establish "some adverse action or inaction . . . that can be traced to the conflict in loyalty." *United States v. Burgos-Chaparro*, 309 F.3d 50, 53 (1st Cir. 2002). "Merely to speculate that the divided loyalty could have caused such a step is not enough." *Id*. "[A] potential division of loyalties rises to the level of an 'actual conflict' only where defendants show

9

that the conflict 'actually affected the adequacy of his representation.'"   *Yeboah-Sefah v. Ficco*, 556 F.3d 53, 73 (1st Cir. 2009) (affirming district court's denial of §2254 habeas petition), quoting *Mickens v. Taylor*, 535 U.S. 162, 171 (2002).

## Carpenter's Allegations of Ineffective Assistance

In this section, Carpenter attacks the representation he was afforded by attorneys with the law firm of Greenberg Traurig LLP.

a. Carpenter first claims that his attorneys failed to obtain a copy of a civil complaint filed by the Exchangors which "would have gutted the government's entire case, exonerated me, and provided ample Brady, Giglio, and Bagley information to cross-examine the Exchangors and point out their perjury at trial."   Motion at 20. Carpenter fails to identify anything in the civil complaint which his attorneys could have used at trial, fails to explain how they could have used it, and fails to explain how their use of the civil complaint would have changed the result.   Thus, this allegation is insufficient to state a claim because it is "entirely conclusory and without any supporting specific factual allegations."   *Tse v. United States*, 2006 WL 3782708 (D. Mass. 2006).

b. Carpenter next claims that his attorneys failed to object during closing argument when counsel for the government used the words "that's fraud."   Motion at 20.   Carpenter has not attempted to establish any prejudice resulting from that failure, nor would he be able to do so.   The Court of Appeals specifically found that, taken in context, those words "were permissible comments on the evidence . . .."   *Carpenter II*, 736 F.3d at 632.   Thus, even had defense counsel objected to those words, there is literally no possibility that the result at trial or on appeal would have been any

different.

c.  Carpenter's next claim of ineffective assistance is somewhat more developed, but again falls short.   Carpenter argues that his attorneys failed to file a Rule 33 motion for a new trial on the basis of newly discovered evidence concerning Merrill Lynch. Motion at 20-21.   According to Carpenter, they failed to do so because they had a conflict of interest with their "new-found client Merrill Lynch," and that they "abandoned" him because they were taking on "more and more work from Merrill Lynch."   *Id*. at 20-23.   Carpenter's assertion that his attorneys also represented Merrill Lynch is unsupported by any reference to the record in this case, nor by any other evidence, including an affidavit from Carpenter.   Having failed to prove an actual conflict of interest, Carpenter is not relieved of the requirement that he establish prejudice resulting from any substandard representation.   That he will not be able to do.[2]

Carpenter's attorneys in fact raised the Merrill Lynch evidence as part of a motion for a new trial.   *See* "Supplemental Memorandum," filed on October 28, 2009.   Dkt. #355.   This Court denied Carpenter's new trial motion, and that decision was affirmed on appeal.   *Carpenter III*, 781 F.3d at 620-21 and n. 22.   Even if that evidence was not raised as part of a separate motion for a new trial, as Carpenter argues, the substance of the claim was plainly raised with this Court and rejected.   It was further litigated before the Court of Appeals, which described that evidence as

---

2  Carpenter does not state how or when he learned of the alleged conflict by his attorneys. Assuming for the sake of argument that Greenberg Traurig actually represented Merrill Lynch at the same time as they were representing Carpenter, if Carpenter knew of the dual representation at the time and failed to raise it with the Court, then he procedurally defaulted on that issue and cannot raise it now.

"not so probative as to have mandated a new trial." *Id*. at 621.   For these reasons, Carpenter has failed to establish any prejudice.

Carpenter argues that he does not have to establish prejudice because his attorneys had a conflict of interest at the time.   But merely saying so does not make it so.   As noted above, Carpenter has presented no evidence that his attorneys in fact were representing Merrill Lynch at the same time as they were representing him in this case. Moreover, even if he could prove such a potential conflict of interest, he has still failed to show how that alleged conflict actually affected his attorneys' performance. Even if there was a conflict – which he has not established – Carpenter has the burden of demonstrating that the conflict "actually affected the adequacy of his representation." *Mickens v. Taylor*, 535 U.S. at 168.   Showing an adverse effect requires more than mere speculation, and Carpenter has not even attempted to show what his attorneys might have done differently.   *United States v. DeCologero*, 530 F.3d at 77) (noting that the defendant made "no viable argument as to what [his attorney] might have done differently").   Nor could he meet this standard.   The record is clear that Carpenter's attorneys presented the Merrill Lynch evidence to this Court as a ground for a new trial and aggressively litigated this claim.   The "Supplemental Memorandum" they filed effectively called the Merrill Lynch witnesses who had testified at trial against Carpenter liars.   Dkt. #355 at 10 ("[T]he new evidence conclusively shows that the Merrill Lynch witnesses at Mr. Carpenter's 2008 criminal trial testified falsely on this fundamental point.").   They supported the "Supplemental Memorandum" with more than 400 pages of exhibits and transcripts.   Prior to that pleading, Carpenter's attorneys had submitted two reports and an emergency motion to subpoena Merrill

12

Lynch and its attorneys, all of which discussed the newly discovered evidence and its significance to Carpenter's case.   Dkt. #343, 349, 350.   That the attorneys went so far as to subpoena Merrill Lynch and describe its employees as liars undercuts any claim by Carpenter that their performance was affected by any potential conflict of interest.

d.   Carpenter's Petition next lists a dozen things he asserts his attorneys failed to object to – or failed to do – at his second trial.   Motion at 21-22.   They are set forth literally in a list, each a sentence long, with no citation to the record, no effort to describe how the failure of his attorneys to take or not take the described actions fell below an objective standard of reasonableness, or how if they had done so, there is a reasonable probability there would have been a different result.   Nor does he argue how any of these claimed failures might have been a result of the alleged conflict with Merrill Lynch.   To the extent that these claims are "adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, [they should be] deemed waived."   *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990).   None of the items on Carpenter's list, either alone or together, merit further examination by the Court:

1.   Carpenter asserts that his attorneys failed to object to the "instructions on half-truths versus the 50 shades of malice described in *United States v. Gray*, No. 13-1909 (1st Cir. 2015)."   Motion at 21.   *Gray* involved a charge of giving false information regarding a bomb threat on an airplane in violation of 49 U.S.C. §46507(1), not mail or wire fraud.   *United States v. Gray*, 780 F.3d 458, 462 (1st Cir. 2015).   Carpenter fails to make any argument as to how *Gray* is relevant to

13

his case.   Nor does he suggest how his attorneys could have raised an objection based on the 2015 *Gray* decision during a trial that took place in 2008.   In any event, the Court of Appeals affirmed the jury instructions used at Carpenter's trial. *Carpenter III*, 781 F.3d at 619-20.

2. Carpenter next claims that his attorneys should have objected to the admission of the Paley marketing materials because, he asserts, he had nothing to do with them. Motion at 21.   This is factually incorrect.   As the Court of Appeals pointed out, Carpenter "did review all of the marketing materials and approved their use." *Carpenter II*, 736 F.3d at 622.

3. Carpenter claims his attorneys should have objected to all three grounds relied on by this Court to grant a new trial.   Motion at 21.   Whether or not they should have done so, there was obviously no prejudice because the Court in fact ordered a new trial on those grounds.

4. Carpenter claims his attorneys were deficient in failing to object to the "continual references" to "wealthy man," "risky" investments, and cavalier attitude, thus inciting the jury's "hate and distrust of Wall Street during the financial downturn of 2008."   *Id*.   These are substantially the same claims that were raised, and rejected, on appeal, and thus he is precluded from raising them again now. *Carpenter II*, 736 F.3d at 629.

5. Carpenter claims his attorneys should have objected to "[b]ogus warnings of risk by the brokers."   *Id*.   This vague and undeveloped argument should be deemed waived.

6. Carpenter claims it was ineffective for his attorneys to have failed to object to

"[o]ther prosecutorial misconduct in closing statements in addition to 'that's fraud' comment." *Id*. As for the "that's fraud," comment, the Court of Appeals decided that was permissible argument, as discussed above. Nor was there any prejudice from failing to object, since the Court of Appeals applied the "de novo" review standard. *Carpenter II*, 736 F.3d at 626. Carpenter fails to identify any other specific statements he claims his attorneys should have objected to, and so this claim should be deemed waived.

7/8 Carpenter claims his attorneys should have requested a jury instruction on venue or objected to venue. Motion at 21. In fact, the record reflects that counsel did request such an instruction and did "object to venue." See Defendant's Supplemental Motion for a New Trial (Dkt. #312) at 2-5 (discussing defense counsel's request for a jury instruction on venue, and request for a new trial because the instruction was not given).

9. Carpenter claims his attorneys failed to request a "duty to disclose instruction" or a "knowledge" of a duty to disclose instruction. Motion at 22. There was no error or prejudice because, as both this Court and the Court of Appeals determined, the government was not required to prove a duty to disclose because this was not a case of fraud by omission. *Carpenter III*, 781 F.3d at 619-20.

10. Carpenter asserts counsel should have objected to the government's "focus on my 'greed' and derogatory statements made about me . . .." Motion at 22. There was no prejudice from any failure to object because the Court used such comments as the basis for ordering a new trial, and the Court of Appeals reviewed it "de

novo." *Carpenter II*, 736 F.3d at 626.   Moreover, Carpenter fails to substantiate

or develop this argument, and so it should be deemed waived.

11. Carpenter claims that his attorneys should have requested a bill of Particulars "to

identify the allegedly false misrepresentations that I made."   Carpenter fails to

argue how this shows ineffective assistance or how it prejudiced his case.   His

attorneys in the second trial had the benefit of the transcript from the first trial and

were thus well aware of the misrepresentations that the government contended

were attributable to Carpenter.   Presumably, they did not believe it was necessary

to waste time seeking information about the government's case which they had

already learned from the first trial.

12. Carpenter claims that his attorneys should have "done a motion to dismiss" based

on a Speedy Trial Act violation based on *United States v. Huete-Sandoval*, 668

F.3d 1 (1st Cir. 2011).   Motion at 22.   First, Carpenter's second trial took place

in 2008, and any Speedy Trial Act claims were required to have been brought

before trial.   18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for

dismissal prior to trial . . . shall constitute a waiver of the right to dismissal under

this section").   Since *Huete-Sandoval* was not issued until 2011, he could not

have filed a motion to dismiss under the Speedy Trial Act based on that case.

Furthermore, as detailed below, Carpenter's Speedy Trial Act claims were fully

litigated, and rejected, by both this Court and the Court of Appeals.   Carpenter

makes no attempt to explain how a citation to the *Huete-Sandoval* case would have

changed the result.   Nor does he posit how any potential conflict by Greenberg

Traurig attorneys affected their drafting Speedy Trial pleadings that did not include

a citation to that case.   The Speedy Trial Act issues were fully litigated by all of

Carpenter's attorneys, and were rejected on the merits.   There was no deficiency

in his attorneys' failure to cite to one case and, moreover, no prejudice which

resulted from such failure.

e.   Finally, Carpenter asserts that his attorneys should have allowed him to testify at trial,

as he claims he "begged my attorneys to do."   Motion at 22.   Here again,

Carpenter's factual assertion is unsupported by anything in the record, including any

affidavit.   Significantly, Carpenter does not contend in his Motion that he did not

understand that he had the right to testify at trial on his own behalf.   In fact, the Court

asked Carpenter during his first trial if Carpenter understood that he had the right to

testify on his own behalf.   Tr. Day 11, pg. 98 (7/25/2005) (Dkt. #167).   Carpenter

responded that he did understand, and that his "attorney did spend a great deal of time

talking to me about my rights."   *Id*.   Plainly, Carpenter understood that he had the

right to testify at trial, and could have exercised that right at his second trial had he

chosen to do so.   Moreover, the reason he did not testify at either trial was a classic

strategic decision; *i.e.*, that his attorneys did not believe that the government had

proved its case beyond a reasonable doubt.   *Compare id*. (Carpenter stated he was not

testifying because he and his attorneys did not believe that the government had

"carried their burden") and Motion at 22 (Carpenter's attorneys advised him not to

testify because they "were confident that the jury would acquit [him] because the

government had not made its case").   It is clear just from the allegations Carpenter

makes in his present Motion that he agreed with his attorneys that the government

failed to meet its burden of proof at his second trial.   Carpenter's unsupported

17

assertion that his attorneys did not "allow[]" him to testify despite Carpenter "begg[ing]" them to let him, is implausible and should be rejected.  The only consistent conclusion to be drawn from the record is that Carpenter chose not to testify at both of his trials because he and his attorneys did not believe the government had met its burden.  That strategic decision cannot support a claim of ineffective assistance.

For all the reasons stated above, Carpenter has failed to establish that his attorneys provided ineffective assistance of counsel under the *Strickland* standard.  To the contrary, a review of the record reflects that Carpenter's attorneys zealously represented him in this case, both in their written pleadings and at trial.   Carpenter's §2255 challenge on that ground should be rejected without a hearing.

3.  **Grand Jury Bias/Prosecutorial Misconduct**

Carpenter argues that the government committed prosecutorial misconduct in the grand jury while seeking an indictment against him.   Motion at 24-29.   Carpenter raised this issue before, and the Court rejected it.   The "law of the case" doctrine compels that it be rejected again.

Carpenter first raised a claim of misconduct before the grand jury in "Defendant's Emergency Motion to Dismiss for Violations of the Grand Jury's Independence."   Dkt. #123. After arguments on the issue on July 11, 2005, the Court denied the motion on February 17, 2006. *See* docket entries.   On March 25, 2008, Carpenter again raised a claim of prosecutorial misconduct in the grand jury, focusing on a claim of perjury by an FBI agent.   "Defendant's Verified Motion to Dismiss for Prosecutorial Misconduct, Grand Jury Bias, and an Unconstitutional Grand Jury"; Dkt. #237.   The government responded in writing, and the Court

18

denied the motion.   Dkt. #243; docket entry 4/24/2008.   Carpenter did not appeal this Court's ruling.

Thus, not only is Carpenter's claim precluded by the "law of the case" doctrine, it is procedurally defaulted because he failed to raise it on direct appeal.   Carpenter has asserted no cause or prejudice for having failed to raise it on appeal.   Nor could he.   Even if there had been misconduct – which Carpenter has not established - any such errors in the grand jury process were rendered harmless by Carpenter's conviction at trial.   *United States v. Mechanik*, 475 U.S. 66, 72-73 (1986) (holding that conviction at trial rendered harmless any error in the grand jury process flowing from a violation of Fed. R. Crim. P. 6(d); reversing dismissal of indictment).

4.  **Rule of Lenity/Due Process**

Carpenter argues that both the Rule of Lenity and Due Process Clause were violated because the mail and wire fraud statutes were applied in his case in a novel way, and he was never put on notice that his conduct was a crime.   Motion at 30-36.

These arguments were previously raised in "Defendant's Supplemental Motion for Judgment of Acquittal" at 1-12 (Dkt. #311), and "Defendant's Reply in Further Support of Supplemental Motion for Judgment of Acquittal" at 14-16 (Dkt. #321).   The government filed a written response (Dkt. #315 at 1-6), and this Court denied Carpenter's motion.   Dkt. #377; *Carpenter*, 808 F. Supp. 2d at 386.   This Court should not reconsider the issue, having already decided it once.   Moreover, Carpenter did not appeal this issue, and thus it is procedurally defaulted, since he has not established cause and prejudice for failing to do so.   *Bucci*, 662 F.3d at 29.

5.  **Guidelines Loss Calculation/Reasonableness of Sentence**

Carpenter asserts that the loss amount determined by the Court in calculating the Sentencing Guidelines was caused by reasons other than Carpenter's actions (*i.e.*, "the stock market crash"), and thus the Court should have departed downward on that basis.   Motion at 37-44.   Carpenter first raised this claim in "Dan Carpenter's Sentencing Memorandum" at 25-28 (Dkt. #191).   While that pleading was submitted in connection with his anticipated sentencing following the first trial, Carpenter thereafter specifically incorporated it by reference in his 2014 sentencing pleadings.   *See* "Daniel E. Carpenter's Supplemental Sentencing Memorandum" at 2. Dkt #430.   At the sentencing hearing, after the Court determined that Carpenter's Guidelines sentencing range ("GSR") was 51-63 months, Carpenter's attorney argued that the Court should depart based on the loss overstating the seriousness of the offense, specifically because the amount of the loss was driven by the market downturn in 2008.   Sentencing Tr. at 5, 8, 72-73; Dkt. #446.   The government stated its reasons for opposing such a departure, and the Court declined to depart on that ground.   *Id*. at 38-45, 86-87.   The Court stated that it found no basis for a Guidelines departure, including for loss overstating the seriousness of the offense.   *Id*. at 86-87, 93.

The Court sentenced Carpenter to 36 months in prison, concluding that that was the appropriate sentence.   *Id*. at 93.   Carpenter appealed his sentence, including the issue of whether this Court erred in failing to sufficiently consider the fact that victims' losses were partially caused by the stock market downturn in 2000.   *Carpenter III*, 781 F.3d at 622.   The Court of Appeals affirmed the sentence, concluding that "[t]he district court was not unreasonable in failing to find that the stock market downturn did not justify a downward departure."   *Id*. at 623.

Having fully litigated this issue both before this Court and on direct appeal, Carpenter may not raise it again in a collateral attack.   Moreover, "claims that do not allege constitutional or jurisdictional errors," such as sentencing guidelines errors, "are properly brought under §2255 only if the claimed error is 'a fundamental defect which inherently results in a complete miscarriage of justice' or 'an omission inconsistent with the rudimentary demands of fair procedure.'"   *Knight v. United States*, 37 F.3d 769, 772 (1ˢᵗ Cir. 1994) (*quoting Hill v. United States*, 368 U.S. 424, 428 (1962).   Carpenter has made no such showing, and denial is appropriate on that basis as well.

### Forfeiture

Carpenter devotes several pages of his sentencing claim to the Court's forfeiture order, although he does not raise it as a separate ground for relief.   Motion at 41-44.   Carpenter's Motion for Reconsideration of Order of Forfeiture (Money Judgment) (Dkt. #477) is still pending before the Court, and Carpenter's appeal of that Order is on hold until the Court decides that motion, as follows:

The government filed a Motion for Order of Forfeiture (Money Judgment), seeking an Order in the amount of $14,053,715.52.   Dkt. #433.   Carpenter filed an opposition.   Dkt. #434. The Court heard arguments on the issue during the sentencing hearing and ordered forfeiture, but deferred on deciding the amount to be forfeited until a later date.   Tr. at 30-33 (Dkt. #446).   The parties thereafter briefed the issue.   Dkt. #454, 455, 469, 470.   On May 23, 2014, the Court issued an Opinion and Order granting the government's motion for forfeiture in the amount of $14,053,715.52.   *Carpenter*, 2014 WL 2178020 at *1-3 (Dkt. #471).   Thereafter, Carpenter filed the pending motion for reconsideration of the forfeiture order (Dkt. #477).   The government filed an opposition to reconsideration, and Carpenter replied to that.   Dkt. #483,

486.    After filing his motion for reconsideration, Carpenter filed a notice of appeal of the Court's forfeiture order.    Dkt. 479.    Because this Court has not decided the motion for reconsideration, the appeal remains on hold and the Court of Appeals has not set a briefing schedule.    *See* July 11, 2014 Order in Appeal No. 14-1641 (requiring defendant to file monthly status report advising Court of Appeals of any action taken by the district court on the pending motion for reconsideration).    Although the forfeiture issue is not part of Carpenter's §2255 Petition, the government requests that the Court rule on Carpenter's motion for reconsideration (Dkt. #477) forthwith, which would permit the forfeiture appeal to move forward without further delay and expedite efficient resolution of all of the defendant's appellate claims.    *See* Notice of Appellate Proceedings (Dkt. #488).

## 6.    Alleged Failure to Prove Duty to Disclose/Prejudicial Amendment

Carpenter argues that he was wrongfully convicted because the government proved only that there were "omissions and half-truths," which is insufficient to establish criminal fraud without also proving a "duty to disclose."    Motion at 45-53.    Carpenter further contends that the government failed to prove any such "duty to disclose."    *Id.*    For the same reasons, Carpenter asserts that there was a variance or constructive amendment of the indictment based on the evidence presented at trial.    *Id.* at 54-58.    Carpenter previously raised all of these issues, and they were rejected by this Court and on appeal.    Thus, there is no basis for relitigating them in a §2255 proceeding.

Carpenter raised these issues after his first trial in "Defendant's Omnibus Motion for Judgment of Acquittal Pursuant to Fed. R. Crim. P. 29(a)" at 1-6.    Dkt. #146.    The government filed an opposition (Dkt. #175), and this Court denied the motion, concluding that "[t]here was no constructive amendment of the indictment."    *Carpenter*, 405 F. Supp. 2d at 92.

22

Carpenter raised these issues again after his second trial in "Defendant's Supplemental Motion for Judgment of Acquittal" at 12-15 (Dkt. #311) and "Defendant's Supplemental Motion for a New Trial" at 12-15 (Dkt. #312); *see also* "Defendant's Reply in Further Support of Supplemental Motion for Judgment of Acquittal" (Dkt. #321).   Those motions were denied. *Carpenter*, 808 F. Supp. 2d at 386.   Carpenter raised them again in his "Motion for Reconsideration of Defendant's Supplemental Motion for a New Trial."   Dkt. #404.   This Court denied the motion, concluding that "[t]he government's evidence at trial and its argument to the jury did not vary from or amend the indictment."   *Carpenter*, 2014 WL 691659 at *5-6 ("[t]here was no constructive amendment of the indictment").   Carpenter's appeal of these issues was unsuccessful.   *Carpenter III*, 781 F.3d at 619-20.

Thus, having fully litigated these issues on more than one occasion in this Court and once before the Court of Appeals, Carpenter is precluded from raising them again in a §2255 petition.

7.   **Government's Alleged Failure to Disprove Carpenter's Good Faith**

Carpenter next argues that the government failed at trial to disprove his good faith. Motion at 59-66.[3]   Carpenter previously raised this issue in his "Motion for Judgment of Acquittal . . . and for New Trial" (Dkt. #308), and further detailed his arguments in his "Memorandum of Law in Support" (Dkt. #310) at 10-38.   The government argued to the contrary.   Dkt. 317 at 8-13.   In its written decision, the Court carefully considered Carpenter's arguments, and rejected them.   *Carpenter*, 808 F. Supp. 2d at 378-80.   Carpenter failed to raise this issue in his direct appeal.

---

3 In this section, Carpenter also rehashes his newly-discovered Merrill Lynch evidence and "omissions" arguments, which are addressed elsewhere in this Opposition.

The "law of the case" doctrine precludes this Court from reconsidering this issue, and it is procedurally defaulted because Carpenter failed to raise it on appeal, and has failed to establish cause and prejudice for not doing so.

8.  **Double Jeopardy**

Carpenter argues that the Double Jeopardy Clause of the Constitution was violated by his retrial.   Motion at 67-71.   Carpenter first raised this claim in "Defendant's Motion to Dismiss on Double Jeopardy," (Dkt. #275), which was denied by this Court.   Dkt. #302.[4]   He raised it again in "Defendant's Supplemental Motion for Judgment of Acquittal" (Dkt. #311) at 15-19, with additional argument on the issue in "Defendant's Reply in further support of Supplemental Motion for Judgment of Acquittal" (Dkt. #321) at 16-17.   The government filed a response (Dkt. #315) in which it noted, among other things, that the Court of Appeals had already held that Carpenter did not have a "viable double jeopardy claim," because his conviction had been vacated for legal error, not insufficiency of the evidence.   *Carpenter I*, 494 F.3d at 26.   Thereafter, this Court denied Carpenter's Double Jeopardy claim for a second time.   *Carpenter*, 808 F. Supp. 2d at 386.   Carpenter failed to raise the issue on direct appeal.

Because this issue has been previously litigated by this Court (twice), and not raised on direct appeal, Carpenter is precluded from having it reheard by the "law of the case" doctrine, and he is procedurally barred from raising it on collateral review since he has failed to establish cause and prejudice for not raising it on appeal.

---

4  Docket entry #302 appears on the docket after #287.

**9.  Prosecutorial Vindictiveness**

In this final section, Carpenter asserts that the government engaged in prosecutorial vindictiveness and thus the indictment should be dismissed.   Motion at 71-89.   Having failed to raise this issue before, Carpenter is procedurally barred from raising it now for the first time on collateral review.[5]   For that reason alone, his claim should be denied.   Moreover, as discussed below, it should also be denied because Carpenter has failed to establish a legal or factual basis supporting relief.

**The Legal Framework**

A vindictive prosecution is "one in which the prosecutor seeks to punish the defendant for exercising a protected statutory or constitutional right."   *United States v. Jenkins*, 537 F.3d 1, 3 (1ˢᵗ Cir. 2008) (affirming district court's conclusion that defendant failed to establish prosecutorial vindictiveness).   That punishment usually consists of a prosecutor bringing additional charges and/or seeking a higher sentence after a defendant has successfully exercised his right to appeal his conviction.   *Id*. at 3-4 (discussing cases).   "A defendant may establish a vindictive prosecution either (1) by producing evidence of actual vindictiveness or (2) by demonstrating circumstances that reveal a sufficient likelihood of vindictiveness to warrant a presumption of vindictiveness.   *Id*. at 3.   "Successful assertions of vindictive prosecution are most common where a defendant advances some procedural or constitutional right and is then punished for doing so."   *United States v. Lanoue*, 137 F.3d 656, 664 (1ˢᵗ Cir. 1998).

---

5  Carpenter points to nothing in the record indicating that he raised this issue previously, nor has the government been able to find any reference in the record to it having been raised. The government reserves the right to supplement its argument on this section if Carpenter provides a record citation reflecting that it had, in fact, been raised before.

**Argument**

Carpenter's theory, unsupported by any evidence or reference to the record, appears to be that the U.S. Attorney in the District of Connecticut obtained an indictment against him in December 2013 as a result of prosecutorial vindictiveness by prosecutors in Boston in response to the November 2013 Court of Appeals decision reversing this Court's new trial order.   Motion at 71-76.   Oddly, the remedy he apparently is seeking is the dismissal of the indictment in the present case, not the Connecticut indictment.

As noted above, this claim is procedurally defaulted because Carpenter failed to raise it before, and he has failed to establish – or even suggest – any cause or prejudice for failing to do so.   Carpenter was obviously aware of the Connecticut indictment as early as December 2013, long before he was sentenced and judgment entered in 2014.   Carpenter filed numerous pleadings from late December 2013 through his sentencing in February 2014, but never raised this claim.   Similarly, all of the examples he submits of alleged vindictiveness occurred years ago, and could have been presented to this Court previously.

As for the substance of Carpenter's argument, the flaws are readily apparent.   First, he fails to identify any procedural or constitutional right that he exercised for which the government allegedly punished him.   In contrast to the usual situation in which vindictiveness is alleged to have resulted from a *defendant's* successful appeal of his conviction, *United States v. Jenkins*, 537 F.3d at 3-4, the November 2013 Court of Appeals decision that Carpenter points to resulted from the *government's* appeal.   Carpenter posits no plausible reason why the government would punish Carpenter after the government had prevailed in its own appeal.

Furthermore, Carpenter fails to present any evidence of actual vindictiveness, or circumstances that reveal a sufficient likelihood of vindictiveness that would warrant a

presumption of vindictiveness. What Carpenter describes as vindictive conduct by the government, Motion at 78-81, is mostly a reiteration of his complaints about being charged in the first place and the evidence that was presented at trial. Several of the things that Carpenter alleges reflect vindictiveness (*e.g.*, appealing the second new trial order, and requesting extensions of time to file the appellate brief), are, rather, descriptions of fairly conventional decisions that were made by the government in litigating this case. While Carpenter has repeatedly made it clear that he disagrees with the government's charging and litigation decisions in this case, that does not make the government's actions vindictive. As Judge Torruella noted in another case which rejected a defendant's allegations of prosecutorial vindictiveness, "[a] criminal trial is not a tea party." *United States v. Marrapese*, 826 F.2d 145, 147 (1st Cir. 1987).

Carpenter places great weight on *United States v. Tobin*, 598 F. Supp. 2d 125 (D. Me. 2009). In that case, the district court dismissed the indictment as a result of prosecutorial vindictiveness. However, Carpenter's reliance on *Tobin* is misplaced. Tobin's indictment in Maine followed his successful appeal of charges brought against him in New Hampshire, and the district court in Maine noted that "courts view quite skeptically the government's decision to file more severe charges following a defendant's successful appeal of his conviction." *Id*. at 129. Here, not only was it the government which appealed successfully, but Carpenter points to no new "more severe charges" brought against him in this case following the appeal.

The district court in *Tobin* also relied heavily on the fact that the government had not identified any newly discovered evidence, or intervening criminal activity, which might justify bringing new charges. *Id*. at 129, 131. Here, Carpenter's own Motion asserts that government agents seized more than 300 boxes of records from his Connecticut offices in 2010 and 2011, and interviewed more than 70 witnesses during the summer of 2011. Motion at 71-73. The

Connecticut Indictment itself alleges a mail and wire fraud scheme and conspiracy which operated from 2006 through 2013 involving insurance "life settlements," and which is unrelated to anything Carpenter was charged with in the present case.    A copy of the indictment is attached hereto as Exhibit 1 (*United States v. Carpenter and Bursey*, Cr. No. 13-226-RNC (D. Conn.)). Clearly, the U.S. Attorney's Office in Connecticut obtained substantial amounts of evidence which supported those new charges and, therefore, a presumption of vindictiveness is not warranted.    *Lanoue*, 137 F.3d at 665 ("Where the change in the indictment is prompted by newly discovered evidence supporting the imposition of additional counts . . . a presumption of vindictiveness is not warranted") (citations and internal quotations omitted).   In any event, if Carpenter believes that the government acted vindictively by bringing the charges in Connecticut – something the government strongly disputes - the appropriate forum for him to attack that prosecution is in Connecticut, not here.

Carpenter has failed to point to any vindictive conduct on the part of the government, either standing alone or in response to Carpenter's exercise of some statutory or constitutional right.    Thus, this claim should be summarily denied.


**MOTION FOR SUMMARY JUDGMENT (Dkt. #505)**

Carpenter asserts that the Court should enter "Summary Judgment" in his favor.   Dkt. #505.   To the contrary, his Motion for Summary Judgment should be denied.   Carpenter filed this motion on July 31, 2015, two months after filing his §2255 Petition.   He asserts that because the government failed to file a response to the §2255 Petition during those two months, the underlying "facts" alleged in his Petition are not in dispute, and the Court must enter Summary Judgment in his

favor.   Carpenter is wrong.   First, the government had no obligation to respond to his §2255

petition until it was ordered to do so by this court.   Rule 5(a), Rules Governing Section 2255

Proceedings ("[t]he respondent is not required to answer the petition unless a judge so orders").

This Court did not order the government to respond until October 30, 2015.   Dkt. 508.   Thus, the

government may not be deemed to have admitted any of Carpenter's allegations by not responding

before now.   Second, Carpenter has failed to establish any "facts" – disputed or not – which would

entitle him to summary judgment.   As detailed above, Carpenter's Motion (Dkt. #497) is unsigned

and unsupported by any affidavits, other evidence, or citations to the record.   Moreover, as also

detailed above, Carpenter's unsworn assertions are unsupported and contradicted by the record.

For these reasons, Carpenter's Motion for Summary Judgment thus must be denied.

## MOTION TO AMEND TO ADD FAILURE TO STATE A CRIME UNDER RULE 12(b) (Dkt. #503)

On July 6, 2015, Carpenter filed a motion to amend his §2255 petition to add his recently

denied challenge to the Court's subject-matter jurisdiction.   Dkt. #503.   The government agrees

that the Court should allow Carpenter to amend his Petition to add this claim because the motion

was filed within the one-year statute of limitations prescribed by §2255.   However, the claim

itself should be summarily dismissed, for the following reasons.

Carpenter first leveled an attack on the Court's jurisdiction to hear this case in a motion he

filed in May 2004.   Dkt. #13.   That motion was denied.   Dkt. #44.   On May 1, 2015, after

Carpenter's conviction had been affirmed on appeal, he filed a motion seeking to revive the issue.

Dkt. #492.   The government opposed that effort.   The government argued that: (1) the law of

the case doctrine precluded the Court from reconsidering its prior ruling on the issue; (2)

Carpenter's motion was untimely since he had failed to raise the issue on direct appeal, and he

had made no effort to show "good cause" for his failure to raise the claim on time; and (3) Carpenter's motion, while styled as a challenge to the sufficiency of the indictment, was in substance an attack on the sufficiency of the evidence, which is not cognizable under Rule 12. Dkt. #495.   On June 15, 2015, the Court denied Carpenter's motion "substantially for the reasons set forth in the government's 495 opposition."   Dkt. #500.

Carpenter's current pleading is largely a rehash of earlier filing.   In fact, entire sections of the earlier, rejected motion are repeated verbatim in his most recent pleading.   Compare Dkt. #492 at 8-16 with Dkt. #503 at 9-16.

Carpenter's claim is precluded by the law of the case doctrine, and he is further procedurally barred from raising it as part of a §2255 Petition because he failed to raise it in his direct appeal.   For those reasons, and all the reasons addressed by the government in its previously-filed opposition (Dkt. #495), this claim should be summarily dismissed.

## MOTION FOR RECONSIDERATION (Dkt. #502)

On June 15, 2015, Carpenter filed a "Motion for Reconsideration of Opinion and Order Dated May 23, 2014," which attempts to revive Carpenter's Speedy Trial claims that were previously considered and rejected by this Court and on appeal.   Dkt. #502.[6]

Carpenter's constitutional and statutory Speedy Trial claims have been fully litigated before this Court and on direct appeal.   Carpenter filed multiple pleadings on these issues.   *See, e.g.*, Dkt. #387, 388, 391, 406, 407, 413, 415, and 426.   All such claims were rejected by this

---

6  While the motion asks for reconsideration of the Court's May 23, 2014 Opinion and Order, Carpenter actually appears to be seeking reconsideration of the February 21, 2014 Opinion and Order, which addressed the Speedy Trial claims.   2014 WL 691659.   The May 23, 2014 decision addressed Carpenter's forfeiture and bail issues, and not his Speedy Trial claims.   2014 WL 2178020.

Court.   Dkt. #392; Dkt #431 (2014 WL 691659).   Carpenter raised his Speedy Trial claims on

direct appeal, and lost.   *Carpenter III*, 781 F.3d at 603-619.   The Court of Appeal's decision is

binding on this Court, and Carpenter's motion must be denied.


## <u>MOTION FOR AMENDED JUDGMENT AND COMMITMENT</u> <u>ORDER (DKT. #499)</u>

On June 1, 2015, Carpenter filed a "Motion for Amended Judgment and Commitment

Order" (Dkt. #499), which is nothing more than an undisguised plea by Carpenter for the Court to

modify his sentence.   Not only does the Court lack jurisdiction to consider this motion, there is

nothing in the motion that merits any reconsideration of the sentence this Court imposed.   This

motion consists only of Carpenter's tirades about what he claims is the unfairness of his

prosecution and sentence.   He alleges no new constitutional violation, and thus there is also no

basis for considering this motion in the context of his §2255 Petition.

As noted, there is no legal basis for amending Carpenter's sentence.   The Court's

authority to modify or correct a sentence of imprisonment is limited by 18 U.S.C. §3582.   *United*

*States v. Griffin*, 524 F.3d 71, 84 (1st Cir. 2008).   Under that provision, a sentence may be

modified in certain circumstances: (1) at the request of the Bureau of Prisons; or (2) when a

guideline range has been lowered by the Sentencing Commission.   18 U.S.C. §3582(b) and (c).

Neither circumstance applies here.   A sentence may also be corrected pursuant to Rule 35 or 18

U.S.C. §3742 (authorizing sentencing appeals).   18 U.S.C. §3582(b).   Otherwise, "a judgment

of conviction that includes such a sentence constitutes a final judgment."   *Id*.   Carpenter's

sentence has been affirmed on appeal, so there is no authority for modifying it.   Nor is there

anything in Rule 35 which provides authority to modify Carpenter's sentence.   *See*, *e.g.*, *Griffin*,

524 F.3d at 83-85 (holding that Rule 35(a) imposes a jurisdictional limit on a district court's ability to correct a sentence); *see also United States v. Aqua-Leisure Industries, Inc.*, 150 F.3d 95, 96 (1st Cir. 1998) ("A lawful sentence, lawfully imposed, becomes final when judgment is entered; and Fed. R. Crim. P. 35 was deliberately amended to restrict the opportunity for a district judge to revisit thereafter a lawful sentence lawfully imposed."); *United States v. Fahm*, 13 F.3d 447, 453 (1st Cir. 1994) ("the district court lacked jurisdiction to correct its original sentence beyond the limitation period prescribed in Rule 35(c)" (now 35(a)).   Nor does the court have any inherent power to modify a defendant's sentence outside the strictures of Rule 35.   *Fahm*, 13 F.3d at 453-54.

For all the above reasons, Carpenter's Motion for Amended Judgment should be denied.

## CONCLUSION

For all the reasons set forth above, the United States requests that the Court summarily dismiss the defendant's Section 2255 petition (Dkt. #496-97), as well as the issue raised in his Motion to Amend (Dkt. #503), with prejudice.[7]   The Court should also deny Carpenter's Motion for Summary Judgment (Dkt. #505), Motion for Reconsideration (Dkt. #502), and Motion for Amended Judgment (Dkt. #499).   Finally, the Court should rule on Carpenter's outstanding Motion for Reconsideration of Order of Forfeiture (Dkt. #477), by denying it.

---

7  If the Court does not summarily dismiss Carpenter's 2255 motion, and instead determines that further factual development is necessary on Carpenter's claims of ineffective assistance of counsel, the government reserves the right to seek an order that Carpenter (1) confirm in writing the waiver of his attorney-client privilege and (2) supplement his response detailing all communications with his attorneys on the issues he has raised and producing all relevant documents; as well as an order that Carpenter's attorneys submit affidavits responding to Carpenter's allegations.

*Respectfully submitted*,

CARMEN M. ORTIZ
United States Attorney

By: /s/ Mark J. Balthazard
    MARK J. BALTHAZARD
    Assistant U.S. Attorney
    John Joseph Moakley United States Courthouse
    1 Courthouse Way, Suite 9200
    Boston, MA 02210
    Mark.balthazard@usdoj.gov
    BBO #544463
    (617) 748-3208

Date:   January 27, 2016

## CERTIFICATE OF SERVICE

    I hereby certify that the foregoing document filed through the ECF system will be sent electronically to the registered participant as identified on the Notice of Electronic Filing (NEF), and a paper copy mailed to the Defendant at the following addresses: Daniel E. Carpenter, Reg. No. 90792-038, FPC Canaan, Satellite Camp, P.O. Box 200, Waymart, PA 18472; and Daniel E. Carpenter, No. 90792-038, Donald W. Wyatt Detention Facility, 950 High Street, Central Falls, RI 02863.

January 27, 2016          /s/ Mark J. Balthazard
                         MARK J. BALTHAZARD
                         Assistant U.S. Attorney