# EXHIBIT 3

# Pensions&Investments

This copy is for your personal, non-commercial use only. Reproductions and distribution of this news story are strictly prohibited.

- View reprint options
- Order a reprint article now

## South Miami, Merrill Lynch reach settlement

By: Barry B. Burr
Published: July 9, 2010

South Miami (Fla.) City Pension Plan will get $115,000 from Merrill Lynch in a settlement after the plan claimed the firm breached its fiduciary duties while it was investment consultant to the $19 million plan, according to Kenneth R. Harrison Sr., attorney for pension board.

The case was the first to be settled of a number of disputes by Florida public pension plans against Merrill Lynch, Mr. Harrison said.

Bill Halldin, spokesman for Bank of America, parent of Merrill Lynch, declined to comment on the South Miami plan case but confirmed a number of other plans have cases pending against the firm. He declined to comment on them. Terry R. Weiss, an attorney with Greenberg Traurig, which represented Merrill Lynch, declined to comment.

In the South Miami settlement, Merrill Lynch said it "denies all allegations ... (and) any wrongdoing or liability."

The settlement agreement has no information about the South Miami plan's allegations or claims or reasons it brought the case.

Javier Banos, chairman of the plan's board, declined to discuss the terms of the settlement but said the board plans to meet July 30 to discuss settlement-related issues. He believes the plan agreed to pay its outside attorneys in the case one-third of the settlement plus some costs associated with the case, he said.

Mr. Harrison estimated the fund lost between $250,000 and $1.5 million from the alleged fiduciary breach and breach of disclosure.

The South Miami plan terminated Merrill Lynch as a consultant sometime before the plan initiated arbitration proceedings against the firm with Financial Industry Regulatory Authority in 2007, Mr. Harrison said. Bogdahn Consulting is the plan's current consultant, he added.

**Original Story Link:** http://www.pionline.com/article/20100709/ONLINE/100709904/south-miami-merrill-lynch-reach-settlement

This copy is for your personal, non-commercial use only. Reproductions and distribution of this news story are strictly prohibited.

To order presentation-ready copies for distribution to your colleagues, clients or customers and/or request permission to use the article in full or partial format please contact our Reprint Sales Manager at 732-723-0569.

- View reprint options
- Order a reprint article now



# Press Releases

**Greenberg Traurig represents BofA Merrill Lynch as financial advisor to Triton Container International Limited in sale of a Controlling Interest to Warburg Pincus and Vestar Capital Partners**
02.25.11

People:  Joseph C. Gangitano | Michael D. Helsel | David M. Schwartzbaum
Experience:  Corporate & Securities | Mergers & Acquisitions
Related Offices:  New York

**New York, NY (February 25, 2011)** – Warburg Pincus and Vestar Capital Partners, two leading global private equity firms, have acquired a controlling interest in Triton Container International Limited from the Pritzker Family business interests. The international law firm Greenberg Traurig LLP represented BofA Merrill Lynch in its role as financial advisor to Triton. Greenberg Traurig's team included New York Corporate Shareholders David M. Schwartzbaum and Michael D. Helsel, and associate Joseph C. Gangitano. Terms of the transaction were not disclosed. Triton is one of the world's largest owner-lessor of marine intermodal cargo containers, operating in 42 countries on six continents.

**About Greenberg Traurig, LLP**

Greenberg Traurig, LLP is an international, multi-practice law firm with approximately 1,900 attorneys serving clients from 38 offices in the United States, Latin America, Europe, Asia, and the Middle East. The firm is No. 1 on the 2015 *Law360* Most Charitable Firms list, third largest in the U.S. on the 2015 *Law360* 400, Top 20 on the 2015 *Am Law* Global 100, and among the 2015 *BTI Brand Elite*. More information at: www.gtlaw.com.

Home | About Us | Experience | People | Locations | News & Events | Careers | Site Map | Terms and Conditions | Contact Us
©2016 Greenberg Traurig, LLP. All rights reserved. Attorney Advertising.

Disclaimers:

*Greenberg Traurig's London office is operated by Greenberg Traurig Maher LLP, an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP. Greenberg Traurig Maher is a limited liability partnership registered in England and Wales under number OC 346053 and is a multinational practice of Solicitors and Registered Foreign Lawyers authorised and regulated by the Solicitors Regulation Authority (SRA). Click here for the SRA Code of Conduct.

+Greenberg Traurig's Mexico City office is operated by Greenberg Traurig, S.C., an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP.

^Greenberg Traurig's Tel Aviv office is a branch of Greenberg Traurig, P.A., Florida, USA.

Privacy settings



We use cookies to ensure you get the best experience on our website - change your settings

Close

## Press Releases

**Greenberg Traurig Represents Bank of America Merrill Lynch as Financial Advisor to TransUnion**
02.21.12

People: Joseph C. Gangitano | Michael D. Helsel | David M. Schwartzbaum
Experience: Corporate & Securities | Mergers & Acquisitions
Related Offices: New York

**New York (February 21, 2012)** – TransUnion Corp., a leading global provider of information management and risk management solutions, has announced its sale to Advent International and GS Capital Partners VI Fund, LP and certain of its affiliates in a transaction valued at more than $3 billion.

Greenberg Traurig, LLP, a full-service international law firm, represented Bank of America Merrill Lynch as a financial advisor to TransUnion in the transaction. Greenberg Traurig's team for BofA Merrill Lynch was led by David M. Schwartzbaum, co-chair of the firm's M&A Steering Committee, and corporate shareholder Michael D. Helsel and included corporate associate Joseph C. Gangitano, all of whom are in the firm's New York office.

A link to TransUnion's press release is here.

**About Greenberg Traurig, LLP**

Greenberg Traurig, LLP is an international, multi-practice law firm with approximately 1,900 attorneys serving clients from 38 offices in the United States, Latin America, Europe, Asia, and the Middle East. The firm is No. 1 on the 2015 *Law360* Most Charitable Firms list, third largest in the U.S. on the 2015 *Law360* 400, Top 20 on the 2015 *Am Law* Global 100, and among the 2015 *BTI Brand Elite*. More information at: www.gtlaw.com.

Home | About Us | Experience | People | Locations | News & Events | Careers | Site Map | Terms and Conditions | Contact Us
©2016 Greenberg Traurig, LLP. All rights reserved. Attorney Advertising.

Disclaimers:

*Greenberg Traurig's London office is operated by Greenberg Traurig Maher LLP, an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP. Greenberg Traurig Maher is a limited liability partnership registered in England and Wales under number OC 346053 and is a multinational practice of Solicitors and Registered Foreign Lawyers authorised and regulated by the Solicitors Regulation Authority (SRA). Click here for the SRA Code of Conduct.

+Greenberg Traurig's Mexico City office is operated by Greenberg Traurig, S.C., an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP.

# BloombergView

# Wall Street's Kangaroo Court Gets a Black Eye



JUL 29, 2012 6:34 PM EDT UPDATED JUL 30, 2012 3:29 PM EDT

By William D. Cohan                                                                                                              aA

July 30 (Bloomberg) -- "Sunlight is said to be the best of disinfectants," the future Supreme Court Justice Louis Brandeis famously wrote in a 1913 article for Harpers' Weekly, and now, almost 100 years later, there is evidence that Brandeis was right.

On July 9, I wrote a column describing how the Financial Industry Regulatory Authority, Wall Street's self-policing organization, seemingly out of nowhere fired three arbitrators in the months after a May 2011 case in which they awarded $520,000 to the estate of the late Robert Postell. The finding was against Postell's former broker, Merrill Lynch, a subsidiary of Bank of America Corp.

One after another over a period of about a year, the arbitrators -- Ilene Gormly, Daniel Kolber and Fred Pinckney -- received what are known as "black spot" letters from Finra, removing them from the roster of those empowered to adjudicate the thousands of lawsuits brought each year by Wall Street employees and customers against financial firms.

The black spot letters described how Finra periodically examines the list of arbitrators and culls people from it. Finra officials have said that Gormly, Kolber and Pinckney weren't removed because Merrill's lawyer complained to the authority about the sizable award granted to Postell, who died after filing the claim, and his wife, Joan. Was it truly a coincidence? Finra derives the vast majority of its more than $1 billion in annual revenue from securities firms, and executives in the industry serve on Finra's board of governors.

My column on the matter caused a bit of a stir around Finra -- as well as at the Public Investors Arbitration Bar Association, a group of about 500 or so lawyers who represent claimants in Finra arbitrations. Letters started flying between a Finra executive and a Piaba executive explaining the steps Finra takes when it removes an arbitrator. Finra's goal was to show that its actions in the firing of Gormly, Kolber and Pinckney were for good, albeit unstated, reasons.

Finra's justifications rang hollow, and on July 25 the organization took the remarkable step of reinstating all three arbitrators to the Finra roster. In a letter to the arbitrators, Linda Fienberg, the president of Finra's dispute resolution and its chief hearing officer, explained that "after reading the commentary" from Bloomberg View she and her fellow Finra executives "re-opened the matter." They listened to tapes of the Postell arbitration proceedings and "reached a different conclusion regarding the alleged inappropriate conduct from the conclusion previously reached." (Finra provided me with a copy of the letter.)

Still, Fienberg alleged unspecified "inaccuracies" in my reporting and disputed the causal relationship between the firing of the three arbitrators and the complaints from Merrill and its attorney about the Postell award. "There is no validity to this assertion," Fienberg wrote. "Finra simply does not remove arbitrators from the roster based upon their awards, and never has."

Maybe. Andrew Stoltmann, a lawyer in Chicago who sues Wall Street firms, contacted me after seeing my column to say he has never heard of three arbitrators being removed in the way that Gormly, Kolber and Pinckney were. "I've handled close to 1,000 Finra arbitrations over the years," he wrote in an e-mail. "To think Finra removes arbitrators and but for news coverage like this those arbitrators would have stayed out is extraordinary troubling. Finra's major credibility problem is directly related to issues like these."

One would like to think the reinstatement of the three arbitrators ends the matter in a very satisfying way. But, alas, it doesn't. Merrill Lynch, through its attorney, Terry Weiss of Greenberg Traurig, has asked a federal judge in Atlanta to throw out the $520,000 award to the Postells. Weiss argued in his motion to vacate that the arbitrators "exhibited evident partiality," "misbehaved such that Merrill Lynch's rights were prejudiced," "exceeded their powers by taking over the arbitration, conducting hostile cross examination of Merrill Lynch's witnesses on irrelevant topics" and "refusing Merrill Lynch's request that the biased arbitrators recuse themselves." (Neither the three arbitrators nor I were aware of this motion when I wrote the July 9 column.)

Weiss attached a copy of my column to a motion he filed with the federal court to supplement the record. Weiss had the chutzpah to argue that the dismissal of the arbitrators was a smoking gun showing that the panel had done something egregiously wrong in the Postell arbitration. Now, with Finra having cleared the arbitrators of wrongdoing, Weiss has boxed himself into a corner in the legal argument department.

My previous column also brought complaints that because, almost 10 years ago, I pursued my own arbitration against JPMorgan Chase Co. -- and lost -- I am biased against Wall Street arbitration. No. What I am against is the sham that so often passes for justice on Wall Street these days. The millions of people who either work there or who have brokerage accounts sign away, upfront, their legal right to resolve financial disputes in a court of law. They are forced into Finra arbitration and most don't have a clue they have relinquished their ability to resolve it any other way.

Finra's treatment of Gormly, Kolber and Pinckney -- despite their reinstatements -- illustrates just how shoddy the system is. It needs to be scrapped, and those with a grievance against Wall Street should get their day in a real court.

(William D. Cohan, the author of "Money and Power: How Goldman Sachs Came to Rule the World," is a Bloomberg View columnist. He was formerly an investment banker at Lazard Freres, Merrill Lynch and JPMorgan Chase. The opinions expressed are his own.)

Read more opinion online from Bloomberg View. Subscribe to receive a daily e-mail highlighting new View editorials, columns and op-ed articles.

Today's highlights: the editors on France's misguided transaction tax and on how to improve the farm bill; Noah Feldman on the NCAA's unconvincing sanctions; Albert R. Hunt on rating U.S. presidents; Luigi Zingales on a European banking union; Raymond Bonner on the FDA's immoral policy on lethal-injection drugs.

To contact the writer of this article: William D. Cohan at wdcohan@yahoo.com.

To contact the editor responsible for this article: Tobin Harshaw at tharshaw@bloomberg.net.



We use cookies to ensure you get the best experience on our website - change your settings

Close

## Media Coverage

**Bank of America Merrill Lynch, Greenberg Traurig prominent in 2012 M&A activity**
01.25.13
*South Florida Business Journal*

Offices: Miami
Experience: Corporate & Securities | Mergers & Acquisitions

Amid all the negative publicity heaped on Bank of America (NYSE: BAC) last year, its Merrill Lynch unit was busy doing M&A deals in Florida.

Merrill ranked first in value of deals at $8.57 billion and was also first in number of deals with 40.

Overall, *Merger Market's* 2012 roundup found 172 deals worth $21.6 billion, which was down from 194 deals worth $26.9 billion in 2011.

Among law firms involved in deals, Miami-based Greenberg Traurig led in value of deals at $12.44 billion while Kirkland & Ellis ranked first in number of deals at 25.

***Click here link to read the full article.***

---

Home | About Us | Experience | People | Locations | News & Events | Careers | Site Map | Terms and Conditions | Contact Us
©2016 Greenberg Traurig, LLP. All rights reserved. Attorney Advertising.

Disclaimers:

*Greenberg Traurig's London office is operated by Greenberg Traurig Maher LLP, an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP. Greenberg Traurig Maher is a limited liability partnership registered in England and Wales under number OC 346053 and is a multinational practice of Solicitors and Registered Foreign Lawyers authorised and regulated by the Solicitors Regulation Authority (SRA). Click here for the SRA Code of Conduct.

+Greenberg Traurig's Mexico City office is operated by Greenberg Traurig, S.C., an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP.

^Greenberg Traurig's Tel Aviv office is a branch of Greenberg Traurig, P.A., Florida, USA.

~Greenberg Traurig's Warsaw office is operated by Greenberg Traurig Grzesiak sp.k., an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP. Certain partners in Greenberg Traurig Grzesiak sp.k. are also shareholders in Greenberg Traurig, P.A. Click here for the Legal Notice under the Polish Commercial Companies' Code.

»Greenberg Traurig's Seoul office is operated by Greenberg Traurig LLP Foreign Legal Consultant Office. Greenberg Traurig LLP Foreign Legal Consultant Office is a foreign legal consultant office approved by the Ministry of Justice of the Republic of Korea. Under the Foreign Legal Consultant Act of Korea, Greenberg Traurig's Seoul office is only allowed to provide legal advice with respect to US law, with respect to treaties of which the United States is a party, and with respect to universally recognized customary international law. Our Seoul office is allowed to represent clients in international arbitration cases when US law is applicable. As a Foreign Legal Consultant Office, we may not render legal advice on Korean law matters.

¤ Greenberg Traurig Tokyo Law Offices are operated by Greenberg Traurig Horitsu Jimusho, an affiliate of Greenberg Traurig, P.A. and Greenberg Traurig, LLP.

- Join the Law360 team
- Search legal jobs
- Learn more about Law360
- Read testimonials
- Contact Law360
- Sign up for our newsletters
- Site Map
- Help

Law360's Snapshot Of IP Litigation
Check out the 2015 trends

# Merrill Lynch Loses Challenge To Funds' $64M Fraud Award

By **Sindhu Sundar**

Law360, New York (February 5, 2013, 11:15 PM ET) -- A California appeals panel found Tuesday that the Financial Industry Regulatory Authority did not overstep its authority in granting a $64 million arbitration award to two hedge funds that claimed Bank of America NA's Merrill Lynch unit had defrauded them when acting as a broker for funds they managed.
The FINRA panel did not overreach when it handed hedge funds Rosen Capital Partners LP and Rosen Capital Institutional LP the July 2011 award, because it made the decision based on adequate testimony by the hedge funds' president Kyle Rosen, the appeals court said in an unpublished opinion.

Arbitrators exceed their power in contract suits only if they devise remedies unrelated to the contracts at issue or if they remake the contracts, the opinion said. The FINRA panel did neither of those things, the appeals court found.

"The award shows the arbitrators must have credited Rosen's theory that the funds' losses resulted from [Merrill Lynch's] imposition of an improper margin requirement and an improper prohibition on trading," the panel said in the opinion. "Rosen's theory was supported by his testimony. That the arbitrators did not credit [Merrill Lynch's] alternative theory — that the losses were caused by market movements — does not show the award was irrational or exceeded the arbitrators' powers."

The dispute stemmed from losses the hedge funds had suffered in October 2008. The funds had been using an investment strategy of tapping into inefficiencies in the options market to generate profits, according to the opinion.

Merrill Lynch, in its role as a broker for the funds, cleared trades and oversaw its clients' margin requirements, the opinion said. When the funds encountered losses, Rosen blamed misconduct by Merrill Lynch, while Merrill Lynch attributed it to market fluctuations, according to the opinion.

The Rosen firms had accused Merrill Lynch of fraud and breach of contract, among other claims, claiming it hurt them by adding additional margin requirements beyond what they had previously agreed to.

Merrill Lynch, in turn, disputed that it had agreed to the margin requirements the funds asserted, and said its contracts with Rosen had other risk provisions, according to the opinion. It also argued that Rosen could have liquidated the options the funds held instead of holding on to them and incurring losses.

The California panel rejected this argument Tuesday, saying the arbitrators may have found that Rosen held on to the options because of Merrill Lynch requirements that prevented him from buying new ones.

"The Rosen funds are extremely pleased that the Court of Appeal has affirmed the judgment confirming the arbitration award," Harold Barza of Quinn Emanuel Urquhart & Sullivan LLP, an attorney for the plaintiffs, said Wednesday. "This has been a long and difficult road for the funds and their investors and they are hopeful that it finally may be drawing to a close."

Attorneys for Merrill Lynch could not immediately be reached for comment late Tuesday.

Merrill Lynch is represented by Karin Leeann Bohmholdt, Paul Julien Schumacher and Terry R. Weiss of Greenberg Traurig LLP.

The Rosen plaintiffs are represented by Harold Barza, Harry A. Olivar Jr., Valerie Roddy and Jason F. Lake of Quinn Emanuel Urquhart & Sullivan LLP.

The case is Rosen Capital Partners LP v. Merrill Lynch Professional Clearing Corp., case number B239404, in the Court of Appeal of the State of California.

--Additional reporting by Richard Vanderford. Editing by Kat Laskowski.

## Related Articles

- FINRA Orders Merrill To Pay $63.7M To Hedge Funds
- Securities MVP: Quinn Emanuel's David Elsberg
- Merrill Lynch Fined $1M Over Broker's Ponzi Scheme

View comments



01:25

- Add to Briefcase
- Printable Version

- Join the Law360 team
- Search legal jobs
- Learn more about Law360
- Read testimonials
- Contact Law360
- Sign up for our newsletters
- Site Map
- Help

Law360's Snapshot Of IP Litigation
Check out the 2015 trends

# Merrill Lynch On Its Own In Suit Over $690M Zale-Signet Deal

By **Dani Meyer**

Law360, New York (October 1, 2015, 9:22 PM ET) -- A Delaware state judge on Thursday dismissed Signet and the Zale board of directors from shareholder litigation over the companies' $690 million merger, but said Merrill Lynch must face allegations that it was conflicted when advising the board. Vice Chancellor Donald F. Parsons Jr. ruled that the plaintiffs failed to allege that Zale Corp.'s board of directors breached its duty of loyalty during the **2014 merger** with Signet Jewelers Ltd., a claim that could have allowed the plaintiffs to circumvent a provision in the company's charter that necessitates dismissal of monetary claims against the board.

"Plaintiffs' failure to allege any facts from which I reasonably could infer that a majority of the board was either conflicted regarding the merger or dominated by other, conflicted directors severely undermines plaintiffs' claims that the director defendants breached their duty of loyalty," Vice Chancellor Parsons said.

However, he said the plaintiffs sufficiently alleged that the board breached its duty of care because it didn't detect a conflict of interest when engaging Merrill Lynch Pierce Fenner & Smith Inc. as its financial adviser.

"I find that the only deficiency that conceivably could constitute a breach of the duty of care is plaintiffs' allegation that [Jeffrey] Rose was a senior member of both the Merrill Lynch team that made a presentation to Signet regarding a possible acquisition of Zale and the team that advised the board in the merger, but the director defendants did not realize that until after the merger agreement was signed," Vice Chancellor Parsons said.

While this isn't enough to overcome Zale's charter provision requiring dismissal, Vice Chancellor Parsons said it's relevant to determining whether Signet or Merrill Lynch could be liable for aiding and abetting the breach.

On further analysis, Vice Chancellor Parsons determined that the plaintiffs didn't sufficiently allege that Signet knew of the nondisclosure and said Signet, as Zale's counterparty, had no duty to disclose the presentation.

However, Vice Chancellor Parsons said that the plaintiffs' allegations regarding Merrill Lynch relate directly to the board's alleged breach and successfully show knowing participation.

"Although Rose purportedly relied on advice from Merrill Lynch's conflict clearance department in not disclosing his conflict to the board, Merrill Lynch is not absolved of liability as a result of such reliance," Vice Chancellor Parsons said. "It is also reasonably conceivable that Rose, as plaintiffs allege, purposefully avoided disclosure because he hoped to generate fees for Merrill Lynch and a larger bonus for himself."

Vice Chancellor Parsons dismissed the first two counts against the Zale board and Signet but denied the motion to dismiss the third count against Merrill Lynch.

The suit stems from a deal announced in February 2014 in which Signet, the largest jewelry retailer in the United Kingdom and United States, offered to acquire all of Zale's issued and outstanding stock for $21 per share, a figure touted as a 40 percent premium on the closing price the day before the announcement.

Several Zale investors **filed suit** in March 2014, claiming the consideration undervalued the company, alleging the board-run sale process was marred by conflicts of interests, and urging the Chancery Court to block the deal.

Vice Chancellor Parsons **rejected the injunction bid** in May 2014, and the deal was approved later that month by 53 percent of Zale shareholders and closed later in 2014.

Representatives for the parties didn't immediately respond Thursday to requests for comment.

The plaintiffs are represented by Seth D. Rigrodsky, Brian D. Long, Gina M. Serra and Jeremy J. Riley of Rigrodsky & Long PA and Carl L. Stine of Wolf Popper LLP.

The Zale board is represented by Gregory P. Williams and Scott Pritchard of Richards Layton & Finger PA and Sandra C. Goldstein of Cravath Swaine & Moore LLP.

Signet is represented by Bradley R. Aronstam and S. Michael Sirkin of Ross Aronstam & Moritz LLP, and Joseph S. Allerhand, Stacy Nettleton, David P. Byeff and Robert S. Ruff III of Weil Gotshal & Manges LLP.

Merrill Lynch is represented by Michael J. Maimone and Gregory E. Stuhlman of Greenberg Traurig LLP, and Alan S. Goudiss, Paula H. Anderson and Dennis D. Kitt of Shearman & Sterling LLP.

The case is In re: Zale Corp. Stockholders Litigation, consolidated case number 9388-VCP, in the Court of the Chancery of the State of Delaware.

--Additional reporting by Matt Chiappardi and Jamie Santo. Editing by Mark Lebetkin.

## Related Articles

- Chancery Reversal Frees Merrill Lynch From Zale Merger Suit
- Zale Board Says Suit Over $690M Signet Merger Falls Short

- Join the Law360 team
- Search legal jobs
- Learn more about Law360
- Read testimonials
- Contact Law360
- Sign up for our newsletters
- Site Map
- Help

Law360's Snapshot Of IP Litigation
Check out the 2015 trends

# Chancery Reversal Frees Merrill Lynch From Zale Merger Suit

By **Bonnie Eslinger**

Law360, Los Angeles (October 30, 2015, 8:10 PM ET) -- A Delaware Chancery Court judge on Thursday reversed an earlier decision and dismissed shareholder litigation against Merrill Lynch related to its adviser role in the $690 million Signet-Zale merger, saying a recent state Supreme Court decision forced his change of heart.
Vice Chancellor Donald F. Parsons Jr. had reconsidered his Oct. 1 ruling, in which he refused to release Merrill Lynch from the litigation, based on a different standard of review affirmed by the Delaware Supreme Court in a similar case. The vice chancellor said the "business judgment rule standard of review" — which presumes that a company's directors acted on an informed basis and in good faith — should have been applied.

The vice chancellor said the new standard of review applies to the allegations that Merrill Lynch aided and abetted a breach of fiduciary duty on the part of the corporate boards of Signet and Zale. The board of director defendants — which had been accused of breaching their duty of loyalty — had been dismissed in an earlier ruling.

"Because there is no basis for a predicate fiduciary duty breach, the complaint also fails to allege that Merrill Lynch aided and abetted such a breach," the judge wrote in his Thursday ruling.

In his Oct. 1 decision, the Delaware state judge **dismissed Signet and the Zale** board of directors from the shareholder litigation, finding that the plaintiffs failed to allege that Zale Corp.'s board of directors breached its duty of loyalty during the 2014 merger with Signet Jewelers Ltd., a claim that could have allowed the plaintiffs to circumvent a provision in the company's charter that necessitates dismissal of monetary claims against the board.

But, at that time, the vice chancellor said the plaintiffs had sufficiently alleged that the board breached its duty of care because it didn't detect a conflict of interest when engaging Merrill Lynch Pierce Fenner & Smith Inc. as its financial adviser.

The only concern that "conceivably" constituted a breach of the duty of care, he said, was the claim that a managing director at Merrill was a senior member of both the Merrill Lynch team that made a

presentation to Signet regarding the possible acquisition of Zale and the team that advised the board in the merger. The board of directors didn't realize that until after the merger agreement was signed, the judge noted.

But in light of the Delaware Supreme Court's ruling in **KKR Financial Holdings LLC shareholder litigation**, Vice Chancellor Parsons said he reviewed the actions of the corporation's directors again under the less stringent business judgment rule and found they did not breach their duty of care — and without that determination, there could be no finding of aiding and abetting against Merrill Lynch.

On Friday, plaintiffs attorney Carl Stine told Law360 that the shareholders disagree with the vice chancellor's underlying decision and are "considering our options at this time."

The suit stems from a deal announced in February 2014 in which Signet, the largest jewelry retailer in the United Kingdom and United States, offered to acquire all of Zale's issued and outstanding stock for $21 per share, a figure touted as a 40 percent premium on the closing price the day before the announcement.

Several Zale investors filed suit in March 2014, claiming the consideration undervalued the company, alleging the board-run sale process was marred by conflicts of interests, and urging the Chancery Court to block the deal.

Vice Chancellor Parsons rejected the injunction bid in May 2014, and the deal was approved later that month by 53 percent of Zale shareholders and closed later in 2014.

Representatives for the defendants were not immediately reachable for comment.

The plaintiffs are represented by Seth D. Rigrodsky, Brian D. Long, Gina M. Serra and Jeremy J. Riley of Rigrodsky & Long PA and Carl L. Stine of Wolf Popper LLP.

The Zale board is represented by Gregory P. Williams and Scott Pritchard of Richards Layton & Finger PA and Sandra C. Goldstein of Cravath Swaine & Moore LLP.

Signet is represented by Bradley R. Aronstam and S. Michael Sirkin of Ross Aronstam & Moritz LLP, and Joseph S. Allerhand, Stacy Nettleton, David P. Byeff and Robert S. Ruff III of Weil Gotshal & Manges LLP.

Merrill Lynch is represented by Michael J. Maimone and Gregory E. Stuhlman of Greenberg Traurig LLP, and Alan S. Goudiss, Paula H. Anderson and Dennis D. Kitt of Shearman & Sterling LLP.

The case is In re: Zale Corp. Stockholders Litigation, consolidated case number 9388-VCP, in the Court of the Chancery of the State of Delaware.

--Additional reporting by Dani Meyer, Matt Chiappardi and Jamie Santo. Editing by Jeremy Barker.

## Related Articles

- Merrill Lynch On Its Own In Suit Over $690M Zale-Signet Deal
- Zale Board Says Suit Over $690M Signet Merger Falls Short
- Judge Won't Halt $690M Zale Merger With Signet