UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DANIEL E. CARPENTER ) | |
| ) | |
| v. ) | CRIMINAL NO. 04-cr-10029-GAO |
| ) | |
| UNITED STATES OF AMERICA ) | |

### DEFENDANT DANIEL E. CARPENTER'S MOTION FOR RECONSIDERATION OF THIS COURT'S ORDER OF JUNE 15, 2015 DISMISSING THE MOTION TO DISMISS THE INDICTMENT PURSUANT TO RULE 12(b)(3)(B)

I. STANDARD OF REVIEW

When a court misconstrues, misapprehends, or misapplies the law or the statute or the facts of a case, then a motion for reconsideration is appropriate. As the First Circuit stated in *United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009), a motion for reconsideration is appropriate "if the moving party presents newly discovered evidence, if there has been an intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust." (See, *e.g., Elonis v. United States*, 575 U.S. ___ (2015) for the intervening change of law). I have all three of these standards in my case and I only need one for Your Honor to grant my motion and vacate my conviction and judgment, and as the First Circuit has also stated: "When reconsideration of an earlier ruling is requested, the district court should place great emphasis on the 'interests of justice'." *United States v. Roberts*, 978 F.2d 17, 21 (1st Cir. 1992). "Ordinarily, a district court faced with a motion to reconsider **must** apply an interests-of-justice test." *Greene v. Union Mutual*, 764 F.2d 19, 23 (1st Cir. 1985) (emphasis added).

1

## II. THIS COURT LACKED JURISDICTION AND THEREFORE ITS JUDGMENT IS NULL AND VOID AND MUST BE VACATED AS A MATTER OF LAW

The Court granted the government's motion to dismiss my Rule 12(b)(3)(B) Motion "based largely on the representations made by the government." (See Dkt. No. 499). The three points that the government made were that there was a previous motion filed to dismiss the original indictment (see Dkt. No. 14), and that the rules under 12(b)(3)(B) were changed in December of 2014, and that a challenge to the Court's jurisdiction is precluded by the Supreme Court's decision in *United States v. Cotton*, 535 U.S. 625 (2002). None of these points are availing, and the government chose to ignore the substantial merits of my Rule 12(b)(3)(B) Motion and my claim that this Court lacked jurisdiction for failure to state a federal crime, or a crime against the United States, therefore, a judgment by a district court that lacks jurisdiction is null and void as a matter of law. See *United States v. Peter*, 310 F.3d 709, 713–14 (11th Cir. 2002), citing *United States v. Morgan*, 346 U.S. 502 (1954).

However, the type of claim that exists in my case has been historically recognized as the most "fundamental" of all fundamental errors and that is what is referred to as "jurisdictional error." Such "jurisdictional" errors can never be waived and if a court lacks jurisdiction the case must be dismissed. See *Louisville & Nashville Railroad v. Motley*, 211 U.S. 149, 152 (1908) (ordering case dismissed for lack of jurisdiction despite absence of objection from either party). Furthermore, despite the government's arguments to the contrary, a challenge to the district court's jurisdiction to hear a given case can never be waived or forfeited. *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). Certain constitutional challenges asserting a "right not to be haled into court" cannot be waived even through a guilty plea. *Blackledge v. Perry*, 417 U.S. 21, 31 (1974).

In the First Circuit's landmark decision of *United States v. Rosa-Ortiz*, 348 F.3d 33 (1st Cir. 2003), Rosa-Ortiz actually pled guilty, there was no trial or new trial order, simply Rosa-Ortiz's

2

challenge to the jurisdiction of the federal court because his indictment, just like mine, failed to state a "federal" offense in the Indictment. Actually, in *Rosa-Ortiz*, the government did state a federal offense, but it was the wrong federal offense, and Rosa-Ortiz's conduct was not covered by the federal offense charged by the government, which belies the government's entire argument that the government need only mention a federal statute in an indictment for it to be valid. As Your Honor knows better than anyone, the Indictment in my case has many defects, not the least of which is that it merely states at the most a "breach of contract" claim and it does not even do that well, and certainly not with the particularity (who, what, where, when and how) required under F.R.C.P. Rule 9(b). The Indictment claimed that I made knowingly false "oral and written" misrepresentations. At this late date, the government has failed to show even a single false statement - written or oral - made by me and has instead tried me and appealed on the basis of an "omissions" case without first showing that I had a duty to disclose. In fact, the words "omission", "duty", fiduciary", "prospectus", or even "legally required" are nowhere to be found in my Indictment, but it is my "silence" and "lack of disclosure" that I was tried on twice.

In Rosa-Ortiz's case, unlike mine, because of his guilty plea the government said he had waived all of his rights. But, in oral argument the First Circuit made the government agree that Rosa-Ortiz did not and could not waive his right to challenge the jurisdiction of the federal court. In fact, the case the government cited for its proposition, *United States v. Luján*, 324 F.3d 27 (1st Cir. 2003) specifically states that a guilty plea waives all **non-jurisdictional** challenges to a criminal conviction. See *Lujan* at 30 (emphasis added). The government was forced to concede in oral argument that a guilty plea does not preclude a defendant from arguing on appeal that the conduct charged in the indictment does not amount to a federal offense. So if the guilty plea in *Rosa-Ortiz* did not nullify "his rights" to challenge his "conviction" on appeal or at any time the case is pending,

then there is no way that a ruling by this Court in 2004 or an administrative rule change in December of 2014 after I was sentenced can possibly affect my rights to challenge this Court's jurisdiction based on the manifest defects in the Indictment pursuant to Rule 12(b)(3)(B).

For example, in 2012 the Second Circuit used Rule 12(b)(3)(B) to overturn the famous conviction of Sergei Aleynikov, who like me went to trial, was found guilty and had his guilty verdict overturned by the Second Circuit pursuant to Rule 12(b)(3)(B) and the lack of jurisdiction established by his indictment, and unfortunately like me is also enduring his own legal odyssey. See *United States v. Aleynikov*, 676 F.3d 71 (2d Cir. 2012). But the Second Circuit's decision in *Aleynikov* is based largely on the First Circuit's decision in *Rosa-Ortiz*, which is primarily based on the Eleventh Circuit's decision in *Peter*, which came **after** *Cotton* and spends a great deal of time explaining why the ruling in *Cotton* has nothing at all to do with the facts of my case.

It is significant that *Peter*, *Rosa-Ortiz*, and *Aleynikov* are all decided after *Cotton*, and *Peter* does an excellent job in explaining why the government's prosecution of me is incorrect in all respects and why my Indictment should be dismissed just as was done in *Peter*. In fact, the Eleventh Circuit in *Peter* states the judgment, sentencing, and conviction by a court without jurisdiction is null and void citing the Supreme Court's decision in *Morgan*. As the Eleventh Circuit stated in *United States v. Peter*, 310 F.3d 709 (11th Cir. 2002):

> "When a court without jurisdiction convicts and sentences a defendant the conviction and sentence are void from their inception and remain void long after a defendant has fully suffered their direct force." *Id.* at 715.

This pronouncement by the Eleventh Circuit is taken directly from *Morgan*, a case involving a Writ of Coram Nobis where someone challenged the jurisdiction of the court even after serving his sentence. The Supreme Court in *Morgan* went on to say that the law recognizes that there must be a vehicle to correct errors "of the most fundamental character, that is, such as rendered the proceeding

4

itself irregular and invalid." *Morgan* at 509, *quoting United States v. Mayer*, 235 U.S. 55, 69 (1914). Also, the Eleventh Circuit stated in *United States v. Izurieta*, 710 F.3d 1176, 1179 (11th Cir. 2013):

> "The government's citation to the Supreme Court's opinion in *United States v. Cotton* is equally unpersuasive. *See* 535 U.S. 625, 630–31 (2002). In dicta, the Supreme Court in *Cotton* quoted an older opinion of Justice Holmes explaining that "[t]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case." *Id.* (quoting *Lamar v. United States*, 240 U.S. 60, 65 (1916)). This court's post-*Cotton* jurisprudence, however, has refused to find that *Cotton* altered our established precedent recognizing that the failure to allege a crime in violation of the laws of the United States is a jurisdictional defect. *United States v. Peter*, 310 F.3d 709, 713–14 (11th Cir.2002)..."

Since the First Circuit's decision in *Rosa-Ortiz* is based largely on *Peter*, and both *Rosa-Ortiz* and *Peter* are subsequent to *Cotton*, and both mention and distinguish *Cotton*, and since the Eleventh Circuit in *Peter* and *Izurieta* based its decision largely on an old Fifth Circuit case *United States v. Meacham*, 626 F.2d 503 (5th Cir. 1980) that a federal court is without jurisdiction to accept even a guilty plea for a "non-offense" or when the indictment, like in my case, fails to state a federal offense, Your Honor should grant my Motion to Reconsider, and then grant my 12(b)(3)(B) Motion to dismiss the Indictment, vacate my conviction, and order my immediate release from prison.

To counter this result, in its Opposition Brief (see Dkt. No. 495), the government essentially makes only two unavailing points in addition to its ongoing "law of the case" argument, which clearly did not prevent previous 12(b)(3)(B) claims in the past, even in the instance of a guilty plea (see *Rosa-Ortiz* above). That leaves just the government's arguments that the law changed in December of 2014, and that "If an indictment alleges the violation of a crime set out in Title 18...that is the end of the jurisdictional inquiry." *citing United States v. George*, 676 F.3d 249, 259 (1st Cir. 2012). (See Dkt. No. 495 at *5).

As for the former argument, many courts have already discussed that the "old rule" or the pre-December 2014 Rule 12(b)(3)(B) applies to cases pending at that time, and since I was indicted in February of 2004 and sentenced 10 years later in February of 2014, clearly I fall under the "old

5

rule" of 12(b)(3)(B). Please see, e.g., *United States v. Sperrazza*, 804 F.3d 1113 (11th Cir. 2015), where the court discusses why pending cases must follow the "old rule" under 12(b)(3)(B).

The government's remaining argument citing *George*, a child pornography case where once again, the accused unlike me pled guilty, actually cites to a First Circuit case decided prior to *Rosa-Ortiz* for the quote the government uses. See *George* at 259, citing *United States v. Gonzalez*, 311 F.3d 440, 442 (1st Cir. 2002). The reason that this point is unavailing for the government and inapposite to my case, is that I am not making a "sufficiency of the evidence" argument, but rather I am stating that my Indictment is insufficient and defective as a matter of law because it merely alleges a breach of contract, and it does not even do that well. There is no mention of *mens rea*, scienter, the specific intent to defraud, or even "criminal intent" as required by the government's own rules; and mailings and wires done in the normal course of business do not constitute "criminal acts." There is also the gaping void in the causation element because nowhere in my Indictment does it say that I caused any of the mailings and wires **in furtherance of a scheme to defraud**. Therefore, aside from the lack of notice, and the constructive amendment problems with the Indictment caused by the government's ever-evolving "non-disclosure" and "omissions" theory of the case, my Indictment is even more defective than the indictments in *Aleynikov*, *Rosa-Ortiz*, and *Peter*, which are all subsequent to *Cotton*.

Moreover, the government is wrong in that it can freely circumvent a Rule 12 dismissal for lack of federal jurisdiction simply by alleging in the indictment a so-called federal crime such as a Conspiracy under Section 371, Money Laundering, or even Child Pornography – all of which are clearly federal crimes, but none of which apply to me or my Indictment. And, just as *Rosa-Ortiz* and *Aleynikov* did not do what they were accused of in their indictments, it is also true that I did not have any specific intent to commit any crime or the knowledge that I was committing a crime, nor did I

commit any evil acts that would constitute a crime under American Jurisprudence or that was prohibited conduct by any statute. Certainly I did not cause **any** of the mailings or wires listed in my Indictment, and nowhere does the Indictment allege that the Exchangors' attorneys wired in money to Merrill Lynch due to any misrepresentations made by me or in furtherance of any scheme to defraud on my part. Paley may have caused the mailings and wires, but I certainly did not cause any of the mailings or wires listed in the Indictment.

Because the only crime that I was charged with in the Indictment was something that I did not do, and the Indictment fails to allege specific facts of my conduct that amounts to a crime against the United States in any event, this Court lacked jurisdiction to try me and both my conviction and sentence are null and void based on *Rosa-Ortiz*, which is based on *Peter*, which is based on the Supreme Court's decision in *Morgan*. Even more significant is the fact that the First Circuit's decision in *Rosa-Ortiz*, which again came after *Cotton*, is based in large part on the First Circuit's decision in *United States v. Saade*, 652 F.2d 1126, 1134 (1st Cir. 1981), where the First Circuit reversed the conviction of people charged under the wrong statute, and where the First Circuit bases its decision on and cites to the very case the Eleventh Circuit cites to in *Peter*, above, which is *United States v. Meacham*, 626 F.2d 503, 509 (5th Cir. 1980), stating that the failure to state an offense "should be noticed by the court at *any time* during the pendency of the proceedings." (Emphasis added). Therefore, my Rule 12(b)(3)(B) claim is better than those raised in *Meacham*, *Peter*, and *Rosa-Ortiz*, because unlike them, I never pled guilty in the first place and my Indictment has always been legally and constitutionally defective, and never invoked the Federal jurisdiction of this Court.

### III. THE INDICTMENT MUST BE DISMISSED BECAUSE IT FAILED TO ASSERT THE NECESSARY FACTS TO STATE AN OFFENSE UNDER THE MAIL AND WIRE FRAUD STATUTES AND INFORM ME OF THE ACTUAL NATURE AND CAUSES OF THE ACCUSATIONS AGAINST ME AS REQUIRED BY THE SIXTH AMENDMENT

My Indictment claiming fraud also does not square with recent unanimous Supreme Court decisions like *Skilling v. United States*, 561 U.S. 358 (2010), or *Bullock v. BankChampaign, N.A.*, 133 S.Ct. 1754 (2013).

The allegations in my Indictment also do not fit with the paradigm of fraud as explained by the Supreme Court that "the victim's loss of money or property suppl[ying] the defendant's gain," *Skilling* at 400. Indeed, though I was indicted on a theory of material misrepresentations, that was never proven at trial, and my appeals are all based on the government's constructive amendment of the Indictment to resemble a "scheme of nondisclosure" that *Skilling* held was "outside the bounds" of the fraud statutes. *Skilling* at 410.

In fact, the unanimous definition of fraud by the Supreme Court in *Skilling* requires a deprivation of property and occurs only when "the victim's loss of money or property supplied the defendant's gain, with one the mirror image of the other." *Skilling* at 400. This is totally inconsistent with the government's remodeled theory of the case, which is that I did not inform the Exchangors that I was losing money by investing in stock options, and is not even vaguely alluded to in the Indictment because at no time does any Exchangor's money end up in my pocket.

Similarly, in *Bullock*, the Supreme Court stated that for there to be fraud "there must be *both* a material misrepresentation *and* that the defendant obtained the property." I still maintain that I did not deceive anyone, nor did I make any misrepresentation to anyone, material or otherwise, and the property certainly did not end up in my pocket. Therefore, no federal fraud or federal mail and wire fraud was properly alleged in my Indictment, or proven at either of my trials.

In his highly regarded report to Congress on mail and wire fraud dated July 21, 2011, Charles Doyle of the Congressional Research Service, states that the elements of mail and wire fraud that must be alleged in an indictment and proven beyond a reasonable doubt are that the defendant(s):

(1) Used either mail or wire communications **in the foreseeable furtherance**,
(2) of a scheme to defraud,
(3) involving a material deception,
(4) with the intent to deprive another of,
(5) either property or honest services.

*See* report to Congress on the elements of mail and wire fraud by the Congressional Research Service, CRS Report R41931, *Mail and Wire Fraud: An Abridged Overview of Federal Criminal Law*, by Charles Doyle, July 21, 2011. (Please see excerpt from Congressional Research Service as Exhibit 1). Failure to properly allege each and every one of these elements with sufficient facts renders an indictment facially invalid. "Where guilt depends so crucially upon such a specific identification of fact, our cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute." *United States v. Russell*, 369 U.S. 749, 764 (1962).

My Indictment is also devoid of any **specific** intent to defraud. In fact, the words "*mens rea*," "*scienter*," and even the "specific intent to defraud" are nowhere to be found in the Indictment, even though those words are required by the US Attorney's Manual. *USAM Chapter 9-43.000, Criminal Resource Manual at 948*. This fact alone renders the Indictment defective especially when considering the Supreme Court's recent decisions on *mens rea* criminal intent like *Elonis*. Just reciting the basic elements of mail and wire fraud are not enough. The government must allege specific facts in an indictment that comprise a crime. Generally, Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires an indictment to provide "a plain, concise and definite written statement of **the essential facts** constituting the offense charged." *United States v. Yefsky*, 994 F.2d 885, 893 (1st Cir. 1993) (emphasis added).

Accordingly, the indictment must contain a detailed description of the particular scheme the defendant is charged with, devising to ensure that the defendant has sufficient notice of the nature of the offense. *See Yefsky*, 994 F.2d at 893 ("The indictment may incorporate the words of the statute to set forth the offense, but the statutory language '"must be accompanied with such a statement of the facts and circumstances as will inform the accused of the specific offense, coming under the general description, with which he is charged."'") (quoting *Hamling v. United States*, 418 U.S. 87, 117-18 (1974)) (quoting *United States v. Hess*, 124 U.S. 483, 487 (1888))); *United States v. Curtis*, 506 F.2d 985, 990 (10th Cir. 1974) (citations omitted) (dismissing mail fraud indictment that excludes false pretenses).

In *Yefsky*, the court held that the indictment was defective in that it did not provide the defendant with adequate notice of the charge (conspiracy to commit mail fraud) against him. 994 F.2d at 993 ("Where guilt depends so crucially upon . . . a specific identification of fact, . . . cases have uniformly held that an indictment must do more than simply repeat the language of the criminal statute.") (citing *Hamling*, 418 U.S. at 118). In *Curtis*, the court stated the following in considering the sufficiency of the allegations contained in an indictment charging mail fraud:

> Mere evidential matters or detail more appropriate in bills of particular need not be pleaded in an indictment based upon 1341. [citations omitted] But as these cases demonstrate, some substantial indication of the nature or character of any scheme or artifice to defraud, or to obtain money or property by means of false pretenses, representations or promises is requisite. And it is not sufficient in this regard to merely plead the statutory language. [citations omitted] A reference to the cases cited first above will disclose that in each instance the nature of the schemes or artifices is identified or described, including the particular pretenses, representations or promises claimed to have been false.

506 F.2d at 989-90 (holding that the indictment, which pleaded little more than the statutory language without any fair indication of the nature or character of the scheme or artifice relied upon, or the false pretenses, misrepresentations or promises forming a part of it, was fatally defective).

Moreover, nowhere does the Indictment allege that I had the "evil intent" or *"mens rea"* or scienter or the "specific intent to defraud" anyone that is required by law to make ordinary business conduct criminal especially in the case of mail and wire fraud since every business in America uses the mail, the internet, fax machines or bank wires to conduct business. There must be some "concurrence" between an evil thinking mind and an evil act to create a crime. See *Morissette v. United States*, 342 U.S. 246 (1952). The reason my Indictment fails to articulate any particular "scheme to defraud" or even the words "specific intent to defraud" is because successfully completing 119 out of 126 property exchanges belies the existence of ANY "scheme to defraud" by anyone. But more importantly, no scheme to defraud was articulated in my Indictment, so it was fatally defective under the Sixth Amendment Notice Clause and *Russell*, 369 U.S. 749. Investing in stock options is not a crime. Losing money is not a crime, and even deceitfully breaching a contract is not a crime. Something more than "deceit" is required to make a case for mail and wire fraud. See, e.g., *United States v. Shellef*, 507 F.3d 82, 107-109 (2d Cir. 2007), *United States v. Starr*, 816 F.2d 94 (2d Cir. 1987), and *United States v. Regent Office Supply Co.*, 421 F.2d 1174 (2d Cir. 1970).

Also silence is not a crime, unless there is a duty to speak. See *Bachman v. Polaroid Corp.*, 910 F.2d 10, 12-13 (1st Cir. 1990), citing *Chiarella v. United States*, 445 U.S. 222 (1980), where the Supreme Court clearly states: "When an allegation of fraud is based upon nondisclosure, there can be no fraud absent a duty to speak." *Id.* at 235. "Absent a duty to disclose, silence is not fraudulent or 'misleading'...." *United States v. Schiff*, 602 F.3d 152, 162 (3d Cir. 2010), *citing Basic, Inc. v. Levinson*, 485 U.S. 224, 239 (1988). "The proposition that silence, absent a duty to disclose, cannot be actionably misleading, is a fixture in federal securities law." *Shaw v. Digital Equipment Corp.*, 82 F.3d 1194, 1202 (1st Cir. 1996). "A failure to disclose material information is actionable only

when the defendant had an affirmative duty to disclose these facts." *Castellano v. Young & Rubicam, Inc.*, 257 F.3d 171, 178 (2d Cir. 2001). "An act cannot be deceptive...where the actor has no duty to disclose." *Regents of Univ., Cal. v. Credit Suisse First Boston*, 482 F.3d 372, 386 (5th Cir. 2007).

Specificity in this area is particularly required when the government seeks to prosecute a nondisclosure case under the mail and wire fraud statutes because "[t]he federal mail fraud statute is built upon a single, archaic 204-word sentence which . . . has undergone repeated periods of rapid expansion and contraction." *United States v. Urciuoli*, 513 F.3d 290, 293 (1st Cir. 2008). It is one thing to charge a defendant with making affirmative misrepresentations and then to introduce evidence only of omissions, but it is an entirely different matter to convict a defendant of omissions and half-truths (silence) without proving that he had a legal duty to speak. Both of these constitutionally untenable situations have happened to me in my trials and my appeals. The government cannot be allowed to exploit the ambiguity inherent in the mail and wire fraud statutes to convict a defendant of silence when no proof was offered that I had an explicit or implicit duty to speak.

Because of the government's failure to allege, let alone prove beyond a reasonable doubt, that I had a legal duty to disclose my investment strategy (i.e., options investing), I cannot be held criminally liable for failing to satisfy a non-existent duty of disclosure. To allow a conviction in this case would violate my rights under the Due Process Clause. See *United States v. Pierce*, 224 F.3d 158 (2d Cir. 2000). See, also, *United States v. Autuori*, 212 F.3d 105 (2d Cir. 2000).

The Indictment as it relates to me is also constitutionally deficient because it contains no description beyond the conclusory allegations referencing the statute allegedly violated. As such, the Indictment deprived me of constitutionally fair notice of the charges and the basis for the

government's prosecution, and for that reason alone should be dismissed. *See Fleisher v. United States*, 302 U.S. 218 (1937), for the proposition, "To be legally sufficient, the indictment must assert facts which in law constitute an offense; and which, if proved, would establish prima facie, the defendant's commission of that crime." *United States v. Superior Growers Supply, Inc.*, 982 F.2d 173, 177 (6th Cir. 1992). A bill of particulars cannot cure a legal deficiency in the indictment; rather, the proper result is dismissal of the indictment. *See, e.g., United States v. Russell*, 369 U.S. 749, 770 (1962) ("But it is a settled rule that a bill of particulars cannot save an invalid indictment"). *See, also, United States v. Novak*, 443 F.3d 150, 159 (2d Cir. 2006) (holding that, absent intent to harm or actual harm, deception alone does not constitute fraud); *United States v. Starr*, 816 F.2d 94, 98-99 (2d Cir. 1987) (holding that because the scheme was **designed to satisfy** [the Exchangors], rather than harm the [Exchangors], the deception did not constitute fraud); *United States v. Regent Office Supply Co.*, 421 F.2d 1174, 1181 (2d Cir. 1970) (rejecting government's theory that merely inducing the customers "to part with their money because of the false representations...amounted to fraud"). *See, also, United States v. D'Amato*, 39 F.3d 1249, 1255 (2d Cir. 1994) (reversing conviction for mail and wire fraud due to no intent to harm), and *United States v. Rossomando*, 144 F.3d 197, 201 (2d Cir. 1998) (conviction for Mail Fraud reversed because government must show that the defendant actually intended and contemplated "concrete harm" to his victims).

I had absolutely no contact with the Exchangors, nor did I create or draft, write or distribute any of the Paley-created documents or marketing materials. Nor does my Indictment allege anywhere that I did draft the documents or the marketing materials. In *United States v. Panarella*, 277 F.3d 678, 685 (3d Cir. 2002), the government argued that "an indictment or information charges an offense, as long as it recites in general terms the essential elements of the offense, even if the specific facts alleged in the charging instrument fail to satisfy those elements." The court in

*Panarella* held, however, that "<u>for purposes of [Rule 12(b)(3)(B)], a charging document fails to state an offense if the specific facts alleged in the charging document fall beyond the scope of the relevant criminal statute</u>, as a matter of statutory interpretation." *Id.* (emphasis added).

The court's common sense rejection of the government's argument in *Panarella* — that an indictment that merely tracks the language of a criminal statute states an offense even where the facts it alleges do not fall within the meaning of that statute — is consistent with the law of this and every other circuit with respect to the sufficiency of an indictment. Therefore, an indictment is thoroughly defective under the law of this and every other circuit when it alleges conduct, however broadly and generously interpreted that simply does not violate the charged statutes. Merely parroting the statute will not do. There must be specific allegations of facts and the necessary elements of the stated offense to survive a Rule 12(b)(3)(B) motion to dismiss the indictment. My Indictment is woefully inadequate as a matter of law, and does not state the elements of mail and wire fraud to make the breach of contract into a "federal" crime, nor does it allege the facts necessary to constitute a criminal offense, nor did it give me Constitutional Notice or even "fair notice" that the government was going to try me on a non-disclosure theory of fraud. The Indictment is devoid of any facts related to me, and at most the Indictment claims that I read or edited certain documents. That is not enough for a criminal indictment. There is also no allegation in the Indictment that I owed any "honest services" or a "fiduciary duty" to the Exchangors; I did not. In fact, I.R.C. §1031 specifically prohibits a fiduciary relationship. I only agreed to invest the funds for BPETCO, all to my loss. In sum, as the Indictment relates to my investment activities, it fails to state a viable claim of mail or wire fraud.

## IV. MY INDICTMENT WAS CONSTITUTIONALLY DEFECTIVE BECAUSE IT FAILED TO ALLEGE ANY MONEY OR PROPERTY ACTUALLY WAS LOST BY THE EXCHANGORS

Not only was there no "scheme to defraud" here and no "specific intent to defraud" or "harm" anyone on my part, there is nothing mentioned in the Indictment or adduced at trial that suggests that there was any intent to steal or take the Exchangors' money or property or to even lose their money, even though the loss of money or lack of business success or a breach of contract would not be criminal under the mail and wire fraud statutes. But, there is zero mention of a scheme to steal their money using false pretenses. A failure to adequately disclose what the funds were to be invested in might be considered negligence, but it would certainly not be penalized under the mail and wire fraud statutes, and it certainly does not qualify as a scheme to "obtain" someone's money or property by fraudulent means and use of the mails and wires in furtherance of those fraudulent means. Furthermore, the Supreme Court's decision in *Skilling*, makes clear that the non-disclosure of material information is "outside the bounds" of the mail and wire fraud statutes. *Skilling* at 410.

The mail fraud statute renders criminal the use of the mails **only** in the furtherance of "any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations or promises." 18 U.S.C. §1341. Although the government might suggest that obtaining money or property need not be involved in the case of a "scheme or artifice to defraud," the Supreme Court reviewed the history of the mail fraud statute in *McNally v. United States*, 483 U.S. 350, 356-59 (1987), and rejected this interpretation. *Id.* at 359-60. Accordingly, as the Court stated in *McNally* and reiterated in *Carpenter v. United States*, 484 U.S. 19 (1987) and again in *Skilling*, that §1341 "is 'limited in scope to the protection of property rights.'" *Carpenter*, 484 U.S. at 25 (*quoting McNally*, 483 U.S. at 360). In accordance with *McNally* and *Carpenter*, "[t]he essential elements of a mail fraud violation are (1) a scheme to defraud, (2) **money or**

15

**property [as the object of the scheme]**, and (3) use of the mails to further the scheme." *United States v. Wallach*, 935 F.2d 445, 461 (2d Cir. 1991) (emphasis added). An in depth analysis by the Second Circuit of why this Indictment does not properly invoke the necessary element of the mail and wire fraud statutes because the allegations did not involve the "obtention of **money and property**" by fraud within the meaning of §1341 can be found in *United States v. Miller*, 997 F.2d 1010, 1012 (2d Cir. 1993). Even at sentencing, Your Honor stated that I always intended to pay the money back, and in fact, I have and did repay all of the money AND MORE in June of 2008 before the second trial began.

*United States v. Cleveland*, 531 U.S. 12 (2000), showed that there must be real property or money that is the object of the fraud, and not intangibles like "licenses." To deprive victims of <u>**real property or money**</u> by fraud, trickery, or chicanery is the only way to invoke federal court jurisdiction through the mail and wire fraud statutes. As stated by the First Circuit in *McEvoy*:

> "Since we hold below that the scheme to fraudulently obtain ATC-IATA approval of the Norton-Heritage arrangement was not a scheme to defraud anyone of money or property, the mailings and wirings alleged in connection with the alleged illegal payments would not constitute mail and wire fraud under *McNally*, even if they could be construed as being in furtherance of that scheme. We note, moreover, that the mere fact that these mailings and wirings occurred as a result of the scheme to fraudulently obtain ATC-IATA approval does not mean they could be construed as being in furtherance of that scheme. *See, e.g., United States v. Maze*, 414 U.S. 395, 405 (1973)." *McEvoy*, 904 F.2d at 792 n.10.

In the instant matter, there can be no claim that any of the Exchangors actually lost any money. To the contrary, the Exchangors have made millions in their judicial jackpots, and have suffered no actual loss. The Exchangors, in sum, were not deprived of property, nor was it my intent to deprive the Exchangors of money or property. The Indictment is filled with speculation and theories about possible loss, but there is no specific claim of actual loss of money or property, or allegations that I **intended** any of the Exchangors to suffer any loss or "actual concrete" harm, which is the *sine qua non* of mail and wire fraud, and I certainly did not intend for anyone to lose money or

be harmed. See, e.g., *United States v. Rossomando*, 144 F.3d 197 (2d Cir. 1998) (mail fraud conviction vacated because there was no proof that the defendant intended any harm to the victim so that the defendant's good faith was unimpaired despite the jury's verdict). The Exchangors could have put money with the 1031 property-exchange company LandAmerica, that failed and went into bankruptcy, and then they would have lost all of their money. None of the $400 million invested in LandAmerica for §1031 property exchanges was returned, but no one was indicted in that case. In my case, no one lost money, or at least they got it back, but in any case NO ONE "intended" to cheat ANYONE out of their money or property, so an indictment based on the mail and wire fraud statutes cannot stand as a matter of law. Therefore, my conviction should be vacated and my Indictment dismissed.

## V. THE INDICTMENT MUST BE DISMISSED BECAUSE IT FAILED TO ALLEGE ANY KNOWLEDGE OR EVIL INTENT ON MY PART

The Indictment must also be dismissed because it fails to allege any "**knowledge**" on my part that I was **willfully** participating in a scheme to defraud. One of the elements which has been considered **indispensable** to an indictment for any type of crime is **knowledge**; e.g., knowledge that a law was broken. In *Pettibone v. United States*, 148 U.S. 197 (1893), the defendants were charged with encouraging mine workers to disobey an injunction, and the Supreme Court, in reversing their conviction, stated:

> It seems clear that an indictment against a person... must charge a knowledge or notice, on the part of the accused....Unless that fact exists, the statutory offense cannot be committed...and without such knowledge or notice, the evil intent is lacking. *Id.* at 206-207.

This requirement of a direct and explicit allegation of knowledge of breaking the law in an indictment was reiterated in *Direct Sales Co. v. United States*, 319 U.S. 703 (1943), where the Supreme Court affirmed the position it had taken in the *Pettibone* case fifty years prior and stated:

Without the knowledge, the intent cannot exist....Furthermore, to establish the intent, the evidence of knowledge must be clear, not equivocal....This, because charges...are not to be made out by piling inference on inference, thus fashioning...a dragnet to draw in all substantive crimes. *Id.* at 711.

Moreover, as the Supreme Court has recently summarized in *Elonis* by citing cases like *Liparota v. United States*, 471 U.S. 419 (1985) and *Morissette*, for there to be a crime in American Jurisprudence, an evil act must be concurrent with an evil mind. "Crime, as a compound concept, generally constituted only from concurrence of an evil-meaning mind with an evil-doing hand," quoting Justice Holmes' famous observation that "[e]ven a dog distinguishes between being stumbled over and being kicked." *Id.* at 251-52.

There is no mention in the Indictment of my "specific intent" to defraud anyone. Furthermore, please see *Sanchez v. Triple-S Management, Corp.*, 492 F.3d 1 (1st Cir. 2007), where the plaintiffs tried to change the mail and wire fraud claims from one of misrepresentations to a claim of omissions, which is exactly the situation in this case. In *Triple-S*, the First Circuit dismissed the plaintiffs' claims and upheld the district court's dismissal. The First Circuit already held in *Bonilla v. Volvo Car Corp.*, 150 F.3d 62 (1st Cir. 1998), that there is no "legal, professional or contractual duty," nor even a "general obligation" to disclose. It went on to say that "[w]hether or not this would bring business in the United States to a standstill might be debated; but it is a change, if it is ever to be made, that should be undertaken by legislatures and not by courts....However, if the disclosure was omitted in good faith, there was no fraud. *United States v. Dockray*, 943 F.2d 152, 155 (1st Cir. 1991) (holding that good faith is an 'absolute defense' to mail and wire fraud); *United States v. Ashman*, 979 F.2d 469, 480 (7th Cir. 1992) (same)." *Id.* at 70. With this in mind, the First Circuit in *Triple-S* went on to say:

> A defendant's failure to disclose information, without more, cannot make out a violation of the mail and wire fraud statutes. *See, e.g., Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065, (11th Cir. 2007); *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir.

2000)....We nevertheless observed that "[i]t would be a truly revolutionary change to make a criminal out of every salesman (assuming the use of the mails or telephone) who did not take the initiative to reveal negative information about the product and who—a jury might find— secretly harbored in his heart the hope that the buyer would never ask."

This Court should follow the *Triple-S* ruling in my case, as the cases parallel completely:

> The[] [government] do[es] not say whether [Carpenter] ha[d] a duty to disclose "the actual manner in which the [funds] were [invested]" or, if so, what the source of that duty is; they do not say whether the defendant[] "fail[ed] to disclose" or "conceal[ed]" this information with the intent to deceive the plaintiffs. Instead, they proceed on the assumption that nondisclosure alone can support mail and wire fraud claims. As we have discussed, **that is not the law**, in this circuit or elsewhere. *Id.* at 11. (emphasis added).

My conviction should be vacated because my Indictment fails to state any federal offense against the United States, and therefore, this Court lacked jurisdiction and its judgment is null and void. Moreover, because the Indictment is clearly based on fraudulent oral or written misrepresentations and not on a failure to disclose or omissions theory of fraud, I was not properly informed as to the nature and cause of the accusations against me as required by the Notice Clause of the Sixth Amendment. My conviction should also be vacated because my Indictment was fatally defective for several reasons, this Court lacked jurisdiction because my Indictment failed to state any crime at all, much less a federal offense against the United States, and there were no facts alleged in the Indictment whatsoever that showed the "concurrence of an evil mind at the same time an evil act is committed" to be considered a crime as determined by the Supreme Court in *Morissette* and as reiterated most recently in *Elonis*.

Therefore, since the Indictment is devoid of any "evil acts" actually done by me or caused by me, and any "evil mind" is pure conjecture on the part of the government, my conviction should be vacated and my Indictment should be dismissed in its entirety. Because of the lack of any specific intent to defraud on the part of me in the Indictment or any reference to anyone having **knowledge** of BPETCO and the property exchange transactions breaking the law, and based on the law of the

First Circuit as stated above in *Triple-S, Bonilla,* and *Cassiere*, I respectfully ask this Court to grant my Motion to Reconsider, grant my Motion to Dismiss the Indictment, vacate my conviction, order my immediate release from prison and to dismiss the Indictment as was done by the Second Circuit in the *Aleynikov* case mentioned above, all pursuant to Rule 12(b)(3)(B).

Respectfully Submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Reg. No. 90792-038
Donald W. Wyatt Detention Facility
950 High Street
Central Falls, RI 02863
