UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

DANIEL E. CARPENTER )
)
v. ) CRIMINAL NO. 04-cr-10029-GAO
)
UNITED STATES OF AMERICA )

## MOTION TO VACATE MY CONVICTION
## AND ORDER A NEW TRIAL PURSUANT TO RULE 33

### PRELIMINARY STATEMENT

I just recently received a copy of Judge Christine Roach's decision in the resulting appeal of the Exchangors against Bingham and the Bingham attorney, John Snyder, who represented Merrill Lynch in the BPETCO case until Bingham was replaced by Dickstein Shapiro. *See* Judge Roach Opinion attached as Exhibit 1). Her decision is still under the familiar *Cahaly v. BPETCO* caption that has been going through the Massachusetts state courts for 16 years now. In fact, Judge Roach comments on the Exchangors' claim that, if not for Snyder's and Bingham's lies and misconduct in their failure to produce material evidence through discovery, this case would have been resolved in 2002. Your Honor can read Judge Roach's answer defending Bingham and Snyder at Roach Op. 47-48, saying the 15-year ordeal was not their fault, but if it is not Snyder's fault for hiding and destroying evidence, and suborning perjury and restating lies by key witnesses, then whose fault is it? I leave that question for Your Honor to decide, as I have persistently asked for various attorneys to get the filings in this litigation for the past two years to no avail, because they have been kept from the public despite the fact that BPETCO is still in the caption, and that we should have had a chance to respond and receive copies of all filings as a party in interest. I have also not seen or received the letters sent by Bingham on behalf of Merrill

1

concerning the NASD investigations that I had never heard of until reading Judge Roach's Opinion.

Your Honor also knows that in my 2255 Petition, we presented the *Iantosca* lawsuit of February 2008 that should have been given to us as *Brady-Giglio-Bagley-Jenks* material before my second trial in June of 2008. Your Honor also knows that I presented the Court with an "avalanche of filings" and documents (the First Circuit's words, not mine) as they became available from Dickstein Shapiro in 2009-2010, showing that not just Levine, Rock, and Paley lied at my two trials, but all of the Merrill and Exchangor witnesses (except for David Patterson) lied at my second trial. Because this newly-discovered evidence is clearly *Brady* material, I need only show the more "defendant-friendly" *Kyles v. Whitley*, 514 U.S. 419, 434 (1995) standard of a "reasonable possibility of a different outcome" had the government provided all, or even **any of this evidence**, before my second trial. *See, e.g., United States v. Flores-Rivera*, 787 F.3d 1 (1st Cir. 2015). In overturning the forty years-to-life sentences for two of the defendants in *Flores-Rivera*, the First Circuit only focused on a torn letter and some notes that the government's star witness, Delgado, wrote on the toilet. The First Circuit cited *Kyles* at 420, stating that "the cumulative impact of all of the newly-discovered evidence" mandated overturning two of the convictions, and stating that it could put the whole case in a different light citing *United States v. Aviles-Colon*, 536 F.3d 1 (1st Cir. 2008). I do not need to show bad faith on the part of the government, or that I would have been acquitted upon a retrial (see the prosecution-friendly *Wright* standard at *United States v. Wright*, 625 F.2d 1017, 1019 (1st Cir. 1980) discussed in the November 2013 First Circuit opinion overturning my second New Trial Order at *United States v. Carpenter*, 736 F.3d 619 (1st Cir. 2013). Even the inadvertent withholding of evidence helpful to the defendant is enough to require a new trial. *See United*

*States v. Jimenez-Bencevi*, 788 F.3d 7 (1st Cir. 2015) *citing United States v. Melvin*, 730 F.3d 29 (1st Cir. 2013):

> Insured by the Due Process Clause, the government's failure [to turn over evidence] is *perforce* of constitutional dimension. It follows inexorably that the stricter harmless-error standard of "harmless beyond a reasonable doubt" applies to such a failure. *Melvin* at 37.

The Supreme Court has also made it clear that the government has an "Affirmative duty to disclose evidence favorable to a defendant via exculpatory or impeachment evidence." *Kyles*, 514 U.S. at 432-33. The First Circuit has adopted this standard stating "**We must grant a new trial if the newly-discovered evidence places the whole case in a different light as to undermine the confidence in the verdict**." See *Aviles-Colon*, 536 F.3d 1, 19 (1st Cir. 2008) (emphasis added), *citing Strickler v. Green*, 527 U.S. 263, 290 (1999) and *Kyles* at 435.

Simply put, as Your Honor can read for yourself, Judge Roach let Snyder and Bingham off the hook for sanctions because she was convinced that Levine, Stern, Rasmussen, Hassan Tabbah, and even Martin Malia all lied to Snyder as he was preparing for trial, and continued to lie to him throughout the decade-long proceedings. *See, e.g.*, Roach Op. at 25-28, Paragraphs 55-65. Judge Roach does fault Snyder for a "mistake in judgment," but that is not enough apparently for sanctions, or so she feels (surprisingly, however, a "mistake in judgment" is apparently enough to sustain a mail and wire fraud conviction in Boston). Judge Roach does also point out, however, that the Exchangors have received back more than $39 million on their $8 million loss, and cites Jeff Johnston as receiving over $1.6 million on his $400,000 personal loss, but does not mention Cahaly receiving upwards of $8 million on her $1 million loss. But, where I have been accused of fraud for not lying to anyone, Snyder and Bingham escape $750,000 in sanctions because they were allegedly lied to by the same people who lied at my trial, and their faults are excused by the state court as a "mistake in judgment."

Judge Roach makes it clear in her Opinion, that early on, Snyder knew that Malia, Rasmussen, Stern, Tabbah, and especially Levine all knew that the funds were client funds, and they had to create the fiction of me as an out-of-control rogue trader and "Riverboat Gambler," and Snyder himself joined in and endorsed this "big lie" by arguing to the Jury in the civil case that the people at Merrill did not know anything about BPETCO and the property exchange business. *See, e.g.,* Roach Op. at 30, Paragraphs 70-72. Snyder coached Levine, Stern, and Rasmussen to lie at the civil trial, and watched them lie at both of my trials, and to the FBI on the 302 Reports before they were presented at my Grand Jury hearing in 2004 after the civil trials in 2002 and 2003 were over. The AUSAs worked closely with Snyder, and clearly knew all of their witnesses were lying. Therefore, if for no other reason, Your Honor should vacate my conviction and order a third new trial just based on Judge Roach's Opinion alone, and the "cumulative" weight of the newly-discovered evidence contained in her Opinion that proved Snyder and the government must have known that all of the Merrill and Exchangor witnesses lied at my trial and the government failed to turn over vital *Brady-Giglio-Bagley* material to the defense, such as the SEC and NASD investigations of BPETCO that must have been favorable to me as well as Merrill, that would have put my trial in a totally different light not to mention the February 2008 *Iantosca* lawsuit discussed in my 2255 Petition.

I.   **LEGAL STANDARD**

As Your Honor knows well, Rule 33 provides that a new trial may be granted upon the defendant's motion in the interests of justice if newly-discovered evidence is found by the defendant within three years of the verdict or the finding of guilty. In my case, I was found guilty by Your Honor in February of 2014, or about the same time the First Circuit overturned Your Honor's second New Trial Order in November of 2013. Your Honor also knows that I have asked for a new trial based on newly-discovered evidence in my 2255 Petition, and Your Honor can supplement that Petition with Judge Roach's opinion if Your Honor should choose to do so in the interests of justice. Your Honor also knows that I have more than satisfied the actual innocence standard under *Herrera v. Collins*, 506 U.S. 390 (1993) and *Schlup v. Delo*, 513 U.S. 298, 315 (1995), whereby a claim of actual innocence is "a gateway through which a petitioner may have his otherwise barred constitutional claim considered on the merits." *See, also, Murray v. Carrier*, 477 U.S. 478, 496 (1986), when a *Brady* suppression is involved or a possible miscarriage of justice, the Court must consider fundamental fairness, constitutional error, and my actual innocence. *Id.* See, also *United States v. Hernandez-Rodriguez*, 443 F.3d 138 (1 Cir. 2006), where Hernandez filed a motion for a new trial based on his co-defendant taking the Fifth, and when his exculpatory testimony became "newly-available." Hernandez's jury verdict was in 1998, but it was not until July of 2002 that Hernandez filed his Rule 33 motion for a new trial. The district court turned him down in December of 2004, but the First Circuit granted the Rule 33 in 2006, stating that Fifth Amendment testimony did constitute newly-available, and newly-discovered, evidence. Moreover, in *Flores-Rivera*, there were four separate Rule 33 motions, all about two years apart, all denied by the district court until the First Circuit vacated the convictions two of the four of the co-defendant's in December 2015, about the same time First

Circuit denied my Speedy Trial appeal. As Your Honor knows well, it is the Court's verdict or finding of guilty that is the triggering event for the three year rule, not the jury trial. *See, e.g., United States v. Bowen*, 799 F.3d 336 (5th Cir. 2015), granting a new trial under the interests of justice and newly-discovered evidence citing *Herrera* at 409.

## II. MY CONVICTION MUST BE VACATED AND A NEW TRIAL ORDERED IN THE INTERESTS OF JUSTICE

There is a mountain of newly-discovered evidence that has appeared since my second trial of 2008. It is all new, it is all material, and Your Honor knows that I have been "diligent" if not "prodigious", and the only thing "cumulative" here, is that the newly-discovered lies and material *Brady-Giglio-Bagley* evidence just continues to accumulate. The "cumulative weight" of this newly-discovered evidence mandates a new trial under the defendant-friendly *Kyles* and *Strickler* standard. *See, e.g.,* the First Circuit's opinion in *United States v. Flores-Rivera*, 787 F.3d 117 (1st Cir. 2015). Levine was not the only person to lie; Stern and Rasmussen also lied, and Judge Roach based her 50-page decision on the fact Martin Malia downloaded the BPETCO information from the website and faxed it to Rasmussen, but then lied and changed the story when talking to Snyder. They both knew that BPETCO money was third-party client funds and they not only lied to Snyder and Bingham, Stern and Rasmussen lied to Your Honor, FBI Agent Caldwell, and therefore they also lied to my Grand Jury and the Jury as well. Your Honor already wrote about Paley's and Mitch Rock's lies. Now we know that Stern, Rasmussen, and Hassan Tabbah, Merrill's office manager, also lied to Snyder, as well as Martin Malia who was the unknown villain in this case. *See, e.g.,* Roach Op. at 40, Paragraph 105, regarding "[Malia's] concern that Carpenter and Benistar could come back to bite Merrill." See, also, Footnote 15: "It is nonetheless undisputed that Malia testified in 2009 that he restricted the account in part because of a concern that Benistar was trading other people's money."

6

We now know that there were multiple SEC and NASD investigations, and Snyder lied in those investigations because allegedly, he was lied to as well. I have requested both the SEC reports, and the two letters sent to the NASD that Judge Roach is holding back and has not published with her decision. Clearly this is newly-discovered and **material** *Brady-Giglio-Bagley* information to my case that neither Your Honor, nor anyone else including me, knew about these investigations and these Snyder letters, until this Motion based on Judge Roach's Opinion. I was not sued by the NASD or indicted by the SEC, despite several intensive investigations that I did not hear about or participate in. If a government investigation (that I and Merrill must have passed) does not constitute *Brady*-material, what does? Snyder knew about the February *Iantosca* lawsuit, the SEC investigations, the NASD investigations, the Malia file, and the Patterson information that came out when Dickstein Shapiro took over in 2009. Snyder as counsel for Merrill Lynch, and the counsel for the Exchangors sat behind the prosecution at both of my trials, and unbelievably did not mention any of this information to the prosecution, including the newly-discovered *Iantosca* lawsuit of February 2008 mentioned in my 2255 Petition? Or, perhaps they did, and the prosecution did not think that they had a duty under *Brady* to share this exculpatory information with me. Clearly the Supreme Court and the First Circuit disagree with that decision, and Your Honor knows that I deserve a new trial and should grant a new trial based on the newly-discovered evidence contained in Judge Roach's newly-discovered Opinion, if nothing else, because I need not show the government's good faith or bad faith in this regard. Assuming *arguendo*, even if Snyder hid all of the Merrill lies from the government, his knowledge is still imputed to the government because Snyder was there for each and every 302 Report used against me in my Grand Jury hearing. Moreover, the knowledge of the SEC and NASD investigations of Merrill concerning BPETCO are clearly *Brady* materials

that should have been turned over to the defense, but were not. This failure alone of the government to turn over vital material information warrants a new trial in and of itself alone and the vacating of my conviction and the order of my immediate release from prison.

### III. JUDGE ROACH'S OPINION GIVES CLEAR AND CONVINCING EVIDENCE THAT THE GOVERNMENT KNEW ALL ALONG THAT ALL OF THE MERRILL LYNCH WITNESSES WERE KNOWINGLY OFFERING PERJURED TESTIMONY

It has long been established by the First Circuit that they will not allow the use of perjured testimony or knowingly-false evidence to be used by the government to convict someone. It is also the established law of the United States that a conviction obtained through testimony the prosecutor knows to be false is repugnant to the Constitution. *See, e.g., Mooney v. Holohan*, 55 S. Ct. 340 (1935). As the Supreme Court stated in its unanimous decision in *Giglio*: "It has long been established that the prosecutor's deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with rudimentary demands of justice." *Giglio v. United States*, 405 U.S. 150, 153 (1972). See, also, a case mentioned several times in the government's previous filings, *Banks v. Dretke*, 540 U.S. 668 (2004): "A conviction based on testimony known by the prosecutor to be perjurious is a denial of due process."

The First Circuit has also made it clear that the knowing use of perjured testimony is also considered to be a serious *Brady* violation, and requires the order of a new trial. See *Gonzalez v. Gonzalez*, 258 F.3d 16, 21 (1st Cir. 2001), *citing Strickler v. Green*, 527 U.S. 263, 280-81 (1999). In *Drumgold v. Callahan*, 707 F.3d 28 (1st Cir. 2013) the First Circuit described *Mooney*'s core premise as "well-settled" in the First Circuit citing to *Coggins v. O'Brien*, 188 F.2d 130, 138 (1st Cir. 1951), and citing the Supreme Court's unanimous decision in *Napue v. Illinois*, 360 U.S. 264, 269 (1959), that was also cited by the Supreme Court's unanimous decision in *Giglio*. The First Circuit goes on in citing *Limone v. Condon*, 372 F.3d 39 (1st Cir.

8

2004), *citing Miller v. Pate*, 386 U.S. 1 (1967): "In 1967, the very year the crimes took place, Justice Stewart, writing for a unanimous court stated 'More than 30 years ago this Court held that the Fourteenth Amendment cannot tolerate a state criminal conviction obtained by the knowing use of false evidence. There has been no deviation from that established principle.'" *Miller* at 7.

As Your Honor will recall, we submitted excerpts from the Bevilacqua deposition and the 2010 Dickstein Shapiro depositions, where he stated that he was very disappointed in the conduct of certain individuals, and he recognized that they lied. In his 2010 deposition, Attorney Bevilacqua testified that he was "dismayed" at the "inconsistencies" between the recently produced documents and the trial testimony of Rasmussen, Stern, and Levine. Specifically, Bevilacqua testified:

> Q: In terms of the trial testimony you expected outside counsel to review in connection with your request, did you include the trial testimony that Merrill Lynch witnesses had given in the [Carpenter] criminal cases?
>
> A: In my mind, that was included, yes.
>
> Q: And what was it that you wanted outside counsel to look for in conducting that review?
>
> A: **I wanted them to find anything that would be inconsistent with the information that we gleaned from the documents that we had located [in the office of Rasmussen's successor on February 25, 2009].**
>
> Q: And how - - how soon after you made that request on February 25th, 2009 did you begin to hear from outside counsel about the inconsistencies they had identified in the testimony?
>
> A: In terms of testimony? Pretty quickly.
>
> Q: **And what was your reaction when you found out what the outside counsel had located?**
>
> A: **I was dismayed.**

> Q: <u>Why?</u>
>
> A: <u>From my reading of some of the testimony, and my reading of some of the documents, there were inconsistencies.</u>

05/25/10 Bevilacqua Depo. Tr. at 50-52 (emphasis added).

          \*        \*        \*

> Q: <u>Can you remember any of the inconsistencies that struck you as the most significant?</u>
>
> A: <u>That there had - - that no employee at Merrill Lynch had had any suspicions that Benistar was trading other people's money . . . that's the one that sticks in my mind.</u>
>
> Q: <u>And the documents you located in [the Branch] office was evidence to you that that testimony had not been correct?</u>
>
> A: <u>Possibly, yes.</u>

05/25/10 Bevilacqua Depo. Tr. at 53-54 (emphasis added).

Judge Roach also mentions Merrill's chief counsel Bevilacqua, as well as Waddington's testimony that it was clear to them that a number of people at Merrill had been lying for many years, participating in the Snyder and Bingham lies and cover-up of lies, as well as the destruction and spoliation of evidence. The Court is supposed to take into consideration "the cumulative impact of all of the newly-discovered evidence." See *Kyles* at 420. As the Supreme Court has described, the government's conduct in my case warrants a new trial as my case was "infested with constitutional errors." See *Wood v. Bartholomew*, 516 U.S. 1, 8 (1995).

Clearly Judge Roach's Opinion shows that Snyder coached these witnesses to lie, and because of their repeated lies in the civil forum, they had to continue repeating those lies in my criminal trials in 2005 and 2008, and the government worked in concert with Snyder to suborn knowing perjury in both of my trials as well as the civil litigation with the Exchangors after 2008. But nowhere was I harmed more than in my Grand Jury, where there was just one witness,

FBI Agent Caldwell, who literally quoted perjurious hearsay evidence from witnesses that AUSA Pineault clearly knew were lying, because my Grand Jury hearing was in January of 2004, three years after the start of the civil litigation with Merrill and after a judgment had already been entered against Merrill Lynch as well as BPETCO in November of 2002, and there had already been several performances by Mr. Snyder in front of civil juries where he lied straight-faced to the jurors in closing arguments, saying that no one at Merrill Lynch had any knowledge that the BPETCO funds were third-party funds, and did not in fact belong to Mr. Carpenter. *See, e.g.,* Roach Op. at 27-28, Paragraphs 61-65. In 2016, we know that all of the Merrill witnesses knew that the BPETCO funds were third-party funds, and they lied and perpetuated the lie for 16 years just to save themselves some money in a civil lawsuit at the cost of an innocent man's freedom.

If the First Circuit had read Judge Roach's Opinion in November of 2013 instead of May of 2016, they never would have overturned my second New Trial Order. Therefore, it is my hope and now with Judge Roach's Opinion, Your Honor will immediately issue a third New Trial Order in the interests of justice based on the overwhelming weight of this cumulative new *Brady-Giglio-Bagley* evidence discovered within three years of this Court's finding of my guilt in February of 2014 because the government knowingly used false evidence and the perjured evidence of witnesses to obtain the unconstitutional conviction of an innocent man.

IV. **JUDGE ROACH'S OPINION PROVES THAT THE GOVERNMENT DID NOT LIVE UP TO ITS OBLIGATIONS UNDER *BRADY-GIGLIO-BAGLEY*, AND THEREFORE I AM ENTITLED TO A THIRD NEW TRIAL ORDER**

The First Circuit has recognized over and over again that the government has an affirmative duty to disclose and turn over to the defense evidence favorable to the defendant via exculpatory or possible impeachment evidence. *See United States v. Flores-Rivera*, 787 F.3d 117 (1st Cir. 2015) *citing Giglio v. United States*, 405 U.S. 150 (1972). Because the government's failure to turn over exculpatory evidence or evidence favorable to the defendant in *Brady* as well as the government's use of knowingly false evidence as well as perjured testimony from multiple witnesses means that I am entitled to the defendant-friendly standard of review for newly-discovered evidence as explained by the First Circuit in *Flores-Rivera* as follows:

1. The evidence was unknown or unavailable;
2. It was not due to a lack of diligence on the part of the defendant;
3. The new evidence is material;
4. And as *Brady* evidence, there is a reasonable possibility that, had the evidence been disclosed prior to trial, the result of the proceeding would have been different. *Id.* at 16.

The First Circuit goes on to show that the Court is allowed to, in a case like this where there are cumulative violations as there were in *Flores-Rivera*, to combine them together and find a violation that mandates a new trial, *citing Gonzalez v. Gonzalez*, 258 F.3d 16, 20 (1st Cir. 2001). Clearly, with the number of *Brady* violations in my case, and the government's knowing use of false evidence and the perjured testimony of multiple witnesses, I am entitled to the same new trial for newly-discovered evidence that the defendants in *Flores-Rivera* were entitled to.

The importance of newly-discovered evidence which shows the use of knowingly false evidence or perjury by the government in my case is reminiscent of the Second Circuit's reversal of a conviction based on prosecutorial misconduct and the prosecutors making "knowing use of false evidence" including misrepresentations of the nature of non-testimonial evidence. *See, e.g., United States v. Valentine*, 820 F.2d 565, 570 (2d Cir. 1987), citing *Miller v. Pate*, 386 U.S. 1, 6 (1967), and *Napue v. Illinois*, 360 U.S. 264, 269 (1959). Just as AUSA Mitchell said in his closing arguments describing the BPETCO documents that someone changed the documents, and then said "THAT'S FRAUD" while looking at me and gesturing towards where I was seated, throughout the trial, he used the lies of the Merrill and Exchangor witnesses to mischaracterize my state of mind and try to portray me as an out-of-control "riverboat gambler", while the Merrill Lynch people were trying to have me adopt a more "conservative strategy." In reality, nothing could be further from the truth as top executives from Merrill Lynch, including famous analysts Henry Blodget and Paul Meeks (both of whom Levine introduced me to), and other Merrill Lynch executives, were pounding the table and advocating the purchase of NASDAQ tech stocks even in the face of the greatest stock market crash in United States history where the NASDAQ fell from a high of 5,132 to a low of below 2,000 in just a matter of months. *See, e.g., Paul Meeks: Where Is He Now?*, Wall Street Journal, April 24, 2015 attached as Exhibit 2.

The Merrill Lynch-BPETCO trials show that had Merrill not closed the account and lied about closing the account, BPETCO could have made $4 million in September of 2000 instead of losing $2 million. In fact, Malia was concerned that Merrill would be sued and that this situation would come back to bite Merrill in the future. *See* Roach Op. at 40, Paragraph 105. The Merrill witnesses were allowed to lie to the jury and the government knew they were lying, because the Merrill company line was that they were closing the accounts because of Carpenter's aggressive

trading strategy of using "naked options", when in fact the record is clear that every single one of my option trades was covered. Instead, all the jury ever heard in both the civil and criminal trials was "naked option" trading, "risky strategy," and "Riverboat Gambler", and this misinformation infected the First Circuit's opinion in November 2013 and even Judge Kayatta's opinion in March 2015. The truth of the matter is that Martin Malia reviewed the BPETCO website and realized this was, in fact, "Other People's Money" and client funds, which is when he sent the website information to Rasmussen by fax and ordered him to close the accounts down. *See, e.g.,* Roach Op. at 22-23, Paragraphs 40-45. It isn't until well after my trial in 2008 that the truth came out from depositions in 2009 and 2010, and that material has been shared with the Court. In Judge Roach's opinion, not only did the Merrill witnesses lie to the jury with the knowing approval of the government, they lied to the SEC and NASD in their respective investigations as well. They lied in civil trials to other juries and other judges. *See, e.g.,* Roach Op. at 30, Paragraphs 70-72, quoting the letters sent to the NASD.

Most importantly, in my case, they were allowed to lie to my jury because Your Honor let them testify as to what my "state of mind" was, and instead of showing a thoughtful and cerebral "cautious trader" whose trading had overall been profitable, the government instead allowed Merrill Lynch, with the government's knowledge, to use false evidence to make Merrill Lynch look "good", and me look "bad." After all, the gist of the case, which the First Circuit failed to realize, is that the jury was able to think that there was no evidence that Carpenter met or talked with any of the Exchangors, but if he lied to Merrill Lynch, then it is easy to surmise that he lied to the Exchangors as well regardless of the lack of evidence of contact between Carpenter and the Exchangors.

So, in retrospect, if we could poll the jurors, we would probably find that they convicted me not on the basis of mail and wire fraud, but rather trading "naked stock options" with client funds that I had a duty to keep safe, and I lost client money despite the fact that I had no such duty, and by contract I had the unfettered right to invest the funds any way that I saw fit. Once again, LandAmerica, another property-exchange intermediary, lost $400 million investing in municipal bonds and none of that money was returned to investors, whereas Judge Roach shows that my alleged victims received at least $39 million if not more on their $8 million loss. *See, e.g.,* Roach Op. at 32-33, Paragraphs 80-82, showing that the Exchangors had already been made whole and received over $12.5 million, which included the principal and interest on the losses prior to my trial in June of 2008. Importantly, in reviewing my case, Judge Kayatta in the March 30 First Circuit opinion, said the loss was $9 million; therefore my sentence was reasonable. The truth is that I had already paid back the Exchangors $15 million before my second trial in 2008, so therefore my intended and actual loss was $0, and nowhere does Judge Kayatta mention that fact in his otherwise clearly erroneous statement of the facts in my case. For example, in describing my case "in a nutshell," Judge Kayatta makes it look like I spoke to and hand-delivered the contracts that the Exchangors signed and was in regular contact with the Exchangors:

> In a nutshell, [Carpenter] **told clients** he would **hold their money** in **escrow accounts** for which the client would pay a fixed fee and which would **cautiously** generate returns of either three or six percent; then (unbeknownst to his clients) he invested the money in high-risk, high-return stock options, hoping to generate excess returns to keep for himself. His option trading fared poorly, and he lost nine million dollars in client funds. At trial, he argued unsuccessfully that he never promised that the client funds would be safe, and that he did not intend to defraud his clients when **he failed to disclose** his real strategy of using their money to make risky investments to see if he could hit a home run for himself. *United States v. Carpenter*, 781 F.3d 599, 603 (1st Cir. 2015) (emphasis added).

As Your Honor knows well, I never met with, talked to, or so much as sent a letter to any of the Exchangors, much less "told clients that I would hold their money in escrow accounts" and "cautiously" generate returns of either three or six percent (does Judge Kayatta know of a "riskless" or "cautious" investment earning six percent?). Additionally, "failed to disclose" means this case was constructively amended into a case of omissions and nondisclosure - without a duty to disclose anything on my part – and anything that I did in this case was from my office in Simsbury, Connecticut, or in trading with Merrill Lynch and PaineWebber in the Southern District of New York. If Your Honor was to compare Judge Roach's description of what happened in the BPETCO–Merrill Lynch situation with Judge Kayatta's description of my case, Your Honor would have to agree that I am entitled to a new trial on newly-discovered evidence because I have not received a fair trial, and the prosecution's knowing use of false evidence and the perjury of several witnesses against me is much more blatant than anything that happened in *Valentine* that caused the Second Circuit to reverse his conviction. Moreover, the *Brady-Giglio-Bagley* violations of the government in my case dwarf every case in America, including the famous Ted Stevens case in Washington, D.C. under the Honorable Emmet Sullivan. Your Honor knows that I deserve a new trial, and the constitutional errors and prosecutorial misconduct in this case "infested the whole trial" and clearly amount to a Due Process Clause violation. *See, e.g., Wood v. Bartholomew*, 516 U.S. 1, 8 (1995). In *Valentine*, the Second Circuit overturned a conviction based on election fraud and, because nine other people who did not testify also received $1,000 checks from his employer, the prosecutor in *Valentine* did exactly what AUSA Mitchell did to me in bringing in non-evidence from non-witnesses, see, e.g., someone had to change the documents and "THAT'S FRAUD", and making a conclusion about how the checks were procured. That simple prosecutorial misstatement of non-evidence caused

the conviction in *Valentine* to be overturned, where Valentine said he did not receive the $1,000 check as a loan or gift from his employer to make the so-called illegal campaign contribution. Please see another Second Circuit case *United States v. Parce*, 789 F.3d 83 (2d Cir. 2014), where Parce's conviction was reversed and a new trial ordered just because a juror, not even a witness, lied during *voir dire* so that she could get on the jury. When the defense discovered this, the Second Circuit vacated the conviction and ordered a new trial simply for that reason. Obviously this pales in comparison to the fact that we now know at least eight key witnesses in my case all lied to the Court. The prosecutorial misconduct in my case and the serious constitutional errors that have "infested" my case are far more serious than the letter in *Flores-Rivera* and requires this Court to review my case in the light of the newly-discovered evidence contained in Judge Roach's Opinion, and all of the revelations discovered since 2009 by Dickstein Shapiro and the other *Brady-Giglio-Bagley* violations in this case under the defendant-friendly standard of *Kyles* and *Strickler*, as well as the *Chapman* standard, because there is no harmless error here; all of the errors in this case are constitutional, structural errors requiring the vacating my conviction and the ordering of a third New Trial Order.

Respectfully submitted,

/s/Daniel E. Carpenter
Daniel E. Carpenter
Reg. No. 90792-038
Donald W. Wyatt Detention Facility
950 High Street
Central Falls, RI 02863