UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CRIMINAL NO. 04-10029-GAO

UNITED STATES OF AMERICA

v.

DANIEL E. CARPENTER,
Defendant.

OPINION AND ORDER
February 20, 2019

O'TOOLE, D.J.

The defendant was convicted by a jury of nineteen counts of mail and wire fraud. His convictions were affirmed on direct appeal. The defendant now brings numerous motions challenging this Court's forfeiture and sentencing decisions, as well as a motion to vacate his conviction and sentence under 28 U.S.C. § 2255 and a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33. I address each motion in turn.

**I.     Motion for Reconsideration of Forfeiture Order (dkt. no. 477)**

The defendant moves to reconsider the order of forfeiture. At the sentencing hearing, I requested additional briefing from the parties regarding their forfeiture arguments. (See Sentencing Tr. 30–33 (dkt. no. 446).) After considering those additional papers and arguments, I ordered forfeiture in the amount of $14,053,715.52.

The Court of Appeals has held:

Motions for reconsideration are not to be used as a vehicle for a party to undo its own procedural failures or allow a party to advance arguments that could and should have been presented to the district court prior to judgment. Instead, motions for reconsideration are appropriate only in a limited number of circumstances: if the moving party presents newly discovered evidence, if there has been an

intervening change in the law, or if the movant can demonstrate that the original decision was based on a manifest error of law or was clearly unjust.

United States v. Allen, 573 F.3d 42, 53 (1st Cir. 2009) (citations and internal quotation marks omitted). The defendant fulfills none of those requirements here.

His primary argument is that his forfeiture amount should be reduced by the amount of money he and his company, BPETCO, "voluntarily" paid out to all Exchangors in 2000 and 2001, which, he argues, should be accounted for as statutory "direct costs." See 18 U.S.C. § 981(a)(2)(B). This argument fails for several reasons.

First, this argument was not raised prior to the Court's forfeiture decision, despite extensive briefing. (See, e.g., Daniel E. Carpenter's Mem. in Reply to Gov't Sentencing Mem. 1–2 (dkt. no. 434); Def. Daniel E. Carpenter's Resp. in Opp'n to U.S.' Suppl. Br. in Supp. of Entry of Money J. in the Amount of $14,053,715.52 (dkt. no. 455); Assented-To Mot. For Leave to File Sur-Reply (dkt. no. 470) (sur-reply attached to motion).) Instead, the defendant's argument then focused on whether this Court had the power to order forfeiture and how the amount to be forfeited should be calculated. He had ample opportunity to develop a theory that payments to Exchangors were a direct cost within the statutory meaning. The defendant's contention that arguments on direct costs were "premature" or "not in dispute" at the time is not persuasive. The burden of proof of direct costs lies with the defendant. See 18 U.S.C. § 981(a)(2)(B). After discussion on forfeiture at the sentencing hearing, I requested additional briefing specifically to address forfeiture issues. That was the time to present all arguments regarding the issue. [1]

---

[1] Subsequent to his Motion for Reconsideration, the defendant filed supplemental memoranda arguing that, under Honeycutt v. United States, 137 S.Ct. 1626 (2017), the forfeiture was improper because he did not *actually acquire* the forfeited funds. (See Suppl. to Mot. for Recons. of Forfeiture (Doc. 471) (dkt. no. 552); Def.'s Renewed Mot. for Recons. of Forfeiture Order and Denial of Mr. Carpenter's Rule 29 Mot. for J. of Acquittal (dkt. no. 556).) Honeycutt concerned joint and several forfeiture liability of co-conspirators convicted of certain drugs crimes. 137 S.Ct. at 1631–32; see 21 U.S.C. § 853. Neither Honeycutt nor the other cases cited by the defendant

Second, the defendant makes no attempt to link the payments paid to the Exchangors with the specific counts for which forfeiture was ordered.

Third, the statutory term "direct costs" clearly refers to the costs of doing business in the ordinary course of transactions that would have been legal but for the fraud.

To the extent that the defendant makes other arguments about forfeiture elsewhere in his filings, including in his Section 2255 petition, (see Mot. to Vacate Conviction & Reduce Sentence 41–44 (dkt. no. 497)), those arguments merely reexamine issues already decided in the original forfeiture order.

## II. Motion under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (dkt. no. 496)

In his motion for post-conviction relief under 28 U.S.C. § 2255, the defendant makes a variety of arguments why his conviction and sentence should be vacated. Relief under § 2255 "is an extraordinary remedy, available only on a sufficient showing of fundamental unfairness." Singleton v. United States, 26 F.3d 233, 236 (1st Cir. 1994).

Given the lengthy history of this litigation, it should be unsurprising that many, if not all, of the issues raised by the defendant now have already been addressed by this Court or by the First Circuit. Generally speaking, "issues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion." Singleton, 26 F.3d at 240 (quoting Dirring v. United States, 370 F.2d 862, 864 (1st Cir. 1967)). Absent some working of significant injustice, relitigating points already decided is wasteful and undercuts confidence in the judicial process. See Ellis v. United States, 313 F.3d 636, 646–47 (1st Cir. 2002); see also United States v. Matthews, 643 F.3d 9, 12–13 (1st Cir. 2011) (discussing the doctrine of law of the case).

---

affect this Court's prior determination that the proceeds were acquired in the sense relevant to the charges here. (See Op. and Order 1–4, May 23, 2014 (dkt. no. 471).)

A.    Venue

The defendant raises a number of arguments regarding venue. Whether venue was proper has been extensively litigated in this case and is addressed in previous decisions by this Court. See, e.g., United States v. Carpenter (Carpenter I), 405 F. Supp. 2d 85, 88–92 (D. Mass. 2005). The defendant has put forward no new reason to reexamine this issue.

B.    Ineffective Assistance of Counsel

Strickland v. Washington, 466 U.S. 668 (1984), requires that a defendant make two showings in order to prove that his counsel was constitutionally ineffective: (1) "that counsel's performance was deficient," and (2) "that the deficient performance prejudiced the defense." Id. at 687.

Concerning deficient performance, "there is a 'strong presumption' that counsel's strategy and tactics fall 'within the range of reasonable professional assistance,' and courts should avoid second-guessing counsel's performance with the use of hindsight." Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (quoting Strickland, 466 U.S. at 689). "Judicial scrutiny of the defense counsel's performance is 'highly deferential,' and the defendant must overcome a 'strong presumption . . . that, under the circumstances, the challenged action "might be considered sound trial strategy."'" Bucci v. United States, 662 F.3d 18, 30 (1st Cir. 2011) (alteration in original) (quoting Strickland, 466 U.S. at 689). Concerning prejudice, the defendant must show that there is a reasonable probability that the outcome of the prior proceedings would have been different but for counsel's deficiencies. Strickland, 466 U.S. at 694.

The defendant raises a host of alleged errors committed by his privately retained counsel. The defendant is relatively brief in describing the "litany of errors,"[2] (Mot. to Vacate Conviction & Reduce Sentence 20), and I shall be as well.

First, the defendant complains that his counsel "[f]ail[ed] to discover, investigate, or even get a copy of the February 2008 Iantosca lawsuit." (Id.) The defendant in no way explains what specifically about that lawsuit would have helped his case, or how the opinion he attached, decided in November 2008, could have helped him during his trial in June of that year. See Iantosca v. Merrill Lynch Pierce Fenner & Smith, Inc., Opinion No.: 106524, Docket Number: 08-0775-BLS2, 2008 Mass. Super. LEXIS 479 (Mass. Super. Ct. Nov. 25, 2008). That case was dismissed at the motion to dismiss stage, and thus it is unclear what, if anything, the fruits of additional investigation into that case might have been.

Second, the defendant cites the lack of objection to the prosecutor's statement of "that's fraud" during his closing argument. The First Circuit concluded that "[t]aken in context, it is clear that the prosecution's comments were permissible comments on the evidence in the case rather than the prosecutor's own opinion." United States v. Carpenter (Carpenter IV), 736 F.3d 619, 632 (1st Cir. 2013). While the Circuit's analysis was under plain error review, it is equally clear that under the Strickland standard, this comment is not so extreme that counsel's failure to object fell below an objective standard of reasonableness.

Third, the defendant argues that his counsel failed to move for a new trial based on newly discovered evidence concerning Merrill Lynch. He claims that his counsel failed to so move

---

[2] Indeed, they are in the form of numbered lists, often containing a single sentence of argument per number. The undeveloped and conclusory nature of his arguments itself justifies dismissal. See Tse v. United States, Civil Action No. 06-10740-GAO, 2006 WL 3782708, at *1 (D. Mass. May 30, 2006). However, I evaluate them all here individually.

5

because they were representing Merrill Lynch and had conflicting interests. The defendant's argument is factually inaccurate. Defense counsel *did* argue for a new trial on that basis. (See Def.'s Reply in Supp. of His Suppl. Mem. Concerning New Evid. (dkt. no. 359).) I rejected that particular argument but did grant a new trial for a different reason. See United States v. Carpenter (Carpenter III), 808 F. Supp. 2d 366, 386 (D. Mass. 2011). The Court of Appeals reversed that order. Carpenter IV, 736 F.3d at 632.

Fourth, the defendant complains that counsel was deficient in failing to press for a particular jury instruction based on a case decided long after his trial. See United States v. Gray, 780 F.3d 458 (1st Cir. 2015). Not only is it impossible for counsel to be ineffective for failure to predict an appellate decision seven years in the future, but the jury instructions in this case were affirmed on direct review. See United States v. Carpenter (Carpenter V), 781 F.3d 599, 619–20 (1st Cir. 2015), cert. denied, 136 S. Ct. 196 (2015).

Fifth, the defendant claims counsel failed to object to the admission of marketing materials. Contrary to the defendant's assertion, the marketing materials were plainly relevant and properly admitted in evidence. See Carpenter III, 808 F. Supp. 2d at 377–78.

Sixth, the defendant claims that his counsel should have objected to the parts of the government's closing argument found problematic in Carpenter III. See 808 F. Supp. 2d at 380–84. The argument makes no sense, because even in the absence of a contemporaneous objection, I later granted a new trial on the basis of the government's closing. Moreover, the First Circuit later held that the grant of a new trial was error. See Carpenter IV, 736 F.3d at 626.

Seventh, the defendant states that his counsel was ineffective for failing to object to statements by the government calling him a "wealthy man" or talking about "risky" investments.

The First Circuit's rejection of the defendant's bid for a new trial—based in part on references to the defendant's profit motive—essentially subsumes this argument See id. at 629.

Eighth, the defendant points to counsel's failure to object to "[b]ogus warnings of risk by brokers." (Mot. to Vacate Conviction & Reduce Sentence 21.) It is unclear to what the defendant is referring, how failing to object would be in error, or how an objection would have affected the verdict. He thus fails to make the requisite showing under Strickland.

Ninth, the defendant vaguely references "[o]ther prosecutorial misconduct in closing statements." (Id.) Other than the impossibility of such an inchoate argument carrying the Strickland burden, the First Circuit, as discussed above, reviewed and rejected the argument that the government's closing was problematic. See Carpenter IV, 736 F.3d at 626–32.

Tenth and eleventh, the defendant argues that his counsel should have demanded that a venue instruction be given to the jury and should have objected to venue. But contrary to the defendant's assertions, his counsel raised the venue issue often and indeed argued for a new trial based on the jury instruction argument. (See Def.'s Suppl. Mot. for a New Trial 2–5 & n.2 (dkt. no. 312).) In any event, there was no prejudice here as venue was proper.

Twelfth, the defendant objects to a failure to request a "duty to disclose" instruction. Not only was this argument actually raised by counsel, it also was rejected on direct review. Carpenter V, 781 F.3d at 619–20. This was not a fraud by omission case. Id.

Thirteenth, the defendant again raises concerns over the government's "greed"-like arguments. And again, those arguments were rejected by the First Circuit; the defendant could not have been prejudiced. See Carpenter IV, 736 F.3d at 629.

Fourteenth, the defendant argues that his counsel should have demanded a bill of particulars "to identify the allegedly false misrepresentation that [he] made." (Mot. to Vacate

7

Conviction & Reduce Sentence 22.) This is frivolous. It was plain what the government was relying on in its theory that the defendant misled investors. If there may have been any doubt before the first trial, there could not have been after that trial.

Fifteenth, the defendant contends that a motion to dismiss should have been brought based on Speedy Trial Act issues raised by the First Circuit in United States v. Huete-Sandoval, 668 F.3d 1 (1st Cir. 2011). Speedy Trial Act issues must be raised prior to trial. See 18 U.S.C. § 3162(a)(2). The second trial began in 2008, before the Huete-Sandoval decision, so there could have been no error in failing to argue that case. To be clear, the defendant's counsel *did* file a motion to dismiss based on the Speedy Trial Act, but it was denied. (Def.'s Mot. to Dismiss the Superseding Indictment with Prejudice for Violations of the Speedy Trial Act (dkt. no. 229).) The issue was thoroughly litigated in this case.

Sixteenth, and finally, the defendant faults his counsel for his not testifying at trial. The entirety of his argument is as follows:

> There are clearly other things that in hindsight that [the defense firm] should have done, such as allowing me to testify as I begged my attorneys to do, but because everyone was anxious to have the trial over [sic] they were confident that the jury would acquit me because the government had not made its case. Obviously [that] judgment[] [was] incorrect and prejudicial to me.

(Mot. to Vacate Conviction & Reduce Sentence 22.)

Two claims are interlaced in this short paragraph. One is an argument that counsel erred by recommending that the defendant not testify. The defendant has not shown how that tactical decision was incorrect at the time it was made. Indeed, the defendant alleges only in "hindsight" that it became clear that he should have testified.

The other argument in this paragraph is that the defendant's counsel did not allow him to testify. This argument fails for several reasons. The defendant was clearly aware that he had the right to testify. He is himself a lawyer. In addition, I asked him directly during the first trial if it

was his decision not to testify. He responded: "Absolutely, your Honor. And my attorney did spend a great deal of time talking to me about my rights." (Tr. of First Trial, Day 11, at 98 (dkt. no. 167).)

This is not a case where the defendant was taken unawares of his rights. While he was not inquired directly during his second trial whether he was waiving his right to testify, he certainly knew he had that right. I know from personal observation that Mr. Carpenter was not shy about communicating his wishes to his counsel in either of his trials.

This Court may also consider the "the cumulative effect of counsel's errors in determining whether a defendant was prejudiced." Dugas v. Coplan, 428 F.3d 317, 335 (1st Cir. 2005) (quoting Kubat v. Thieret, 867 F.2d 351, 370 (7th Cir. 1989)). A number of errors, while individually small, could collectively "disfigure the proceedings so significantly as to undermine . . . confidence that the defendant received a fair trial." See United States v. Gonzalez-Melendez, 594 F.3d 28, 37 (1st Cir. 2010). Here, however, the defendant has not shown any errors of real substance, let alone enough that together they create a constitutional error in his counsel's performance.

C.   Grand Jury Misconduct

The defendant contends there was alleged misconduct in the course of the grand jury proceedings. Substantially similar claims were raised by trial counsel twice before. (See Def.'s Emergency Mot. to Dismiss for Violations of the Grand Jury's Independence (dkt. no. 123); Def.'s Verified Mot. to Dismiss for Prosecutorial Misconduct, Grand Jury Bias, and an Unconstitutional Grand Jury (dkt. no. 237).) Those motions were twice denied. (See Electronic Order, Feb. 17, 2006; Clerk's Note, Apr. 24, 2008; see also Gov't's Opp'n to Def.'s Verified Mot. to Dismiss for Prosecutorial Misconduct, Grand Jury Bias, and an Unconstitutional Grand Jury (dkt. no. 243).) The issues were not raised on appeal. They cannot be raised now.

D.  Rule of Lenity

The defendant next brings a charge that the rule of lenity—or perhaps the void for vagueness doctrine—compels his acquittal. While he extensively quotes case law, the defendant's argument is fairly undeveloped. He alleges that "the government did not provide [him] with fair warning in 1998–2000" that his investment scheme constituted wire fraud or mail fraud. (See Mot. to Vacate Conviction & Reduce Sentence 31.) This argument has been substantially raised before, (see Def.'s Suppl. Mot. for J. of Acquittal 4–12 (dkt. no. 311)), and was rejected, see Carpenter III, 808 F. Supp. 2d at 385–86. It does not appear to have been pursued on appeal. As an issue already decided, I will not revisit it.

E.  Sentencing Guidelines Enhancement for Intended or Actual Loss

The defendant next contends that applying a fourteen point enhancement to the base offense level for more than $5 million in losses under the Sentencing Guidelines was inappropriate. See U.S. Sentencing Guidelines Manual § 2F1.1 (U.S. Sentencing Comm'n 2000) [hereinafter U.S.S.G.]. The question of the loss enhancement was specifically addressed at sentencing, (see Sentencing Tr. 5–8, 86–87), and the decision to apply the loss calculation unchanged from the presentence report was affirmed on direct review, see Carpenter V, 781 F.3d at 622–23.

F.  Duty to Disclose and Variance of the Indictment

The defendant again argues before this Court that the prosecution theory was fraud by omission. It was not. See Carpenter V, 781 F.3d at 619–20.

G.  Good Faith and Newly Discovered Evidence

The defendant asserts that the government did not sufficiently counter his good faith defense and that newly discovered evidence discredited any evidence purporting to show lack of good faith. That argument has been considered and rejected. See Carpenter III, 808 F. Supp. 2d at

378–80. Additionally, the First Circuit concluded that the newly discovered evidence did not warrant a new trial. See Carpenter V, 781 F.3d at 620–21.

### H. Double Jeopardy

The defendant next seeks to vacate his conviction on double jeopardy grounds. That retrial of the charges was not barred by the Double Jeopardy Clause was decided long ago in this case. See United States v. Carpenter (Carpenter II), 494 F.3d 13, 25–26 (1st Cir. 2007).

### I. Prosecutorial Vindictiveness

As a final thrust in his Section 2255 motion, the defendant contends that the government vindictively prosecuted him. Curiously, the prosecution he points to is a prosecution in the District of Connecticut on charges unrelated to the two trials he had before this Court. See Indictment, United States v. Carpenter, Criminal No. 3:13-cr-00226-RNC (D. Conn. Dec. 12, 2013), ECF No. 1. It is unclear how any claim of misconduct there should or could be remedied here.

Regardless, the defendant has not shown that the successful prosecution in this case arises from vindictiveness. The government in this case clearly "show[ed] objective reasons for its charges" in the Superseding Indictment. See United States v. Jenkins, 537 F.3d 1, 3 (1st Cir. 2008).

## III. Motion for Amended Judgment and Commitment Order (dkt. no. 499)

The defendant's motion for an amended judgment is essentially a request to resentence him based on a variety of factors. However, the defendant has failed to show how he meets the criteria for reduction of a final sentence. See 18 U.S.C. § 3582(b), (c). Nor has he shown—even if it were relevant—how the Sentencing Guidelines may have changed to be more favorable to him. Compare U.S.S.G. § 2F1.1 (2000) (six point base offense level for fraud and fourteen point enhancement for losses above $5,000,000), with U.S.S.G. § 2B1.1 (2015) (six point base offense level for fraud and eighteen point enhancement for losses above $3,500,000). The sentence was

well below the Guidelines recommendation and affirmed on direct review.[3] See Carpenter V, 781 F.3d at 621–23.

**IV.     Motion for Reconsideration of Opinion and Order Dated May 23, 2014 (dkt. no. 502)**

While from the title of the document it would appear that the defendant's Motion for Reconsideration of Opinion and Order Dated May 23, 2014 (dkt. no. 502) is aimed at the Court's May 23, 2014 Opinion and Order (dkt. no. 471), the text of the motion reveals otherwise. The May 23, 2014 opinion dealt primarily with forfeiture and bail issues. This motion is entirely about speedy trial issues. Those issues have been dealt with extensively by this Court and by the First Circuit. See, e.g., Carpenter V, 781 F.3d at 608–19.

**V.      Motion to Amend Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255 (dkt. no. 503)**

The defendant seeks to amend his motion under 28 U.S.C. § 2255 to add a new claim. Because the motion was filed within one year of judgment, the government does not oppose the amendment. I will allow the amendment and consider the argument.[4]

The defendant's new argument for habeas relief is that this Court was without subject-matter jurisdiction because the Superseding Indictment does not adequately plead a federal crime.

---

[3] The defendant has also moved for early termination of supervised release under 18 U.S.C. § 3583(e). (See Def.'s Motion For Early Termination of Supervised Release Pursuant to Title 18 U.S.C. § 3583(e)(1) (dkt. no. 564).) That the defendant has not violated the terms of his supervision does not itself warrant early termination. His other argument—that the interest of justice requires early termination because he is not culpable for the underlying offenses—likewise fails to justify any departure from his sentence.

[4] Though not included in his motion to amend his Section 2255 petition, in his habeas petition reply brief, the defendant argues that he was convicted without any showing of *mens rea*, in violation of the Supreme Court's decision in Elonis v. United States, 135 S. Ct. 2001 (2015). Elonis dealt with 18 U.S.C. § 875, a statute concerning interstate threats of kidnapping and violence. See 135 S. Ct. at 2008. Not only was the defendant here charged under different statutes, but I specifically instructed the jury that in order to convict, "the government must prove that the defendant acted with the specific intent to defraud." (Tr. of Second Trial, Day 13, at 33 (dkt. no. 300).) Elonis bears no relationship to this case.

This argument was raised and rejected very early in this case. (See Order, Nov. 9, 2004 (dkt. no. 44).)

**VI.     Motion for Summary Judgment (dkt. no. 505)**

In this motion, the defendant essentially reargues his Section 2255 motion and argues that summary judgment should enter in his favor. For reasons that are plain, this motion is denied.

**VII.    Motion for Reconsideration of This Court's Order of June 15, 2015 Dismissing the Motion to Dismiss the Indictment Pursuant to Rule 12(b)(3)(B) (dkt. no. 541)**

The defendant contends yet again that the indictment was deficient and failed to state a federal offense. As discussed supra Part V and in this Court's prior decisions, the Superseding Indictment adequately alleged crimes under the wire fraud and mail fraud statutes.

**VIII.   Motion to Vacate Conviction and Order a New Trial (dkt. no. 545)**

The defendant has also moved pursuant to Federal Rule of Criminal Procedure 33 for the Court to vacate his conviction and grant a new trial on the basis of newly discovered evidence. The motion is untimely.

Under Rule 33, "[a] motion for new trial based on newly discovered evidence may be made only within three years after the verdict or finding of guilty." Fed. R. Crim. P. 33. The defendant was found guilty at the conclusion of his second jury trial on June 18, 2008, but did not file this motion for a new trial until May 20, 2016, more than three years later. Accordingly, under Rule 33, his motion for a new trial is time-barred. Id.; see United States v. Mojica-Rivera, 435 F.3d 28, 32 (1st Cir. 2006).

**IX.     Other Motions**

The remaining motions not expressly addressed are essentially redundant of motions discussed and disposed of above and do not require separate address. They are all denied.

## **X.**     **Conclusion**

The defendant's Motion to Amend Motion to Vacate Conviction Pursuant to 28 U.S.C. § 2255 (dkt. no. 503) is GRANTED to the extent that it amends his Section 2255 motion and otherwise DENIED.

The defendant's Motion for Reconsideration of Forfeiture Order (dkt. no. 477); Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence (dkt. no. 496); Motion for Amended Judgment and Commitment Order (dkt. no. 499); Motion for Reconsideration of Opinion and Order Dated May 23, 2014 (dkt. no. 502); Motion for Summary Judgment (dkt. no. 505); Motion for Reconsideration of This Court's Order of June 15, 2015 Dismissing the Motion to Dismiss the Indictment Pursuant to Rule 12(b)(3)(B) (dkt. no. 541); Motion to Vacate Conviction and Order a New Trial (dkt. no. 545); Renewed Motion for Summary Judgment to Vacate Conviction Pursuant to 28 U.S.C. § 2255 (dkt. no. 555); Renewed Motion for Reconsideration of Forfeiture Order and Denial of Rule 29 Motion for Judgment of Acquittal (dkt. no. 556); Renewed Motion for Summary Judgment to Vacate Conviction Pursuant to 28 U.S.C. § 2255 (dkt. no. 557); Renewed Motion to Dismiss Indictment Based on Violations of the Due Process and Speedy Trial Clause (dkt. nos. 559 & 560); Motion to Vacate Conviction and Dismiss Indictment for Violations of Brady, Jencks, Bagley, Giglio, and Napue, and Knowing Use of Perjury and False Evidence (dkt. no. 561); Emergency Petition for a Writ of Coram Nobis (dkt. no. 562); and Motion for Early Termination of Supervised Release Pursuant to 18 U.S.C. § 3583 (dkt. no. 564) are all DENIED.

Because the defendant has not "made a substantial showing of the denial of a constitutional right," see 28 U.S.C. § 2253(c)(2), no certificate of appealability shall issue.

Finally, because the defendant's Section 2255 motion has been denied, his Second Motion for Bail Pending Decision of Section 2255 Petition to Vacate Conviction (dkt. no. 540), Emergency Third Motion for Bail Pending Decision of Section 2255 Petition to Vacate (dkt. no. 544), and Emergency Motion for Immediate Release Pending Further Proceedings in this Court (dkt. no. 548) are MOOT.

It is SO ORDERED.

/s/ George A. O'Toole, Jr.
United States District Judge