No.

## UNITED STATES COURT OF APPEALS
## FOR THE FIRST CIRCUIT

———————————

**DANIEL E. CARPENTER,**
**Petitioner-Appellant**

v.

**UNITED STATES,**
**Respondent-Appellee**

———————————

**On Appeal from an Opinion and Order of the**
**United States District Court for the District of Massachusetts**

———————————

## BRIEF OF PETITIONER-APPELLANT DANIEL E. CARPENTER

———————————

## Table of Contents

TABLE OF AUTHORITIES.................................................................................3

STATEMENT REGARDING SUBJECT MATTER AND APPELLATE
JURISDICTION................................................................................................6

STATEMENT OF ISSUES PRESENTED .........................................................7

ARGUMENT .....................................................................................................8

I.   THERE WERE NO PROCEEDS HERE PURSUANT TO §981(A)(2)(B)
AS A MATTER OF LAW ................................................................................8

II. THE DISTRICT COURT VIOLATED SEVERAL PROVISIONS OF
RULE 32.2 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE....12

III. FORFEITURES IN THIS CASE ARE BARRED BY THE STATUTE OF
LIMITATIONS PROVISON IN 28 U.S.C. §2462................................................15

IV. FORFEITURES IN A JURY TRIAL MUST BE DETERMINED BY THE
JURY.................................................................................................................18

V.   THE FORFEITURE ORDER WAS CLEARLY A VIOLATION OF THE
DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT ..............24

VI. FORFEITURES IN THIS CASE ARE ALSO BARRED BY THE *EX POST
FACTO* CLAUSE.............................................................................................29

CONCLUSION ..................................................................................................34

## Table of Authorities

**Cases**

*Alleyne v. United States*, 133 S.Ct. 2151 (2013) ........................................................ 23

*Apprendi v. New Jersey*, 530 U. S. 466 ............................................................. passim

*Bouie v. City of Columbia*, 378 U.S. 347, 350-51 (1964) ............................................ 32

*Burgess v. Salmon*, 97 U.S. 381, 384 (1878) ............................................................. 31

*Calder v. Bull*, 3 U.S. 386 (1798) ............................................................................. 29

*Casillas v. Scully*, 769 F.2d 60, 65 (2d Cir. 1985) ..................................................... 34

*Cunningham v. California*, 549 U. S. 270, 281 (2007) ................................................. 19

*De Veau v. Braisted*, 363 U.S. 144, 160 (1960) .......................................................... 30

*Dept. of Revenue of Mont. v. Kurth Ranch*, 511 U.S. 767 (1994) ............................... 26

*Evans v. Gerry*, 647 F. 3d 30 (1st Cir. 2011) ............................................................. 29

*Frank v. United States*, 395 U.S. 147, 151 (1969) ...................................................... 21

*Gabelli v. SEC*, 568 U.S. 442 (2014) ................................................................. 15, 16

*Gonzales Fuentes v. Molina*, 607 F.3d 864, 876 (1st Cir. 2010) .................................. 30

*Hudson v. United States*, 522 U.S. 93 (1997) ............................................................ 26

*Johnson v. United States*, 529 U.S. 694, 699, (2000) ............................................ 30, 31

*Kansas v. Hendricks*, 521 U.S. 346, 361 (1997) ........................................................ 30

*Karpa v. Commissioner*, 909 F.2d 784 (1990) ........................................................... 31

*Kokesh v. S.E.C.*, 137 S.Ct. 1635 (2017) .................................................................. 15

*Lanzetta v. New Jersey*, 306 U.S. 451, 453 (1939) ..................................................... 33

*Libretti v. United States*, 516 U.S. 29 (1995) ............................................................ 23

*Liparota v. United States*, 471 U.S. 419, 427 (1985) .................................................. 32

*Mine Workers v. Bagwell*, 512 U.S. 821, 838, n. 5 (1994) ......................................... 21

*Molina-Martinez v. United States*, 136 S.Ct. 1338 (2016) .......................................... 14

*North Carolina v. Pearce*, 395 U.S. 711, 717 (1969). ................................................ 24

*Oregon v. Ice*, 555 U.S. 160, 163 (2009) ................................................................ 19

*Rosales-Mireles v. United States,* 138 S.Ct. 1897 (2018) ................................... 14

*United States v. Pease*, 331 F.3d 809, 814-15 (11th Cir. 2003) ......................... 13

*Simmons v. Galvin*, 575 F.3d 24, 43, 57 (1st Cir. 2009) ..................................... 30

*Skilling v. United States*, 561 U.S. 358 (2010) ............................................. 10, 11

*Smith v. Doe,* 538 U.S. 84, 92 (2003) .................................................................. 30

*Southern Union v. United States*, 132 S.Ct. 2344 (2012) .............. 18, 19, 20, 22

*United States v. Carpenter*, 941 F.3d 1 (1st Cir. 2019) ......................................... 8

*United States v. Carpenter*, No. 14-1641 (1st Cir. 2019) ..................................... 14

*United States v. Cox*, 851 F.3d 113, 128 n.14 (1st Cir. 2017) ............................ 13

*United States v. Gradwell*, 243 U.S. 476, 485 (1917) ......................................... 32

*United States v. Halper*, 490 U.S. 435 (1989) ......................................... 25, 27, 28

*United States v. Harriss,* 347 U.S. 612, 617 (1954) ........................................... 33

*United States v. LaGrou Distribution Sys., Inc.,* 466 F.3d 585 (7th Cir. 2006) ...... 20

*United States v. Lanier*, 520 U.S. 259, 260-61 (1987) ........................................ 32

*United States v. Lata,* 415 F.3d 107, 110 (1st Cir.2005) ..................................... 30

*United States v. Nicolo*, 597 F. Supp.2d 342, 343 (W.D.N.Y. 2009) ..................... 9

*United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 362 (1984) ......... 31

*United States v. Petix*, 767 Fed.Appx. 119, 121 (2d Cir. 2019) ........................... 14

*United States v. Petrie*, 302 F.3d 1280, 1284-85 (11th Cir. 2002) ...................... 13

*United States v. Pfaff,* 619 F.3d 172 (2d Cir. 2010) ............................................ 20

*United States v. Plaza Health*, 3 F.3d 643, 649 (2d Cir. 1993) ........................... 32

*United States v. Rosengarten,* 857 F.2d 76 (2d Cir. 1988) .................................. 34

*United States v. Soccoccia*, 58 F.3d 754, 785 (1st Cir. 1995) .............................. 22

*United States v. Ward*, 448 U.S. 242 (1980) ....................................................... 26

*United States v. Yeje-Cabrera*, 430 F.3d 1 (1st Cir. 2005) ................................. 13

*Wilson v. Garcia*, 471 U.S. 261, 271 (1985)................................................................ 16

**Other Authorities**

Civil Asset Forfeiture Reform Act of 2000 (CAFRA)........................................ 9, 17

Fifth Amendment................................................................................................ passim

**Rules**

§2461(c).................................................................................................. 13, 15, 17

Fed. R. Crim. P. 7(c)(2)............................................................................................ 23

Rule 32............................................................................................................. passim

**Treatises**

Annals of Cong. 434 (1789-1791)........................................................................... 25

Body of Liberties...................................................................................................... 24

**Regulations**

§1031 ................................................................................................................... 9, 17

§2462 ......................................................................................................................... 13

18 U.S.C. §981 .................................................................................................. passim

§981(a)(2)(B)............................................................................................ 7, 8, 10, 12

18 U.S.C. §287 .......................................................................................................... 26

18 U.S.C. §3572(a)(2) ............................................................................................... 21

21 U.S.C. §853(p)...................................................................................................... 10

28 U.S.C. §1291 .......................................................................................................... 7

28 U.S.C. §2461(c)...................................................................................................... 9

28 U.S.C. §2462 ........................................................................................................ 15

31 U.S.C. §§3729-3731 ............................................................................................. 27

## STATEMENT REGARDING SUBJECT MATTER
## AND APPELLATE JURISDICTION

This appeal arises from the denial by the district court of Appellant Carpenter's Motion for Reconsideration of the Forfeiture Order issued on February 20, 2019. See Dkt. No. 572. The district court denied the Motion for Reconsideration of the Forfeiture Order (see Dkt. No. 477) on February 20, 2019. See Dkt. No. 572. Appellant Carpenter filed a timely notice of appeal on February 28, 2019. See Dkt. No. 573. This appeal raises several different issues from the original appeal of the district court's Forfeiture Order in this case, see Dkt. No. 471, and those issues were raised separately on appeal. Appellant Carpenter contends the Order of Forfeitures in this case not only violates the black-letter law of this Court, but the Constitution and clear precedent of the Supreme Court as well. This Court has jurisdiction under 28 U.S.C. §1291.

## STATEMENT OF ISSUES PRESENTED

1.     The Judgement and Commitment Order in this case stated that only the proceeds, "if any" in this case were to be forfeited. There was to be a hearing to determine the amount of forfeitures in this case, but no such hearing was ever held. Moreover, there were no proceeds to be forfeited pursuant to §981(a)(2)(B). Therefore, it was plain error for the district court to order a forfeiture of any amount, let alone $14 million.

2.     The district court violated several provisions of Rule 32.2 of the Federal Rules of Criminal Procedure.

3.     Forfeitures in this case are barred by the Statute of Limitations provision contained in 28 U.S.C. §2462.

4.     Forfeitures in a jury trial must be determined by the jury.

5.     The Forfeiture Order was clearly a violation of the Double Jeopardy Clause of the Fifth Amendment.

6.     Forfeitures in this case are also barred by the *Ex Post Facto* Clause.

## ARGUMENT

### I.   THERE WERE NO PROCEEDS HERE PURSUANT TO §981(A)(2)(B) AS A MATTER OF LAW

The district court at sentencing in February 2014 and at the end of its Judgment & Commitment Order stated that "proceeds....if any" would be forfeited. That is clearly erroneous for a number of reasons as well as being procedurally unconstitutional. Pursuant to §981(a)(2)(B), which this Court has agreed is the correct standard, *see United States v. Carpenter*, 941 F.3d 1 (1st Cir. 2019) there are no "profits" here and thus no "proceeds" as a matter of law to be forfeited, so the Forfeiture Order in this case should be vacated. The funds were lost in the Stock Market Crash of 2000, and since Mr. Carpenter's indictment in 2004 and two trials in 2005 and 2008, the Exchangors have been paid back almost $50 million on their $8 million loss through Mr. Carpenter's legal victories over PaineWebber and Merrill Lynch.

While the rules and regulations regarding civil forfeitures in the context of criminal cases have been called "labyrinthine" (*see, e.g., United States v. Nicolo*, 597 F. Supp.2d 342, 343 (W.D.N.Y. 2009)), they led to the district court imposing a more than $14,000,000 forfeiture on a defendant who took no profit from his company's investments, even when they had generated significant profits, and who was shown to have deposited more than $2,000,000 from his own funds, rather than the

Exchangors §1031 funds, to save his clients from any losses. Under these circumstances, where the diminishing of proceeds was due to an unforeseeable stock market collapse and the paralysis of our government due to the contested 2000 election an event not seen in well over a century and where Mr. Carpenter did not reduce his company's available assets by taking bonuses or engaging in extravagant expenses, where his "crime" (and, on appeal, he strongly contests the basis for his conviction) was more about what he did not say rather than what he did say or do to the Exchangors, who he in fact never met, the $14 million forfeiture in this case lacks any of the principled bases for forfeiture which are largely premised on taking "gains" from a wrongdoer.

If not for the passage of the Civil Asset Forfeiture Reform Act of 2000 (CAFRA), Pub. L. No. 106-185, §16, 28 U.S.C. §2461(c) in April, 2000, to be effective after September, 2000, 18 U.S.C. §981 would only authorize civil forfeitures, and the government would have no case here. There is no separation of funds collected by BPETCO before the effective date of September 25, 2000, and funds collected after that date. Not all of the defendant's property is subject to forfeiture upon conviction, but instead only property that was "used in" or is recognized as "proceeds from" the "crime" is subject to forfeitures. Forfeiture may extend to "substitute" property only after the government shows that the forfeitable assets are unavailable due to the defendant's actions. 21 U.S.C. §853(p).

Since both this Court and the district court have concluded that §981(a)(2)(B) is the applicable section for determining the amount to be forfeited, it is beyond peradventure that there were no profits in this case except for the $50 million that the Exchangors received from Mr. Carpenter's legal victories over PaineWebber and Merrill Lynch. The Exchangors had $14 million returned to them before Mr. Carpenter's second trial in 2008, so there are no profits here for Mr. Carpenter to surrender as only BPETCO has lost money. In fact, had Mr. Carpenter's option trading proved successful, there would have been no civil litigation and certainly no reason for criminal prosecution because he never spoke to or wrote to any of the Exchangors, so it is impossible that he misrepresented anything to anyone. But, assuming arguendo that there were "nondisclosures" here, the Supreme Court's unanimous opinion in *Skilling v. United States*, 561 U.S. 358 (2010) discussing the "mirror image of fraud", clearly states that fraud by "nondisclosure" is "outside the bounds" of the fraud statutes. *Skilling* at 401.

Mr. Carpenter, through BPETCO, returned far more than the $14 Million than the Government claims Mr. Carpenter acquired. See Defense Exs. 258 and 259 that were submitted with the Motion dated June 3, 2014, Dkt. No. 477. These documents show that BPETCO and Carpenter paid out more than $19 million to various Exchangors in 2000 as well as an additional $7.6 million through 2001. BPETCO also wired more than $3.3 million to Iantosca from PaineWebber through a disputed

and forged wire in January, and Carpenter paid out more than $2.4 million from a BPETCO account set up at First Union after PaineWebber swept the BPETCO accounts in early January.  Thus, if one adds up the funds paid to the Exchangors before the second trial began, you have the following amounts to reduce the amount of forfeitures:

### TOTAL PAYMENTS TO BPETCO CLIENTS

| | |
|---|---|
| DEF EX. 258 - 2000 | $19,435,748.51 |
| DEF EX. 259 - 2001 | $7,695,641.95 |
| **Subtotal** | **$27,131,390.46** |
| JAN. WIRE  FROM PW TO IANTOSCA | $3,300,000.00 |
| PROCEEDS FROM FIRST UNION | $2,400,000.00 |
| **Subtotal** | **$5,700,000.00** |
| **TOTAL PAYMENTS** | **$32,831,390.46** |

Therefore pursuant to the calculation for "net proceeds" under §981(a)(2)(B) there are no proceeds here to be forfeited as a matter of law.

## II.   THE DISTRICT COURT VIOLATED SEVERAL PROVISIONS OF RULE 32.2 OF THE FEDERAL RULES OF CRIMINAL PROCEDURE

Mr. Carpenter respectfully asks this Court to review the bold print in Fed.R.Crim.P. 32.2(a) "NOTICE TO THE DEFENDANT." Even a cursory review of Dkt. No. 155 will show the Court that the Forfeiture Claim was stricken from Mr. Carpenter's Indictment **fifteen years ago** in July of 2005. The government cannot magically put back provisions in the Indictment that were taken out. This not only violates Mr. Carpenter's rights to Due Process, this is clearly a violation of the statute of limitations and the Double Jeopardy Clause.

Fed.R.Crim.P. 32.2(b)(1) puts the burden on the government to establish the "requisite nexus" which subjects to "civil" forfeiture the proceeds, meaning the "profits" of a crime or property derived in the commission of the crime does not mean that *any* of the proceeds are subject to forfeiture as being the profits of criminal activity or being derived from some criminal activity. The government has not met its burden as to any of the $14 million. In the same vein, Mr. Carpenter would also like to respectfully suggest that the rules of Fed.R.Crim.P. 32.2(b)(5) were not followed: "In any case tried before a jury...the court **must** determine before the jury begins deliberating whether **either** party requests that the jury be retained to determine the forfeitability of specific property if it returns a guilty verdict." In cases like this one, the provisions of §981 are made applicable by §2461(c). *See United*

States v. *Cox*, 851 F.3d 113, 128 n.14 (1st Cir. 2017).   But, the amendment of

§2461(c) did not happen until March of 2006, long after the Statute of Limitations

had run out pursuant to §2462, and the forfeiture allegations in the indictment had

been deleted in July 2005.

Furthermore, in *United States v. Yeje-Cabrera*, 430 F.3d 1 (1st Cir. 2005), this

Court stated that Rule 32.2(b)(3) requires that "the order of forfeiture becomes final

as to the defendant and *must* be made a part of the sentence and *be included in the*

*judgment." Id.* at 13 (emphasis in original).   This Court went on to say:

> The oral sentencing does not trump Rule 32.2(b)(3). *See United States v.*
> *Pease*, 331 F.3d 809, 814-15 (11th Cir. 2003) (forfeiture, to be valid, must be
> included in the judgment); *United States v. Petrie*, 302 F.3d 1280, 1284-85
> (11th Cir. 2002) (where forfeiture was not mentioned at sentencing and only
> vaguely mentioned in judgment, district court lacked jurisdiction to enter
> preliminary forfeiture order six months after sentencing). *Id.* at 14.

Keeping in line with this thinking, the Second Circuit has recently ruled in *United*

*States v. Petix*, 767 Fed.Appx. 119, 121 (2d Cir. 2019) that:

> The district court violated these principles by failing to "include the
> [monetary] forfeiture when orally announcing the sentence." Fed.R.Crim.P.
> 32.2(b)(4)(B).   The court's inclusion of monetary forfeiture in its final
> forfeiture order and amended written judgment does not excuse failure to
> announce monetary forfeiture as part of its forfeiture judgment at sentencing.
> The Rules treat oral notice and a written judgment as independent
> requirements. *See id.* ("The court must *also* include the forfeiture order,
> directly or by reference, in the judgment ...." (emphasis added)). It would read
> the notice requirement out of Rule 32.2 to allow a written final order filed
> after sentencing to substitute for notice at the sentencing hearing itself.

In this case, the district court plainly erred by not setting a specific amount of forfeitures at Mr. Carpenter's sentencing in February 2014, and then plainly erred again by using the purposefully vague and ambiguous terms "proceeds if any" in the Judgment and Commitment Order. (Dkt. No. 499). Both of these errors are fatal to the Forfeiture Order in this case, and require it to be vacated. *See Rosales-Mireles v. United States,* 138 S.Ct. 1897 (2018), *citing Molina-Martinez v. United States*, 136 S.Ct. 1338 (2016). *See United States v. Carpenter*, No. 14-1641 (1st Cir. 2019).

### III.   FORFEITURES IN THIS CASE ARE BARRED BY THE STATUTE OF LIMITATIONS PROVISON IN 28 U.S.C. §2462

The Supreme Court's decisions in *Gabelli v. SEC,* 568 U.S. 442 (2014) and *Kokesh v. S.E.C.,* 137 S.Ct. 1635 (2017) are dispositive of this case because the forfeiture paragraph was taken out of the Indictment in July 2005 before it was shown to the Jury after the first trial, see Dkt. 155, and was not mentioned again until after Mr. Carpenter's sentencing in February 2014, which was a clear violation of §2462 and §2461(c). In *Kokesh*, Justice Sotomayor wrote for a unanimous Supreme Court, where it was determined that §2462 established a 5-year limitations period for "an action, suit or proceeding for the enforcement of any civil fine, penalty, or forfeiture". *See Kokesh* at 1638, *quoting Gabelli* at 454. Chief Justice Roberts further explained that "the Statute of Limitations, the five year clock for 28 U.S.C. §2462, begins to tick when a defendant's allegedly fraudulent conduct occurs." *Gabelli* at 448.

Since Mr. Carpenter's allegedly fraudulent conduct was between 1998 and 2000, and the government did not resurrect the forfeiture issue until after Mr. Carpenter's sentencing in February of 2014, the Supreme Court's decisions in *Gabelli* and *Kokesh* are dispositive of this case. Chief Justice Roberts went on to say in *Gabelli*: "Statutes of limitations se[t] a fixed date when exposure to the specified Government enforcement efforts en[d]." Such limits are "vital to the welfare of

15

society" and rest on the principle that "even wrongdoers are entitled to assume that their sins may be forgotten." *Gabelli* at 448-49, *citing Wilson v. Garcia*, 471 U.S. 261, 271 (1985). The only reason Mr. Carpenter finds himself facing $14 million in forfeitures in 2020 from alleged criminal conduct 20 years ago is because of changes in the law of forfeitures in August of 2000 and March of 2006. Had these changes in the law not occurred; Mr. Carpenter would not be facing these large and certainly circumspect forfeitures.

Clearly, if Mr. Carpenter had "fair warning" that he faced forfeitures of this magnitude just from losing money in the stock market, there is no question that Mr. Carpenter would never have involved himself in the BPETCO debacle. Moreover, the government has never answered the simple question as to what could have Mr. Carpenter invested in, lost all of the investor funds, as did LandAmerica lose $400 million of qualified §1031 exchange funds, and not have been indicted. See discussion on due process and lack of fair warning below. Therefore, Mr. Carpenter is in this predicament not because of his actions or omissions, but rather in the changes in penalties under the law, most notably the Civil Asset Reform Act of 2000, in August of 2000 and subsequent changes to 28 U.S.C. §2461(c) in March of 2006.

In Mr. Carpenter's case, there can be no question that this is a "criminal" penalty that triggers the protection of the *Ex Post Facto* Clause because the amendment of the civil forfeiture statutes under CAFRA and 18 U.S.C. §981 were

effective for forfeiture proceedings only after August 23, 2000.  But, the crucial amendment to 28 U.S.C. §2461(c) was not made until March of 2006. The required Forfeiture Allegation that was meant to be in the indictment was deleted in July 2005 after Mr. Carpenter's first trial.  See Dkt. No. 155 for the Indictment shown to the jury in July 2005 at the conclusion of Mr. Carpenter's first trial.  As it is clear that Mr. Carpenter is erroneously being held accountable for alleged omissions in the BPETCO documents that were developed by Martin Paley long before Mr. Carpenter became involved with the property exchange business in September of 1998, this is Plain Error. The district court hit Mr. Carpenter with forfeitures of this magnitude just because the law of forfeitures was evolving during the government's investigation, indictment and prosecution of his case, and the district court judge forgot that the forfeiture allegations had been deleted at the end of the first trial before the indictment was handed to the jury. Forfeitures were nowhere mentioned following the guilty verdict in Mr. Carpenter's Second Trial in 2008, which was vacated in 2011. This is exactly the opposite of what is meant to happen in a jury trial involving forfeitures. Moreover, the district court erred in not having the promised hearing to calculate the exact amount of forfeitures under §982. Therefore, this Court should vacate the Forfeiture Order in this case.

## IV.   FORFEITURES IN A JURY TRIAL MUST BE DETERMINED BY THE JURY

As the Supreme Court said in *Southern Union v. United States*, 132 S.Ct. 2344 (2012), Southern Union is an "exemplary" case, and the Court reversed and overturned a large criminal fine affirmed by this Court. Because of the Supreme Court's ruling in *Southern Union*, the imposition of a $14 million forfeiture in this case would not only violate the Excessive Fines Clause of the Eighth Amendment and the Double Jeopardy Clause of the Fifth Amendment, it would also violate Mr. Carpenter's Sixth Amendment right to have a jury decide the issues concerning a criminal forfeiture of this magnitude under *Apprendi v. New Jersey*, 530 U. S. 466, which holds that the Sixth Amendment's jury-trial guarantee requires that any fact that increases the maximum punishment authorized for a particular crime be proved to a jury beyond a reasonable doubt.   As the Supreme Court decided in *Southern Union*:

> This case requires us to consider the scope of the Sixth Amendment right of jury trial, as construed in *Apprendi*. Under *Apprendi*, "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi* at 490. The "statutory maximum for *Apprendi* purposes is the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely* at 303. Thus, while judges may exercise discretion in sentencing, they may not "inflic[t] punishment that the jury's verdict alone does not allow." *Blakely* at 304.

*Apprendi's* rule is "rooted in longstanding common-law practice." *Cunningham v. California*, 549 U. S. 270, 281 (2007). It preserves the "historic jury function" of "determining whether the prosecution has proved each element of an offense beyond a reasonable doubt." *Oregon v. Ice*, 555 U.S. 160, 163 (2009).

"In stating *Apprendi's* rule, we have never distinguished one form of punishment from another. Instead, our decisions broadly prohibit judicial factfinding that increases maximum criminal "sentence[s]," "penalties," or "punishment[s]"—terms that each undeniably embrace fines [and forfeitures]. *Blakely* at 304; *Apprendi* at 490; *Ring* at 589." *Southern Union* at 2350-51.

A jury convicted Southern Union following a trial in the District Court for the District of Rhode Island. Unlike in this case, the verdict form for forfeitures submitted to the jury stated that Southern Union was guilty of unlawfully storing liquid mercury on or about September 19, 2002 to October 19, 2004. Significantly, there was no jury verdict form for forfeitures even mentioned in this case as there was in *Southern Union*, and at no time did Mr. Carpenter's jury determine the amount of forfeitures as required by law. The government in *Southern Union* acknowledged the jury was not asked to specify the duration of the violation, but argued that *Apprendi* does not apply to criminal fines. The district court disagreed and held that *Apprendi* applies. But the court concluded from the content and context of the verdict all together that the jury found a 762-day violation. The court therefore set a maximum potential fine of $38.1 million, from which it imposed a fine of $6 million and a community service obligation of $12 million. On appeal, this Court rejected the district court's conclusion that the jury necessarily found a violation of

762 days. But this Court affirmed the sentence because it also held, again in contrast to the district court, that *Apprendi* does not apply to criminal fines. Other circuits have reached the opposite conclusion. *See, e.g., United States v. Pfaff,* 619 F.3d 172 (2d Cir. 2010) *(per curiam); United States v. LaGrou Distribution Sys., Inc.,* 466 F.3d 585 (7th Cir. 2006). The Supreme Court granted certiorari to resolve the conflict, and reversed.

As the Supreme Court explained, *Apprendi*'s "core concern" is to reserve to the jury "the determination of facts that warrant punishment for a specific statutory offense." *Ice* at 170. That concern applies whether the sentence is a criminal fine or imprisonment or death. Criminal fines, like these other forms of punishment, are penalties inflicted by the sovereign for the commission of offenses. Fines were by far the most common form of noncapital punishment in Colonial America. Fines are frequently imposed today, especially upon corporate defendants who cannot be imprisoned. And the amount of a fine, like the maximum term of imprisonment or eligibility for the death penalty, is often calculated by reference to particular facts. In all such cases, requiring juries to find beyond a reasonable doubt facts that determine the fine's maximum amount is necessary to implement *Apprendi*'s "animating principle": the "preservation of the jury's historic role as a bulwark between the State and the accused at the trial for an alleged offense." *Ice* at 168. In stating *Apprendi*'s rule, the Supreme Court has never distinguished one form of

punishment from another. Instead, the Court's decisions broadly prohibit judicial factfinding that increases maximum criminal "sentence[s]," "penalties," or "punishment[s]" -terms that each undeniably embrace fines. *e.g., Blakely* at 304; *Apprendi* at 490; *Ring* at 589.

But not all fines are insubstantial, and not all offenses punishable by forfeitures are petty. See, *e.g., Mine Workers v. Bagwell,* 512 U.S. 821, 838, n. 5 (1994) (criminal contempt fine of $52 million imposed on union "unquestionably is a serious contempt sanction" that triggers right of jury trial). And, where, as here, **the defendant is an individual,** a large fine or forfeiture may "engender 'a significant infringement of personal freedom.'" *Blanton* at 542 (quoting *Frank v. United States,* 395 U.S. 147, 151 (1969)); see also 18 U.S.C. §3572(a)(2) (requiring court to consider "the burden that the fine will impose upon the defendant" in determining whether to impose a fine and in what amount).

The government thus asked the wrong question in *Southern Union* by comparing the severity of criminal fines to that of other punishments. So far as *Apprendi* is concerned, as is with Mr. Carpenter's case here, the relevant question is the significance of the forfeiture from the perspective of the Sixth Amendment's jury trial guarantee. Where a fine, forfeiture or penalty is substantial enough to trigger that right, *Apprendi* applies in full. As the Supreme Court said in *Cunningham,* "Asking whether a defendant's basic jury-trial right is preserved, though some facts

21

essential to punishment are reserved for determination by the judge,...is the *very* inquiry *Apprendi*'s `bright-line rule' was designed to exclude." *Id.* at 291. Moreover, the fine in *Southern Union* was submitted to the jury in a special verdict form as required by Rule 32.2, which is the way that it is meant to be done in a jury trial. See, e.g., this Court's statement in *United States v. Soccoccia*, 58 F.3d 754, 785 (1st Cir. 1995):

> Rule [32.2] requires that a special verdict be returned when the indictment or information contains a forfeiture allegation. But, Rule [32.2] makes it transpicuously clear that this requirement is geared to jury trials. *See* Fed.R.Crim.P. [32.2] (stating that the verdict "shall be returned by the jury to the judge in open court").

Finally, Mr. Carpenter wishes to respectfully point out that the Court is mistaken in ignoring the binding Supreme Court precedents of *Southern Union* and *Alleyne v. United States*, 133 S.Ct. 2151 (2013) based on an incorrect reading of *Libretti v. United States*, 516 U.S. 29 (1995). In *Libretti*, there is a fundamental difference that the Court is either overlooking or misapprehending: Libretti pled guilty to all charges, including the forfeiture of certain property, and it is only on appeal that Libretti had second thoughts about not testifying during the forfeiture portion of the trial. As Justice Souter commented in his concurrence in *Libretti*:

> If, in speaking to the defendant or in other statements within his hearing, the court should affirmatively say or suggest that the right to jury trial **would not extend** to the forfeiture, that would be error under the current law, whatever the constitutional status of that right may be. *Id.* at 52 (emphasis added).

Justice Souter then references Justice Ginsburg's concurrence, which makes the following conclusive points to show the error of the Court's analysis of *Libretti*:

> The court did not then refer to the unusual jury-trial right on criminal forfeiture provided by Rule [32.2] of the Federal Rules of Criminal Procedure:
>
> > "If the indictment or the information alleges that an interest or property is subject to criminal forfeiture, a special verdict shall be returned as to the extent of the interest or property subject to forfeiture, if any." *Id.* at 53.

Justice Ginsburg in *Libretti* went on to also mention Fed. R. Crim. P. 7(c)(2): "No judgment of forfeiture may be entered in a criminal proceeding unless the indictment shall allege the extent of the interest or property subject to forfeiture." *Id.* Suffice it to say, *Libretti* stands for waiving your rights to a trial by jury for forfeitures when you plead guilty to a crime and all that entails. Mr. Carpenter has never pled guilty, nor has he waived any of this constitutional rights and protections. Significantly, the trial judge in *Libretti* explained to the jurors during *voir dire* that they may be needed to conduct a second hearing concerning a special verdict form for "forfeitures" following the main trial. But, in Mr. Carpenter's case, the word "forfeitures" is nowhere to be found in the district court's instructions before the second trial or after the second trial's guilty verdict, as it was already stricken from the indictment at the end of the first trial. Therefore, because the district court committed plain error in never presenting the forfeiture issue to the jury, the Forfeiture Order in this case should be vacated.

## V.   THE FORFEITURE ORDER WAS CLEARLY A VIOLATION OF THE DOUBLE JEOPARDY CLAUSE OF THE FIFTH AMENDMENT

The Supreme Court has held many times that the Double Jeopardy Clause protects against three distinct abuses: a second prosecution for the same offense after acquittal; a second prosecution for the same offense after conviction; **and multiple punishments for the same offense.** *See, e.g., North Carolina v. Pearce,* 395 U.S. 711, 717 (1969). The third of these protections – multiple punishments for the same offense - has deep roots in our history and jurisprudence. As early as 1641, the Colony of Massachusetts in its "Body of Liberties" stated: "No man shall be twise sentenced by Civill Justice for one and the same Crime, offence, or Trespasse." American Historical Documents 1000-1904, 43 Harvard Classics 66, 72 (C. Eliot ed. 1910).   In drafting his initial version of what came to be our Double Jeopardy Clause, James Madison focused explicitly on the issue of multiple punishment: "No person shall be subject, except in cases of impeachment, to more than one punishment or one trial for the same offence." 1 Annals of Cong. 434 (1789-1791) (J. Gales ed. 1834). In the Supreme Court's case law, over a century ago, the Court observed: "If there is anything settled in the jurisprudence of England and America, it is that no man can be twice lawfully punished for the same offence." *Ex parte Lange,* 18 Wall. 163, 168 (1874).

The multiple-punishment issue in *United States v. Halper*, 490 U.S. 435 (1989) is directly applicable to the situation in this case. The government did not dispute in *Halper* that Mr. Halper already had been punished as a result of his prior criminal proceeding when he was sentenced to a jail term and fined $5,000. Nor did the government dispute that Mr. Halper's civil fine proceeding, and the prior criminal proceeding concerned the same conduct, the submission of 65 false medical claims. The sole question the Supreme Court addressed was whether the statutory penalty authorized by the "civil" False Claims Act, under which Mr. Halper was subject to liability of $130,000 for false claims amounting to a mere $585, constituted a second "punishment" for the purpose of Double Jeopardy analysis.

Mr. Halper had submitted to Blue Cross and Blue Shield of Greater New York, a fiscal intermediary for Medicare, 65 separate false claims for reimbursement for services rendered. Specifically, on 65 occasions during 1982 and 1983, Halper mischaracterized the medical service performed by New City, demanding reimbursement at the rate of $12 per claim when the actual service rendered entitled New City to only $3 per claim. Duped by these misrepresentations, Blue Cross overpaid New City a total of $585; Blue Cross passed these overcharges along to the Federal Government. The government became aware of Halper's actions, and in April 1985 it indicted him on 65 counts of violating the criminal false-claims statute, 18 U.S.C. §287, which prohibits "mak[ing] or present[ing] ... any claim upon or

25

against the United States, or any department or agency thereof, knowing such claim

to be false, fictitious, or fraudulent." Halper was convicted on all 65 counts, as well

as on 16 counts of mail fraud. He was sentenced in July 1985 to imprisonment for

two years and fined $5,000, just as Mr. Carpenter in this case has been sentenced to

three years and fined $100,000.

Many people believe that *Hudson v. United States*, 522 U.S. 93 (1997)

overturned *Halper*, but *Hudson* merely returns the standard for criminal penalties as

it was in citing *United States v. Ward*, 448 U.S. 242 (1980) for the proposition that,

any time there are criminal penalties like the forfeitures in this case, then Double

Jeopardy is triggered. *See, e.g., Dept. of Revenue of Mont. v. Kurth Ranch*, 511 U.S.

767 (1994) (sanctions imposed in civil proceedings constitute "punishment" barred

by the Double Jeopardy Clause). In *Halper*, the Supreme Court determined that a

$2,000 "civil" fine (in addition to a sentence of 24 months and a statutory fine of

$5,000) was a "punishment" that would be prohibited by the "criminal" law

prohibition against Double Jeopardy.

The government, just as it has done here to Mr. Carpenter with a claim for a

monetary forfeiture, then brought a separate action against Halper under the civil

False Claims Act, 31 U.S.C. §§3729-3731. That Act is violated when "[a] person

not a member of an armed force of the United States ... (2) knowingly makes, uses,

or causes to be made or used, a false record or statement to get a false or fraudulent

claim paid or approved." §3729.   Based on facts established by Halper's criminal

conviction and incorporated in the civil suit, the District Court granted summary

judgment for the government on the issue of liability. The District Court then turned

its attention to the remedy for Halper's multiple violations. The remedial provision

of the Act stated that a person in violation is "liable to the United States Government

for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the

Government sustains because of the act of that person, and costs of the civil action."

31 U.S.C. §3729 (1982 ed., Supp. II). Having violated the Act 65 separate times,

Halper thus appeared to be subject to a statutory penalty of more than $130,000.

The court in *Halper* concluded, however, that in light of Halper's previous

criminal punishment, an additional penalty this "large" would violate the Double

Jeopardy Clause. Although the court recognized that the statutory provisions for a

civil sanction of $2,000 plus double damages for a claims violation was not in itself

criminal punishment, it concluded that this civil remedy, designed to make the

government whole, would constitute a second punishment for double jeopardy

analysis if, in application, the amount of the penalty was entirely unrelated to the

actual damages suffered and the expenses incurred by the government. In the court's

view, the authorized recovery of more than $130,000 bore no "rational relation" to

the sum of the government's $585 actual loss plus its costs in investigating and

prosecuting Halper's false claims. The court therefore ruled that imposition of the

full amount would violate the Double Jeopardy Clause by punishing Mr. Halper a second time for the same conduct. To avoid this constitutional proscription, the court in *Halper* read the $2,000-per-count statutory penalty as discretionary and, approximating the amount required to make the Government whole, imposed the full sanction for only 8 of the 65 counts. The court entered summary judgment for the government in the amount of $16,000.

The government in *Halper* appealed directly to the Supreme Court, which ruled that clearly this was a case of Double Jeopardy despite the fact that the additional claim was for only $16,000 in penalties (rather than the full $130,000 the government was seeking) on top of Mr. Halper's sentence of two years and $5,000 in fines.  If $16,000 in post-trial civil fines violated the Double Jeopardy Clause in *Halper*, there is no question that considering Mr. Carpenter's two trials all the way to verdict, a post-trial penalty of $14 million will clearly register as a violation of Mr. Carpenter's rights and protections under the Double Jeopardy Clause of the Fifth Amendment because he has already served his 36 month sentence in addition to a fine and other assessments. Therefore, this Court should vacate the Forfeiture Order in this case.

## VI.   FORFEITURES IN THIS CASE ARE ALSO BARRED BY THE *EX POST FACTO* CLAUSE

This Court has clearly indicated that the $14 million forfeiture in this case would certainly constitute a "criminal penalty" that would trigger the *Ex Post Facto* Clause as a bar to the Government's actions in this case.  In *Evans v. Gerry*, 647 F. 3d 30 (1st Cir. 2011), this Court uses the Supreme Court formulation in *Calder v. Bull*, 3 U.S. 386 (1798), describing the four categories of laws to which the *Ex Post Facto* Clause of the Constitution prohibits:

> "1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender." *Evans* at 32.

> "The Ex Post Facto Clause "bars application of a law 'that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed[.]' " *Johnson v. United States,* 529 U.S. 694, 699, (2000) (*quoting Calder v. Bull,* 3 U.S. 386, 390 (1798))." *Simmons v. Galvin*, 575 F.3d 24, 43, 57 (1st Cir. 2009).

> "This provision "forbids not only legislative creation of new criminal liability after the event but also a legislative increase in punishment after the event." *United States v. Lata*, 415 F.3d 107, 110 (1st Cir.2005)." *Gonzales Fuentes v. Molina*, 607 F.3d 864, 876 (1st Cir. 2010).

Assuming that the Government would argue that a $14 million forfeiture under 18 U.S.C. §981 would constitute a "civil" penalty rather than a "punitive" fine,

this Court provides a very thorough and precise test. This Court has established that the analysis of an *Ex Post Facto* Clause claim involves a two-part inquiry. The first asks whether the penalty is a civil, regulatory measure within the meaning of the case law, or whether it is punitive in nature:

> "[W]here unpleasant consequences are brought to bear upon an individual for prior conduct," the central question "is whether the legislative aim was to punish that individual for past activity, or whether the restriction of the individual comes about as a relevant incident to a regulation of a present situation." *De Veau v. Braisted,* 363 U.S. 144, 160 (1960) (holding that state statutory bans against employment of convicted felons in certain jobs did not impose punishment under Ex Post Facto Clause). Only a punitive measure can violate the Ex Post Facto Clause. *Smith v. Doe,* 538 U.S. 84, 92 (2003)." *Simmons* at 43.

> "The first part asks whether the challenged law has a civil, regulatory purpose, or whether it is intended to punish. *See Smith v. Doe,* 538 U.S. 84, 92 (2003) (*citing Kansas v. Hendricks,* 521 U.S. 346, 361 (1997)). If a court finds that the law was intended to be punitive, then it constitutes "punishment" for purposes of the Ex Post Facto Clause and would violate the clause if retroactively applied. *Id.* However, if the law conveys a non-punitive, regulatory purpose, the court moves to the second part of the test to ascertain whether the law is "so punitive either in purpose or effect as to negate [the state's] intention to deem it civil." *Id.* (quoting *United States v. Ward,* 448 U.S. 242, 248-49 (1980)). The ultimate question is "whether penalty is intended to be, or by its nature necessarily is, criminal and punitive, or civil and remedial." *United States v. One Assortment of 89 Firearms,* 465 U.S. 354, 362 (1984).

> "Under the second prong of the *Smith* analysis, even if a clear punitive intent is not discernable for the challenged law, it would nevertheless constitute a criminal punishment subject to the Ex Post Facto Clause if the measure's effect is so punitive as to negate any intent to deem it civil. *Hendricks* at 361, *citing Ward* at 248-49." *Id.* at 58, 61.

Under this Court's two-part analysis, there can be no question that the $14 million in forfeitures constitutes a "criminal" penalty that triggers an implication of the *Ex Post Facto* Clause. The Supreme Court has held numerous times that "fines" or "penalties" in the form of civil statutes might also trigger the Ex Post Facto Clause. *See, e.g., Karpa v. Commissioner*, 909 F.2d 784 (1990):

> "The Court has also warned, however, that the constitutional prohibition against Ex Post Facto legislation may not be avoided by giving civil form to criminal legislation. See *Burgess v. Salmon,* 97 U.S. 381, 384 (1878). In *Burgess,* the Court held that where federal legislation made it a criminal offense to distribute tobacco without a proper tax stamp, imposition of an additional tax on tobacco when the distributor had already paid the tax under the prior law would violate the Ex Post Facto clause. The Court reasoned that to impose criminal punishment retroactively, or, alternatively, a "penalty" in the form of the increased tax, where "the one was equally authorized with the other," would violate the Ex Post Facto clause. *Id.*" *Karpa*, at 787.

Thus, the *Ex Post Facto* Clause enshrines in the Constitution a basic presumption of our law, that is, legislation in the criminal law "is not to be applied retroactively." *See Johnson v. United States,* 529 U.S. 694, 701 (2000).

Based on the prohibition against *Ex Post Facto* judicial determinations and the need to provide "fair warning" as to what is criminal under the law before someone should be criminally prosecuted, the Rule of Lenity should be applied any time that the Court finds, as should be found in this case, that a defendant possibly lacked notice that his conduct was subject to criminal sanction. *See Liparota v. United States,* 471 U.S. 419, 427 (1985) (The rule of lenity "ensures that criminal

statutes will provide fair warning concerning conduct rendered illegal and strikes the appropriate balance between legislature, the prosecutor, and the court in defining criminal liability."); *Bouie v. City of Columbia*, 378 U.S. 347, 350-51 (1964) (Due Process requires that a criminal statute "give fair warning of the conduct that makes it a crime."). "[B]efore a man can be punished as a criminal under the Federal law his case must be 'plainly and unmistakably' within the provisions of some statute." *United States v. Plaza Health*, 3 F.3d 643, 649 (2d Cir. 1993), *quoting United States v. Gradwell*, 243 U.S. 476, 485 (1917).

The "Fair Warning" requirement mandates that "no man shall be held criminally responsible for **conduct which he could not reasonably understand to be proscribed**." *United States v. Lanier*, 520 U.S. 259, 260-61 (1987)(emphasis added). This principle is reflected in at least two tools of statutory construction. First, the "rule of lenity ensures fair warning by so resolving ambiguity in a criminal statute as to apply it only to conduct clearly covered." *Lanier* at 266.  Second, "due process bars courts from applying a novel construction of a criminal statute to conduct that neither the statute nor any prior judicial decision has fairly disclosed to be within its scope." *Id.* While the *Ex Post Facto* Clause is generally thought of as a limitation on the power of the legislature to create new laws, the principal on which the *Ex Post Facto* Clause is based is "the notion that persons have a right to fair warning of that conduct which will give rise to criminal penalties is fundamental to

32

our concept of Constitutional liberty." *See United States v. Harriss,* 347 U.S. 612, 617 (1954); *Lanzetta v. New Jersey,* 306 U.S. 451, 453 (1939). As such, the right of the Due Process Clause of the Fifth Amendment protects the individual from such judicial expansion of statutes and action that the legislature would be prohibited from doing under the *Ex Post Facto* Clause.

Similarly, in *Rabe,* the Supreme Court reversed a conviction under a state obscenity law because it rested on an unforeseeable judicial construction of the statute. The Supreme Court in reversing the conviction in *Marks,* discussed the judicial expansion in *Rabe,* and stressed that "reversal was mandated because affected citizens lacked fair notice that the statute would be thus applied." *See Marks* at 192. The Supreme Court's decisions in both *Rabe* and *Marks* show that Mr. Carpenter's prosecution violated the Constitution's prohibition against *Ex Post Facto* laws. The *Ex Post Facto* Clause prohibits any prosecution by the government for conduct that was innocent when performed, and it is based on the principal that "persons have a right to fair warning of that conduct which will give rise to criminal penalties." *See, e.g., United States v. Rosengarten,* 857 F.2d 76 (2d Cir. 1988). *See, also, Casillas v. Scully,* 769 F.2d 60, 65 (2d Cir. 1985), which reiterated the Supreme Court's conclusion in *Bouie.*

Therefore, this Court should vacate the Forfeiture Order in this case as it clearly violates the traditional protection provided by the *Ex Post Facto* clause.

## CONCLUSION

For all the foregoing reasons, the Forfeiture Order entered in this case should be vacated. At minimum, it should be reduced by the amount of the monies returned to the Exchangors, which is well over $30,000,000 and thereby eliminates any proceeds to be forfeited in this case.

Respectfully submitted,

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092