**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

DANIEL E. CARPENTER, )
         Petitioner )
v. ) Crim. No. 04-10029-GAO
)
UNITED STATES OF AMERICA, )
         Respondent )

## PETITION FOR AN EXPEDITED WRIT OF CORAM NOBIS FOR EXPUNGEMENT AND TO SET ASIDE PETITIONER'S CONVICTION

TO THE HONORABLE JUDGE GEORGE A. O'TOOLE, MAY IT PLEASE THE COURT:

NOW COMES THE PETITIONER, Daniel E. Carpenter, to ask this Court for an expedited ruling and to issue a Writ of Coram Nobis to vacate Petitioner's conviction, and to thereby correct several errors of the "most fundamental character," and to prevent further manifest injustices to the Petitioner from occurring. After completing his sentence of incarceration, Petitioner stands convicted of acts that were never criminal under the Federal Fraud Statutes as described by the Supreme Court in *Skilling*, 561 U.S. 358 (2010), *McDonnell v. United States*, 136 S.Ct. 2355 (2016), *Marinello v. United States*, 138 S.Ct. 1101 (2018), and most recently in *Kelly v. United States*, 140 S.Ct. 1565 (2020). Therefore, this Court never had jurisdiction and any judgment issued by this Court was void as a matter of law. *See United States v. Rosa-Ortiz*, 348 F.3d 33 (1st Cir. 2003), *citing United States v. Peter*, 310 F.3d 709 (11th Cir. 2002) and *United States v. Morgan*, 346 U.S. 502 (1954).

Additionally, Petitioner seeks expungement of his conviction pursuant to 18 U.S.C. §3231, and the return of the $60,000 that has been paid to the Government for restitution, forfeitures, and fines for a non-crime that he did not commit as a matter of law. This Court has subject matter jurisdiction over this proceeding under the All Writs Act, 28 U.S.C. §1651 and 18 U.S.C. §3231.

1

The error of Petitioner being convicted and punished for an act that the law does not make criminal is of the most "fundamental" nature. As the Supreme Court stated empathetically in *Bousley v. United States*, "a conviction and punishment...for an act that the law does not make criminal...results in a complete miscarriage of justice." 523 U.S. 614, 620-21 (1998).

## MEMORANDUM AND POINTS OF LAW IN SUPPORT OF PETITION FOR AN EXPEDITED WRIT OF CORAM NOBIS FOR EXPUNGEMENT AND TO SET ASIDE PETITIONER'S CONVICTION

1. It has been 10 years since this Court granted Petitioner's Second New Trial Order. Petitioner's last trial was in 2008, and the jury verdict in that case was thrown out by this Court's decision in September of 2011.

2. Both of Petitioner's most recent appeals were terminated by the First Circuit without notice to Petitioner.

3. Petitioner filed an application for a Writ of Audita Querela in February 2021, see Dkt. No. 597.

4. This Court denied Petitioner's Audita Querela on September 17, 2021, see Dkt. No. 604.

5. Clearly, the Government constructively amended the Indictment in this case from one of lying to clients, to one of "nondisclosure" and omissions, which was banned by the Supreme Court unanimously in *Skilling v. United States*, 561 U.S. 358 (2010), where the Court stated that so-called omissions and nondisclosures were "outside the bounds" of the fraud statutes, *id.* at 410, and for there to be fraud, "the victim's loss of money or property suppl[ied] the defendant's gain." *Id.* at 400. During Petitioner's second trial, the Government continually repeated questions concerning what Petitioner did not tell the Exchangors.

2

6. As the Court knows, Petitioner's attorneys at Greenberg Traurig abandoned him in 2010 in favor of defending a much more lucrative client – Merrill Lynch – which had since been taken over by Bank of America. This is *per se* Ineffective Assistance of Counsel.

7. Furthermore, the Government announced on September 29, 2011 that it would be appealing the Second New Trial Order in violation of the Double Jeopardy Clause in 28 U.S.C. §3731.

8. The First Circuit overturned the Second New Trial Order on November 28, 2013.

9. The only expeditious action taken in Petitioner's 20 year-long saga is that the First Circuit apologized for the three year delay between June 2008 and September 2011, and then ordered expeditious sentencing in February 2014. At no time was there any mention of the dramatic change in the law occasioned by the Supreme Court's decision in *Skilling*.

10. As Judge Kayatta summed up Petitioner's alleged crime for the First Circuit:

> "In a nutshell, [Carpenter] told clients he would hold their money in escrow accounts for which the client would pay a fixed fee and which would cautiously generate returns of either three or six percent; then (unbeknownst to his clients) he invested the money in high-risk, high-return stock options, hoping to generate excess returns to keep for himself. His option trading fared poorly, and he lost nine million dollars in client funds. At trial, he argued unsuccessfully that he never promised that the client funds would be safe, and that he did not intend to defraud his clients when he failed to disclose his real strategy of using their money to make risky investments to see if he could hit a home run for himself."
> *United States v. Carpenter*, 781 F.3d 599, 603 (1st Cir. 2015).

11. Despite all of the obvious errors in Judge Kayatta's "nutshell" description (e.g. Mr. Carpenter did not *tell* anyone anything in this case and there were extensive contractual agreements so all of the Exchangors were bound by a contract with a merger and integration clause), the immediate problem with Judge Kayatta's description of the scheme to defraud in Mr. Carpenter's case is that it fails to describe a crime anywhere in the United States after the Supreme Court's unanimous decision in *Skilling v. United States*, 561 U.S. 358

(2010). For example, *Skilling* points to the fact that the nondisclosure of terms of the contract is outside the bounds of fraud. *Skilling* at 410. Additionally, *Skilling* describes the classic "mirror image of fraud" doctrine, where "the victim's loss of money or property supplied the defendant's gain, with one the mirror image of the other." *Skilling* at 400.

12. Significantly, since Judge Kayatta's description of Petitioner's case, there have been a number of major decisions that this Court has summarily ignored, including the Second Circuit in *United States v. Countrywide*, 822 F.3d 650 (2d Cir. 2016) based largely on two First Circuit decisions: *McEvoy Travel v. Heritage Travel*, 904 F.2d 786 (1st Cir. 1990) for the proposition that "the common law requires proof other than the fact of breach that, at the time a contractual promise was made, the promisor had no intent ever to perform the obligation," *Countrywide* at 658, and *Sanchez v. Triple-S*, 492 F.3d 1, 11 (1st Cir. 2007):

> A defendant's failure to disclose information, without more, cannot make out a violation of the mail and wire fraud statutes. *See Am. United Life Ins. Co. v. Martinez*, 480 F.3d 1043, 1065 (11th Cir. 2007); *United States v. Gray*, 405 F.3d 227, 235-36 (4th Cir. 2005); *United States v. Autuori*, 212 F.3d 105, 118 (2d Cir. 2000)....**We nevertheless observed that "[i]t would be a truly revolutionary change to make a criminal out of every salesman (assuming the use of the mails or telephone) who did not take the initiative to reveal negative information about the product and who - a jury might find - secretly harbored in his heart the hope that the buyer would never ask."**

13. After Petitioner filed numerous motions, Judge Roach wrote an opinion in 2016 on the civil case that made it clear that not only did the Merrill Broker Gerry Levine lie, but all of the broker-witnesses and other Merrill Lynch executives in this case lied as well. Until Judge Roach's opinion, Mr. Carpenter had no idea that he and BPETCO had passed two SEC investigations or that Merrill Lynch executives lied in those investigations and at his trial.

14. In *United States v. Irizarry-Colon*, 848 F.3d 61 (1st Cir. 2017), the defendant pleaded guilty to defrauding the government from 1998-2000, but was not indicted for the first time until 2005 and his case was finally dismissed for Due Process delay and Speedy Trial violations

4

in 2018. Petitioner's case is even worse than *Irizzary-Colon*, because at no time did Petitioner plead guilty and yet his Speedy Trial analysis seems to be the basis for all of the recent First Circuit decisions involving Speedy Trial.

15. Petitioner's case goes back to January 2001 and is still ongoing, so clearly there was an egregious Due Process delay violation based on the *Barker v. Wingo* factors that Justice Sotomayor stated should be used in determining post-trial or sentencing delay. See her Concurrence in *Betterman v. Montana*, 136 S.Ct. 1609 (2016): "the standard for Due Process delay in sentencing should be the familiar *Barker* factors: (1) the "[l]ength of the delay"; (2) "the reason for the delay"; (3) "the defendant's assertion of his right"; and (4) "prejudice to the defendant."

16. In addition, Irizarry-Colon was granted a dismissal based on the extraordinary Due Process delay violations in 2018, which was far less severe than the Due Process delays in this case.

17. Similarly, while the defendant in *United States v. Handa*, 266 F.Supp.3d 443 (D.Mass. 2017) was hiding in India for six years, Petitioner was at all times in Connecticut awaiting decisions by this Court and his third trial.

18. Petitioner asks this Court to reconsider the *Barker* factors in this case in light of the decisions in *Irizarry-Colon* and *Handa*. This Court knows better than anyone that Petitioner has been talking about Speedy Trial Delays since 2005 starting with Dkt. #79. Furthermore, Petitioner wishes to point out that now that *Irizarry-Colon* is the law of the First Circuit and has resulted in dismissals of indictments in *Handa* and *United States v. Reina–Del Rosario*, 281 F.Supp.3d 253 (D. P.R. 2017), the First Circuit has now adopted the principle of presumptive prejudice after a period of one year so that the defendant does not need to prove the palpable prejudice that occurred and still clearly exists in this case. Therefore, if

5

the same principles had been applied to this case as was done in *Irizarry-Colon* or *Handa*, the outcome would have been entirely different on a Due Process and Speedy Trial basis.

19. Furthermore, the First Circuit's ruling in *United States v. Huete-Sandoval*, 668 F.3d 1 (1st Cir. 2011), decided in December of 2011, came after this Court's ruling in September of 2011, and after the Government's appeal of Petitioner's Second New Trial Order. The *Huete-Sandoval* decision is based on the Supreme Court's decision in *Bloate v. United States*, 130 S.Ct. 1345, (2010). Therefore, Petitioner was never able to argue either *Bloate* or *Huete-Sandoval*. This Court never viewed the Speedy Trial Rules under the new standard of *Bloate*. Petitioner has a much better case than *Huete-Sandoval* did for dismissing the indictment for a simple Speedy Trial violation of 9-16 days.

**THIS COURT CLEARLY LACKED JURISDICTION BASED ON *KELLY***

20. This Court clearly lacked jurisdiction because there was no federal crime in this case. In *Kelly v. United States*, 140 S.Ct. 1565 (2020), the Supreme Court cites the Seventh Circuit in *United States v. Walters*, 997 F.2d 1219 (7th Cir. 1993) for the idea that under the Government's theory of fraud, even a practical joke could be mail and wire fraud. Over the last 17 years that Petitioner's case has been before this Court, Petitioner has mentioned *Walters* no less than a dozen times:

> "A [e-mails] B an invitation to a surprise party for their mutual friend C. B drives his car to the place named in the invitation," thus expending the cost of gasoline. *Id.* "But there is no party; the address is a vacant lot; B is the butt of a joke." *Id.* Wire fraud? No. And for the reason Judge Easterbrook gave: "[T]he victim's loss must be an objective of the [deceitful] scheme rather than a byproduct of it. *Id.* at 1226." *Kelly* at 1567, n.7.

21. As this Court has stated in many opinions, Petitioner always intended to return the money. And, the truth of matter is that the Exchangors have received over $50 million from his victories over PaineWebber and Merrill Lynch.

6

22. The Exchangors actually released and in some instances forgave Petitioner in 2015.

23. It is outrageous that the unconstitutional forfeitures in this case have not been released based on *Timbs v. Indiana*, 139 S. Ct. 682 (2019), where a small-time drug dealer received a light sentence and $1,500 in fines and various fees, but lost his $42,000 Land Rover. Justice Ginsburg wrote the opinion on behalf of the unanimous Supreme Court and traced the Excessive Fines Clause all the way back to the Magna Carta. It would appear that all of the Justices would support Petitioner that there is something "constitutionally inconsistent" with a forfeitures amount of $14 million.

24. The Forfeiture Clauses of the Indictment were taken out by the Government in 2005 and never put back into the Indictment, so it is Plain Error on the part of this Court not to vacate the Forfeiture Order.

25. Petitioner has clearly satisfied the standards of Plain Error under the First Circuit as stated in *United States v. Lara*, 970 F.3d 68, 84 (1st Cir. 2020), *citing United States v. Rosa-Ortiz*, 348 F.3d 33, 36 (1st Cir. 2003):

> "[a] federal court lacks jurisdiction to enter a judgment of conviction when the indictment charges no offense under federal law. These challenges raise a number of questions about the application of the plain error standard of review, which provides that a clear or obvious error should be corrected if it "seriously affects the fairness, integrity or public reputation of judicial proceedings." *Rosales-Mireles v. United States*, 138 S.Ct. 1897, 1905 (2018) (*quoting Molina-Martinez v. United States*, 136 S.Ct. 1338, 1343 (2016)).

26. Petitioner satisfies the jurisdictional requirement of *United States v. Guzman-Merced*, 2020 WL 7585176 (1st Cir. 2020), and should benefit from the Supreme Court's decision in *Rehaif v. United States*, 139 S.Ct. 2191 (2019), *Skilling, McDonnell v. United States*, 136 S.Ct. 2355 (2016), *Marinello v. United States*, 138 S.Ct. 1101 (2018), and *Kelly*.

## PETITIONER IS ACTUALLY AND FACTUALLY INNOCENT

27. In *Elonis v. United States,* 135 S.Ct. 2001 (2015), Chief Justice Roberts confirmed that the cornerstone of American Jurisprudence is that a person should not be deemed criminally responsible for mere negligence. Chief Justice Roberts further stated that the government must allege and prove that the person had the necessary criminal intent or criminal *mens rea* before conduct could be considered criminal, and that this principle of criminal justice in America is "as universal and persistent in mature systems of law as belief in freedom of the human will and a consequent ability and duty of the normal individual to choose between good and evil."

28. In fact, the Supreme Court "rejected that interpretation of the statute, because it would have criminalized a broad range of apparently innocent conduct and swept in individuals who had no knowledge of the facts that made their conduct blameworthy." *Elonis* at 2010.

29. The election turmoil and the NASDAQ stock market crash of 2000 caused the losses at issue, and Petitioner is still very sorry for those losses. In fact, as the Court knows, had PaineWebber not swept the funds from the account, Petitioner would have been up $15 million instead of down $9 million in January 2001.

30. Petitioner has always diligently proclaimed his innocence, while the Government used one spurious theory after another to try and convict Petitioner. After Petitioner's second trial in 2008, he was found guilty, but filed a Petition for a New Trial and a Rule 29 Judgment of Acquittal. Looking back at this Court's decision, it was Plain Error for this Court not to recognize the effect of *Skilling* and conclude that it lacked jurisdiction.

31. Therefore, Petitioner respectfully asks for an expedited ruling in this case and not the seven months that Petitioner had to wait on his Writ of Audita Querela.

32. "The Rule of Lenity reflects not merely a convenient maxim of statutory construction. Rather, it is rooted in fundamental principles of due process which mandate that no individual be forced to speculate, at peril of indictment, whether his conduct is prohibited." *Dunn v. United States*, 442 U.S. 100, 112 (1979).

33. Where, as here, "a jury has been presented with several bases for conviction, one of which is legally erroneous, and it is impossible to tell which ground the jury convicted upon, the conviction cannot stand." *United States v. Sawyer*, 85 F.3d 713, 730-31 (1st Cir. 1996). *See, e.g., Yates v. United States*, 354 U.S. 298 (1957): "In…circumstances [where a legally invalid theory has been submitted to the jury] we think the proper rule to be applied is that which requires a verdict to be set aside where the verdict is supportable on one ground, but not on another, and it is impossible to tell which ground the jury selected. *United States v. Fernandez*, 722 F.3d 1, 33 (1st Cir. 2013)." *Id.* at 312.

34. Petitioner also satisfies the elements to establish the need for Coram Nobis relief, namely that a petitioner must 1) explain his failure to seek relief from judgment earlier; 2) demonstrate continuing collateral consequences from the conviction; and 3) prove that the error is fundamental to the validity of the judgment. *See United States v. Sawyer (Sawyer II)*, 239 F.3d 31, 38 (1st Cir. 2001); *United States v. Barrett*, 178 F.3d 34, 56, n. 20 (1st Cir. 1999); and *United States v. Hager*, 993 F.2d 4, 5 (1st Cir. 1993). In *Sawyer II*, the First Circuit assumed, without deciding, that coram nobis was available to vacate a criminal conviction premised upon a fundamental error of law. *Sawyer II* at 38. In *United States v. Brown*, 79 F.3d 1550, 1562 (11th Cir. 1996), the Eleventh Circuit cited Sir Thomas More's famous speech from Robert Bolt, "A Man For All Seasons" Act II, 89 that "[t]he law is a causeway upon which, so long as he keeps to it, a citizen may walk safely", and observed

that "the idea that practical jokes are federal felonies would make a joke of the Supreme Court's assurance that §1341 does not cover the waterfront of deceit." *Id.*

35. Petitioner is entitled to the benefit of that construction inasmuch as it involves the meaning of a criminal statute enacted by Congress. *See, e.g., Bousley v. United States*, 523 U.S. 614, 620 (1998): "[D]ecisions of [the Supreme Court] holding that a substantive federal criminal statute does not reach certain conduct, like decisions placing conduct beyond the power of the criminal lawmaking authority to proscribe, carry a significant risk that a defendant stands convicted of an act that the law does not make criminal."

## OTHER CONSTITUTIONAL ERRORS

36. Petitioner respectfully requests the Court to invoke this Court's supervisory powers to prevent any further miscarriage of justice in Petitioner's case. If Venue was improper for Vicki Cabrales who lived in Missouri and sold drugs in Missouri, then certainly Venue in Massachusetts is improper for Petitioner because he never had any business or interactions with anyone in Massachusetts before in his life. See *United States v. Cabrales*, 524 U.S. 1 (1998). *Bloate* only had one violation of the Speedy Trial Act (STA), whereas Petitioner pointed out over a dozen separate STA violations in his motions. See *United States v. Bloate*, 559 U.S. 196 (2010). The Speedy Trial Act (STA) violation in *United States v. Dezeler*, 81 F.3d 86 (8th Cir. 1996) was only one day, where Petitioner was effectively "on trial" for over 14 years before his sentencing, including a six-year delay from the trial of 2008 to the sentencing in 2014.

37. The First Circuit overturned Petitioner's New Trial Order, see *Carpenter*, 736 F.3d 619, saying that because of the "vigorous" cross-examination of the **one** perjurious Merrill broker, Levine, and the failure of Petitioner's attorneys to timely object, it was merely

harmless error. But, a "vigorous" cross-examination does not purge the taint of perjury from criminal proceedings, nor does it relieve the prosecution from its duty under *Napue v. Illinois*, 360 U.S. 264 (1959). *See United States v. Agurs*, 427 U.S. 97 (1976), and *Giglio*. A defendant need only show that "the false testimony could in ___any reasonable likelihood___ have affected the judgment of the jury," *i.e.*, whether the trial produced a verdict "worthy of confidence." *Kyles v. Whitley*, 514 U.S. 419, 434 (1995). As the Supreme Court stated in *Napue*: "The duty of this Court to make its own independent examination of the record when federal constitutional deprivations are alleged is clear, resting, as it does, on our solemn responsibility for maintaining the Constitution inviolate." *Id.* at 272.

38. In the famous 2255 Habeas case, *Ouimette v. Moran*, 942 F.2d 1 (1st Cir. 1991), the First Circuit ends its decision ***affirming the granting of instant freedom*** to a convicted bank robber, who unlike Petitioner later pled guilty, with these stirring words:

"Although unbridled prerogative powers of government were abolished in England by the Magna Charta in 1215 A.D. and in America by the Constitution's Bill of Rights, here, they were alive and well in [Boston]. [The government's] prosecutorial team enjoyed exclusive and peculiar privilege to fashion and shape [Levine] as a credible witness against the accused. The prosecutions' coverup and censorship at trial of their preemptive activity is what remains as constitutionally actionable." *Id.* at 13.

Obviously, in Ouimette's case, it was the state of Rhode Island and the only witness against him was his partner in crime with a long criminal history behind him that the state tried to cover up. In Petitioner's case, not only did Levine lie, all the broker witnesses lied, as did all of the Exchangor witnesses. By June of 2008, the Exchangors had been paid back $15 million on their $8 million loss, and the incapacitated Iantosca had sued Merrill Lynch in February 2008, unbeknownst to Petitioner, alleging that Merrill had been informed by BPETCO's officers that the funds were all Third Party funds being held in "escrow" for the benefit of others. Please see Paragraphs 12-16, 18-19, and Paragraph 29, of the *Iantosca*

11

lawsuit showing that Merrill's attorneys and the Exchangors' attorneys, and therefore the government's attorneys all knew that *"the testimony provided at trial by the broker-witnesses was perjurious."* Yet, the jury heard none of these important revelations. Instead the government egregiously violated Petitioner's constitutional rights under every famous case there is from *Berger* to *Napue* to *Brady* to *Giglio* to *Bagley*. The government had to know about the *Iantosca* lawsuit, but played word games with the Court to disguise its actual knowledge in violation of their obligations under *Brady*, *Giglio*, and *Bagley*. In fact, the First Circuit in *Ouimette* cites to a number of famous Supreme Court decisions including *Bagley* and *Agurs*, for several different and critical constitutional issues:

"...constitutional error can result from government 'failure to assist the defense by disclosing information that might have been helpful in conducting the cross-examination *if* such suppression of evidence, in fact, deprives the defendant of a fair trial. *Agurs* at 103."

"...the prosecutor's duty to disclose voluntarily 'anything exculpatory,' whether the defendant has made 'merely a general request' or 'no request at all.' *Agurs* at 106-07."

"...if the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed. *Agurs* at 112."

"...the suppression of such impeachment evidence 'might have affected the outcome of the trial.' *Agurs* at 104." *Ouimette* at *10-11.

**The First Circuit goes on to quote *Napue v. Illinois*, 360 U.S. 264 (1959), that even if the introduction of perjury is accidental or inadvertent, the conviction must be overturned:** "...a conviction obtained by the knowing use of perjured testimony is fundamentally unfair, and must be set aside if there is *any reasonable likelihood* that the false testimony *could have affected* the judgment of the jury. *Agurs* at 103." *Id.* at 11.

12

39. In *Ouimette*, the State of Rhode Island tried to argue as the government does in Petitioner's case that the introduction of perjury was "harmless error", but the First Circuit cites *Bagley*, *Napue*, and *Fahy v. Connecticut*, 375 U.S. 85 (1963), that the prosecution must prove beyond a reasonable doubt that the error did not contribute to the verdict obtained. See also *Chapman v. California*, 387 U.S. 18 (1967), which created the "harmless error beyond a reasonable doubt standard." The First Circuit cites *Napue* and *Chapman* to say that the government must prove beyond a reasonable doubt that the error did not contribute in any way to the verdict, which is impossible in Petitioner's case because this Court has already stated in both of the New Trial Orders that there was clear perjury presented by the government in both of the trials and the egregious prosecutorial misconduct probably influenced the jury's verdict. Moreover, the newly discovered evidence from the Merrill civil cases shows that not only did the broker witnesses all lie, so too did all of the Exchangor witnesses, as well as Paley. No matter how "vigorous" the cross-examination of a perjured witness is, it does not eliminate the government's obligations under *Napue* and *Giglio*, nor does it purge the taint of perjury from the integrity of the proceedings, and it certainly does not constitute "harmless error."

40. Moreover, the Constitutional errors in Petitioner's case that he details above "constitute a fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339 (1994). Petitioner has established that had the new evidence, such as the *Iantosca v. Merrill Lynch* lawsuit and proof that all of the broker witnesses had lied because of Attorney Bingham's orchestrated fraud on the Court, been presented to the jury, it would have led to the declaration of innocence that Petitioner so justly deserved.

41. "There can be no room for doubt that such circumstances inherently result in a complete miscarriage of justice that justifies relief under §2255." *Davis v. United States*, 417 U.S. 333 (1974), citing the history of §2255 relief described in *United States v. Hagman*, 342 U.S. 205, 218 (1952). Collateral review is available where "the alleged error constituted a fundamental defect which inherently results in a complete miscarriage of justice." *Reed v. Farley*, 512 U.S. 339 (1994); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986). The Supreme Court's decision in *McQuiggen v. Perkins*, 133 S. Ct 1924 (2013) refers to the supervisory powers of this Court and that the "fundamental miscarriage of justice" exception is grounded in the equitable discretion of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons. *See also Herrera v. Collins*, 506 U.S. 390, 404 (1993). A conviction should be set aside "where a miscarriage of justice would otherwise result." *United States v. Garcia-Pastrana*, 584 F.3d 351, 390 (1st Cir. 2009), *quoting United States v. Del-Valle*, 566 F.3d 31, 38 (1st Cir. 2009).

42. Finally, Petitioner was lied to, betrayed, and then essentially abandoned by his unscrupulous attorneys who chose to represent Merrill Lynch rather than him starting in 2010, thereby creating an **actual** conflict of interest, which renders Petitioner's representation as constitutionally ineffective *per se*. Despite the fact that Petitioner clearly satisfies both prongs of *Strickland v. Washington*, 466 U.S. 668 (1984), he no longer needs to satisfy the "prejudice" prong because of *Cuyler v. Sullivan*, 446 U.S. 335 (1980), *Holloway v. Arkansas*, 435 U.S. 475 (1978), and *Glasser v. United States*, 315 U.S. 60 (1942), where prejudice is presumed as a matter of law because Petitioner's attorneys abandoned him for a conflict of interest in favor of making millions of dollars working for Merrill and its brokers.

43. While it is no surprise that the government denies it did anything wrong in Petitioner's case, even though both trials resulted in New Trial Orders due to the government's egregious prosecutorial misconduct, it is indeed shocking for the government not to concede that Petitioner was also a victim of obvious and classic ineffective assistance of counsel under *Strickland* and *Cuyler*. See, also, the famous Supreme Court decision in *Maples v. Thomas*, 565 U.S. 132 (2012), where Corey Maples was abandoned by his big New York law firm just as Petitioner was abandoned by his attorneys at Greenberg Traurig. And, Petitioner was clearly abandoned and betrayed by his constitutionally ineffective counsel that had an actual conflict of interest that caused Petitioner the prejudice of being sentenced to three years in prison, *see, e.g., Glover v. United States*, 531 U.S. 198, 203 (2001), that any amount of actual jail time "constitutes prejudice under the *Strickland* doctrine and the Sixth Amendment." Petitioner respectfully requests that this Court do the right thing and vacate his conviction, as Petitioner has clearly shown that he received substandard performance from his attorneys as a matter of law, and prejudice is already presumed as a matter of law, so Petitioner clearly satisfies both prongs of *Strickland*.

44. The First Circuit has clearly stated in several cases that even a "single serious error can support a claim of Ineffective Assistance of Counsel. *See, e.g., Prou v. United States*, 199 F.3d 37 (1st Cir. 1999), *citing Murray v. Carrier*, 477 U.S. 478, 496 (1986) and *Kimmelman v. Morrison*, 477 U.S. 365, 383 (1986). In *Prou*, the single error was his counsel's failure to raise an argument of the government's untimely filing of required information that affected Prou's sentencing guideline range. Obviously, that error pales in comparison to all the mistakes made by Greenberg Traurig as noted by both this Court and

the First Circuit, which was enough for Prou to show his counsel's substandard performance.

45. In fact, the First Circuit recently reversed the convictions in *Bravo-Fernandez*, 913 F.3d 244, (1st Cir. 2019), because the Government failed to mention just one of the elements of the crime, and *Bravo-Fernandez* has not been going on as long as the Petitioner's case. In Petitioner's case, not only did the Indictment fail to state a crime after *Skilling* and after *Kelly*, but at both trials the Government failed to prove any of the three elements for a mail and wire fraud conviction and certainly never discussed criminal *mens rea* or Scienter as is required by the Supreme Court in any criminal case. Furthermore, Petitioner has submitted Charles Doyle's numerous articles on Mail and Wire Fraud for the *Congressional Research Service* and based on Doyle's analysis the Government failed to mention all five elements required for a conviction under the Mail and Wire Fraud Statutes. Petitioner respectfully asks this Court to vacate and set aside his conviction based on *Skilling* and *Kelly* because there was no federal crime committed in this case. As the First Circuit clearly explained in *Bravo-Fernandez*, the same factors require vacating Petitioner's conviction:

> "Under the government's approach, the jurisdictional element in many federal criminal cases could be satisfied by similar reliance on jurors' extra-record knowledge. For example, one could claim that any juror would know that all banks are engaged in, or at least affect, interstate commerce, or that a bank is likely FDIC insured. Yet, the failure to offer any actual proof of these relatively obvious jurisdictional facts has repeatedly proved fatal to criminal prosecutions. See United States v. Leslie, 103 F.3d 1093, 1102-3 (2d Cir. 1997) (reversing conviction because government "did not provide even the slenderest of threads" upon which to hang the interstate commerce jurisdictional element)"

46. Petitioner has paid $60,000 to the Government in fines, restitution and forfeitures, including money paid from his wife's tax return. Those funds should be refunded.

## EXPUNGEMENT

After a conviction is invalidated "district courts possess ancillary jurisdiction to expunge criminal records. That jurisdiction flows out of the congressional grant of jurisdiction to hear cases involving offenses against the United States pursuant to 18 U.S.C. § 3231." *See, e.g., United States v. Sumner*, 226 F.3d 1005, 1014 (9th Cir. 2000). Here, in the event the Court grants this Petition and invalidates Petitioner's conviction, Petitioner respectfully requests that this Court order the record of the conviction to be expunged and sealed. As discussed, *supra*, Petitioner's conviction is invalid as a matter of law and was premised on erroneous applications of the law that were never valid. Accordingly, Petitioner has demonstrated appropriate, extraordinary, and unusual circumstances to warrant the relief of expungement and the return of all funds paid to the Government over the past seven years

## EXPEDITED RELIEF

Petitioner's conviction continues to prevent him from practicing law as an attorney, or acting as an insurance agent or working on any ERISA Employee Benefit Plan. This has caused and continues to cause significant financial instability to his family. In addition, it would be better for Society to restore Petitioner's law license so that he may help other individuals who are still in prison and not able to afford legal counsel to help them prepare the necessary legal documents to secure their release. Petitioner helped to secure the early release of over 120 inmates pursuant to the First Step Act and the CARES Act during his period of incarceration. Accordingly, to the extent possible and practicable, Petitioner most respectfully requests that his Petition be treated on an expedited basis as the Due Process delays in this case have been extraordinary to date and far exceed any other case in the history of the First Circuit.

## RELIEF SOUGHT

Petitioner respectfully requests that the Court grant the instant Petition and issue an order: (i) vacating and setting aside the Order of Forfeiture and Petitioner's 2014 conviction for mail and wire fraud in its entirety; (ii) expunging and sealing all records of the foregoing indictment and conviction; (iii) ordering the Government to return all funds paid to the Government on behalf of Petitioner in this case; and (iv) granting such other and further relief as this Court deems just, equitable, and proper.

## CONCLUSION

For all of the above reasons, it is respectfully submitted that the Court has a rare opportunity to correct a miscarriage of justice, inasmuch that Petitioner stands convicted of acts that the law does not make criminal, and Petitioner would suggest were never criminal under any proper understanding of the Mail and Wire Fraud statutes. Petitioner therefore respectfully asks the Court to vacate and set aside Petitioner's conviction and to expunge and seal all records of the indictment and conviction in this case, and order the Government to return all funds and to vacate the Order of Forfeiture in this case as described above.

Respectfully submitted this 22nd day of September, 2021.

/s/ Daniel E. Carpenter
Daniel E. Carpenter
Petitioner, *pro se*
18 Pond Side Lane
West Simsbury, CT 06092