# MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PETITIONER'S MOTION PURSUANT TO RULE 59(e) FOR THIS COURT TO ALTER AND AMEND ITS JUDGMENT AND TO VACATE PETITIONER'S CONVICTION FOR VIOLATIONS OF THE CONSTITUTION

## I. LEGAL STANDARD

In granting the Government's Motion to Dismiss, this Court has committed Plain Error by listening to the Government attorney's slander of an Innocent Man, while ignoring the clear directives of the Supreme Court as to the Vicinage Clause, the Venue Clause, the Due Process Clause, and the Speedy Trial Clause of the Constitution. The Supreme Court in *Smith v. United States* traced back the history of the Vicinage Clause over 300 years to the English Common Law and now-famous cases in both England and even Massachusetts. Petitioner is the first and only defendant in the First Circuit to raise the Vicinage Clause, so with all due respect to the Government – there was nothing to copy or "repackage" other than the Supreme Court's clear reading (and presentation of) the history of the Vicinage and Venue Clauses of the Constitution. The conviction of the Defendant in *Smith v. United States* was vacated and affirmed – the only argument was his retrial which this Petitioner welcomes in Connecticut.

The law under Rule 59(e) Motions is very clear – both at the District Court level, the First Circuit, and at the Supreme Court. It applies to Criminal cases like this one as well as Civil cases:

> A motion for reconsideration under Rule 59(e) should be granted if the District Court's decision "evidenced a manifest error of law, if there is newly discovered evidence, or in certain other narrow situations." *Biltcliffe v. CitiMortgage, Inc.*, 772 F.3d 925, 930 (1st Cir. 2014) *Disaster Sols., LLC v. Santa Isabel, Puerto Rico*, 21 F. 4th 1, 7 (1st Cir. 2021).

> Rule 59(e) of the Federal Rules of Civil Procedure permits a party to file a motion to alter or amend a judgment within twenty-eight days of the judgment's entry. Fed. R. Civ. P. 59(e).). A district court enjoys "substantial discretion and broad authority" to grant or deny a motion for reconsideration. *Ruiz Rivera v. Pfizer Pharms., LLC*, 521 F.3d 76, 81 (1st Cir.2008). But the court should grant a motion for reconsideration if the court "has patently misunderstood a party or has made an error not of reasoning but apprehension." *Ruiz Rivera*, 521 F.3d at 82. *Reverse Mortg. Funding, LLC v. Pranes*, No. 2:21-CV-00339-NT, 2023 WL 6130176, at *1 (D. Me. Sept. 19, 2023).

4

In fact, a good example for this Court to follow was the granting of a Rule 59(e) Motion issued by the District Court of Rhode Island in a "False Claims Act" case where the District Court changed its mind based on a recent Supreme Court decision that respectfully is not as clear and direct as the Supreme Court cases supporting Petitioner. As the Court stated in *Ocean State*:

> To prevail, the moving party must show "an intervening change in the controlling law, a clear legal error, or newly discovered evidence." Here, among its arguments, Ocean State argues a change in the controlling law, pointing to an opinion of the United States Supreme Court, *United States ex rel. Schutte v. SuperValu Inc.*, 143 S. Ct. 1391 (2023), issued on June 1, 2023, after this Court's April 28, 2023, granting of the Commissioner's Motion to Dismiss and entry of the judgment. *UNITED STATES OF AMERICA, ex rel. OCEAN STATE TRANSIT, LLC, Plaintiff, v. ANGELICA INFANTE-GREEN, in her personal capacity*, 2023 WL 6199183, at *1 (D.R.I. Sept. 22, 2023).

Finally, just to make sure that the Government does not waste this Court's time (or insult the Court's intelligence and knowledge of the law), Petitioner hereby submits the Supreme Court's famous decision in *Banister v. Davis* which set the standards for Rule 59(e) in criminal cases:

> **To begin with, Rule 59(e) gives a prisoner only a narrow window to ask for relief—28 days, with no extensions. Next, a prisoner may invoke the rule only to request "reconsideration of matters properly encompassed" in the challenged judgment.** *White*, 455 U.S. at 451, 102 S. Ct. 1162. And "reconsideration" means just that: Courts will not entertain arguments that could have been but were not raised before the just-issued decision. A Rule 59(e) motion is therefore backward-looking; and because that is so, it maintains a prisoner's incentives to consolidate all of his claims in his initial application. Yet more, the Rule consolidates appellate proceedings. **A Rule 59(e) motion briefly suspends finality to enable a district court to fix any mistakes and thereby perfect its judgment before a possible appeal.** The motion's disposition then merges into the final judgment that the prisoner may take to the next level. In that way, the Rule avoids "piecemeal appellate review." *Osterneck*, 489 U.S. at 177, 109 S. Ct. 987. Its operation, rather than allowing repeated attacks on a decision, helps produce a single final judgment for appeal. **Indeed, the availability of Rule 59(e) may make habeas proceedings more efficient. Most obviously, the Rule enables a district court to reverse a mistaken judgment, and so make an appeal altogether unnecessary.** See *United States v. Ibarra*, 502 U.S. 1, 5, 112 S. Ct. 4, 116 L.Ed.2d 1 (1991) (*per curiam*) **(noting that giving district courts a short time to correct their own errors "prevents unnecessary burdens being placed on the courts of appeals").** Of course, Rule 59(e) motions seldom change judicial outcomes. But even when they do not, they give habeas courts the chance to clarify their reasoning or address arguments (often made in less-than-limpid *pro se* petitions) passed over or misunderstood before. *Banister v. Davis*, 140 S. Ct. 1698, 1708, (2020).

## II. THE SUPREME COURT'S DECISION IN *SMITH v. UNITED STATES* REQUIRES THIS COURT TO VACATE PETITIONER'S CONVICTION FOR VIOLATIONS OF THE VICINAGE CLAUSE

Respectfully, by listening to the Government, this Court has committed Manifest Plain Error that will clearly be pointed out on appeal to the Supreme Court if not the First Circuit by Judge Lipez and Judge Lynch; and therefore, this Court should reconsider its decision and alter and/or amend its judgment pursuant to Rule 59(e). See the Supreme Court's decision in *Rosales-Mireles v. United States,* 138 S. Ct. 1897 (2018) citing *Molina-Martinez v. United States*, 136 S. Ct. 1338 (2016).

Furthermore, virtually all Constitutional scholars cite Benjamin Franklin's Maxim "That it is better to let 100 Guilty Persons escape rather than One Innocent Person suffer" – as the source and support for most of the "guaranteed" Constitutional protections for criminal defendants written into the Constitution and the Bill of Rights:

> That it is better 100 guilty Persons should escape, than that one innocent Person should suffer, is a Maxim that has been long & generally approv'd, never that I know of controverted. Even the sanguinary Author of the *Thoughts* agrees to it page 163, adding well, that "the very Thought of *injured* Innocence, and much more that of *suffering* Innocence, must awaken all our tenderest and most compassionate Feelings, and at the same time raise our highest Indignation against the Instruments of it.
>
> This principle had been most recently enunciated by Sir William Blackstone in his *Commentaries on the Laws of England* (4th ed.; 4 vols., Dublin, 1771), iv 352: "all presumptive evidence of felony should be admitted cautiously: for the law holds, that it is better that ten guilty persons escape, than that one innocent suffer."
> Letter from Benjamin Franklin to Benjamin Vaughan, March 14, 1785, courtesy of The National Archives.

Respectfully, Petitioner suggests to the Court that for the past 20 years he has played the role of the "One Innocent Person" that Benjamin Franklin warned we should not let suffer. But even assuming *arguendo* that Petitioner was "guilty as sin" as the Government still suggests – whatever Petitioner did or failed to do – he did in Connecticut. And this is what the Supreme Court

6

said recently in 2023 describing the history of the Vicinage Clause, which requires this Court to vacate Petitioner's conviction and forever end the Government's bogus claims of "repackaging" the dozen major constitutional violations in this case:

> There is no question that the founding generation enthusiastically embraced the vicinage right and wielded it "as a political argument of the Revolution." Prior to the Revolution, Parliament enacted measures to circumvent local trials before colonial juries, most notably by authorizing trials in England for both British soldiers charged with murdering colonists and colonists accused of treason. The Continental Congress and colonial legislatures forcefully objected to trials in England before loyalist juries, characterizing the practice as an affront to the existing "common law of England, and more especially to the great and inestimable privilege of being tried by ... peers of the vicinage." The Declaration of Independence also denounced these laws, under which, it said, British soldiers were "protect[ed] ... by a mock Trial" and colonists were "transport[ed] ... beyond the Seas to be tried for pretended offences." As States declared independence, most incorporated some form of a venue or vicinage clause in their governing documents, but none of these provisions specified a particular remedy for violations. The common-law vicinage right, both as a jury requirement and as a proxy for venue, remained prominent during debates over the ratification of the Constitution. As originally proposed, the Constitution contained only the Venue Clause, which, as noted, says nothing about jury composition. Appealing to "ancient common law," Anti-Federalists objected to this omission. Federalists responded that Congress could secure the vicinage right by statute, analogizing to common law, where "the preservation of this right [was] in the hands of Parliament." After the ratification of the Constitution, Congress yielded in part to the Anti-Federalists' argument and included a vicinage right in the Sixth Amendment. James Madison's initial draft of the Amendment required a jury "of the vicinage," 1 Annals of Cong. 435 (1789), **but Congress amended that language so that it guaranteed a jury from the State of the crime and from any smaller judicial districts that Congress chose to create.** This history tells us two important things about the way in which the Constitution dealt with the common-law vicinage right. First, the right was highly prized by the founding generation, and this right undoubtedly inspired the Venue and Vicinage Clauses. Second, although the Clauses depart in some respects from the common law—most notably by providing new specifications about the place where a crime may be tried—there is no meaningful evidence that the Constitution altered the remedy prescribed by common law for violations of the vicinage right. *Smith v. United States*, 143 S. Ct. 1594, 1604–06, (2023).

## III. SOMETHING MORE ENERVATING THAN HELL

Justice in the First Circuit should not come down to which Judge you draw. Recently, a different Judge in Boston granted a "guilty" drug dealer's Motion to Dismiss his indictment for violations of the Speedy Trial Clause of the Constitution for a delay of a mere four years, citing Petitioner's case (as most Speedy Trial cases do), *United States v. Carpenter*, 781 F. 3d 599 (1st Cir. 2015):

> Length of delay analysis requires a "double enquiry," *Doggett v. United States*, 505 U.S. 647, 651-52, (1992), because it is both a "triggering mechanism for the rest of the [speedy trial] analysis, and *a* factor in that analysis," *Handa*, 892 F.3d at 101 (quoting *United States v. Carpenter*, 781 F.3d 599, 609 (1st Cir. 2015)). To establish at the outset that a speedy trial inquiry is necessary, "a defendant must allege that the time between accusation — whether by arrest or indictment — and trial has crossed the threshold dividing ordinary from presumptively prejudicial delay." *Handa*, 892 F.3d at 101 quoting *United States v. Irizarry-Colón*, 848 F.3d 61, 68 (1st Cir. 2017)). **The First Circuit has held that a "[d]elay of around one year is considered presumptively prejudicial, and the presumption that delay prejudices the defendant 'intensifies over time.'"** *Carpenter*, 781 F.3d at 610 (quoting *Doggett*, 505 U.S. at 652, 112 S. Ct. 2686). For *Barker* factor one purposes, the delay period is calculated using the date that the defendant is "indicted, arrested, or otherwise officially accused" as its start date. **It is inadequate to leave matters in this case with the observation that "the delay was unfortunate, [but] it did not impair the defense, create any undue pressure, or result in any period of incarceration."** *Carpenter*, 781 F.3d at 615. **The delay here did something more enervating; it deprived the defendant of his fundamental constitutional right to a speedy and public trial.** *United States v. El Naddaf*, No. CR 13-10289-2-DPW, 2023 WL 2541555, at *24 (D. Mass. Mar. 16, 2023).

For this Court's benefit and review, Judge Whitlock does an excellent review of the protections guaranteed by the Sixth Amendment – none of which have protected Petitioner:

> The Sixth Amendment protects a defendant's right to a prompt resolution of criminal charges against him by providing "[i]n all criminal prosecutions, the accused shall enjoy the right to a speedy ... trial ...." U.S. Const. amend VI. The right to a speedy trial "is one of the most basic rights preserved by our Constitution." *Klopfer v. North Carolina*, 386 U.S. 213, 226, 87 S. Ct. 988, 18 L.Ed.2d 1 (1967). **This fundamental constitutional protection recognizes "the general concern that all accused persons be treated according to decent and fair procedures."** *Barker v. Wingo*, 407 U.S. 514, 519, (1972). As the Supreme Court has explained, the Sixth Amendment speedy trial right is "generically different from any of the other rights enshrined in the Constitution for the protection of the accused." The Sixth Amendment implicitly recognizes that pretrial delays

8

"might result in witness unavailability and fading memories, which may prejudice both defendants and prosecutors." (But the constitutional right to a speedy trial must also be read to "promote the interests of rehabilitation, minimize the amount of time potentially dangerous individuals are free on bond, prevent oppressive pretrial incarceration, **minimize anxiety and concern of the accused, and shorten the disruption of life caused by arrest and the presence of unresolved criminal charges."** *Id.* In determining whether a defendant's Sixth Amendment right to a speedy trial has been violated, I am directed to engage in an "ad hoc" balancing test involving the following factors set out by the Supreme Court in *Barker*: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant." 407 U.S. at 530, 92 S. Ct. 2182. The First Circuit cautioned some thirty years ago that "[t]hese factors cannot be plugged into a formula that operates with scientific precision. Rather they must be considered on a case-by-case basis 'together with such other circumstances as may be relevant.'" *United States v. El Naddaf*, No. CR 13-10289-2-DPW, 2023 WL 2541555, at *15–16 (D. Mass. Mar. 16, 2023).

Judge Whitlock goes on to make a number of points citing *United States v. Carpenter*:

Here, each of the four *Barker* factors in varying degrees weighs in favor of finding a violation of Mr. El Naddaf's Sixth Amendment right to a speedy trial. Together, they overcome the hurdles *Doggett* identified for a defendant to surmount in establishing a speedy trial claim. **It is inadequate to leave matters in this case with the observation that "the delay was unfortunate, [but] it did not impair the defense, create any undue pressure, or result in any period of incarceration."** *Carpenter*, 781 F.3d at 615. **The delay here did something more enervating; it deprived the defendant of his fundamental constitutional right to a speedy and public trial.**

This is particularly significant as the First Circuit in *United States v. Carpenter* describes very well the "Living Hell" that Petitioner has suffered at the hands of the Government for the past 20 years, and an "apology" is just not good enough for a clear violation of the Constitution yet again in this case:

**Carpenter's argument instead focuses on the anxiety he suffered throughout the proceedings. His brief, supported by record materials, describes a "living hell" of lost business opportunities, financial stress, sleeplessness, panic attacks, and the like.** He points, however, to no opportunities that would not have been lost as well in the wake of a speedier conviction. And while anxiety about the outcome of post-conviction motions and appeals is no doubt real, anxiety is a normal part of the pendency of criminal charges. It therefore becomes a sign of prejudice only when "undue pressures" exist. **While Carpenter argues convincingly that he has suffered great stress throughout the proceedings, he does not demonstrate why his anxiety was greater than that suffered by many other defendants, other than that it continued longer. While it may be possible that post-conviction delay could result in prejudice by shifting the time period in which a defendant serves his sentence, Carpenter makes no such argument**

9

**here.** In sum, while the length of delay causes us to presume some prejudice, we find nothing in this record to establish that Carpenter suffered a type of prejudice that would take on added weight in our assessment of the constitutionality of that delay. While the travel of the case as a whole was remarkable, its length arose almost entirely because the district court exercised (and exceeded in one instance) its discretion in granting Carpenter relief from verdicts against him. In the end, we have an unjustified delay of roughly twenty-one months, which occurred after a guilty verdict was returned and without any meaningful fault of the government. **While the delay was unfortunate, it did not impair the defense, create any undue pressure, or result in any period of incarceration.** *United States v. Carpenter*, 781 F.3d 599, 614–15 (1st Cir. 2015).

At the risk of having the government claim once more that Petitioner is simply "repackaging" again – Rocky Moore (another convicted killer like Duane Buck) had his conviction vacated by the Supreme Court for a delay of only 28 months, which happens to be shorter than this Court's "Speedy Trial Delay" from June 2008 – September 2011:

> "Inordinate delay, wholly aside from possible prejudice to a defense on the merits, may seriously interfere with the defendant's liberty, whether he is free on bail or not, and . . . **may disrupt his employment, drain his financial resources, curtail his associations, subject him to public obloquy, and create anxiety in him, his family and his friends.**" *Moore* at 27, citing *United States v. Marion*, 404 U.S. 307, 320-21 (1971).

Once again, Petitioner respectfully suggests that he is the "One Innocent Person" that Ben Franklin was warning us all to protect – and was a three-decade victim (perhaps even "poster-child") of "Public Obloquy" because of the Government's actions and this Court's "inaction" in this case.

## IV. CONCLUSION

Respectfully, with all of the cases that this Court has had over the past 20 years, Your Honor has probably forgotten the warnings to the Government about "Bernie Madoff" and the words "Ponzi Scheme" and the fall of Bear Stearns and Lehman Brothers during Petitioner's Second Trial in 2008. Now with the FTX Scandal and the Government's abject embarrassment in the "Varsity Blues" cases, perhaps it is time to take the path of least resistance. The Exchangors have received over $50,000,000 on their $8,000,000 in losses from the Dot.com Crash of 2000 and

10

settled with (and in some cases forgave) Petitioner in 2015. The FTX Victims will clearly not be as fortunate – and to have Petitioner responsible for $14,000,000 in forfeitures is yet another violation of the Constitution.

Paley and Levine lied at both trials and as Your Honor said – "*the government knew it.*" We now know that all of the Broker Witnesses lied and "*the government knew it.*" Now that there are six Supreme Court cases calling into question the Indictment, Prosecution, and Sentencing of this case, perhaps we can just ignore Due Process and Speedy Trial violations and just accept the Supreme Court's decision in *Smith v. United States* as the centuries old law of the land as to the Vicinage Clause, and vacate Petitioner's conviction on that basis alone. Please exercise Your Honor's power to do justice under Rule 59(e) and amend the Judgment to vacate Petitioner's conviction.

Respectfully Submitted,

*/s/ Daniel E. Carpenter*
Daniel E. Carpenter
Petitioner, *pro se*
18 Pondside Lane
West Simsbury, CT 06092